**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
Rick Antonoff
Barry N. Seidel
Evan J. Zucker

*Attorneys for State Corporation "Deposit Insurance Agency" in its Capacity as Trustee and Foreign Representative for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re:

| | |
|---|---|
| **FOREIGN ECONOMIC INDUSTRIAL BANK LIMITED, "VNESHPROMBANK" LTD.**, | Chapter 15<br><br>Case No. 16-13534 (   ) |
| Debtor in a Foreign Proceeding. | |

----------------------------------------------------------------x

**VERIFIED PETITION UNDER CHAPTER 15 FOR**
**RECOGNITION OF FOREIGN MAIN PROCEEDING**

**Table of Contents**

| | | |
|---|---|---|
| I. | JURISDICTION AND VENUE | 1 |
| II. | BACKGROUND | 2 |
| | A. Commencement Of Russian Insolvency Proceeding | 2 |
| | B. Overview Of The Bank's Business | 2 |
| | C. Events Leading Up To, And Current Status Of, The Russian Insolvency Proceeding | 3 |
| | D. Pending Litigation In The United States District Court For the Southern District of New York | 5 |
| III. | RELIEF REQUESTED | 7 |
| IV. | BASIS FOR RECOGNITION AND RELIEF REQUESTED | 8 |
| | A. The Petition Satisfies The Requirements Of Chapter 15 And The Russian Insolvency Proceeding Is Entitled To Recognition As A Foreign Main Proceeding | 8 |
| |     i. The Russian Insolvency Proceeding is a "Foreign Proceeding" | 8 |
| |     ii. The DIA Is An Appropriate "Foreign Representative" | 10 |
| |     iii. The Petition Meets the Requirements of 11 U.S.C. § 1515 | 11 |
| | B. The DIA Is Entitled To Relief Under 11 U.S.C. § 1520 | 12 |
| | C. Additional Relief Under 11 U.S.C. § 1521 Is Necessary And Appropriate | 13 |
| V. | RESERVATION OF RIGHTS | 15 |
| VI. | SATISFACTION OF LOCAL BANKRUPTCY RULE 9013-1(A) | 15 |
| VII. | HEARING DATE AND NOTICE | 15 |
| VIII. | CONCLUSION | 16 |

State Corporation "Deposit Insurance Agency" ("DIA"), the trustee and foreign representative of the Foreign Economic Industrial Bank Limited, "Vneshprombank" Ltd. (the "Bank" or "Debtor") in the Bank's pending insolvency proceeding (the "Russian Insolvency Proceeding") under the Russian Federation Federal Law № 127-FZ "On Insolvency (Bankruptcy)" (the "Russian Bankruptcy Law"),[1] respectfully files this *Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceeding* (the "Verified Petition").[2] The Verified Petition, along with all certified documents, statements, lists and documents required under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), filed contemporaneously herewith, is filed in furtherance of (i) the Official Form Petition (collectively, with this Verified Petition, the "Petition") filed pursuant to sections 1504 and 1515 of Title 11 of the United States Code (the "Bankruptcy Code") commencing a case under chapter 15 ancillary to the Russian Insolvency Proceeding; and (ii) seeking recognition of the Russian Insolvency Proceeding as a "foreign main proceeding."

# I.
# JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, sections 109 and 1501 of the Bankruptcy Code, the *Standing Order of Referral of Cases to Bankruptcy Judges* of the United States District Court for the Southern District of New York (Ward, Acting CJ.), dated July 10, 1984, and the *Amended Standing Order of Reference M-431*

---

[1] An English version of the Russian Bankruptcy Law is attached as Exhibit A to the Russian Counsel Declaration (as defined in footnote 2 below).

[2] Filed contemporaneously with this Verified Petition is the *Declaration of Sergey Sokolov in Support of Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceeding* (the "Russian Counsel Declaration"). All exhibits referred to herein are attached to the Russian Counsel Declaration. In addition, all capitalized terms not otherwise defined herein have the meaning ascribed to them in the Russian Counsel Declaration.

dated January 31, 2012 (Preska, Acting CJ). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1410.

## II.
## BACKGROUND

A.      **Commencement Of Russian Insolvency Proceeding**

3.      On March 11, 2016, on application of the Central Bank of Russia, the Moscow Arbitration Court declared the Bank insolvent and commenced a bankruptcy proceeding under the Russian Bankruptcy Law (the "Commencement Order"). A copy of the Commencement Order is attached to the Russian Counsel Declaration as Exhibit B. The Commencement Order appointed the DIA[3] as the trustee for the Bank. Thereafter, in accordance with Russian Bankruptcy Law, the DIA on March 16, 2016 sent a report to the Moscow Arbitration Court designating Korzhenkova Natalia Igorevna as the authorized representative, with power of attorney, to act on behalf of the DIA in respect of the Russian Insolvency Proceeding. Russian Counsel Declaration at Exhibit C. On November 10, 2016, the DIA sent a report to the Moscow Arbitration Court indicating that as of November 7, 2016 Khalizev Aleksandr Victorovich succeeded Ms. Korzhenkova as the authorized representative to act on behalf of the DIA in respect of the Russian Insolvency Proceeding. Russian Counsel Declaration at Exhibits D and E. The Russian Insolvency Proceeding remains pending (see discussion *infra* at Section II.C.)

B.      **Overview Of The Bank's Business**

4.      The Bank has been privately owned by, among others, Ms. Larisa Markus. The Bank was incorporated as a limited liability company under the federal laws of the Russian Federation in July 1995. On July 3, 1995 the Central Bank of Russia issued the Bank its license

---

[3]     The DIA is a Russian state corporation providing bank deposit insurance for Russian licensed banks and acts as a trustee for banks in liquidation.

2

(Registration No. 3261). Since receiving its first license in 1995, the Bank was granted a general banking license in 2001 and joined a deposit insurance system in 2004. The Bank's headquarters are located in Moscow and, until its banking license was revoked in January 2016, the Bank operated in 7 federal districts of Russia.

5. The Bank specialized in lending to medium-sized and large businesses. It was one of the 40 largest lenders in Russia in terms of assets. The Bank mainly engaged in traditional banking businesses of corporate loans, guarantees, and other fee-based products marketed to corporate clients.

6. As of October 1, 2015, the Bank reported assets worth RUB 284.6 billion and equity capital of RUB 16.6 billion.[4]

7. Ms. Markus served as the Bank's President and member of its Managing Board and Board of Directors.

C. **Events Leading Up To, And Current Status Of, The Russian Insolvency Proceeding**

8. After investigating the Bank, the Central Bank of Russia, on December 18, 2015, appointed a temporary administrator to oversee the Bank. As a result of concerns regarding the Bank's liquidity and the violation of certain minimum capital requirements, the Central Bank of Russia, on December 22, 2015, imposed a moratorium on the Bank's payment of creditor claims.

9. In connection with such moratorium, on December 22, 2015, Ms. Markus was arrested on suspicion of a "large-scale" fraud. According to news reports:

> Auditors reviewing Vneshprombank's liquidity found a $2.4 billion hole in its finances, the largest ever uncovered for a Russian bank. Investigators have accused Ms. Markus and others connected to the bank of embezzling about $13 million from

---

[4] As of November 8, 2016, 10 Russian rubles were equal in value to 16 U.S. cents.

3

clients' accounts and investing some of that money abroad. She has denied the charges.[5]

10. According to investigators, Ms. Markus and accomplices caused the Bank to enter into lending agreements with affiliated companies that had no intention of repaying, and failed to repay, the money borrowed from the Bank. Additionally, upon information and belief, Ms. Markus transferred Bank assets (including cash and real estate properties) directly or indirectly to her family members. According to the criminal investigation, based on an analysis of only 4 loan agreements, the damage suffered by the Bank from the alleged fraud has been estimated at RUB 877 million (over $13.5 million). Once the investigation is concluded, the DIA suspects that the damage suffered by the Bank from the alleged fraud will be significantly higher. The DIA believes the funds embezzled by Ms. Markus found their way into the United States and were used, in part, to purchase New York real estate.

11. Investigators have alleged that Mr. Bedzhamov (Ms. Markus's brother) knowingly played a part in the fraudulent schemes devised by Ms. Markus. Upon information and belief, Mr. Bedzhamov fled from Russia to Monaco and is seeking asylum in Monaco. The Moscow Tverskoi Court, on February 5, 2016, sanctioned his arrest in absentia. Mr. Bedzhamov is currently on an international wanted list.

12. According to the Central Bank of Russia's investigation, the Bank's liabilities exceed its assets by about RUB 214.5 billion (over $3,364,970,895.00 as of November 18, 2016).

---

[5] Patrick Revell, *In Mix of Russian Sports, Politics and Business, a Bobsled Leader in Exile*, The New York Times, Feb. 25, 2016, http://www.nytimes.com/2016/02/25/sports/olympics/russian-bobsled-presidents-saga-reflects-russian-sport-woes.html?_r=0 (last visited Oct. 25, 2016)

13.     The Central Bank of Russia decided against rehabilitating the Bank, revoked its license on January 21, 2016 and commenced the Russian Insolvency Proceeding on March 11, 2016.

14.     The main goal of the DIA in the Russian Insolvency Proceeding is to ensure the rights of all of the Bank's creditors.  To achieve this goal, the DIA, among other things, timely verifies creditors' claims, manages the bankruptcy estate, traces and challenges transactions that did not benefit the estate, and, on behalf of the Bank, pursue actions against persons that contributed to the Bank's failure.  In that regard, the DIA is empowered to pursue any legal actions to recover the Bank's assets illegally transferred out of the Bank, even if such transfers were to third parties located outside of Russia.

15.     The notice of the Debtor's creditors' claims bar date was published on February 6, 2016 in the newspaper "Kommersant" and "Bulletin of the Bank of Russia."  On June 17, 2016 a meeting of the Debtor's creditors was held in Moscow.

16.     As of October 1, 2016, the DIA received claims from over 11,000 claimants for a total amount of approximately RUB 230 billion (approximately $3.6 billion).

17.     Additionally, as of October 1, 2016, the DIA holds RUB 3.3 billion on deposit in the Central Bank of Russia for the benefit of the Bank's creditors.  The DIA expects to be able to pay creditors their pro rata share of such assets less costs of administration.  Currently, it is expected that general unsecured creditors of the Bank will receive at least 12% of their allowed claims.  That percentage will increase to the extent that the DIA is successful in recovering assets fraudulently or otherwise wrongly transferred by the Bank.

D.  **Pending Litigation In The United States District
    Court For the Southern District of New York**

18.     As part of Ms. Markus' fraudulent scheme, allegations have been made that Ms. Markus formed numerous limited liability companies in New York including (1) LM-31B, LLC;

5

(2) LM-27D, LLC; (3) LM-24C, LLC; (4) LM-23H, LLC; (5) LM-20A, LLC; (6) LM-18W, LLC; (7) LM-10C, LLC; and (8) LM Management, LLC (collectively the "New York LLCs"). Each of the New York LLCs was seemingly created for the sole purpose of owning a specific condominium or cooperative apartment unit in New York City. Upon information and belief, the funds used by the New York LLCs to purchase these properties came from funds held by the Bank for its customers and unlawfully transferred, directly or indirectly, by the Bank to the New York LLCs.

19. On March 22, 2016, Panabroker Protecting and Indemnity Association, S.A. ("Panabroker"), a Panamanian company and an alleged creditor of the Bank, commenced an action in the United States District Court for the Southern District of New York against the Bank and the New York LLCs (the "SDNY Litigation"). *See Panabroker Protecting and Indemnity Association, S.A. v. Vneshprombank, et al.*, Case No. 16-cv-02120 (ALC) (S.D.N.Y. 2016). An amended complaint was filed by Panabroker on July 26, 2016. According to Panabroker, it is owed approximately $1,570,421.93 from the Bank for commissions earned pursuant to certain agreements between the Bank and Panabroker. The complaint alleges claims against the Bank for breach of contract and violations of the Racketeer Influenced and Corrupt Organizations Act. It additionally alleges claims against the New York LLCs for unjust enrichment and violations of the Racketeer Influenced and Corrupt Organizations Act.

20. The Bank has not been served with Panabroker's complaint and has not answered or otherwise appeared in the SDNY Litigation. Nonetheless, it appears that Panabroker served the NY LLCs with the complaint inasmuch as the NY LLCs have filed a motion to dismiss the claims asserted against them in the SDNY Litigation. The motion to dismiss is still being briefed and is expected to be heard in early 2017.

21. In the SDNY Litigation, Panabroker alleges that the NY LLCs are liable for Panabroker's claims against the Bank. (See ¶¶ 28 – 39 in the Panabroker Amended Complaint attached as Exhibit G to the Russian Counsel Declaration.) Panabroker has alleged that the real estate owned by the NY LLCs was purchased by Ms. Markus using funds wrongfully and illegally appropriated from the Bank.

22. If the property owned by the NY LLCs rightfully belongs to the Bank, it is property that should be turned over to the DIA for the benefit of all of the Bank's creditors, not just Panabroker. Upon entry of an order recognizing this chapter 15 petition, the SDNY Litigation will be stayed. The DIA intends to investigate and determine whether the Bank has claims against the NY LLCs and other parties located in the United States.[6]

### III.
### RELIEF REQUESTED

23. The DIA seeks entry of an order substantially in the form of the Proposed Order attached hereto and pursuant to sections 105(a), 1507(a), 1509(b), 1515, 1517, 1520, 1521 of the Bankruptcy Code, that:

    a.   grants the Petition in this case and recognizes the Russian Insolvency Proceeding as foreign main proceedings pursuant to section 1517 of the Bankruptcy Code;

    b.   recognizes the DIA as the "foreign representative" of the Debtor as defined in section 101(24) of the Bankruptcy Code in respect of the Russian Insolvency Proceeding;

    c.   gives full force and effect and grants comity in the United States to the Commencement Order;

    d.   permanently enjoins all parties from commencing or taking any action in

---

[6] The DIA is not aware of any imminent threat by the NY LLCs to transfer or encumber the property owned by the NY LLCs or otherwise frustrate the claims of the DIA against them before they are adjudicated. The DIA reserves the right to seek provisional relief from the Court (including the entry of an order enjoining the NY LLCs from further transferring or encumbering their property until the DIA's claims are adjudicated) should circumstances warrant such relief.

        the United States to obtain possession of, exercise control over, or assert claims against the Debtor or its property; and

e.    grants such other and further relief as the Court deems just and proper.

## IV.
## BASIS FOR RECOGNITION AND RELIEF REQUESTED

A.    **The Petition Satisfies The Requirements Of Chapter 15 And The Russian Insolvency Proceeding Is Entitled To Recognition As A Foreign Main Proceeding**

24.    Section 1517(a) of the Bankruptcy Code provides that the Court shall enter "an order recognizing a foreign proceeding as a foreign main proceeding if (1) such foreign proceeding is a foreign main proceeding within the meaning of section 1502 [of the Bankruptcy Code], (2) the foreign representative applying for recognition is a person or body, and (3) the petition meets the requirements of section 1515" of the Bankruptcy Code. 11 U.S.C. § 1517; *In re Oversight & Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008).

25.    As set forth below, the Russian Insolvency Proceeding should be recognized as a foreign main proceeding and the Commencement Order should be recognized and enforced because this chapter 15 case was properly commenced by a duly authorized foreign representative, the Russian Insolvency Proceeding qualifies as a foreign proceeding, and the foreign proceeding is pending in the country where the Bank has its center of main interests.

    i.    **The Russian Insolvency Proceeding is a "Foreign Proceeding"**

26.    Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). As discussed in the Russian Counsel Declaration, the Russian Insolvency Proceeding is a judicial proceeding brought under the Russian Bankruptcy Law and is supervised

8

by a Russian court. The Russian Bankruptcy Law provides for a controlled procedure designed to maximize the value of the Bank's assets, to realize these for the purpose of equitable distribution among the Bank's depositors and other creditors, and, where the claims of the Bank's creditors have been satisfied in full, enable the Bank to avoid liquidation and recover its solvency.

27.    There can be no doubt that the Russian Insolvency Proceeding qualifies as a foreign proceeding. The court in Russia has exercised its authority, held hearings and issued rulings (including the appointment of the DIA as the Bank's trustee). Additionally, the Russian Insolvency Proceeding is not for the benefit of a single creditor, but rather the Bank's entire creditor body, and is for the purpose of liquidating the Bank's assets. Accordingly, the Russian Insolvency Proceeding qualifies as a judicial proceeding in a foreign country.

28.    In addition to qualifying as a "foreign proceeding" under section 101(23), the Russian Insolvency Proceeding qualifies as a "foreign main proceeding," which is defined in the Bankruptcy Code as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4); *see also* 11 U.S.C. § 1517(b)(1) (providing that an order of recognition of a foreign main proceeding shall be entered if the foreign proceeding that is subject to the petition "is pending in the country where the debtor has the center of its main interests").

29.    The Bankruptcy Code does not define or provide a conclusive test for determining the location of a debtor's center of main interests ("COMI"). However, "[i]n the absence of evidence to the contrary," there is a statutory presumption that a debtor's "registered office" is its COMI. *See* 11 U.S.C. § 1516(c). When considering a debtor's COMI, courts may consider the analogous concept of an entity's "principal place of business" or "nerve center." As such, in determining a debtor's COMI, the Court of Appeals for the Second Circuit has held that "the

9

relevant principle . . . is that the COMI lies where the debtor conducts its regular business, so that [it] is ascertainable by third parties. . . . Among other factors that may be considered are the location of headquarters, decision-makers, assets, creditors, and the law applicable to most disputes." *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 130 (2d Cir. 2013).

30. Here, the Bank's registered office and principal place of business is located in Moscow, Russia. A majority of all decisions was made in the Bank's Moscow office and substantially all the Bank's creditors are located in Russia. Accordingly, it is beyond dispute that the COMI for the Debtor is Russia.

    ii.    **The DIA Is An Appropriate "Foreign Representative"**

31. The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> [A] person or body, including a person or body appointed on an interim basis authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

32. As set forth in the Commencement Order, the DIA was appointed by the court in Russia and is duly authorized to act as a trustee for the Bank. As a trustee, the DIA is responsible for, among other things, preserving the Bank's property, compiling a register of creditors' claims, notifying creditors of the commencement of the Russian Insolvency Proceeding, and preparing for the first meeting of creditors. Additionally, the DIA is authorized under Article 189.78 of the Russian Bankruptcy Law to commence this Petition and seek recognition of the Russian Insolvency Proceeding. *See* Russian Counsel Declaration at ¶ 12 (it is the obligation of the DIA, as trustee, to take measures to find and recover the Bank's assets and

the DIA is authorized, *inter alia*, to file any application necessary to search, find and recover the Bank's assets).

### iii. The Petition Meets the Requirements of 11 U.S.C. § 1515

33. The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of section 1515 of the Bankruptcy Code. 11 U.S.C. § 1517(a)(3). Specifically, section 1515 of the Bankruptcy Code provides that:

> (b) A petition for recognition shall be accompanied by—
>
>     (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;
>
>     (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or
>
>     (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.
>
> (c) A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.
>
> (d) The documents referred to in paragraphs (1) and (2) of subsection (b) shall be translated into English. The court may require a translation into English of additional documents.

11 U.S.C. § 1515.

34. Here, all of those procedural requirements have been satisfied. In accordance with sections 1515(b)(1)-(2) and (d) of the Bankruptcy Code, the DIA has submitted documents, translated into English, which evidence the existence of the Russian Insolvency Proceeding and the appointment of the DIA as foreign representative thereof. *See* Exhibits A through F to the

Russian Counsel Declaration. Additionally, in accordance with section 1515(c) of the Bankruptcy Code, the Declaration of Khalizev Aleksandr Victorovich contains a statement identifying the Russian Insolvency Proceeding as the only foreign insolvency proceeding currently pending with respect to the Debtor. *See Declaration of Khalizev Aleksandr Victorovich on Behalf of the DIA, as Foreign Representative, Pursuant to 11 U.S.C. § 1515 and in Support of Verified Petition and Recognition Hearing*, filed contemporaneously herewith, at ¶ 7. Finally, pursuant to Bankruptcy Rule 1007(a)(4), the required lists and statements were included with the Petition.

35. As set forth above, each of the prerequisites to recognition under section 1517 has been met. Accordingly, the DIA respectfully requests that the Court recognize (i) the Russian Insolvency Proceeding as a foreign main proceeding and (ii) the DIA as a foreign representative.

B. **The DIA Is Entitled To Relief Under 11 U.S.C. § 1520**

36. Upon recognition of the Russian Insolvency Proceeding as a foreign main proceeding, section 1520 of the Bankruptcy Code prescribes certain forms of relief available to the DIA and respecting the Debtor's property within the territorial jurisdiction of the United States. Such relief is granted automatically as a consequence of recognition and requires no further showing by the DIA to obtain such relief.

37. Specifically, section 1520 of the Bankruptcy Code provides for the following relief:

(1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;

(2) sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;

12

(3)  unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552; and

(4)  section 552 applies to property of the debtor that is within the territorial jurisdiction of the United States

11 U.S.C. § 1520.

38. Therefore, upon recognition, the Debtor is entitled to the benefit of the automatic stay provided under section 362(a) of the Bankruptcy Code in respect of all actions and proceedings against the Debtor, including the SDNY Litigation, and the Debtor's property in the United States.

C.  **Additional Relief Under 11 U.S.C. § 1521 Is Necessary And Appropriate**

39. In addition to the relief automatically provided by section 1520 of the Bankruptcy Code, section 1521 of the Bankruptcy Code provides that the court may grant a foreign representative "any appropriate relief" subject to certain limitations (which do not apply here) where necessary to effectuate the purpose of chapter 15. Such relief may "include," among other relief, the "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities." 11 U.S.C. § 1521.

40. Courts have held that section 1521(a)(4) provides for not only the examination of witnesses but the production of documents. *See In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 860 (Bankr. C.D. Cal. 2008) (relief under section 1521(a)(4) "includes the examination of witnesses pursuant to Rule 2004 and the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities[.]");[7] *In re SPhinX Ltd.*, 351 B.R. 103, 113 (Bankr. S.D.N.Y.

---

[7] Bankruptcy Rule 2004 provides an additional ground for seeking discovery in a chapter 15 proceeding. *In re Glitnir banki hf.*, No. 08-14757 (SMB), 2011 WL 3652764, at *6 (Bankr. S.D.N.Y. Aug. 19, 2011).

13

2006) (recognizing various forms of relief available to a foreign representative in chapter 15 proceedings, including "the examination of witnesses and the delivery of information"); *see also* 8 Collier on Bankruptcy ¶ 1521.02 (16th ed. rev. 2012) ("Subsection 1521(a)(4) enables discovery.").[8]

41. The DIA seeks, upon recognition of the Russian Insolvency Proceeding, to take the discovery of all entities related to, affiliated with, owned, or controlled by Ms. Markus, including the NY LLCs. As set forth above, Ms. Markus with accomplices may have unlawfully transferred, directly or indirectly, money held on deposit at the Bank to persons or entities in the United States or have used banks in the United States to channel such money to other jurisdictions. Consequently, discovery in the United States is necessary to find and recover the Bank's assets for the benefit of its depositors and other creditors. The issuance of a subpoena compelling the production of documents and the attendance at a deposition by parties who have, or may have, knowledge of the whereabouts of estate assets is consistent with the fundamental policies of the Russian Bankruptcy Law and the Bankruptcy Code.

---

The purpose of a Rule 2004 examination is to aid in the discovery of assets and any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). In the context of a chapter 15 case, the scope of an examination, under Rule 2004 is set forth in section 1521(a)(4). *In re Glitnir banki hf.*, No. 08-14757 (SMB), 2011 WL 3652764, at *6.

[8] Additionally, 28 U.S.C. § 1782 provides that a federal court where a person resides or is found "may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." Courts have relied on Section 1782 in granting discovery for use in a foreign bankruptcy proceeding. *See, e.g.*, *In re Lancaster Factoring Co.*, 90 F.3d 38 (2d Cir. 1996). Section 1782 allows discovery in aid of an ongoing adversarial proceeding for the purpose of "pursu[ing] potential claims against third parties" as well as the "equally legitimate goals of reconstructing financial records, evaluating key transactions and identifying and recovering the debtors' assets." *In re Application of Hill*, 2005 WL 1330769, *5 (S.D.N.Y. June 3, 2005); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).

V.
**RESERVATION OF RIGHTS**

42. Pursuant to sections 1519(a) and 1521(a) of the Bankruptcy Code, the DIA hereby reserves all rights to seek, at any point (either before or after a change in circumstances under section 1518 of the Bankruptcy Code), further and other relief from this Court that may be necessary to implement the Russian Insolvency Proceeding and to effectuate the purposes of chapter 15.

VI.
**SATISFACTION OF LOCAL BANKRUPTCY RULE 9013-1(a)**

43. This Verified Petition contains citations to the relevant authorities and therefore, satisfies Rule 9013-1(a) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York. Notwithstanding the foregoing request, the DIA reserves the right to file an appropriate memorandum of law should it become necessary under the circumstances.

VII.
**HEARING DATE AND NOTICE**

44. The DIA requests that the Court set a date for a hearing (the "Hearing Date") pursuant to section 1517(c) of the Bankruptcy Code and Local Bankruptcy Rule 2002-2 to approve the Petition and recognize the Russian Insolvency Proceeding as a foreign main proceeding. If no objections to this Petition are filed by the date ordered for such objections, the DIA requests that the Court enter the Proposed Order recognizing the Russian Insolvency Proceeding as a foreign main proceeding without a hearing.

45. The DIA submits that when the Hearing Date has been set by the Court, notice will be given as reasonable and appropriate and consistent with Bankruptcy Rule 2002(q) and Local Bankruptcy Rule 2002-4.

46. In furtherance of this request, contemporaneously herewith, the DIA has filed the *Application for Order Scheduling Hearing on Chapter 15 Petition and Specifying Form and Manner of Service of Notice of Hearing.*

## VIII.
## CONCLUSION

WHEREFORE, the DIA respectfully requests that this Court grant the relief requested herein and such other and further relief as may be just and proper.

Dated: December 19, 2016

                              State Corporation "Deposit Insurance Agency", in its capacity as trustee and foreign representative of Foreign Economic Industrial Bank Limited, "Vneshprombank" Ltd.

                              By: _____
Name: Khalizev Aleksandr Victorovich

Title: Representative of the Financial Organizations' Liquidation Department

Dated: New York, New York
       December 19, 2016

                              BLANK ROME LLP

                              By:   /s/ Evan J. Zucker
                                     Rick Antonoff
                                     Barry N. Seidel
                                     Evan J. Zucker
                                     The Chrysler Building
                                     405 Lexington Avenue
                                     New York, NY 10174
                                     (212) 885-5000

*Attorneys for State Corporation "Deposit Insurance Agency" in its Capacity as Trustee and Foreign Representative for the Debtor*