# Exhibit A

# FEDERAL LAW
# NO. 127-FZ OF OCTOBER 26, 2002
# ON INSOLVENCY (BANKRUPTCY)
**(with the Amendments and Additions of August 22, December 29, 31, 2004, October 24, 2005, July 18, December 18, 2006, February 5, April 26, July 19, October 2, December 1, 2007, July 23, December 3, 30, 2008, April 28, July 19, December 17, 27, 2009, April 22, July 27, December 28, 2010, February 7, May 3, July 1, 12, 18, November 21, 28, 30, December 3, 6, 7, July 28, December 29, 30, 2012, June 7, 28, July 2, 23, December 21, 28, 2013, March 12, July 21, December 1, 22, 29, 2014, June 29, July 13, December 29, 2015)**

**Adopted by the State Duma on September 27, 2002**
**Approved by the Federation Council on October 16, 2002**

## Chapter I. General Provisions

**Article 1.** The Relations Governed by the Present Federal Law

**1.** Pursuant to the Civil Code of the Russian Federation the present Federal Law establishes grounds for declaring a debtor insolvent (bankrupt), regulates the procedure and terms for implementing insolvency (bankruptcy) prevention measures, proceedings applicable in a bankruptcy case and other relations occurring when a debtor is not capable of meeting creditors' claims in full.

**2.** The operation of this Federal Law shall extend to legal entities which can be declared insolvent (bankrupt) in compliance with the Civil Code of the Russian Federation.

**3.** The relations connected with the insolvency (bankruptcy) of citizens, in particular individual entrepreneurs, shall be governed by the present Federal Law. The norms governing the insolvency (bankruptcy) of citizens, in particular individual entrepreneurs, which are contained in other federal laws shall be applicable only after appropriate amendments are made to the present Federal Law.

**4.** If an international treaty of the Russian Federation has established rules different from those envisaged by the present Federal Law, the rules of the international treaty of the Russian Federation shall apply.

**5.** The relations which are governed by the present Federal Law and involve foreign persons as creditors shall be subject to the provisions of the present Federal Law except as otherwise is envisaged by an international treaty of the Russian Federation.

**6.** The decisions of foreign states' courts on insolvency (bankruptcy) cases shall be recognised on the territory of the Russian Federation in compliance with the international treaties of the Russian Federation.

In case of lack of international treaties of the Russian Federation the decisions of foreign states' courts on insolvency (bankruptcy) cases shall be recognised on the territory of the Russian Federation on the basis of reciprocity, except as otherwise envisaged by a federal law.

**Article 2.** The Basic Terms Used in the Present Federal Law

The following basic terms are used for the purposes of the present Federal Law:

**"insolvency" ("bankruptcy") (hereinafter also referred to as "bankruptcy")** meaning a debtor's incapacity -- recognised by an arbitration court -- to meet in full creditors' claims for money liabilities, on paying severance benefits and/or labour wages of the persons who have worked or are working under a labour contract and/or to execute the duty of making

compulsory payments;

**"debtor"** meaning a citizen, including an individual entrepreneur or a legal entity, that has turned out to be unable to meet creditors' claims for money liabilities, on paying severance benefits and/or labour wages of the persons who have worked or are working under a labour contract and/or to execute the duty to make compulsory payments within the term established by the present Federal Law;

**"monetary obligation"** meaning a debtor's obligation to pay a certain sum of money to a creditor under a civil-law transaction and/or on another ground envisaged by the Civil Code of the Russian Federation and the budget legislation;

**"compulsory payments"** meaning taxes, fees and other compulsory contributions paid to the budget of relevant level of the budget system of the Russian Federation and/or state non-budget funds in the procedure and on the terms defined by the legislation of the Russian Federation, for instance fines, penalties and other sanctions for default on, or the improper performance of, the duty to pay taxes, fees and other compulsory contributions to the budget of relevant legal of the budget system of the Russian Federation and/or state non-budget funds, and also administrative fines and the fines established by the criminal legislation;

**"the head of a debtor"** meaning the sole executive body of a legal entity or the head of a collective executive body, and also another person that carries out activities on behalf of a legal entity without a power of attorney;

**"creditors"** meaning persons having claims for money liabilities in respect of a debtor, for the compulsory payments, the payment of severance allowances and the payment of remuneration for the labour of persons who is working or had worked under a labour contract;

**"bankruptcy creditors"** meaning creditors for money liabilities (except for empowered bodies, the citizens to which the debtor is liable for the infliction of harm to life or health or moral harm, has obligations to pay out a compensation in excess of the compensation for harm provided for by the Town-Planning Code of the Russian Federation (compensation in excess of the compensation for harm caused as a result of the demolition or damage of a capital development unit, failure to satisfy the safety requirements while constructing a capital development unit and the requirements for ensuring the safe operation of a building or structure), royalties to the authors of the results of intellectual activity, and also the founders (stockholders) of the debtor for the obligations ensuing such participation);

**"authorised bodies"** meaning the federal executive governmental body empowered by the Government of the Russian Federation to present claims in a bankruptcy case and in the proceedings applicable in a bankruptcy case for compulsory payments and claims of the Russian Federation for money liabilities, and also the executive governmental bodies of subjects of the Russian Federation and the local self-government bodies empowered to present claims in a bankruptcy case and in the proceedings applicable in a bankruptcy case for money liabilities of the Russian Federation or municipal formations respectively;

**"control (supervision) body"** meaning the federal executive governmental body empowered by the Government of the Russian Federation to carry out the functions of exercising control (supervision) over the activity of self-regulating organisations of qualified receivers;

**"regulator"** meaning the federal executive governmental body empowered by the Government of the Russian Federation to carry out the functions of state policy elaboration and normative legal regulation in the area of insolvency (bankruptcy) and financial rehabilitation;

**"readjustment"** meaning measures taken by the owner of property of a debtor being an unitary enterprise, by the debtor's founders (stockholders), the debtor's creditors and by other persons for the purpose of preventing bankruptcy and restoring the solvency of the

debtor, for instance at any stage of hearing of the bankruptcy case;

**"receivership"** meaning a proceeding applied in a bankruptcy case to the debtor for the purpose of ensuring the preservation of its/his/her property, analysing the financial state of the debtor, drawing up a list of creditors' claims and holding the first meeting of creditors;

**"financial rehabilitation"** meaning a procedure applied in a bankruptcy case to the debtor for the purpose of restoring its/his/her solvency and repaying debts in accordance with a debt repayment schedule;

**"external administration"** meaning a proceeding applied in a bankruptcy case to the debtor for the purpose of restoring its/his/her solvency;

**"winding up"** meaning a proceeding applied in a bankruptcy case to the debtor deemed bankrupt for the purpose of commensurately meeting creditors' claims;

**"restructuring of debts of an individual"** is a recovery procedure applicable in a bankruptcy case to the individual for recovery of his solvency and repayment of debt to creditors in accordance with the debt restructuring schedule;

**"individual's asset disposal"** is a recovery procedure applicable in a bankruptcy case to an individual acknowledged bankrupt for proportional satisfaction of creditors' claims;

**"amicable agreement"** meaning a procedure used in a bankruptcy case at any stage of hearing thereof for the purpose of terminating proceedings in the bankruptcy case by means of reaching agreement between the debtor and creditors;

**"representative of the founders (stockholders) of a debtor"** meaning the chairman of the board of directors (supervisory board) or another similar collective managerial body of a debtor or a person elected by the board of directors (supervisory board) or another similar collective managerial body of a debtor or a person elected by the founders (stockholders) of a debtor to represent their lawful interests when the proceedings applicable in a bankruptcy case are being implemented;

**"representative of the owner of the property of a debtor being an unitary enterprise"** meaning a person empowered by the owner of the property of a debtor being an unitary enterprise to represent its lawful interests when the proceedings applicable in a bankruptcy case are being implemented;

**"representative of a creditors' committee"** meaning a person empowered by a creditors' committee to participate in an arbitration litigation in a case of the bankruptcy of a debtor on behalf of the creditors' committee;

**"representative of a creditors' meeting"** meaning a person empowered by a meeting of creditors to participate in an arbitration litigation in a case of the bankruptcy of a debtor on behalf of a meeting of creditors;

**"a qualified receiver"** meaning a citizen of the Russian Federation being a member of a self-regulating organisation of qualified receivers;

**"an interim receiver"** meaning an qualified receiver confirmed by an arbitration court for the purpose of receivership in accordance with the present Federal Law;

**"an administrative receiver"** meaning an qualified receiver confirmed by an arbitration court to carry out financial rehabilitation in accordance with the present Federal Law;

**"a receiver"** meaning an qualified receiver confirmed by an arbitration court to carry out external administration and execute the other powers established by the present Federal Law;

**"a winding-up (bankruptcy) receiver"** meaning an qualified receiver confirmed by an arbitration court to carry out a winding-up proceeding and execute the other powers established by the present Federal Law, or the Agency for Deposits' Insurance exercising the cited powers, where it is established by this Federal Law;

**"financial manager"** is a insolvency practitioner approved by the arbitration court for

participation in bankruptcy case of an individual;

**"moratorium"** meaning a debtor's suspending the repayment of money liabilities and of the compulsory payments;

**"representative of a debtor's employees"** meaning a person empowered by the employees, former employees of a debtor to represent their lawful interest when the proceedings applicable in a bankruptcy case are being implemented;

**"self-regulating organisation of qualified receivers" (hereinafter also referred to as "self-regulating organisation")** meaning a membership-based not-for-profit organisation formed by citizens of the Russian Federation, about which information is included in the uniform state register of self-regulating organisations of qualified receivers and which has the regulation and support of qualified receivers' activities as its goals;

**"national association of self-regulating organisation of qualified receivers" (hereinafter also referred to as "national association of self-regulating organisations")** meaning a membership-based not-for-profit organisation formed by self-regulating organisations which has as its members more than 50 per cent of all the self-regulating organisations about which information is included in the uniform state register of self-regulating organisations of qualified receivers and which has the goal of shaping up a coordinated position of qualified receivers on issues of regulation of the activities they are pursuing;

**"the person controlling a debtor"** means the person which enjoys or have enjoyed within less than two years before acceptance by an arbitration court of the application for declaring the debtor bankrupt the right to give directions to be followed by the debtor without fail or the ability to determine in some other way the debtor's actions, including by way of coercion of the debtor's head or members of its managerial bodies or by way of exerting in some other way the determining influence upon the debtor's head or members of managerial bodies thereof (in particular, as persons controlling a debtor may be recognized members of the liquidation commission, the person which by virtue of the authority based on a power of attorney, a regulatory legal act or a special power could make deals on behalf of the debtor, the person entitled to dispose of fifty and more per cent of voting stocks of a joint stock company or over half of shares in the authorised capital of a limited (double) liability company, or the head of the debtor);

**"harm caused to creditors' property rights"** means the reduction of the cost or rate of the debtor's property and/or the increase of the extent of property claims towards the debtor, as well as other effects of the deals or different actions relevant in law, or omission of such actions, which are made by the debtor causing the full or partial loss by creditors of the opportunity to have their claims in respect of the debtor's obligations satisfied on account of the property thereof;

**"property's insufficiency"** means the excess of the rate of the debtor's pecuniary obligations and of the duties to make obligatory payments over the cost of the debtor's property (assets);

**"inability to pay"** means termination of the exercise by the debtor of a part of pecuniary obligations or duties to make obligatory payments caused by insufficiency of monetary assets thereof. With this, insufficiency is presumed, if not proved otherwise.

**"federal standards"** - federal standards of professional work of arbitration managers and federal standards of activity of the self-regulating organisations of the arbitration managers, worked out by the national association of the self-regulating organisations of the arbitration managers, authorised by the regulating body according to the present Federal law and which shall be obligatory for implementation by the arbitration manager and self-regulating organisations of arbitration managers.

**Article 3.** Signs of Bankruptcy of a Legal Entity

**1.** Abrogated from October 1, 2015.

**2.** A legal person shall be deemed incapable of meeting the claims of creditors related to monetary obligations, on paying severance benefits and/or labour wages of the persons who have worked or are working under a labour contract and/or to execute the duty of making mandatory payments if the person does not discharge the obligations and/or duties within three months after their due date.

**3.** The provision envisaged by Item 2 of this Article shall be applied, unless otherwise established by this Federal Law.

**Article 4.** The Composition and Amount of Monetary Obligations, Claims for Paying Severance Benefits and/or for Paying Labour Wages to the Persons Who Are Working or Have Worked under a Labour Contract and of Mandatory Payments

**1.** The composition and amount of monetary obligations, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract and mandatory payments shall be determined as of the date of filing an application with a court of arbitration for declaring a debtor bankrupt, except as otherwise established by the present Federal Law.

The composition and amount of the monetary obligations, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract and mandatory payments which occurred before the acceptance by an arbitration court of an application for declaring a debtor bankrupt and which were announced after the acceptance of such application by the arbitration court shall be defined as of the date of commencement of the first proceeding used in the bankruptcy case.

Paragraph 3 is abrogated.

The composition of monetary obligations, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract and mandatory payments denominated in a foreign currency shall be determined in roubles at the exchange rate set by the Central Bank of the Russian Federation as of the date of institution of each proceeding applicable in a bankruptcy case and following the due date of a specific obligation.

For the purposes of participation in a bankruptcy case account shall be taken of creditors' claims for the money liabilities, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract and for the compulsory payments for which due date has not yet been reached as of the date of commencement of receivership.

**2.** The following shall be taken into account to determine the availability of evidence of the bankruptcy of a debtor:

the amount of monetary obligations, in particular the amount of debt for delivered goods, completed works and provided services, loan amounts with account taken of the interest the debtor has to pay, the amount of a debt occurring as the result of profit without ground, and the amount of a debt occurring as the result of damaging the property of creditors, except for obligations to the citizens to whom the debtor is liable for inflicted harm to life or health, obligation to pay out compensation in excess of the compensation for harm, obligation to pay out royalties to the authors of the results of intellectual activity and also obligations to the debtor's promoters (stockholders) ensuing from such a participation;

a mandatory payment amount without taking into account fines (penalties) and other financial sanctions established by the legislation of the Russian Federation.

The following, as subject to application for a default on or improper performance of an obligation: forfeit money (fines, penalties), interest for payment deferment, losses in the form

of loss of profit subject to compensation for default on, or the improper performance of an obligation and also other property and/or financial sanctions, in particular, for a breach of the duty to make mandatory payments, shall not be taken into account in the assessment of availability of evidence of the bankruptcy of a debtor.

3. The amount of monetary obligations or mandatory payments shall be deemed established if it is determined by a court in the manner envisaged by the present Federal Law.

4. In cases when the debtor contests the claims of creditors the amount of monetary obligations, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract or mandatory payments shall be determined by a court of arbitration in the manner envisaged by the present Federal Law.

5. The claims of creditors relating to obligations not being monetary obligations may be presented to a court and they shall be examined by the court, or court of arbitration in the manner set out in the procedural legislation.

**Article 4.1.** The Specifics of Estimating the Amount of Pecuniary Obligations Resulting from Financial Agreements

1. Obligations resulting from agreements made under the terms and conditions of a general agreement (single agreement) that corresponds to the model terms and conditions of the agreements provided for by Article 51.5 of the Federal Law on the Securities Market, and/or the agreements made under the terms and conditions of the organised trading rules and/or clearing rules (hereinafter referred to as financial agreements) shall be terminated in the procedure provided for by the cited general agreement (single agreement), and/or the organized trading rules, and/or clearing rules. In the event of the cited termination of obligations, a pecuniary obligation (pecuniary obligations) shall arise whose amount (amounts) shall be estimated in the procedure provided for by the general agreement, and/or the organized trading rules, and/or the clearing rules.

2. The rules of Item 1 of this article shall apply in respect of financial agreements made before the date of appointment of the provisional administration or before the date of adoption by an arbitration court of the decision on initiation of one of the bankruptcy proceedings or before the date of withdrawal of the licence for making bank operations, depending on what date is the earliest.

3. Where financial agreements are made under the terms and conditions of a general agreement (single agreement), it is necessary for applying the rules of Item 1 of this article to satisfy the following requirements in addition to those of Item 2 of this article:

1) one of the parties to an agreement (beneficiary under an agreement) is:

a Russian credit institution or professional securities market participant;

the Bank of Russia;

a foreign legal entity entitled in compliance with the personal law thereof to exercise banking activities or professional activities in the securities market and having the place of its establishment in the states cited in Subitems 1 and 2 of Item 2 of Article 51.1 of the Federal Law on the Securities Market;

the central bank of the foreign state cited in Subitems 1 and 2 of Item 2 of Article 51.1 of the Federal Law on the Securities Market;

an international financial organization;

other Russian legal entity;

the Russian Federation, constituent entities of the Russian Federation, municipal entities;

owners of investment shares of a unit investment fund (when they are beneficiaries

under a financial agreement made by the management company in the interests of the unit investment fund);

the foreign state, the constituent entity of a foreign federative state, the administrative-territorial entity of a foreign state which are cited in Subitems 1 and 2 of Item 2 of Article 51.1 of the Federal Law on the Securities Market;

other foreign legal entity having the place of its establishment in the states cited in Subitems 1 and 2 of Item 2 of Article 51.1 of the Federal Law on the Securities Market.

With this, the second party to a financial agreement must be the person provided for by Paragraphs Two-Six of this subitem;

2) an entry in respect of making a financial agreement is made in the register kept by a self-regulated organization of professional securities market participants, the clearing organisation or exchange in the procedure provided for by Article 51.1 of the Federal Law on the Securities Market;

3) a general agreement (single agreement) provides for a procedure for termination of obligations with initiation of bankruptcy proceedings by one of the parties to the general agreement (single agreement) and for estimating the amount of the net obligation - the pecuniary obligation arising in connection with such termination stipulating that:

obligations shall be terminated under all the agreements made in compliance with the general agreement (single agreement);

a general agreement (single agreement) contains the procedure for termination of obligations in connection with initiation of bankruptcy proceedings by one of the parties to the general agreement (single agreement) and for estimating the amount of the net obligation - the pecuniary obligation arising in connection with such termination that satisfies the requirements of Subitem 2 of Item 3 of Article 51.5 of the Federal Law on the Securities Market;

the net obligation shall be estimated in respect of all the obligations to be terminated and shall not include compensation for losses in the form of lost earnings and recovery of forfeits (fines, penalties).

4. If financial agreements are made under the terms of organized trade and/or clearing rules, then for applying the rules of Item 1 of this article in addition to the requirements of Item 2 of this article the cited rules must contain a procedure for termination of obligations in connection with bankruptcy and for estimating the amount of the net-obligation that satisfies the requirements of Subitem 6.1 of Item 2 of Article 4 of the Federal Law on Clearing and Clearing Activity

5. The provisions of this article shall not apply to the obligations involved in paying a remuneration to a clearing organization and to the organizations cited in Items 4 - 7 of Part 2 of Article 19 of the Federal Law on Clearing and Clearing Activity resulting from the rules for organized trade and/or from clearing rules.

6. Provisions of this Article shall not be applied to the relations regulated by paragraph 7 of Chapter IX and Chapter X of this Federal Law.

**Article 5.** Current Payments

1. For the purposes of the present Federal Law "current payments" means the monetary obligations, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract and mandatory payments that have occurred after date of the acceptance of an application for declaring a debtor bankrupt, unless otherwise established by this Federal Law.

The creditors' claims that have occurred after the commencement of proceedings in a bankruptcy case in respect of payment for goods delivered, services provided and works completed are deemed current.

2. Creditors' claims for current payments shall not be included in the register of creditors' claims. Current payment creditors shall not be deemed persons being party to the bankruptcy case when appropriate proceedings applicable in a bankruptcy case are carried out.

3. During the procedures applicable in a bankruptcy case, the claims of current payment creditors shall be met in the manner established by the present Federal Law.

4. Current-payment creditors are entitled to take appeal from actions or omissions of the qualified receiver to the arbitration court that is considering the bankruptcy case if such actions or omissions infringe on their rights and lawful interests.

**Article 6.** Hearing Bankruptcy Cases

1. Bankruptcy cases shall be heard by a court of arbitration.

2. Unless otherwise envisaged by this Federal Law, proceedings on a bankruptcy case can be initiated by the arbitration court on condition that the claims to the debtor that is a legal entity are not less than 300 thousand roubles in total and to the debtor that is an individual - not less than the amount set by Item 2 of Article 213.3 of this Federal Law.

3. Paragraph 1 is abrogated.

Empowered bodies' demands for compulsory payments shall be taken into account for the purposes of commencing proceedings in a bankruptcy case if such demands are confirmed by decisions of a tax body or customs body on collection of amounts of money and other property of a debtor for its/his/her debts or by a court decision or arbitration court decision that has become final.

**Article 7.** Right to File an Application with a Court of Arbitration

1. The debtor, bankruptcy creditor, and authorised bodies have a right to file an application for declaring a debtor bankrupt, as well as the debtor's employee or former employee having claims for paying severance benefits and/or for payment of labour wages.

2. A bankruptcy creditor, the debtor's employee or former employee, and the authorised body shall begin to have the right of applying to an arbitration court in respect of money liabilities from the date on which a court decision, an arbitration court decision or a court judgement on issuance of writs of execution for enforced execution of decisions of an umpire on collection of amounts of money from the debtor becomes final.

A bankruptcy creditor being a credit organisation shall begin to have the right to apply to an arbitration court from the date on which the debtor starts to have the signs of bankruptcy established by the present Federal Law.

In respect of mandatory payments the authorised body shall begin to have the right to apply to an arbitration court upon the expiry of 30 days after the date of the decision mentioned in Paragraph 2 of Item 3 of Article 6 of the present Federal Law.

2.1. A bankruptcy creditor being a credit organisation shall begin to have the right to apply to an arbitration court in the procedure established by Paragraph 2 of Item 2 of Article 7 of the present Federal Law, on the condition of a preliminary, at least 15 calendar days before the application to the arbitration court, publication of a notice of intent to file an application for deeming a debtor bankrupt by means of including the debtor in the Unified Federal Register of Information on the Activities of Legal Entities.

3. A partial satisfaction of the claims of a bankruptcy creditor, the debtor's employee or

former employee, or an authorised body shall not be deemed a ground for the court of arbitration to refuse accepting an application for declaring a debtor bankrupt if the amount of the claims that have not been met yet is less than the amount determined under Item 2 of Article 6 of the present Federal Law.

**Article 8.** Right to File a Debtor's Application with a Court of Arbitration
The debtor is entitled to file a debtor's application with a court of arbitration if a bankruptcy is anticipated when circumstances exist that provide clear evidence of the debtor's not being capable of performing monetary obligations, claims for paying severance benefits and/or for payment of labour wages to the persons who are working or have been working under a labour contract and/or executing his/her/its duty to make mandatory payments when due.

**Article 9.** The Debtor's Obligation to File a Debtor's Application with a Court of Arbitration
1. The head of the debtor shall file a debtor's application with a court of arbitration if:
satisfaction of claims of one creditor or several creditors makes it impossible for the debtor to discharge monetary obligations or the duty of making mandatory payments and/or other payments in full to other creditors;
the debtor's body authorised under the debtor's constitutive documents to take the decision to liquidate the debtor has adopted the decision to file a debtor's application with a court of arbitration;
the body authorised by the owner of property of the debtor being a unitary enterprise has decided to file a debtor's application with a court of arbitration;
a levy of execution against the debtor's property is going to significantly aggravate or make impossible the pursuit of the debtor's economic activity;
the debtor has the signs of inability to pay and/or signs of insufficiency of property thereof;
there are arrears, which are not cancelled within more than three months because of insufficiency of monetary assets, in payment of severance benefits, labour wages and other payments which are due to an employee or former employee in the amount and in the procedure which are established in compliance with the labour legislation;
in other cases specified by the present Federal Law.
2. The debtor's application shall be sent to the court of arbitration where it is specified by Item 1 of the present article within the shortest time period possible but at the latest in one month after the date of emergence of relevant circumstances.
3. If in the course of its liquidation a legal entity started to show the signs of inability to pay and/or the signs of insufficiency of property thereof, the liquidation commission of the debtor is obliged to file the application with an arbitration court within ten days from the time when any of the said signs are detected.

**Article 10**. Liabilities of the Debtor and Other Persons in a Bankruptcy Case
1. If the provisions of this Federal Law have been violated by the head of a debtor or a founder (stockholder) of a debtor, the owner of the property of a debtor being a unitary enterprise, members of the managerial bodies of a debtor, members of a liquidation commission (liquidator) or a debtor being a citizen, the said persons shall compensate for the losses caused as a result of such violation.
2. Default on executing the duty to file a debtor's application with an arbitration court in the cases and within the term established by Article 9 of this Federal Law shall cause the subsidiary liability of the persons in which this Federal Law has vested the duty to take a

decision on filing a debtor's application with an arbitration court and to file such application, in respect of the debtor's liabilities which have come into being after the expiry of the term envisaged by Items 2 and 3 of Article 9 of this Federal Law.

**3.** If a debtor's application has been filed by a debtor with an arbitration court when the debtor is capable of meeting creditors' claims in full or the debtor has not taken measures for contesting ungrounded claims of a claimant the debtor shall have liability vis-a-vis the creditors for the losses caused by the institution of proceedings in a bankruptcy case or unsubstantiated recognition of the creditor's claims.

**4.** If a debtor has been deemed unable to pay (bankrupt) due to the actions and/or omission of the persons which control the debtor such persons shall bear subsidiary liability for the debtor's liabilities if the debtor's property is insufficient.

Until proven otherwise, it is assumed that the debtor is deemed unable to pay (bankrupt) due to the actions and/or omissions of the persons which control the debtor if one of the below circumstances exists:

the property rights of creditors have been harmed as a result of the conclusion of one or several transactions of the debtor by that person or for the benefit of that person or approval by that person, including the transactions specified in Articles 61.2 and 61.3 of this Federal Law;

as of the time when a ruling is turned out on instituting observation (or as of the time of appointing the provisional administration of a financial organisation) or a decision is taken on deeming the debtor bankrupt the accounting and/or reporting documents for which the duty to keep (draw up) and store them is established by the legislation of the Russian Federation are not available or do not contain the information on the facilities envisaged by the legislation of the Russian Federation which compulsorily prepared in keeping with the legislation of the Russian Federation or said information is distorted and accordingly there is a substantial impediment for the realisation of the procedures applicable in a bankruptcy case, for instance for the formation and sale of the debtor's property available for collection.

The provisions of Paragraph 4 of this item are applicable to the person in which the duty is vested to organise the bookkeeping and the storage of accounting records and/or accounting (financial) statements of a debtor.

If a debtor has been deemed unable to pay (bankrupt) as a result of the actions and/or omissions of several persons which control the debtor such persons shall bear sole liability.

A person who controls a debtor and through whose actions and/or omissions the debtor has been deemed unable to pay (bankrupt) shall not bear subsidiary liability if the person proves that the debtor's being deemed unable to pay (bankrupt) is not through the person's fault. Such person shall also be deemed not guilty if the person has acted in good faith and reasonably in the interests of the debtor.

The amount of subsidiary liability of the person controlling the debtor is equal to the aggregate amount of the creditors' claims included in the register of creditors' claims and also have been declared after the closing of the register of creditors' claims and creditors' claims for current payments which have remained outstanding for the insufficiency of the debtor's property.

The amount of liability of the person controlling the debtor is subject to the relevant reduction if the person proves that the amount of actual harm caused to the property rights of creditors through the fault of that person is materially less than the amount of claims which have to be met at the expense of that person.

**5.** An application for holding the persons controlling a debtor accountable in line of subsidiary liability on the grounds envisaged by this Federal Law and also an application for

compensation to the debtor for the losses inflicted thereon by the debtor's founders (stockholders) or the debtor's managerial bodies (members of its managerial bodies) on the grounds envisaged by the legislation of the Russian Federation shall be considered by an arbitration court in case of the debtor's bankruptcy.

An application for holding the person controlling a debtor accountable in line of subsidiary liability may be filed in the course of winding-up proceedings by a bankruptcy receiver either on his own initiative or by decision of a meeting of creditors or creditors' committee or on the grounds envisaged by Items 2 and 4 of this article, it may also be filed by a bankruptcy creditor, a representative of the debtor's employees, the debtor's employee or former employee or the authorised body.

An application for compensation to a debtor for the losses inflicted thereon by its founders (stockholders) or its managerial bodies (members of its managerial bodies) may be filed in the course of winding-up proceeding or receivership by the debtor's bankruptcy receiver, receiver or founder (stockholder) or in the course of winding-up proceedings also by a bankruptcy creditor or the authorised body.

An application for holding a person controlling a debtor accountable in line of subsidiary liability on the grounds envisaged by Items 2 and 4 of this article may be filed within one year after the day on which the person that files that application learned or should have learned about the existence of the relevant grounds for subsidiary liability but not later than three years after the date on which the debtor was deemed bankrupt. If the reason for the lapsing of the period of limitation is justifiable it may be reinstated by a court.

An application for holding a person controlling a debtor accountable in line of subsidiary liability shall not be filed after the termination of the winding-up proceeding.

If as of the time of consideration of an application for holding accountable in line of subsidiary liability on the ground envisaged by Item 4 of this article the amount of liability cannot be appraised then the court, having established all other factors of importance, shall suspend the consideration of that application until accounts get settled with creditors or until the end of consideration of the creditors' claims which had been declared before the end of settlements of accounts with creditors.

Proceedings in the bankruptcy case shall not be terminated before a ruling is turned out by the arbitration court in respect of claims for holding the persons controlling the debtor accountable. In the event of termination of procedural actions in the bankruptcy case the arbitration court may suspend on its own initiative proceedings in the bankruptcy case until a ruling is turned out in respect of the claims for holding the said persons accountable. For the period of suspension of the bankruptcy case in accordance with this article no fixed sum of remuneration shall be paid to the qualified receiver with the debtor's funds.

6. The persons in respect of which applications have been filed for holding them accountable in line of subsidiary liability in accordance with this Federal Law and also in the form of compensating for the losses incurred by the debtor shall have the rights and responsibilities of parties to a bankruptcy case.

7. A ruling shall be turned out according to the results of consideration of the application for holding the persons controlling the debtor accountable in line of subsidiary liability or an application for holding the persons controlling the debtor and also the persons specified in Item 1 of this article accountable in the form of compensation for losses, this ruling being subject to appeal. The ruling on holding the said persons accountable in the line of subsidiary liability shall state the amount of their liabilities, and the ruling on collection of compensation for the losses incurred by the debtor, the amount of compensation for losses collected. A writ of execution shall be issued on the basis of the ruling for holding such persons accountable in line of subsidiary liability (collection of compensation for losses).

8. The amounts of money collected from the persons controlling the debtor which have

been held accountable in line of subsidiary liability and also the compensation for losses collected shall be included in the debtor's property available for collection.

After the ruling becomes final the claim for holding the person controlling the debtor accountable in line of subsidiary liability shall be implemented according to the rules set out in Article 140 of this Federal Law.

**9.** The holding of the persons controlling the debtor accountable in line of subsidiary liability for the debtor's liabilities shall not obstruct the presentation of claims by the debtor's founders (stockholders) for compensation for losses by the bodies of the legal entity on the grounds envisaged by Item 3 of Article 53 of the Civil Code of the Russian Federation and the federal laws adopted in accordance with it, in as much as it concerns the portion not covered by the amount of subsidiary liability.

**10.** Information on filing of the application for bringing of persons controlling the debtor to a subsidiary liability or the application for bringing of persons controlling the debtor and the persons cited in Item 1 of this Article, to liability in the form of indemnification of losses, on court acts issued in respect of such applications and court acts for their review shall be included in the unified federal register of information on bankruptcy.

Notifications subjected to inclusion in the unified federal register of information on bankruptcy shall contain, in accordance with this Item, the following:

name (surname, first name and patronymic (if any)) of the person controlling the debtor, in respect of which the application is filed (for legal entities - Cyrillic and Latin letters can be used);

nationality of the controlling person (country of registration);

data identifying the controlling person (taxpayer identification number, primary state registration number - for legal entities, insurance number of individual personal account of the insured person in the system of compulsory medical insurance - for individuals), and for foreign persons - their equivalents in accordance with the country of citizenship (registration);

amount of liability in accordance with the application (except for cases of impossibility of determining the amount of liability as of the date of filing of the application) or the court act.

**Article 11.** The Rights of Creditors and Authorised Bodies

**1.** The bankruptcy creditors, the debtor's employees or former employees and authorised bodies have a right to file an application for declaring a debtor bankrupt.

**2.** The executive governmental bodies and the organisations on which a right to collect mandatory payment arrears has been conferred under Russian law are entitled to attend court hearings dedicated to the examination of grounds for claims in respect of these payments and grounds for including these claims in the register of creditors' claims.

**Article 12.** The Meeting of Creditors

**1.** The following are deemed participants with voting rights in a meeting of creditors: the bankruptcy creditors and the empowered bodies whose claims have been included in the list of creditors' claims as of the date of the meeting of creditors. The following have the right to attend the meeting of creditors without voting rights: a representative of the debtor's employees, a representative of the debtor's founders (stockholders), a representative of the property of the debtor being an unitary enterprise, a representative of the self-regulating organisation in which the qualified receiver who is confirmed in the bankruptcy case is member and a representative of a control (supervision) body which are entitled to speak on the issues included in the agenda of the meeting of creditors.

If a single bankruptcy creditor or authorised body takes part in the bankruptcy case the decisions falling within the scope of powers of the meeting of creditors shall be made by such creditor or authorised body.

The arranging and holding of a meeting of creditors shall be done by the qualified receiver.

Bankruptcy creditors whose claims are secured by pledge of the debtor's property shall have the right of vote at creditors' meetings:

in the course of supervision;

in the course of financial improvement and external management in case of refusal to realize the subject of pledge or issuance by an arbitration court of a ruling on rejection of the application for realization of the subject of pledge in appropriate bankruptcy proceedings;

on the issue of selecting a qualified receiver or self-regulating organisation from among whose members the arbitration court is to confirm a qualified receiver;

on the issue of filing a petition with the arbitration court for removal of a qualified receiver;

on the issue of filing a petition with the arbitration court for termination of winding-up proceedings and switch to receivership.

in the course of restructuring of debt of an individual;

in the course of sale of assets of an individual.

Bankruptcy creditors, as regards the claims secured by pledge of the debtor's property and in respect of which they do not enjoy the right of vote, are entitled to participate in a creditors' meeting without the right of vote, in particular to speak on the items on the agenda of a creditors' meeting.

**2.** The taking of decisions on the following issues is the prerogative of the meeting of creditors on:

the performance of financial rehabilitation, external administration and the modification of the term for the completion thereof, the filing of a relevant petition with the arbitration court;

the confirmation and modification of an external administration plan;

the confirmation of a financial rehabilitation plan and a debt repayment schedule;

the confirmation of additional qualifications applicable to contenders for the position of administrative receiver, receiver or winding-up receiver;

the selection of an qualified receiver or the self-regulating organisation from the members of which an qualified receiver is confirmed by the arbitration court;

the setting of the rate of, and the procedure for paying out, an additional fee for the qualified receiver;

the increasing the amount of the fixed sum of the fee of the qualified receiver;

the selection of a registrar from among the registrars accredited by a self-regulating organisation of qualified receiver;

the conclusion of an amicable agreement;

the filing of a petition with the arbitration court for deeming a debtor bankrupt and for commencing winding up proceeding;

the setting up of a creditors' committee, the setting of the number of its members, the election of the creditor's committee members and the termination before due date the powers of the creditors' committee;

the putting the following within the scope of powers of the creditors' committee: the issues on which decisions according to the present Federal Law are taken by the meeting of creditors or by the creditors' committee, except for the issues which are within the exclusive cognisance of the meeting of creditors according to the present article;

the election of a representative of the meeting of creditors.

The issues which fall within the exclusive cognisance of the meeting of creditors according to the present Federal Law shall not be referred to other persons or bodies to be resolved by them.

**3.** At the meeting of creditors the bankruptcy creditor or authorised body shall have a

number of votes according to the share of the amount of their claim to the sum total of claims relating to monetary obligations and mandatory payments included in the register of creditors' claims as of the date of the meeting of creditors in compliance with the present Federal Law.

Forfeit money (fines, penalties), interest for late payment that can be charged for default on or improper performance of an obligation, losses in the form of profit lost and also other property and/or financial sanctions, in particular, for a default on the duty to make mandatory payments, shall not be taken into account at the meeting of creditors for the purposes of determining the number of votes.

**4.** The meeting of creditors shall be competent if attended by the bankruptcy creditors and the authorised bodies included in the register of creditors' claims which have more than half of the total number of votes of the bankruptcy creditors and the authorised bodies included in the register of creditors' claims. A meeting of creditors convened again shall be competent if attended by the bankruptcy creditors and the authorised bodies included in the register of creditors' claims which have more than 30 per cent of the total number of votes of the bankruptcy creditors and the authorised bodies included in the register of creditors' claims, on the condition that the bankruptcy creditors and the authorised bodies have been appropriately notified of the time and place of the meeting of creditors in keeping with the present Federal Law.

**5.** If no meeting of creditors has been held by an qualified receiver within the term set by Item 3 of Article 14 of the present Federal Law, a meeting of creditors may be held by the person or persons which demand convocation thereof.

**6.** By the decision of a meeting of creditors or an interim receiver the registrar holding the register of creditors' claims is entitled to exercise the following functions at the meeting of creditors:

verify the powers and register the persons attending the meeting of creditors;
ensure the observance of the established voting procedure;
count votes;
draw up minutes on the results of voting.

**7.** The minutes of a meeting of creditors shall be drawn up in duplicate, with one copy going to the court of arbitration within five days after the meeting of creditors, except if another term is set by the present Federal Law.

When a meeting of creditors is held in the manner specified in Item 5 of the present article the minutes of the meeting of creditors shall be drawn up in triplicate, with the first copy going to the court of arbitration, the second one to the qualified receiver within five days after the meeting of creditors. The third copy of the minutes of the meeting of creditors shall be kept by the person that held the meeting.

Copies of the following documents shall be attached to the minutes of a meeting of creditors:

a register of creditors' claims as of the date of the meeting of creditors;
ballot papers;
documents confirming the powers of the persons who attended the meeting;
the materials presented to the persons who attended the meeting for information and/or approval;
the documents deemed evidence of appropriate notice having been served to the bankruptcy creditors and the authorised bodies of the date and place of the meeting of creditors;
other documents, designated at the discretion of the qualified receiver or by the decision of the meeting of creditors.

The originals of said documents shall be kept by the qualified receiver or registrar until

the completion of proceedings in a bankruptcy case, except if another term is set by the present Federal Law, they shall be shown upon the request of the court of arbitration or in other cases established by a federal law. The report containing data on the decisions adopted by a general meeting of creditors or data on declaring a meeting of creditors frustrated is subject to inclusion by the qualified receiver into the Comprehensive Federal Register of Data on Bankruptcy within five working days after the date of holding it or, in the event of holding a meeting of creditors by other persons, within three working days as from the date of receiving by the qualified receiver a record of the creditors' meeting.

The qualified receiver shall provide access to copies of the said documents to the persons deemed party to the bankruptcy case and also to a representative of the debtor's employees, a representative of the debtor's promoters (stockholders), a representative of the owner of property of the debtor being a unitary enterprise.

**Article 12.1.** A Meeting of the Debtor's Employees or Former Employees, the Election of a Representative of the Debtor's Employees

**1.** A meeting of the debtor's employees or former employees shall be organised and held by the qualified receiver.

A meeting of the debtor's employees or former employees shall be held at the latest five working days before the date of a creditors' meeting.

If it is impossible to hold a meeting of the debtor's or former employees at the location of the debtor or of the debtor's managerial bodies, the place of holding such meeting shall be determined by the qualified receiver.

By decision of the qualified receiver a meeting of the debtor's employees or former employees may be held in the form of an absentee vote.

**2.** For the purposes of this Federal Law, as a proper notification of the debtor's employee or former employee shall be deemed forwarding thereto by mail an annoucement about holding the meeting of the debtor's employees or former employees at the latest 10 days before the date of holding it or in some other way ensuring the receipt of such announcement at least five working days before the date of holding the meeting of the debtor's employees or former employees, as well as publication of such message in the procedure established by Article 28 of this Federal Law.

Where the number of the debtor's employees or former employees exceeds 100, as a proper notification thereof shall be deemed publication of an announcement about holding a meeting of the debtor's employees or former employees in the procedure established by Article 28 of this Federal Law.

If it is impossible to notify personally the debtor's employee or former employee at the place of their permanent or predominant place of location or if there are other circumstances making impossible such notification of the cited persons, as a proper notification of the cited persons shall be deemed publication of data on holding a meeting of the debtor's employees or former employees in the procedure established by Article 28 of this Federal Law.

**3.** The following shall be cited in an announcement of holding a meeting of a debtor's employees or former employees:

1) form of holding the meeting of a debtor's employees or former employees (meeting or absentee vote);

2) date, place and time of holding the meeting of the debtor's employees or former employees, if such meeting is held in the form of an absentee vote, the end date of acceptance of ballot-papers for voting and postal address whereto the completed ballot-papers have to be sent;

3) agenda of the meeting of the debtor's employees and former employees.

**4.** When holding a meeting of the debtor's employees or former employees in the form

of an absentee vote, an announcement about holding the meeting of the debtor's employees or former employees included into the Unified Federal Register of Data on Bankruptcy shall have ballot-papers attached thereto.

5. If a meeting of the debtor's employees or former employees is not held by the qualified receiver at the time provided for by this article, a meeting of the debtor employees or former employees may be held by the person or persons demanding to call it.

6. A meeting of the debtor's employees or former employees shall be deemed legally competent, if it is attended by more than half of the debtor's employees or former employees who are known as of the date of calling such meeting.

7. Decisions a meeting of the debtor's employees or former employees shall be adopted by a majority vote of the number of the debtor's employees or former employees attending such meeting or, in the event of holding it by absentee vote, by a majority vote of the total number of the debtor's employees or former employees.

8. A record of a meeting of the debtor's employees or former employees shall be drawn up in two copies, one of them to be forwarded to an arbitration court at thelatest in three days as from the date of holding such meeting.

In the event of holding a meeting of the debtor's employees or former employees in the procedure established by Items 3 and 4 of this article, a record of such meeting shall be drawn up in three copies, one of them to be forwarded to an arbitration court while the second one shall be forwarded to the qualified receiver at the latest in three days as from the date of holding such meeting. The third copy of a record of a meeting of the debtor's employees or former employees shall be kept by the person holding such meeting.

A representative of the debtor's employees shall exercise the authority thereof on the basis of the record cited in this item.

A report containing data on the decisions adopted by a meeting of the debtor's employees or former employees is subject to inclusion by the qualified receiver into the Unified Federal Register of Data on Bankruptcy within five working days as from the date of holding such meeting or, in the vent of holding it by other persons, within three working days as from the date of receiving by the qualified receiver a record of the meeting of the debtor's employees or former employees. This report along with the data cited in Item 8 of Article 28 of this Federal Law shall contain data on the number of the debtor's employees or former employees attending the meeting of the debtor's employees and on the amount of claims of the second-turn creditors.

9. A meeting of the debtor's employees or former employees is entitled at any time to elect a new representative of the debtor's employees instead of the representative of the debtor's employees previously elected by a meeting of the debtor's employees or former employees.

For the purpose of electing a new representative of the debtor's employees, at least half of the number of the debtor's employees or former employees shall file an appropriate application with the qualified receiver.

A representative of the debtor's employees is entitled to unilaterally reject the exercise of the authority of a representative of the debtor's representative, having forwarded an appropriate application to the qualified receiver at least two months before the date of termination of the cited authority.

For the purpose of election of a new representative of the debtor's employees in the instances cited in this item the qualified receiver at the latest within 20 working days as from date of receiving the application cited in this item shall inform the representative of the debtor's employees on termination of the authority thereof, as well as shall organise and hold a meeting of the debtor's employees or former employees for the purpose of election of a representative of the debtor's employees in the procedure established by this article.

10. A representative of the debtor's employees while exercising the rights and discharging the duties thereof provided for by federal laws shall act in the interests of all the debtor's employees and former employees.

11. The services of a representative of the debtor's employees shall be be paid on account of the debtor. On application of the qualified receiver the rate of payment for the services of a representative shall be established by an arbitration court.

**Article 13.** Notification of a Meeting of Creditors

1. For the purposes of the present Federal Law the following shall be deemed an appropriate notification: the sending of a notice to a bankruptcy creditor authorised body and also another person entitled under the present Federal Law to attend the meeting of creditors on the holding of a meeting of creditors by post at least 14 days prior to the date of the meeting of creditors or in another way ensuring the receipt of the notice at least five working days prior to the date of the meeting of creditors.

2. If the number of bankruptcy creditors and authorised bodies exceed 500 the following shall be deemed appropriate notice: an announcement of a meeting of creditors in the manner specified in Article 28 of the present Federal Law.

If the details required for a personal notification of a bankruptcy creditor at his permanent or predominant residence or at the location of a person entitled under the present Federal Law to attend the meeting of creditors cannot be found out or if other circumstances exist making it impossible to so notify the said persons the following shall be deemed an appropriate notice to such persons: the publication of information of a meeting of creditors in the manner set out in Article 28 of the present Federal Law.

3. The announcement of a forthcoming meeting of creditors shall contain the following:
the name and location of the debtor and the debtor's address;
the date, time and place of the meeting of creditors;
the agenda of the meeting of creditors;
the procedure for getting familiarised with the materials to be examined by the meeting of creditors;
the procedure for registering the persons who attend the meeting.
The person that holds a meeting of creditors shall provide the opportunity for reading the materials presented to the participants in the meeting of creditors for getting acquainted with and/or for being endorsed, at least five working days before the date of the meeting of creditors, except as another term is set by the present Federal Law.

4. A report on holding a meeting of creditors is subject to inclusion by the qualified receiver into the Comprehensive Federal Register of Data on Bankruptcy in the procedure established by Article 28 of this Federal Law at least fourteen days before the date of holding the creditors' meeting.

**Article 14.** The Procedure for Convening a Meeting of Creditors
1. The meeting of creditors shall be convened on the initiative of:
the qualified receiver;
the creditors' committee;
bankruptcy creditors and/or authorised bodies whose rights of claim make up at least ten per cent of the sum total of the creditors' claims relating to monetary obligations and mandatory payments included in the register of creditors' claims;
one third of the total number of bankruptcy creditors and authorised bodies.

**2.** The demand to hold a meeting of creditors shall contain the issues subject to inclusion in the agenda of the meeting of creditors.

The qualified receiver is not entitled to modify the wording of issues on the agenda of a meeting of creditors convened at the demand of the creditors' committee, bankruptcy creditors and/or authorised bodies.

**3.** The meeting of creditors shall be held by the qualified receiver at the demand of the creditors' committee, bankruptcy creditors and/or authorised bodies within three days after the date of receipt by the qualified receiver of the demand of the creditors' committee, bankruptcy creditors and/or authorised bodies for the holding of a meeting of creditors, except if another term is set by the present Federal Law.

**4.** The meeting of creditors shall be held at the place where the debtor or the debtor's managerial bodies are located, except as otherwise established by the meeting of creditors.

If the meeting of creditors cannot be held at the place where the debtor or the debtor's managerial bodies are located the qualified receiver shall designate a place for the meeting to be held at.

The date, time and place of a meeting of creditors shall not impede the attendance at the meeting of creditors or their representatives and other persons entitled to attend the meeting of creditors in compliance with the present Federal Law.

**Article 15.** The Procedure for a Meeting of Creditors to Adopt Decisions

**1.** The decisions of a meeting of creditors on the issues put up for voting shall be adopted by a majority of votes of the bankruptcy creditors and authorised bodies present at the meeting of creditors, except as otherwise envisaged by the present Federal Law.

**2.** At the meeting of creditors the following decisions shall be adopted by the majority of the total number of votes of bankruptcy creditors and authorised bodies, whose requirements are included in the register of creditors:

on the formation of a creditors' committee, the determination of the composition and powers of the creditors' committee, the election of members of the committee;

on the termination before due time of the powers of the creditors' committee and the election of a new composition of the creditors' committee;

on the institution of financial rehabilitation, a change in the term thereof and the filing of a relevant petition with a court of arbitration;

on the endorsement of an debt repayment schedule;

on the institution and prolongation of external administration and the filing of a relevant petition with a court of arbitration;

on the endorsement and modification of a external administration plan;

on the filing of a petition with a court of arbitration for declaring the debtor bankrupt and commencing winding-up procedure;

on the selection of a qualified receiver or a self-regulating organisation from among whose members a qualified receiver is going to be approved by the court of arbitration;

on the filing of a petition with a court of arbitration for dismissal of a qualified receiver;

on the inclusion of additional issues in the agenda of the meeting of creditors and on the decisions adopted on such issues;

on the conclusion of an amicable agreement in the manner and on the terms established by Item 2 of Article 150 of the present Federal Law.

**3.** Abrogated.

**4.** If a decision of the meeting of creditors violates the rights and legal interests of the persons being party to the bankruptcy case, the arbitration process on the bankruptcy case, of third persons or if it has been adopted in breach of the limits of competence of the meeting of

creditors established by the present Federal Law, such decision may be declared invalid by the court of arbitration examining the bankruptcy case if the persons taking part in the bankruptcy case, in the arbitration process on the bankruptcy case or third persons file an application to this effect.

Within twenty days after the date of the decision, the application for declaring a decision of the meeting of creditors invalid may be filed by a person which has been appropriately notified of the holding of the meeting of creditors which has adopted such a decision.

The application for declaring a decision of the meeting of creditors invalid may be filed by a person which has not been appropriately notified of the holding of the meeting of creditors which has adopted such a decision, within twenty days after the date when such a person learned or should have learned of the decisions adopted by the meeting of creditors, within six months after the date on which a decision was adopted by the meeting of creditors.

**5.** The ruling of an arbitration court that declares invalid a decision of a meeting of creditors or refuses to declare invalid a decision of a meeting of creditors shall be subject to immediate implementation and it shall be subject to appeal in the manner set out in Item 3 of Article 61 of the present Federal Law.

Article 16. The Register of Creditors' Claims

**1.** The register of creditors' claims shall be kept by the qualified receiver or registrar.

The following persons shall keep a register of creditors' claims in the capacity of a registrar: professional participants in the securities market pursuing the activity of keeping a register of the owners of securities.

The registrar shall pursue its activity in accordance with the federal standards concerning the content of, and the procedure for keeping, a register of creditors' claims.

**2.** The decision to invite a registrar to keep a register of creditors' claims and to select a specific registrar for this purpose shall be made by the meeting of creditors. Until the date of the first meeting of creditors the interim receiver shall be responsible for taking a decision to invite a registrar to keep a register of creditors' claims and to select a specific registrar for this purpose.

The decision of the meeting of creditors to choose a specific registrar shall contain the rate of remuneration payable for the services of the registrar that has been agreed upon with the registrar.

If the number of the bankruptcy creditors whose claims have been included in the register of creditors' claims exceeds 500 a registrar shall be recruited without fail.

**3.** Within five days after the date when the meeting of creditors choose a registrar, the qualified receiver shall conclude an appropriate contract with the registrar.

A contract may be concluded with the registrar only if the registrar holds a liability insurance policy against losses to persons being party to a bankruptcy case.

Information on the registrar shall be provided by the qualified receiver to the court of arbitration within five days after the conclusion of the contract.

Payment for the services provided by the registrar shall be effected at the expense of the debtor's funds, except if another source of payment for the registrar's services is designated by the meeting of creditors.

**4.** The registrar shall compensate for the losses inflicted by a default on or improper performance of the duties envisaged by the present Federal Law.

If liability for keeping a register of creditors' claims is vested in a registrar, the qualified

receiver shall neither be accountable for the correctness of keeping the register of creditors' claims nor for the committal of other actions (omission) by the registrar causing or capable of causing a loss to the debtor and the debtor's creditors.

**5.** Creditors' claims in a register of creditors' claims shall be recorded in Russian currency. Foreign-currency denominated creditors' claims shall be recorded in a register of creditors' claims in the manner established by Article 4 of the present Federal Law.

**6.** The claims of creditors shall be included in a register of creditors' claims and deleted from it by the qualified receiver or by the registrar exclusively on the basis of court decisions which have become final and which establish their composition and amount, except as otherwise envisaged by the present item.

The claims for severance benefits and/or labour wages of the persons who are working or have been working under a labour contract shall be included into a register of creditors' claims by the qualified receiver or registrar on the proposal of the qualified receiver or, should these claims be disputed, on the basis of the judicial act establishing the composition and amount of these claims.

Claims for severance benefits and/or remuneration for the labour of persons working or have been working under labour contract shall be deleted from the register of creditors' claims by the qualified receiver or by the registrar exclusively on the basis of court decisions which have become final.

If a register of creditors' claims is kept by a registrar the court decisions setting the amount of creditors' claims shall be sent by the arbitration court to the registrar for the purpose of including relevant claims in the register of creditors' claims.

**7.** The register of creditors' claims shall contain information on each creditor, the amount of his claims to the debtor, the priority ranking of each creditor's claim and also the grounds for the emergence of creditors' claims.

While announcing his claim the creditor shall provide information about himself/itself, in particular, full name, passport details (for a natural person), name, location (for a legal person) and also bank account details (if any).

If in the debtor's bankruptcy case the interests of creditors which are bond owners are represented, a representative of the bond owners defined in compliance with the legislation of the Russian Federation on securities, in the register of creditors' claims shall be cited data on the total amount of the cited creditors' claims and data on such representatives of the bond owners. In so doing, data on each creditor being the owner of bonds shall not be cited.

**7.1.** Claims of bankruptcy creditors concerning the claims secured by pledge of the debtor's property shall be recorded in the register of creditors' claims within the composition of claims of third-priority creditors.

**8.** A person whose claim has been included in a register of creditors claims shall timely notify the qualified receiver or registrar of the changes occurring in the information specified in Item 7 of the present article.

In case of non-provision of such information or the late provision thereof the qualified receiver or registrar and the debtor shall not be liable for the losses inflicted in connection thereto.

**9.** At the request of a creditor or an authorised representative thereof the qualified receiver or registrar shall within five business days after the receipt of such a request send an abstract from the register of creditors' claims to this creditor or the authorised representative thereof on the amount, composition and priority ranking of his/its claims, and if the amount of debt owing the creditor makes up at least one per cent of the total accounts payable shall send a copy of the register of creditors' claims attested to by the qualified receiver to this

creditor or the creditor's authorised representative.

The expenses incurred through the preparation and sending such an abstract and a copy of the register shall be borne by the creditor.

**10.** Disagreements arising between bankruptcy creditors, authorised bodies and the qualified receiver concerning the composition, amount and priority ranking of creditors' claims related to monetary obligations or mandatory payments shall be examined by the court of arbitration in the manner envisaged by the present Federal Law.

Disagreements concerning the creditors' or authorised bodies' claims confirmed by a court decision that has become final in as much as it concerns their composition and amount are not subject to examination by a court of arbitration, and applications concerning such disagreements shall be returned without being considered, except for disagreements relating to performance under court decisions or to review of court decisions.

**11.** Disagreements arising between a representative of a debtor's employees and the qualified receiver and concerning the priority ranking, composition and amount of claims for severance benefits and remuneration for the labour of persons working under labour contracts shall be examined by the court of arbitration in the manner envisaged by the present Federal Law.

Labour disputes between a debtor and his/her/its employee shall be examined in the manner set out by the labour legislation and the civil procedural legislation.

**Article 17.** The Creditors' Committee
**1.** The creditors' committee shall represent the legal interests of bankruptcy creditors and authorised bodies and it shall monitor the activities of the qualified receiver and also exercise the other powers conferred thereon by the meeting of creditors, in the manner set out by the present Federal Law.

**2.** If the number of bankruptcy creditors and authorised bodies is below 50 the meeting of creditors need not adopt a decision to form a creditors' committee.

**3.** To perform the functions vested therein the creditors' committee shall be entitled to:
demand that the qualified receiver or the head of the debtor provide information on the debtor's financial state and on the progress of the proceedings applicable in a bankruptcy case;
appeal the actions of the qualified receiver with a court of arbitration;
make a decision to convene a meeting of creditors;
make a decision to issue a recommendation to the meeting of creditors for dismissal of the qualified receiver from performance by him/her of his/her duties;
make other decisions and commit other actions in the event such powers are conferred thereon by the meeting of creditors in the manner established by the present Federal Law.

**4.** The composition of the creditors' committee in terms of numbers shall be determined by the meeting of creditors but it shall not be below three persons or above 11 persons.

**5.** When issues are decided upon at a meeting of the creditors' committee each committee member shall have one vote.

The transfer of a right to vote from a member of the creditors' committee to another person is prohibited.

**6.** The decisions of the creditors' committee shall be adopted by the majority vote of the total number of members of the creditors' committee.

**7.** To exercise its powers the creditors' committee shall be entitled to elect its representative. Such a decision shall be made in the form of minutes of a meeting of the creditors' committee.

**8.** The rules of deliberations of a creditors' committee shall be determined by the

creditors' committee.

Article 18. The Election of a Creditors' Committee

1. The creditors' committee shall be elected by a meeting of creditors from among natural persons on the proposal of bankruptcy creditors and authorised bodies for the term of receivership, financial rehabilitation, external administration and winding up.

Civil servants and municipal employees may be elected as members of a creditors' committee on the proposal of authorised bodies.

By the decision of the meeting of creditors the powers of the creditors' committee may be terminated before due time.

2. The election of a creditors' committee shall be done by cumulative voting.

When a creditors' committee is being elected each bankruptcy creditor and each authorised body shall have the number of votes equal to the amount of his/her/its claim in roubles times the number of members of the creditors' committee. A bankruptcy creditor and an authorised body shall be entitled to cast the votes she/he/it has for one candidate or spread them among several candidates to the position of a member of the creditors' committee.

The candidates who have the largest numbers of votes shall be deemed elected to the creditors' committee.

3. The members of a creditors' committee shall elect a chairman of the creditors' committee from among themselves.

4. The minutes of a meeting of the creditors' committee shall be signed by the chairman of the creditors' committee, except as otherwise established by the rules of deliberations of the creditors' committee.

5. The minutes of the a meeting of a creditors' committee shall be drawn up in duplicate, the first of the copies going to the arbitration court within five days after the date of the meeting of the creditors' committee, and the second one being stored by the person that has conducted the meeting of the creditors' committee.

If the meeting of the creditors' committee was conducted by a person other than a qualified receiver an additional (third) copy of the minutes of the meeting of the creditors' committee shall be prepared, which shall be sent to the qualified receiver.

Copies of the following shall be attached to the minutes of the meeting of the creditors' committee:

ballot papers (unless another form of decision-taking is envisaged by the standing order);

the materials which have been presented to the members of the creditors' committee for being read and/or endorsed;

documents serving as evidence of the fact that the members of the creditors' committee have been properly notified of the date and place of the meeting of creditors;

other documents at the discretion of the person that conducted the meeting of the creditors' committee, or according to a decision of the creditors' committee.

The aforesaid original documents shall be stored by the person that conducted the meeting of the creditors' committee until the completion of proceedings in the bankruptcy case, except as another term is set by the present Federal Law, and be provided on the demand of the arbitration courts or in the other cases envisaged by the present Federal Law.

The person that conducted the meeting of the creditors' committee shall provide access to the copies of said documents for the persons taking part in the bankruptcy case, and also to a representative of the debtor's employees, a representative of the debtor's promoters (stockholders), a representative of the owner of the property of the debtor being an unitary enterprise, a representative of the self-regulating organisation in which the qualified receiver

confirmed in the bankruptcy case is a member, and a representative of the body in charge of control (supervision). Expenses towards the preparation and sending of such copies shall be borne by the person that demands that they be provided.

Information on the decisions taken at a meeting of the creditors' committee are subject to inclusion by the qualified receiver in the Unified Federal Register of Information on Bankruptcy within three working days after the date on which he receives the minutes of the meeting of the creditors' committee.

### Article 18.1. Specifics of the Legal Status of Creditors Whose Claims Are Secured by Pledge of Debtor's Property

**1.** As from the date of the introduction of supervision, levying execution upon the pledged property, including out of court, is inadmissible.

**2.** A bankruptcy creditor is entitled to levy execution upon a debtor's pledged property in respect of the obligations secured by pledge of the debtor's property in the course of financial improvement and external management, if the debtor cannot prove that levying execution upon the said debtor's property will make it impossible to restore the solvency thereof.

The issue of the possibility of levying execution upon pledged property of a debtor shall be settled by the arbitration court trying the bankruptcy case on the basis of an application of the bankruptcy creditor whose claims are secured by pledge of this property.

**2.1.** In the event of levying execution against pledged rights under an agreement of bank account, the claims of the bankruptcy creditor in respect of the obligation secured by a pledge of rights under the agreement of bank account shall be satisfied in an amount not exceeding the amount of the monetary assets kept on the pledged account as of the date of filing the bankruptcy creditor's application provided for by Item 2 of this article but not exceeding the amount of the claim secured by pledge under the agreement of bank account by way of writing off by a bank monetary assets from this debtor's account and their issuance to the relevant bankruptcy creditor or their entry onto the account cited by such creditor.

Non-satisfied claims of the bankruptcy creditor in respect of the obligations secured by pledge of rights under an agreement of bank account shall be satisfied within the composition of the third-priority creditors' claims.

**3.** A bankruptcy creditor is entitled to send an application about the refusal to realize the subject of pledge in the course of the financial improvement and external management to the qualified receiver and to the arbitration court trying the case on bankruptcy in respect of the obligations secured by pledge of a debtor's property in the course of financial improvement and external management. Starting from the date when such application is received by the qualified receiver, a bankruptcy creditor shall enjoy the right of vote at a creditors' meeting, in respect of the claims secured by pledge of the debtor's property pending the completion of the appropriate procedure applied in bankruptcy proceedings.

**4.** The debtor is entitled to alienate the property constituting the subject of pledge, to let it on lease or for gratuitous use to another person or to dispose of it in some other way or charge the subject of pledge with rights and claims of third persons solely by approbation of the creditor whose claims are secured by such property's pledge, if not otherwise provided for by federal law or the contract of pledge and does not follow from the merits of pledge.

**5.** An object of pledge shall be sold by the trade organiser in the course of financial improvement and external management in accordance with the procedure established in Items 4, 5 and 8-19 of Article 110, and in Item 3 of Article 111 of the present Federal Law.

As the trade organiser shall come out the qualified receiver of a specialised organisation he has invited for this purpose, whose services are remunerated at the expense of funds, derived from selling the object of pledge. The said organisation shall not be an interested person with respect to the debtor, the creditors or the qualified receiver.

The starting price of the object of pledge shall be defined in conformity with the legislation of the Russian Federation on the pledge.

If repeated bidding is recognised as not having taken place, the competition creditor under the liabilities, provided for by a pledge of the debtor's property has the right to retain the object of pledge, with its estimate at a sum ten per cent lower than the starting selling price at the repeated bidding.

The sum of excess of the size of an estimate of the property, retained by the competition creditor over the size of the claim provided for by the pledge shall be returned to the debtor.

The sale of the pledged property in accordance with the present Article entails the termination of the pledge with respect to the competition creditor on whose claim an execution was levied onto the object of pledge.

Upon the sale of the pledged property, the competition creditor's claims on the liabilities provided for by the pledge of the debtor's property shall be satisfied at the expense of funds derived from the sale of the pledged property.

The competition creditor's claims on the liabilities which were provided for by a pledge of the debtor's property and which were not satisfied at the expense of the cost of the object of pledge, shall be satisfied in the composition of claims of the creditors of the third level.

**6.** The sale of an object of pledge in the course of competitive proceedings shall be effected in accordance with the procedure established in Article 138 of the present Federal Law.

**Article 19.** Interested Persons
**1.** For the purposes of the present Federal Law the following persons shall be deemed interested persons in respect to a debtor:

the person which under Federal Law No. 135-FZ of July 26, 2006 on Competition Protection belongs to the same group as the debtor;

the person which is the debtor's affiliated person.

**2.** As interested person with respect to a debtor being a legal entity shall be likewise deemed:

the head of the debtor and also the persons on the board of directors (supervisory board) of the debtor, the collective executive body of the debtor or some other debtor's managerial body, the chief accountant (accountant) of the debtor, in particular, the said persons who had been relieved of performing their duties within the year preceding the time when proceedings were instituted on the bankruptcy case or before the date of appointing the provisional administration of a financial organisation (depending on which date comes first) or the person that can or could within the cited period to determine the debtor's actions;

the persons which have relations defined in Item 3 of the present article with the natural persons specified in Paragraph Two of the present item;

the persons deemed interested in making deals by the debtor in compliance with the civil legislation on appropriate kinds of legal entities.

**3.** As interested persons with respect to the debtor being a citizen shall be deemed his/her spouse, relatives of direct ascending and descending lines, sisters, brothers and their relatives of descending line, the spouse's parents, children, sisters and brothers.

4. Where it is specified by the present Federal Law, as interested persons in relation to the qualified receiver and creditors shall be deemed persons in compliance with Items 1 and 3 of this Article.

**Article 20.** Qualified Receivers

1. The qualified receiver is a citizen of the Russian Federation who is a member of one of self-regulating organisations of qualified receivers.

The qualified receiver is a professional-activity agent who is pursuing the professional activity regulated by the present Federal Law by means of private practices.

A qualified receiver is entitled to pursue other types of professional activity and also entrepreneurial activity, unless such activity affects the appropriate execution of the duties thereof established by this Federal Law. A qualified receiver is only entitled to be member in one self-regulating organisation of qualified receivers.

2. A self-regulating organisation of qualified receivers shall establish the following compulsory conditions for membership in it:

the availability of a higher education background;

the availability of a work record in managerial positions of at least one year and probation as an assistant to a qualified receiver in a bankruptcy case of at least six months or probation as an assistant to a qualified receiver in a bankruptcy case of at least two years, unless longer terms are envisaged by the standards and rules of professional activities of qualified receivers confirmed by the self-regulating organisation (hereinafter referred to as "standards and rules of professional activity");

the passing of a theory examination according to a qualified receiver training curriculum;

the lack of a sanction in the form of disqualification for an administrative offence or of deprivation of a right to occupy certain positions or engage in a certain activity for the commission of a crime;

the lack of conviction for the commission of a deliberate crime;

absence within three years preceding the day of presentation to the self-regulating organisation of the application for entering the membership of this self-regulating organisation of the fact of exclusion from among members of this or another self-regulating organisation of arbitration managers in connection with an infringement of this Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of the professional activity, not eliminated within the term established by the self-regulating organisation or having an ineradicable nature.

3. Also the conditions for membership in the self-regulating organisation of qualified receivers are as follows: the member of the self-regulating organisation having a contract of compulsory insurance of liability that meets the requirements established by Article 24.1 of the present Federal Law, the member of the self-regulating organisation having paid the dues established by it, for instance contributions to the compensation fund of the self-regulating organisation.

4. Apart from the requirements set out in Items 2 and 3 of the present article the self-regulating organisation of qualified receivers is entitled to establish other requirements applicable to the competence, conscientiousness and independence of the qualified receiver as conditions for membership therein.

5. Within the period of membership in a self-regulating organisation of qualified receivers a qualified receiver shall comply with the membership qualifications established by the self-regulating organisation in accordance with Items 2-4 of the present Article. The

procedure for confirming the qualified receiver's compliance with the membership qualifications set by the self-regulating organisation shall be established by the self-regulating organisation.

A member of the self-regulating organisation who does not meet its membership qualifications shall be expelled within one month after the discovery of such non-qualification.

Starting from the date of discovery of a qualified receiver's non-compliance with the requirements established by Items 2-4 of the present Article the qualified receiver shall not be nominated in an arbitration court by the self-regulating organisation for confirmation in a bankruptcy case.

**6.** For the purposes of the present Federal Law "employment in managerial positions" means one's being employed as the head or a deputy head of a legal entity or occupying top and senior state civil service positions of the Russian Federation or being employed as the head or a deputy head of a local self-government body and also pursuing activity as a qualified receiver, provided the duties of the debtor's head are being executed, except for the cases of participation in the proceedings applicable in a bankruptcy case to the relevant debtor.

**7.** On the basis of the membership qualifications established in it, the self-regulating organisation of qualified receivers shall produce a list of the documents which are to be filed by persons when they are admitted as members of the self-regulating organisation and also the requirements applicable to the form of these documents. Within 30 days after the date of filing of a membership application by a person asking for being admitted as member to the self-regulating organisation together with all the documents envisaged by said list the permanent collective managerial body of the self-regulating organisation shall scrutinise the documents filed by the person and if the person meets the requirements established by the membership qualifications of the self-regulating organisation it shall take a decision on admitting the person as member.

**8.** The decision on admitting the person as member of the self-regulating organisation of qualified receivers shall enter into force from the date when the person submitted to the self-regulating organisation the documents confirming compliance with all the membership qualifications of that organisation established in accordance with Item 3 of the present Article.

If the person in respect of which the decision has been taken to admit the person as member of the self-regulating organisation does not meet the membership qualifications of the self-regulating organisation the decision shall be recognised as annulled within two months after the date of the decision.

**9.** Information on a person admitted as member of the self-regulating organisation of qualified receivers shall be included in the register of members of the self-regulating organisation within three working days after the effective date of the decision on admittance of the person as member of the self-regulating organisation. A person in respect of which a decision on admittance as member of the self-regulating organisation has taken effect may be confirmed by an arbitration court as a qualified receiver to carry out the proceedings applicable in a bankruptcy case, starting from the date of inclusion of information about the person in the register of members of the self-regulating organisation of qualified receivers. Within ten working days after the inclusion of information about such person in the register of members of the self-regulating organisation of qualified receivers a membership document of the self-regulating organisation shall be issued to the person.

**10.** If a person does not meet the requirements established by the membership qualifications of the self-regulating organisation of qualified receivers the permanent collective managerial body of the self-regulating organisation of qualified receivers shall take a decision on refusal to admit the person as member of the self-regulating organisation, with reasons for the refusal being indicated.

The decision on refusal to admit the person as member of the self-regulating organisation of qualified receivers shall be sent to the person within ten working days after the date of the decision.

An appeal may be taken from a decision on refusal to admit a person as member of a self-regulating organisation or a self-regulating organisation's evasion of the taking of such decision on admittance or refusal to admit as member of this organisation to the arbitration court within six months after the date of the decision or the date when such decision was to be taken.

**11.** Membership of the arbitration manager in the self-regulating organisation of arbitration managers shall cease by the decision of the permanently operating collegial body of the self-regulating organisation in the case of submission by the arbitration manager to the self-regulating organisation of the application for withdrawal from this self-regulating organisation or in the case of exclusion of the arbitration manager from the self-regulating organisation in connection with:

infringement by the arbitration manager of conditions of membership in the self-regulating organisation;

infringement by the arbitration manager of the requirements of this Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of the professional work not eliminated within the term established by the self-regulating organisation or carrying an ineradicable nature.

Membership of the arbitration manager in the self-regulating organisation of arbitration managers shall cease from the date of entering in the register of members of the self-regulating organisation of the record about the termination of membership of the arbitration manager.

**12.** Disputes related to professional activities of the insolvency practitioner (including those on indemnification of losses inflicted by him) and his relations with the self-regulating organisation of insolvency practitioners shall be settled by the arbitration court.

**13.** In the case where concerning the arbitration manager who submitted to the self-regulating organisation an application for withdrawal from such a self-regulating organisation, proceeding were instituted about application to him of measures of disciplinary influence, the decision of the permanent collegiate body of the self-regulating organisation on the termination of membership of such an arbitration manager shall be taken after the end of consideration of the proceedings instituted against such an arbitration manager about the application to him of measures of disciplinary influence.

**Article 20.1.** Organising and Realising a Theory Examination and Probation in the Capacity of an Assistant to a Qualified Receiver

**1.** A theory examination according to a qualified receiver training curriculum shall be organised and carried out by a commission of which the composition is confirmed by a control (supervision) body. Among the members of the commission for conducting a theory examination there shall be representatives of an educational organisation and of a control (supervision) body.

On the proposal of the national association of self-regulating organisations of qualified receivers the commission may also include a representative of the national association of self-regulating organisations of qualified receivers.

**2.** The persons who have been subjected to an administrative sanction in the form of disqualification for a term of one year and more shall pass again a theory examination according to a qualified receiver training curriculum if they wish to execute the powers of qualified receiver after the expiry of the disqualification term.

A qualified receiver who has not discharged the duties of a qualified receiver in a bankruptcy case for more than three years in a row shall take a theory examination again according to a qualified receiver training curriculum.

**3.** The organisation and realisation of probation of a citizen of the Russian Federation as an assistant to a qualified receiver shall be carried out by a self-regulating organisation of qualified receivers in accordance with the rules for probation in the capacity of an assistant to a qualified receiver established by federal standards and standards and rules of professional activity.

**Article 20.2.** The Requirements Applicable to a Qualified Receiver for the Purposes of His/Her Being Confirmed in a Bankruptcy Case

**1.** If according to the present Federal Law a qualified receiver acquires the powers of the head of a debtor he/she becomes subject to all the requirements established by federal laws and other normative legal acts of the Russian Federation for the head of such debtor, and to all the measures of accountability established by federal laws and other normative legal acts of the Russian Federation for the head of such debtor.

If the execution of the powers of the debtor's head is relating to access to information deemed state secret the qualified receiver shall have state secret clearance in a form corresponding to the clearance form required for the execution of the powers of the debtor's head and corresponding to the highest degree of secrecy of the information circulating at the debtor's enterprise.

**2.** An arbitration court shall not confirm as interim receivers, administrative receivers, receivers or winding-up receivers in a bankruptcy case the qualified receivers which:

are interested persons in respect of the debtor or creditors;

have not provided compensation in full for the losses inflicted to the debtor or creditors or other persons as the result of a default on, or the improper performance of, the duties vested in the qualified receiver in the proceedings applicable in a bankruptcy case that have been carried out before, the fact of such losses having been established by a court decision that has become final;

in respect of which the proceedings applicable in a bankruptcy case have been commenced;

which have been disqualified or deprived -- in the procedure established by a federal law -- of the right to occupy managerial positions and/or to pursue a professional activity regulated in accordance with federal laws;

which do not have liability insurance contracts concluded in accordance with the requirements set out in the present Federal Law for the case of causing loss to the persons deemed party to a bankruptcy case;

which have no state secret admittance according to the established form, if the existence of such admittance is an obligatory condition for the approval of the qualified receiver by the arbitration court.

in respect of which there is an effective judicial act on removing the qualified receiver from office in connection with failure to discharge or to discharge properly the duties that have caused losses for the debtor or for the creditors thereof in the procedures applicable in a bankruptcy case, if prior to the date preceding the date of introducing to court the candidacy of the qualified receiver a one year-term has not passed since the time of entry into legal force of the last judicial act in respect of the dispute in connection with such removal, except if the given judicial act has been appealed against with a court of cassational instance and in respect of it the court of cassational instance has not issued a judicial act or if the time period for appealing against the cited judicial act with the court of cassational instance has not expired.

3. A bankruptcy creditor or empowered body being applicants in a bankruptcy case or a meeting of creditors is entitled to present additional requirements applicable to contenders for a qualified receiver:

the availability of higher legal or economics educational background or educational background in a speciality corresponding to the debtor's area of activity;

the availability of a certain work record in positions of heads of organisations in the relevant branch of economy;

a record of having completed a certain number proceedings applicable in a bankruptcy case as a qualified receiver.

The bankruptcy creditor or empowered body or the meeting of creditors are entitled to present only those requirements set out in the present Item to the contender for a qualified receiver.

**Article 20.3.** The Rights and Duties of a Qualified Receiver in a Bankruptcy Case

1. A qualified receiver is a bankruptcy case is entitled to:

convene a meeting of creditors;

convene a creditors' committee;

file applications and petitions with the arbitration court in the cases envisaged by the present Federal Law;

receive a fee at the rates and in the procedure established by the present Federal Law;

recruit other persons for the purpose of executing the duties vested in him/her in the bankruptcy case, with payment for their activities being made with the debtor's funds, except as otherwise established by the present Federal Law, standards and rules of professional activity or an agreement of the qualified receiver with creditors;

request the necessary information about the debtor, the persons who sit on the managerial bodies of the debtor, the controlling persons, their property (for instance property rights), contracting parties and the liabilities of the debtor from natural persons, legal entities, state bodies, the governing bodies of the state non-budget funds of the Russian Federation and local self-government bodies, including, inter alia, the information deemed official, commercial and banking secret;

file an application with the arbitration court asking for his/her being relieved from the duties vested therein in the bankruptcy case.

A professional participant of the securities market which carries out activity on conducting of the register of owners of securities, the auditor organisation (auditor), the appraiser, the organiser of tenders and the operator of an electronic platform involved by the arbitration manager according to this Federal Law for ensuring the performance of duties assigned to it in a bankruptcy case funded by the means of the debtor shall be accredited by the self-regulating organisation and cannot be interested persons in relation to the arbitration manager, the debtor and his creditors.

The natural persons, legal entities, state bodies, the governing bodies of the state non-budget funds of the Russian Federation and local self-government bodies shall provide free of charge the information requested by the qualified receiver within seven days after the receipt of the request.

2. The qualified receiver in an insolvency case shall:

take measures for protecting the debtor's property;

analyse the financial state of the debtor and the results of the debtor's financial, economic and investment activities;

keep a register of creditors' claims, except for the cases envisaged by the present Federal Law;

provide the register of creditors' claims to the persons that demand that a general meeting of creditors be held, within three days after the date of the request in the cases envisaged by the present Federal Law;

do the following if signs of administrative offences and/or crimes have been discovered: inform about them the bodies empowered to initiate cases of administrative offences and consider messages about crimes;

provide information to a meeting of creditors on the transactions and actions that cause or can cause the civil liability of third persons;

prudentially and reasonably effect the expenses relating to the execution of the duties vested therein in the bankruptcy case. The duty to prove the lack of prudential and reasonable approach in making such expenses is vested in the person that has filed the relevant application with the arbitration court;

detect the signs of deliberate and fictitious bankruptcy in the procedure established by federal standards and inform about them the persons being party to the bankruptcy case, the self-regulating organisation in which the qualified receiver is member, a meeting of creditors and the bodies empowered to bring cases of administrative offences and consider messages about crimes;

in the case where according to this Federal Law the attraction by the arbitration manager of other persons for the performance of the duties assigned to him in a bankruptcy case is obligatory, the arbitration manager shall be obliged to involve on a contractual ground of the arbitration manager persons accredited by a self-regulating organisation with the payment for their activity according to Article 20.7 of this Federal Law;

detect the facts of failures to discharge the duty of filing the debtor's application with an arbitration court in the instances and at the time which are provided for by Article 9 of this Federal Law and take measures aimed at bringing the person guilty of the violation to the liability provided for by Item 2 of Article 10 of this Federal Law, as well as report on the detected violation to the body authorized to draw up a record of an appropriate offence;

carry out the other functions established by the present Federal Law.

**3.** Except as otherwise established by the present Federal Law, the qualified receiver shall observe the confidential status of the information which is protected by a federal law (for instance, information deemed service or commercial secret) and has come to his/her knowledge in line of execution of the duties of a qualified receiver.

**4.** While implementing the proceedings applicable in a bankruptcy case the qualified receiver shall act in a bona fide manner and prudentially in the interests of the debtor, creditors and the society.

**5.** The powers vested in accordance with the present Federal Law in a qualified receiver in a bankruptcy case shall not be assigned to other persons.

**6.** The qualified receivers confirmed by an arbitration court are procedural successors of preceding qualified receivers.

**Article 20.4.** The Liability of the Qualified Receiver

**1.** A default on the execution of, or the improper execution of, the duties vested in a qualified receiver in accordance with the present Federal Law or federal standards shall be deemed ground for the arbitration court to dismiss the qualified receiver on a request of the persons deemed party to the bankruptcy case, as well as on demand of the self-regulating organisation of arbitration managers a member of which he is.

If an arbitration court ruling on the dismissal of a qualified receiver for a default on the execution of, or the improper execution of, them has been overturned the qualified receiver

shall not be reinstated by an arbitration court to execute these duties.

**2.** If a qualified receiver has been expelled from a self-regulating organisation in connection with his/her non-compliance with the membership qualifications of the self-regulating organisation, if a qualified receiver is in breach of the provisions of the present Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of professional activity then the qualified receiver shall be dismissed by the arbitration court in the bankruptcy case on the basis of a petition of the self-regulating organisation within ten days after the date of receipt thereof.

If a decision on expulsion of a qualified receiver from a self-regulating organisation serving as ground for an arbitration court to dismiss the qualified receiver in a bankruptcy case has been overturned or deemed invalid the qualified receiver shall not be reinstated by an arbitration court to execute his/her duties in the case.

Upon the receipt by a self-regulating organisation of copies of petitions containing demands for dismissal or exoneration of a qualified receiver in a bankruptcy case and having been sent to an arbitration court by persons deemed party to a bankruptcy case and also when a petition is sent to an arbitration court by a self-regulating organisation asking for a qualified receiver being dismissed or exonerated in a bankruptcy case the self-regulating organisation shall nominate a qualified receiver in the procedure established by Article 45 of the present Federal Law.

**3.** The imposition of a sanction on a qualified receiver in the form of disqualification for the commission of an administrative offence shall cause the qualified receiver being dismissed in the bankruptcy case.

Within three working days after the receipt of a court decision on disqualification of a qualified receiver, such decision having become final, the federal executive governmental body empowered by the Government of the Russian Federation to form and keep a register of disqualified persons shall serve a notice to the self-regulating organisation in which the qualified receiver is member about the disqualification of the qualified receiver together with the court decision on the disqualification of the qualified receiver that has become final by means of sending such notice in a manner making sure it is received within five days after being dispatched. The data contained in the register of disqualified persons is subject to inclusion in the Uniform Federal Register of Information on Bankruptcy.

Within three business days after the receipt of such notice the self-regulating organisation shall send a petition to the arbitration court that has confirmed the qualified receiver in the bankruptcy case for the qualified receiver being dismissed in the bankruptcy case by post or in another manner making sure such notice is received within five days after being dispatched.

The dismissal of the qualified receiver that has been subjected to the administrative sanction in the form of disqualification in the bankruptcy case and the confirmation of another qualified receiver shall be done by the arbitration court no later than on the day following after the date of acceptance of the petition of the self-regulating organisation without summoning the persons deemed party to the bankruptcy case. As this is being done, account shall be taken of the requirements envisaged by the bankruptcy creditor or empowered body being applicant in the bankruptcy case or by the meeting of creditors in accordance with Item 3 of Article 20.2 of the present Federal Law.

A ruling of an arbitration court dismissing a qualified receiver in a bankruptcy case and confirming another qualified receiver shall be implemented immediately.

The fact that a court judgement on disqualification of a qualified receiver has been overturned shall not be deemed ground for an arbitration court to reinstate him/her to execute the duties vested therein in the bankruptcy case.

**4.** The qualified receiver shall provide a compensation to the debtor, creditors and other persons for the losses sustained as the result of his/her default on, or the improper execution of, the duties vested therein in the bankruptcy case, provided the fact that these losses had been inflicted was established by a court decision that has become final.

The arbitration manager shall be obliged to compensate to members of the self-regulating organisation of arbitration managers the losses which arose in connection with the necessity to bring the amount of the indemnification fund of such an organisation into conformity with the requirements of Article 25.1 of this Federal Law after the performance of a compensatory payment from the indemnification fund in connection with the indemnification caused to the persons participating in bankruptcy proceedings, and other persons owing to the failure or inadequate performance by this arbitration manager of the duties assigned to him in bankruptcy proceedings, except for the cases where he acted according to internal documents of the self-regulating organisation, standards and rules of professional work.

**5.** Federal standards, standards and rules of professional work may establish additional requirements to securing property liability of the arbitration manager for failure to carry out duties in bankruptcy proceedings or their inadequate performance.

Requirements to securing property liability of the arbitration manager that arose owing to the duty to compensate to the members of the self-regulating organisation of arbitration managers losses caused in connection with the necessity to bring the amount of the indemnification fund of such a self-regulating organisation in conformity with the requirements of Article 25.1 of this Federal Law following the compensatory payment from the indemnification fund of this self-regulating organisation, shall be established by federal standards, standards and rules of professional work. The aforementioned standards may envisage the duty of the arbitration manager to carry out insurance of the risk of such civil liability.

**6.** Information on delivery by the arbitration court of an act on acknowledging actions of the insolvency practitioner illegal or on charging of the amount of losses from the insolvency practitioner because of non-fulfillment or undue fulfillment of obligations in the bankruptcy case shall be included in the unified federal register of information on bankruptcy using the procedure established by Article 28 of this Federal Law within three business days from the day of entering into force of the respective court act.

The notification subjected to inclusion in the unified federal register of information on bankruptcy in accordance with this Item, in connection with charging of losses from the insolvency practitioner shall contain the amount of losses charged from the insolvency practitioner under the court act.

**Article 20.5.** Relieving a Qualified Receiver from the Duties Vested Therein in a Bankruptcy Case

**1.** If a qualified receiver has quit a self-regulating organisation of qualified receivers that organisation shall send a petition to the arbitration court for the qualified receiver to be relieved from the duties vested therein in a bankruptcy case, within 14 working days after the date of the decision of the permanent collective managerial body of the self-regulating organisation on termination of the qualified receiver's membership in the self-regulating organisation in connection with his/her opting out of the organisation. On the petition of the self-regulating organisation the arbitration court shall relieve the qualified receiver from the duties vested therein in the bankruptcy case. Unless a petition of the self-regulating organisation is received by the arbitration court within 20 days after the date of the self-regulating organisation's decision on termination of the qualified receiver's membership in the self-regulating organisation, the persons deemed party to the case are entitled to state

that the qualified receiver is relieved from the duties vested therein in the bankruptcy case, and on the basis of such petition the arbitration court shall relieve the qualified receiver from the duties vested therein in the bankruptcy case.

2. In the case of detection by the self-regulating organisation of the arbitration managers facts of non-conformity of the arbitration manager with the conditions of the membership established by the self-regulating organisation a member of which he is, including to the requirements established by the self-regulating organisation to the competence, good faith and independence of the arbitration manager, detection of the circumstances interfering with the confirmation of the arbitration manager in bankruptcy proceedings, including those which arose after such confirmation, detection of the facts of failure to perform or inadequate performance by the arbitration manager of the duties assigned to him in bankruptcy proceedings the permanent collegiate body of management of the self-regulating organisation of arbitration managers shall take a decision on the recourse to arbitration court with the petition for discharging the arbitration manager from the performance of the duties assigned to him in bankruptcy proceedings. The self-regulating organisation of arbitration managers shall direct to arbitration court the petition for discharging the arbitration manager from the performance of the duties assigned to him in bankruptcy proceedings within fourteen business days from the date of acceptance of such decision.

**Article 20.6.** A Qualified Receiver' Fee in a Bankruptcy Case

1. A qualified receiver is entitled to a fee in a bankruptcy case, and also to a compensation in full for the expenses he/she has actually incurred while executing the duties vested therein in the bankruptcy case.

2. The fee in the bankruptcy case shall be paid to the qualified receiver with funds of the debtor, except as otherwise envisaged by the present Federal Law.

3. The fee payable to the qualified receiver in the bankruptcy case is composed of a fixed sum and an interest sum.

The amount of the fixed sum of such fee shall be as follows for:

an interim receiver: 30,000 roubles per month;

an administrative receiver: 15,000 roubles per month;

a receiver: 45,000 roubles per month;

a winding-up receiver: 30,000 roubles per month.

of financial manager - 10 thousand roubles one-time for carrying out of the procedure applicable in bankruptcy cases.

4. If a qualified receiver has been relieved from his/her duties vested therein in a bankruptcy case or dismissed in a bankruptcy case by an arbitration court the fee shall not be payable thereto starting from the date of his/her being relieved or dismissed.

5. On the basis of a decision of a meeting of creditors or a substantiated petition of the persons deemed party to the bankruptcy case the arbitration court that hears the bankruptcy case is entitled to increase the amount of fixed sum of the fee payable to the qualified receiver, depending on the scope and complexity of the work he/she performs.

A ruling on increasing the fixed sum of such fee taken by the arbitration court is subject to appeal.

6. If in a case of bankruptcy powers are vested in a qualified receiver because another qualified receiver cannot be confirmed the amount of the fee payable to the qualified receiver within the term of his/her office in the bankruptcy case shall be established by the arbitration court. In this case, the amount of the fixed sum of the fee payable to the qualified receiver shall not be below the fixed sum of the fee of a qualified receiver defined for the relevant proceeding applied in the bankruptcy case, in accordance with the present Federal Law.

7. The meeting of creditors may establish a supplementary fee for the qualified

receiver.

**8.** The supplementary fee shall be paid to the qualified receiver with funds of the creditors which have taken a decision on establishing the supplementary fee or with the payments owing to the creditors as setting off the repayment of their claims.

**9.** Except as otherwise established by the present Federal Law the sum of interest on the fee of the qualified receiver shall be paid thereto within ten calendar days after the completion of the proceeding which is applied in the bankruptcy case and for the implementation of which the qualified receiver was confirmed.

**10.** The sum of interest for the remuneration of an interim receiver shall not exceed 60 thousand roubles and shall comprise, at the balance sheet cost of the debtor's assets:

up to two hundred and fifty thousand roubles - four per cent of the balance sheet cost of the debtor's assets;

from two hundred and fifty thousand roubles and up to one million roubles - ten thousand roubles and two per cent of size of the sum of the excess of the balance sheet cost of the debtor's assets over two hundred and fifty thousand roubles;

from one million roubles and up to three million roubles - twenty-five thousand roubles and one per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one million roubles;

over three million roubles - 45 thousand roubles and half a per cent of the amount of excess of the balance sheet value of the debtor's assets over three million roubles;

paragraphs 6 - 9 have lost force.

**11.** The sum of an interest for the remuneration of the administrative manager shall comprise the balance sheet cost of the debtor's assets:

up to two hundred and fifty thousand roubles - four per cent of the balance sheet cost of the debtor's assets;

from two hundred and fifty thousand roubles and up to one million roubles - ten thousand roubles and one per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over two hundred and fifty thousand roubles;

from one million roubles and up to three million roubles - seventeen thousand fifty roubles and half per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one million roubles;

from three million roubles and up to ten million roubles - twenty-seven thousand five hundred roubles, and 0.2 per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over three million roubles;

from ten million roubles and up to one hundred million roubles - forty-one thousand five hundred roubles, and 0.1 one per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one hundred million roubles;

from one hundred million roubles and up to three hundred million roubles - one hundred and thirty-one thousand five hundred roubles, and 0.05 per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one hundred million roubles;

from three hundred million roubles and up to one billion roubles - two hundred and thirty-one thousand five hundred roubles, and 0.01 per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over three hundred million roubles;

over one billion roubles - three hundred one thousand five hundred roubles, and 0.001 per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one billion roubles.

**12.** The sum of interest on the fee of a receiver is established as follows:

eight per cent of the amounts used to repay the claims of the creditors included in the register of creditors' claims at the termination of a proceeding in a bankruptcy case;

three per cent of the increment of the debtor's net asset value for the period of external administration when a debtor is deemed bankrupt and a wining-up proceeding is commenced.

**13.** The sum of interest on the fee of a winding-up receiver is established as follows:

seven per cent of the amount of met claims of the creditors included in the register of creditors' claims if more than 75 per cent of the claims of the creditors included in the register of creditors' claims are satisfied;

six per cent of the amount of met claims of the creditors included in the register of creditors' claims if more than 50 per cent of the claims of the creditors included in the register of creditors are satisfied;

four and a half per cent of the amount of met claims of the creditors included in the register of creditors' claims if more than 25 and more per cent of the claims of the creditors included in the register of creditors are satisfied;

three per cent of the amount of met claims of the creditors included in the register of creditors' claims if less than 25 per cent of the claims of the creditors included in the register of creditors are satisfied.

**14.** For the purpose of calculating the sum of interest on the fee of a qualified receiver the balance-sheet value of the debtor's assets shall be assessed according to the accounting data as of the last accounting date preceding the date of introduction of the relevant proceeding applicable in a bankruptcy case.

**15.** In the event of termination of a bankruptcy case in connection with the conclusion of an amicable agreement the sum of interest on the fee of the qualified receiver shall be paid out within the term and at the rate established by the amicable agreement.

**16.** When carrying out procedures applied in case of bankruptcy the regulating body may establish with respect to individual debtor categories a different size and (or) procedure for the payment out of the remuneration to the qualified receiver.

**17.** The amount of interest as remuneration of the financial manager in case of execution of the debt restructuring schedule approved by the arbitration court by an individual shall account for two percent of the satisfied creditors' claims.

The amount of interest as remuneration of the financial manager in case of initiation of the procedure of sale of assets of the individual shall be two percent of the amount of proceeds from the sale and the funds received as a result of charging of accounts receivable and as a result of application of implications of transactions invalidity. The interest shall be paid to the financial manager after completion of settlements with creditors.

**Article 20.7.** Expenses towards the Implementation of the Proceedings Applicable in a Bankruptcy Case

**1.** Expenses towards the implementation of the proceedings applicable in a bankruptcy case shall be effected with the debtor's funds, except as otherwise envisaged by the present Federal Law.

The expenses envisaged by the present article shall not include expenses towards payment for the services of the persons recruited to support the debtor's current activities in the course of the proceedings applicable in a bankruptcy case.

**2.** The debtor's funds shall be used to make payment in actual cost towards the expenses envisaged by the present Federal Law, including without limitation, postal expenses, the expenses relating to the state registration of the debtor's rights to immovable property and of transactions in such property, expenses relating to the performance of works (provision of services) for the debtor as required for the state registration of such rights, expenses towards payment for the services of an appraiser, registrar and auditor if the recruitment of the appraiser, registrar, auditor and electronic area's operator under the present

Federal Law is compulsory, expenses towards the inclusion of the information envisaged by the present Federal Law in the Uniform Federal Register of Information on Bankruptcy and the publication of such information and also payment towards legal costs including state duty.

**3.** The size of remuneration for the services of persons invited by the receiver or by the winding-up receiver to provide for the execution of the duties vested therein in the bankruptcy case, with the exception of the persons, stipulated in Item 2 of the present Article, shall comprise at the balance sheet cost of the debtor's assets:

up to two hundred and fifty thousand roubles - not over ten per cent of the balance cost of the debtor's assets;

from two hundred and fifty thousand roubles and up to one million roubles - not over twenty-five thousand roubles and eight per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over two hundred and fifty thousand roubles;

from one million roubles and up to three million roubles - not over eighty five thousand roubles and five per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one million roubles;

from three million roubles and up to ten million roubles - not over one hundred and eighty-five thousand roubles, and three per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over three million roubles;

from ten million roubles and up to one hundred million roubles - not over three hundred and ninety-five thousand roubles, and one per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over ten million roubles;

from one hundred million roubles and up to three hundred million roubles - not over one million and two hundred and ninety-five thousand roubles, and half per cent of the size of the sum of an excess of the balance sheet cost of the debtor's assets over one hundred million roubles;

from three hundred million roubles and up to one billion roubles - not over two million two hundred and ninety-five thousand five hundred roubles, and 0.1 per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over three hundred million roubles;

over one billion roubles - not over two million nine hundred and ninety-five thousand roubles, and 0.01 per cent of the sum of the excess of the balance sheet cost of the debtor's assets over one billion roubles.

With this, the rate of payment for the persons' services fixed in compliance with this item may be exceeded by the qualified receiver, if the amount of the given excess is covered by the insurance money in excess of the minimum amount of the insurance money under an agreement of mandatory insurance of the qualified receiver's liability fixed by Item 2 of Article 24.1 of this Federal Law.

**4.** Payment for the services of persons recruited by an interim receiver or administrative receiver to ensure the execution of the duties vested therein in the bankruptcy case shall be made in an amount not exceeding 50 per cent of the amount of payment for the services recruited by a receiver or winding-up receiver defined in accordance with Item 3 of the present Article.

**5.** The engagement of persons by the qualified receiver for ensuring the discharge of the duties in a bankruptcy case imposed upon him/her, payment for such persons' services or the rate of payment for such services fixed by this article may be declared by an arbitration court as unfounded on application of the persons participating in the bankruptcy case, if the services are not connected with the purposes of carrying out the procedures applied in the bankruptcy case or with the duties imposed on the qualified receiver in the bankruptcy case or

the rate of payment for such services is clearly disproportionate to the expected result.

The amount of payment for such services shall not be deemed without ground if it corresponds to the tariffs confirmed by a normative legal act of the Russian Federation.

The duty of proving the lack of ground for recruitment of persons to ensure the execution of the duties vested in a qualified receiver in a bankruptcy case and/or for the amount of payment for their services determined in accordance with the present article is vested in the person that has filed an application with an arbitration court claiming that the recruitment of such persons and/or the amount of such payment is without ground.

A court judgement whereby the recruitment of the persons mentioned in the present item and/or the amount of payment for their services is deemed without ground is subject to appeal.

**6.** Persons shall be engaged by the qualified receiver for ensuring the discharge of the duties in a bankruptcy case imposed upon him/her on account of the debtor's property in the event of exceeding the rate of payment for such services fixed in compliance with this article after rendering an appropriate ruling by an arbitration court.

The arbitration court shall turn out a ruling on recruitment of the persons specified in the present item and on the establishment of the amount of payment for their services on an application of the qualified receiver, provided the qualified receiver has proved the existence of ground for their being recruited and ground for the amount of payment for their services.

The ruling turned out by the arbitration court on the recruitment of the persons mentioned in the present item by the qualified receiver and the setting of the amount of payment for their services or on refusal to uphold the petition of the qualified receiver for their being recruited is subject to appeal.

**7.** Payment for the services of the persons about whose recruitment the decision was adopted by a meeting of creditors shall be effected with funds of the creditors which have voted for the decision, pro rata to the amounts of their claims that have been included in the register of creditors' claims as of the date of the meeting of creditors, except when one of the creditors or several creditors have assumed the duty of making payment for the cited persons' services.

Payment for the services of the persons about whose recruitment the decision has been adopted by a creditor whose claims are secured by pledge of the debtor's property in connection with the sale of the property put in pledge shall be made at the expense of the appropriate creditor.

**8.** For the purposes of the present article the balance-sheet value of the debtor's assets is assessed on the basis of the data of financial (bookkeeping) statements/reports as of the last accounting date preceding the date of commencement of the relevant proceeding applied in the bankruptcy case.

**9.** When carrying out procedures applied in a case on bankruptcy, the regulating body may establish with respect to the individual debtor categories a different size and (or) procedure for the remuneration of expenditures on the above-said procedures.

**Article 21.** Self-Regulating Organisations of Qualified Receivers

**1.** The status of self-regulating organisation of qualified receivers is acquired by a non-profit organisation as of the date when information about the non-profit organisation is included in the uniform state register of self-regulating organisations of qualified receivers.

A state duty shall be paid for including a non-profit organisation into the uniform state register of self-regulating organisations of qualified receivers at the rate and in the procedure

which are established by the legislation of the Russian Federation on taxes and fees.

**2.** The ground for including information about a non-profit organisation in the uniform state register of self-regulating organisations of qualified receivers is its compliance with the following compulsory requirements:

at least 100 its members meet the membership qualifications of the self-regulating organisation of qualified receivers confirmed by the self-regulating organisation;

its members have taken part in at least 100 (in aggregate) proceedings applied in bankruptcy cases (including those not completed as of the date of inclusion in the uniform state register of self-regulating organisations of qualified receivers), except for the proceedings applied in bankruptcy cases to absent debtors;

a compensation fund exists that is maintained in the amount and in the procedure established by Article 25.1 of the present Federal Law;

there exist standards and rules of professional activities of qualified receivers which are elaborated in accordance with the provisions of the present Federal Law and are binding on members of the self-regulating organisation of qualified receivers;

the managerial bodies and specialised bodies of the self-regulating organisation of qualified receivers have been formed, and the functions and scope of powers thereof comply with the requirements set out in Article 21.1 of the present Federal Law.

**3.** The liquidation of a non-profit organisation having the status of self-regulating organisation of qualified receivers shall take place in accordance with the legislation of the Russian Federation on non-profit organisations with due regard to the details established by the present Federal Law.

A liquidation commission of a non-profit organisation having the status of self-regulating organisation of qualified receivers shall include a representative of the national association of self-regulating organisations of qualified receivers.

**4.** A self-regulating organisation of insolvency practitioners can only be reorganised in the form of a merger of two or more self-regulating organisations of insolvency practitioners or in the form of acquisition by one such organisation of another such organisation according to the procedure set by the legislation of the Russian Federation.

**5.** A non-profit organisation looses its status of self-regulating organisation of qualified receivers as of the date when information about the non-profit organisation is removed from the uniform state register of self-regulating organisations of qualified receivers.

**Article 21.1.** The Managerial Bodies and Specialised Bodies of a Self-Regulating Organisation of Qualified Receivers

**1.** The structure of, the procedure for the formation of, the scope of powers and the term of powers of, the managerial bodies of self-regulating organisation of qualified receivers and the procedure for their taking decisions shall be established by the charter of the non-profit organisation and internal documents of the self-regulating organisation of qualified receivers in accordance with the present Federal Law and other federal laws.

**2.** The general meeting of members of a self-regulating organisation of qualified receivers is the paramount managerial body of the self-regulating organisation which is empowered to consider the issues put within its cognisance by the present Federal Law, other federal laws and the charter of the non-profit organisation.

**3.** The general meeting of members of the self-regulating organisation of qualified receivers shall be convened at least once a year in the procedure established by the charter of the non-profit organisation.

**4.** The following issues are deemed to fall within the cognisance of the general meeting of members of the self-regulating organisation of qualified receivers:

confirming and amending the charter of the self-regulating organisation of qualified

receivers;

establishing membership qualifications for the self-regulating organisation, the procedure for admittance as member to the self-regulating organisation and the procedure for termination of membership in the self-regulating organisation;

designating priority guidelines of the self-regulating organisation's activities and the principles of formation and use of its property;

electing members to the permanent collective managerial body of the self-regulating organisation of qualified receivers (hereinafter referred to as "the collective managerial body") and taking decisions on early termination of the powers of the collective managerial body or of specific members thereof;

endorsing -- in the procedure and at the intervals established by the charter of the non-profit organisation -- reports of the collective managerial body and the executive body of the self-regulating organisation on the results of financial, economic and organisational activities of the self-regulating organisation of qualified receivers;

endorsing disciplinary sanctions, the procedure and grounds for the imposition thereof, the procedure for considering cases of breach of the provisions of the present Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards and standards and rules of professional activity by members of the self-regulating organisation;

appointing a person to carry out the functions of the sole executive body of the self-regulating organisation and removing such person before the expiry of his/her term of office;

endorsing and amending a cost-estimate of the self-regulating organisation and endorsing the annual bookkeeping statements/reports of the self-regulating organisation;

taking a decision on voluntary removal of information on the self-regulating organisation from the uniform state register of self-regulating organisations of qualified receivers;

considering a complaint of a person expelled from the self-regulating organisation of qualified receivers that refers to the lack of ground for the decision whereby the person has been expelled from the self-regulating organisation of qualified receivers and taking a decision on such complaint;

taking decisions on voluntary liquidation of the self-regulating organisation and appointing a liquidation commission;

taking other decisions in accordance with federal laws and the charter of the non-profit organisation.

The issues described in Paragraphs 2-7 and 10-12 of the present Item cannot be put by the charter of the non-profit organisation within the cognisance of other managerial bodies of the self-regulating organisation of qualified receivers.

**5.** The general meeting of members of the self-regulating organisation of qualified receivers is empowered to adopt the decisions put within its cognisance if attended by over 50 per cent of the total number of the self-regulating organisation's members.

Decisions of the general meeting of members of the self-regulating organisation shall be taken by a majority vote of the number of votes of the self-regulating organisation's members who attend the general meeting, or if voting is done by proxy, by a majority vote of the total number of votes of members of the self-regulating organisation.

Decisions on the issues specified in Paragraphs 2-4, 10 and 12 of Item 4 of the present Article shall be adopted at the general meeting of members of the self-regulating organisation by the majority of two thirds of votes of the total number of votes of members of the self-regulating organisation.

The charter of the non-profit organisation may make provision for other issues on which

decisions are taken by a qualified majority vote and also for a need to have a decision adopted a number of votes larger than the one envisaged by the present Federal Law.

**6.** In a self-regulating organisation of qualified receivers there shall be formed a collective managerial body composed of at least seven persons. Persons not being members of the self-regulating organisation of qualified receivers shall not make up more than 25 per cent of the number of members of the collective managerial body.

**7.** The cognisance of the collective managerial body encompasses the following:

endorsing and amending standards and rules of professional activity;

taking a decision on admitting a person as member to the self-regulating organisation or on the termination of membership in the self-regulating organisation on the grounds set out in the present Federal Law and the charter of the non-profit organisation;

endorsing rules for exercising control over the observance by members of the self-regulating organisation of the requirements set out in the present Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards and standards and rules of professional activity;

forming specialised bodies of the self-regulating organisation and endorsing regulations on them and rules for their pursuing their activities;

appointing an audit organisation to verify the bookkeeping and financial (bookkeeping) statements/reports of the self-regulating organisation, taking decisions on inspections of the activities of the executive body of the self-regulating organisation;

presenting a nominee (or nominees) to a general meeting of members of the self-regulating organisation for appointment as the sole executive body of the self-regulating organisation;

establishing qualifications applicable to the head of the body exercising control over the activities of members of the self-regulating organisation as qualified receivers in bankruptcy cases;

taking a decision concerning an arbitration manager who is a member of the self-regulating organisation on the establishment of the amount of the insurance sum under the contract of obligatory insurance of the liability exceeding the minimum amount established by Item 2 of Article 24.1 of this Federal Law of the insurance sum, about the duty of the arbitration manager to conclude in connection with the approval of him by the arbitration court in the procedures used in bankruptcy proceedings (except for a case about the bankruptcy of an absent debtor, as well as the debtor the balance cost of whose assets does not exceed one hundred million roubles), beside the additional contract of obligatory insurance of the liability stipulated by Item 2 of Article 24.1 of this Federal Law, the additional contract of insurance of the liability of the arbitration manager. Such a decision shall establish the amount of the insurance sum under the additional contract of insurance of the liability.

The decision of the collegiate executive body on the termination of membership of the arbitration manager if he is expulsion in connection with a substantial infringement of requirements of this Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards shall be taken by the two thirds majority of votes of the total number of votes of the members of collegiate executive body.

**8.** The cognisance of the executive body of the self-regulating organisation of qualified receivers encompasses issues of the self-regulating organisation's economic and other activities not falling within the cognisance of the general meeting of members of the self-regulating organisation and of its collective managerial body.

**9.** For the purpose of ensuring the realisation of the rights and duties defined by the present Federal Law the self-regulating organisation of qualified receivers is obligated to form the following bodies:

a body charged with consideration of cases of imposition of disciplinary sanctions on

members of the self-regulating organisation;

a body charged with the selection of nominees to be presented to arbitration courts as qualified receivers for the purpose of their being confirmed in bankruptcy cases;

a body charged with control over the observance by members of the self-regulating organisation of provisions of federal laws, other normative legal acts of the Russian Federation, federal standards and standards and rules of professional activity.

10. The procedure for considering complaints against actions of members of the self-regulating organisation of qualified receivers, cases of members of the self-regulating organisation being in breach of provisions of federal laws, other normative legal acts of the Russian Federation, federal standards and standards and rules of professional activity as well as disciplinary sanctions shall be defined in accordance with the present Federal Law and internal documents of the self-regulating organisation.

11. The body charged with consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation shall consider cases of members of the self-regulating organisation being in breach of provisions of federal laws, other normative legal acts of the Russian Federation, federal standards and standards and rules of professional activity and of imposition of disciplinary sanctions on qualified receivers.

12. The body charged with consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation shall invite to attend its meeting the self-regulating organisation's member in respect of which the case of imposition of disciplinary sanctions has been opened as well as the persons which have sent the complaint against the actions of that member of the self-regulating organisation.

13. The body charged with consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation is entitled to take a decision on imposition of the following disciplinary sanctions:

issuing an instruction obligating the member of the self-regulating organisation to eliminate the irregularities discovered and setting a term for the elimination;

issuing a warning to the member of the self-regulating organisation, with a public announcement about it being made;

imposing a fine on the member of the self-regulating organisation in the amount set by internal documents of the self-regulating organisation;

recommending that the person be expelled from the self-regulating organisation, such recommendation being subject to consideration and confirmation of the collective managerial body;

the other sanctions established by internal documents of the self-regulating organisation.

The decisions envisaged by Paragraphs 2-4 and 6 of the present Item shall enter into force from the date when the body charged with consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation takes them. The decision envisaged by Paragraph 5 of the present Item shall be adopted by the majority of three quarters of votes of the total number of votes of the members of the body charged with consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation who attend the meeting, and it shall enter into force as of the time when it is confirmed by the collective managerial body.

14. Decisions of the body charged with consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation are subject to appeal to the collective managerial body.

Appeal from decisions of the collective managerial body may be taken to the general meeting of members of the self-regulating organisation.

15. The person carrying out the functions of the sole executive body of the

self-regulating organisation of qualified receivers and also the employees of the self-regulating organisation are not entitled to be qualified receivers.

**Article 22.** The Rights and Duties of a Self-Regulating Organisation of Qualified Receivers

**1.** A self-regulating organisation of qualified receivers is entitled to:

represent the interests of members of the self-regulating organisation in their relations with governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation and local self-government bodies;

take appeal on its own behalf in the procedure established by the legislation of the Russian Federation from any acts, decisions and/or actions or omissions of governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation, local self-government bodies and their officials infringing on the rights and lawful interests of the self-regulating organisation, its member(s) or creating a threat of such infringement;

take part in a discussion of draft federal laws, other normative legal acts, draft laws and other normative legal acts of subjects of the Russian Federation, normative legal acts of local self-government bodies, state programmes on issues relating to arbitration administration, and also to send statements to governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation and local self-government bodies on the results of the independent expert examination of the aforesaid draft normative legal acts that is carries out;

lay proposals before governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation and local self-government bodies for being considered by them concerning issues of state policy formation and implementation and issues of the formation and implementation of policy by local self-government bodies in the area of insolvency (bankruptcy) and financial rehabilitation respectively;

request from governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation and local self-government bodies the information needed for the self-regulating organisation to carry out the functions vested therein by federal laws and obtain from these bodies such information in the procedure established by federal laws;

bring action claiming protection of the rights and lawful interests of the qualified receivers being members of the self-regulating organisation, for instance a compensation for losses caused to a qualified receiver by governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation, local self-government bodies and also other persons;

file petitions with an arbitration court for removal or relief of members of the self-regulating organisation from participation in a bankruptcy case in the cases envisaged by the present Federal Law;

take appeal from courts' judgements on confirmation, removal or relief of qualified receivers being members of the self-regulating organisation and also the courts' judgements affecting the rights, duties or lawful interests of the self-regulating organisation in the realisation of the proceedings applied in a bankruptcy case;

Paragraph 10 is abrogated;

exercise the other rights established by the present Federal Law.

**2.** A self-regulating organisation of qualified receivers shall:

elaborate and establish qualifications for the membership of qualified receiversin the self-regulating organisation;

elaborate and establish standards and rules of professional activity which are binding on members of the self-regulating organisation;

monitor the professional activities of members of the self-regulating organisation in as much as it concerns the observance of the provisions of the present Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards and standards and rules of professional activity;

consider complaints against actions of a member of the self-regulating organisation who is executing the duties of a qualified receiver in a bankruptcy case;

impose the disciplinary sanctions envisaged by the present Federal Law and internal documents of the self-regulating organisation on its members, including expulsion from the self-regulating organisation;

file petitions with an arbitration court claiming removal of a qualified receiver being a member of the self-regulating organisation from a bankruptcy case if the qualified receiver has been expelled form the self-regulating organisation, no later than on the day following the date of the expulsion, as well as in the case of infringement by the arbitration manager of the conditions of membership in the self-regulating organisation, the requirements of this Federal Law, other federal laws, other normative legal certificates(acts) of the Russian Federation, federal standards, standards and rules of professional work, application to the arbitration manager of administrative punishment as disqualification for the commission of an administrative offence and in other cases established by this Federal Law;

analyse the activities of its members on the basis of the information they provide to the self-regulating organisation in the form of reports in the procedure established by the charter of the non-profit organisation or another document confirmed by a decision of a general meeting of members of the self-regulating organisation;

store reports of qualified receivers and the other documents confirmed by a decision of a general meeting of members of the self-regulating organisation for five years after the date of presentation of the relevant document;

organise and conduct the probation of a citizen of the Russian Federation as an assistant to a qualified receiver;

carry out with the observance of the requirements of this Federal Law, Federal Law No. 315-FZ of December 1, 2007 on the Self-Regulating Organisations and according to the list of the obligatory data to be included by the self-regulating organisation in the register of arbitration managers, and the procedure for the conducting by a self-regulating organisation of such a register endorsed in the form of a federal standard, inclusion in the register of the members of a self-regulating organisation of arbitration managers of obligatory data and the maintenance of such a register;

arrange for the maintenance of a compensation fund of the self-regulating organisation for the purpose of providing a financial coverage for liabilities for compensation for the losses caused by members of the self-regulating organisation when they execute the duties of qualified receivers;

organise the upgrading of professional training background of its members;

do the following on inquiries of a judge or a control (supervision) body if action is brought in a case of administrative offence, for instance, in the course of administrative investigation in respect of a qualified receiver: furnish documents which contain information about the qualified receiver's execution of the duties vested therein in a bankruptcy case and have to do with said case of administrative offence;

conclude the contracts envisaged by the present Federal Law with a managing company holding a licence for management of investment companies, investment trusts and non-state pension funds (hereinafter referred to as "managing company") and with a specialised depositary holding a depositary activity licence and a licence for the pursuance of the activity of specialised depositary of investment companies, investment trusts and non-state pension funds (hereinafter referred to as "specialised depositary") within 90 days

after the date of inclusion of information about the non-profit organisation in the uniform state register of self-regulating organisations of qualified receivers, file with the arbitration court a petition for exempting an arbitration manager who is a member of the self-regulating organisation from the participation in bankruptcy proceedings in the cases established by this Federal Law;

do the following within 14 working days after the date of occurrence of the self-regulating organisation's non-conformity with the requirements set out in Item 2 of Article 21 of the present Federal Law: furnishing information about the non-conformity to the control (supervision) body;

carry out according to the procedure established by federal standards, standards and rules of professional work the accreditation of the persons involved by the arbitration manager for ensuring the execution of duties assigned to him in bankruptcy proceedings;

provide for the access to the data included in the register of members of the self-regulating organisation of arbitration managers for the persons interested in receiving them according to the procedure established by the regulating body.

### Article 22.1. Disclosure of Information by a Self-Regulating Organisation of Qualified Receivers

**1.** A self-regulated organisation of qualified receivers, along with the information provided for by Federal Law No. 315-FZ of December 1, 2007 on Self-Regulated Organisations, is bound to insert the following, subject to the requirements of federal laws for protection of information (including personal data), on the site thereof on the Internet:

the constituent documents of the self-regulated organisation;

the rules for traineeship as a qualified receiver's assistant;

information on the progress in and results of the expert examination of draft federal laws, other regulatory legal acts of the Russian Federation, laws and regulatory legal acts of constituent entities of the Russian Federation and regulatory legal acts of local authorities in whose preparation the self-regulated organisation participated;

information on the non-compliance of the self-regulated organisation with the requirements of Item 2 of Article 21 of this Federal Law, in particular about the date of origination of non-compliance of the self-regulated organisation with the requirements of Item 2 of Article 21 of this Federal Law, about the measures planned and/or being taken by the self-regulated organisation for the removal of such non-compliance;

information on the persons accredited by the self-regulated organisation.

The documents and information cited in this item shall be inserted in the site of a self-regulated organisation on the Internet within fourteen days as from the date of endorsement of the appropriate documents or origination or alteration of appropriate information.

**2.** Within 14 business days after the date of inclusion of information about a non-profit organisation in the uniform state register of self-regulating organisations of qualified receivers the self-regulating organisation of qualified receivers shall provide the following information to the control (supervision) body:

the location of the self-regulating organisation, including legal and postal addresses, e-mail address and contact phone numbers;

the surnames, first names and patronymics of the members of the collective executive body of the self-regulating organisation, of the person carrying out the functions of the sole executive body of the self-regulating organisation, of the members of the managerial bodies and of the employees of the self-regulating organisation's bodies which have to be formed under the present Federal Law;

the address of the self-regulating organisation's internet website.

**3.** Within 14 working days the self-regulating organisation of qualified receiver shall provide to the control (supervision) body information on:

the modification of the information specified in Item 2 of the present article;

the amendments made to the charter of the non-profit organisation, the documents which have been elaborated and confirmed by the self-regulating organisation and are regulating the activities of its bodies specified in Article 21.1 of the present Federal Law;

the persons who have been admitted as members of the self-regulating organisation;

the persons whose membership in the self-regulating organisation has been terminated and the grounds for membership termination;

the dismissal of qualified receivers being members of this self-regulating organisation from bankruptcy cases.

**4.** Every month the self-regulating organisation of qualified receivers shall provide to the control (supervision) body information on:

the completed confirmation of qualified receivers being members of this self-regulating organisation in bankruptcy cases;

the amount of the self-regulating organisation's compensation fund;

received complaints concerning a qualified receivers' default on, or improper execution of, the duties vested therein in bankruptcy cases and on the results of consideration of such complaints.

**5.** The members of the self-regulating organisation shall disclose the information on their activities that is subject to disclosure according to the legislation of the Russian Federation and the requirements established by the self-regulating organisation.

**Article 22.2.** Keeping the Uniform State Register of Self-Regulating Organisations of Qualified Receivers

**1.** Responsibility for keeping a uniform state register of self-regulating organisations of qualified receivers is vested in the control (supervision) body.

**2.** The procedure for keeping the uniform state register of self-regulating organisations of qualified receivers and a list of the details included therein shall be defined by the regulator.

**3.** The information contained in the uniform state register of self-regulating organisations of qualified receivers is open, accessible for the general public and is subject to placement on the official internet website of the control (supervision) body in the procedure established by the regulator.

**4.** Details concerning a non-profit organisation that meets the conditions set out in Item 2 of Article 21 of the present Federal Law shall be included in the uniform state register of self-regulating organisations of qualified receivers within fifteen working days after the date of filing of the following documents with the control (supervision) body:

an application of the non-profit organisation asking for being included in the uniform state register of self-regulating organisations of qualified receivers citing the denomination of the non-profit organisation, basic state registration number and taxpayer identification number;

the original constitutive documents of the non-profit organisation or copies thereof attested by a notary;

the regulations which have been confirmed by the self-regulating organisation and are regulating the activities of its bodies specified in Article 21.1 of the present Federal Law, and also standards and rules of professional activity;

a copy of the certificate of state registration of the non-profit organisation attested by a notary;

a list of members of the non-profit organisation attested by an authorised person of the non-profit organisation, citing the taxpayer identification number and passport data (family name, first name, patronymic, date of birth, place of birth, requisite elements of the passport) of each of its members both on paper and electronic media or in the from of an electronic document bearing the qualified electronic signature of the non-profit organisation;

copies of all membership applications asking for admittance to the non-profit organisation attested by the non-profit organisation;

copies of documents certifying the Russian Federation citizenship of each member of the non-profit organisation attested by the non-profit organisation;

copies of the certificates of higher education of each member of the non-profit organisation attested by the non-profit organisation;

copies of documents confirming that a theory examination has been passed according to a qualified receiver training curriculum attested by the non-profit organisation;

copies of the work record books or other documents confirming the availability of the established work record duration in managerial positions of each member of the non-profit organisation who has a work record in managerial positions;

copies of certificates or other documents confirming that each member of the non-profit organisation has undergone probation in the capacity of an assistant to a qualified receiver attested by the non-profit organisation;

copies of statements confirming that no administrative sanction in the form of disqualification has been imposed for the commission of an administrative offence in respect of each member of the non-profit organisation attested by the non-profit organisation;

copies of applications of each member of the non-profit organisation stating that he/she is not subjected to the proceedings applicable in a bankruptcy case attested by the non-profit organisation;

copies of statements confirming the lack of conviction for committing a willful crime in respect of each member of the non-profit organisation attested by the non-profit organisation;

documents confirming that a formed compensation fund of the self-regulating organisation is being maintained in the amount and in the procedure established by Article 25.1 of the present Federal Law or copies of such documents attested by the non-profit organisation;

copies of arbitration courts' rulings attested by the non-profit organisation according to which its members have taken part in at least 100 proceedings applicable in bankruptcy cases, except for the proceedings applicable in bankruptcy cases in respect of absent debtors;

copies of contracts of compulsory insurance of the liabilities of a qualified receiver for each member of the non-profit organisation attested by the non-profit organisation.

**4.1.** Unless the documents mentioned in Paragraphs 5, 13 and 15 of Item 4 of the present article have been filed by the applicant, then on an inter-departmental inquiry of the control (supervision) body the federal executive governmental body responsible for the state registration of legal entities, natural persons as individual entrepreneurs and peasant (farmer's) farms shall provide information confirming the fact that information about the non-profit organisation has been entered in the uniform state register of legal entities, the federal executive governmental body empowered by the Government of the Russian Federation to maintain and keep a register of disqualified persons shall provide information on the non-imposition of an administrative sanction in the form of disqualification for breach of administrative law, and the federal executive governmental body in charge of the functions of state policy elaboration and normative legal regulation in the area of internal affairs shall provide information about the lack of a conviction for committing a willful crime in respect of

each member of the non-profit organisation.

5. The control (supervision) body shall render the decision on the inclusion of, or on the refusal to include, a non-profit organisation in the unified state register of self-regulating organisations of qualified receivers within fifteen working days as from the date of filing the documents established by Item 4 of this article, except for the documents cited in Paragraphs Five, Thirteen and Fifteen of Item 4 of this article, and the non-profit organisation shall be notified thereof in writing within three working days as from the date of adoption of the corresponding decision.

6. The control (supervision) body shall deny the inclusion of data on an non-profit organisation in the comprehensive state register of self-regulating organisations of qualified receives on the following grounds:

the non-profit organisation does not satisfy one of the requirements provided for by Item 2 of Article 21 of this Federal Law;

the non-profit organisation has failed to present all the documents provided for by Item 4 of this article, except for the documents cited in Paragraphs Five, Thirteen and Fifteen of Item 4 of this article;

the documents presented by the non-profit organisation does not satisfy the requirements established by this Federal Law;

the federal executive power body engaged in the state registration of legal entities, natural persons as individual businessmen and peasant's farms has no data on entering information about the non-profit organisation to the comprehensive state register of legal entities;

the federal executive power body engaged in the state registration of legal entities, natural persons as individual businessmen and peasant's farms has information about the termination of the legal entity.

7. A decision on refusal to include information about a non-profit organisation in the uniform state register of self-regulating organisations of qualified receivers is subject to appeal to the arbitration court.

**Article 23.** Abrogated.

**Article 23.1.** Control (Supervision) over the Activities of Self-Regulating Organisations of Qualified Receivers

1. Control (supervision) over the activities of self-regulating organisations of qualified receivers shall be carried out by the control (supervision) body in the procedure established by the regulator.

2. The subject matter of the control (supervision) of the control (supervision) body is the observance by self-regulating organisations of qualified receivers of the provisions of the present Federal Law, the other federal laws and the other normative legal acts of the Russian Federation that regulate the activities of self-regulating organisations of qualified receivers.

3. Control (supervision) shall be carried out by means of scheduled and off-schedule inspections.

4. A scheduled inspection of the activities of a self-regulating organisation of qualified receivers shall not be carried out by the control (supervision) body more than once in two years.

5. The ground for conducting an off-schedule inspection of the activities of a self-regulating organisation of qualified receivers is a substantiated complaint filed with the control (supervision) body against the actions or omissions of the self-regulating organisation which violate the provisions of the present Federal Law, other federal laws, other normative

acts of the Russian Federation and also the non-compliance with such requirements contained in documents of the self-regulating organisation filed with the control (supervision) body.

**6.** The duration of an inspection of a self-regulating organisation of qualified receivers shall not exceed 30 days.

**7.** The head of the inspected self-regulating organisation of qualified receivers is entitled to take appeal from actions or omissions of the officials who carry out the inspection of the activities of the self-regulating organisation to the head of the control (supervision) body and also to the court.

**8.** The control (supervision) body shall notify in writing the self-regulating organisation of qualified receivers about the decision taken on the results of the inspection within three working days after the date of the decision.

The decision of the control (supervision) body on the results of the inspection of the activities of the self-regulating organisation may be appealed against by it to the arbitration court.

**9.** Information on a non-profit organisation that unites qualified receivers shall be removed from the uniform state register of self-regulating organisations of qualified receivers by a decision:

of the control (supervision) body if the members of the self-regulating organisation of qualified receivers or an arbitration court has taken a decision on liquidation thereof;

an arbitration court on an application of the control (supervision) body on the self-regulating organisation's non-conformity with the requirements established by Paragraph 2 or 4 of Item 2 of Article 21 of the present Federal Law;

an arbitration court on an application of the control (supervision) body if it is discovered that the self-regulating organisation violated more than twice in a year other requirements of the present Federal Law, of other federal laws or of other normative acts of the Russian Federation if the violations have not been eliminated or if it cannot be eliminated.

An application of the control (supervision) body for removal of information about a non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers shall be presented to the arbitration court at the place where the uniform state register of self-regulating organisations of qualified receivers is being kept.

**10.** If it is discovered that a self-regulating organisation of qualified receivers is in breach of the requirements established by Paragraph 2 or 4 of Item 2 of Article 21 of the present Federal Law the control (supervision) body shall send an instruction to the self-regulating organisation for elimination of this irregularity which shall be implemented within ten working days after the receipt thereof.

If the performance of the instruction is not completed within the term set the control (supervision) body shall apply within three months upon the expiry of the term set for performance of the instruction to the arbitration court by means of filing an application for removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers, and the arbitration court shall take a decision on removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers.

**11.** If apart from the breach envisaged by Item 10 of the present article it is discovered that there is another breach of provisions of the present Federal Law, other federal laws or other normative legal acts of the Russian Federation the control (supervision) body shall send an instruction to the self-regulating organisation of qualified receivers for elimination of this irregularity with an indication of a term for performance thereof of at least two months after the date of the instruction.

The instruction of the control (supervision) body for elimination of the breach may be

appealed against by the self-regulating organisation to the arbitration court.

If within the term set the performance of the instruction is not completed the control (supervision) body shall apply to the arbitration court within three months upon the expiry of the term set for the performance thereof by means of filing an application for removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers, and the arbitration court shall take a decision on removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers. Also the arbitration court shall take said decision in cases when the breach discovered cannot be eliminated.

**12.** The application of the control (supervision) body for removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers shall be heard by the college of judges of the arbitration court within one month after the receipt of the application.

The arbitration court decision on removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers shall enter into force from the date of adoption and it is subject to appeal to the cassation arbitration court.

The appeal the arbitration court decision shall not be deemed ground for suspending the performance thereof.

If the cassation arbitration court overturns the arbitration court decision information on the non-profit organisation shall be included in the uniform state register of self-regulating organisations of qualified receivers within three days after the date of the cassation arbitration court judgement.

**13.** A self-regulating organisation of qualified receivers that has discovered on its own that it does not meet the requirements set out in Paragraph 2 or 4 of Item 2 of Article 21 of the present Federal Law shall file an application in writing containing the below details with the control (supervision) body within 14 working days after the date of the discovery of this irregularity:

a description of the non-conformity;

the date of occurrence of the non-conformity;

a description of the measures being taken and/or planned by the self-regulating organisation for elimination of the non-conformity.

For two months after the receipt of the application the control (supervision) body shall not apply to an arbitration court asking for removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers, and information on the non-profit organisation shall not be removed from the uniform state register of self-regulating organisations of qualified receivers on the ground specified in the application. Unless before the expiry of said term the self-regulating organisation provides the control (supervision) body with a proof that the self-regulating organisation's non-conformity with the requirements set out in Paragraph 2 or 4 of Item 2 of Article 21 of the present Federal Law has been eliminated the control (supervision) body shall file an application with the court asking for removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers.

**14.** For one year after the date of removal of information on the non-profit organisation from the uniform state register of self-regulating organisations of qualified receivers the status of self-regulating organisation of qualified receivers shall not be granted to this organisation.

**Article 24.** Abrogated.

**Article 24.1.** The Contract of Compulsory Insurance of the Liability of a Qualified

Receiver

**1.** A contract of compulsory insurance of the liability of a qualified receiver for causing losses to the persons deemed party to a bankruptcy case and to other persons due to a default on, or the improper execution of the duties vested in the qualified receiver in the bankruptcy case shall be concluded with an insurance organisation accredited by the self-regulating organisation of qualified receivers, for a term of at least one year on the condition of its resumption for the same term.

**2.** The minimum size of an insurance sum under the contract of obligatory insurance of the qualified receiver's liability comprises three million roubles a year.

Within ten days from the date of approval by the arbitration court in the procedures applied in a case on bankruptcy (with the exception of a case on bankruptcy of an absent debtor, as well as of a debtor, the balance cost of whose assets does not exceed one hundred million roubles), of a receiver and a winding-up receiver, they shall in addition conclude a contract of obligatory insurance of his liability for the recompense of the losses inflicted upon the persons taking part in the case on bankruptcy, and upon the other persons in connection with the non-execution or improper execution of the liabilities in a case on bankruptcy, imposed on the qualified receiver, with an insurance organisation accredited by the self-regulated organisation of qualified receivers. The amount of an insurance sum under the said contract shall be defined depending on the balance cost of the debtor's assets as on the last reporting date preceding the date of the introduction of the corresponding procedure, applied in a case on bankruptcy, and cannot be less than:

- three per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one hundred million roubles at the balance cost of the debtor's assets from one hundred million roubles and up to three hundred million roubles;

- six million roubles and two per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over three hundred million roubles at the balance sheet cost of the debtor's assets from three hundred million roubles and up to one billion roubles;

- twenty million roubles and one per cent of the size of the sum of the excess of the balance sheet cost of the debtor's assets over one billion roubles at the balance sheet cost of the debtor's assets over one billion roubles.

**2.1.** Under a decision of the collective managerial body the qualified receiver shall conclude a contract of compulsory insurance of liability under which the insurance sum exceeds the minimum insurance sum per year envisaged by Item 2 of the present article and is established in accordance with such decision.

Under a decision of the collective managerial body the qualified receiver shall do the following in connection with his/her being confirmed by an arbitration court in the proceedings applicable in a bankruptcy case (except for the case of bankruptcy of an absent debtor and also of a debtor whose balance value of assets does not exceed 100,000,000 roubles): conclude -- apart from the additional contract of compulsory insurance of his/her liability envisaged by Item 2 of the present article -- an additional contract of insurance of the qualified receiver's liability under which the insurance sum is set in accordance with the decision of the collective managerial body.

Also apart from the additional contract of compulsory insurance of his/her liability envisaged by Item 2 of the present article the qualified receiver shall conclude an additional contract of insurance the qualified receiver's liability in the case envisaged by Item 5 of Article 45 of the present Federal Law.

**3.** The contract of compulsory insurance of the liability of the qualified receiver shall be

extended for the next term, unless the qualified receiver had notified the insurer of refusal to extend it at least one month before the expiry of the effective term of the contract. The effect of the contract of compulsory insurance of the liability of the qualified receiver extended for the next term shall not be terminated in the event of late payment of insurance premium by the qualified receiver or late scheduled insurance contribution, given the delay does not exceed 30 days. If the contract of compulsory insurance of the liability of the qualified receiver is extended for a new term an insurance premium shall be paid in accordance with the insurance tariffs effective from the date of its payment.

4. The objects of the compulsory insurance of the liability of the qualified receiver are the property interests of the qualified receiver which do not conflict with the legislation of the Russian Federation, are connected with his/her obligation to compensate for losses to the persons deemed party to the bankruptcy case or to other persons due to his/her default on, or improper performance of, the duties vested therein in the bankruptcy case.

5. The insured accident under the contract of compulsory insurance of the liability of the qualified receiver is the onset of the qualified receiver's liability -- confirmed by a court decision that has become final -- owing the persons deemed party to the bankruptcy case or other persons due to the qualified receiver's default on, or improper performance of, the duties vested therein in the bankruptcy case, except for the cases envisaged by Item 6 of the present article.

6. The insured risk under the contract of compulsory insurance of the liability of the qualified receiver is the probability of onset of liability for the obligations specified in Item 5 of the present article, except for the onset of liability as the result of:

the infliction of losses resulting from force majeure, negative consequences of an activity relating to the use of nuclear fuel, for instance, pollution of atmospheric air, soil, body of water, radioactive contamination of the environment, citizens' exposure to radiation and also hostilities, armed rioting, popular unrest, activities of an illegal armed formation, terrorist activities and the declaration of martial law or state of emergency;

the infliction of moral harm;

illegal actions or omissions of another person;

actions or omissions of the qualified receiver not relating to his/her executing powers in a bankruptcy case.

In the cases mentioned in the present item the losses inflicted are subject to compensation in accordance with the legislation of the Russian Federation.

7. Upon the onset of the insured accident the insurer shall pay out indemnity in the amount of the losses inflicted on the persons deemed party to the bankruptcy case and to other persons as established by a court decision that has become final, but not exceeding the insurance amount according to the contract of compulsory insurance of the liability of the qualified receiver.

8. An insurance premium under the contract of compulsory insurance of the liability of the qualified receiver shall be paid by the qualified receiver to the insurer by cash or non-cash settlements of accounts on the dates established by said contract.

The contract of compulsory insurance of the liability of the qualified receiver may have a provision for the qualified receiver to pay insurance premium in several insurance contributions within on the dates established by said contract.

The date of payment of an insurance premium (insurance contribution) is the day on which the insurance premium (insurance contribution) is paid in cash to the insurer or the day on which the insurance premium (insurance contribution) is remitted to the settlement account of the insurer.

The contract of compulsory insurance of the liability of the qualified receiver shall enter into force when the insured pays the insurance premium or makes the first insurance

contribution, except as otherwise is envisaged by the contract or a federal law.

**9.** The insurer is entitled to present a recourse claim to the qualified receiver who has caused losses and whose risk of liability is insured by the contract of compulsory insurance of the liability of the qualified receiver, in the amount of the insurance indemnity paid out, for instance, in cases when the losses have been inflicted as the result of:

deliberate actions or omissions of the qualified receiver that manifested themselves in his/her breaching provisions of the present Federal Law, other federal laws or other normative legal acts of the Russian Federation or federal standards or standards and rules of professional activity;

the qualified receiver's receiving any material gain (income, remuneration) in the course of execution of the duties vested therein in bankruptcy case, for instance, as the result of the use of the information he/she learned as the result of pursuance of an activity as a qualified receiver.

**10.** Control over qualified receivers' carrying out compulsory insurance of their liabilities shall be carried out by the self-regulating organisation of qualified receivers which is entitled to establish additional requirements -- consistent with the legislation of the Russian Federation -- applicable to the contracts of compulsory insurance of the liability of qualified receivers concluded by members of the self-regulating organisation. The contracts of compulsory insurance of liability concluded by qualified receivers shall be presented to the self-regulating organisations in which such qualified receivers are members, within the term established by the standards and rules of professional activity.

**11.** The non-observance by a qualified receiver of provisions relating to the contract of compulsory insurance of the liability of a qualified receiver envisaged by the present article is ground for expulsion of the qualified receiver form a self-regulating organisation.

**Article 25.** Abrogated.

**Article 25.1.** The Compensation Fund of a Self-Regulating Organisation of Qualified Receivers

**1.** For the purpose of effecting compensation disbursements in connection with compensation for the losses inflicted on the persons deemed party to a bankruptcy case and to other persons as the result of a qualified receiver's default on, or improper execution of the duties vested therein in the bankruptcy case qualified receivers shall take part in the formation of a compensation fund of the self-regulating organisation of qualified receivers that meets the requirements set out in the present Federal Law.

**2.** The compensation fund of a self-regulating organisation of qualified receivers is a detached property belonging to the self-regulating organisation by the right of ownership. It shall be maintained with membership dues of the members of the self-regulating organisation remitted only in monetary form at a rate of at least 50,000 roubles per each member thereof. The minimum amount of the compensation fund shall be 20,000,000 roubles. It is hereby prohibited to relieve a member of the self-regulating organisation of the duty to pay dues to the compensation fund of the self-regulating organisation.

**3.** A claim for a compensation from the compensation fund of the self-regulating organisation of qualified receivers may be presented to the self-regulating organisation by the person for whose benefit a decision on collection of losses has been taken only if the below conditions exist simultaneously:

the insufficiency of the funds received under a contract of compulsory insurance of the liability of a qualified receiver to indemnify the losses caused by him/her;

the qualified receiver's refusal to meet the claim of such person or the qualified receiver's failure to meet the claim within 30 working days after the date of presentation of the

claim.

**4.** A claim for a compensation from the compensation fund of self-regulating organisation of qualified receivers may be presented to:

the self-regulating organisation in which the qualified receiver was member from the date of commission of the actions or omissions that had caused losses to the persons deemed party to a bankruptcy case and to other persons due to the qualified receiver's default on, or improper execution of, the duties vested therein in the bankruptcy case;

the national association of self-regulating organisations of qualified receivers if the property that makes up the compensation fund of said self-regulating organisation has been transferred thereto.

**5.** The following shall be attached to a claim for compensation from the compensation fund of the self-regulating organisation of qualified receivers:

a court decision on collection of losses from the qualified receiver in a certain amount;

documents confirming that an insurance organisation has paid out the insurance amount under the contract of compulsory insurance of the liability of the qualified receiver;

a document confirming that the qualified receiver refused to meet a claim or that such claim has been sent to the qualified receiver which claim was not met by him/her within 30 working days after the dispatch thereof.

**6.** The self-regulating organisation of qualified receivers or the national association of self-regulating organisations of qualified receivers shall pay out a compensation within 60 calendar days after the receipt of the relevant claim or to provide the person that has presented the claim for compensation with a substantiated refusal to pay it out.

**7.** On the following grounds the self-regulating organisation of qualified receivers is entitled to refuse to pay out a compensation to a person that has presented a claim for compensation:

losses have been indemnified in full with insurance pay-out amounts;

the qualified receiver was not a member of this self-regulating organisation of qualified receivers from the date of commission of the actions or omissions that caused the losses to the persons deemed party to the bankruptcy case and to other persons due to the qualified receiver's default on, or improper performance of the duties vested therein in the bankruptcy case;

the documents established by Item 5 of the present article were not attached to the claim for compensation.

**8.** The national association of self-regulating organisations of qualified receivers shall meet a claim for compensation on the condition that it has acquired the property making up the compensation fund of the self-regulating organisation of qualified receivers in which the qualified receiver was a member from the date of commission of the actions or omissions that caused the losses to the persons deemed party to the bankruptcy case and to other persons due to the qualified receiver's default on, or improper performance of the duties vested in him/her in the bankruptcy case.

A claim for compensation presented to the national association of self-regulating organisations of qualified receivers shall be filed together with the documents envisaged by Item 5 of the present Article.

**9.** A compensation in monetary form shall be sent to the account specified in the claim for compensation.

**10.** The spending of the compensation fund of the self-regulating organisation of qualified receivers for purposes not envisaged in the present article, for instance, for the payment out or refund of dues to members of the self-regulating organisation is prohibited.

**11.** The amount of a compensation disbursement out of the compensation fund of the self-regulating organisation of qualified receivers in which the qualified receiver was a

member as of the date of commission of the actions or omissions that have ensued the infliction of damages to the persons participating in the bankruptcy case and to other persons in connection with a default on, or the improper performance of, the duties vested in the qualified receiver in a bankruptcy case shall not exceed 5,000,000 roubles on a demand for compensation disbursement as applicable to one case of causing damages.

The amount of a compensation disbursement out of the compensation fund of the self-regulating organisation of qualified receivers in which the qualified receiver was a member as of the date of commission of the actions or omissions ensuing the infliction of damages to the persons participating in a bankruptcy case and to other persons due to a default on, or improper performance of, the duties vested in the qualified receiver in the bankruptcy case, if such nominated qualified receiver was confirmed by the arbitration court in the bankruptcy case in keeping with Paragraph 3 of Item 5 of Article 45 of the present Federal Law shall not exceed 1,000,000 roubles.

**12.** The property making up the compensation fund of a self-regulating organisations of qualified receivers is not subject to levy of execution for the liabilities of the self-regulating organisation and also for the liabilities of members of the self-regulating organisation, unless such liabilities are relating to the realisation of the compensation pay-outs envisaged by the present Article.

**13.** In information about an non-profit organisation is removed from the uniform state register of self-regulating organisations of qualified receivers or if a non-profit organisation having the status of self-regulating organisation is liquidated the property that makes up the compensation fund of the self-regulating organisation of qualified receivers is subject to transfer to the national association of self-regulating organisations of qualified receivers.

**14.** The placement of resources of the compensation fund of the self-regulating organisation for the purpose of preservation and augmentation thereof as well as the investment of such resources shall be carried out by a managing company under a contract of trust administration of resources of the compensation fund of the self-regulating organisation.

**15.** The managing company shall:

invest the resources of the compensation fund of the self-regulating organisation of qualified receivers only in the interests of the self-regulating organisation;

ensure the compliance of the amount of, the composition of, and the procedure for investment of the resources of, the compensation fund of the self-regulating organisation with the requirements established by the present Federal Law;

invest resources of the compensation fund of the self-regulating organisation in a reasonable and bona fide manner on the basis of the need for ensuring the principles of reliability, liquidity and diversification;

conclude a contract with a specialised depositary and carry out transactions in the resources of the compensation fund of the self-regulating organisation which have been put under administration by the self-regulating organisation. Control over such transactions shall be carried out by the specialised depositary;

separate the resources of the compensation fund of the self-regulating organisation which are under administration under the contract of trust administration of such resources, in accordance with the provisions of Article 1018 of the Civil Code of the Russian Federation;

remit funds for the purpose of making compensation pay-outs within ten working days after the date of receipt of a notice from the self-regulating organisation or the national association of self-regulating organisations;

provide a report on the results of investment of resources of the compensation fund of the self-regulating organisation every year no later than December 31 of the current year;

send information on a monthly basis to the self-regulating organisation and to the control (supervision) body about the composition and structure of the property that makes up

the compensation fund of the self-regulating organisation;

observe the provision prohibiting being an affiliated person of a self-regulating organisation and specialised depositary or their affiliated persons.

**16.** Control over the observance by companies of restrictions on the placement and investment of resources of the compensation fund of the self-regulating organisation, the rules for the placement thereof and the requirements governing the investment thereof shall be exercised by the specialised depositary under a contract for the provision of the services of specialised depositary. The self-regulating organisation and the control (supervision) body shall be notified by the specialised depositary of all cases of breach of the requirements established by the present Federal Law in respect of the amount and composition of resources of the compensation fund of a self-regulating organisation and the procedure for the investment thereof.

**17.** An income received from the placement of resources of the compensation fund of the self-regulating organisation shall be used to replenish it, cover the expenses relating to the maintenance of appropriate conditions for investment of resources of the compensation fund of the self-regulating organisation, for instance to pay out a fee to the managing company, as well as to pay taxes and to make other mandatory payments in respect of which the duty of their payment arises in connection with deriving incomes from placement of the compensation fund's assets of a self-regulating organisation of qualified receivers.

**18.** The self-regulating organisation of qualified receivers shall conclude contracts with the managing companies and with the specialised depositary which have been selected according to the results of a tender carried out in the procedure established by internal documents of the self-regulating organisation.

**19.** The collective managerial body shall confirm an investment declaration of the compensation fund of the self-regulating organisation. In accordance with the terms of the investment declaration of the compensation fund of the self-regulating organisation its resources may be placed exclusively in:

state securities of the Russian Federation;

state securities of subjects of the Russian Federation;

bonds of Russian issuers apart from those specified in Paragraphs 2 and 3 of the present item;

shares of Russian issuers formed as public joint stock companies;

mortgage securities issued in accordance with the legislation of the Russian Federation on mortgage securities;

amounts of money in roubles on accounts in Russian credit organisations, for instance, deposits;

participatory shares of investment trusts and shares of joint stock investment companies;

foreign currency amounts on accounts in Russian credit organisations, for instance, deposits.

The regulator is entitled to establish requirements applicable to the credit rating of the issuer of the securities envisaged by Paragraphs 4-6 of the present Item, and also to the credit rating of the securities envisaged by Paragraphs 3 and 5 of the present Item.

**20.** The managing companies shall observe the following restrictions while placing resources of the compensation fund of the self-regulating organisation:

resources of the compensation fund of the self-regulating organisation may be placed in the assets specified in Paragraphs 2-6 of Item 19 of the present article only if they are traded on the organised securities market;

the assets specified in Paragraphs 3, 4 and 7 of Item 19 of the present Article may make up in their entirety up to 30 per cent of the resources of the compensation fund of the

self-regulating organisation;

securities of one issuer, except for state securities of the Russian Federation, may make up to five per cent of the resources of the compensation fund of the self-regulating organisation;

the assets specified in Paragraph 2 of Item 19 of the present Article shall make up at least 20 per cent of the resources of the compensation fund of the self-regulating organisation.

**21.** In its investment declaration the self-regulating organisation of qualified receivers is entitled to establish additional requirements applicable to the composition and structure of its property.

**22.** A managing company's breach of the requirements established by the present Federal Law and an investment declaration as applicable to the composition and structure of the property that makes up the compensation fund of the self-regulating organisation shall be deemed ground for rescission of the contract concluded with the managing company.

**23.** The procedure for placement of resources of the compensation fund of the self-regulating organisation that has been transferred to the national association of self-regulating organisations and the procedure for paying out compensations from its resources are subject to the requirements which are similar to those governing the procedure for placement of resources of the compensation fund of a self-regulating organisation and the procedure for paying out compensations from its resources.

**Article 26.** Abrogated.

**Article 26.1.** Associations of Self-Regulating Organisations of Qualified Receivers. The National Association of Self-Regulating Organisations of Qualified Receivers

**1.** Self-regulating organisations of qualified receivers are entitled to form associations of self-regulating organisations and to be members thereof.

**2.** An association of self-regulating organisations of qualified receivers incorporating more than 50 per cent of all the self-regulating organisations about which information is included in the uniform state register of self-regulating organisations of qualified receivers is entitled to acquire the status of national association of self-regulating organisations in the procedure established by the present Federal Law.

**3.** The association of self-regulating organisations of qualified receivers shall acquire the status of national association of self-regulating organisations of qualified receivers from the date when information about it is included in the uniform state register of self-regulating organisations of qualified receivers.

The control (supervision) body shall include information on the national association of self-regulating organisations of qualified receivers in the uniform state register of self-regulating organisations of qualified receivers within three working days after the date on which the following documents are submitted to the body:

an application for inclusion of information about the national association of self-regulating organisations of qualified receivers in the uniform state register of self-regulating organisations of qualified receivers together with the decision of a general meeting of participants in the national association of self-regulating organisations of qualified receivers whereby said application has been confirmed;

copies of the constitutive documents of the association of self-regulating organisations of qualified receivers attested by it;

copies of the membership applications of each member of the association of self-regulating organisations of qualified receivers attested by it.

**4.** The control (supervision) body shall refuse to include information about a national association of self-regulating organisations of qualified receivers in the uniform state register

of self-regulating organisations of qualified receivers if:

the non-profit organisation has not submitted all the documents envisaged by Item 3 of the present article;

information about another national association of self-regulating organisations of qualified receivers has been included in the uniform state register of self-regulating organisations of qualified receivers.

**5.** The membership of a self-regulating organisation in the national association of self-regulating organisations of qualified receivers shall be terminated if:

the self-regulating organisation has submitted an application to the national association of self-regulating organisations of qualified receivers opting out from it;

the self-regulating organisation has been expelled from the national association of self-regulating organisations of qualified receivers on the grounds set out in the charter of the national association.

**6.** The control (supervision) body shall remove information about a national association of self-regulating organisations of qualified receivers from the uniform state register of self-regulating organisations of qualified receivers if:

a decision on its liquidation has been adopted by a court or the empowered body of the national association of self-regulating organisations of qualified receivers;

the number of members of the national association of self-regulating organisations of qualified receivers is less than 50 per cent of all the self-regulating organisations about which information has been included in the uniform state register of self-regulating organisations of qualified receivers, on an application of the association or also on an application of any self-regulating organisation that is not a member of this association, such application being filed at least six months after the occurrence of this circumstance.

**7.** A collective managerial body shall be formed in the national association of self-regulating organisations of qualified receivers, and it shall by all means include representatives of the self-regulating organisations being members of the national association of self-regulating organisations, and also one representative from the control (supervision) body and one from the regulator.

Independent experts, representatives of scientific, educational and public organisations who are not representatives of self-regulating organisations shall constitute up to 25 per cent of the members of the collective managerial body of the national association of self-regulating organisations of qualified receivers.

**8.** A self-regulating organisation of qualified receivers about which information is included in the uniform state register of self-regulating organisations of qualified receivers shall not be refused admission as member to the national association of self-regulating organisations of qualified receivers, except for cases when such self-regulating organisation has been expelled from this national association, provided less than two years have passed since the date of the expulsion.

**9.** The national association of self-regulating organisations of qualified receivers is entitled to:

elaborate federal standards;

elaborate a uniform qualified receiver training curriculum;

represent the interests of self-regulating organisations in their relations with governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation and local self-government bodies;

protect the rights and lawful interests of self-regulating organisations of qualified receivers;

take appeal to courts from acts and actions of governmental bodies of the Russian Federation, governmental bodies of subjects of the Russian Federation, local self-government

bodies and their officials that infringe on the rights and lawful interests of any self-regulating organisation or a group of self-regulating organisations;

invite unions, associations and alliances of legal entities and individual entrepreneurs and other organisations to take part in a discussion of the legal, economic and social problems relating to the activities of qualified receivers;

prepare proposals for improving the legal and economic regulation of activities of qualified receivers;

exchange information and hold joint events with Russian legal entities, international organisations, foreign organisations, foreign scientists and specialists concerned;

send representatives to take part in the deliberations of commissions for holding a theory examination according to a uniform qualified receiver training curriculum;

send representatives to take part in the deliberations of liquidation commissions of self-regulating organisations;

execute the other powers corresponding to the goals of its activities.

**10.** The national association of self-regulating organisations of qualified receivers shall:

ensure the preservation of the compensation funds of self-regulating organisations that have been transferred thereto in accordance with Article 25.1 of the present Federal Law and pay out compensations from them in connection with compensation for the losses inflicted by qualified receivers who are members of self-regulating organisations to the persons deemed party to a bankruptcy case or to other persons;

establish the list of obligatory information, included by the self-regulated organisation into the register of qualified receivers, and the procedure for keeping such register by the self-regulated organisation;

establish a procedure for, and intervals between, the gathering, processing and storing information by self-regulating organisations concerning the activities of their members;

inform the control (supervision) body on changes in the composition of members of the national association of self-regulating organisations of qualified receivers, amendments to the constitutive documents of the national association of self-regulating organisations of qualified receivers and on changes in the other details concerning it;

establish requirements and criteria for the accreditation by the self-regulating organisations of the arbitration managers of insurance organisations, professional participants of the securities market who carry out activity on the maintenance of the register of owners of securities, auditor organisations (auditors), appraisers, organisers of tenders, operators of electronic platforms and other persons involved by the arbitration manager for ensuring the execution of duties assigned to him in bankruptcy proceedings funded by means of the debtor (hereinafter referred to as the accredited persons).

Such requirements and criteria of the accreditation shall establish an exhaustive list of conditions, including the term of accreditation which shall not be allowed to be less than one year, and the grounds for of its termination, the requirement to the aforementioned persons, including requirements to ensuring the liability of the accredited person.

**11.** The national association of self-regulating organisations of qualified receivers shall elaborate federal standards, for instance, in as much as it concerns the following:

the procedure for keeping and the maintenance of a register of creditors' claims;

the preparation, organisation and holding of meetings of creditors and creditors' committees;

an analysis of the financial state of a debtor;

the preparation of reports of a qualified receiver;

the performance of probation in the capacity of an assistant to a qualified receiver;

the verification by a self-regulating organisation of the activities of its members being qualified receivers.

**12.** The federal standards and the uniform qualified receiver training curriculum shall be sent by the national association of self-regulating organisations of qualified receivers to the regulator for confirmation.

**Article 27.** Proceedings Applicable in a Bankruptcy Case

**1.** The following proceedings shall be implemented when a case of bankruptcy of a debtor being a legal person is being heard:

receivership;

financial rehabilitation;

external administration;

administration;

amicable agreement.

**2.** For consideration of a bankruptcy case of an individual, including individual entrepreneurs, debt restructuring, asset sale or amicable agreement shall be used.

**Article 28.** Procedure for Disclosure of Information Envisaged by this Federal Law

**1.** The data which are subject to publication in compliance with this Federal Law shall be included in the Uniform Federal Register of Information on Bankruptcy and shall be published in the official edition designated by the Government of the Russian Federation on the basis of the results of a tender among editorial boards of printed editions held by the regulating authority.

The rules for determining an official edition shall be established by the Government of the Russian Federation and shall stipulate, in particular, that with the winner of the tender cited in Paragraph One of this item shall be made an agreement on a procedure for and terms of publishing in the official edition the data, provided for by this Federal Law, for a five-year term, as well as shall specify the time, terms of and procedure for holding such tender.

If on the day following the end date of the validity term of the agreement cited in Paragraph Two of this item the Government of the Russian Federation does not determine the official edition, publication of the data provided for by this Federal Law, pending its determination by the Government of the Russian Federation, shall be continued under the same terms and in the same printed edition where these data had been published before the expiry of the validity term of the cited agreement.

If the official edition determined by the Government of the Russian Federation has ceased to publish the data provided for by this Federal Law before the expiry of the validity term of the agreement cited in Paragraph Two of this item or, where it is established by Paragraph Three of this item, after the expiry of the validity term of the cited agreement, these data, pending the determination by the Government of the Russian Federation of an official edition, is subject to publication in the "Rossiyskaya Gazeta" whose editorial board may not participate in a tender for determining an official edition.

**2.** The Unified Federal Register of Information on Bankruptcy is a federal information resource and it shall be maintained by means of including therein the information envisaged by this Federal Law. The Unified Federal Register of Information on Bankruptcy is an integral part of the Comprehensive Federal Register of Information on the Activities of Legal Entities.

The data contained in the Unified Federal Register of Data on Bankruptcy shall be public and generally accessible.

The data contained in the Unified Federal Register of Data on Bankruptcy is subject to placement on the Internet and may be used without any restrictions, in particular by way of their further transfer and/or dissemination.

The Uniform Federal Register of Information on Bankruptcy shall be kept and formed

by the operator of the Uniform Federal Register of Information on Bankruptcy.

The operator of the Unified Federal Register of Data on Bankruptcy shall complete the development of the software-hardware complex of the Unified Federal Register on Data on Bankruptcy, in particular for ensuring the compliance of the functions of the Unified Federal Register of Data on Bankruptcy with the requirements of the legislation, for optimization of its functioning and for protecting the information contained therein.

For the purposes of the present Federal Law the operator of the Unified Federal Register of Information on Bankruptcy shall be the legal entity registered on the territory of the Russian Federation that owns the technical means enabling provision for the formation and conducting of the aforementioned register in electronic form, and determined according to the results of the bidding for the performance of the particular functions according to the procedure and in conformity with the criteria established by the regulatory body, and provides for its third party liability according to the procedure and in the amount established by the regulatory body.

The procedure for bidding for the purpose of determining the operator of the Unified Federal Register of Information on Bankruptcy shall be endorsed by the regulator, and it shall allow the opportunity for participation in such bidding for all persons that meet the criteria set by the regulator which for instance shall require that a bidder in such bidding is to have a record of performance of operator's functions or performance of similar functions in respect of technical facilities -- comparable in their intended purpose, operation as well as quantitative and qualitative characteristics -- ensuring the processing of the data contained in databases.

The procedure of the interaction of the operator of the Unified Federal Register of Information on Bankruptcy and the regulatory body shall be established by the regulatory body.

**3.** Along with the information that shall be included in the Unified Federal Register of Information on Bankruptcy according to this Federal Law, the information defined by a regulation authority shall also be subjected to inclusion in the register.

The reliability of the data on a debtor shall be checked prior to their inclusion in the Unified Federal Register of Information on Bankruptcy by the operator of the Unified Federal Register of Information on Bankruptcy by way of their comparison with the information contained in the comprehensive state register of legal entities and the comprehensive state register of individual businessmen.

**4.** A procedure for forming and keeping the Unified Federal Register of Information on Bankruptcy established by the regulating body, a procedure for and time of including the cited data thereto by qualified receivers, self-regulating organisations, the body exercising control and supervision, trade promoters, electronic areas' operators, by other persons that are bound under this Federal Law, other federal laws and normative legal acts of the regulating body to include such data in the Unified Federal Register of Information on Bankruptcy, a procedure for their insertion on the Internet and the rate of payment for their inclusion in the Unified Federal Register of Information on Bankruptcy, which rate may be raised not more than once a year by the past-year's consumer price growth index must not be an obstacle for rapid and free access of any person concerned to the data provided for by this Federal Law.

Access to the official edition where the data cited in Item 1 of this article are published, its circulation, frequency, procedure for and time of publishing information about bankruptcy in such official edition, price of publishing the data cited in Item 1 of this article in such official edition (to be fixed by the Government of the Russian Federation) must not be an obstacle for the rapid and free access of any person concerned to the cited data.

The price of publishing of the data specified in Item 1 of the present Article shall be allowed to be indexed not more often than once a year by the index of the growth of consumer

prices for the last year.

**4.1.** The information subject to inclusion in the Unified Federal Register of Information on Bankruptcy shall be included therein by a qualified receiver, unless liability for inclusion of the relevant information is vested in another person according to the present Federal Law.

The information subject to inclusion in the Unified Federal Register of Information on Bankruptcy may be included therein in the procedure established by Article 86 of the Fundamentals of the Legislation of the Russian Federation on the Notariate.

**4.2.** The person which in keeping with Federal Law includes information in the Unified Federal Register of Information on Bankruptcy shall sign the information in electronic form that includes appropriate information with an electronic signature, except as otherwise envisaged by the legislation of the Russian Federation.

A piece of information that has been included in the Unified Federal Register of Information on Bankruptcy in keeping with Paragraph 2 of Item 4.1 of the present article shall be signed with the qualified electronic signature of the notary who has included said piece of information.

**5.** The outlays connected with inclusion by a qualified receiver of data in the Unified Federal Register of Information on Bankruptcy and their publication shall be reimbursed on account of the debtor's property, if not otherwise provided for by this Federal Law or by a decision of creditors' meeting.

If the debtor's property is insufficient for reimbursement of the outlays connected with inclusion of data in the Unified Federal Register of Information on Bankruptcy and their publication, appropriate actions shall be made on account of assets of the creditor applying for initiation of bankruptcy proceedings in respect of the debtor.

The outlays connected with publication of data on self-regulating organisations in the Unified Federal Register of Information on Bankruptcy shall be reimbursed on account of assets of a self-regulating organisation.

Expenses related to publishing of information on the release or suspension of an insolvency practitioner from his duties in a bankruptcy case, acknowledgement of his actions (omission) illegitimate, charging of losses from the insolvency practitioner and inclusion of such information in the unified federal register of information on bankruptcy shall be compensated with funds of such insolvency practitioner.

If the information on release or suspension of an insolvency practitioner from his duties in a bankruptcy case, acknowledgement of his actions (omission) illegitimate or charging of losses from the insolvency practitioner is not included in the unified federal register of information on bankruptcy by such insolvency practitioner in accordance with this Federal Law within a month from the day of delivery of the respective court act, the information shall be included by the self-regulating organisation of insolvency practitioners at the account of its own funds with the subsequent compensation of the expenses with funds of the said insolvency practitioner.

The state power bodies and local authorities shall include data in the Unified Federal Register of Information on Bankruptcy on a free-of-charge basis.

**6.** When following the procedures applicable in a bankruptcy case, the given below data shall be published without fail:

on institution of receivership, financial rehabilitation and external administration, on deeming the debtor bankrupt and on the commencement of a winding-up proceeding;

on termination of a proceeding in the bankruptcy case;

on confirming, dismissal or relieving a qualified receiver;

on satisfying third persons' applications stating an intention to repay the debtor's liabilities;

on holding a sale of the debtor's property and on the results thereof;

on the cancellation or modification of the information envisaged by Paragraphs 2 - 6 of the present item and/or of the judicial acts containing such information;

the other information envisaged by the present Federal Law.

**6.1.** Not later than within 10 days after the date of completion of the procedure applied in the bankruptcy case, the bankruptcy manager shall include in the Unified Federal Register of Information on Bankruptcy the notification of the results of the applied procedure as such information (report). The notification shall contain the following:

Name of the debtor, its address and identification information (state registration number of record on state registration of legal entity, state registration number of record on state registration of individual entrepreneur, taxpayer identification number, insurance number of individual personal account);

Name of the commercial court considering the bankruptcy case, name of the procedure applied in the case and the number of the bankruptcy case;

surname, name and patronymic of the approved bankruptcy manager as of the date of completion of the procedure applied in the bankruptcy case, his taxpayer identification number, insurance number of individual personal account, address for sending mail and name of the corresponding self-regulating institution, state registration number of record on state registration of such institution, its taxpayer identification number and address;

existence of applications for acknowledging the debtor's transactions invalid, filed in compliance with Chapter III.1 of this Federal Law specifying the date of consideration of the applications, results of the consideration and the results of appealing against judicial acts issued following the results of consideration of such applications;

existence of a complaint against actions or omissions of the bankruptcy manager specifying the date of the complaint, the person against whom the complaint was directed, brief description of the complaint and the decision taken on the basis of its consideration;

value of the debtor's property revealed in the course of inventory and the date of end of the inventory, if it was carried out within the procedure applied in the bankruptcy case;

amount of expenses for the procedure applied in the bankruptcy case, including specification of the amount of compensation paid to the bankruptcy manager and justification of the amounts paid, including expenses for payment for services of persons involved by the bankruptcy manager for support of his activities and the grounds for the excess of the amount of payment for such services defined in compliance with Article 20.7 of this Federal Law;

book value (if any) of the debtor's property as of the last reporting date preceding the date of implementation of the corresponding procedure applied in the bankruptcy case, and the date as of which such value was defined;

conclusions regarding the existence or absence of signs of premediated and fictitious bankruptcy;

source of reimbursement of expenses for the procedure applied in the bankruptcy case;

date and grounds for termination of proceedings on the bankruptcy case, if the commercial court takes such decision.

**6.2.** Following the results of the supervision, the notification shall also contain the following information:

Dates of judicial acts on start and end of the supervision and dates of passing judicial acts on change of terms of such procedure;

Amounts of creditors' claims as fixed in the register of creditors' claims as of the date of passing a judicial act on the end of the supervision (including specification of the amount of claims for payment of retirement benefits and salaries to persons working or who worked under a labour contract, of the principal and forfeits (penalties or late payment fees) charged and other financial sanctions) and total amount of claims of each priority satisfied within the

period of supervision;

Conclusions following the results of analysis of the debtor's financial standing (including those on sufficiency of the debtor's funds for covering court fees and expenses for payment of compensation to the bankruptcy manager, the possibility or impossibility of recovery of the debtor's solvency), information on the date of the first meeting of the creditors and decisions taken by them, information on the resolution part of the judicial act on the results of the supervision.

data on the number of the debtor's employees and former employees that have claims for payment of severance benefits and/or labour wages included into the register of creditors' claims.

**6.3.** Following the results of the financial rehabilitation, the notification shall also contain the following information:

Dates of passing judicial acts on start and end of the financial rehabilitation and dates of passing judicial acts on change of terms of such procedure;

Amount of creditors' claims in compliance with the register of creditors' claims as of the date of passing the judicial act on end of the financial rehabilitation (including specification of the amount of claims for payment of retirement benefits and salaries to persons working or who worked under a labour contract, of the principal and forfeits (penalties or late payment fees) charged and other financial sanctions) and the total amount of claims of each priority satisfied within the period of financial rehabilitation;

date of holding of meeting of creditors following the results of the financial rehabilitation and the decisions taken by them, as well as information on resolution part of the judicial act on the results of the financial rehabilitation.

data on the number of the debtor's employees and former employees that have claims for payment of severance benefits and/or labour wages included into the register of creditors' claims.

**6.4.** Following the results of the external management, the notification shall also contain the following information:

Dates of passing judicial acts on the start and end of the external management and dates of passing judicial acts on change of the terms of such procedure;

Amount of creditors' claims according to the register of creditors' claims as of the date of passing the judicial act on the end of the external management (including specification of the amount of claims for payment of retirement benefits and salaries to persons working or who worked under a labour contract, of the principal and forfeits (penalties or late payment fees) charged and other financial sanctions) and the total amount of claims of each priority satisfied within the period of the external management;

Date of holding of the general meeting of creditors that has approved the plan of the external management, transactions subjected to coordination with the meeting of creditors (committee of creditors), according to Article 104 of this Federal Law;

Information on the proposal of the bankruptcy manager following the results of the external management, contained in the report on the external manager, date of holding the meeting of creditors following the results of the external management and the decisions taken, and on the resolution part of the judicial act on the results of the external management.

data on the number of the debtor's employees and former employees that have claims for payment of severance benefits and/or labour wages included into the register of creditors' claims.

**6.5.** Following the results of the bankruptcy proceedings, the notification shall also include the following information:

Dates of passing the judicial acts on acknowledging the debtor bankrupt, start and end of bankruptcy proceedings and dates of passing the judicial acts on change of the terms of

such procedure;

Amount of claims of the creditors, according to the register of creditors' claims as of the date of closure of the register of creditors' claims (including specification of the amount of claims for payment of retirement benefits and salaries to persons working or who worked under a labour contract, of the principal and forfeits (penalties or late payment fees) charged and other financial sanctions) and the total amount of claims of each priority satisfied within the period of the bankruptcy proceedings;

The value of assets not included in the bankruptcy estate, information on the subsidiary responsibility of the persons controlling the debtor, on the results of evaluation of the debtor's property if it was carried out, specifying the property, dates of the evaluation and the value of property as stated in the evaluation report;

Date of holding the meeting of creditors following the results of the bankruptcy proceedings and the decisions taken, and information on resolution part of the judicial act on the results of the bankruptcy proceedings.

data on the number of the debtor's employees and former employees that have claims for payment of severance benefits and/or labour wages included into the register of creditors' claims.

**6.6.** Each quarter an operator of the Unified Federal Register of Information on Bankruptcy shall provide consolidated information for the corresponding period to federal executive authorities authorized by the Russian Federation Government, on the basis of information on the results of procedures applied in the bankruptcy procedure envisaged by Items 6.1 - 6.5 of this Article. Such information shall contain the following:

Total amount of creditors' claims as of the date of provision of the consolidated information on bankruptcy (insolvency) cases pending in commercial courts or completed for the corresponding period, including specification of the amount of claims for payment of retirement benefits and salaries to persons working or who worked under a labour contract, of the principal and forfeits (penalties or late payment fees) charged and other financial sanctions citing the number of the debtor's employees and former employees that have claims for payment of severance benefits and/or labour wages included into the register of creditors' claims;

total amount of claims of each priority satisfied in the course of the procedures applied in the bankruptcy case;

amount of expenses for the procedures applied in the bankruptcy case specifying the amount of compensation paid by the bankruptcy manager and the amount of expenses for compensation to persons involved by bankruptcy managers to support their activities;

number of conclusions regarding the existence and those regarding the absence of signs of premediated and fictitious bankruptcy;

other information established by the Government of the Russian Federation.

**7.** On the basis of a decision of a meeting of creditors or of a committee of creditors the information subject to compulsory publication may be published in the official edition designated in accordance with Item 1 of the present article as well as in other mass media.

A decision of a meeting of creditors may provide for other data to be included in the Comprehensive Federal Register of Information on Bankruptcy.

**8.** Except as otherwise envisaged by the present Federal Law, the information subject to publication shall contain:

the debtor's name, address and identification data thereof (the state registration number of the entry on the state registration of the legal entity, the state registration number of the entry on the state registration of the individual entrepreneur, the taxpayer identification number and the insurance number of the individual personal account);

the name of the arbitration court that has adopted the judicial act, the date of the

judicial act, an indication of the name of the proceeding being applied in the bankruptcy case and the number of the bankruptcy case;

the surname, first name and patronymic of the qualified receiver that has been confirmed, his/her taxpayer's individual number, the insurance number of the individual personal account and his/her address for correspondence, as well as the name of the relevant self-regulating organisation, the state registration number of the entry on the state registration of such organisation, its taxpayer's individual number and address;

the date of the next court session set by the arbitration court for the hearing of the bankruptcy case if it is required by the present Federal Law;

other information in the cases envisaged by the present Federal Law and normative legal acts of the regulating body.

**Article 29.** The Powers of Executive Governmental Bodies and Local Self-Government Bodies to Resolve Issues of Financial Rehabilitation and Bankruptcy

**1.** For the purpose of implementing a state policy on issues of financial rehabilitation and bankruptcy the Government of the Russian Federation shall:

establish a procedure for the body empowered for representation purposes in a bankruptcy case and in the proceedings applicable in a bankruptcy case to file claims for compulsory payments and claims of the Russian Federation for money obligations and applications for deeming a debtor bankrupt;

establish a procedure for consolidating and representing claims in a bankruptcy case and in the proceedings applicable in a bankruptcy case for compulsory payments and claims of the Russian Federation for money obligations;

coordinate the activities of representatives of federal executive governmental bodies and representatives of state non-budget funds as creditors for money obligations and compulsory payments;

establish a procedure for keeping record of, and analysing the solvency of, strategic enterprises and organisations.

**2.** In a bankruptcy case and in the proceedings applicable in a bankruptcy case the federal executive governmental bodies deemed "empowered bodies" according to Article 2 of the present Federal Law shall present claims for compulsory payments and claims of the Russian Federation for money obligations.

**3.** The control (supervision) body shall:

include information about non-profit organisations in the uniform state register of self-regulating organisations of qualified receivers and shall keep it;

exercise control (supervision) over the observance by self-regulating organisations of qualified receivers of the federal laws and the other normative legal acts of the Russian Federation regulating the activities of self-regulating organisations;

carry out inspections of self-regulating organisations of qualified receivers in the procedure established by the regulator;

file an application with an arbitration court for removal of information about non-profit organisations from the uniform state register of self-regulating organisations of qualified receivers in the cases established by the present Federal Law;

take part in the organisation of training of qualified receivers and in the conducting and holding a theory examination according to a uniform curriculum for training them;

bring action in a case of administrative offence in respect of a qualified receiver, self-regulating organisation of qualified receivers and/or an official thereof and shall consider such case or refer it to an arbitration court for hearing;

render support to self-regulating organisations of qualified receivers and to qualified

receivers in the course of the proceedings applicable in a bankruptcy case and related to issues of transborder insolvency (an insolvency (bankruptcy) complicated by a foreign element);

establish the status of association of self-regulating organisations of qualified receivers as a national association of self-regulating organisations of qualified receivers by means of including relevant information in the uniform state register of self-regulating organisations of qualified receivers;

include information on qualified receivers in a consolidated state register of qualified receivers that has information nature, and shall keep the consolidated state register of qualified receivers in accordance with the procedure established by the regulating body;

confirm the composition of a commission for holding a theory examination according to the uniform qualified receiver training curriculum;

remove information about non-profit organisations from the uniform state register of self-regulating organisations of qualified receivers in the cases envisaged by the present Federal Law;

execute the other powers vested therein by the present Federal Law, other federal laws and other normative legal acts of the Russian Federation.

**4.** The regulator shall confirm:

a uniform qualified receiver training curriculum and rules for conducting and taking a theory examination according to such curriculum;

federal standards.

The regulator shall confirm federal standards or if they do not comply with the provisions of Federal Law or of other federal laws it shall issue a substantiated refusal to grant confirmation thereto, within 60 working days after the date of submission of the federal standards by the national association of self-regulating organisations of qualified receivers.

Confirmed federal standards shall be published by the regulator in the procedure established for the publication of normative legal acts of federal executive governmental bodies and placement on the regulator's official internet website, and they shall enter into force upon the expiry of ten days after the date of their publication.

Confirmed federal standards are not subject to state registration.

**5.** The Government of the Russian Federation shall establish a procedure for taking into account the opinions of executive governmental bodies of subjects of the Russian Federation and local self-government bodies when federal executive governmental bodies shape up their position as creditors in respect of compulsory payments in the course of the proceedings applicable in a bankruptcy case.

**6.** Every quarter the territorial bodies of the federal executive governmental body charged with security matters shall provide information on the organisations holding licences for performance of works with the use of information classified as state secret to the arbitration courts at the place where said organisations are located and to the territorial bodies of the control (supervision) body.

## Chapter II. Bankruptcy Prevention

**Article 30.** Measures for Preventing Organisations' Bankruptcy

**1.** If evidence of bankruptcy established by Item 2 of Article 3 of the present Federal Law appears, the head of the debtor shall send information on the availability of the signs of bankruptcy to the owner of the property of the debtor being an unitary enterprise and to the persons having the right of initiating the convocation of an off-schedule general meeting of

shareholders (stockholders) within 10 days after the date when the head learned or had to learn about the occurrence thereof.

2. In the cases specified by a federal law the promoters (stockholders) of the debtor, the owner of property of the debtor being a unitary enterprise, federal executive governmental bodies, the executive bodies of Russian regions, local government bodies shall take timely measures for preventing organisations' bankruptcy.

3. For the purposes of preventing organisations' bankruptcy the promoters (stockholders) of the debtor, the owner of property of the debtor being a unitary enterprise before the filing of a petition for declaring the debtor bankrupt with a court of arbitration shall take measures with a view to restoring the solvency of the debtor. The measures aimed at restoring the solvency of the debtor may be taken by creditors or other persons under an agreement with the debtor.

**Article 31.** Rehabilitation

1. The promoters (stockholders) of a debtor, the owner of property of a debtor being a unitary enterprise, the creditors and other persons within the framework of bankruptcy prevention measures may provide financial assistance to the debtor in an amount sufficient for repayment of monetary obligations, claims for paying severance benefits and/or wages to the persons who are working or have been working under a labour contract and mandatory payments and for restoration of the debtor's solvency (rehabilitation).

2. When financial assistance is being provided the debtor or other persons may assume obligations for the benefit of persons which provide financial assistance.

## Chapter III. The Hearing of Bankruptcy Cases
## in a Court of Arbitration

**Article 32.** Procedure for Hearing Bankruptcy Cases

1. Cases of bankruptcy of a legal person or a citizen, in particular an individual entrepreneur, shall be heard by a court of arbitration in accordance with the rules set out by the Arbitration Procedural Code of the Russian Federation, and with due regard to the features established by the present Federal Law.

2. The features of hearing bankruptcy cases established by the present chapter shall be applicable, except as otherwise envisaged by other chapters of the present Federal Law.

**Article 33.** The Cognisance and Jurisdiction Concerning Bankruptcy Cases

1. Cases of bankruptcy of a legal person or a citizen, in particular an individual entrepreneur, shall be heard by the court of arbitration at the location of the debtor being a legal person or at the place of residence of the natural person.

2. The application for declaring a debtor bankrupt shall be accepted by a court of arbitration if claims to the debtor being a legal person in the aggregate make up at least 300,000 roubles, or to the debtor being a citizen at least 500,000 roubles, and if the said claims are undercharged within the three-month term after their due date, except as otherwise envisaged by the present Federal Law.

3. A bankruptcy case shall not be referred to a private arbitration for consideration.

**Article 34.** The Persons Deemed Party to a Bankruptcy Case

**1.** The persons deemed party to a bankruptcy case shall be as follows:

the debtor;

a qualified receiver;

the bankruptcy creditors;

authorised bodies;

the federal executive governmental bodies and also the governmental bodies of Russian regions and local government bodies at the location of the debtor in the cases specified by the present Federal Law;

the person which has provided security for the conduct of financial rehabilitation.

**2.** In the course of any proceeding applicable in a bankruptcy case the persons specified in Item 1 of the present Article are entitled to file a petition with the arbitration court for an exert examination to be ordered for the purpose of detecting signs of a deliberate or fictitious bankruptcy and committing the procedural actions envisaged by the present Federal Law in the arbitration litigation in the case of bankruptcy and the other actions required for the realisation of the rights granted.

Expenses towards the performance of said expert examination shall be compensated for with funds of the person that has filed the petition for said expert examination.

**3.** Persons participating in the bankruptcy case shall have the right to submit the documents envisaged by this Federal Law to the arbitration court in electronic form and to fill out the forms published on the official website of the arbitration court through the procedure set by the Supreme Court of the Russian Federation within its authority.

**Article 35.** The Persons Deemed Party to Arbitration Litigation in a Bankruptcy Case

**1.** The following persons are deemed party to an arbitration litigation in a bankruptcy case:

a representative of the debtor's employees;

a representative of the owner of property of the debtor being an unitary enterprise;

a representative of the debtor's founders (stockholders);

a representative of a creditors' meeting or a representative of a creditors' committee

a representative of the federal executive governmental body charged with security matters if the execution of the powers of the qualified receiver is relating to access to information deemed state secret;

the following bodies empowered in the proceedings applicable in a bankruptcy case to represent the interests of subjects of the Russian Federation and municipal formations: executive governmental bodies of the subjects of the Russian Federation and local self-government bodies respectively at the place where the debtor is located;

other persons in the cases envisaged by the Arbitration Procedural Code of the Russian Federation and the present Federal Law.

**2.** The following are entitled to take part in an arbitration litigation in a bankruptcy case:

the self-regulating organisation of qualified receivers that nominates qualified receivers for being confirmed in the bankruptcy case or whose member has been confirmed as a qualified receiver in the bankruptcy case, when issues relating to the confirmation, dismissal or relief of qualified receivers and also complaints against actions of qualified receivers are being heard;

the control (supervision) body when issues relating to the confirmation of qualified receivers are being heard;

creditors for current payments when issues relating to infringement on the creditors' rights relating to current payments are being heard.

**3.** The persons specified in Item 2 of the present article are entitled to read bankruptcy

case materials, make excerpts from them and copies of them.

4. Persons participating in the bankruptcy case shall have the right to submit the documents envisaged by this Federal Law to the arbitration court in electronic form and to fill out the forms published on the official website of the arbitration court through the procedure set by the Supreme Court of the Russian Federation within its authority.

**Article 36.** Representation in a Bankruptcy Case

1. The citizens, in particular individual entrepreneurs, and the organisations deemed party to a bankruptcy case or deemed participants in the arbitration process in a bankruptcy case may be represented by any citizens having dispositive legal capacity and appropriately documented powers to conduct the bankruptcy case.

2. The powers of the heads of organisations acting in the name of the organisations within the scope of the powers set out by a federal law, another regulatory legal act or constitutive documents shall be confirmed by the documents they file with the court as identifying their positions and also by constitutive and other documents.

3. The powers of legal representatives shall be confirmed by the documents filed with the court to identify their status and powers.

4. Other representatives' powers to conduct a bankruptcy case in a court of arbitration shall be expressed in a power of attorney issued and drawn up in compliance with federal law and in the cases specified by an international treaty of the Russian Federation or a federal law, or another document.

**Article 37.** The Application of a Debtor

1. The application of a debtor shall be filed with the court of arbitration in written form. The said application shall be signed by the head of the debtor being a legal person or by a person authorised under the debtor's constitutive documents to file applications for declaring a debtor bankrupt or by the debtor being a citizen.

The application of a debtor shall be signed by a representative of the debtor if such power is expressly stated in the representative's power of attorney.

2. The following shall be indicated in the application of a debtor:

the name of the court of arbitration with which said application is filed;

the sum of creditors' claims relating to monetary obligations in an amount not disputed by the debtor;

the sum of debts owing as compensation for harm inflicted on citizens' life and health, compensation to be paid in excess of the compensation for harm, wages/salaries and severance benefits payable to the debtor's employees, the sum of royalties payable to the authors of the results of intellectual activity;

the sum of debts relating to mandatory payments;

an explanation of the impossibility of meeting the creditors' claims in full or of a significant aggravation in economic activity in the event of levying execution against the debtor's property;

information on the statements of claim to the debtor, writs of execution, as well as other documents presented for the purpose of writing off amounts of money from the debtor's accounts according to the compulsory procedure, which are accepted by courts of general jurisdiction, courts of arbitration, umpires to institute proceedings upon;

information on the property owned by the debtor, in particular funds and accounts

receivable;

the numbers of the debtor's accounts opened with banks and other credit organisations, the addresses of the banks and other credit organisations;

the name and address of the self-regulating organisation from among whose members the court of arbitration approves an interim receiver;

the name and address of the self-regulating organisation from among whose members the interim receiver designated in the procedure established in keeping with Item 5 of the present article is to be confirmed;

a list of the documents attached.

If a debtor uses in its activities data constituting state secrets, in the application shall be indicated the form of access to state secrets of the debtor's head.

The application of a debtor may comprise other information concerning the hearing of the bankruptcy case.

The debtor's petitions may be also attached to the application of the debtor.

The application of a debtor shall not comprise requirements concerning an interim receiver nominee.

**3.** The application of a debtor being a citizen shall also comprise information on the debtor's obligations not relating to his/her entrepreneurial activity.

**4.** The debtor shall send copies of his/her application to the bankruptcy creditors, authorised bodies, the owner of property of the debtor being a unitary enterprise, the board of directors (supervisory board) or another similar collective managerial body and also to other persons in the cases specified by the present Federal Law. If before the filing of the debtor's application a representative of the owner of property of the debtor being a unitary enterprise, a representative of the debtor's promoters (stockholders), or a representative of the debtor's employees have been elected (appointed), copies of the debtor's application shall be sent to these persons.

At least 15 calendar days before filing a debtor's application the debtor shall publish a notice of a debtor's application being filed with the arbitration court by means of including it in the Unified Federal Register of Information on the Activities of Legal Entities.

**5.** For the purposes of indicating a self-regulating organisation of qualified receivers in the debtor's application it shall be designated by random selection in the procedure established by the regulator when the notice of the debtor's application being filed with the arbitration court is being published.

**Article 38.** The Documents Attached to the Application of a Debtor

**1.** Apart from the documents envisaged by the Arbitration Procedural Code of the Russian Federation the debtor's application may be filed together with documents confirming:

the existence of the debt and also debtor's inability to meet creditors' claims in full;

the ground for the occurrence of the debt;

the other circumstances serving as basis for the debtor's application.

**2.** The following shall be also attached to the application of a debtor:

the constitutive documents of a debtor being a legal person and also the certificate of state registration of the legal person or the document of the state registration of the individual businessman;

a list of the applicant's creditors and debtors together with a breakdown of accounts payable and accounts receivable and an indication of the addresses of the applicant's creditors and debtors;

the balance sheet as of the last accounting date, or documents substituting it, or documents showing the composition and value of the property of a debtor being a citizen;

the decision of the owner of property of a debtor being a unitary enterprise or of the debtor's promoters (stockholders), and also of another authorised body of the debtor, to file the debtor's application, if any, with the court of arbitration;

the decision of the owner of property of a debtor being a unitary enterprise or of the debtor's promoters (stockholders), and also of other authorised body of the debtor, to elect (appoint) a representative of the debtor's promoters (stockholders) or a representative of the owner of property of the debtor being a unitary enterprise;

the minutes of the meeting of the debtor's employees which elected a representative of the debtor's employees to take part in the arbitration court proceedings on the bankruptcy case, if said meeting had been held before filing the debtor's application;

a report on the value of the debtor's property prepared by an appraiser, if any;

documents proving the head of the debtor has access to state secrets with an indication of the form of such access (if the debtor has a licence for carrying out works with the use of the data constituting state secrets);

other documents in the cases specified by the present Federal Law.

**3.** The originals of the documents specified in this article or their appropriately attested copies shall be attached to the application of a debtor.

**Article 39.** The Application of a Bankruptcy Creditor, of the Debtor's Employee or Former Employee

**1.** The application of a bankruptcy creditor, of the debtor's employee or former employee for declaring a debtor bankrupt (hereinafter referred to as "creditor's application") shall be filed with a court of arbitration in written form. The application of a creditor being a legal person shall be signed by the person's head or representative, and the application of a creditor being a citizen shall be signed by the citizen or his/her representative.

**2.** The following shall be indicated in the creditor's application:

the name of the arbitration court with which the creditor's application is filed;

the name (surname, first name and patronymic) of the debtor and its/his/her address;

the registration details of the debtor being a legal entity (the state registration number of the entry of the state registration of the legal entity and the taxpayer identification number);

the name (surname, first name and patronymic) of the bankruptcy creditor and the debtor's employee or former employee, as well as their addresses;

the amount of claim of the bankruptcy creditor, of the debtor's employee or former employee to the debtor and the amount of interest and forfeit money (fines and penalties) payable;

the obligation from which the debtor's claim in respect of the bankruptcy creditor, of the debtor's employee or former employee has occurred, and the due date of the obligation;

the decision - that has become final - of the court, arbitration court or private arbitration court that has considered claims of the bankruptcy creditor, of the debtor's employee or former employee to the debtor, in the cases envisaged by the present Federal Law;

an evidence of the grounds for the occurrence of the debt (invoices, consignment notes and other documents);

the candidature of an interim receiver (the surname, first name and patronymic of a qualified receiver, and the designation and address of the self-regulated organisation whose member he is), or the designation and address of the self-regulated organisation from among whose members an interim receiver shall be approved;

a list of the documents attached to the application.

The bankruptcy creditor, the debtor's employee or former employee in the creditor's

application is entitled to indicate additional qualifications for interim receiver nominee. Another information relating to the hearing of the bankruptcy case may be provided in the creditor's application.

The petitions the bankruptcy creditor, the debtor's employee or former employee has may be attached to the creditor's application.

**3.** The bankruptcy creditor shall send a copy of his application to the debtor.

**4.** The application of a creditor may be based on a consolidated debt relating to different circumstances.

**5.** Bankruptcy creditors or the debtor's employees or former employees are entitled to put their claims to the debtor together and file a single creditor's application with the court. Such an application shall be signed by the bankruptcy creditors or by the debtor's employees or former employees which have put together their claims.

**Article 40.** The Documents Attached to the Application of a Creditor

**1.** Apart from the documents specified by the Arbitration Procedural Code of the Russian Federation the application of a creditor shall be accompanied with documents confirming:

the debtor's obligations to the bankruptcy creditor, the debtor's employee or former employee and also the availability and sum of the debt relating to the said obligations;

proof of the grounds for the occurrence of the debt (invoices, waybills and other documents);

other circumstances on which the creditors' application is based.

**2.** A creditor's application signed by a representative of the bankruptcy creditor or a representative of the debtor's employees shall also have attached thereto power of attorney proving the authority of the person that has signed the cited application to file it or, where it is provided for an international treaty of the Russian Federation or by federal law some other document proving the authority of such representatives.

**3.** Attached to the application of a creditor shall be the decisions of the court, arbitration court or private arbitration that considered the claim of the bankruptcy creditor, the debtor's employee or former employee to the debtor, in the cases envisaged by the present Federal Law.

**Article 41.** The Empowered Body's Application

**1.** An application of the empowered body for a debtor to be deemed bankrupt in as much as it concerns a debt relating to money obligations (hereinafter referred to as "the empowered body's application") shall meet the requirements applicable to the creditor's application.

**2.** The empowered body's application shall be filed with the arbitration court in writing.

**3.** The following shall be indicated in the empowered body's application:

the name of the arbitration court with which the creditor's application is filed.

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the debtor and its/his/her address;

the registration details of the debtor being a legal entity (the state registration number of the entry on the state registration of the legal entity and the taxpayer identification number);

the name of the empowered body and its address;

the amount of the empowered body's claims addressed to the debtor and the amount of interest and forfeit money (fines and penalties) payable;

the details of the decision -- that has become final -- of the court, arbitration court or private arbitration court that has considered the empowered body's claims to the debtor in the

cases envisaged by the legislation of the Russian Federation;

an evidence of the occurrence of the debt;

the candidature of an interim receiver (the surname, first name and patronymic of a qualified receiver, and the designation and address of the self-regulated organisation whose member he is), or the designation and address of the self-regulated organisation from among whose members an interim receiver shall be approved;

a list of the documents attached to the creditor's application.

Also another information relating to the hearing of the bankruptcy case may be provided in the empowered body's application.

The petitions the empowered body has may be attached to the empowered body's application.

**4.** The empowered body shall send a copy of its application to the debtor.

**5.** The empowered body's application may be based on consolidated debts relating to different liabilities.

**6.** The following shall be attached to the empowered body's application containing a claim for compulsory payments: the non-performed or partially performed decision of the tax body and/or decision of the customs body on collection of the debtor's amounts of money and/or property for debts. The empowered application shall be filed together with information -- according to the empowered body -about the debts relating to compulsory payments.

**Article 42.** Accepting an Application for Declaring a Debtor Bankrupt

**1.** The arbitration court judge shall accept an application for declaring a debtor bankrupt filed in compliance with the standards set by the Arbitration Procedural Code of the Russian Federation and the present Federal Law.

In case when the filing of an application of a debtor with a court of arbitration is compulsory but such an application is not accompanied by all the documents required under Article 38 of the present Federal Law, the said application shall be accepted by the court of arbitration for further proceedings and the lacking documents shall be demanded when a bankruptcy case is prepared for court hearing.

**2.** The arbitration court judge shall issue a ruling on the acceptance of the application for declaring the debtor bankrupt within five days after the receipt of the said application by the court of arbitration.

**3.** The following shall be indicated in a ruling on deeming a debtor bankrupt: a nominated qualified receiver and/or the self-regulating organisation from among whose members the arbitration court is going to confirm a qualified receiver (hereinafter referred to as "declared self-regulating organisation"), the registration details of the debtor being a legal entity (the state registration number of the entry on the state registration of the legal entity and the taxpayer identification number) and also the date of consideration of existence of ground for the application for the debtor's being deemed bankrupt. The registration details of the debtor being a legal entity shall be indicated in all court judgements turned out by the arbitration court in the bankruptcy case.

The declared self-regulating organisation shall be entitled to familiarise itself with the materials of the bankruptcy case, and make abstracts from them and copies of them.

**4.** The court of arbitration shall send the ruling on acceptance of the application for declaring the debtor bankrupt to the applicant, the debtor, to the control (supervision) body and to the declared self-regulating organisation.

Where the debtor has a licence for carrying out works with the use of data constituting state secrets, the court of arbitration shall direct a ruling on acceptance of the application for

declaring the debtor bankrupt to the territorial agency of the federal executive body in charge of ensuring security.

An indication shall be provided in the arbitration court ruling sent to the declared self-regulating organisation of additional qualifications for an interim receiver nominee, if such qualifications are indicated in the application for deeming the debtor bankrupt and information about the fact that the debtor has or does not have a licence for carrying out works through the use of information deemed state secret.

**5.** If an application for declaring a debtor bankrupt is not accompanied by the debtor's financial statements as of the last accounting date the court of arbitration shall demand that such documents be filed by the debtor. The debtor shall file his/her/its financial statements with the court of arbitration within five days after the receipt of the ruling whereby such documents are demanded.

**6.** Receivership shall be instituted according to the results of consideration of the grounds for the application for deeming the debtor bankrupt.

A court hearing dedicated to verification of the grounds for application for deeming the debtor bankrupt shall be held at least after 15 days and within thirty days after the date of the issuance of the ruling on acceptance of the application for declaring the debtor bankrupt.

**7.** On the application of the person which filed the application for declaring the debtor bankrupt the court of arbitration shall be entitled to take measures for securing the application as envisaged by the Arbitration Procedural Code of the Russian Federation.

The petition for taking measures for securing the application for declaring a debtor bankrupt shall be considered by the judge not later than the day following the date of receipt of the petition, without the parties being notified.

According to the results of the consideration of the petition a ruling shall be issued.

The ruling on taking measures for securing the application shall take effect immediately.

The ruling on taking measures for securing an application or refusing to take measures for securing an application shall be subject to appeal. An appeal taken from the said ruling shall not cause suspension of the ruling.

**8.** If prior to the hearing scheduled by the court, the court of arbitration receives applications for its consideration for declaring the debtor bankrupt from other persons, all the applications received shall be seen by the court of arbitration as applications for entering the bankruptcy case. These applications shall be considered within 15 days after the date of the court hearing dedicated to verification of the grounds for the claims of the first applicant which applied to the court of arbitration.

The persons whose applications' consideration has been postponed shall have the rights specified in Item 7 of the present article.

**9.** The arbitration court shall approve a temporary manager whose candidacy is specified in the application for acknowledging the debtor bankrupt admitted justified, or a temporary manager or financial manager whose candidacies are presented by the self-regulating organisation of insolvency practitioners specified in the application.

If there are several applications for acknowledging the debtor bankrupt, including cases when consideration of justification of the application received first is postponed by the arbitration court, the arbitration court shall approve a temporary manager whose candidacy is specified in the application for acknowledging the debtor bankrupt that is received by the arbitration court first, or a temporary manager or financial manager whose candidacies are presented by the self-regulating organisation of insolvency practitioners specified in the application.

**Article 43.** Refusal to Accept an Application for Declaring a Debtor Bankrupt

The arbitration court judge shall refuse to accept an application for declaring a debtor bankrupt in the case of:

a breach of the terms set out in Item 2 of Article 33 of the present Federal Law;

the filing of the application for declaring the debtor bankrupt if a legal proceedings have been commenced in a bankruptcy case in respect of this debtor and a proceeding applicable in a bankruptcy case has been instituted;

Paragraph four is abrogated.

**Article 44.** Suspending and Returning an Application for Deeming a Debtor Bankrupt

**1.** If in the course of considering an issue of accepting an application for deeming a debtor bankrupt the arbitration court establishes that it has been filed in breach of the requirements set out in Articles 37-41 of the present Federal Law the arbitration court shall issue a ruling on suspending the application.

**2.** In the application mentioned in Item 1 of the present Article the arbitration court shall indicate grounds for suspension of the application for deeming the debtor bankrupt and a term for the applicant to eliminate the circumstances serving as ground for the suspension of the application for deeming the debtor bankrupt.

No later than on the day following the date of the ruling copies of the ruling on suspension of the application for deeming the debtor bankrupt shall be sent to the debtor and to the creditor being the applicant.

**3.** If the circumstances specified in Item 2 of the present article are eliminated within the term set by the arbitration court ruling the application for deeming the debtor bankrupt shall be deemed filed as of the date when it is received by the arbitration court and it shall be accepted by the arbitration court to commence proceedings thereon.

**4.** If the circumstances specified in Item 2 of the present Article are not eliminated within the term set by the arbitration court ruling on suspension of the application for deeming the debtor bankrupt the arbitration court shall issue a ruling on return of the application for deeming the debtor bankrupt and it shall return such application together with the documents attached thereto.

**5.** Copies of the ruling on return of the application for deeming the debtor bankrupt shall be sent to the debtor and to the creditor being the applicant.

**Article 45.** Procedure for Confirmation of a Qualified Receiver

**1.** Having received the arbitration court ruling on acceptance of the application for deeming the debtor bankrupt containing an indication of a qualified receiver nominee or the minutes of a meeting of creditors on selection of a qualified receiver nominee, the declared self-regulating organisation of qualified receivers in which the selected qualified receiver is member shall provide information to the arbitration court on the compliance of said nominee with the requirements envisaged by Articles 20 and 20.2 of the present Federal Law.

Having received the arbitration court ruling on acceptance of the application for deeming the debtor bankrupt which does contains no indication of a qualified receiver nominee or the minutes of a meeting of creditors on selection of a self-regulating organisation the declared self-regulating organisation shall nominate a qualified receiver from among its members who have expressed their consent to be confirmed by the arbitration courts in the bankruptcy case.

The declared self-regulating organisation is not entitled to nominate a qualified receiver who has no state secret clearance of the established form if the availability of such clearance is a condition sine qua non for the arbitration court to confirm the qualified receiver.

**2.** Within two days and seven days respectively from the date of receipt of the

arbitration court ruling on acceptance of the application for deeming the debtor bankrupt the debtor and the territorial body of the federal executive governmental body charged with security matters shall provide information to the arbitration court and to the declared self-regulating organisation of qualified receivers on the state secret clearance form of the head of the debtor and on the degree of secrecy of the information circulating at the debtor's enterprise or on the lack of such clearance or such information.

3.  The declared self-regulating organisation of qualified receivers shall provide unfettered access for persons concerned to the implementation of the procedure of nominating a qualified receiver.

A decision on nomination of a qualified receiver shall be taken by the declared self-regulating organisation on a collective basis.

4. Within nine days after the receipt of the arbitration court ruling on acceptance of the application for deeming the debtor bankrupt or the minutes of the meeting of creditors on selection of the qualified receiver nominee the declared self-regulating organisation of qualified receivers shall send information to the arbitration court, the applicant (to the meeting of creditors or a representative of the meeting of creditors) on the compliance of the person nominated for a qualified receiver with the requirements set out in Articles 20 and 20.2 of the present Federal Law, by a method ensuring delivery within five days after the date of dispatching or shall nominate a qualified receiver, and also if necessary, information on the availability of the qualified receiver's state secret clearance.

The declared self-regulating organisation shall be accountable for the provision of unreliable information on qualified receivers.

On the applicant's petition a replacement may be provided for the qualified receiver nominee or the self-regulating organisation specified in the application for deeming the debtor bankrupt, before the date of dispatch of the arbitration court ruling on acceptance of the application for deeming the debtor bankrupt or the minutes of the meeting of creditors on selection of the qualified receiver nominee to the declared self-regulating organisation.

5. According to the results of consideration of the information provided by the self-regulating organisation of qualified receivers on the compliance of the qualified receiver nominee with the requirements set out in Items 2 - 4 of Article 20 (inter alia, the requirements established by the self-regulating organisation of qualified receivers as a condition for membership in it) and Article 20.2 of the present Federal Law, or the qualified receiver nominee the arbitration court shall confirm the qualified receiver who meets such requirements.

If the self-regulating organisation of qualified receivers provides information according to which the qualified receiver nominee does not meet the requirements envisaged by Article 20.2 of the present Federal Law, and also information according to which the qualified receiver lacks sufficient competence, conscientiousness and independence for the implementation of a proceeding applicable in a bankruptcy case the arbitration court may take a decision on refusal to confirm the qualified receiver nominee for the bankruptcy case.

If the arbitration court confirms the qualified receiver nominee in respect of whom the self-regulating organisation of qualified receivers has provided the information specified in Paragraph 2 of the present item the qualified receiver shall conclude an additional contract of insurance of qualified receiver's liability and present this contract to the arbitration court and to the self-regulating organisation of qualified receivers in which he/she is a member, within 10 days after being confirmed by the arbitration court. The insurance sum under the additional contract of insurance of qualified receiver's liability shall not be less than the amount of the compensation fund of the self-regulating organisation of qualified receivers as of the last accounting date preceding the date of confirmation of the qualified receiver nominee.

6. If a qualified receiver has been relieved or removed by an arbitration court from a

bankruptcy case and a decision on selection of another qualified receiver or another self-regulating organisation of qualified receivers has not been presented by a meeting of creditors to the arbitration court within ten days after the date of the qualified receiver's relief or removal the self-regulating organisation in which he/she was member shall nominate a qualified receiver to the arbitration court in the procedure established by the present article for confirmation in the bankruptcy case.

7. If the declared self-regulating organisation of qualified receivers does not nominate a qualified receiver or provide information on the compliance of a nominated qualified receiver with the requirements set out in Articles 20 and 20.2 of the present Federal Law to the arbitration court within 14 days after the receipt of the arbitration court ruling on acceptance of the application for deeming the debtor bankrupt or the minutes of the meeting of creditors on selection of a qualified receiver or self-regulating organisation the arbitration court shall adjourn by 30 days the hearing of the issue of confirmation of a qualified receiver in the bankruptcy case. In this case the applicant and also the other persons deemed party to the bankruptcy case are entitled to file a petition for confirmation of a qualified receiver in the bankruptcy case from among the members of another self-regulating organisation.

If within said term the applicant does not file a petition with the arbitration court or the self-regulating organisation specified in such petition does not provide information on the compliance of the qualified receiver nominee with the requirements set out in Articles 20 and 20.2 of the present Federal Law or nominate a qualified receiver the arbitration court shall consider petitions of the other persons deemed party to the bankruptcy case.

If several petitions are received from the other persons deemed party to the bankruptcy case the arbitration court shall confirm a qualified receiver, the candidate of which nominated in the petition was received first by the arbitration court, or a qualified receiver the candidate of which nominated by the self-regulating organisation mentioned in such petition.

8. Abrogated.

9. If no nomination is done for a qualified receiver within three months after the date when a qualified receiver is to be confirmed according to the present Federal Law the arbitration court shall terminate proceedings in the case.

10. If the qualified receiver nominated in the arbitration court ruling on acceptance of the application for deeming the debtor bankrupt or in the minutes of the meeting of creditors on selection of a qualified receiver nominee or if other qualified receivers being members of the declared self-regulating organisation of qualified receivers do not have state secret clearance, provided such clearance is a condition sine qua non for the arbitration court to confirm a qualified receiver, the declared self-regulating organisation shall inform the arbitration court about it within the term set by Item 4 of the present article.

11. The arbitration court shall apply to the declared self-regulating organisation of qualified receivers, unless in the event of non-receipt or late receipt of information about the availability of the state secret clearance of the debtor's head and about the form of such clearance, so that information on the compliance of the person nominated for a qualified receiver with the requirements set out in Articles 20 and 20.2 of the present Federal Law be confirmed or the self-regulating organisation nominate again a qualified receiver in the procedure established by Item 4 of the present Article.

**Article 46.** Measures for Securing Creditors' Claims and Debtor's Interests

1. On a petition of the applicant or on a petition of another person deemed party to the bankruptcy case the arbitration court is entitled to take security measures in accordance with the Arbitration Procedural Code of the Russian Federation.

2. Upon the institution of receivership, the court of arbitration shall be entitled to prohibit

the conclusion of transactions, unless approved by the qualified receiver, not listed in Item 2 of Article 64 of the present Federal Law, apart from the measures set out in the Arbitration Procedural Code of the Russian Federation.

3. Measures for securing creditors' claims and the debtor's interests shall be effective until the date of the court of arbitration's ruling on the institution of receivership, refusal to accept the application, return of the application without consideration or termination of proceedings in the bankruptcy case.

4. At the petition of persons being party to the case the court of arbitration shall be entitled to revoke the measures for securing creditors' claims and the debtor's interests before the onset of the circumstances specified in Item 3 of the present article.

5. The ruling on measures for securing creditors' claims and the debtor's interests shall take its effect immediately and it shall be subject to appeal. An appeal of the said ruling shall not cause its suspension.

**Article 47.** The Debtor's Reply to an Application for Declaring the Debtor Bankrupt

1. Within ten days after the date of receipt of the ruling on acceptance of an application of a creditor or an application of the empowered body the debtor shall send a reply to such application to the arbitration court, the bankruptcy creditor, the debtor's employee or former employee or to the empowered body and also to a representative of the debtor's founders (stockholders) and/or the owner of the property of the debtor being an unitary enterprise. The debtor's reply sent to the court of arbitration shall be accompanied with evidence of the fact that a copy of the reply has been sent to the applicant.

2. Apart from the information envisaged by the Arbitration Procedural Code of the Russian Federation the following shall be indicated in the debtor's reply sent to the arbitration court and the applicant:

the debtor's objections, if any, to the applicant's claims;

the sum total of the debtor's debt owing for obligations to creditors, wages/salaries of the debtor's employees and compulsory payments;

information on all accounts of the debtor in credit organisations;

information on the execution proceedings under way concerning the debtor;

an evidence, if any, of the non-existence of ground for the applicant's claims.

Another information that has to do with the hearing of the bankruptcy case may be provided in the debtor's reply sent to the applicant.

Also the petitions the debtor has may be attached to the debtor's reply sent to the arbitration court and the applicant.

3. The lack of a reply from the debtor shall not impede the consideration of the bankruptcy case.

**Article 48.** Considering the Existence of Ground for the Application for Deeming the Debtor Bankrupt

1. A meeting of the arbitration court for the purpose of verifying the existence of ground for the application for deeming the debtor bankrupt shall be conducted by a judge of the arbitration court in the procedure established by the Arbitration Procedural Code of the Russian Federation with due regard to the details established by the present Federal Law.

2. About the time and place of the court-room meeting the judge of the arbitration court shall notify the person that has filed the application for deeming the debtor bankrupt, the debtor, the owner of the property of the debtor being an unitary enterprise and a representative of the founders (stockholders) of the debtor (if according to the information available he/she has been elected) whose failure to be present shall not obstruct a hearing of

the issue of instituting receivership.

**3.** According to the results of consideration of the existence of ground for the application for deeming the debtor bankrupt the arbitration court shall issue one of the below rulings:

on deeming the applicant's claims well-grounded and on instituting receivership;

on refusal to institute receivership and on dismissal of the application;

on refusal to institute receivership and terminating proceedings in the bankruptcy case.

Said rulings are subject to appeal.

A ruling on deeming the applicant's claims well-grounded and on instituting receivership shall be issued if the applicant's claim complies with the conditions established by Item 2 of Article 33 of the present Federal Law, is deemed to be well-grounded and has not been met by the debtor as of the date of the arbitration court meeting and it has been established that the grounds envisaged by Item 2 of Article 3 of the present Federal Law exist, or the debtor's application meets the requirements set out in Article 8 or 9 of the present Federal Law.

A ruling on refusal to institute receivership and on dismissal of an application for deeming the debtor bankrupt shall be issued, if there is another application for deeming the debtor bankrupt or one of the following circumstances exists:

at the session of the arbitration court the claim of the person that has filed the application for deeming the debtor bankrupt was deemed unfounded;

it is established that there are no conditions envisaged by Item 2 of Article 33 of the present Federal Law as of the date of the arbitration court's session;

the applicant's claim has been met by the debtor;

the creditor's claims are not confirmed by a court judgement that has become final, except for the cases envisaged by Paragraph 2 of Item 2 of Article 7 of the present Federal Law;

not a single condition of those envisaged by Articles 8 and 9 of the present Federal Law has been established.

The ruling on refusal to institute receivership and terminating proceedings in the bankruptcy case shall be issued by the arbitration court if there are no applications of other creditors for deeming the debtor bankrupt if as of the date of the arbitration court's meeting for the purpose of verifying the existence of ground for the application for deeming the debtor bankrupt the claim of the person that has filed that application has been met or the creditor's claim has been deemed lacking ground or the lack of at least one of the conditions envisaged by Articles 8, 9 or Item 2 of Article 33 of the present Federal Law is established as of the date of filing of the application.

**4.** If the arbitration court deems that the application for deeming the debtor bankrupt is well-grounded the claims of the other creditors that have filed applications for deeming the debtor bankrupt shall be considered in the procedure established by Article 71 of the present Federal Law.

If the application for deeming the debtor bankrupt is deemed lacking ground and there are other applications for deeming the debtor bankrupt the arbitration court shall consider the existence of ground for such applications in the procedure established by the present Article.

**Article 49.** Ruling on the Institution of Receivership

**1.** abrogated.

**2.** The ruling of a court of arbitration on the institution of receivership shall contain a reference to:

the recognition of the application for deeming the debtor bankrupt well grounded and to the institution of receivership;

the approval of an interim receiver;

Paragraph 4 is abrogated.

**3.** If no interim receiver nominee can be designated when the ruling on the institution of receivership is being issued, the court of arbitration shall issue a ruling on the postponement of hearing of interim receiver approval by a term not exceeding 15 days from the date of the ruling on the institution of receivership.

**4.** The ruling on the institution of receivership and also the ruling on the approval of an interim receiver shall take effect immediately.

The said rulings shall be subject to appeal. The appeal of the said rulings shall not cause a suspension thereof.

**Article 50.** Preparation of a Bankruptcy Case for a Court Hearing

**1.** A bankruptcy case shall be prepared for a court hearing by an arbitration court judge in the manner envisaged by the Arbitration Procedural Code of the Russian Federation with due regard to the features established by the present Federal Law.

**2.** While preparing cases for court hearings the court of arbitration shall examine the applications, complaints and petitions of the persons being party to the bankruptcy case, establish the availability of good grounds for creditors' claims in the manner specified in Article 71 of the present Federal Law, exercise the other powers envisaged by the present Federal Law.

**3.** When the bankruptcy case is being prepared for court-room hearing and also when the bankruptcy case is being examined the arbitration court is entitled to order an expert examination, for instance on its own initiative, to resolve issues requiring special knowledge.

**4.** While preparing a case for a court hearing the arbitration court judge may take measures for achieving a voluntary arrangement between the parties. The taking of such measures shall not serve as a ground for suspending proceedings in the bankruptcy case.

**Article 51.** The Term for Consideration of a Bankruptcy Case

A bankruptcy case shall be considered at an arbitration court hearing within a term not exceeding seven months after the receipt by the court of arbitration of the application for declaring a debtor bankrupt.

**Article 52.** The Powers of an Arbitration Court

**1.** According to the results of consideration of a bankruptcy case the court of arbitration shall adopt one of the below court decisions:

a decision to declare the debtor bankrupt and to open liquidation proceedings;

a decision to refuse declaring the debtor bankrupt;

a ruling on the institution of financial rehabilitation;

a ruling on the institution of external administration;

a ruling on terminating the proceedings in the bankruptcy case;

a ruling on dismissing the application for declaring the debtor bankrupt;

a ruling on approving an amicable agreement.

**2.** The court decisions envisaged by Item 1 of the present article and also the other court decisions envisaged by the present Federal Law shall take effect immediately, except as otherwise established by the present Federal Law.

**Article 53.** The Decision to Declare the Debtor Bankrupt and to Open Liquidation Proceedings

**1.** The decision of the court of arbitration to declare the debtor that is a legal entity

bankrupt and to open liquidation proceedings shall be adopted in cases when the evidence of the debtor's bankruptcy set out in Article 3 of the present Federal Law has been discovered, given the lack of grounds for dismissing the application for declaring the debtor bankrupt, for instituting financial rehabilitation, external administration, approving a amicable agreement or terminating proceedings in the bankruptcy case.

2. The decision of the court of arbitration to declare a debtor as being a bankrupt legal person and to institute liquidation proceedings shall contain a reference to:

the recognition of the debtor as bankrupt;

the institution of liquidation proceedings.

3. Abrogated from October 1, 2015.

4. The decision of a court of arbitration to declare a debtor bankrupt and to institute liquidation proceedings shall be subject to appeal.

5. At the petition of a creditors' meeting or a winding-up receiver in the cases specified in the present Federal Law the court of arbitration shall be entitled to issue a ruling on terminating liquidation proceedings and switching to receivership.

The ruling of the court of arbitration on terminating liquidation proceedings and switching to receivership shall be subject to appeal. An appeal in respect of this ruling shall not suspend its execution.

**Article 54.** Abrogated.

**Article 55.** The Court of Arbitration's Decision to Refuse Declaring a Debtor Bankrupt

The decision of a court of arbitration to refuse declaring a debtor bankrupt shall be adopted in the case of:

lack of the evidence of bankruptcy envisaged by Article 3 of the present Federal Law;

Paragraph three is abrogated;

in other cases specified by the present Federal Law.

**Article 56.** The Consequences of Adoption of a Decision to Refuse Declaring a Debtor Bankrupt by the Court of Arbitration

The adoption of a decision by a court of arbitration to refuse declaring a debtor bankrupt shall serve as a ground for terminating the effect of all the limitations envisaged by the present Federal Law and being the consequence of the adoption of a declaration of the bankrupt debtor and/or the institution of receivership.

**Article 57.** Grounds for Terminating Proceedings in a Bankruptcy Case

1. The arbitration court shall terminate proceedings in a bankruptcy case if:

the debtor's solvency has been restored in the course of financial rehabilitation;

the debtor's solvency has been restores in the course of external administration;

an amicable agreement has been concluded;

the applicant's claims serving as ground for commencing proceedings in the bankruptcy case have been deemed as lacking ground, provided there are no creditors' claims which are declared and recognised in the procedure established by the present Federal Law and comply with the provisions of Article 6 of the present Federal Law;

all the creditors deemed party to the bankruptcy case have withdrawn declared claims or claims for deeming the debtor bankrupt;

all the claims of the creditors included in the register of creditors' claims have been met in the course of any proceeding applicable in a bankruptcy case;

no funds are available sufficient to meet legal expenses for the purpose of implementing the proceedings applicable in a bankruptcy case, for instance, expenses

towards the payment of a fee to a qualified receiver;

in the other cases envisaged by the present Federal Law.

2. In the cases envisaged by Item 1 of the present article the consequences of termination of proceedings in a bankruptcy case established by Article 56 of the present Federal Law shall be applicable, except as otherwise established by the present Federal Law.

**Article 58.** Suspension of Proceedings in a Bankruptcy Case

1. Bankruptcy case proceedings may be suspended upon the petition of a person being party to the bankruptcy case if:

an appeal is made against the court decisions, as specified in Article 52 of the present Federal Law;

an appeal is made against decisions of a creditors' meeting (creditors' committee);

in the other cases envisaged by the Arbitration Procedural Code of the Russian Federation and by the present Federal Law.

2. In case of suspension of proceedings in a bankruptcy case the court of arbitration shall not be entitled to adopt the court decisions envisaged in Article 52 of the present Federal Law.

3. The suspension of case proceedings shall not impede the issuance of other rulings envisaged by the present Federal Law and also the committal of the other actions envisaged by the present Federal Law by the qualified receiver and other persons taking part in the bankruptcy case.

**Article 59.** Allocation of Court Expenses and Expenses for Disbursement or Remuneration to Qualified Receiver

1. Except as otherwise envisaged by the present Federal Law or an agreement with creditors, all court expenses, in particular those incurred as payment of state duty on which a grace period or an instalment payment schedule was granted, expenses towards the inclusion of the data stipulated by this Federal Law in the Unified Federal Register of Information on Bankruptcy and publication of such information according to the procedure established by Article 28 of this Federal Law, and expenses towards the disbursement of remuneration to qualified receivers in a bankruptcy case and payment for the services of persons recruited by qualified receivers with a view to performing their activity shall be borne at the expense of the debtor's property and shall be reimbursed at the expense of the property as top priority.

An amicable agreement may envisage another procedure for the distribution of the said expenses.

2. If, according to the results of consideration of whether there are good grounds for creditors' claims, the court of arbitration issued a ruling on denying the institution of receivership and on dismissing the application or on denying the institution of receivership and on terminating proceedings in the case, except for meeting the claims of the applicant after the filing of an application for declaring a debtor bankrupt, which are specified in Item 1 of the present article, expenses are to be borne by the applicant that filed an application of a creditor with the court of arbitration, except when an applicant is the debtor's employee or former employee. If the application was filed in the manner established by Item 5 of Article 39 of the present Federal Law the expenses specified in Item 1 of the present article shall be distributed among the applicants in proportion to the amounts of their claims.

3. If the debtor has no funds sufficient for the coverage of expenditures envisaged in Item 1 of the present Article, the applicant is obliged to cover the said expenditures in the part, not covered at the expense of the debtor's property, with the exception of expenditures for the

payment out of the sum of interest on the remuneration to a qualified receiver.

If the case on the debtor's bankruptcy is continued, the payments made by the applicant in offsetting the expenditures stipulated in Item 1 of this Article, shall be recompensed at the settlement of the creditor's claims on the current payments by way of satisfaction of the claims of the creditors of that level, to which the payments made by the applicant were referred.

This item shall not apply to an applicant who is the debtor's employee or former employee.

4. The procedure for distribution of court expenses and expenses towards the disbursement of remuneration to qualified receivers in the bankruptcy case shall be established in a decision of the court of arbitration or in a ruling of the court of arbitration adopted according to the results of consideration of the bankruptcy case.

**Article 60.** Consideration of Disagreements, Applications, Requests and Complaints in a Bankruptcy Case

1. Applications and requests of an insolvency practitioner, including those concerning disagreements between him and the creditors, and in cases envisaged by this Federal Law - between him and the debtor, complaints of creditors about violation of their rights and legal interests shall be considered at a meeting of the arbitration court not later than one month after receipt of such applications, requests and complaints, unless otherwise envisaged by this Federal Law.

Following the results of consideration of the applications, requests or complaints the arbitration court shall deliver a ruling.

The ruling can be appealed against through the procedure and within terms established by this Federal Law.

2. The procedure and the terms set by Item 1 of this Article shall be used for consideration of disputes between an insolvency practitioner and the individuals for whose benefit the court act for charging of indemnification of damage to life or health is delivered, as well as between the insolvency practitioner and a representative of the debtor's employees in cases envisaged by Item 11 of Article 16 of this Federal Law.

3. The procedure and the terms set by Item 1 of this Article shall be used for consideration of complaints of an individual, a representative of establishers (participants) of the debtor, representative of owner of assets of the debtor that is a unitary enterprise, other participants of the bankruptcy case or persons participating in proceedings on the bankruptcy case, about actions of the insolvency practitioner, decisions of the meeting or creditors or creditors' committee that violate the rights and/or legal interests of the individual and other persons participating in the bankruptcy case and in the proceedings on the bankruptcy case.

4. Applications and complaints filed by persons having no right to appeal or with violation of the procedure set by this Article shall be returned.

5. Rulings of the arbitration court not envisaged by procedural legislation shall be appealed against using the procedure set by this Federal Law.

**Article 61.** The Procedure for Reviewing Rulings of a Court of Arbitration Issued on the Results of Consideration of Disagreements in a Bankruptcy Case

1. The arbitration court rulings issued according to the results of consideration by a court of arbitration of applications, petitions and complaints in the manner established by Articles 50, 71 and 100 of the present Federal Law may be appealed in accordance with the procedure established by the Arbitration Procedural Code of the Russian Federation with due

regard to the features envisaged by the present article.

**2.** The rulings setting the amount of creditors' claims may be appealed in accordance with the Arbitration Procedural Code of the Russian Federation. When such cases are examined by higher courts the court of arbitration that issued the ruling shall send to a higher court in the manner specified by the Arbitration Procedural Code of the Russian Federation only those bankruptcy case materials that are directly related to the dispute of the debtor and the creditor(s) as to the establishment of the presence of good grounds, the amount and priority ranking of the claims.

**3.** The other arbitration court rulings adopted within the framework of a bankruptcy case but not envisaged by the Arbitration Procedural Code of the Russian Federation and not subject to appeal in a manner established specifically for them may be appealed in accordance with the appellate procedure within 14 days after the time they are issued. According to the results of consideration of a complaint the appellate court shall issue a decision within 14 days, this decision being deemed final. An appeal in respect of such rulings to an appellate court shall not impede procedural actions in the bankruptcy case and shall not serve as a ground for suspending the effect thereof.

### Chapter III.1. Disputing the Debtor' Deals

**Article 61.1**. Disputing the Debtor's Deals

**1.** Deals made by the debtor or by other persons on account of the debtor may be invalidated under the Civil Code of the Russian Federation, as well as for the reasons and in the procedure which are cited in this Federal Law.

**2.** For the purposes of this Federal Law, a deal made under condition shall be deemed concluded at the time of the onset of the appropriate condition.

**3.** The rules of this chapter may be applied to disputing actions aimed at the discharge of the obligations and duties which arise in compliance with the civil, labour, family legislation, the legislation on taxes and fees, the customs legislation of the Customs Union and (or) the legislation of the Russian Federation on the customs business, the procedural legislation of the Russian Federation and other branches of the legislation of the Russian Federation, in particular to disputing agreements and orders to increase the rate of labour remuneration, to pay bonuses and to make other payments in compliance with the labour legislation of the Russian Federation and to disputing such payments proper. The rules provided for by this article shall apply to the actions made in pursuance of judicial acts or legal acts of other state power bodies.

**4.** Information on filing to the arbitration court of an application for acknowledgement of a transaction invalid on grounds specified in this Federal Law, on delivery of a court act following the results of consideration of the application and the court acts on its review shall be included by the insolvency practitioner in the unified federal register of information on bankruptcy through the procedure set by Article 28 of this Federal Law not later than within three business days from the date when the insolvency practitioner learned on filing of the application or delivery of the court act, and in case of filing of the application by the insolvency practitioner - not later than on the business day following the day of filing of the application.

**Article 61.2**. Disputing the Debtor's Suspicious Deals

**1.** A deal made by the debtor within a year before acceptance of the application for declaring bankrupt or after acceptance of the said application may be invalidated by an arbitration court in case of unequal counter-discharge of obligations by the other party to the

deal, in particular if the price of this deal and/or other conditions thereof are much worse for the debtor than the price and/or other conditions under which similar deals are made in a comparable situation (a suspicious deal). As an unequal counter-discharge of obligations shall be deemed, in particular, any transfer of property or other discharge of obligations, if the market value of the property transferred by the debtor or of other discharge of obligations by it is much higher that the value of the obtained counter-discharge of obligations which is determined subject to the terms and obligations of such counter-discharge of obligations.

If property is sold, work is carried out and service is rendered at the state-controlled prices (tariffs) fixed in compliance with the legislation of the Russian Federation, the said prices (tariffs) shall be applied for the purposes of this article.

**2.** The deal made by the debtor for the purpose of causing harm to creditors' property rights may be invalidated by an arbitration court, if such deal was made within three years before the acceptance of the application for declaring the debtor bankrupt or after acceptance of the said application and as a result of making it harm was caused to creditors property rights, as well as if the other party to the deal knew about the cited debtor's aim by the time of making the deal (a suspicious deal). It is presumed that the other party knew about it, if it is recognized as an interested person or if it knew or had to know about infringement of interests of the debtor's creditors or about the signs of the debtor's inability to pay or insufficiency of property thereof.

The aim of causing harm to creditors' property rights is presumed, if at the time of making a deal the debtor had signs of the inability to pay or insufficiency of the property thereof and the deal was made on a gratuitous basis or in respect of an interested person, or aimed at paying a share (stock) in the debtor's property (apportionment of participatory shares) to the founder (stockholder) thereof in connection with withdrawal from the composition of the debtor's founders (stockholders), or made under one of the following terms:

the cost of the property transferred as a result of making the deal or several interrelated deals or of assumed obligations and/or duties constitutes twenty or more per cent of the balance sheet value of the debtor's assets estimated on the basis of the debtor's accounting reports/statements as of the last accounting date before making the said deal or deals;

the debtor has changed its place of residence or location thereof without notifying creditors thereof just before making the deal or after making it, or has hidden the property thereof, or has eliminated or distorted the right-proclaiming documents, accounting reports/statements or other records whose keeping is provided for by the legislation of the Russian Federation or if the said documents have been eliminated or distorted as a result of improper discharge by the debtor of the duty of storing and keeping accounting reports/statements;

after making the deal involving the property transfer the debtor went on using and/or possessing this property or giving instructions to its owner concerning this property's further fate.

**Article 61.3**. Disputing the Debtor's Deals Entailing Preference of One of the Creditors to the Other Ones

**1.** A deal made by the debtor in respect of a creditor or other person may be invalidated by an arbitration court, if such deal entails or may entail preference of one of the creditors to the other ones, as regards satisfaction of their claims, in particular when one of the following conditions exists:

the deal is aimed to ensuring the discharge of the debtor's obligation or a third person's obligation towards a creditor which has arisen before making the disputed deal;

the deal has led or may lead to changes in the order of satisfaction of a creditor's claims which has arisen before making the disputed deal;

the deal has led or may lead to satisfaction of some creditors' claims whose date comes after the time of making the deal while there are obligations towards other creditors which are not discharged in due time;

as a result of the deal a creditor is given or may be given a greater preference in respect of satisfaction of claims which have arisen before making the disputed deal than would be given if settlements with creditors were made in the order of priority in compliance with the legislation of the Russian Federation on insolvency (bankruptcy).

**2.** The deal cited in Item 1 of this article may be invalidated by an arbitration court, if it is made after acceptance by the arbitration court of the application for declaring the debtor bankrupt or within one month before acceptance by the arbitration court of the application for declaring the debtor bankrupt.

**3.** The deal cited in Item 1 of this Article and made by the debtor within six months before acceptance by an arbitration court of the application for declaring the debtor bankrupt may be invalidated by an arbitration court if the conditions provided for by Paragraphs 2 and 3 of Item 1 of this Article exist or if it is established that the creditor or other person in respect of which such deal is made knew about the sign of inability to pay or insufficiency of property or about the circumstances which enabled to come to the conclusion that the sign of inability to pay or insufficiency of property existed.

It is presumed that the interested person knew about the sign of inability to pay or insufficiency of property, if not proved otherwise.

### Article 61.4. Specifics of Disputing Some Debtor's Deals

**1.** Deals made in the course of organized trade on the basis of at least one bid addressed to an indefinite circle of trading participants, as well as actions aimed at the discharge of the obligations and duties resulting from such deals may not be disputed on the basis of Articles 61.2 and 61.3 of this Federal Law.

**2.** Deals involving property transfer and assuming of duties which are made in the course of normal business activities may not be disputed on the basis of Item 1 of Article 61.2 and Article 61.3 of this Federal Law, if the price of the property transferred under one or several interrelated deals or the extent of assumed obligations or duties do not exceed one per cent of the value of the debtor's assets estimated on the basis of the debtor's accounting reports/statements for the last accounting period.

**3.** The debtor's deals aimed at discharging the obligations in respect of which the debtor had received an equal counter-discharge of obligations just before making the contract may be only disputed on the basis of Item 2 of Article 61.2 of this Federal Law.

**4.** The transactions connected with the discharge of the pecuniary obligations resulting from a credit agreement may not be disputed on the basis of Article 61.3 of this Federal Law, if the debtor did not, by the maturity time resulting from the credit agreement, have other pecuniary obligations that have entered into force and execution of the obligation resulting from the credit agreement did not differ as to its time and rate of payments from the obligation defined in the credit agreement.

### Article 61.5. Disputing the Debtor's Deals in Respect of Legal Successors Thereof

The debtor's deals may be disputed on respect of heirs thereof and in other instances of universal legal succession in respect of the person in whose interests the disputed deal is made.

**Article 61.6**. Effects of Declaring a Deal Invalid

**1.** Everything that has beep passed over by the debtor or by some other person at the expense of the debtor or on account of discharging obligations towards the debtor, as well as seized from the debtor under the deal declared invalid in compliance with this Chapter, is to be returned for inclusion into the bankruptcy assets. Where it is impossible to return property in kind for inclusion to the bankruptcy assets, the acquirer shall reimburse the actual value of this property at the time of acquisition thereof, as well as the losses caused by subsequent alteration of the property's value, in compliance with the provisions of the Civil Code of the Russian Federation on the liabilities arising as a result of unjust enrichment.

**2.** Creditors and other persons, which property have been transferred to, or in respect of which the debtor has discharged obligations or duties under the deal declared invalid on the basis of Item 2 of Article 61.2 and Item 3 of Article 61.3 of this Federal Law, should the property obtained under an invalidated deal be returned for inclusion into the bankruptcy assets, shall acquire the right of claim in respect of the debtor to be satisfied in the procedure provided for by the legislation of the Russian Federation on insolvency (bankruptcy) after satisfying the third-turn creditors claims included into the register of creditors' claims.

**3.** Creditors and other persons, which property have been transferred to, or in respect of which the debtor has discharged obligations or duties under the deal declared invalid on the basis of Item 1 of Article 61.2, Item 2 of Article 61.3 of this Federal Law and the Civil Code of the Russian Federation, should the property obtained under an invalidated deal be returned for inclusion into the bankruptcy assets, shall acquire the right of claim in respect of the debtor to be satisfied in the procedure provided for by the legislation of the Russian Federation on insolvency (bankruptcy).

**4.** In case of declaring invalid on the basis of Article 61.3 of this Federal Law the debtors' actions aimed at paying money, transfer of articles or at discharging obligations in some other way, as well as at making some other debtor's deal aimed at termination of an obligation (by setting off a homogeneous counter-claim, provision of compensation for release from an obligation or in some other way), the debtor's obligation with respect of the appropriate creditor shall be deemed originated from the time of making the invalid deal. With this, the creditor's right of claim towards the debtor under this obligation shall be deemed having existed regardless of making this deal.

If the pecuniary obligation to be terminated by the said deal had arisen before acceptance of the application for declaring the debtor bankrupt, the creditor's claim towards the debtor under this obligation shall not pertain to current payments, such creditor shall be deemed the debtor's bankruptcy creditor, the claim thereof shall be deemed raised in due time and subject to inclusion into the register of creditors' claims.

If by the time of including a creditor's claim towards the debtor under this obligation into the register of creditors' claims settlements with third-turn creditors have not yet started, the settlements concerning this claim shall be made on equal terms with the claims of third-turn creditors raised before the expiry of two months as of the date when data on declaring the debtor bankrupt and on initiating bankruptcy proceedings is published.

If by the time of including a creditor's claim towards the debtor under this obligation into the register of creditors claims, settlements with the third-turn creditors, whose claims are included into the register of creditors' claims, have been completed, the settlements in respect of this claim shall be effected on account of the property left after satisfying claims of the third-turn creditors whose claims are included into the register of creditors' claims.

If at the time of starting settlements with third-turn creditors the winding-up receiver knows that the application for declaring invalid the debtor's deal aimed at termination of an obligation thereof is under consideration, the winding-up receiver is obliged to reserve

monetary resources in the amount which is sufficient for proportionate satisfaction of creditors' claims of the same turn in respect of the given claim.

The rules provided for by this item shall likewise extend to the claim of the other party to the deal declared invalid for the reasons provided for by Article 61.3 of this Federal Law towards the debtor for return of all the property obtained by the debtor under this deal or for reimbursement of its value in monetary terms.

**5.** The effect of declaring invalid on the basis of Item 2 of Article 61.2 or Article 61.3 of this Federal Law a debtor's contract made with the central contractor, as well as the actions aimed at discharging the obligations and duties resulting from such contract, shall be compensation for losses by a party to an interrelated contract. With this, an interrelated contract means a contract made by the central contractor on the basis of an offer, in particular of a bid made in the course of organised trade, whose terms correspond to the offer, in particular of the bid made in the course of organised trade, that serves as a basis for making the invalid contract with the central contractor.

**Article 61.7**. Refusal to Dispute the Debtor's Deals

An arbitration court may refuse to declare a deal invalid, if the value of the property acquired by the debtor as a result of the disputed deal exceeds the cost of everything that can be returned for inclusion into the bankruptcy assets as a result of disputing the deal or if the acquirer under the invalid deal has returned everything, that has been acquired, for inclusion into the bankruptcy assets.

**Article 61.8**. The Specifics of Considering the Application for Disputing a Debtor's Deal in a Bankruptcy Case

**1.** The application for disputing a debtor's deal shall be filed with the arbitration court trying the case on the debtor's bankruptcy and is to be considered within the framework of bankruptcy proceedings in respect of the debtor.

**2.** The session of an arbitration court in respect of the application for disputing the debtor's deal shall be held by the arbitration court's judge in the procedure established by the Arbitration Procedural Code of the Russian Federation subject to the specifics provided for by this Federal Law.

**3.** The form and content of the application for disputing the debtor's deal within the framework of bankruptcy proceedings and the procedure for filing it with an arbitration court shall satisfy the requirements for a statement of claim in compliance with the Arbitration Procedural Code of the Russian Federation. The applicant is obliged to send to creditors or other persons in respect of which the disputed deal is made copies of the application and of the document attached thereto by registered mail with delivery confirmation.

**4.** Creditors or other persons in respect of which the disputed deal is made or on whose rights and duties a judicial act may be adopted concerning the disputed deal, shall be deemed the persons participating in consideration by an arbitration court of the application for disputing the debtor's deal.

The said persons shall enjoy in respect of the merits of the claims raised in connection with the disputed deal the right to get familiar with materials of the case, to make extracts from them, copy them, propose disqualifications, adduce evidence and get familiar with the evidence adduced by other persons participating in consideration by an arbitration court of the application for disputing the debtor's deal before the start of court proceedings; to participate in examination of evidence; to pose questions to the other persons participating in consideration by an arbitration court of the application for disputing the debtor's deals, to file

petitions, to make statements, to give explanations to an arbitration court, to advance arguments thereof in respect of all the issues arising in the course of trying the case; to get familiar with petitions filed by the other persons participating in consideration by an arbitration court of the application for disputing the debtor's deal, to protest against petitions and arguments of the other persons participating in consideration by an arbitration court of the application for disputing the debtor's deal, to know about the complaints filed by the other persons participating in consideration by an arbitration court of the application for disputing the debtor's deal, about the judicial acts adopted in respect of this case and to obtain copies of the judicial acts adopted as a separate document and to appeal against rulings issued in compliance with this Chapter.

**5.** The arbitration court's judge shall notify of the time and place of holding the court session the person that has filed the application for disputing a debtor's deal, the debtor and the person in respect of which the disputed deal is made.

**6.** On the basis of the results of considering the application for disputing a debtor's deal the court shall issue one of the following rulings:

on declaring the deal invalid and/or on applying the effects of invalidity of a void deal;

on rejection of the application for declaring the debtor's deal invalid.

The ruling may be appealed against in compliance with Part 3 of Article 223 of the Arbitration Procedural Code of the Russian Federation.

**Article 61.9.** Persons Authorised to File Applications for Disputing a Debtor's Transaction

**1.** The application for disputing the debtor's transaction may be filed with an arbitration court by the receiver or winding-up receiver on their own initiative in the debtor's name or by decision of a meeting of creditors or the creditors' committee; for this, the limitation period shall be estimated starting from the time when the qualified receiver learnt or should have learned that there were grounds for disputing the deal which are provided for by this Federal Law. The votes of the creditor in respect of which or in respect of whose affiliated persons a deal has been made shall not be taken into account when determining the quorum and adopting a decision by a meeting (committee) of creditors on the issue of filling an application for disputing this transaction. If an application for disputing a transaction in pursuance of the decision of the meeting (committee) of creditors is not filed by the qualified receiver within the time period fixed by the given decision, such application may be filed by a representative of the meeting (committee) of creditors or by other person authorised by the decision (committee) of creditors.

**2.** An application for disputing the debtor's transaction may be filed with an arbitration court, along with the persons cited in Item 1 of this article, by the bankruptcy creditor or by an authorised body, if the amount of the credit indebtedness with respect to him included into a register of creditors' claims makes up more than 10 per cent of the total amount of the credit indebtedness included into the register of creditors' claims, regardless of the amount of claims of the creditor in respect of which the transaction is disputed and of affiliated persons thereof.

**3.** Where it is established by this Federal Law, an application for disputing the debtor's transaction may be filed with an arbitration court by the provisional administration of a financial organisation.

**4.** The claim of the head of the provisional administration for invalidating a transaction and for applying the effects of its invalidity shall be raised in the name of the financial organisation.

**5.** An application of the head of the provisional administration of a financial organisation for invalidating a transaction on the grounds provided for by Article 61.2 or 61.3 of this Federal Law, as well as on the grounds connected with breaking the rules of this Federal Law, shall be

filed with the arbitration court at the location of the financial organisation, and from the time of initiation of a bankruptcy case in respect of the financial organisation and up to the date of declaring it bankrupt in the bankruptcy case of the financial organisation.

**6.** Cases on invalidating deals which are initiated by an arbitration court at the claim of the head of the provisional administration of a financial organisation before the date of declaring it bankrupt are subject after this date to combining with the bankruptcy case and to further consideration in this case. Such combining shall be effected by the arbitration court trying the case on bankruptcy of the financial organisation.

**7.** The time periods within which transactions were made that could be declared invalid (Articles 61.2 and 61.3 of this Federal Law) or the time periods within which the financial organisation's obligations cited in Item 4 of Article 61.6 of this Federal Law originated shall be counted from the date of the Bank of Russia appointing the provisional administration of a financial organisation.

**8.** The limitation period in respect of the claim of the head of the provisional administration of a financial organisation for invalidating a deal on the grounds provided for by Article 61.2 or 61.3 of this Federal Law shall be counted starting from the date when the provisional administration learnt or should have learnt about the presence of such grounds, as well as about the presence of the signs of bankruptcy of the financial organisation, depending on which of the events occurred first.

## Chapter IV. Receivership

### Article 62. Instituting Receivership

**1.** Except as otherwise envisaged by the present Federal Law, receivership shall be instituted according to the results of consideration by a court of arbitration of the availability of good grounds for the application for deeming the debtor bankrupt, in the manner envisaged by Article 48 of the present Federal Law.

**2.** Abrogated.

**3.** Receivership shall be completed with account taken of the term for consideration of a bankruptcy case set out by Article 51 of the present Federal Law.

### Article 63. The Consequences of a Ruling on the Institution of Receivership Issued by a Court of Arbitration

**1.** The following consequences shall emerge as of the date of issuance of a ruling on the institution of receivership by a court of arbitration:

the creditors' claims relating to the monetary obligations and mandatory payments, with the exception of the current payments, may be presented to the debtor only in compliance with the procedure for presenting claims to a debtor established by the present Federal Law;

upon the petition of a creditor proceedings shall be suspended in cases relating to the collection of amounts of money from a debtor. In this case the creditor shall be entitled to present his/her claims to the debtor in the manner established by the present Federal Law;

execution of writs of execution relating to property collection shall be suspended; in particular, the debtor's property seizure shall be lifted as well as other restrictions as to the disposal of the debtor's property imposed within the execution proceedings, except for the writs of execution issued under court decisions that have become final and which concern collection of debt owing as wages, royalties to the authors of the results of intellectual activity, demanding and obtaining property from another's illegal possession, compensation for harm inflicted to life or health, compensation to be paid in excess of the compensation for harm.

The ground for suspending the execution of writs of execution shall be a ruling of a court of arbitration on the institution of receivership;

it is not admissible to meet the claims of the debtor's promoter (stockholder) for the partition of participatory share (stock) in the debtor's property in connection with ceasing to be a promoter (stockholder), purchase or acquisition by the debtor of floated shares or disbursement of the actual value of a participatory share (stock);

Paragraph six is abrogated;

it shall be prohibited to discharge the debtor's monetary obligations by means of offsetting a homogenous counterclaim if in this case the priority ranking of creditors' claims established by Item 4 of Article 134 of the present Federal Law is broken. In respect of the obligations resulting from financial contracts whose amount is estimated in the procedure provided for by Article 4.1 of this Federal Law the cited prohibition shall only apply to termination of the debtor's net obligation;

it is not admissible for the owner of the property of the debtor being an unitary enterprise to seize the property belonging to the debtor;

it is not admissible to pay out dividends, income on stocks (participatory shares) and also to distribute profit among the debtor's founders (stockholders).

no forfeit money (fines, penalties) and other financial sanctions are accrued for a default on, or the improper performance of, monetary obligations and compulsory payments, except for current payments.

2. For the purposes of ensuring the onset of the consequences envisaged by Item 1 of the present article the court of arbitration's ruling on the institution of receivership shall be sent by the court of arbitration to the credit organisations with which the debtor has concluded a bank account contract and also to the general jurisdiction court, the chief bailiff at the location of the debtor and the debtor's branches and representative offices and to authorised bodies.

3. For the purpose of participation in the bankruptcy case the due date for performance of the obligations that had come into being before the arbitration court accepted the application for deeming the debtor bankrupt is deemed to have come. The creditors are entitled to present claims to the debtor in the procedure established by the present Federal Law.

4. Interest at the rate of the refinancing rate set by the Central Bank of the Russian Federation as of the date of instituting the observation shall be accrued on the sum of claims of the bankruptcy creditor, of the authorised body in the amount established in accordance with Article 4 of the present Federal Law as of the date of instituting the next proceeding applicable in a bankruptcy case.

Said interest for the period of implementation of the observation shall not be included in the register of creditors' claims and shall not be taken into account in the determination of the number of votes the creditor has at the meeting of creditors.

If the creditor presents a claim to the debtor in the course of financial improvement, external management and winding-up then in the computation in keeping with Item 1 of Article 4 of the present Federal Law of the amount of his claim the amount of interest shall be computed as of the date of the institution of the observation.

5. In the event of termination of proceedings in a bankruptcy case on the ground envisaged by Paragraph 7 of Item 1 of Article 57 of the present Federal Law (inter alia, as a result of the debtor's meeting all the creditors' claims included in the register of creditors' claims, in the course of observation or such claims being met in the course of any proceeding applicable in a bankruptcy case, by a third person in the procedure established Article 113 or 125 of the present Federal Law) the creditor has the right to present a claim to the debtor for collection of the remaining interest at the rate of the refinancing rate established by the Central Bank of the Russian Federation as of the date of institution of the observation which

was accrued for the period of implementation of the proceedings applicable in a bankruptcy case, according to the rules of the present Federal Law in the procedure established by the procedural legislation.

**6.** If while hearing a bankruptcy case the court in the course of any proceeding applicable in a bankruptcy case establishes that the debtor or the creditor being an interested person has filed an application for deeming the debtor bankrupt and in this case said persons knew that the debtor was able to pay and was pursuing the objective of getting unfounded wrongful gains from the institution of the proceedings applicable in a bankruptcy case, the court shall have the right to terminate proceedings in the bankruptcy case on the condition that as of that time the debtor keeps being able to pay and that corresponds to the creditor's interests.

In such case, the debtor shall pay the interest accruable according to the terms of the obligation for the period of implementation of the proceedings applicable in a bankruptcy case. If these circumstances are established by the court when proceedings in the bankruptcy case are terminated on another ground the court also has the right to refer in the ruling on such termination to the debtor's duty to pay the interest accruable according to the terms of the obligation for the period of implementation of the proceedings applicable in a bankruptcy case.

**Article 64.** Debtor's Limitations and Duties within Receivership

**1.** The institution of receivership shall not be deemed a ground for removing the head of the debtor and other managerial bodies of the debtor, which shall keep exercising their powers subject to the limitations established by Items 2, 3 and 3.1 of the present article.

**2.** Except for the cases expressly stated by the present Federal Law, the debtor's managerial bodies may execute, exclusively with the consent of the interim receiver in writing, deals or several interrelated deals:

relating to the acquisition, alienation or possibility of alienation, directly or indirectly, of the debtor's property of which the balance sheet value makes up over five per cent of the balance sheet value of the debtor's assets as of the date of institution of receivership;

relating to the receipt and granting of loans (credits), granting of a suretyship and guarantee, claim assignment, debt assignment and also the institution of a trust in respect of the debtor's property.

**3.** The debtor's managerial bodies shall not be entitled to adopt decisions on:

the organisation (merger, accession, division, separation, transformation) and liquidation of the debtor;

the formation of legal persons or the debtor's interest in other legal persons;

the formation of branches and representative offices;

the disbursement of dividends or distribution of the profit of the debtor among the debtor's promoters (stockholders);

the floatation of bonds and other issue securities by the debtor, except for shares;

somebody's ceasing to be a promoter (stockholder) of a debtor, on the purchase of the shares placed earlier from shareholders;

participation in associations, unions, holding companies, financial and industrial groups and other associations of legal persons;

the conclusion of a contract of simple partnership.

**3.1.** The owner of the property of a debtor being an unitary enterprise is not entitled to:

take decisions on re-organisation (merger, accession, division, separation or transformation) and liquidation of the debtor;

give its consent to the debtor's forming legal entities or the debtor's having interest in other legal entities;

give its consent to the formation of branches and the opening of representative offices of the debtor;

take decisions on the debtor's floating bonds and other serial securities.

3.2. Within 15 days after the date of confirmation of the interim receiver the head of the debtor shall provide the interim receiver and send to the arbitration court a list of the debtor's property, including for instance, property rights, and also bookkeeping and other documents reflecting the debtor's economic activities for the three years prior to the commencement of receivership. Every month, the head of the debtor shall inform the interim receiver of changes in the composition of the debtor's property.

4. Within ten days after the issuance of a ruling on the institution of receivership the head of the debtor shall propose to the debtor's promoters (stockholders) to hold a general meeting of the debtor's promoters (stockholders), and to the owner of the debtor being a unitary enterprise, to consider issues concerning the making of a proposal to the first meeting of the debtor's creditors to institute financial rehabilitation in respect of the debtor, to effect an additional issue of shares and on other issues envisaged by the present Federal Law.

5. The debtor shall be entitled to increase its authorised capital by means of a public-subscription flotation of additional ordinary shares at the expense of additional contributions of its promoters (stockholders) and third persons in the manner established by federal laws and the debtor's constitutive documents. In this case the state registration of a report on the results of an issue of additional ordinary shares and amendments to the debtor's constitutive documents shall be effected before the date of the court hearing dedicated to consideration of the bankruptcy case.

**Article 65.** The Interim Receiver

1. The interim receiver shall be approved by a court of arbitration in the manner set out in Article 45 of the present Federal Law.

2. Abrogated.

3. The interim receiver may be released from the duties of an interim receiver by a court of arbitration:

in connection with the fact that the court of arbitration has satisfied the complaint of the person deemed party to the bankruptcy case on the interim receiver's default on or improper performance of the duties vested therein, on the fact that such default or improper performance of the duties infringed upon the applicant's rights or legal interests, and that it has caused or could cause losses to the debtor or the debtor's creditors;

in the case of discovery of circumstances obstructing the approval of the person as interim receiver, in particular in case when such circumstances have occurred after the person was approved as interim receiver;

on the grounds of the petition of the self-regulating organisation of arbitration managers in the case of expulsion of an arbitration manager of the self-regulating organisation in connection with infringement by the arbitration manager of conditions of the membership in the self-regulating organisation, infringement by the arbitration manager of the requirements of this Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of professional work;

on the grounds of the petition of the self-regulating organisation of arbitration managers in the case of application to the arbitration manager of an administrative punishment in the form of disqualification for the fulfillment of an administrative offence;

in other cases specified by federal law.

**4.** The interim receiver may be relieved from the duties vested therein in the bankruptcy case on the basis of:

his/her application;

petitions of the self-regulating organisation of arbitration managers the member of which he is, in the case of the withdrawal of the arbitration manager from the self-regulating organisation or the petition of the self-regulating organisation of the arbitration managers adopted by such an organisation according to Item 2 of Article 20.5 of this Federal Law.

**Article 66.** The Rights of the Interim Receiver

**1.** The interim receiver shall be entitled to:

lodge a demand with a court of arbitration in his/her name for declaring as null and void deals and decisions, and also a demand for the application of consequences for the invalidity of null and void deals concluded or accomplished by the debtor in breach of the provisions of Articles 63 and 64 of the present Federal Law;

lodge objections to creditors' claims in cases specified by the present Federal Law, for instance to declare the expiry of the period of limitations;

attend arbitration court hearings dedicated to verification of the presence of a good ground for the debtor's lodged objections to creditors' claims;

file a petition with a court of arbitration for the taking of additional measures for preserving the debtor's property, in particular, for an injunction on the accomplishment of deals without the consent of the interim receiver as envisaged by Item 2 of Article 64 of the present Federal Law;

file a petition with a court of arbitration for the removal of the head of the debtor;

obtain any information and documents concerning the debtor's activity;

exercise other powers established by the present Federal Law.

**2.** The debtor's managerial bodies shall provide the interim receiver on his/her request with all information concerning the debtor's activity.

Information on the debtor and the property thereof, including without limitation, property rights and on liabilities that has been requested by the interim receiver from natural persons, legal entities, state bodies and local self-government bodies shall be provided by said persons/entities and bodies to the interim receiver within seven days after the receipt of the qualified receiver's request on a free-of-charge basis.

**Article 67.** The Duties of an Interim Receiver

**1.** The interim receiver shall:

take measures for preserving the property of the debtor;

analyse the financial state of the debtor;

reveal the debtor's creditors;

keep a register of creditors' claims, except for the cases specified by the present Federal Law;

notify the creditors of the institution of receivership;

convene and hold the first meeting of creditors.

**2.** The interim receiver shall submit to the arbitration court a report on its activities and the minutes of the first meeting of creditors together with the documents defined by Item 7 of Article 12 of the present Federal Law at least five days before the date of the arbitration court's meeting specified in the arbitration court ruling on the institution of receivership.

The following shall be attached to the interim receiver's report:

a statement on the financial state of the debtor;

a statement on the availability or lack of grounds for disputing the debtor's transactions;

an assessment of the possibility or impossibility of the debtor's recovering solvency and of the feasibility of institution of subsequent proceedings applicable in a bankruptcy case.

**Article 68.** Notice of the Institution of Receivership

**1.** An interim receiver is obliged to direct for publication in accordance with the procedure established in Article 28 of the present Federal Law, a communication on the introduction of supervision.

**2.** Abrogated.

**3.** The head of the debtor shall notify the following persons of the fact that the court of arbitration has issued a ruling on the institution of receivership within ten days after the date of issuance of the ruling: the debtor's employees, the debtor's promoters (stockholders), the owner of property of the debtor being a unitary enterprise.

**4.** The announcement of the institution of receivership shall contain the following:

the name of the debtor being a legal person or the full name of the debtor being a natural person as well as the address thereof;

the name of the court of arbitration that issued the ruling on the institution of receivership, the date of the ruling and the number of the bankruptcy case;

the full name of the approved interim receiver and his/her address for correspondence;

the date of the court hearing dedicated to the bankruptcy case as set by the court of arbitration.

**Article 69.** Removal of the Head of a Debtor

**1.** The court of arbitration shall remove the head of a debtor on a petition of the interim receiver in the case of violation of provisions of the present Federal Law.

**2.** When the interim receiver files a petition with a court of arbitration for the removal of the head of the debtor, the interim receiver shall file copies of the petition to the head of the debtor, the representative of the debtor's promoters (stockholders), or the representative of the owner of property of the debtor being a unitary enterprise.

**3.** The court of arbitration shall issue a ruling on the consideration of a court hearing of the interim receiver's petition for removal of the head of the debtor and shall notify the representative of the debtor's promoters (stockholders) or the representative of the owner of property of the debtor being a unitary enterprise of the date of the hearing and of the need for presenting a nominee to the court to the position of acting head of the debtor for the duration of the receivership term.

**4.** If the court of arbitration satisfies the petition of the interim receiver for removing the head of the debtor the court of arbitration shall issue a ruling on the removal of the head of the debtor and on vesting the duties of head of the debtor in the person presented as nominee to the position of head of the debtor by the representative of the debtor's promoters (stockholders) or another collective managerial body of the debtor, the representative of the owner of property of the debtor being a unitary enterprise in the case of non-presentation by the said persons of a nominee to the position of acting head of the debtor - in one of the deputies of the head of the debtor, or in the case of lack of deputy heads - in one of the employees of the debtor.

**5.** On the petition of the interim receiver the court of arbitration may remove an acting head of the debtor in case of violation of provisions of the present Federal Law. In this case responsibility for executing the duties of the head of the debtor shall be vested in the person

presented as a nominee to the position of head of the debtor in the manner specified in Item 4 of the present article, or in the case of non-presentation of a nominee - in one of the deputies of the head of the debtor, or in the case of a lack of deputy heads of the debtor - in one of the employees of the debtor.

At the application of the interim receiver the court of arbitration may prohibit the acting head of the debtor to accomplish certain deals and actions or to accomplish them without the consent of the interim receiver.

**Article 70.** Analysis of the Debtor's Financial State

**1.** The analysis of a debtor's financial state shall be performed with a view to assess the sufficiency of the property the debtor has to cover expenses in the bankruptcy case, for instance, expenses towards the disbursement of remuneration to qualified receivers and also with a view to assessing the possibility/impossibility of restoration of the debtor's solvency in the manner and within the term established by the present Federal Law.

**2.** If under the legislation of the Russian Federation the debtor's bookkeeping and financial (bookkeeping) accounting is subject to compulsory audit then the financial state shall be analysed on the basis of the bookkeeping and financial (bookkeeping) accounting documents whose reliability has been confirmed by an auditor.

If there are no bookkeeping and financial (bookkeeping) accounting documents whose reliability has been confirmed by an auditor, for instance, due to the debtor's default on the duty to carry out compulsory audit the interim receiver shall recruit an auditor to analyse the debtor's financial state, with payment for the services thereof being made with funds of the debtor.

**3.** On the basis of an analysis of the debtor's financial state, for instance the results of a stock-taking of the debtor's property, if such results are available and an analysis of the documents confirming the state registration of rights of ownership shall assess the possibility or impossibility of the debtor's recovering solvency and the feasibility of institution of subsequent proceedings applicable in a bankruptcy case.

**Article 71.** Establishing the Amount of Creditors' Claims

**1.** For the purposes of attending the first creditors' meeting the creditors shall be entitled to present their claims to the debtor within 30 calendar days after the date of publication of the advertisement of the institution of receivership. The said claims shall be sent to the court of arbitration, the debtor and the interim receiver together with the court decision or other documents confirming the availability of a good ground for these claims. The said claims shall be included in the register of creditors' claims on the basis of a ruling of the court of arbitration on the inclusion of the said claims in the register of creditors' claims.

**2.** The debtor, the interim receiver and creditors which presented their claims to the debtor, a representative of the debtor's promoters (stockholders) or a representative of the owner of the debtor being a unitary enterprise may lodge their objections to creditors' claims with the court of arbitration within 15 calendar days after the expiry of the claim presentation term set for creditors.

The persons participating in the bankruptcy case have the right to declare the expiry of the period of limitations in respect of the creditors' claims which have been presented to the debtor.

**3.** If objections to creditors' claims exist the court of arbitration shall verify the availability of good grounds for the claims and for the inclusion of the said claims in the register of creditors' claims.

**4.** The creditors' claims to which objections have been received shall be considered in an arbitration court hearing. A ruling shall be issued according to the results of the consideration on including/refusing to include the said claims in the register of creditors' claims. The court of arbitration's ruling on including the claims in the register of creditors' claims shall comprise the number and priority ranking of these claims.

If in the debtor's bankruptcy case the interests of creditors being bond owners are represented by the representative of bond owners defined in compliance with the legislation of the Russian Federation on securities, in the ruling of an arbitration court on the claims inclusion into the register of creditors' claims shall be cited the total amount of claims of the cited creditors and the order of satisfying such claims in compliance with this Federal Law, as well as the order of satisfying claims in compliance with the terms of the corresponding issue of bonds.

Should the interim receiver have any objections, the claims of the creditor being the bond owner shall be excluded by a ruling of an arbitration court from the register of creditors' claims, if in the debtor's bankruptcy case the interests of creditors which are owners of bonds of a corresponding issue are represented by the representative of the bond owners defined in compliance with the legislation of the Russian Federation on securities.

**5.** The creditors' claims to which no objections have been received shall be examined by the court of arbitration for the purpose of verifying the availability of good grounds for them and of grounds for including them in the register of creditors' claims. According to the results of such a consideration the court of arbitration shall issue a ruling on including/refusing to include the claims in the register of creditors' claims. The said claims may be considered without the invitation of persons deemed party to the case.

The ruling on including/refusing to include creditors' claims in the register of creditors' claims shall take effect immediately and it is subject to appeal. The ruling on including/refusing to include creditors' claims shall be sent by the court of arbitration to the debtor, the qualified receiver and the creditor which has presented the claims and to the registrar.

**6.** When it is necessary to complete the consideration of creditors' claims presented within the established term, the court of arbitration issues a ruling on adjournment of the hearing of the case which is binding on the interim receiver to postpone the first creditors' meeting.

**7.** The creditors' claims presented upon the expiry of the claim presentation term envisaged by Item 1 of the present article shall be subject to consideration by the court of arbitration after the institution of a procedure following the receivership procedure.

**8.** The claims of creditors envisaged by Items 1-6 of the present article shall be considered by a judge of the arbitration court within one month after the date of expiry of the term established by Item 2 for presentation of objections concerning creditors' claims.

**Article 71.1.** The Repayment of Debts Relating to Compulsory Payments by the Debtor's Founders (Stockholders), the Owner of the Property of the Debtor Being an Unitary Enterprise and/or Third Person in the Course of Receivership

**1.** In the course of receivership the claims to the debtor for compulsory payments included in the register of creditors' claims may be repaid by the debtor's founders (stockholders), the owner of the property of the debtor being an unitary enterprise and/or a third person in the procedure established by the present article.

If the debtor's founders (stockholders), the owner of the property of the debtor being an unitary enterprise or/and a third person repay the claims addressed to the debtor for

compulsory payments all the claims of creditors addressed to the debtor for compulsory payments shall be repaid.

**2.** A person intending to repay a claim addressed to the debtor for compulsory payments in full shall send a declaration of such intent to the arbitration court that is hearing the bankruptcy case, the debtor, the interim receiver and also to the authorised bodies.

**3.** The following shall be indicated in the declaration of intent to repay the claims addressed to the debtor for compulsory payments in full (hereinafter also referred to as "declaration of intent"):

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the applicant;

the term for repayment of the claims addressed to the debtor for compulsory payments which shall not exceed 30 business days after the date of the relevant ruling of the arbitration court.

**4.** The declaration of intent shall be considered by the arbitration court within 14 working days after the receipt thereof.

If declarations of intent have been received by the arbitration court from several persons/entities they shall be considered in the chronological order of their being received by the arbitration court.

**5.** According to the results of consideration of the declaration of intent the arbitration court shall issue a ruling upholding the declaration of intent or a ruling refusing to uphold the declaration of intent if the register of creditors' claims does not contain claims to the debtor for compulsory payments or if the applicant has decided not to repay the claims to the debtor for compulsory payments until such declaration is considered.

**6.** The following shall be indicated in the arbitration court ruling upholding the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the person that repays the claims addressed to the debtor for compulsory payments;

the amount of the claims addressed to the debtor for compulsory payments, the principal debt amount and accrued forfeit money (fines and penalties);

the term and procedure for repayment of the claims addressed to the debtor for compulsory payments;

the date of the court-room hearing according the results of repayment of the claims addressed to the debtor for compulsory payments ;

bank account details and also the other information required for remittance of amounts of money to repay the claims addressed to the debtor for compulsory payments .

**7.** The consideration of the declaration of intent may be adjourned if there is a similar declaration received earlier from another person until the date of consideration of the results of repayment of the claims addressed to the debtor for compulsory payments.

The consideration of the declaration of intent may be adjourned if there is a dispute as to the amount and composition of the claims addressed to the debtor for compulsory payments until the date when the court judgement establishing the composition and amount of the claims to the debtor for compulsory payments included in the register of creditors' claims becomes final.

**8.** For the purposes of repayment of the claims addressed to the debtor for compulsory payments the empowered body shall serve a notice to the arbitration court indicating the date of service of the notice, the surname, first name, patronymic and position of the official who has signed the notice and also the information required according to the rules for filling in the payment documents acknowledging the remittance of amounts of money for repayment of the claims addressed to the debtor for compulsory payments including the amount of claim in

respect of each of the beneficiaries of these amounts of money.

**9.** Within the term set by the arbitration court ruling upholding the declaration of intent the applicant shall remit funds in the amount and in the procedure specified in the ruling.

**10.** Upon the expiry of the term established by the arbitration court for repayment of the claims addressed to the debtor for compulsory payments the applicant shall send an application to the arbitration court for deeming the claims addressed to the debtor for compulsory payments discharged and for replacing the creditor in the register of creditors' claims.

Attached to the application shall be payment documents acknowledging the remittance of funds in the amount and in the procedure specified in the arbitration court ruling upholding the declaration of intent.

**11.** According to the results of consideration of the application for deeming the claims addressed to the debtor for compulsory payments discharged and for replacing the creditor in the register of creditors' claims, provided the repayment completed complies with the arbitration court ruling upholding the declaration of intent, the arbitration court shall issue a ruling on deeming the claims addressed to the debtor for compulsory payments discharged and on replacing the creditor in the register of creditors' claims.

The amount of, and the priority rating of, the claims of the person that has repaid the claims addressed to the debtor for compulsory payments shall be recorded in the register of creditors' claims in the same amount and with the same priority rating as the discharged claims addressed to the debtor for compulsory payments.

**12.** If the claims addressed to the debtor for compulsory payments have not been repaid in full or have been paid in breach of the procedure or repayment due dates established by the arbitration court ruling then the arbitration court shall issue a ruling on refusal to deem the claims addressed to the debtor for compulsory payments repaid.

A refund for the amounts of money remitted shall be provided to the applicant within ten business days after the date when the arbitration court ruling on refusal to deem the claims addressed to the debtor for compulsory payments repaid becomes final.

The remittance of funds in an amount exceeding the one set by the arbitration court ruling upholding the declaration of intent shall not be deemed ground for the arbitration court to issue a ruling on refusal to deem the claims addressed to the debtor for compulsory payments repaid, and equally, for increasing the amount of claims to the debtor of the person that has repaid the claims addressed to the debtor for compulsory payments.

The funds remitted in excess over the amount of money envisaged by said ruling shall be refunded to the applicant within ten business days after the date when the arbitration court ruling on deeming the claims addressed to the debtor for compulsory payments repaid and on replacing the creditor in the register of creditors' claims.

**13.** The Government of the Russian Federation shall establish a procedure for settlements of accounts for the purposes of repaying claims addressed to a debtor for compulsory payments.

**14.** The repayment of claims for compulsory payments addressed to a debtor in respect of which the present Federal Law establishes details of implementation of the proceedings applicable in a bankruptcy case is admissible in cases when a provision for this is available in the present Federal Law as establishing the details of bankruptcy of debtors of specific categories.

**Article 72.** Convocation of the First Creditors' Meeting

**1.** The interim receiver shall set the date of the first creditors' meeting and notify accordingly all the revealed bankruptcy creditors, authorised bodies, the representative of the debtor's employees and other persons entitled to attend the first creditors' meeting.

Notification of the first creditors' meeting shall be carried out by the interim receiver in the manner and within the term envisaged by Article 13 of the present Federal Law.

The first creditors' meeting shall be held at least ten days prior to the date of termination of the receivership.

**2.** The following shall be deemed participants in the first creditors' meeting with voting rights: the bankruptcy creditors and the authorised bodies whose claims were presented in the manner and within the term envisaged by Item 1 of Article 71 of the present Federal Law and included in the register of creditors' claims.

**3.** The first meeting of creditors shall be attended without voting right by the head of the debtor, a representative of the debtor's founders (stockholders) or a representative of the owner of the property of the debtor being an unitary enterprise, a representative of the debtor's employees and a representative of the control (supervision) body. The absence of these persons shall not be deemed a ground for recognising the first creditors' meeting invalid.

**4.** In the event of inclusion into a register of creditors' claims solely the claims for paying severance benefits and/or labour wages of the persons who are working or have been working under a labour contract and non-satisfaction of the cited claims, the first meeting of creditors shall not be held and an arbitration court shall render the decision on introduction of the procedure applied in a bankruptcy case in compliance with Paragraph Two of Item 2 of Article 75 of this Federal Law.":

**Article 73.** The Competence of the First Creditors' Meeting

**1.** The competence of the first creditors' meeting shall include the following:

the adoption of a decision to institute financial rehabilitation and file a petition to this effect with the court of arbitration;

the adoption of a decision to institute external administration and file a petition to this effect with the court of arbitration;

the adoption of a decision to file a petition with the court of arbitration for declaring the debtor bankrupt and for commencing winding-up procedure;

the formation of a creditors' committee, the determination of the number of members and the powers of the creditors committee, and the election of members of the creditors' committee;

the setting of additional qualification standards applicable to the administrative receiver, the receiver, and the winding-up receiver nominees;

determining the candidature of a qualified receiver or of the self-regulated organisation from among whose members the qualified receiver shall be approved;

the choosing of a registrar from among the registrars accredited by the self-regulating organisation;

the making of decisions on other issues specified by the present Federal Law.

**2.** A creditors' meeting that has decided to file a petition with a court of arbitration for the institution of financial rehabilitation, external administration or the declaration of the debtor bankrupt and the institution of winding-up procedure shall be entitled to formulate additional qualification standards to be applied to administrative receiver, receiver or winding-up receiver nominees and to send a request for such nominees to a self-regulating organisation.

**3.** If the creditors' meeting that considers the issues put by the present article within the competence of the first meeting of creditors is convened after the termination of observation, such meeting shall be subject to the norms of the present Federal Law concerning the first creditors' meeting.

**Article 74.** The Decision of the First Creditors' Meeting on the Proceedings Applicable in a Bankruptcy Case

**1.** The decision of the first creditors' meeting on the institution of financial rehabilitation shall contain a proposed financial rehabilitation term, approved financial rehabilitation plan and debt repayment schedule.

**2.** The decision of the first creditors' meeting on the institution of external administration shall contain a proposed external administration term.

**3.** The decision of the first creditors' meeting on filing a petition with the court of arbitration for declaring the debtor bankrupt and instituting winding-up procedure may also contain a proposed winding-up term.

**4.** The decision of the first creditors' meeting on concluding a amicable agreement shall contain the information specified in Article 151 of the present Federal Law.

**Article 75.** The Termination of Receivership

**1.** Except as otherwise established by the present article, the court of arbitration acting on the basis of a decision of the first creditors' meeting shall issue a ruling on the institution of financial rehabilitation or external administration, or shall adopt a decision to declare the debtor bankrupt and to commence winding-up procedure or shall approve an amicable agreement and terminate proceedings in the bankruptcy case.

**2.** If the first creditors' meeting did not adopt a decision to apply any of the proceedings applicable in a bankruptcy case, the court of arbitration shall postpone the case hearing within the term set by Article 51 of the present Federal Law and shall obligate the creditors to have adopted an appropriate decision by the date set by the court of arbitration.

If the case hearing cannot be postponed within the term set by Article 51 of the present Federal Law, the court of arbitration shall:

issue a ruling on the institution of financial rehabilitation if there exists a petition of the debtor's promoters (stockholders), the owner of property of the debtor being a unitary enterprise, an authorised state body or a third person or third persons, on the condition that security is provided for the sufficient performance of the debtor's obligations in keeping with a debt repayment schedule in an amount that must exceed at least by 20 per cent of the amount of the debtor's obligations included in the register of creditors' claims as of the date of the court hearing. In this case the debt repayment schedule shall envisage the beginning of debt repayment within one month after the arbitration court ruling on the institution of financial rehabilitation and the satisfaction of the creditors' claims on a monthly pro rata basis in equal installments within one year after the date of commencement of satisfaction of the creditors' claims;

if no grounds exist for the institution of financial rehabilitation as envisaged by the present article, the court of arbitration shall issue a ruling on the institution of external administration if court of arbitration has sufficient grounds for believing that the debtor's solvency can be restored;

if there exists bankruptcy evidence established by the present Federal Law and if no grounds exist for instituting financial rehabilitation and external administration as envisaged by the present article, the court of arbitration shall adopt a decision whereby the debtor is declared bankrupt and the winding-up procedure is commenced.

**3.** If the first creditors' meeting adopts a decision to file a petition with the court of arbitration for the institution of external administration and for the declaration of the debtor as bankrupt and commencement of winding-up procedure, the court of arbitration may issue a ruling on the institution of financial rehabilitation on the condition that a petition is filed by the debtor's promoters (stockholders), the owner of property of the debtor being a unitary

enterprise, an authorised state body and also by a third person or third persons and that a bank guarantee is provided as a security for the performance of the debtor's obligations in keeping with a debt repayment schedule. The amount for which the bank guarantee is granted shall exceed by at least 20 per cent the amount of the debtor's obligations included in the register of creditors' claims as of the date of the first creditors' meeting. In this case the debt repayment schedule shall envisage the beginning of debt repayment within one month after the arbitration court ruling on the institution of financial rehabilitation and the satisfaction of the creditors' claims on a monthly pro rata basis in equal instalments within one year after the date of commencement of satisfaction of the creditors' claims.

The receivership shall be terminated as of the date of institution of financial rehabilitation, external administration, or declaration of the debtor bankrupt by the court of arbitration and commencement of the winding-up procedure or approval of an amicable agreement.

If no administrative receiver, receiver or winding-up receiver has been approved simultaneously with the institution of a specific proceeding, and also in the necessary cases, the court of arbitration shall vest the duties of a relevant qualified receiver in the interim receiver and obligate the interim receiver to hold a creditors' meeting for the purpose of considering the issue of choosing the self-regulating organisation from among whose members an administrative receiver, receiver or winding-up receiver is to be approved and setting qualification standards applicable to such qualified receiver.

## Chapter V. Financial Rehabilitation

**Article 76.** Petition for the Institution of Financial Rehabilitation
**1.** During receivership the debtor, acting on the basis of the debtor's promoters (stockholders), the body authorised by the owner of property of the debtor being a unitary enterprise and a third person or third persons shall be entitled to address a petition for the institution of financial rehabilitation to the first creditors' meeting, and in the cases specified by the present Federal Law, to the court of arbitration in the manner established by the present Federal Law.

**2.** While addressing a petition for the institution of financial rehabilitation to a creditors' meeting the persons which decided to write such a petition shall file the said petition and the documents attached thereto with the interim receiver and the court of arbitration within 15 days after the date of the creditors' meeting.

The interim receiver shall provide the creditors with an opportunity of getting acquainted with the said documents.

**Article 77.** Petition of Promoters (Stockholders) of a Debtor or of the Owner of a Debtor Being a Unitary Enterprise for the Institution of Financial Rehabilitation
**1.** The decision to present a petition for the institution of financial rehabilitation to the first creditors' meeting shall be adopted by the general meeting by a majority vote of the debtor's promoters (stockholders) that attended the said meeting or the body authorised by the owner of property of the debtor being a unitary enterprise.

**2.** Upon the decision to present a petition for the institution of financial rehabilitation to the first creditors' meeting the general meeting of the debtor's promoters (stockholders), the body authorised by the owner of property of the debtor being a unitary enterprise shall be entitled to terminate before the due date the powers of the head of the debtor and elect (appoint) a new head of the debtor.

**3.** The debtor's promoters (stockholders) which have voted for the adoption of the

decision to present a petition to the first creditors' meeting for the institution of financial rehabilitation shall be entitled to provide security for the debtor's performing the debtor's obligations in compliance with a debt repayment schedule in the manner and in the amount envisaged by the present Federal Law or to arrange for the provision of such a security.

**4.** The decision to address a petition for the institution of financial rehabilitation to the first creditors' meeting shall contain the following:

information on the security offered by the debtor's promoters (stockholders), the owner of property of the debtor being a unitary enterprise for the debtor's performing the debtor's obligations in compliance with a debt repayment schedule;

the financial rehabilitation term which is proposed by the debtor's promoters (stockholders), the owner of property of the debtor being a unitary enterprise.

**5.** The following shall be attached to the decision to present a petition for the institution of financial rehabilitation to the first creditors' meeting:

a financial rehabilitation plan;

a debt repayment schedule;

the minutes of the general meeting of the debtor's promoters (stockholders) or the decision of the body authorised by the owner of property of the debtor being a unitary enterprise;

a list of the debtor's promoters (stockholders) which have voted for presenting a petition for the institution of financial rehabilitation to the meeting of creditors;

information on the security offered by the debtor's promoters (stockholders) or the owner of property of the debtor being a unitary enterprise for the debtor's performing the debtor's obligations in compliance with a debt repayment schedule (if there is such security);

other documents required under the present Federal Law.

**Article 78.** Third Person's (Third Persons') Petition for the Institution of Financial Rehabilitation

**1.** By agreement with the debtor a petition for the institution of financial rehabilitation may be filed by a third person or third persons. The said petition shall contain information on the security offered by the third person(s) for the performance of the debtor's obligations in keeping with a debt repayment schedule.

**2.** The following shall be attached to a petition for the institution of financial rehabilitation:

a debt repayment schedule signed by an authorised person;

documents on the security offered by third person(s) for the performance of the debtor's obligations in compliance with the debt repayment schedule.

Paragraph four is abrogated.

**Article 79.** Security for a Debtor's Performing Obligations under a Debt Repayment Schedule

**1.** A security for a debtor's performing obligations under a debt repayment schedule may be provided in the form of a pledge (mortgage), bank guarantee, state or municipal guarantee, suretyship or other, as not being inconsistent with the present Federal Law.

A security for a debtor's performing obligations under a debt repayment schedule shall not be in the form of withholding, deposits or forfeits money.

The subject matter of the security for a debtor's performing obligations under a debt repayment schedule shall not be a property or rights in rem which were owned by the debtor or held in economic jurisdiction.

**2.** The rights and duties of the person(s) which provided security for the debtor's

performing obligations under a debt repayment schedule shall result from the said security and they shall emerge as of the date when the court of arbitration issues its ruling on the institution of financial rehabilitation.

**3.** An agreement on the provision of a security for the debtor's obligations in accordance with a debt repayment schedule shall be concluded in writing before the date of the decision on institution of financial rehabilitation, and it shall be signed by the person(s) that has/have provided the security and also by the interim receiver in the interests of creditors.

The agreement on the provision of a security for the debtor's obligations in accordance with the debt repayment schedule and also the transactions concluded pursuant to said agreement before the commencement of financial rehabilitation by the arbitration court in respect of the debtor shall enter into force simultaneously with the issuance of the ruling on the commencement of financial rehabilitation.

**4.** The person(s) which provided security for a debtor's performing obligations under a debt repayment schedule shall be liable for the debtor's defaulting on the said obligations within the value of the property and rights in rem provided as the security for the debtor's performing the said obligations.

**5.** When a security is provided for a debtor's performing obligations under a debt repayment schedule in the form of a bank guarantee, the qualifications applicable to a guarantor shall be presented by the qualified receiver in the bankruptcy case of the creditors whose claims are subject to satisfaction under the approved debt repayment schedule.

When a security is provided for a debtor's performing obligations under a debt repayment schedule in the form of mortgage the state registration of the mortgage shall be effected within 45 days after the institution of financial rehabilitation under an arbitration court ruling on the institution of financial rehabilitation and the agreement for the provision of the security for the debtor's obligations in compliance with the debt repayment schedule.

**6.** The institution of new proceedings applicable in a bankruptcy case, in respect of a debtor shall not be deemed a discharge of the obligation to provide security for the debtor's performing obligations under a debt repayment schedule. In this case no settlements of accounts shall be carried out with creditors and proceeds from the collection of security for debts shall be included in the composition of the debtor's property.

**Article 80.** Procedure for Instituting Financial Rehabilitation

**1.** Financial rehabilitation shall be instituted by a court of arbitration on the basis of a decision of a creditors' meeting, except for the cases specified by Items 2 and 3 of Article 75 of the present Federal Law.

**2.** Simultaneously with the issuance of a ruling on the institution of financial rehabilitation, the court of arbitration shall approve an administrative receiver, except for the cases specified in Item 2 of Article 75 of the present Federal Law.

**3.** The ruling on the institution of financial rehabilitation shall specify the financial rehabilitation term and it shall also include the debt repayment schedule approved by the court.

When a security is provided for the performance of obligations under a debt repayment schedule the ruling on the institution of financial rehabilitation shall contain information on the persons which have provided the security and on the rate and methods of the security.

**4.** The ruling of an arbitration court on the institution of financial rehabilitation shall take effect immediately.

**5.** The ruling of an arbitration court on the institution of financial rehabilitation shall be

subject to appeal.

6. Financial rehabilitation shall be instituted for a term not exceeding two years.

**Article 81.** The Consequences of Institution of Financial Rehabilitation

1. The following consequences shall take effect as of the date when the arbitration court issues a ruling on commencement of financial rehabilitation:

creditor's claims for money obligations and for compulsory payments, except for current payments, may be presented to the debtor only in the observance of the procedure established by the present Federal Law for presentation of claims to a debtor;

the measures taken earlier to provide a security for creditors' claims shall be cancelled;

the distraint of the debtor's property and other restrictions on the debtor in as much as the debtor's disposal of its/his/her property is concerned may be implemented only in an arbitration litigation in a bankruptcy case;

the collection of property under writs of execution shall be suspended, except for such collection under writs of execution issued on the basis of decisions -- that had taken effect before the date of commencement of financial rehabilitation -- on collection of debts relating to wages/salaries, royalties payable to the authors of the results of intellectual activities, recovery of property from someone's unlawful possession, compensation for harm inflicted to life or health, compensation to be paid in excess of the compensation for harm;

the meeting of claims of a founder (stockholder) of the debtor for apportionment of a participatory share from the debtor's property in connection with its/his/her ceasing to be its founder (stockholder), the buy-out or acquisition of floated shares by the debtor or the payout of the actual value of the stock (participatory share) is not admissible;

the withdrawal of the debtor's property by the owner of the property of the debtor being an unitary enterprise is not admissible;

the pay-out of dividends and other payment on serial securities or incomes on stocks (participatory shares) and the distribution of profit among the debtor's founders (stockholders) are not admissible;

the termination of the debtor's money obligations by means of setting off a reciprocal homogenous claim, earnest money or otherwise is not admissible, if in such case the priority rating of meeting the creditors' claims established by Item 4 of Article 134 of the present Federal Law is not observed or if such termination causes a predominant satisfaction of the claims of creditors of one priority rating category whose obligations are terminated as compared with other creditors;

forfeit money (fines and penalties), interest payable and other sanctions for a default on, or the improper performance of monetary obligations and compulsory payments shall not be accrued, except for current payments.

2. Interest shall be accrued on the sum of creditors' claims relating to monetary obligations and mandatory payments subject to satisfaction under a debt repayment schedule at the refinancing rate established by the Central Bank of the Russian Federation as of the date of commencement of financial rehabilitation, on the basis of the outstanding amount of claims in accordance with the debt repayment schedule. An agreement between the debtor and the bankruptcy creditor may envisage a smaller rate of the interest accruable.

The interest specified in this item shall be subject to accrual on the sum of the creditor's claims from the date of issuance of the ruling on the institution of financial rehabilitation to the date of discharge of the creditor's claims, and if no such discharge occurs before the date of the decision whereby the debtor is declared bankrupt and a winding-up procedure is commenced, to the date of such decision.

The interest accrued in accordance with the present article is payable simultaneously with the repayment of creditors' claims for money obligations and for compulsory payments in

accordance with the debt repayment schedule. Unless such repayment had taken place before the date of the decision on deeming the debtor bankrupt and on commencing a winding-up proceeding the interest accrued shall be payable simultaneously with the meeting of creditors' claims for money obligations and for compulsory payments following the priority rating established by Article 134 of the present Federal Law.

3. Forfeit money (fines, penalties) and also the sums of inflicted losses in the form of lost benefits, which the debtor has to pay to creditors in the amounts existing as of the date of institution of financial rehabilitation, shall be subject to payment within financial rehabilitation in keeping with the debt repayment schedule after all the other creditors' claims have been met.

4. Settlement of a debtor's obligations that became due before the institution of financial rehabilitation shall be effected exclusively in compliance with the present Federal Law.

5. Creditors' claims shall be considered by the court of arbitration in the manner specified in Article 100 of the present Federal Law.

Creditors' claims presented within financial rehabilitation and included in the register of creditors' claims shall be satisfied within one month after the termination of discharge of obligations under the debt repayment schedule, except as otherwise envisaged by the present Federal Law.

**Article 82.** Management of the Debtor within Financial Rehabilitation

1. During financial rehabilitation the managerial bodies of the debtor shall exercise their powers subject to the limitations/restrictions established by the present chapter.

2. On the basis of a petition of a creditors' meeting, the administrative receiver or persons that provided security, such petition containing information on the improper implementation of the financial rehabilitation plan by the head of the debtor or on the committal of actions by the head of the debtor whereby the rights and legal interests of creditors and/or persons that provided security have been violated, the court of arbitration may remove the head of the debtor from his/her position in the manner established by Article 69 of the present Federal Law. The court of arbitration shall issue a ruling on the removal of the head of the debtor, such ruling being subject to appeal.

3. Without the consent of a creditors' meeting (the creditors' committee), the debtor shall not be entitled to enter into deals or several inter-related deals in the accomplishment of which she/he/it is interested, or which:

are connected to the acquisition, alienation or possibility of alienation, either directly or indirectly, of the debtor's property of which the balance sheet value makes up over five per cent of the balance sheet value of the debtor's assets as of the last accounting date preceding the date of conclusion of transaction;

cause the issuance of loans (credits), the issuance of suretyships and guarantees and also the institution of trust in respect of the debtor's property.

Without the consent of a creditors' meeting (the creditors' committee) and the person(s) which provided security the debtor shall not be entitled to make decisions concerning its reconstruction (merger, accession, division, separation, transformation).

If the amount of the debtor's monetary obligations that have occurred after the institution of financial rehabilitation makes up over 20 per cent of the sum of the creditors' claims included in the register of creditors' claims the deals that cause new obligations for the debtor may be concluded exclusively with the consent of a creditors' meeting (the creditors' committee).

4. Without the consent of the administrative receiver, except as explicitly provided for

by this Federal Law, the debtor shall not be entitled to conclude deals or several inter-related deals which:

cause an increase in the debtor's account payable of more than five per cent of the sum of the creditors' claims included in the register of creditors' claims as of the date of institution of financial rehabilitation;

are related to the acquisition, alienation or the possibility of alienation either directly or indirectly of the debtor's property, except for the sale of the debtor's property being finished products (works, services) manufactured or sold by the debtor in the course of ordinary economic activity;

cause a claim assignment, a debt assignment;

cause the receipt of loans (credits).

5. The deals executed by the debtor in breach of the present article may be declared null and void on an application of persons being party to the bankruptcy case.

**6.** Abrogated.

**Article 83.** The Administrative Receiver

**1.** The administrative receiver shall be approved by a court of arbitration in the manner specified by Article 45 of the present Federal Law.

**2.** The administrative receiver shall act from the date of his/her approval by the court of arbitration to the termination of financial rehabilitation or to his/her removal or release by the court of arbitration.

**3.** Within financial rehabilitation the administrative receiver shall:

keep a register of creditors' claims, except for the cases specified by the present Federal Law;

convene meetings of creditors in the cases established by the present Federal Law;

consider reports on the progress of implementation of the debt repayment schedule and of the financial rehabilitation plan (if it is available) presented by the debtor and to present statements to a meeting of creditors on the progress of implementation of the debt repayment schedule and of the financial rehabilitation plan;

present to a meeting of creditors or to the creditors' committee information on the progress of implementation of the debt repayment schedule in the procedure and on the scope established by a meeting or creditors or the creditors' committee, to be considered by them;";

monitor the debtor's timely performance of the creditors' current claims;

monitor the progress of implementation of the financial rehabilitation plan and debt repayment schedule;

monitor the proper timing and completeness of money remittances for the purpose of meeting creditors' claims;

in the case of the debtor's default on obligations under the debt repayment schedule, demand that the persons which have provided security for the debtor's performance of obligations under the debt repayment schedule execute the duties arising out of the security provided;

execute the other duties envisaged by the present Federal Law.

**4.** The administrative receiver shall be entitled to:

demand the provision of information from the head of the debtor on the debtor's current activity;

take part in a stock-take if it is performed by the debtor;

grant approval for the debtor's deals and decisions in the cases specified by the present Federal Law and provide information to the creditors on the said deals and decisions;

file a petition with the court of arbitration for removing the head of the debtor in the

cases specified by the present Federal Law;

file a petition with the court of arbitration for the taking of additional measures for preservation of the debtor's property and also for lifting such measures;

file a claim in his/her own name with the court of arbitration for declaring as null and void deals and decisions, and also for the application of measures for the invalidity of null and void deals concluded or accomplished by the debtor in breach of the provisions of the present Federal Law;

exercise other powers specified by the present Federal Law.

**5.** The administrative receiver may be relieved from the duties vested therein in the bankruptcy case by the arbitration court:

on an application of the administrative receiver;

on the grounds of the petition of the self-regulating organisation of arbitration managers a member of which he is, in the case of the withdrawal of the arbitration manager from the self-regulating organisation or the petition of the self-regulating organisation of the arbitration managers adopted by such an organisation according to Item 2 of Article 20.5 of this Federal Law;

in the other cases envisaged by the present Federal Law.

The administrative receiver may be relieved from the duties vested therein in the bankruptcy case by the arbitration court:

under a decision of a meeting of creditors if he/she has defaulted on, or improperly executed the duties vested therein in the bankruptcy case;

in connection with the arbitration court's upholding a complaint of a person deemed party to the bankruptcy case against the administrative receiver's default on, or improper execution of, the duties vested therein in the bankruptcy case if such default or improper execution has infringed on the rights or lawful interests of the person and also has caused or could cause losses to the debtor or the debtor's creditors;

if circumstances have been discovered which obstructed the person's being confirmed as administrative receiver, for instance, if such circumstances have occurred after the person was confirmed as administrative receiver;

on the grounds of the petition of the self-regulating organisation of arbitration managers in the case of the expulsion of the arbitration manager from the self-regulating organisation in connection with an infringement by the arbitration manager of conditions of membership in the self-regulating organisation, infringements by the arbitration manager of the requirements of this Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of professional work;

on the grounds of the petition of the self-regulating organisation of arbitration managers in the case of application to the arbitration manager of administrative punishment in the form of disqualification for the commission of an administrative offence;

in the other cases envisaged by a federal law.

When the administrative receiver is relieved the arbitration court shall confirm a new administrative receiver in the procedure established by the present article.

A ruling of an arbitration on relief or removal of an administrative receiver from a bankruptcy case shall be performed immediately. It is subject to appeal. The appeal of the ruling on relief or removal of the administrative receiver shall not cause suspension of the execution of the ruling.

**6.** Termination of proceedings in a bankruptcy case in connection with the discharge of creditors' claims in the course of financial rehabilitation shall cause termination of the powers of the administrative receiver.

**7.** If the court of arbitration issued a ruling on the institution of external administration or

decided to declare the debtor bankrupt and commence winding-up and if another person is approved as the receiver or the winding-up receiver, the administrative receiver shall keep executing his/her duties until the approval of the receiver or the winding-up receiver.

**Article 84.** The Financial Rehabilitation Plan and the Debt Repayment Schedule

**1.** A financial rehabilitation plan shall be elaborated if there is no security for the debtor's performance of obligations in accordance with the debt repayment schedule.

A financial rehabilitation plan prepared by the debtor's founders (stockholders) or the owner of the property of the debtor being an unitary enterprise shall be confirmed by a meeting of creditors. The financial rehabilitation plan shall substantiate the possibility of meeting creditors' claims in accordance with the debt repayment schedule.

**2.** The debt repayment schedule shall be signed by the person authorised to do so by the debtor's promoters (stockholders) and the owner of property of the debtor being a unitary enterprise, and a duty shall emerge on the debtor's part as of the date of approval of the debt repayment schedule to repay the debtor's debts owing the creditors within the term set by the schedule.

If a security is available for the debtor's performing the debtor's obligations under the debt repayment schedule it shall also be signed by the persons which have provided the security.

**3.** The debt repayment schedule shall envisage the discharge of all the creditors' claims included in the register of creditors' claims at least one month before the expiry of the financial rehabilitation term and also the discharge of claims of the first and second priority rating creditors within six months after the institution of financial rehabilitation.

Paragraph 2 is abrogated.

In the event of institution of financial rehabilitation in the manner established by Items 2 or 3 of Article 75 of the present Federal Law the debt repayment schedule shall meet the standards set by Article 75 of the present Federal Law.

**4.** The debt repayment schedule shall envisage a pro rata repayment of creditor's claims according to the priority rating set by Article 134 of the present Federal Law.

**5.** The debtor is entitled to complete the performance under a debt repayment schedule ahead of time.

**Article 85.** Amending a Debt Repayment Schedule

**1.** If the debtor defaults on a debt repayment schedule (non-payment of a debt when due and/or at a set rate) the debtor's promoters (stockholders), the owner of property of the debtor being a unitary enterprise, third persons which provided security shall within 14 days after the date set as the due date in the debt repayment schedule be entitled to address a petition to a creditors' meeting for approving the amendments introduced in the debt repayment schedule or for satisfying creditors' claims in compliance with the debt repayment schedule. A copy of the petition shall be sent to the administrative receiver. The administrative receiver shall convene a creditors' meeting within 14 days after the receipt of the petition.

If a decision is adopted to amend the debt repayment schedule, a creditors' meeting shall be entitled to file a petition with the court of arbitration for approval of the amendments made to the debt repayment schedule.

If the creditors' meeting refuses to approve the amendments made to the debt repayment schedule the creditors' meeting shall adopt a decision to file a petition with the court of arbitration for terminating financial rehabilitation before the due date.

**2.** If the amount of claims presented by creditors within financial rehabilitation and

included in the register of creditors' claims exceeds by more than 20 per cent the sum of creditors' claims subject to repayment under the debt repayment schedule, the administrative receiver shall within 14 days after the inclusion of these claims in the register of creditors' claims convene a creditors' meeting for the purpose of adopting a decision on amending the debt repayment schedule.

If a decision is made to amend the debt repayment schedule the creditors' meeting shall be entitled to file a petition with the court of arbitration for approving the amendments made to the debt repayment schedule.

If the creditors' meeting refuses to approve the amendments made to the debt repayment schedule the creditors' meeting shall be entitled to petition for terminating financial rehabilitation before the due date.

**3.** The creditors' meeting that has adopted a decision to amend the debt repayment schedule may propose to the person(s) which provided security for the debtor's performing obligations under the debt repayment schedule to increase the amount of the security for the debtor's performing obligations in compliance with the debt repayment schedule.

**4.** The court of arbitration shall be entitled to issue a ruling on amending a debt repayment schedule only in respect of the claims included in the register of creditors' claims.

**5.** Amending a debt repayment schedule shall not be deemed a ground for the person(s) that provided security for the debtor's performing obligations under a debt repayment schedule to refuse discharging their obligation to secure the debtor's performance under the debt repayment schedule which was the subject matter of the contract for provision of a security for the debtor's obligations.


**Article 85.1.** The Repayment of Debts for Compulsory Payments in the Course of Financial Rehabilitation by the Debtor's Founders (Stockholders), the Owner of the Property of the Debtor Being an Unitary Enterprise and/or a Third Person

**1.** In the course of financial rehabilitation the claims addressed to the debtor for compulsory payments included in the register of creditors' claims may be repaid in the procedure established by the present article by the founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise and/or a third person.

When the claims addressed to the debtor for compulsory payments are being repaid by the debtor's founders (stockholders), the owner of the property of the debtor being an unitary enterprise and/or a third person all the claims addressed to the debtor for compulsory payments that have been included in the register of creditors' claims shall be repaid.

**2.** A person intending to repay the claims addressed to the debtor for payment of compulsory payment sin full shall send a declaration of such intent to the arbitration court that is considering the bankruptcy case, to the debtor, administrative receiver and the empowered bodies.

**3.** The following shall be indicated in the declaration of the intent to repay the claims addressed to the debtor for compulsory payments in full:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the applicant;

the term for repayment of the claims addressed to the debtor for compulsory payments not exceeding 30 business days after the date of issuance of the relevant ruling by the arbitration court.

**4.** The declaration of intent shall be considered by the arbitration court within 14 business days after the receipt thereof.

If several declarations of intent are received by the arbitration court from several persons they shall be considered in the chronological order of being received by the

arbitration court.

**5.** According to the results of consider of the declaration of intent the arbitration court shall issue a ruling upholding the declaration of intent or a ruling refusing to uphold the declaration of intent if in the register of creditors' claims there are no claims addressed to the debtor for compulsory payments or if the applicant has decided not to repay the claims addressed to the debtor for compulsory payments until the declaration is considered.

**6.** The following shall be indicated in the arbitration court ruling upholding the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the person that repays the claims addressed to the debtor for compulsory payments;

the amount of the claims addressed to the debtor for compulsory payments , the principal debt amount and the forfeit money (fines and penalties) accrued;

the term and procedure for repayment of the claims addressed to the debtor for compulsory payments ;

the date of the court-room hearing on the results of repayment of the claims addressed to the debtor for compulsory payments ;

bank account details and also the other information required for remittance of funds for repayment of the claims addressed to the debtor for compulsory payments .

**7.** The consideration of the declaration of intent shall be adjourned until the date of consideration of the results of repayment of the claims addressed to the debtor for compulsory payments if there is a similar application that has been earlier received from another person.

If there is a dispute as to the amount and composition of the claims addressed to the debtor for compulsory payments the consideration of the declaration of intent may be adjourned until the date when the court judgement on establishment of the composition and amount of the claims addressed to the debtor for compulsory payments that have been included in the register of creditors' claims becomes final.

**8.** For the purpose of repaying the claims addressed to the debtor for compulsory payments the empowered body shall serve a notice to the arbitration court containing the date of service of the notice, the surname, first name, patronymic and position of the official who signed the notice and also the information required according to the rules for completion of the payment documents that acknowledge the remittance of funds for repayment of claims addressed to a debtor for compulsory payments , including an indication of the amount of claim in respect of each of the beneficiaries of the funds.

**9.** Within the term set by the arbitration court ruling upholding the declaration of intent the applicant shall remit funds in the amount and in the procedure specified in the ruling.

**10.** Upon the expiry of the term set by the arbitration court for repayment of the claims addressed to the debtor for compulsory payments the applicant shall send an application to the arbitration court for deeming the claims addressed to the debtor for compulsory payments repaid and for replacing the creditor in the register of creditors' claims.

Attached to the application shall be payment documents acknowledging that funds have been remitted in the amount and in the procedure specified in the arbitration court ruling upholding the declaration of intent.

**11.** According to the results of consideration of the application for deeming the claims addressed to the debtor for compulsory payments repaid and for replacing the creditor in the register of creditors' claims, provided the repayment completed complies with the arbitration court ruling upholding the declaration of intent, the arbitration court shall issue a ruling on deeming the claims addressed to the debtor for compulsory payments repaid and on replacing the creditor in the register of creditors' claims.

The claims of the person that has repaid the claims addressed to the debtor for

compulsory payments shall be recorded in the register of creditors' claims in the same amount and with the same priority rating as repaid claims addressed to the debtor for compulsory payments.

**12.** If the claims addressed to the debtor for compulsory payments have not been repaid in full or have been repaid in breach of the procedure or term for repayment established by the arbitration court ruling the arbitration court shall issue a ruling refusing to deem the claims addressed to the debtor for compulsory payments repaid.

A refund shall be provided for the funds remitted to the applicant within ten business days after the arbitration court ruling refusing to deem the claims addressed to the debtor for compulsory payments repaid becomes final.

The remittance of funds in an amount below the one envisaged by the arbitration court ruling upholding the declaration of intent shall not be deemed ground for the arbitration court's issuing a ruling refusing to deem repaid claims addressed to the debtor for compulsory payments discharged, and equally, and also for increasing the amount of claims to the debtor of the person that has repaid the claims addressed to the debtor for compulsory payments.

The funds remitted in excess over the amount of money envisaged by said ruling shall be refunded to the applicant within ten business days after the arbitration court ruling on deeming the claims addressed to the debtor for compulsory payments repaid and on replacing the creditor in the register of creditors' claims becomes final.

**13.** The Government of the Russian Federation shall establish a procedure for settlements of accounts for the purpose of repaying the claims addressed to a debtor for compulsory payments.

**14.** The repayment of the claims for compulsory payments addressed to a debtor in respect of which the present Federal Law established details of implementation of the proceedings applicable in a bankruptcy case is admissible in cases when there is a provision for this in the present Federal Law that establishes the details of bankruptcy of debtors of specific categories.


**Article 86.** Termination of Financial Rehabilitation before the Due Date

**1.** If the debtor discharges all the creditors' claims envisaged by the debt repayment schedule before the expiry of the financial rehabilitation term set by the court of arbitration, the debtor shall file a report on termination of financial rehabilitation before the due date.

**2.** The procedure for filing the report and for consideration of the results of financial rehabilitation by the court of arbitration and also the composition of the materials to be attached to the report are established by Items 1-4 of Article 88 of the present Federal Law.

**3.** According to the results of consideration of the results of financial rehabilitation and creditor's complaints the court of arbitration shall issue one of the below rulings:

on terminating proceedings in the bankruptcy case if there is no outstanding debt and if the creditors' complaints have been deemed without ground;

on refusing to terminate proceedings in the bankruptcy case if an outstanding debt has been discovered and the creditors' complaints have been deemed valid.

The said rulings shall take effect immediately and shall be subject to appeal.

**Article 87.** Termination of Financial Rehabilitation before the Due Date

**1.** Below are the grounds for terminating financial rehabilitation before the due date:

the non-filing of a contract for providing security for the debtor's obligations under the debt repayment schedule with the court of arbitration within the term specified in Item 3 of Article 79 of the present Federal Law;

a repeated or significant (for a term exceeding 15 days) breach of the creditors' claim

repayment due dates established by the debt repayment schedule within financial rehabilitation.

2. Within 15 days after the occurrence of grounds for termination before the due date of financial rehabilitation, the administrative receiver shall convene a creditors' meeting to consider the issue of filing a petition with the court of arbitration for terminating financial rehabilitation before the due date.

3. The debtor shall provide a report to the creditors' meeting convened in keeping with Item 2 of the present article on the results of implementation of the debt repayment schedule and financial rehabilitation plan (if any).

The following shall be attached to the report: the debtor's balance sheet as of the last accounting date, statement of the debtor's profits and losses, information on the amount of paid up creditors' claims and documents to acknowledge that creditors' claims have been satisfied.

The administrative receiver shall present his/her statement to a meeting of creditors concerning the progress of implementation of the debt repayment schedule and the financial rehabilitation plan (if such plan is available).

4. According to the results of consideration of the debtor's report and the administrative receiver's statement the creditors' meeting shall be entitled to adopt a decision to file one of the below petitions with the court of arbitration:

on the institution of external administration;

on declaring the debtor bankrupt and commencing winding-up procedure.

Attached to the petition of the creditors' meeting shall be a copy of the minutes of the creditors' meeting and a list of the creditors which have voted against the decision adopted by the creditors' meeting or which did not take part in voting on the issue.

5. On the basis of the petition of the creditors' meeting the court of arbitration shall issue one of the below court decisions:

a ruling on refusing to satisfy a relevant petition of the creditors' meeting in case when the court hearing has revealed that the debtor has satisfied the creditors' claims in compliance with the debt repayment schedule and that the creditors' claims have been deemed without ground;

a ruling on the institution of external administration if the debtor's solvency can be restored;

a decision to declare the debtor bankrupt and to commence winding-up procedure if there are no grounds for instituting external administration and if evidence of bankruptcy is present.

6. If financial rehabilitation has been instituted by the court of arbitration in the manner established by Item 3 of Article 75 of the present Federal Law on the petition of a person participating in the bankruptcy case the court of arbitration may terminate financial rehabilitation before due time if a breach of the creditors' claim repayment due dates set by the debt repayment schedule took place within financial rehabilitation. In the said case the court of arbitration shall issue a ruling on the institution of a proceeding applicable in a bankruptcy case for which the first creditors' meeting petitioned.

**Article 88.** Termination of Financial Rehabilitation

1. At least one month before the expiry of the established financial rehabilitation term the debtor shall file a report with the administrative receiver on the results of implementation of financial rehabilitation.

2. The following shall be attached to the debtors' report:

the debtor's balance sheet as of the last accounting date;
a statement of the debtor's profits and losses;
documents confirming repayment of creditors' claims.

**3.** The administrative receiver shall consider the debtor's report on the results of completion of financial rehabilitation and draw up a statement on the progress of the debt repayment schedule, the meeting of creditors' claims and the implementation of the financial rehabilitation plan (if such plan is available) which shall be sent to the creditors whose claims are included in the register of creditors' claims and to the arbitration court within ten days after the date of receipt of the debtor's report on the results of completion of financial rehabilitation.

**4.** If the creditors' claims included in the register of creditors' claims have not been met as of the date of consideration of the debtor's report or if the said report has not been filed to the administrative receiver within the term established by Item 1 of the present article the administrative receiver shall convene a meeting of creditors, which is empowered to adopt one of the below decisions:
on filing a petition with the court of arbitration for instituting external administration;
on filing a petition with the court of arbitration for declaring the debtor bankrupt and commending winding-up procedure.
**5.** Upon the receipt of a statement of the administrative receiver or a petition of the creditors' meeting, the court of arbitration shall set a date for the hearing to consider the results of financial rehabilitation and creditors' claims in respect of actions of the debtor and the administrative receiver. The court of arbitration shall notify the persons participating in the bankruptcy case of the date and place of the court hearing in the manner established by the present Federal Law.
**6.** According to the results of consideration of progress of financial rehabilitation and of creditors' claims, the court of arbitration shall adopt one of the below court decisions:
a ruling on terminating proceedings in the bankruptcy case if no outstanding debt exists and if the creditors' complaints have been deemed without ground;
a ruling on instituting external administration if the debtor's solvency can be restored;
a decision to declare the debtor bankrupt and commence winding-up procedure if there are no grounds for the institution of external administration and if evidence of bankruptcy exists.

**Article 89.** Performance of Obligations by Persons Which Provided Security for a Debtor's Performing Obligations under a Debt Repayment Schedule
**1.** If the debtor defaults on implementing a debt repayment schedule for more than five days, the administrative receiver shall apply to the persons which provided security for the debtors' discharging obligations under the debt repayment schedule with a demand for the debtor's discharging the obligations under the debt repayment schedule.
**2.** The amounts of money received as a result of the discharge by the persons which provided security for the debtor's discharging the obligations shall be remitted to the debtor's account for the purpose of effecting settlement with creditors.
Settlement with creditors shall be effected by the debtor in the manner established by Item 4 of Article 84 of the present Federal Law.
**3.** From the date when creditors' claims are satisfied the administrative receiver or registrar shall make a relevant entry in the register of creditors' claims.
**4.** If creditors' claims are satisfied by the persons which provided a security for the debtors' discharging obligations under a debt repayment schedule, the claims of the persons which provided the security for the debtor's discharging obligations under the debt repayment

schedule shall be repaid by the debtor after the termination of proceedings in the bankruptcy case or in the course of winding-up as part of the claims of the third priority ranking creditors.

**5.** Disputes between the persons which provided security for the debtor's discharging obligations under a debt repayment schedule and the administrative receiver, bankruptcy creditors, and authorised bodies shall be resolved by the court of arbitration in whose cognisance the bankruptcy case is.

**Article 90.** The Consequences of Discharge of Obligations by the Persons Which Provided a Security for the Debtor's Discharging Obligations under a Debt Repayment Schedule

**1.** The persons which provided security for a debtor's discharging obligations under a debt repayment schedule and which have discharged the obligations resulting from such a security are entitled to present their claims to the debtor in accordance with the general procedure envisaged by a federal law.

**2.** If within financial rehabilitation the persons which provided security for a debtor's discharging obligations under a debt repayment schedule satisfied the creditors' claims, the said persons' claims within subsequent proceedings applicable in a bankruptcy case, shall be subject to inclusion in the register of creditors' claims as bankruptcy creditors' claims.

**Article 91.** The Consequences of a Default on Obligations by the Persons Which Provided a Security for a Debtor's Discharging Obligations under a Debt Repayment Schedule

A default by the persons which provided security for a debtor's discharging obligations under a debt repayment schedule in their obligations ensuing the security provided, within the term set by Item 1 of Article 89 of the present Federal Law, shall cause the said person's liability under the civil legislation.

**Article 92.** Transition to External Administration

**1.** According to the results of consideration of the progress of financial rehabilitation, the court of arbitration shall be entitled to issue a ruling on the institution of external administration in the following cases:

if the possibility of the debtor's restoring solvency is established within the term envisaged by the present Federal Law;

if a petition of a creditors' meeting was filed with the court of arbitration for a transition to external administration in the cases specified by the present Federal Law;

if creditors' meeting petition with the arbitration court for deeming the debtor bankrupt and for commencing a winding-up proceeding is filed, if circumstances have occurred after the meeting of creditors that allow one to believe that the debtor's solvency can be restored within the term established by the present Federal Law;

if a creditors' meeting was held which adopted a decision to file a petition with the court of arbitration for declaring the debtor bankrupt and commencing winding-up procedure, if circumstances emerged that made it possible to believe that the debtor's solvency can be restored;

in other cases envisaged by the present Federal Law.

**2.** The aggregate term of financial rehabilitation and external administration shall not exceed two years.

If more than 18 months elapse from the date of institution of financial rehabilitation to the date when the court of arbitration hears the issue of institution of external administration,

the court of arbitration shall not be entitled to issue a ruling on the institution of external administration.

## Chapter VI. External Administration

**Article 93.** Procedure for Instituting External Administration

**1.** External administration shall be instituted by a court of arbitration on the basis of a decision of a creditors' meeting, except for the cases specified by the present Federal Law.

**2.** External administration shall be instituted for a term not exceeding 18 months, which can be extended in the manner specified by the present Federal Law by up to six months, except as otherwise established by the present Federal Law.

A ruling with which an external administration term is established or extended shall take effect immediately and it shall be subject to appeal in the manner established by Item 3 of Article 61 of the present Federal Law.

**3.** At the petition of a creditors' meeting or the receiver, the established external administration term may be reduced.

A ruling on termination of the term of external administration shall be performed immediately, and it is subject to appeal in the procedure established by Item 3 of Article 61 of the present Federal Law.

**Article 94.** The Consequences of Institution of External Administration

**1.** Effective from the date of institution of external administration:

the powers of the head of the debtor are terminated, and the duty to manage the affairs of the debtor is vested in the receiver;

the receiver shall be entitled to issue an order of dismissal of the head of the debtor or propose to the head of the debtor to leave his/her office for another position in the manner and on the terms established by the labour legislation;

the powers of the managerial bodies of the debtor and the owner of property of the debtor being a unitary enterprise shall be terminated, and the powers of the head of the debtor and other debtors' managerial bodies shall be transferred to the receiver, except for the powers of the debtor's managerial bodies and the owner of the property of the debtor being an unitary enterprise specified in Items 2 and 3 of the present Article. The managerial bodies of the debtor, the interim receiver, and the administrative receiver shall within three days after the approval of the receiver ensure the transfer of the debtor's accounting and other documentation, seals and rubber stamps, material and other valuables to the receiver;

the measures for securing creditors' claims adopted before shall be revoked;

the property of the debtor may be seized and other restrictions/limitations on the debtor in as much as it concerns the debtor's disposing of his/her/its property may be imposed exclusively within the framework of the bankruptcy proceedings except for the distraints and other restrictions imposed in a civil or an arbitration proceedings or execution proceeding in respect of collection of debts for current payments and garnishment;

a moratorium on meeting creditors' claims relating to monetary obligations and mandatory payments shall be imposed, except for the cases specified by the present Federal Law;

creditors' claims for money obligations and for compulsory payments, except for the current payments that may be presented to the debtor only in the observance of the procedure for presenting claims to a debtor established by the present Federal Law.

**2.** Within the competence established by a federal law, the managerial bodies of the

debtor shall be entitled to make decisions:

Paragraph two is abrogated;

on designating the number and face value of announced shares;

on an increase in the joint stock company's authorised capital by means of floating additional ordinary shares;

on addressing a petition to a creditors' meeting for including the possibility of an additional issue of shares in the external administration plan;

on designating a procedure for conducting a general meeting of shareholders;

on filing a petition for the sale of the debtor's enterprise;

on replacing the debtor's assets;

on electing a representative of the debtor's promoters (stockholders);

on concluding an agreement on the terms for the provision of funds for discharging the debtor's obligations between a third person or third persons and the managerial bodies of the debtor authorised under the constitutive documents to adopt a decision to conclude large deals;

other decisions as may be required for floating additional ordinary shares of the debtor.

The petition of the debtor's managerial bodies for the sale of the debtor's enterprise shall contain information on the minimum selling price for the debtor's enterprise.

The funds spent to hold a meeting of shareholders and a meeting of the board of directors (supervisory board) or other managerial body of the debtor shall be reimbursed at the expense of the debtor only if such a possibility is envisaged in the external administration plan.

**3.** Within the scope of powers established by a federal law the owner of the property of a debtor being an unitary enterprise is entitled to take decisions:

on filing a petition for an enterprise of the debtor to be sold;

on the debtor's assets being replaced;

on concluding an agreement with a third person or third persons on the conditions for the provision of funds for the purpose of performing the debtor's obligations.

A petition of the owner of the property of a debtor being an unitary enterprise for an enterprise of the debtor to be sold shall contain information on the minimum selling price of the debtor's enterprise.

**Article 95.** Moratorium on Meeting Creditors' Claims

**1.** The moratorium on meeting creditors' claims shall extend to the monetary obligations and mandatory payments, except for current payments.

**2.** Within the effective term of a moratorium on meeting creditors' claims relating to the monetary obligations and the mandatory payments specified in Item 1 of the present article:

performance under writs of execution relating to asset collection and under other documents for collection in an uncontested proceeding shall be suspended, forced performance under them shall be prohibited, except for performance under writs of execution issued under decisions on collection of wages/salaries debt, on disbursement of royalties to the authors of the results of intellectual activity, on demanding property from another's illegal possession, on compensation for harm to life or health, compensation to be paid in excess of the compensation for harm and also collection of current payments on debt that became final before the institution of external administration;

no forfeit money (fines, penalties) and other financial sanctions shall be accrued for a default on or improper performance of monetary obligations and mandatory payments, except for current payments.

Interest shall be accrued on the sum of claims of a bankruptcy creditor, an authorised

body at the rate set in compliance with Article 4 of the present Federal Law as of the date of institution of external administration in the manner and at the rate specified by the present article.

Interest on the sum of claims of a bankruptcy creditor or an authorised body denominated in Russian currency shall be accrued at the rate of the refinancing rate set by the Central Bank of the Russian Federation as of the date of institution of external administration.

The agreement between the receiver and a bankruptcy creditor may envisage a lower rate of interest payable or a shorter interest accrual term in comparison with those envisaged by the present article.

The interest subject to accrual and payment under the present article shall be accrued on the sum of claims of the creditors of each priority ranking from the date of institution of external administration to the date of the court of arbitration's ruling on the commencement of settlements with creditors for claims of the creditors of each priority ranking or to the time when the said claims are satisfied by the debtor or by a third person within external administration or to the time when the debtor is declared bankrupt and winding-up is commenced.

The interest accrued in compliance with the present article shall not be taken into account in counting the number of votes belonging to a bankruptcy creditor or an authorised body at creditors' meetings.

The payment of the interest accrued in accordance with the present article shall be done simultaneously with the meeting of creditors' claims for money obligations and for compulsory payments in the procedure established by Article 121 of the present Federal Law. If such meeting did not take place before the date of the decision on deeming the debtor bankrupt and on commencing a winding-up proceeding the interest accrued shall be paid simultaneously with the meeting of creditors' claims for money obligations and for compulsory payments according to the priority rating established by Article 134 of the present Federal Law.

**3.** The moratorium on meeting creditors' claims shall also extend to creditors' claims for compensation for the losses relating to the receiver's refusal to perform the debtor's contracts.

**4.** Abrogated.

**5.** The moratorium on meeting creditors' claims shall not extend to claims for debt collection relating to wages/salaries, disbursement of royalties to the authors of the results of intellectual activity, compensation for harm inflicted to life or health, compensation to be paid in excess of the compensation for harm.

**Article 96.** The Receiver

**1.** The receiver shall be approved by a court of arbitration simultaneously with the institution of external administration, except for the cases envisaged by the present Federal Law.

**2.** Before the date of approval of a receiver the court of arbitration shall vest the duties and rights of a receiver established by the present Federal Law in the person who executed the duties of the interim receiver, administrative receiver or winding-up receiver of the debtor, except for the drawing up of an external administration plan.

The court of arbitration shall issue a ruling on the approval of the receiver.

**3.** The ruling on the approval of a receiver shall take effect immediately.

**4.** The ruling on the approval of a receiver shall be subject to appeal. An appeal taken from a ruling on the approval of a receiver shall not cause suspension of the implementation thereof.

**5.** The receiver shall be approved by a court of arbitration in the manner established by

Article 45 of the present Federal Law.

### Article 97. Releasing a Receiver from His/Her Duties

**1.** A receiver may be relieved by the arbitration court from the bankruptcy case:

on an application of the interim receiver;

on the grounds of a petition of the self-regulating organisation of arbitration managers whose member he is, in the case of the withdrawal of the arbitration manager from the self-regulating organisation or the petition of the self-regulating organisation of the arbitration managers adopted by such an organisation according to Item 2 of Article 20.5 of this Federal Law;

in the other cases envisaged by the present Federal Law.

**2.** The ruling of a court of arbitration on the release of a receiver from his/her duties shall take effect immediately and shall be subject to appeal.

**3.** A receiver released from his/her duties shall ensure the transfer of the accounting and other documentation of the debtor, seals and rubber stamps, material and other valuables to a newly approved receiver within three days.

**4.** In the case of release of a receiver the court of arbitration shall approve another receiver in the manner envisaged by Article 96 of the present Federal Law.

### Article 98. Removing a Receiver

**1.** The receiver may be removed by the court of arbitration:

on the basis of a decision of a creditors' meeting to file a petition with the court of arbitration in case of the receiver's defaulting on or improperly performing the duties vested therein, or a failure to complete the solvency restoration measures envisaged by the external administration plan;

in connection with the fact that the court of arbitration has satisfied the complaint of a person participating in the bankruptcy case in respect of the receiver's defaulting or improperly performing the duties vested therein on the condition that such a default or improper performance of the duties has violated the rights or legal interests of the person which filed the complaint and has also caused or could cause losses to the debtor or the debtor's creditors;

if circumstances have been discovered which obstructed the approval of the person as the receiver and also in case when such circumstances occurred after the approval of the person as the receiver;

on the grounds of a petition of the self-regulating organisation of arbitration managers in the case of expulsion of the arbitration manager from the self-regulating organisation in connection with an infringement by the arbitration manager of conditions of membership in the self-regulating organisation, infringements by the arbitration manager of the requirements of this Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of professional work;

on the grounds of the petition of a self-regulating organisation of arbitration managers in the case of application to the arbitration manager of administrative punishment in the form of disqualification for the commission of an administrative offence;

in other cases envisaged by federal law.

**2.** The ruling of a court of arbitration on the removal of a receiver shall take effect immediately and it shall be subject to appeal. An appeal of the ruling of an arbitration court on removal of a receiver shall not cause suspension of the performance of such a ruling.

**3.** In the case of removal of a receiver the court of arbitration shall approve a new

receiver in the manner established by Article 96 of the present Federal Law.

4. A receiver removed from the execution of his/her duties shall ensure the transfer of the debtor's accounting and other documentation, seals and rubber stamps, material and other valuables to the newly approved receiver within three days from the time she/he is approved.

**Article 99.** The Rights and Duties of a Receiver

1. The receiver shall be entitled to:

dispose of the debtor's property in compliance with the external administration plan with due regard to the restrictions/limitations envisaged by the present Federal Law;

conclude an amicable agreement in the debtor's name;

declare a waiver of performance of the debtor's contracts in compliance with Article 102 of the present Federal Law;

file claims and applications with the court of arbitration in the name of the debtor for declaring deals and decisions invalid and also for applying the effects of invalidity of null and void deals concluded or performed by the debtor in defiance of the requirements of the present Federal Law, as well as raise claims for the recovery of losses caused by actions (omission to act) of members of the debtor's collective executive bodies, members of the board of directors (supervisory board), the debtor's one-man executive body, owner of the debtor's property, persons acting in the name of the debtor in compliance with a power of attorney and other persons acting in compliance with the debtor's constituent documents;

commit other actions envisaged by the present Federal Law.

2. The receiver shall:

accept the debtor's property for management and perform a stocktake of the property;

within three working days as of the end date of an inventory check of the debtor's property include in the Comprehensive Federal Register of Data on Bankruptcy data on the results of such inventory check;

elaborate an external administration plan and present it to a creditors' meeting for approval;

do the bookkeeping, keep financial and statistical records and prepare statements/reports;

file objections in the established manner to the creditor's claims presented to the debtor;

take measures for collecting debt for the benefit of the debtor;

keep a register of creditors' claims;

implement the measures envisaged by the external administration plan in the manner and on the terms established by the present Federal Law;

inform the creditors' committee of the completion of the measures envisaged by the external administration plan;

present a report on the results of implementation of the external administration plan to a creditors' meeting;

exercise other powers envisaged by the present Federal Law.

**Article 100.** Establishing the Amount of Creditors Claims

1. Creditors shall be entitled to present their claims to the debtor at any time within the external administration period. Said claims shall be sent to the arbitration court and to the receiver together with the court decision or other documents confirming the validity of the claims. Said claims shall be included by the receiver or the registrar in the register of creditors'

claims on the basis of a ruling of the arbitration court on the inclusion of the claims in the register of creditors' claims.

2. Within five days after receiving a creditor's claims the receiver shall include in the Unified Federal Register of Information on Bankruptcy information about the receipt of the creditor's claims with an indication of the name (for a legal entity) or the surname, first name and patronymic (for an natural person) of the creditor, taxpayer's identification number, basic state registration number (if they are available), the sum of declared claims, the grounds for the occurrence of the claims and shall provide the opportunity to the persons participating in the bankruptcy case for getting acquainted with the creditor's claims and with the documents attached to them.

3. Objections to creditors' claims may be filed with the arbitration court by the receiver, a representative of the debtor's promoters (stockholders) or a representative of the owner of the property of a debtor being a unitary enterprise and also by the creditors whose claims have been included in the register of creditors' claims. Such objections shall be filed within 30 days after the date of inclusion in the Unified Federal Register of Information on Bankruptcy of information on the receipt of the claims of the relevant creditor. The persons participating in the bankruptcy case have the right to declare the expiry of the period of limitations in respect of the creditors' claims presented to the debtor.

4. If objections exist to creditors' claims the arbitration court shall verify the availability of good grounds for the relevant creditors' claims. According to the results of the scrutiny a ruling shall be issued by the arbitration court on inclusion of, or refusal to include, said claims in the register of creditors' claims. The arbitration court ruling on inclusion of said claims in the register of creditors' claims shall include an indication of the amount of and the priority order for meeting, said claims.

If in the case of the bankruptcy of a debtor the interests of the creditors being the holders of bonds are represented by the representative of bondholders designated in accordance with the legislation of the Russian Federation on securities, then the arbitration court ruling on inclusion of claims in the register of creditors' claims shall specify the total amount of such creditors' claims and the priority order for meeting said claims in keeping with the present Federal Law, and also the priority order for meeting said claims in accordance with the terms of the relevant bond issue.

On an objection of the receiver the claims of a creditor being a bondholder shall removed by the arbitration court from the register of creditors' claims if in the case of bankruptcy of the debtor the interests of the creditors being the holders of the bonds of the relevant issue are represented by the representative of bondholders designated in accordance with the legislation of the Russian Federation on securities.

5. The creditors' claims to which no objections have been received shall be considered by the arbitration court so as to verify their having good grounds and the availability of grounds for inclusion in the register of creditors' claims. According to the results of the consideration the arbitration court shall issue a ruling on inclusion or on refusal to include the creditors' claims in the register of creditors' claims. Said claims may be considered by the arbitration court without inviting the persons participating in the bankruptcy case.

6. A ruling on inclusion or on refusal to include creditors' claims in the register of creditors' claims is subject to immediate implementation and to appeal.

The ruling on inclusion or on refusal to include creditors' claims in the register of creditors' claims shall be sent by the arbitration court to the receiver or to the registrar and the applicant.

7. If the arbitration court deems as no good the reasons for non-filing a creditors' claim in the course of the observation the arbitration court in its ruling on inclusion of the creditor's claim in the register of creditors' claims has the right of vesting in the creditor the duty to

compensate for the expenses incurred to notify creditors of the filing of such claim.

8. The creditors' claims envisaged by the present article shall be considered by a judge of the arbitration court within 30 days after the date of expiry of the term for filing objections.

**Article 101.** Disposal of the Debtor's Property

1. Large transactions and also transactions in the accomplishment of which someone has an interest shall be concluded by the receiver only on the consent of a creditors' meeting (the creditors' committee), except as otherwise envisaged by the present Federal Law.

2. For the purposes of the present Federal Law "large transactions" means transactions or several inter-related transactions relating to the acquisition, alienation or possibility of alienation, either directly or indirectly, of a debtor's property whose balance sheet value exceeds ten per cent of the balance sheet value of the debtor's assets as of the last accounting date preceding the date when the transaction is concluded.

3. For the purposes of the present Federal Law "transactions in the accomplishment of which someone has an interest" means transactions the parties of which are interested persons in relation to the receiver or a bankruptcy creditor or to the debtor.

4. Transactions entailing the receipt or granting of loans, the granting of suretyships or guarantees, claim assignment, debt assignment, the alienation or acquisition of shares, participatory shares in economic partnerships and companies, the institution of a trust shall be executed by the receiver after approval by a creditors' meeting (the creditors' committee). The transactions mentioned in this item may be concluded by the receiver without the approval of a creditors' meeting (the creditors' committee) if the possibility of and terms for conclusion of such transactions are envisaged by the external administration plan, as well as in other instances provided for by this Federal Law.

5. Abrogated.

**Article 102.** Refusal to Perform the Debtor's Transactions

1. Within three months after the institution of external administration the receiver shall be entitled to refuse to perform the debtor's contracts and other transactions.

2. Refusal to perform the debtor's contracts and other transactions may be declared only in respect of the transactions which have not been fully or partially discharged by the parties, if such transactions are an obstacle for restoring the debtor's solvency or if the debtor's performance of such transactions is going to entail losses for the debtor in comparison with similar transactions concluded in comparable circumstances.

3. In the cases specified in Item 2 of the present article a contract shall be deemed rescinded from the date when all parties to the contract receive the receiver's declaration of refusal to fulfill the contract.

4. A party to a contract in respect of which a refusal to perform has been declared shall be entitled to demand from the debtor a compensation for the losses caused by the refusal to fulfill the debtors' contract.

5. The provisions of the present article shall not apply to the debtor's contracts concluded within receivership on the consent of an interim receiver or within financial rehabilitation if such contracts were concluded in compliance with the present Federal Law.

6. The refusal to execute financial agreements satisfying the requirements defined by Item 1 of Article 4.1 of this Federal Law may be only declared in respect of all the financial agreements between the creditor and debtor.

**Article 103.** Abrogated.

**Article 104.** The Monetary Obligations of a Debtor During External Administration

**1.** In cases when the amount of the debtor's monetary obligations that have emerged after the institution of external administration exceeds by 20 per cent the amount of the bankruptcy creditors' claims included in the register of creditors' claims, transactions entailing new monetary obligations for the debtor, except for the transactions envisaged by the external administration plan, may be concluded by the receiver only with the consent of a creditors' meeting (the creditors' committee).

**2.** The transactions concluded in breach of Item 1 of the present article may be declared invalid by a court on an application of a bankruptcy creditor or an authorised body, or on an application of a newly approved receiver in case when these transactions were concluded by a person who earlier executed the rights and duties of a receiver of the debtor.

A transaction concluded by a receiver in breach of Item 1 of the present article may be declared invalid by a court if it is proven that the other party to the transaction knew or should have known of such a breach.

**Article 105.** Regulating the Consumption Funds of a Debtor

Decisions entailing an increase in the debtor's expenses not envisaged in the external administration plan may be taken by the receiver only with the consent of a creditors' meeting (the creditors' committee), except for the cases specified by the present Federal Law.

**Article 106.** The External Administration Plan

**1.** Within one month after the date of his/her approval the receiver shall elaborate an external administration plan and present it to a creditors' meeting for approval.

The external administration plan shall envisage measures for restoring the debtor's solvency, the terms and procedure for implementing the measures, and expenses towards the implementation thereof and other expenses of the debtor.

The debtor's solvency shall be recognised as restored if the bankruptcy evidence established by Article 3 of the present Federal Law is lacking.

**2.** The external administration plan shall:

comply with the standards established by federal laws;

envisage a term for the restoration of the debtor's solvency;

contain a feasibility study relating to the possibility of restoring the debtor's solvency within the set term.

**3.** The external administration plan shall envisage delineation of competence between the creditors' meeting and the creditors' committee in as much as it concerns approving the transactions of the debtor, unless such a delineation was established by a creditors' meeting or if grounds exist for redistributing competence between the creditors' meeting and the creditors' committee.

**4.** At the demand of a creditors' meeting or the creditors' committee the receiver shall render a report to the creditors on the progress of external administration and the external administration plan.

**Article 107.** Considering an External Administration Plan

**1.** Consideration of the issue of approving and amending an external administration plan shall be within the exclusive competence of the creditors' meeting.

**2.** The external administration plan shall be considered by a creditors' meeting convened by the receiver within two months after the time when the receiver was approved. The receiver shall notify the bankruptcy creditors and authorised bodies of the date, time and place of the said meeting in the manner established by the present Federal Law and provide them with an opportunity for familiarising themselves with the external administration plan at

least 14 days prior to the date of the said meeting.

3. The creditors' meeting shall be entitled to adopt one of the below decisions:

to approve the external administration plan;

to dismiss the external administration plan and to file a petition with the court of arbitration for declaring the debtor bankrupt and commencing winding-up procedure;

to dismiss the external administration plan. The said decision shall include a provision for the date of next creditors' meeting intended to consider a new external administration plan, the term within which the creditors' meeting is to be convened not exceeding two months after the date of the said decision;

to dismiss the external management plan and to dismiss the receiver with an indication of the grounds for discharging the receiver stipulated by this Federal Law with simultaneously selecting the candidature of a receiver (the surname, first name and patronymic of a qualified receiver, the designation and address of the self-regulated organisation whose member he is, shall be indicated), or of the self-regulated organisation from among whose members the receiver shall be approved, and approving additional demands made on the candidature of a receiver.

4. The external administration plan approved by the creditors' meeting shall be presented to the court of arbitration within five days after the date of the creditors' meeting.

5. If within four months after the institution of external administration no external administration plan approved by a creditors' meeting has been presented to the court of arbitration and no petition has been filed by a creditors' meeting as envisaged by the present article the court of arbitration may adopt a decision to declare the debtor bankrupt and to commence the winding-up procedure.

If external administration has been instituted by the court of arbitration in the manner established by Item 6 of Article 87 of the present Federal Law and if no external administration plan approved by a creditors' meeting has been filed with the court of arbitration within two months after the institution of external administration the court of arbitration may adopt the decision to declare the debtor bankrupt and commence winding-up procedure.

6. The external administration plan may be deemed invalid in full or in part by the court of arbitration hearing the bankruptcy case, at the petition of the person(s) whose rights and legal interests have been violated. A ruling on declaring an external administration plan fully or partially invalid shall be subject to appeal.

7. The external administration plan may be amended in the manner established for the purposes of consideration of an external administration plan.

Article 108. Prolongation of the Effective Term of External Administration

1. The effective term of external administration set by a court of arbitration shall be prolonged by the court of arbitration if:

a creditors' meeting has adopted a decision to approve or amend the external administration plan, such a decision envisaging an effective term for the external administration exceeding the term originally set but not exceeding the maximum effective term of external administration;

a decision has been adopted by a creditors' meeting according to the results of the examination of the receiver's report in connection with the results of external administration, to file a petition with the court of arbitration for prolongation of the external administration by a term specified by the decision of the creditors' meeting but not exceeding the maximum term of external administration.

2. External administration shall not be prolonged by a term exceeding the aggregate term of financial rehabilitation and external administration established by Item 2 of Article 92

of the present Federal Law.

**Article 109.** Measures for Restoring the Solvency of a Debtor
The following measures may be envisaged by the external administration plan with a view to restoring the debtor's solvency:

changing the profile of the production facilities;

closing down unprofitable production facilities;

collecting accounts receivable;

selling a portion of the debtor's property;

assigning the debtor's rights of claim;

the debtor's obligations being discharged by the owner of property of the debtor being a unitary enterprise, the debtor's promoters (stockholders) or a third person or third persons;

the authorised capital of the debtor being increased at the expense of contributions of stockholders and third persons;

floating additional ordinary shares of the debtor;

selling an enterprise of the debtor;

replacing the debtor's assets;

other measures for restoring the debtor's solvency.

**Article 110.** Selling an Enterprise of a Debtor
**1.** For the purposes of the present Federal Law "an enterprise of a debtor" means a property complex intended for the pursuance of entrepreneurial activities (hereinafter also referred to as "enterprise").

**2.** The sale of an enterprise may be included in the external administration plan on the basis of a decision of the debtor's managerial body empowered according to the constitutive documents to take a decision on conclusion of relevant large-scale transactions of the debtor.

**3.** When the enterprise is being sold alienation shall extend to all types of property intended for the pursuance of entrepreneurial activities, for instance, land plots, buildings, houses, installations, equipment, implements, raw materials, products, things in action, and also rights to the means of individualisation of the debtor, the debtor's products (works and services) (commercial designation, trademarks and service marks) and other exclusive rights belonging to the debtor, except for the rights and duties that cannot be assigned to other persons.

When the enterprise is being sold in accordance with the present article the debtor's money obligations and compulsory payments shall not be included in the composition of the enterprise, except for the debtor's obligations that have come into being after the acceptance of the application for deeming the debtor bankrupt, and may be assigned to the buyer of the enterprise in the procedure and on the terms established by the present Federal Law.

**4.** The sale of the enterprise shall be carried out in the procedure established by the present Federal Law by means of a public sale in the form of an auction, except for the property which according to the legislation of the Russian Federation is sold out by tender.

The sale of the enterprise shall be done by means of a public sale, except for cases when the composition of the enterprise includes property which is according to the legislation of the Russian Federation is deemed restricted-transaction property. In this case the sale of the enterprise shall be carried out by means of a closed sale open only to the persons which under a federal law are entitled to own or otherwise possess the restricted-transaction property.

When a cultural heritage item (a monument of history and culture) of the peoples of the Russian Federation is being sold out the conditions sine qua non of the tender also include buyers' obligation to observe the restrictions imposed according to Federal Law No. 73-FZ of

June 25, 2002 on Cultural Heritage Items (Monuments of History and Culture) of the Peoples of the Russian Federation on the use of the given cultural heritage item, the requirements governing its preservation, content and use, the provision of access to the given cultural heritage item, the preservation of its appearance and interior (if the interior is the subject matter of protection), the observance in respect of the given item of the requirements set out in the protection document, the observance of the special regime of using lands within the protection zone of the given cultural heritage item and the conclusion of a contract for observance of said requirements.

A tender for the sale of an enterprise incorporating a cultural heritage item (monument of history and culture) of the peoples of the Russian Federation shall be conducted in the procedure established by the legislation of the Russian Federation on the privatisation of state and municipal property for the purpose of selling out cultural heritage items (monuments of history and culture) of the peoples of the Russian Federation by tender. A contract of the purchase/sale of such enterprise shall meet the requirements applicable to a contract of purchase/sale of a cultural heritage item (monument of history and culture) of the peoples of the Russian Federation established by the legislation of the Russian Federation on the privatisation of state and municipal property.

In case of sale of object of the agreement on public-private partnership or municipal-private partnership, the obligatory term of the tender shall be fulfillment by the buyer of obligations of the private partner not fulfilled by it by the moment of holding of the tender, on the basis of data on obligations under the agreement on public-private partnership or municipal-private partnership actually fulfilled by the private partner by such moment. Participants of the tender for sale of object of the agreement on public-private partnership or municipal-private partnership shall meet the requirements of the legislation of the Russian Federation on public-private partnership and municipal-private partnership and the tender documentation approved for holding of tenders for the right to conclude the agreement on public-private partnership or municipal-private partnership.

If objects of the agreement on public-private partnership or municipal-private partnership were not sold using the procedure set by this Article, such objects shall be transferred to the public partner that is a party to the agreement on public-private partnership or municipal-private partnership in accordance with this Article, on condition of reimbursement of expenses of the private partner and/or the sponsor incurred in accordance with the direct agreement, the amount of which is reduced by the amount of the loss inflicted to the public partner and third parties in relation to non-fulfillment of its obligations by the private partner.

**5.** The sale of the enterprise shall be carried out by auction, unless the buyer must comply with certain terms in respect of this enterprise.

The participant that has offered the highest price for the enterprise put up for sale shall be deemed to have won the auction (hereinafter referred to as "the winner in the auction").

The sale of the enterprise shall be done by tender if in respect of the enterprise the buyer must observe the terms established by a decision of a meeting of creditors or the creditors' committee in accordance with the legislation of the Russian Federation (hereinafter referred to as "the terms of the tender").

The participant that has offered the highest price of the enterprise put up for sale shall be deemed to have won the tender, provided the participant observes the terms of the tender (hereinafter referred to as "the winner in the tender").

**5.1.** Within thirty working days as from the date of inclusion of data on the results of an inventory check of the debtor's property to the Comprehensive Federal Register of Data on Bankruptcy the bankruptcy creditor or an authorised body are entitled, if the rate of claim of the bankruptcy creditor or the rate of claim of the authorised body exceeds two per cent of the total amount of the claims of bankruptcy creditors and authorised bodies included in the

register of creditors' claims, to send to the receiver a demand to recruit an appraiser citing the property to be appraised.

Within two months as from the date of receiving such claim the receiver is bound to ensure the appraisal of the cited property on account of the debtor's property.

If the debtor's monetary assets are insufficient for conducting the property's appraisal on demand of the bankruptcy creditor or authorised body, the receiver shall notify thereof the person that has raised the corresponding claim within two working days as from the date when it is received. On such occasion, the property shall be appraised, if the bankruptcy creditor or authorised body that has raised the claim for the property's appraisal remit onto the debtor's account monetary assets to make payment for the appraiser's services in the amount of the cost of them. On the basis of the results of sale of the debtor's enterprise (property) the cited monetary assets are subject to repayment to the bankruptcy creditor or authorised body in the order established by Item 2 of Article 134 of this Federal Law.

A report on the appraisal of the debtor's property is subject to inclusion by the receiver to the Comprehensive Federal Register of Data on Bankruptcy within two working days as from the date of receiving a copy of this report in electronic form.

A repeated appraisal of the property of the debtor in respect of which a claim has been earlier raised for making an appraisal in compliance with this item shall be made if the bankruptcy creditor or authorised body defray the cost of making such appraisal.

**6.** The initial selling price of the enterprise shall be fixed by a decision of a meeting of creditors or of the creditors' committee subject to the market price of the debtor's property determined in compliance with an appraiser's report, if such appraisal has been conducted on demand of the bankruptcy creditor or authorised body in compliance with this Federal Law.

**7.** In a sale of an enterprise a closed form of bidding may be used to offer price for the enterprise (bids offering a price for the enterprise are submitted simultaneously with participation applications and they cannot be disclosed before bidding is started) or an open form of bidding to offer a price for the enterprise (bids offering a price for the enterprise are announced openly by participants in bidding).

The sale of the enterprise is conducted in an electronic form.

**7.1.** A receiver shall hand in to a meeting of creditors or to the creditors' committee for approval proposals for the sale of the debtor's enterprise, incorporating information on the enterprise, on its composition and its characteristics, on the time terms for its sale and on the form of the bidding (an auction or a competition), on the terms of the competition (if the sale of the enterprise is carried out in conformity with the legislation of the Russian Federation by way of holding a competition), on the form of handing in proposals for the price of the enterprise, on the starting price of its sale, in the mass media and on Internet sites where it is suggested to publish and place a communication on the sale of the enterprise, and on the time terms fixed for the publication and placement of said communication.

The offer to sell the debtor's enterprise shall be presented for endorsement to a meeting of creditors or to a creditors' committee after including a report on the appraisal of the debtor's property into the Unified Federal Register of Data on Bankruptcy, if such appraisal has been conducted at the request of the bankruptcy creditor or authorised body in compliance with this Federal Law.

If at the time fixed by the external management plan or within two months as from the date of presenting by the receiver to a meeting of creditors or to a creditors' committee offers to sell the debtor's enterprise (if the external management plan does not fix the time for endorsement) a meeting of creditors or a creditors' committee does not endorse data on the enterprise, on the time for its sale, on the form of sales, on the terms of a tender (if the enterprise is to be sold by way of holding a tender in compliance with the legislation of the Russian Federation), on the form of bidding as regards the enterprise, on the initial selling

price thereof, on the mass media and Internet sites where it is planned accordingly to publish and insert an announcement of the enterprise's sale, on the time of publishing and inserting the cited announcement, the external receiver is entitled to file with an arbitration court a petition for endorsement of the procedure for, time and terms of sale of the debtor's enterprise.

A ruling of an arbitration court on endorsement of the procedure for, time and terms of selling the debtor's enterprise may be appealed against.

Appealing against an appraisal report drawn up as provided for by Item 5.1 of this article shall not serve as a ground for suspension of sales.

**8.** As the trade organiser shall come out a receiver or a specialised organisation invited for this purpose, the services of which shall be remunerated at the expense of funds of the debtor's enterprise. This organisation shall not be an interested person with respect to the debtor, the creditors or the receiver.

The organiser of the sale shall carry out the following functions:

publish and place an announcement of the fact that the enterprise is put up for sale and an announcement of the results of the sale;

accept participation applications and bids offering a price for the enterprise;

conclude earnest money contracts with applicants;

designate participants in the sale;

conduct the sale if the open form of bidding is used to offer a price for the enterprise;

designate the winner in the sale and sign minutes on the results of the sale;

notify the applicants and participants in the sale of the results of the sale.

The amount of earnest money for participation in the sale shall be set by the receiver, and it shall not exceed 25 per cent of the initial selling price for the enterprise.

The term for filing participation applications for the sale shall not be less than 25 business days after the publication and placement of the announcement of the sale.

**9.** No later than 30 days before the date of holding the bidding, its organiser is obliged to publish a communication on the sale of the enterprise in accordance with the procedure, established in Article 28 of the present Federal Law, and in a printed edition at the place of the debtor's stay.

The announcement of the sale of the enterprise shall contain the following:

information on the enterprise, its composition and characteristics, a description of the enterprise and a procedure for getting acquainted with the enterprise;

information on the form of the sale and the form of bidding;

participant qualification requirements if the sale is a closed one;

the terms of tender if the sale is conducted in the form of tender;

the procedure for, the place of, the term for, and the time of, submission of participation applications and bids (the date and time of commencement and termination of submission of said applications and bids. In the event of holding the sale of an enterprise with the use of a public form of bidding, the end time of bidding shall not be fixed);

the procedure for completing formalities for participation in the sale, a list of the documents to be filed by participants and the requirements applicable to the form thereof;

the amount of earnest money, the term and procedure for depositing earnest money, the details of the accounts into which earnest money is to be paid;

the initial selling price of the enterprise;

bidding increment value for increasing the initial selling price of the enterprise ("auction step") if the public form of bidding is used to offer a price for the enterprise;

the procedure and criteria for selecting the winner in the sale;

the date, time and place of drawing up the results of the sale;

Paragraph 13 is abrogated;

the procedure and term for conclusion of a contract of purchase/sale of the enterprise;

the term for payments and the details of the accounts into which payments are to be made;

information on the organiser of the sale, its postal address, email address and contact phone number.

During preparation for the sale of the enterprise the organiser of the sale shall accept participation applications and bids of participants in the sale offering a price for the enterprise and also conclude earnest money contracts.

A draft contract for the purchase and sale of an enterprise and an earnest money contract with the electronic signature of the sale organizer shall be inserted in the Unified State Register of Information on Bankruptcy, without its publication in an official edition.

**11.** A participation application for the sale shall meet the requirements which are established in accordance with the present Federal Law and mentioned in the announcement of the sale, and it shall be drawn up as an electronic document.

A participation application for the sale shall be drawn up in an arbitrary form in writing in the Russian language, and it shall contain the following details specified in the announcement of the sale:

the name, organisational legal form, location and postal address (for a legal entity) of the applicant;

the surname, first name and patronymic, passport details and residence details (for a natural person) of the applicant;

the contact phone number and e-mail address of the applicant.

A participation application for the sale shall also contain information on the applicant's having or not having an interest in respect of the debtor, the creditors and the receiver and on the nature of such interest, information on an interest of the receiver in the applicant's capital, and also information on the self-regulating organisation of qualified receivers in which the receiver is member or head.

If the closed form of bidding is used to offer a price for the enterprise, a participation application for the sale may contain a bid that is not subject to disclosure before the commencement of the sale.

Copies of the following documents shall attached to the participation application for the sale:

an excerpt from the comprehensive state register of legal entities (for a legal entity), an excerpt from the comprehensive state register of individual entrepreneurs (for an individual entrepreneur), identification documents (for a natural person), an appropriately-attested Russian translation of documents on the state registration of the legal entity or the state registration of the natural person as an individual entrepreneur under the legislation of the relevant state (for a foreign entity/person);

a document confirming the powers of a person to commit actions on behalf of the applicant.

In the event of a closed sale, a participation application for the sale shall be filed with the documents confirming that the applicant meets the qualifications established in respect of a participant in the sale in accordance with the legislation of the Russian Federation in respect of restricted-transaction property and mentioned in the announcement of the sale.

In the event of a tender, a participation application for the tender shall contain the applicant's undertaking to observe the terms of the tender.

A bid for the sale submitted to the organiser of the sale shall be registered in the book of participation applications for the sale including the serial number as well as the date and exact time of submission thereof.

An acknowledgement of registration of a participation application for the sale shall be

also sent to the applicant in the form of an electronic document on the date of registration of the application to the applicant's e-mail address cited therein.

The documents attached to a participation application shall be filed in the form of electronic documents with the applicant's electronic signature.

The organiser of the sale shall ensure the non-disclosure status of information and the offers contained in the participation applications filed for the sale or the bids offering a price for the enterprise until the commencement of the sale or until the time when access is opened to the bids filed for the sale in the form of electronic documents.

An applicant is entitled to modify or withdraw its participation application for the sale at any time before the expiry of the term for filing participation applications for the sale.

**12.** A decision of the organiser of the sale on clearing applicants for participation in bidding shall be taken on the results of consideration of the participation applications submitted for the sale, and it shall be formalised by means of minutes designating participants in the sale.

The following shall be cleared for participating in the sale: the applicants that have submitted participation applications for the sale and the documents attached thereto which comply with the requirements established by the present Federal Law and mentioned in the announcement of the sale. The applicants cleared for taking part in the sale shall be deemed bidders.

A decision on refusal to clear an applicant for participation in bidding shall be taken if:

the participation application for the sale does not meet the requirements established in accordance with the present Federal Law and mentioned in the announcement of the sale;

the documents filed by the applicant do not comply with the requirements established for them or are not reliable;

no acknowledgement has been received as of the date of drawing up of the minutes whereby bidders are designated as concerning the receipt of earnest money into the accounts specified in the announcement of the stale.

The organiser of the sale shall notify all applicants of the results of consideration of the participation applications submitted for the sale and of the applicant's being deemed or not being deemed bidders, by means of sending copies in writing or in the form of an electronic document of the minutes whereby bidders are designated to the applicants within five days after the day on which the minutes are signed.

A decision on deeming or refusal to deem an applicant bidder is subject to appeal in the procedure established by the legislation of the Russian Federation.

**13.** If in the course of the sale the public form of bidding is used to offer a price for the enterprise the organiser of the sale shall conduct an auction during which bids are made by participants in the sale publicly in the course thereof.

The auction shall be conducted by means of increasing the initial selling price by the "auction step" set by the organiser of the sale at five to ten per cent of the initial price and is indicated in the announcement of the sale.

If before the third announcement of the last bid neither of the participants in the sale declares its/his/her intent to offer a higher price the auction shall be terminated, and the highest bidder in the auction shall be deemed the winner, the highest price being the one called out last by the organiser of the auction.

If in the course of the sale the closed form of bidding is being used to offer a price for the enterprise then bids offering a price for the enterprise shall be presented by participants in the sale simultaneously with their participation applications for the sale or on the day when the results of the sale are being drawn up before the sale deadline indicated in the announcement of the sale.

The bids presented by participants in the sale to offer a price for the enterprise shall be

announced in public by the organiser of the sale on the date and at the time and place specified in the announcement of the sale.

The organiser of the sale shall examine the bids of the participants in the sale offering a price for the enterprise and select the winner in the sale. If two or more bids filed by participants in the sale offer the same price for the enterprise the winner in the sale shall be the one that has submitted its/his/her participation application for the sale before the other participants.

14. The organiser of the sale shall provide equal access for all persons to the sale, for instance, to information on the conduct of the sale, and ensure the persons' right to participant in the sale without their being charged with the payments for which there is no provision in the present Federal Law.

For the purpose of conducting the sale the organiser of the sale shall use information systems which ensure:

unfettered and free-of-charge access to information on the conduct of the sale and on the rules for operation involving the use of such system;

the right to take part in the sale free-of-charge;

the possibility of submitting a participation application for the sale and the documents attached thereto as well as copies thereof in the form of electronic documents;

the storage and processing in electronic form of participation applications for the sale and the other documents submitted by applicants through the use of cryptographic data protection means certified in the procedure established by the legislation of the Russian Federation;

the protection of the information (participation applications and other documents) provided by applicants, for instance, the preservation of that information, the prevention of information deletion and its unauthorised modification and copying;

the creating, processing, storing and presenting of information and documents in electronic form, for instance, minutes of the commission on the results of the sale;

the uninterrupted operation of such systems and access thereto for users, for instance, applicants within the entire term of the sale.

15. A decision of the organiser of the sale on selecting the winner in the sale shall be taken on the day when the results of the sale are being drawn up, and it shall be formalised by means of minutes on the results of the sale containing the following:

the name and location (for a legal entity) or the surname, first name, patronymic and residential address (for a natural person) of each participant in the sale;

the bids of each participant in the sale offering a price for the enterprise, if the closed form of bidding is used to offer a price for the enterprise;

the results of consideration of the bids submitted by participants in the sale to offer a price for the enterprise;

the name and location (for a legal entity) or the surname, first name, patronymic and residential address (for a natural person) of the participant in the sale who has offered the highest price for the enterprise as compared with the bids of other participants in the sale, except for the bid of the winner in the sale (if the closed form of bidding is used to offer a price for the enterprise) or the participant in the sale who did the last but one bid during the auction (if the public form of bidding is used to offer a price for the enterprise);

the name and location (for a legal entity) or the surname, first name, patronymic and residential address (for a natural person) of the winner in the sale;

a substantiation for the decision taken by the organiser of the sale to deem a participant in the sale the winner.

The organiser of the sale shall notify all the participants in the sale of the results of the sale by means of sending thereto the minutes on the results of the sale in the form of an

electronic document at the latest on the working day following the date when such minutes are signed to the e-mail address cited in a participation application for the sale.

The decision on deeming a participant in the sale the winner is subject to appeal in the procedure established by the legislation of the Russian Federation.

The earnest money amounts deposited by the applicants shall be refunded to all the applicants, except for the winner in the sale, within five business days after the day on which the minutes on the results of the sale were signed.

Within 15 working days after the signing of the minutes on the results of the sale or after the date of the decision on deeming the sale unaccomplished the organiser of the sale shall promulgate an announcement of the results of the sale in an official edition in the procedure established by Article 28 of the present Federal Law and place on the internet website of that official edition, in masse media at the place where the debtor is located and in the other mass media used to publish the announcement of the sale. If the sale is deemed accomplished an indication shall be made in that information announcement of the winner in the sale, including information on the existence or lack of an interest of the winner in the sale in respect of the debtor, the creditors and the receiver and on the nature of that interest, information on an interest of the receiver in the capital of the winner in the sale, on the self-regulating organisation of qualified receivers in which the receiver is member or head, and also information on the price offered by the winner for the enterprise.

**16.** Within two business days after the signing of the minutes on the results of the sale the organiser of the sale shall send copies of the minutes to the winner in the sale and the receiver. Within five days after the signing of the minutes the receiver shall send an offer to the winner in the sale to conclude a contract of purchase/sale of the enterprise together with a draft contract in accordance with the price offered by the winner in the sale for the enterprise.

If the winner in the sale refuses or evades to sign the contract within five days after the receipt of said offer of the receiver the earnest money amount deposited shall not be refunded thereto and the receiver shall be entitled to make a proposal for conclusion of the contract of purchase/sale of the enterprise to the participant in the sale that has offered the highest price for the enterprise as compared with the other participants in the sale, except for the winner in the sale.

**17.** If no participation applications have been submitted for the sale or only one participant has been cleared for bidding the organiser of the sale shall take a decision on deeming the sale unaccomplished.

If only one participant has been cleared for bidding, with its/his/her participation application for the sale meeting the terms of the sale (if the sale is carried out in the form of a tender) or contains a bid offering a price for the enterprise not below the initial selling price of the enterprise set then a contract of purchase/sale of the enterprise shall be concluded by the receiver with this bidder in accordance with the terms of the sale (if the sale is carried out in the form of a tender) or with the offer of a price for the enterprise it/he/she has offered.

**18.** If the sale is deemed unaccomplished and if no contract of purchase/sale is concluded with the sole bidder and also if no contract of purchase/sale of the enterprise is concluded according to the results of the sale the receiver shall do the following within two days after the expiry of the term set by the present Federal Law for taking decisions on deeming the sale unaccomplished, for concluding a contract of purchase/sale of the enterprise with the sole bidder, for concluding a contract of purchase/sale of the enterprise according to the results of the sale: taking a decision on conducting a repeated sale and on setting an initial selling price of the enterprise. The repeated sale shall be carried out in the procedure established by the present Federal Law. The initial selling price of the enterprise in the repeated sale shall be set at ten per cent lower than the initial selling price of the enterprise set according to the present Federal Law in the initial sale.

**19.** The sale of the enterprise shall be made formal by means of a contract of purchase/sale of the enterprise concluded by the receiver with the winner in the sale.

The terms and conditions sine qua non of the contract of purchase/sale of the enterprise are as follows:

information on the enterprise, its composition and characteristics and a description of the enterprise;

the selling price of the enterprise;

the procedure and term for transferring the enterprise to the buyer;

the terms according to which the enterprise is acquired and the buyer's undertaking to comply with these terms (if the enterprise is sold by tender);

information on the existence or lack of an encumbrance on the enterprise, including without limitation a public easement;

the other terms and conditions envisaged by the legislation of the Russian Federation.

When the enterprise is being sold payment according to the contract of purchase/sale of the enterprise shall be effected by the buyer within 30 days after the date of signing of the contract.

The delivery of the enterprise by the receiver and the acceptance thereof by the buyer shall be carried out through the use of certificate of acceptance signed by the parties and drawn up in accordance with the legislation of the Russian Federation.

Proceeds from the sale of the enterprise shall be included in the property of the debtor.

**20.** For the purpose of conducting a sale in electronic form for selling property or an enterprise of a debtor in the course of the proceedings applicable in a bankruptcy case a qualified receiver or an organiser of trade shall conclude a contract for the sale with an electronic marketplace operator that meets the requirements established by the present Federal Law.

For the purposes of the present Federal Law "the operator of an electronic marketplace" means any legal entity irrespective of its organisational legal form, form of ownership, location and the place of origin of capital or a natural person in the capacity of an individual businessman which have undergone state registration in the established procedure on the territory of the Russian Federation, conduct trading in electronic form in keeping with the present Federal Law and are members of a self-regulating organisation of operators of electronic marketplaces.

For the purpose of conducting the sale in electronic form an electronic marketplace operator shall have a website on the Internet used to carry out trading in electronic form (hereinafter referred to as "electronic marketplace").

The procedure for conducting trading in electronic form, the requirements applicable to electronic marketplace operators, and to electronic marketplaces, including, inter alia, the technological, software, linguistic, legal and organisational facilities required for a sale in electronic form of property or an enterprise of debtors in the course of the proceedings applicable in a bankruptcy case shall be endorsed by the regulator.

**Article 111. The Sale of a Part of the Debtor's Property**

**1.** Where it is envisaged by the external management plan, after the completion of an inventory check, as well as after appraising the debtor's property, if such appraisal has been conducted on demand of the bankruptcy creditor or authorised body in compliance with this Federal Law, the receiver is entitled to start selling part of the debtor's property.

**2.** The sale of the part of the debtor's property shall not cause the impossibility for the debtor to pursue its economic activities.

The sale of the part of the debtor's property shall be carried out in the procedure established by Items 4-19 of Article 110 of the present Federal Law with due regard to the

details established by the present article.

**3.** The following is subject to a sale conducted in an electronic form:
immovable property;
securities;
property rights;
mortgaged property;
items of historical or artistic value;
a thing whose market value exceeds 500,000 roubles, for instance, an indivisible thing, a complex thing, the main thing and a thing relating to it as it has a common intended purpose (belonging).

The regulator may define other types of property (including property rights) subject to a compulsory sale carried out in an electronic form.

**4.** Paragraph 1 is abrogated.

A part of the debtor's property whose balance-sheet value as of the last accounting date preceding the date of confirmation of the external administration plan is below 100,000 roubles shall be sold in the procedure established by the external administration plan.

**5.** The provisions of the present article do not extend to the cases of sale of a part of the debtor's property which is products manufactured by the debtor in the course of its economic activities.

**Article 111.1.** The Self-Regulating Organisation of Electronic Marketplace Operators

**1.** The following shall be recognised as a self-regulating organisation of electronic marketplace operators: a membership-based non-profit organisation that meets the requirements established by Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations and the present Federal Law, has been formed for the purposes of developing and regulating the activities of electronic marketplace operators and about which information has been included in the state register of self-regulating organisations of electronic marketplace operators.

A non-profit organisation shall acquire the status of a self-regulating organisation of electronic marketplace operators from the date on which information about it is entered in the state register of self-regulating organisations of electronic marketplace operators.

The rights and duties of a self-regulating organisation of electronic marketplace operators, the principles and procedure for its pursuing its activities, the requirements applicable to the bodies of the self-regulating organisation of electronic marketplace operators and its in-house documents are established by Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations, with account being taken of the details envisaged by the present Federal Law.

**2.** The ground for inclusion of information about a non-profit organisation in the state register of self-regulating organisations of electronic marketplace operators shall be its meeting the following mandatory requirements:

1) the non-profit organisation has as its members at least 10 entrepreneurs (individual businessmen and/or legal entities) which conduct trading in electronic form, meet the requirements applicable to electronic marketplace operators established in accordance with Items 14 and 20 of Article 110 of the present Federal Law and the conditions for members in the self-regulating organisation of electronic marketplace operators endorsed by that self-regulating organisation;

2) at least 50 per cent of the members of the non-profit organisation have a record of conducting trading in electronic form for the sale of debtors' property or enterprise in the

course of the proceedings applicable in a bankruptcy case of at least two years after the date of publication of the first minutes on the results of conducting a sale by means of their being included in the Unified Federal Register of Information on Bankruptcy;

3) the total number of the sales in electronic form which have been conducted by all members of the non-profit organisation and have been completed, for instance by means of public tender, for selling debtors' property or enterprise in the course of the proceedings applicable in a bankruptcy case as confirmed on the basis of information included the Unified Federal Register of Information on Bankruptcy concerning the sales is at least 5,000;

4) the availability of the following documents confirmed by the self-regulating organisation of electronic marketplace operators:

rules for admission for membership in that self-regulating organisation and for termination of membership therein;

terms for membership in that self-regulating organisation;

standards and rules governing the professional activities of electronic marketplace operators of conducting trading in electronic form which are binding on all members of that self-regulating organisation (hereinafter referred to as "standards and rules of professional activities of electronic marketplace operators);

professional ethics rules for electronic marketplace operators;

a list of disciplinary measures, a procedure and grounds for the application thereof to members of that self-regulating organisation if they violate the legislation of the Russian Federation, the standards and rules of the professional activities of electronic marketplace operators or conditions for membership in that self-regulating organisation;

requirements applicable to the disclosure of information on the activities of the self-regulating organisation and its members;

5) the availability of a compensation fund of the self-regulating organisation of electronic marketplace operators which is maintained with the dues of its members for the purposes of securing the property liabilities of the members of that self-regulating organisation for compensation or damages caused to third persons in the course of electronic trading in connection with an electronic marketplace operator's default on, or the improper observance of, the requirements established by the legislation of the Russian Federation and the standards the standards and rules of the professional activities of electronic marketplace operators.

**Article 111.2.** Membership in a Self-Regulating Organisation of Electronic Marketplace Operators

**1.** Below are the conditions sine qua non for the membership of an electronic marketplace operator in a self-regulating organisation of electronic marketplace operators:

1) the electronic marketplace operator and the electronic marketplace used by it to conduct trading in electronic form, including, inter alia, the technological, software, linguistic, legal and organisational facilities required for trading in electronic form for the sale of debtors' property or enterprise in the course of the proceedings applicable in a bankruptcy case meet the requirements established in accordance with Items 14 and 20 of Article 110 of the present Federal Law;

2) the electronic marketplace operator meets the conditions for membership in the self-regulating organisation of electronic marketplace operators which have been endorsed by that self-regulating organisation;

3) the electronic marketplace operator has a contract of compulsory insurance of liability that meets the requirements established by the present article;

4) the electronic marketplace operator pays the dues established by that self-regulating organisation, and also dues to its compensation fund.

**2.** Apart from the requirements envisaged by the present article the self-regulating organisation of electronic marketplace operators may establish as conditions for membership in it other professional requirements applicable to the qualifications, competence and independence of an electronic marketplace operator and its employees.

**3.** Within the period of membership in a self-regulating organisation of electronic marketplace operators an electronic marketplace operator shall meet the conditions for membership in it which are established by that self-regulating organisation in accordance in accordance with the present article. The procedure for confirmation that an electronic marketplace operator meets the conditions for membership in a self-regulating organisation of electronic marketplace operators shall be established by that self-regulating organisation.

A member of a self-regulating organisation of electronic marketplace operators that does not meet the conditions established for membership in it shall be expelled from among its members in accordance with the procedure established by that self-regulating organisation for termination of membership in it.

**4.** A self-regulating organisation of electronic marketplace operators on the basis of the requirements established in accordance with Items 14 and 20 of Article 110 of the present Federal Law as applicable to electronic marketplace operators, electronic marketplaces, inter alia, including technological, software, linguistic, legal and organisational facilities required for conducting trading in electronic form for the sale of debtors' property or enterprise in the course of the proceedings applicable in a bankruptcy case, and also the other conditions for membership in it endorsed by that self-regulating organisation shall define a list of the documents to be filed by the persons seeking admittance for membership in self-regulating organisation and the provisions governing the drawing up of these documents.

Within 30 days after the date of filing of an application for membership in the self-regulating organisation of electronic marketplace operators and the other documents envisaged by said documents a general meeting of members of that self-regulating organisation shall consider the documents filed and if the person that has filed them and the electronic marketplace used for trading in electronic form meet the requirements envisaged by the present article, for instance the conditions established by that self-regulating organisation for membership in it shall take a decision on admittance of such person as member.

**5.** A decision on admittance of a person as a member of a self-regulating organisation of electronic marketplace operators shall enter into force from the date on which the person submits to the self-regulating organisation documents confirming that the person has concluded a contract of compulsory insurance of liability that meets the requirements established by the present Federal Law and paid the dues established by that self-regulating organisation, for instance dues to a compensation fund.

If the person in respect of which the decision on admittance as a member in the self-regulating organisation of electronic marketplace operators has been taken defaults on meeting said requirements within two months after the date of that decision it shall be deemed cancelled.

**6.** Information on a person that has been admitted as a member in a self-regulating organisation of electronic marketplace operators shall be included in the register of members of the self-regulating organisation within three working days after the entry into force of the decision on admittance of such person as a member in the self-regulating organisation.

**7.** If the person that has filed an application for admittance as a member in a self-regulating organisation of electronic marketplace operators does not meet the requirements established by the conditions for membership in it a general meeting of members of that self-regulating organisation shall take a decision on refusal to admit such person as a member in the self-regulating organisation with an indication of the reason for the refusal, which shall be sent to such person within 10 working days after the date of this

decision.

**8.** The membership of an electronic marketplace operator in a self-regulating organisation of electronic marketplace operators shall be terminated by a decision of a general meeting of its members on an application of the electronic marketplace operator for opting out of the self-regulating organisation or in the case of expulsion of the electronic marketplace operator from that self-regulating organisation in connection with its breach of:

1) the conditions for membership in the self-regulating organisation;

2) the provisions of the present Federal Law, other federal laws, other normative legal acts of the Russian Federation, standards and rules of professional activities of electronic marketplace operators.

**9.** If legal proceedings have been instituted in respect of the electronic marketplace operator that has filed an application for opting out of a self-regulating organisation of electronic marketplace operators in a case of imposition of a disciplinary sanction on it then a decision on termination of membership in electronic marketplace operator shall be taken after the completion of the proceedings instituted in respect thereof and the imposition of the defined disciplinary sanction on the electronic marketplace operator.

The membership of an electronic marketplace operator in a self-regulating organisation of electronic marketplace operators shall be terminated from the date of inclusion of an entry on termination of membership of the electronic marketplace operator in the register of members of that the self-regulating organisation.

**10.** Disputes relating to the conducting of trading in electronic form by an electronic marketplace operator for the sale of debtors' property or enterprise in the course of the proceedings applicable in a bankruptcy case, and also disputes relating to the relations of an electronic marketplace operator with the self-regulating organisation of electronic marketplace operators of which it is a member shall be resolved in the judicial procedure.

**Article 111.3.** The Managerial Bodies and Specialised Bodies of a Self-Regulating Organisation of Electronic Marketplace Operators

**1.** The structure of, the procedure for the formation of, and the term of powers of, the managerial bodies of a self-regulating organisation of electronic marketplace operators, and the procedure for said bodies to take decisions shall be established by the charter and in-house documents of that self-regulating organisation in accordance with the present Federal Law and other federal laws.

**2.** The general meeting of members of the self-regulating organisation of electronic marketplace operators is the supreme managerial body of that self-regulating organisation authorised to consider the issues placed within its competence by the present Federal Law, other federal laws and the charter of that self-regulating organisation.

A general meeting of members of the self-regulating organisation of electronic marketplace operators shall be convened at least once a year in the procedure established by its charter.

**3.** Apart from the issues envisaged by Article 16 of Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations the competence of the general meeting of members of the self-regulating organisation of electronic marketplace operators encompasses the following issues:

1) establishing conditions for membership in that self-regulating organisation, a procedure for admittance as a member and a procedure for termination of membership in it, a procedure for confirmation of the compliance of an electronic marketplace operator with the conditions for membership in the self-regulating organisation;

2) taking decisions on admittance as a member in the self-regulating organisation and on termination of membership in it;

3) establishing a procedure for consideration of the cases of imposition of disciplinary sanctions on members of the self-regulating organisation;

4) establishing a procedure for consideration of complaints against actions of members of the self-regulating organisation;

5) establishing the rate of membership dues, and a procedure for the payment thereof;

6) taking decisions on additional property contributions of members of the self-regulating organisation and on the creation of ad hoc funds.

**4.** The general meeting of members of the self-regulating organisation of electronic marketplace operators has the authority to take the decisions placed within its competence, if attended by over 50 per cent of the total number of the self-regulating organisation's members.

Decisions of the general meeting of members of the self-regulating organisation of electronic marketplace operators shall be taken by a majority of votes of the votes of the self-regulating organisation's members attending its general meeting, or if it is conducted by absentee voting by a majority of the votes of the total number of votes of the members of the self-regulating organisation.

Decisions on the issues envisaged by Items 1, 4, 5, 8 and 9 of Part 3 of Article 16 of Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations and Subitems 1 and 2 of Item 3 of the present article shall be taken by the majority of two thirds of the votes of the total number of votes of the members of the self-regulating organisation of electronic marketplace operators attending the general meeting of its members, and shall not be placed by the charter of a non-profit organisation within the competence of other managerial bodies of the self-regulating organisation.

**5.** A collective managerial body shall be set up in the self-regulating organisation of electronic marketplace operators, the number of the members thereof being established by the charter of the self-regulating organisation. Independent members shall not make up over 25 per cent of the number of members of the collective managerial body. No state or municipal employees shall be among the members of the collective managerial body.

**6.** The following issues fall within the competence of the collective managerial body of the self-regulating organisation of electronic marketplace operators:

1) endorsing standards and rules of professional activities of electronic marketplace operators, and amending said standards and rules;

2) endorsing rules for monitoring the observance by members of the self-regulating organisation of the provisions of the present Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of professional activities of electronic marketplace operators;

3) setting up specialised bodies of the self-regulating organisation, endorsing regulations on these bodies and rules for them to pursue their activities;

4) appointing an audit organisation for carrying out verification of the bookkeeping, for instance the financing (accounting) statements, of the self-regulating organisation, taking decisions on conducting verification of the activities of the executive body of the self-regulating organisation;

5) introducing to the general meeting of members of the self-regulating organisation nominee(s) for appointment to the position of sole executive body of the self-regulating organisation;

6) establishing qualification requirements applicable to the head of the body monitoring the activities of the members of the self-regulating organisation;

7) presenting a recommendation to the general meeting of members of the self-regulating organisation for expulsion of a member of the self-regulating organisation.

**7.** The competence of the sole executive body of the self-regulating organisation of

electronic marketplace operators encompasses the issues of economic and other activities of the self-regulating organisation which do not fall within the competence of the general meeting of the self-regulating organisation and its collective managerial body, including, inter alia, the taking of decisions on imposition of disciplinary sanctions on a member of the self-regulating organisation such as a direction whereby the member of the self-regulating organisation is obligated to eliminate discovered irregularities and a term is set for the elimination thereof, and a warning.

**8.** The following bodies shall be formed by the self-regulating organisation of electronic marketplace operators for the purpose of ensuring the realisation of the rights and duties defined by the present Federal Law:

1) a body for consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation;

2) a body monitoring the observance by members of the self-regulating organisation of the provisions of federal laws, other normative legal acts of the Russian Federation, standards and rules of professional activities of electronic marketplace operators.

**9.** The body for consideration of cases of imposition of disciplinary sanctions on members of the self-regulating organisation of electronic marketplace operators shall consider the cases of breach by members of the self-regulating organisation of the provisions of federal laws, other normative legal acts of the Russian Federation, standards and rules of professional activities of electronic marketplace operators and imposition of disciplinary sanctions and send proposals to the managerial bodies of the self-regulating organisation for imposition of the following disciplinary sanctions on its members:

1) issuing a direction whereby a member of the self-regulating organisation is obligated to eliminate discovered irregularities and a term is set for the elimination thereof;

2) issuing a warning to a member of the self-regulating organisation;

3) imposing a fine on a member of the self-regulating organisation at the rate set by its in-house documents;

4) giving a recommendation for expulsion of a member of the self-regulating organisation, to be considered by its collective managerial body;

5) the other measures established by in-house documents of the self-regulating organisation.

**10.** The results of consideration of complaints against actions of a member of the self-regulating organisation of electronic marketplace operators (inter alia, complaints concerning the member's breach of the procedure for trading in electronic form relating to a breach of the procedure established by the legislation of the Russian Federation for placing information about a sale in electronic form, the procedure for filing applications for participation in the sale, infringement on the rights or lawful interests of a person as a result of a breach by an electronic marketplace operator of the procedure for trading in electronic form) and the decisions whereby one is obligated to eliminate discovered irregularities and a term is set for the elimination thereof and which are taken in respect of a member of the self-regulating organisation are subject to placement on the website of the self-regulating organisation on the Internet within 14 working days after the date of the relevant decision.

Appeal may be taken from decisions of the collective managerial body and of the sole executive body of the self-regulating organisation of electronic marketplace operators on the imposition disciplinary sanctions on a member of the self-regulating organisation to the general meeting of members of the self-regulating organisation or to the collective managerial body respectively.

**Article 111.4.** The Rights and Duties of a Self-Regulating Organisation of Electronic Marketplace Operators

**1.** A self-regulating organisation of electronic marketplace operators has the rights envisaged by Article 6 of Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations.

**2.** The self-regulating organisation of electronic marketplace operators shall elaborate and establish standards and rules of professional activities binding on the members of the self-regulating organisation and shall carry out the other functions envisaged by Article 6 of Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations.

**Article 111.5.** Federal State Supervision over the Activities of Self-Regulating Organisations of Electronic Marketplace Operators

**1.** Federal state supervision over the activities of self-regulating organisations of electronic marketplace operators shall be carried out by the authorised federal executive governmental body in charge of supervision (hereinafter referred to as "the supervision body") in the procedure established by the regulator in accordance with Article 23 of Federal Law No. 315-FZ of December 1, 2007 on Self-Regulating Organisations, with account being taken of the details established by the present article.

**2.** If it is discovered that a self-regulating organisation of electronic marketplace operators does not meet the requirements established by Item 2 of Article 111.1 of the present Federal Law, the supervision body shall send a binding direction to the self-regulating organisation for elimination of the irregularity that is to be performed within the term set by the direction, i.e., at least 30 working days from the date of receipt thereof by the self-regulating organisation.

**3.** If another breach of the provisions of the present Federal Law, other federal laws, other normative legal acts of the Russian Federation is discovered the supervision body shall send a direction to the self-regulating organisation for elimination of the breach with a completion term, whose duration shall not be less than two months after the date of receipt of the direction by the self-regulating organisation.

Appeal may be taken from the direction of the supervision body for elimination of the breach by the self-regulating organisation of electronic marketplace operators to the arbitration court.

**4.** A self-regulating organisation of electronic marketplace operators which has on its own discovered that it did not meet the requirements established by Item 2 of Article 111.1 of the present Federal Law shall do the following within 14 working days after detecting such irregularity: file an application in writing with the supervision body in accordance with Paragraph 1 of Item 13 of Article 23.1 of the present Federal Law.

In this case the supervision body shall file a claim with the arbitration court for removal of information about the non-profit organisation form the state register of self-regulating organisations of electronic marketplace operators in the procedure established by Paragraph 5 of Item 13 of Article 23.1 of the present Federal Law.

**5.** Within one year after the date of removal of information about the non-profit organisation from the state register of self-regulating organisations of electronic marketplace operators the status of self-regulating organisation shall not be granted to that non-profit organisation.

**Article 111.6.** The Liability of an Electronic Marketplace Operator

**1.** An electronic marketplace operator shall compensate for the damage caused to third persons when trading in electronic form was conducted in connection with the electronic marketplace operator's default on observing, or improper observance of, the requirements established by the legislation of the Russian Federation and of standards and rules of the professional activities of electronic marketplace operators, if the fact of such damage having

been caused has been established by a court decision that has become final. For the purposes of security the property liability of the electronic marketplace operator for compensating for such damages it shall conclude a contract of compulsory insurance of liability meeting the requirements established by the present Federal Law.

Standards and rules of the professional activities of electronic marketplace operators may establish additional requirements applicable to security for the property liability of the electronic marketplace operator for compensating for the damages caused by it.

**2.** An electronic marketplace operator shall provide compensation to members of the self-regulating organisation of electronic marketplace operators in which it is a member for the damage caused when a compensation disbursement was made out of the compensation fund of that self-regulating organisation due to the compensation for the damages caused to third persons in the course of trading in electronic form in connection with the electronic marketplace operator's default on observing, or improper observance of the requirements established by the legislation of the Russian Federation and standards and rules of the professional activities of electronic marketplace operators.

The procedure for securing the property liability of an electronic marketplace operator for compensating for such damages shall be established by standards and rules of the professional activities of electronic marketplace operators, and for instance these standards and rules may establish an electronic marketplace operator's duty to insure the risk of its property liability that might occur through the infliction of actual losses to members of the self-regulating organisation of electronic marketplace operators in connection with the decrease in the amount of the compensation fund of the self-regulating organisation occurring when compensation disbursements are made out of it to third persons in the course of trading in electronic form.

**Article 111.7.** The Contract of Compulsory Insurance of Liability of an Electronic Marketplace Operator

**1.** A contract of compulsory insurance of liability of an electronic marketplace operator for causing damages to third persons in the course of trading in electronic form in connection with the electronic marketplace operator's default on observing, or improper observance of, the requirements established by the legislation of the Russian Federation and standards and rules of the professional activities of electronic marketplace operators shall be concluded with an insurance organisation accredited by the self-regulating organisation of electronic marketplace operators, for a term of at least one year on the condition that it is going to be resumed for the same term.

**2.** The minimum insurance sum under the contract of compulsory insurance of liability of the electronic marketplace operator shall be 30,000,000 roubles per year.

**3.** The insured object under the contract of compulsory insurance of liability of the electronic marketplace operator shall be the property interests of the electronic marketplace operator which do not contravene the legislation of the Russian Federation and are relating to the operator's duty to provide compensation for the damages to third persons in the course of trading in electronic form in connection with the electronic marketplace operator's default on observing, or improper observance of, the requirements established by the legislation of the Russian Federation and standards and rules of the professional activities of electronic marketplace operators.

**4.** The insured accident under the contract of compulsory insurance of liability of the electronic marketplace operator shall be the fact -- confirmed by a court decision that has become final -- of damages caused to third persons by the electronic marketplace operator within the effective term of said contract in the course of trading in electronic form in connection with its default on observing, or improper observance of, the requirements

established by the legislation of the Russian Federation and standards and rules of the professional activities of electronic marketplace operators.

**5.** The insured risk under the contract of compulsory insurance of liability of the electronic marketplace operator shall be the probability of onset of its liability for compensating for damages to third persons, except for the onset of liability as a result of:

1) the causing of damages due to force majeure, the negative consequences of activities relating to the use of nuclear fuel, including, inter alia, the pollution of atmospheric air, soil, a body of water, the radioactive contamination of the environment, citizens' exposure to radiation, and also hostilities, armed mutiny, people's rioting, the activities of an illegal armed formation, terrorist activities, and the institution of martial law or state of emergency;

2) the causing of moral harm;

3) the illegal actions or omissions of another person;

4) the actions or omissions of the electronic marketplace operator which are not relating to its conducting trading in electronic form.

**6.** In the cases specified in Item 5 of the present article caused damages are subject to compensation in accordance with the legislation of the Russian Federation.

**7.** The contract of compulsory insurance of liability of the electronic marketplace operator may envisage payment of an insurance premium by the electronic marketplace operator in several insurance contributions within the term established by said contract.

The date of payment of the insurance premium (the making of the insurance contribution) shall be the date on which the insurance premium (insurance contribution) is remitted to the insurer's settlement account.

The contract of compulsory insurance of liability of the electronic marketplace operator shall enter into force as of the time when the insured pays the insurance premium or makes the first insurance contribution (if the insurance premium is paid in several insurance contributions).

**8.** Upon the onset of the insured accident the insurer shall pay out an indemnity in the amount of the damages caused to third persons and established by a court decision that has become final, but not exceeding the insurance sum under the contract of compulsory insurance of liability of the electronic marketplace operator.

**9.** The insurer has the right to have recourse against the electronic marketplace operator which has caused damages and whose risk of liability is insured under the contract of compulsory insurance of liability of the electronic marketplace operator, in the amount of the insurance indemnity paid by the insurer if the damages have been caused due to deliberate actions or omissions of the electronic marketplace operator which have manifested themselves in the operator's violating the provisions of the present Federal Law, other federal laws or other normative legal acts of the Russian Federation or standards and rules of professional activities of electronic marketplace operators.

**10.** The electronic marketplace operator's compulsory insurance of its liability shall be monitored by the self-regulating organisation of electronic marketplace operators (whose member the operator is) which is entitled to establish additional requirements which are applicable to the contract of compulsory insurance of liability of an electronic marketplace operator concluded by members of that self-regulating organisation and do not contravene the legislation of the Russian Federation.

Failure by an electronic marketplace operator to observe the requirements applicable to the contract of compulsory insurance of its liability shall serve as ground for expulsion of the electronic marketplace operator from the self-regulating organisation of electronic marketplace operators.

**Article 111.8.** The Compensation Fund of a Self-Regulating Organisation of Electronic

Marketplace Operators

**1.** The compensation fund of a self-regulating organisation of electronic marketplace operators is separate property belonging to that self-regulating organisation by the right of ownership. Initially, said compensation fund shall be maintained only in monetary form with membership dues of the members of the self-regulating organisation of electronic marketplace operators in an amount of at least 3,000,000 roubles per member thereof. It is prohibited to relieve a member of the self-regulating organisation from the duty to pay dues to its compensation fund, for instance by means of setting off his claims to the self-regulating organisation.

**2.** For the purposes of preserving and increasing the amount of the compensation fund of the self-regulating organisation of electronic marketplace operators the resources of its compensation fund shall be placed in special accounts in Russian credit organisations. If it is necessary to pay compensation out of the compensation fund of the self-regulating organisation the term for refund of resources of the compensation fund from said account shall not exceed 10 working days.

A contract of special bank account shall include a provision according to which the resources of the compensation fund of the self-regulating organisation of electronic marketplace operators may be spent only for making compensation disbursements.

The resources of the compensation fund available in a special bank account of the self-regulating organisation of electronic marketplace operators are not subject to levy of execution for the liabilities of that self-regulating organisation and also for the liabilities of members of that self-regulating organisation which are not relating to the payment of compensation out of the compensation fund.

**3.** It is hereby prohibited to spend the compensation fund of the self-regulating organisation of electronic marketplace operators for purposes other than those envisaged by the present article, for instance for paying or refunding dues to members of that self-regulating organisation.

Income received from the placement of the resources of the compensation fund of the self-regulating organisation of electronic marketplace operators shall be used to replenish it, cover the expenses relating to the placement of resources of such compensation fund, payment of taxes and the other compulsory payments which become payable in connection with the receipt of income from the placement of resources of such compensation fund.

**4.** A claim for compensation out of the compensation fund of the self-regulating organisation of electronic marketplace operators may be presented to the self-regulating organisation of electronic marketplace operators in which the electronic marketplace operator was a member as of the date of commission of the actions or omissions which have ensued the infliction of damages to third persons in the course of trading in electronic form in connection with the electronic marketplace operator's default on observing, or improper observance of, the requirements established by the legislation of the Russian Federation and standards and rules of the professional activities of electronic marketplace operators.

**5.** A claim for compensation out of the compensation fund of the self-regulating organisation of electronic marketplace operators may be presented to that self-regulating organisation by the person for whose benefit a decision has been taken on collection of damages only if the following conditions simultaneously exist:

1) the insufficiency of the funds received by such person under the contract of compulsory insurance of liability of an electronic marketplace operator to compensate for the damages caused to such person;

2) the electronic marketplace operator's refusal to satisfy the claim of such person or a default by the electronic marketplace operator on satisfying the claim of such person within 30 working days after the date on which said demand is received.

**6.** The following shall be attached to the claim for compensation out of the compensation fund of the self-regulating organisation of electronic marketplace operators:

1) a court decision on collection of damages in a certain sum from the electronic marketplace operator;

2) a document confirming that the insurance organisation has paid an insurance indemnity under the contract of compulsory insurance of liability of an electronic marketplace operator, and the amount of the insurance indemnity so paid;

3) a document confirming the electronic marketplace operator's refusal to satisfy said claim or a document confirming that said claim has been sent to the electronic marketplace operator and was not satisfied by it within 30 working days after the date of receipt thereof.

**7.** The self-regulating organisation of electronic marketplace operators shall pay compensation within 60 working days after the date of receipt of the relevant claim or to issue a substantiated refusal to pay it to the person that has filed the claim for compensation.

**8.** On the following grounds the self-regulating organisation of electronic marketplace operators has the right to refuse to pay compensation to the person that has filed a claim for compensation:

1) damages have been compensated for in full with insurance indemnity under the contract of compulsory insurance of liability of an electronic marketplace operator or at the expense of the electronic marketplace operator;

2) the electronic marketplace operator was not a member of that self-regulating organisation as of the date of commission of the actions or omissions which have ensued the causing of damages to third persons in the course of trading in electronic form;

3) the documents established by the present article have not been attached to the compensation claim.

**9.** A compensation disbursement in monetary form shall be sent to the account specified in the compensation claim.

The amount of a compensation out of the compensation fund of the self-regulating organisation of electronic marketplace operators on a compensation claim as applicable to one case of causing of damages in respect of one electronic marketplace operator shall not exceed 5,000,000 roubles.

**Article 112.** Assignment of a Debtor's Right of Claim

**1.** The receiver shall be entitled to proceed to assign the debtor's rights of claim by means of selling them with the consent of a creditors' meeting (the creditors' committee), if a different procedure is not established by this Federal Law.

**2.** The sale of the debtor's rights of claim shall be done by the receiver in the manner and on the terms set out in Article 110 of the present Federal Law, except as otherwise established by a federal law or ensues the essence of the claim. The terms of the contract of sale of a debtor's right of claim shall envisage the following:

the receipt of proceeds from the sold right of claims within 30 days after the conclusion of the sale contract;

the transfer of the right of claim is effected only after payment for it has been made in full.

**Article 112.1.** The Repayment of Debts for Compulsory Payments in the Course of External Administration by the Founders (Stockholders) of the Debtor, the Owner of the Property of the Debtor Being an Unitary Enterprise and/or a Third Person

**1.** In the course of external administration the claims to the debtor for compulsory payments included in the register of creditors' claims may be repaid by the founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise and/or a third person in the procedure established by the present article.

When the founders (stockholders) of the debtor or the owner of the property of the debtor being an unitary enterprise or/and a third person are repaying the claims addressed to the debtor for compulsory payments all the claims to the debtor for compulsory payments included in the register of creditors' claims shall be paid.

**2.** A person intending to repay the claims addressed to the debtor for compulsory payments shall send a declaration of such intent to the arbitration court that is considering the bankruptcy case, to the receiver and the empowered bodies.

**3.** The following shall be indicated in the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the applicant;

the term for repayment of the claims addressed to the debtor for compulsory payments not exceeding 30 business days after the issuance of the relevant ruling by the arbitration court.

**4.** The declaration of intent shall be considered by the arbitration court within 14 business days after the date of receipt thereof.

If declarations of intent have been received by the arbitration court from several persons they shall be considered in the chronological order of their being received by the arbitration court.

**5.** According to the results of consideration of the declaration of intent the arbitration court shall issue a ruling upholding the declaration of intent or a ruling on refusal to uphold the declaration of intent if the register of creditors' claims does not contain claims addressed to the debtor for compulsory payments or if the applicant has decided not to repay the claims addressed to the debtor for compulsory payments before the consideration of such declaration.

**6.** The following shall be indicated in the arbitration court ruling upholding the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the person that is repaying the claims addressed to the debtor for compulsory payments ;

the amount of the claims addressed to the debtor for compulsory payments , the principal debt amount and the forfeit money (fines and penalties) accrued;

the term and procedure for repayment of the claims addressed to the debtor for compulsory payments ;

the date of the court-room hearing on the results of repayment of the claims addressed to the debtor for compulsory payments ;

bank account details and the other information required for the remittance of funds for repayment of the claims addressed to the debtor for compulsory payments .

**7.** The consideration of the declaration of the intent to repay the claims addressed to the debtor for compulsory payments shall be adjourned until the date of consideration of the results of repayment of the claims addressed to the debtor for compulsory payments if a similar declaration has been received earlier from another person.

If there is a dispute as to the amount and composition of such claims the consideration of the declaration of the intent to repay the claims addressed to the debtor for compulsory payments may be adjourned until the date when the court judgement establishing the composition and amount of the claims to the debtor included in the register of creditors' claims for compulsory payments becomes final.

**8.** For the purpose of repaying the claims addressed to the debtor for compulsory payments the empowered body shall serve a notice to the arbitration court containing the date of submission of the notice, the surname, first name, patronymic and position of the official who has signed the notice and also the information required according to the rules for completion of the payment documents acknowledging that funds have been remitted for repayment of the claims addressed to the debtor for compulsory payments including an indication of the amount of claim in respect of each of the beneficiaries of the funds.

**9.** Within the term established by the arbitration court ruling upholding the declaration of intent the applicant shall remit funds in the amount and in the procedure specified in the ruling.

**10.** Upon the expiry of the term set by the arbitration court for repayment of the claims addressed to the debtor for compulsory payments the applicant shall send an application to the arbitration court claiming that the claims addressed to the debtor for compulsory payments be deemed repaid and that the creditor be replaced in the register of creditors' claims.

Attached to the application shall be payment documents acknowledging that funds have been remitted in the amount and in the procedure specified in the arbitration court ruling upholding the declaration of intent.

**11.** According to the results of consideration of the application for deeming the claims addressed to the debtor for compulsory payments repaid and for replacing the creditors in the register of creditors' claims, given the compliance of the repayment completed with the arbitration court ruling upholding the declaration of intent the arbitration court shall issue a ruling on deeming the claims addressed to the debtor for compulsory payments repaid and on replacing the creditor in the register of creditors' claims.

The claims of the person that has repaid the claims addressed to the debtor for compulsory payments shall be recorded in the register of creditors' claims in the same amount and with the same priority rating as the repaid claims to the debtor for compulsory payments.

**12.** If the claims addressed to the debtor for compulsory payments have not been repaid in full or have been repaid in breach of the procedure or term for repayment established by the arbitration court ruling the arbitration court shall issue a ruling on refusing to deem repaid the claims addressed to the debtor for compulsory payments.

The funds remitted shall be refunded to the applicant within ten business days after the arbitration court ruling on refusal to deem repaid the claims addressed to the debtor for compulsory payments became final.

The remittance of funds in excess over the amount of money envisaged by the arbitration court ruling upholding the declaration of intent shall not be deemed ground for the arbitration court's issuing a ruling on refusal to deem repaid the claims addressed to the debtor for compulsory payments, and equally, increasing the amount of claims to the debtor of the person that has completed repayment of the claims addressed to the debtor for compulsory payments.

The funds remitted in excess over the amount of money envisaged by said ruling shall be refunded to the applicant within ten business days after the arbitration court ruling on deeming repaid the claims addressed to the debtor for compulsory payments and on replacing the creditor in the register of creditors' claims became final.

**13.** The Government of the Russian Federation shall establish a procedure for settlements of accounts for the purpose of repaying the claims addressed to a debtor for compulsory payments.

**14.** The repayment of the claims for compulsory payments addressed to a debtor for which the present Federal Law established details of implementation of the proceedings applicable in a bankruptcy case is admissible in cases when there is a provision for this in the present Federal Law establishing the details of bankruptcy of debtors of specific categories.

**Article 113.** The Performance of Obligations of a Debtor by the Founders (Stockholders) of the Debtor, the Owner of the Property of the Debtor Being an Unitary Enterprise or a Third Person

1. The founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise, a third person or third persons are entitled at any time before the end of external administration for the purpose of terminating proceedings in the bankruptcy case to meet all the creditors' claims included in the register of creditors' claims or to provide the debtor with funds sufficient to meet all the claims of the creditors according to the register of creditors' claims.

If the founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise, a third person or third persons meet creditors' claims all the claims included in the register of creditors' claims shall be met, including forfeit money (fines and penalties), interest and other sanctions for a default on, or the improper performance of obligations.

2. A person intending to meet in full the creditors' claims addressed to the debtor shall send a declaration of such intent to the arbitration court that is considering the bankruptcy case and to the receiver.

3. The following shall be indicated in the declaration of the intent to meet in full the creditors' claims addressed to the debtor:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the applicant;

the term for meeting the creditors' claims not exceeding 20 days after the issuance of the relevant ruling by the arbitration court;

the method of meeting the creditors' claims in full (the remittance of funds into a special bank account of the debtor or into a deposit of a notary).

4. The declaration of intent shall be considered by the arbitration court within 14 business days after being received.

If several declarations of intent have been received by the arbitration court from several persons they shall be considered in the chronological order of their being received by the arbitration court.

According to the results of consideration of the declaration of intent the arbitration court shall issue a ruling upholding the declaration of intent or a ruling on refusal to uphold such declaration if the applicant has decided not to repay the creditors' claims.

5. The following shall be indicated in the arbitration court ruling upholding the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the person that meets the creditors' claims;

the registration details of the debtor being a legal entity (the state registration number of the entry on the state registration of the legal entity and the taxpayer identification number);

the amount of creditors' claims included in the register of creditors' claims;

the term for meeting the creditors' claims;

the date of the court-room hearing of the results of meeting the creditors' claims;

the method of meeting the creditors' claims (the remittance of funds into a special bank account of the debtor or a deposit of a notary);

the other information required for the purpose of remitting funds into a special bank account of the debtor or a deposit of a notary.

6. The consideration of the declaration of the intent to meet the creditors' claims addressed to the debtor shall be adjourned until the date of consideration of the results of meeting the creditors' claims if a similar declaration has been received from another person

earlier.

**7.** For the purpose of meeting the creditors' claims addressed to the debtor by means of remitting funds into a special bank account of the debtor the receiver shall do the following on the basis of the arbitration court ruling upholding the declaration of intent: opening a separate account of the debtor in a credit organisation as intended only to meet the creditors' claims included in the register of creditors' claims, in accordance with the present article (special bank account of the debtor).

In the contract of special bank account of the debtor an indication shall be made of the person into whose accounts the funds available in the special bank account of the debtor are to be remitted in accordance with the arbitration court ruling upholding the declaration of intent.

Funds from the special bank account of the debtor shall be written off on orders of the receiver only for the purpose of meeting the creditors' claims included in the register of creditors' claims, and they shall not be written off for other obligations of the debtor (current obligations included) or of the receiver or the third person(s) that meets/meet the creditors' claims.

The funds available in the special bank account of the debtor are not subject to levy of execution for other obligations of the debtor or of the receiver or of the third person(s) that meets/meet the creditors' claims.

Transactions accomplished in breach of the provisions of the present item may be deemed null and void.

**8.** For the purpose of meeting the creditors' claims by means of remitting funds into a deposit of a notary the receiver shall serve a notice to the arbitration court indicating the date of the notice, and also information on the beneficiaries of the funds as required in accordance with the rules for completing the payment documents that acknowledge the remittance of the funds, with the amount of claim in respect of each of the beneficiaries of the funds being indicated.

**9.** Within the term set by the arbitration court ruling upholding the declaration of intent the applicant shall remit funds into the special bank account of the debtor or a deposit of a notary in the amount and in the procedure specified in the ruling.

Within three business days after the receipt of the funds from the applicant into the special bank account of the debtor the receiver shall meet the creditors' claims in accordance with the ruling upholding the declaration of intent.

If within said term the creditors' claims included in the register of creditors' claims are not met in full because the information required to meet said claims cannot be established the balance of funds from the special bank account of the debtor shall be remitted into a deposit of a notary.

**10.** Upon the expiry of the term established by the arbitration court for meeting the creditors' claims by means of remitting funds into the special bank account of the debtor or a deposit of a notary the receiver or the applicant shall send an application to the arbitration court for deeming the creditors' claims met.

To this applicant's application the applicant shall attach payment documents acknowledging that the funds have been remitted into a deposit of a notary in the amount specified in the arbitration court ruling upholding the declaration of intent, and the receiver shall attach payment documents acknowledging that the creditors' claims included in the register of creditors' claims have been met by means of remittance of funds into the special bank account of the debtor in the amount specified in the arbitration court ruling upholding the declaration of intent. In the case specified in Paragraph 3 of Item 9 of the present article the receiver shall also attach to the application payment documents confirming that the balance of the funds from the special bank account of the debtor has been remitted into a deposit of a

notary.

**11.** According to the results of consideration of the application for deeming the creditors' claims met, given the compliance of the repayment completed with the terms of the arbitration court ruling upholding the declaration of intent, the arbitration court shall issue a ruling on deeming the creditors' claims met.

**12.** If the creditors' claims have not been met in full or if when the creditors' claims were being met by means of remittance of funds to the special bank account, or into a deposit of a notary funds were remitted in an amount below the one envisaged by the arbitration court ruling or in breach of the term set by it for repayment then the arbitration court shall issue a ruling on refusal to deem the creditors' claims met.

The funds remitted to the special bank account, or into the deposit of the notary shall be refunded to the applicant within ten business days after the arbitration court ruling on refusal to deem the creditors' claims met became final.

The remittance of the funds to the special bank account, or into a deposit of a notary in excess of the amount of money envisaged by the arbitration court ruling upholding the declaration of intent shall not be deemed ground for the arbitration court to issue a ruling on refusal to deem the creditors' claims met.

The funds remitted to the special bank account, or into a deposit of a notary in excess over the amount of money envisaged by the arbitration court ruling shall be refunded to the applicant within ten business days after the arbitration court ruling on deeming the creditors' claims met becomes final.

**13.** Amounts of money from the deposit of the notary shall be remitted to creditors in the amount specified in the ruling upholding the declaration of intent, within ten business days after the arbitration court ruling on deeming the creditors' claims met became final.

**14.** The amounts of money remitted into a special bank account of the debtor or into a deposit of a notary shall be deemed provided to the debtor on the terms of an interest-free loan contract whose due date is determined by call time but not preceding the end of the term for which external administration has been instituted.

Other terms for provision of funds for the purpose of performing the debtor's obligations may be established by an agreement approved by the debtor's managerial bodies empowered under the debtor's constitutive documents to take decisions on conclusion of large-scale transactions, with the person that meets creditors' claims.

**15.** If the debtor's obligations are performed by the founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise, a third person or third persons the completion of external administration and termination of proceedings in the bankruptcy case shall be done in accordance with Article 116 of the present Federal Law.


**Article 114.** Flotation of Debtor's Additional Ordinary Shares

**1.** For the purpose of restoring a debtor's solvency the external administration plan may envisage an increase in the authorised capital of the debtor being a joint stock company by means of floating additional ordinary shares.

An increase in the authorised capital by means of floating additional ordinary shares may be included in the external administration plan exclusively at the petition on the debtor's managerial body that has adopted the decisions specified in Item 2 of Article 94 of the present Federal Law.

In the case of receipt of a petition from the debtor's managerial body for including an increase of the authorised capital of the debtor being a joint stock company in the external administration plan by means of floating additional ordinary shares of the debtor the receiver shall hold a creditors' meeting for the purpose of considering the petition of the debtor's

managerial body for inclusion of a decision on the issuance of additional ordinary shares of the debtor in the external administration plan.

2. The flotation of the debtor's additional ordinary shares may be performed only by closed subscription. The term of flotation of the debtor's additional ordinary shares shall not exceed three months. The state registration of a report on the results of flotation of the debtor's additional ordinary shares shall be effected within one month after the termination of external administration.

3. The shareholders of the debtor shall have a priority right to acquire the debtor's additional ordinary shares being floated, in the manner envisaged by a federal law.

The term provided to the shareholders of the debtor to exercise their priority right to acquire the debtor's additional ordinary shares shall not exceed 45 days after the commencement of flotation of the said shares.

4. The prospectus of issue (decision on the issuance of) of the debtor's additional ordinary shares shall comprise a provision for payment for additional ordinary shares only in monetary form.

5. If an issue of debtor's additional ordinary shares is deemed unaccomplished or invalid, the funds received by the debtor from the persons which have acquired the debtors' additional ordinary shares shall be refunded to such persons above the priority ranking of creditors' claims established by the present Federal Law.

**Article 115.** Substitution of Debtor's Assets

1. The substitution of assets of a debtor shall be effected by means of forming on one public joint stock company or several public joint stock companies on the basis of the debtor's property. In the case of formation of one public joint stock company its authorised capital shall incorporate the property (including property rights) included in the enterprise and intended for the pursuit of entrepreneurial activity. The composition of the enterprise shall be determined in accordance with Items 1 and 2 of Article 110 of the present Federal Law.

2. The substitution of assets of a debtor by means of forming one public joint stock company or several public joint stock companies on the basis of the debtor's property may be included in the external administration plan under a decision of the debtor's managerial body authorised under the constitutive documents to adopt decisions on the conclusion of relevant transactions of the debtor.

The possibility of replacing the debtors' assets may be included in the external administration plan on the condition that this decision is upheld by the voting of all the creditors whose obligations are secured by a pledge/ mortgage of the debtor's property.

3. The external administration plan may envisage the formation of several public joint stock companies whose authorised capital shall be paid for by the debtor's property intended for the pursuit of specific types of activity. The composition of the debtor's property contributed to the authorised capitals of the public joint stock companies in formation shall be determined by the external administration plan.

Paragraph two is abrogated.

3.1. When the debtor's assets are replaced the debtor is the sole founder of a joint stock company or of several public joint stock companies. The participation of other founders in the formation of a public joint stock company or of several public joint stock companies is inadmissible.

3.2. The amount of the authorised capitals for the public joint stock companies to be established shall be determined by a decision of a meeting of creditors or of the creditors' committee and shall be fixed in the amount of the market value of the property contributed in payment for the authorised capitals of the public joint stock companies to be established fixed in the appraisal report.

The property to be contributed as payment for the authorised capitals of public joint stock companies to be established shall be appraised in the procedure established by Article 130 of this Federal Law.

4. In the case of substitution of assets of a debtor all the labour contracts effective when the decision was made to substitute the debtor's assets shall remain effective, with the employer's rights and duties being transferred to the newly formed public joint stock company (public joint stock companies).

The document confirming the availability of a licence for the pursuance of specific types of activity shall be subject to formalities with a view to issuing a document confirming the fact that the newly formed public joint stock company (companies) holds (hold) a relevant licence in accordance with the procedure established by a federal law.

5. The shares of the public joint stock company or the public joint stock companies formed on the basis of the debtor's property shall be included in the debtors' estate and they can be sold at a public sale, except as otherwise established by the present article.

The sale of shares of the public joint stock company or the public joint stock companies formed on the basis of the debtor's property shall ensure an accumulation of funds for the restoration of the debtor's solvency.

6. The sale at a public sale of the shares of a public jointstock company or the public joint stock companies formed on the basis of the debtors' property shall be effected in the manner set out in Article 110 of the present Federal Law.

The external administration plan may envisage a sale of the shares of the public joint stock company or the public joint stock companies formed on the basis of the debtor's property on the organised securities market.

7. When the debtor's assets are substituted the object of pledge/mortgage is also replaced for the bankruptcy creditors whose obligations are secured with the pledge/mortgage of the debtor's property, the right of pledge/mortgage comes into being in respect of the shares of the formed joint stock company or several joint stock companies.

The value of the shares put in pledge/mortgage shall be pro rata to the value of the property that has been pledged and has been contributed into the charter capital of the joint stock company or into the charter capitals of the several joint stock companies, on the basis of its market value.

8. The sole executive body of the formed joint stock company or several joint stock companies is a receiver or another person appointed and removed by a receiver under a decision on the meeting of creditors.

9. The charter of the formed joint stock company or several joint stock companies shall be endorsed by a decision of the meeting of creditors or of the creditors' committee.

10. A decision of the meeting of creditors or of the creditors' committee may envisage the formation of a collective managerial body of the formed joint stock company. The election of members of the collective managerial body of the joint stock company is within the competence of the meeting of creditors or of the creditors' committee.

11. The formed joint stock company does not have the right to dispose of the property contributed into its charter capital until the time of full sale of its shares in the course of the proceedings applicable in a debtor's bankruptcy case.

**Article 116.** The Features of Completion of a Proceeding Applicable in a Bankruptcy Case and Termination of Proceedings in a Bankruptcy Case by the Owner of

Property of a Debtor Being a Unitary Enterprise, a Debtor's Promoters (Stockeholders) or a Third Person or Third Persons

**1.** Upon the completion of discharge of the obligations of a debtor by the owner of property of the debtor being a unitary enterprise, the debtor's promoters (stockholders) or by a third person or third persons the receiver shall within ten days notify all the creditors whose claims have been included in the register of creditors' claims that their claims have been met.

**2.** A report of the receiver shall be sent to the court of arbitration within 14 days without having been considered by a creditors' meeting.

**3.** The court of arbitration shall approve the report of the receiver in the manner and on the terms envisaged by Items 1, 3-7 of Article 119 of the present Federal Law.

**Article 117.** Receiver's Report

**1.** The receiver shall present a report of the receiver to a creditors' meeting for consideration:

on the results of external administration;

when grounds exist for terminating external administration before due time;

at the demand of the persons entitled to convene a creditors' meeting;

when sufficient funds have been accumulated for meeting all the claims of the creditors included in the register of creditors' claims.

**2.** If during external administration all the claims of the creditors included in the register of creditors' claims have been met in compliance with the present Federal Law, the receiver shall within one month after the date when all the claims of the creditors included in the register of creditors' claims were met notify thereof all the persons whose claims were included in the register of creditors' claims and lodge a receiver's report with the court of arbitration for approval.

**3.** The receiver's report shall contain the following:

the debtor's balance sheet as of the last accounting date;

a cash-flow statement;

a statement of the debtor's profits and losses;

information on the availability of free funds and other amounts of money of the debtor that can be used to meet creditors' claims relating to monetary obligations and the debtor's mandatory payments;

a breakdown of the debtor's outstanding accounts receivable, information on measures for the collection thereof and on the debtor's rights of claim that have remained unrealised;

information on meeting the claims of the creditors included in the register of creditors' claims;

information on the current debtor's liabilities with an indication of the proceeding applicable in a bankruptcy case in the course of which they came into being, their purpose, grounds for the occurrence thereof, and the amounts of the liability and of the outstanding balance;

information on the measures taken for deeming as invalid the debtor's transactions, and also for declaring refusal to perform the debtor's contracts;

other information on the possibility of repayment of the debtor's outstanding accounts payable.

The register of creditors' claims shall be attached to the receiver's report.

**4.** The receiver's report shall comprise one of the below proposals:

for terminating external administration in connection with the fact that the debtor's solvency has been restored and for proceeding to effect settlements with the creditors;

for prolonging the established effective term of external administration;

for terminating proceedings in the bankruptcy case in connection with satisfaction of all creditors' claims in compliance with the register of creditors' claims;

for terminating external administration and filing a petition with the court of arbitration for declaring the debtor bankrupt and commencing winding-up procedure.

**Article 118.** Consideration of the Receiver's Report by a Creditors' Meeting

1. In cases when the report of a receiver is subject to consideration by a creditors' meeting, such a meeting shall be convened within three weeks after the announcement of the demand for holding the meeting of creditors for the purpose of considering the receiver's report or within three weeks after the occurrence of grounds for terminating external administration before due time or at least one month prior to the date of expiry of the established effective term of external administration.

2. The receiver shall provide the creditors with an opportunity for familiarising themselves in advance with the receiver's report at least 45 days prior to the expiry of the established effective term of external administration or at least ten days prior to the set date of the creditors' meeting.

3. On the results of consideration of the receiver's report the creditors' meeting shall be entitled to adopt one of the below decisions:

to file a petition with the court of arbitration for terminating external administration in connection with restoration of the debtor's solvency and for proceeding to effect settlements with the creditors;

to file a petition with the court of arbitration for terminating proceedings in the case due to the fact that all the claims of the creditors are met in compliance with the register of creditors' claims;

to file a petition with the court of arbitration for declaring the debtor bankrupt and commencing winding-up procedure;

to conclude an amicable agreement.

4. While considering a receiver's report in connection with the expiry of the external administration term set by the court of arbitration the creditors' meeting shall be entitled to adopt a decision to file a petition with the court of arbitration for prolonging the set external administration term on the condition that the total period of external administration does not exceed the maximum duration of external administration admissible under the present Federal Law.

**Article 119.** Approval of a Receiver's Report by the Court of Arbitration

1. It is compulsory for the report of a receiver to be subject to consideration by the court of arbitration, except for the case when the receiver's report has been considered by a creditors' meeting at the demand of the persons entitled to convene a creditors' meeting and the creditors' meeting after consideration of the report adopted neither of the decisions specified in Item 3 of Article 118 of the present Federal Law.

2. If under the present Federal Law it is compulsory for the receiver's report to be subject to consideration by a creditors' meeting, the receiver's report that has been considered by a creditors' meeting and the minutes of the creditors' meeting shall be sent to the court of arbitration within five days after the date of the creditors' meeting.

Attached to the receiver's report shall be the register of creditors' claims as of the date of the creditors' meeting and complaints of the creditors which voted against the decision adopted by the creditors' meeting or of the creditors which did not take part in the voting.

3. The receiver's report and complaints against actions of the receiver, if any, shall be considered by the court of arbitration within one month after the receipt of the receiver's report.

**4.** The receiver's report shall be subject to approval by the court of arbitration if:

all the creditors' claims included in the register of creditors' claims have been met in compliance with the present Federal Law;

a creditors' meeting has adopted a decision to terminate external administration in connection with restoration of the debtor's solvency and commencement of settlements with the creditors;

an amicable agreement has been concluded between the creditors and the debtor;

a creditors' meeting has adopted a decision to prolong the external administration term, except for the cases specified by the present Federal Law.

**5.** The court of arbitration shall refuse to approve a receiver's report if:

the creditors' claims included in the register of creditors' claims have not been met;

there is no evidence of restoration of the debtor's solvency;

circumstances exist which prevent the conclusion of an amicable agreement.

**6.** According to the results of consideration of a receiver's report a ruling shall be issued on:

the termination of proceedings in the bankruptcy case if all the creditors' claims in compliance with the register of creditors' claims have been met, or if the court of arbitration has approved an amicable agreement;

the commencement of settlements with the creditors if the petition filed by a creditors' meeting for terminating external administration in connection with the restoration of the debtor's solvency and commencement of settlements with the creditors has been satisfied;

the prolongation of the external administration term if a petition for prolongation of the external administration term has been satisfied;

to refuse approving the receiver's report if the circumstances defined by Item 5 of the present article are discovered by a court as preventing the approval of the receiver's report.

**7.** If there is a petition of a creditors' meeting for declaring the debtor bankrupt and commencing winding-up procedure and also if the court of arbitration has refused to approve the receiver's report or if this report was not filed within one month after the expiry of the established external administration term the court of arbitration may adopt a decision to declare the debtor bankrupt and commence winding-up procedure.

**Article 120.** The Consequences of Issuance of a Ruling on Commencing Settlements
with Creditors

**1.** The issuance of a ruling by a court of arbitration on commencing settlements with creditors shall be deemed a ground for commencing settlements with all the creditors in compliance with the register of creditors' claims.

**2.** The ruling on commencement of settlements with creditors shall indicate a term for completing settlements with the creditors which shall not exceed six months after the date of this ruling.

After the termination of settlements with the creditors the court of arbitration shall issue a ruling on the approval of the receiver's report and on termination of proceedings in the bankruptcy case.

**3.** If settlements with the creditors have not been completed within the term set by the court of arbitration the court of arbitration shall adopt a decision to declare the debtor bankrupt and commence winding-up procedure.

**Article 121.** Settlements with Creditors

**1.** Settlements with creditors shall be effected by the receiver in compliance with the register of creditors' claims beginning from the date of the arbitration court ruling on commencement of settlements with the creditors or ruling on commencement of settlements

with creditors of a specific priority ranking category.

**2.** Settlements with creditors shall be effected in the manner envisaged by Articles 134-138 of the present Federal Law with due regard to the features established by the present article.

**3.** Having met the claim of a creditor included in the register of creditors' claims the receiver or registrar shall delete the claim from the register of creditors' claims.

If the register of creditors' claims is kept by a registrar the documents confirming that the claims of a creditor have been met shall be sent by the receiver to the registrar.

**Article 122.** Abrogated.

**Article 122.1.** The Termination of External Administration on an Application of a Person Deemed Party to the Bankruptcy Case

**1.** Unless the decisions envisaged by Item 3 of Article 118 of the present Federal Law are taken, the arbitration court shall take a decision on deeming the debtor bankrupt and on commencing in respect of the debtor a winding-up proceeding on a petition of a person deemed party to the bankruptcy case, provided the maximum term of external administration established by Article 93 of the present Federal Law has expired.

**2.** A ruling on refusal to uphold the petition mentioned in Item 1 of the present article is subject to appeal.";


**Article 123.** Procedure for Terminating the Powers of a Receiver

**1.** The termination of proceedings in a bankruptcy case or the adoption of a decision by the court of arbitration whereby a debtor is declared bankrupt and winding-up procedure is commenced shall entail termination of the powers of the receiver.

**2.** If an external administration is terminated by the conclusion of an amicable agreement or by repayment of the creditors' claims the receiver shall keep executing his/her duties within the competence of head of the debtor until the date of election (appointment) of a new head of the debtor.

The receiver shall convene the managerial body of the debtor within the scope of powers of which, under the present Federal Law and the constitutive documents of the debtor, falls the consideration of the issue of electing (appointing) the head of the debtor so that the managerial body considers the issue of electing (appointing) the head of the debtor.

The powers of the other managerial bodies of the debtor and of the owner of property of the debtor being a unitary enterprise shall be restored.

**3.** In case when the court of arbitration adopted the decision to declare the debtor bankrupt and commence winding-up procedure and approved another person as the winding-up receiver or if the winding-up receiver cannot be approved simultaneously with the adoption of such a decision, the receiver shall perform the duties of the winding-up receiver until the date when the winding-up receiver is approved.

The receiver shall transfer his powers and documentation to the winding-up receiver within three working days after the date of approval of the winding-up receiver.


**Chapter VII. Winding-Up**


**Article 124.** General Provisions on Winding-Up

**1.** The adoption of the decision to declare a debtor bankrupt shall entail commencement of winding-up procedure.

**2.** Winding-up procedure shall be instituted for a term of up to six months. The effective

term of the winding-up procedure may be extended at the petition of a person deemed party to the case by up to six months.

3. The arbitration court ruling on prolongation of the effective term of winding-up procedure shall take effect immediately and shall be subject to appeal in the manner established by Item 3 of Article 61 of the present Federal Law.

**Article 125.** Performance of the Obligations of a Debtor by the Owner of Property of the Debtor Being a Unitary Enterprise, by the Promoters (Stockholders) of the Debtor or by a Third Person or Third Persons During Winding-Up Procedure

1. The owner of property of a debtor being a unitary enterprise, the promoters (stockholders) of a debtor or a third person or third persons at any time before the winding-up term shall be entitled to simultaneously meet all the creditors' claims in compliance with the register of creditors' claims or to provide funds to the debtor sufficient for meeting all the creditors' claims in compliance with the register of creditors' claims in the manner and on the terms set out in Article 113 of the present Federal Law.

2. When the debtor's obligations are discharged by the owner of property of the debtor being a unitary enterprise, the founders (stockholders) of the debtor or a third person or third persons, a report shall be presented by the winding-up receiver in the manner envisaged in Items 1 and 2 of Article 116 of the present Federal Law.

3. The approval of the winding-up receiver's report shall be effected by the court of arbitration in the manner and on the terms set out in Item 3, Paragraphs 1 and 2 of Item 4 and Paragraphs 1 and 2 of Item 5 of Article 119 of the present Federal Law.

4. According to the results of consideration of the winding-up receiver's report the court of arbitration shall issue a ruling whereby proceedings are terminated in the bankruptcy case if all the creditors' claims in compliance with the register of creditors' claims have been met or if the court of arbitration has approved an amicable agreement.

**Article 126.** The Consequences of Commencement of Winding-Up

1. As of the date of adoption of the decision by the court of arbitration whereby a debtor is declared bankrupt and winding-up procedure is commenced:

the monetary obligations and mandatory payments of the debtor that occurred prior to the institution of winding-up procedure shall be deemed due;

the accrual of interest, forfeit money (fines and penalties) and other sanctions for a default on, or the improper performance of, money obligations and compulsory payment, except for current payments, and also of the interest envisaged by the present article shall be terminated;

information on the debtor's financial state is no longer classified as confidential or as a commercial secret;

the conclusion of transactions relating to alienation of the debtor's property or entailing transfer of the debtor's property to third persons for use is allowed exclusively in the manner established by the present chapter;

execution is terminated under writs of execution, in particular, those that were being executed during the proceedings applicable in a bankruptcy case that have been instituted earlier, except as otherwise established by the present Federal Law;

all creditors' claims relating to monetary obligations, mandatory payments, or other claims on property, except for the current payments specified in Item 1 of Article 134 of the present Federal Law and for claims for recognition of a right of ownership, demanding property from another's illegal possession, recognition of transactions as null and void and on application of the measures for the invalidity thereof, may be presented only during the winding-up procedure;

the execution documents under which execution has been terminated in compliance with the present Federal Law shall be subject to transfer by bailiffs to the administrator in the manner established by a federal law;

the seizure imposed earlier on the debtor's property and other injunctions concerning the disposal of the debtor's property are lifted. The ground for lifting the seizure imposed on the debtor's property shall be deemed as follows: a court decision whereby the debtor is declared bankrupt and winding-up procedure is commenced. The imposition of a new seizure on the debtor's property and other limitations on disposal of the debtor's property is prohibited;

the debtor's obligations, in particular as regards the execution of judicial acts, acts of other bodies and officials issued in compliance with the civil legislation and criminal legislation of the Russian Federation, procedural legislation and legislation of the Russian Federation on taxes and fees, shall be discharged by the bankruptcy receiver in the procedure and in the instances which are established by this chapter.

**2.** Starting from the day when the arbitration court adopts a decision on deeming the debtor bankrupt and on commencing a winding-up proceeding the powers of the head of the debtor and of the debtor's other managerial bodies and of the owner of the property of the debtor being an unitary enterprise (except for the powers of the general meeting of the stockholders of the debtor and of the owner of the property of the debtor to take decisions on conclusion of agreements on the terms of provision of funds by a third person or by third persons for the purpose of performing the debtor's obligations) are terminated.

The head of the debtor, and also the interim receiver, administrative receiver and receiver shall within three days after the approval of the winding-up receiver ensure the transfer of the debtor's accounting and other documentation, seals, rubber stamps, material and other valuables to the winding-up receiver.

If they decline from performing the said duty the head of the debtor, and also the interim receiver, administrative receiver and receiver shall be held accountable under the legislation of the Russian Federation.

**2.1.** Interest shall be accrued in the procedure and in the amount envisaged by the present article on the sum of the claims of a bankruptcy creditor and an empowered body in the amount established in accordance with Article 4 of the present Federal Law.

Interest on the Russian Federation currency-denominated sum of the claims of the bankruptcy creditor and the empowered body shall be accrued at the rate of the re-financing rate established by the Central Bank of the Russian Federation of the date of commencement of the winding-up proceeding.

A lower rate of interest payable or a shorter interest-accrual term as compared with the ones envisaged by the present article may be envisaged by agreement between the winding-up receiver and the winding-up creditor.

The interest accruable and payable in accordance with the present article shall be accrued on the sum of the creditors of each priority rating category starting from the date of commencement of the winding-up proceeding until the date of repayment of said claims by the debtor.

The interest accrued in accordance with the present article shall not be taken into account in the count of the number of votes belonging to the bankruptcy creditor or the empowered body at meetings of creditors.

The interest accrued in accordance with the present article shall be paid off simultaneously with the repayment of creditors' claims for money obligations and of the claims addressed to the debtor for compulsory payments in the priority rating procedure established by Article 134 of the present Federal Law.

**3.** During winding-up procedure representatives of the owner of property of the debtor being a unitary enterprise, and also the promoters (stockholders) of the debtor shall enjoy the

rights of persons deemed party to the bankruptcy case.

**4.** Where it is provided for by Item 4 of Article 72 of this Federal Law, in the course of bankruptcy proceedings the decisions pertaining to the scope of authority of a meeting of creditors and the creditor's committee may be adopted by an arbitration court.

**Article 127.** The Winding-up Receiver

**1.** While adopting a decision whereby a debtor is declared bankrupt and winding-up procedure is commenced, the court of arbitration shall approve a winding-up receiver in the manner envisaged by Article 45 of the present Federal Law with a ruling to this effect being issued by the court. The said ruling shall take effect immediately and shall be subject to appeal.

**1.1.** When adopting the decision on declaring the debtor bankrupt and on initiation of bankruptcy proceedings where it is provided for by Item 4 of Article 72 of this Federal Law, an arbitration court shall endorse the bankruptcy receiver whose candidacy shall be presented by the self-regulated organisation of which the interim receiver is a member.

**2.** The winding-up receiver shall act until the date of completion of the winding-up procedure or termination of proceedings in the bankruptcy case.

**Article 128.** Publication of Information on Declaration of a Debtor Bankrupt and Commencement of Winding-Up Procedure

**1.** The publication of information on declaration of a debtor bankrupt and commencement of winding-up procedure shall be executed by the winding-up receiver in the manner envisaged by Article 28 of the present Federal Law. Within ten days after his/her approval the winding-up receiver shall send the information for publication.

**2.** The following information on the declaration of a debtor as bankrupt and commencement of winding-up procedure shall be subject to publication:

the debtor's designation, his address and information, identifying him (the state registration number of an entry on the state registration of the legal entity, the state registration number of an entry on the state registration of the individual businessman and the identification number of the taxpayer);

the name of the court of arbitration responsible for proceedings in the bankruptcy case, and the number of the case;

the date of the arbitration court decision whereby the debtor was declared bankrupt and winding-up procedure was commenced;

the date of closing of the register of creditors' claims set in compliance with Item 1 of Article 142 of the present Federal Law;

the address of the debtor for the purpose of creditors' presenting their claims to the debtor;

information on the winding-up receiver and the relevant self-regulating organisation.

**Article 129.** The Powers of a Winding-up Receiver

**1.** From the date of approval of a winding-up receiver to the date of termination of proceedings in the bankruptcy case or conclusion of an amicable agreement or dismissal of the winding-up receiver, the winding-up receiver shall exercise powers of head of the debtor and other managerial bodies of the debtor, as well as those of the owner of property of the debtor being a unitary enterprise, within the limits, in the manner and on the terms established by the present Federal Law.

**2.** The winding-up receiver shall:

take charge of the property of the debtor and carry out a stocktaking of the property;

include into the Comprehensive Federal Register of Data on Bankruptcy data on the results of an inventory check of the debtor's property within three working days as from the end date thereof;

recruit an appraiser to evaluate the debtor's property in the cases envisaged by the present Federal Law;

take measures for searching, discovering and returning the debtor's property items held by third persons;

take measures for ensuring the preservation of the debtor's property;

notify the debtor's employees of forthcoming dismissal within one month after the commencement of the winding-up proceeding;

present claims to the third persons having debts owing the debtor for collection of such debts in the procedure established by the present Federal Law;

declare in the established procedure objections to the creditors' claims presented to the debtor;

keep a register of creditors' claims, except as otherwise envisaged by the present Federal Law;

deliver for storage the debtor's documents subject to compulsory storage under federal laws. The procedure and terms for the delivery of a debtor's documents for storage are established by federal laws and other normative legal acts of the Russian Federation;

conclude the transactions in the conclusion of which there is an interest only on the consent of a meeting of creditors or of the creditors' committee;

execute the other duties established by the present Federal Law.

**3.** The winding-up receiver shall be entitled to:

dispose of the debtor's property in the manner and on the terms established by the present Federal Law;

dismiss the debtor's employees, in particular, the head of the debtor in the manner and on the terms established by a federal law;

declare a refusal to perform contracts and other transactions in the manner established by Article 102 of the present Federal Law. The winding-up receiver shall not be entitled to declare a refusal to perform the debtor's contracts if there exist circumstances preventing restoration of the debtor's solvency;

Paragraph five is abrogated;

file with an arbitration court in the debtor's name applications for declaring invalid deals and decisions, as well as for applying the effects of invalidity of void deals concluded or performed by the debtor, claims for recovery of losses caused by actions (omission to act) of the debtor's head, persons who are members of the board of directors (supervisory board), the debtor's collective executive body or other managerial body, owner of the debtor's property, persons which have acted on behalf of the debtor in compliance with a power of attorney, other persons that have acted in compliance with the debtor's constituent documents, raise claims for obtaining on demand the debtor's property from third persons, for dissolving contracts made by the debtor and make other actions provided for by federal laws and other regulatory legal acts of the Russian Federation which are aimed at the return of the debtor's property;

exercise other rights relating to the execution of the duties vested therein as established by the present Federal Law.

**4.** Abrogated.

**5.** If grounds established by a federal law exist, the winding-up receiver shall present demands to third persons which having subsidiary liability under a federal law for the debtor's

obligations.

Paragraph 2 is abrogated.

**6.** A meeting of creditors is entitled to take a decision on termination of the debtor's economic activity, provided such termination is not going to cause man-made and/or ecological disasters, the termination of operation of the facilities used to support the operation of pre-school educational organisations, other educational organisations, medical-treatment and disease-prevention institutions, the facilities used for the purpose of organisation of pre-medical aid, urgent and emergency ambulance and out-patient and in-patient medical aid, the utility infrastructure facilities relating to life-support systems, for instance, water, heat, gas and power supply, water removal waste water purification and facilities intended for the treatment, utilisation, decontamination and burial of solid household waste, the facilities intended for lighting urban and rural settlements and the facilities intended for landscaping (hereinafter referred to as "social-significance facilities") needed for supporting the life of citizens. The winding-up receiver shall terminate the debtor's manufacturing of goods (performing of works and providing of services) on the basis of a decision of a meeting of creditors on termination of the debtor's economic activities within three months after the date of such decision.

**Article 129.1.** The Repayment of Debts for Compulsory Payments in the Course of Winding Up by the Founders (Stockholders) of the Debtor, the Owner of the Property of the Debtor Being an Unitary Enterprise and/or a Third Person

**1.** In the course of winding up the claims to the debtor for compulsory payments that have been included in the register of creditors' claims may be repaid by the founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise and/or a third person or third persons in the procedure established by the present article.

If the claims addressed to the debtor for compulsory payments are repaid by the founders (stockholders) of the debtor, the owner of the property of the debtor being an unitary enterprise and/or a third person or third persons all the claims addressed to the debtor for compulsory payments included in the register of creditors' claims shall be repaid.

**2.** A person intending to repay in full the claims addressed to the debtor for compulsory payments shall send a declaration of such intent to the arbitration court that is considering the bankruptcy case, to the winding-up receiver and the empowered bodies.

**3.** The following shall be indicated in the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the applicant;

the term for repayment of the claims addressed to the debtor for compulsory payments not exceeding 30 business days after the issuance of the relevant ruling by the arbitration court.

**4.** The declaration of intent shall be considered by the arbitration court within 14 business days after being received.

If several declarations of intent have been received by the arbitration court from several entities/persons they shall be considered in the chronological order of their being received by the arbitration court.

**5.** According to the results of consideration of the declaration of intent the arbitration court shall issue a ruling upholding the declaration of intent or a ruling on refusal to uphold the declaration of intent if the register of creditors' claims does not contain claims addressed to the debtor for compulsory payments or if the applicant decided not to repay the claims addressed to the debtor for compulsory payments before the consideration of such declaration.

**6.** The following shall be indicated in the arbitration court ruling upholding the declaration of intent:

the name (for a legal entity) or the surname, first name and patronymic (for a natural person) of the person that repays the claims addressed to the debtor for compulsory payments ;

the amount of the claims addressed to the debtor for compulsory payments , the principal debt amount and the forfeit money (fines and penalties) accrued;

the term and procedure for repayment of the claims addressed to the debtor for compulsory payments ;

the date of the court-room hearing on the results of repayment of the claims addressed to the debtor for compulsory payments ;

bank account details and also the other information required for remittance of funds for the purpose of repaying the claims addressed to the debtor for compulsory payments .

**7.** The consideration of the declaration of the intent to repay the claims addressed to the debtor for compulsory payments shall be adjourned until the date of the consideration of the results of repayment of the claims addressed to the debtor for compulsory payments if a similar declaration has been earlier received from another person.

The consideration of the declaration of the intent to repay the claims addressed to the debtor for compulsory payments may be adjourned if there is a dispute as to the amount and composition of the claims addressed to the debtor for compulsory payments until the court judgement establishing the composition and amount of the claims to the debtor for compulsory payments included in the register of creditors claims becomes final.

**8.** For the purposes of repayment of the claims addressed to the debtor for compulsory payments the empowered body shall serve a notice to the arbitration court indicating the date of service of the notice, the surname, first name, patronymic and position of the official who has signed the notice, and also the information required according to the rules for completion of the payment documents confirming that funds have been remitted to repay the claims addressed to the debtor for compulsory payments, with the amount of claim in respect of each of the beneficiaries of the funds being specified.

**9.** Within the term established by the arbitration court ruling upholding the declaration of intent the applicant shall remit funds in the amount and in the procedure specified in the ruling.

**10.** Upon the expiry of the term established by the arbitration court for repayment of the claims addressed to the debtor for compulsory payments the applicant shall send an application to the arbitration court for deeming the claims addressed to the debtor for compulsory payments repaid and for replacing the creditor in the register of creditors' claims.

Attached to the application shall be payment documents acknowledging that funds have been remitted in the amount and in the procedure specified in the arbitration court ruling upholding the declaration of intent.

**11.** According to the results of consideration of the application for deeming the claims addressed to the debtor for compulsory payments repaid and for replacing the creditor in the register of creditors' claims, provided the repayment completed complies with the arbitration court ruling upholding the declaration of intent the arbitration court shall issue a ruling on deeming the claims addressed to the debtor for compulsory payments repaid and on replacing the creditor in the register of creditors' claims.

The claims of the person that has repaid the claims addressed to the debtor for compulsory payments shall be recorded in the register of creditors' claims in the same amount and with the same priority rating as the repaid claims to the debtor for compulsory payments.

**12.** If the claims addressed to the debtor for compulsory payments have not been repaid in full or have been repaid in breach of the procedure or term for repayment

established by the arbitration court ruling the arbitration court shall issue a ruling on refusal to deem the claims addressed to the debtor for compulsory payments repaid.

The funds remitted shall be refunded to the applicant within ten business days after the arbitration court ruling on refusal to deem the claims addressed to the debtor for compulsory payments repaid becomes final.

The remittance of funds in excess over the amount of money envisaged by the arbitration court ruling upholding the declaration of intent shall not be deemed ground for the arbitration court to issue a ruling on refusal to deem the claims addressed to the debtor for compulsory payments repaid, and equally, for increasing the amount of claims to the debtor of the person that has repaid the claims addressed to the debtor for compulsory payments.

The funds remitted in excess over the amount of money envisaged by said ruling shall be refunded to the applicant within ten business days after the arbitration court ruling on deeming the claims addressed to the debtor for compulsory payments repaid and on replacing the creditor in the register of creditors' claims becomes final.

**13.** The Government of the Russian Federation shall establish a procedure for settlements of accounts for the purpose of repaying the claims addressed to a debtor for compulsory payments.

**14.** The repayment of the claims addressed for compulsory payments to a debtor for which the present Federal Law established details of implementation of the proceedings applicable in a bankruptcy case is admissible if there is a provision for this in the present Federal Law establishing the details of bankruptcy of debtors of specific categories.

**Article 130.** Appraising the Debtor's Property

**1.** The qualified receiver shall recruit an appraiser for assessing the cost of the debtor's property and shall pay for the services thereof from the debtor's property where it is provided for by this Federal Law.

An appraisal of the debtor's property shall be carried out by an appraiser that has to meet the requirements established by the legislation of the Russian Federation on appraising, and he/she shall not be an interested person in respect of the qualified receiver, the debtor or the debtor's creditors.

A meeting of creditors or the creditors' committee is entitled to designate a person in which the duty to make payment for said services of appraisers is vested, given the person's consent, with the expenses incurred by the person being compensated for on an out-of-order basis with the debtor's property.

A report on the appraisal of the debtor's property is subject to inclusion by the qualified receiver into the Comprehensive Federal Register of Data on Bankruptcy within two working days as from the date of receiving a copy of this report in electronic form.

**2.** If under this Federal Law the engagement of the appraiser for assessing the cost of the debtor's property is mandatory, the appraiser's report on assessing the property of the debtor being a unitary enterprise or the property of the debtor being a joint stock company (hereinafter also referred to as the valuation report) that have over twenty five per cent of the voting stocks under the state or municipal ownership shall be sent by the receiver or by the bankruptcy receiver to the federal executive power body authorised by the Government of the Russian Federation for preparing opinions in respect of appraisers' reports (hereinafter referred to as the body authorised to prepare opinions in respect of appraisers' reports).

**3.** Within 30 days after the receipt of the appraisal report the body empowered to prepare statements on appraisers' reports is entitled to send a substantiated statement concerning that report to the qualified receiver. The procedure for preparation of said

statement is established by the regulator. If a positive statement or no statement is received upon the expiry of the established term the meeting, a meeting of creditors or the creditors' committee shall establish an initial selling price for the enterprise or other property of the debtor on the basis of the market value of such property assessed in accordance with the appraisal report.

**4.** A negative statement of the body empowered to prepare conclusions on the assessors' reports, that contains a substantiation of the appraisal report's non-compliance with the legislation of the Russian Federation on appraising, federal appraisal standards or the unreliability of the information used in the appraisal report (hereinafter referred to as "the non-compliance of the appraisal report with the requirements applicable to such report") shall be sent to the qualified receiver and to the self-regulating organisation of appraisers in which the appraiser that has drawn up this report is member, together with a copy of the appraisal report submitted to the body authorised to prepare conclusions on assessors' reports.

Within 14 days after the receipt of such negative statements said self-regulating organisation of appraisers shall present an expert statement to the qualified receiver and to the empowered body concerning the appraisal report as containing a substantiation of its compliance or non-compliance with the requirements applicable to such report.

If said self-regulating organisation of appraisers has presented an expert statement on the non-compliance of the appraisal report with the requirements applicable to such report the market value of the property assessed according to that report shall be deemed unreliable and it shall not be used to confirm the initial selling price for the enterprise or another property of the debtor.

If said self-regulating organisation of appraisers has presented an expert statement on the compliance of the appraisal report with the requirements applicable to such report or if the appraisal report has been modified by the appraiser with due regard to the expert statement received then the qualified receiver shall send said expert statement concerning the appraisal report and/or the modified appraisal report to the empowered body, and the meeting of creditors or the creditors' committee shall establish an initial selling price for the enterprise of the debtor or another property of the debtor on the basis of the market value assessed in accordance with the appraisal report.

**5.** On the basis of the decision of the meeting of creditors or of the creditors' committee an appraisal of the debtor's movable property whose balance-sheet value is below 100,000 roubles as of the last accounting date preceding the date of filing of the application for deeming the debtor bankrupt may be carried out without an appraiser being invited.

**6.** The founder (stockholders) of the debtor or the owner of the property of the debtor being an unitary enterprise, bankruptcy creditors and empowered bodies are entitled to take appeal from the results of an appraisal of the debtor's property, in the procedure established by a federal law.

**Article 131.** The Debtor's Estate

**1.** All the property of a debtor available as of the date of the winding-up procedure commencement and revealed during winding-up procedure shall be deemed the estate of the debtor.

**2.** The following shall be excluded from the property of the debtor that makes up the debtor's estate: property exempt from alienability, rights in rem relating to the debtor's personality, in particular, rights based on a held licence for the pursuance of specific types of activity and also other property specified by the present Federal Law.

The property being the subject matter of a pledge/mortgage shall be taken into account within the debtor's property and it shall be subject to compulsory appraisal.

In the cases established by a federal law, the property which is the mortgage cover of a debtor that carried out, in accordance with Federal Law No. 152-FZ of November 11, 2003 on Mortgage Securities (hereinafter, the "Federal Law on Mortgage Securities") an emission of bonds with mortgage cover shall be excluded from the bankruptcy assets of a debtor, and the demands of the creditors holding bonds with mortgage cover shall be satisfied in the procedure established by the Federal Law on Mortgage Securities.

3. For the purpose of keeping appropriate record of the debtor's property that makes up the debtor's estate, the winding-up receiver shall be entitled to recruit accountants, auditors and other specialists.

**Article 132.** The Debtor's Property Not Included in the Debtor's Estate

1. If there is property exempt from alienability within the composition of the debtor's property, the winding-up receiver shall notify thereof the owner of the property exempt from alienability.

2. The owner of the property exempt from alienability shall accept this property from the winding-up receiver or attach it to other persons within six months after the date of receipt of the notice from the winding-up receiver.

3. If the owner of the property exempt from alienation defaults on the duty specified in Item 2 of the present article upon the expiration of six months after the date of receipt of the notice from the winding-up receiver all expenses towards the maintenance of the property exempt from alienation shall be borne by the owner of this property, except as otherwise established by the present article.

4. Socially significant facilities, cultural heritage objects (monuments of history and culture) of nations of the Russian Federation and other objects whose sale in accordance with the legislation of the Russian Federation shall take the form of a trade that is a tender, as well as the objects, in respect of which agreements on public-private partnership or municipal-private partnership are concluded, shall be sold according to the procedure established by Article 110 of this Federal Law.

The conditions sine qua non of the tender for sale of said items shall be buyers' undertaking to ensure the appropriate maintenance and use of said items in accordance with their intended purpose and also honouring the other obligations established in accordance with the legislation of the Russian Federation.

A sale of a cultural heritage item (monument of history and culture) of the peoples of the Russian Federation shall be carried out in the observance of the requirements established by Item 4 of Article 110 of the present Federal Law.

A contract of purchase/sale of a cultural heritage item (monument of history and culture) of the peoples of the Russian Federation shall comply with the requirements established by the legislation of the Russian Federation on the privatisation of state and municipal property as applicable to a contract of purchase/sale of cultural heritage items (monuments of history and culture) of the peoples of the Russian Federation.

In the event of sale of utility infrastructure facilities the conditions sine qua non of the tender also include buyers' undertaking to provide goods (works and services) at regulated prices (tariffs) in accordance with the established price (tariff) mark-ups to the citizens and organisations which operate social-use housing facilities and also to the organisations financed with funds of the budgets of the budget system of the Russian Federation and also to provide said consumers with the privileges established by federal laws, laws of subjects of the Russian Federation and normative legal acts of local self-government bodies, including without limitation privileges for payment for goods (works and services).

Paragraphs 6 - 8 are abrogated.

**4.1.** Unless facilities of social significance, cultural heritage sites (monuments of history and culture) of the peoples of the Russian Federation or utility infrastructure facilities have been sold in the procedure established Item 4 of the present article, the further procedure for the sale thereof shall be established by the meeting of creditors or by the committee of creditors, inter alia, by means of holding a new sale, by means of public offer in the procedure established Article 139 of the present Federal Law, or an invitation to make offers within 30 days after the date of publication of the relevant announcement.

In this case, participants in bidding for the sale of the debtor's property by public offer, and also the persons which have sent an offer shall undertake to conclude an agreement with local self-government bodies on observance of the conditions mentioned in Item 4 of the present article.

**4.2.** After the completion of bidding for the sale of property by tender, by means of public offer or of receipt of acceptance of one of the offers received the local self-government body shall conclude an agreement on observance of the conditions mentioned in Item 4 of the present article with a buyer of the facilities of social significance.

In the event of a substantial breach or default by the buyer of the facilities of social significance of the agreement on observance of the conditions mentioned in Item 4 of the present article that agreement and the contract of purchase/sale of the facilities of social significance shall be subject to rescission by a court on an application of the local self-government body.

If the court rescinds the agreement and the contract of purchase/sale of the facilities of social significance such facilities are subject to transfer for ownership of the municipal formation, and the amounts of money paid under the contract of purchase/sale of the facilities of social significance shall be refunded to the buyer at the expense of the local budget.

**5.** The items of social significance that have not been sold in the procedure established by Items 4 and 4.1 of the present Article are subject to transfer into the municipal ownership of the relevant municipal formation as represented by local self-government bodies, with said bodies being notified by the winding-up receiver.

Social-use housing facilities are subject to transfer to the owner of such housing facilities.

**6.** The transfer of the items of social significance specified in Item 5 of the present article and of social-use housing facilities into municipal ownership and to the owner of the social-use housing facilities respectively shall be carried out without any additional conditions whatsoever on the basis of an arbitration court ruling within the term set by such ruling.

**7.** The officials of governmental bodies and the officials of local self-government bodies who do not observe the provisions of Items 5 and 6 of the present article shall be held accountable as envisaged by a federal law.

**8.** Abolished from January 1, 2005.

**9.** Abolished from January 1, 2005.

**10.** Abolished from January 1, 2005.

**11.** Abolished from January 1, 2005.

**Article 133.** Debtor's Accounts in Winding-Up

**1.** The winding-up receiver shall use only one debtor's account in a bank or other credit organisation (the principal account of the debtor), or if it is not available or if transactions cannot be accomplished on existing accounts, she/he shall open such an account during winding-up, except for the cases stipulated by this Federal Law.

If third persons have a foreign-currency denominated debt to the debtor the winding-up receiver shall be entitled to open or use the debtor's foreign-currency denominated account in the manner established by federal law.

The other debtor's accounts in credit organisations known as of the time of commencement of the winding-up and also discovered during the winding-up, except for the accounts opened for settlements relating to an activity relating to trust administration, and special broker's activities of a professional participant in the securities market, special depository accounts, clearing accounts and pledged accounts, shall be subject to closure by the winding-up receiver as they are discovered, except as otherwise established by the present article. The debtor's cash balance of the said accounts shall be remitted to the debtor's principal account.

If a bank or another credit organisation defaults on observing bank account terms due to the revocation of the organisation's banking activity licence, the winding-up receiver shall be entitled to assign the right of claim of cash from the bank account in the manner envisaged by Article 140 of the present Federal Law.

**2.** The debtor's principal account shall be credited with the debtor's funds coming in as the winding-up progresses.

Payments to creditors shall be made from the debtor's principal account in the manner envisaged by Article 134 of the present Federal Law.

**3.** The winding-up receiver shall present a report on the uses of the debtor's funds to the court of arbitration or creditors' meeting (creditors' committee) if requested to do so, but not more than once a month.

**4.** If a debtor carried out, in accordance with the Federal Law on Mortgage Securities, an emission of bonds with mortgage cover, then the winding-up receiver must open a separate account in a bank or in another credit organisation for entering thereto the monetary funds representing the mortgage cover and which are received in the course of the bankruptcy proceedings in execution of the liabilities, the rights of demand on which make up the mortgage cover, and also open a special mortgage account for entering thereto the monetary funds received in the course of the realisation of the mortgage cover.

If a debtor carried out several emissions of bonds with different mortgage covers, then a special mortgage account shall be opened for each mortgage cover.

From the special mortgage account payments shall be made to the creditors holding bonds with the relevant mortgage cover, and also the payments for the current liabilities connected with the realisation of the mortgage cover.

**5.** The provisions of this article do not extend to special accounts for the purposes of a capital repairs fund maintained for common property in the block of flats, in particular if there exist an outstanding debt for a loan and/or credit received for performance of capital repair of common property in a block of flats, until the liability owing the creditor for the loan and/or credit received for performance of capital repair of common property in this block of flats is discharged in full.

**Article 134.** The Priority Ranking of Creditors' Claims

**1.** The following shall be repaid with the bankrupt's estate on an out-of-order basis: creditors' claims for current payments prior to the creditors whose claims had come into being before the acceptance of the application for deeming the debtor bankrupt.

If the termination of the activities of the debtor organisation or of its structural units may cause man-made and/or ecological disasters or human death also expenses towards measures for prevention of such consequences shall be repaid on an out-of-order basis.

**2.** The creditors' claims in respect of the current payments shall be satisfied in the

following order:

in the first turn shall be satisfied the claims in respect of the current payments connected with the court costs related to the bankruptcy case, payment of remuneration to the qualified receiver, recovery of debts on payment of remuneration to the persons that have discharged the duty of the qualified receiver in the bankruptcy case, claims in respect of the current payments connected with payment for the activities of the persons whose engagement by the qualified receiver for discharging the duties imposed thereupon in the bankruptcy case in compliance with this Federal Law is mandatory, including the recovery of debts on payment for the activities of the cited persons;

in the second turn shall be satisfied the claims for labour wages of the persons who are working or have been working (after the date of acceptance of an application for declaring the debtor bankrupt) under a labour contract, and the claims for paying severance benefits;

in the third turn shall be satisfied the claims for paying for the activities of the persons engaged by the qualified receiver to ensure the discharge of the duties in the bankruptcy case imposed thereupon, in particular for recovery of debts on payment for the activities of these persons, except for the persons cited in Paragraph Two of this item;

in the fourth turn shall be satisfied the claims related to community charges, operational payments which are necessary for the exercise of the debtor's activities;

in the fifth turn shall be satisfied the claims in respect of the current payments.

The creditors' claims in respect of the current payments that pertain to the same turn shall be satisfied in calendar order.

2.1. The claims of the debtor's head, his/her deputies, of the persons included into the debtor's collective executive body, of the debtor's chief accountant, his/her deputies, of the head of the debtor's branch or representative office, of his/her deputies, of the chief accountant of the debtor's branch or representative office, of his/her deputies for paying thereto a discharge allowance and/or payment of other compensations whose rate is fixed by a corresponding labour contract, if it is terminated, as regards their part exceeding the minimum rate of such payments fixed by the labour legislation, shall not pertain to creditors' claims in respect of the current payments and shall be satisfied after allowing the claims of creditors of the third-turn provided for by Paragraph Four of Item 4 of this article.

3. While considering a creditor's complaint concerning current payments the arbitration court is entitled to determine the amount and priority rating for meeting the creditor's claim for current payments if it upholds the complaint.

4. Creditors' claims shall be satisfied in the following order:

in the first turn shall be made settlements in respect of the claims of the citizens with respect to which the debtor is liable for inflicting harm to their life or health by way of capitalization of appropriate time-based payments, as well as settlements in respect of other claims established by this Federal Law;

in the second turn shall be made settlements as to payment of severance benefits and/or labour wages to the person who are working or have been working under a labour contract and as to paying remunerations to authors of the results of intellectual activities;

in the third turn, settlements shall be made with other creditors, in particular with creditors under net obligations.

After making settlements with the third-turn creditors settlements shall be made with creditors as to satisfaction of claims under the deal declared invalid on the basis of Item 2 of Article 61.2 and Item 3 of Article 61.3 of this Federal Law.

The creditors' claims in respect of the obligations secured by pledge of the debtor's property shall be allowed on account of the value of the subject of pledge in the procedure established by Article 138 of this Federal Law.

5. When remuneration is paid for the labour of the debtor's employees who keep

working within the winding-up period and who have been hired within the winding-up period, the winding-up receiver shall carry out the withholdings required under law (alimony, income tax, trade union dues, insurance premiums, etc.) and effect the payments for which the employer is responsible under federal law.

**Article 135.** The Amount of and Payment Procedure for First Priority Ranking Creditors' Claims

**1.** The amount of claims of the citizens to which the debtor is liable for harm to life or health shall be calculated by means of capitalising the relevant time-based payments that were established as of the date of adoption by the court of arbitration of the decision whereby the debtor was declared bankrupt and winding-up was commenced and which are payable to the citizens until they reach the age of 70 but at least for ten years. The procedure and terms for capitalising relevant time-based payments shall be determined by the Government of the Russian Federation.

If the age of a citizen exceeds 70 years, the period of capitalisation of relevant time-based payments shall make up ten years.

**2.** The disbursement of the capitalised time-based payments of which the amount is determined in the manner set out in Item 1 of the present article shall discharge the relevant obligation of the debtor.

**3.** On the citizen's consent his/her right of claim in the amount of capitalised time-based payments shall be transferred to the Russian Federation.

If it is transferred to the Russian Federation, the said claim shall also be met as top priority.

In this case the debtor's obligation to the citizen in the form of capitalised time-based payment disbursement shall be transferred to the Russian Federation and shall be performed by the Russian Federation in compliance with a federal law in the manner determined by the Government of the Russian Federation.

Abrogated.

Claims for payment of compensation in excess of the compensation for harm shall be satisfied in the amount fixed by the Town-Planning Code of the Russian Federation.

**Article 136.** The Amount of and Procedure for Meeting Second Priority Ranking Creditors' Claims

**1.** While determining the amount of claims relating to the disbursement of severance benefits and wages/salaries of the persons who are working or have been working under a labour contract, and disbursement of royalties to the authors of the results of intellectual activity, account shall be taken of the outstanding debts that have occurred as of the date when the court of arbitration accepted the application for declaring the debtor bankrupt and also interest for breach of the established term for the disbursement of wages/salaries, vacation payment, severance payment and other disbursable amounts payable to the employee in the amount and in the procedure established in accordance with the labour legislation.

**2.** If, within the period from the issuance by the court of arbitration of the ruling on acceptance of the application for declaring the debtor bankrupt to the time when the debtor is declared bankrupt and winding-up is commenced, the debtor has not fulfilled in full his/her/its obligations relating to remuneration for the labour of the persons who are working or have been working under a labour contract and disbursement of royalties to the authors of the results of intellectual activity, the amounts of money that have not been disbursed before the adoption by the court of arbitration of the decision on declaring the debtor bankrupt and

commencing winding-up shall be met as part of the current claims.

**3.** The claims of the debtor's head, his/her deputies, of the persons included into the debtor's collective executive body, of the debtor's chief accountant, his/her deputies, of the head of the debtor's branch or representative office, of his/her deputies, of the chief accountant of the debtor's branch or representative office, of his/her deputies for paying thereto a discharge allowance and/or payment of other compensations whose rate is fixed by a corresponding labour contract, if it is terminated, as regards their part exceeding the minimum rate of such payments fixed by the labour legislation, shall not pertain to the claims of second-turn creditors and shall be allowed after satisfying the claims of third-turn creditors.

**4.** An arbitration court on the basis of an application of the bankruptcy receiver is entitled to reduce the amount of claims to labour wages of the debtor's employees who are working or were working under labour contracts which are subject to satisfaction within the composition of creditors' claims in respect of the current payments and/or within the composition of claims of second-turn creditors, if within six months before the acceptance by the arbitration court of an application for declaring the debtor bankrupt the rate of labour wages of such persons has been increased as compared to the rate of labour wages fixed before the start of the cited time period. This application is subject to consideration within the case on the debtor's bankruptcy.

In the event of the adoption by an arbitration court of the decision cited in Paragraph One of this item, the claims of relevant persons concerning compensation for the difference between the increased rate of labour wages and the initial rate of labour wages shall be allowed after satisfying the claims of third-turn creditors.

**5.** The claims of the second-turn creditors are subject to proportionate satisfaction in the following order:

in the first turn shall be satisfied the claims for paying severance benefits and/or labour wages to the persons who are working or have been working under a labour contract in the amount of at most 30 thousand roubles for each month per person;

in the second turn shall be satisfied the remaining claims for paying severance benefits and/or labour wages to the persons who are working or have been working under a labour contract;

in the third turn shall be satisfied the claims for paying remuneration to authors of the results of intellectual activities.

**Article 137.** The Claims of Third Priority Ranking Creditors

**1.** While assessing the amount of third priority ranking creditors' claims one shall take into account the claims of the bankruptcy creditors and authorised bodies.

**2.** If, in the period from the issuance by the court of arbitration of the ruling on accepting the application for declaring the debtor bankrupt to the commencement of winding-up, the debtor has not paid in full mandatory payments, the claims that have not been met before the adoption by the court of arbitration of the decision on declaring the debtor bankrupt and commencing winding-up procedure shall be met as top priority.

**3.** The claims of third priority ranking creditors for compensation of losses in the form of lost advantage, collection of forfeit money (fines, penalties) and other financial sanctions, in particular, those imposed for a default on or improper performance of the duty to make mandatory payments shall be recorded separately in the register of creditors' claims and they shall be met after the payment of the principal debt and payable interest.

**4.** The features of record-keeping and meeting the claims of third priority ranking creditors related to the obligations secured by a pledge/mortgage of the debtor's property shall be defined by Article 138 of the present Federal Law.

**5.** The specifics of estimating the amount of creditors' claims resulting from financial agreements are defined by Article 4.1 of this Federal Law.

**Article 138.** Creditors' Claims Relating to Obligations Secured by a Pledge/Mortgage of the Debtor's Property

**1.** Seventy per cent of the assets derived from realization of the subject of pledge shall be sent for satisfaction of the creditor's claims in respect of the obligation secured by pledge/mortgage of the debtor's property but at most the principal amount of debt related to the obligation secured by pledge and interest due.

The remainder of the monetary funds derived from realisation of the subject of pledge shall be entered onto the debtor's special bank account in the following manner:

twenty per cent of the sum derived from selling the subject of pledge - for satisfying claims of first-priority and second-priority creditors, if debtor's other property is not sufficient for satisfying the said claims;

the remaining monetary funds - for covering court costs, outlays on the remuneration of qualified receivers and payment for the services rendered by the persons attracted by a qualified receiver for the purpose of discharging the duties imposed thereupon.

**2.** Where the pledge of the debtor's property secures the claims of a bankruptcy creditor under a credit contract, eighty per cent of the funds derived from the sale of the subject of pledge shall be allocated for satisfaction of the bankruptcy creditor's claims under the credit contract secured by pledge of the debtor's property but at most the principal amount of debt in respect of the obligation secured by pledge and interest due. The remainder of the amount derived from realization of the subject of pledge shall be entered into the debtor's special bank account in the following manner:

fifteen per cent of the sum derived from selling the subject of pledge - for satisfaction of claims of first-priority and second-priority creditors, if other debtor's property is insufficient for satisfaction of the said claims;

the remaining monetary funds - for covering court costs, outlays on the remuneration of qualified receivers and payment for the services rendered by the persons attracted by a qualified receiver for the purpose of discharging the duties imposed thereupon.

Paragraph 4 is abrogated.

Paragraph 5 is abrogated.

**2.1.** Monetary funds intended for the settlement of claims of creditors of the first and the second level and left on the debtor's special bank account after the complete satisfaction of such claims, shall be directed towards the settlement of claims of the competition creditors provided for by a pledge of the debtor's property, not settled at the expense of the cost of the pledge in connection with the withdrawal of a part of the cost to meet the claims of the creditors of the first and of the second level in conformity with Items 1 and 2 of the present Article.

Monetary funds left after the complete satisfaction of the claims of the creditors of the first and of the second level and of the claims of the creditor provided for by a pledge of the realised property, shall be included into the competition mass.

Monetary funds left after the complete settlement of the court expenditures, of outlays on payment out of the remuneration to the qualified receivers and on the remuneration of the services of the persons invited by the qualified receiver to provide for the execution of the duties imposed upon him, shall be included into the competition mass.

Creditors' claims not satisfied at the expense of the cost of the object of pledge on the liabilities provided for by the pledge of the debtor's property, shall be satisfied in the composition of claims of the creditors' of the third level.

**2.2.** The creditor's claims in respect of the obligation secured by the pledge of rights

under an agreement of bank account shall be satisfied by way of writing off by a bank on the basis of the bankruptcy receiver's order monetary assets from the debtor's pledged account and their issuance to the creditor under the obligation secured by the pledge of rights under the agreement of bank account or their entry onto the account cited by such creditor.

The claims of the creditors cited in this item shall be satisfied in the amount of 70 per cent of the monetary assets kept on the pledged account or, if the pledge of rights under an agreement of bank account secures the claims of the bankruptcy creditor under a credit agreement, in the amount of eighty per cent of the monetary assets kept on the cited account, but no more than the amount of the pledge-secured rights under the agreement of bank account.

The monetary assets left after satisfaction of the claims of the creditors provided for by this item shall be used according to the rules provided for by Items 1-2.1 of this article.

The non-satisfied claims of the bankruptcy creditor under the obligations which are secured by pledge of rights under an agreement of bank account shall be satisfied within the composition of creditors' claims of the third turn.

**3.** The winding-up receiver shall open a separate debtor's account with a credit institution intended solely for satisfaction of creditors' claims on account of the monetary funds derived from realization of the subject of pledge in compliance with this article (debtor's special bank account).

It shall be specified in the contract of the debtor's special bank account that the monetary funds kept on the debtor's special bank account may only be withdrawn for satisfaction of claims of first-priority and second-priority creditors, as well as for covering court costs, outlays on the remuneration of qualified receivers and on payment for services of the persons attracted by the qualified receiver for the purpose of discharging the duties imposed thereupon.

Monetary funds shall only be withdrawn from the debtor's special bank account at the direction of the winding-up receiver for the purpose of satisfaction of creditors' claims in the procedure provided for by this article.

Transactions made in defiance of this item's requirements may be declared invalid.

**4.** The subject of pledge shall be sold in the procedure established by Items 4, 5, 8-19 of Article 110 and Item 3 of Article 111 of this Federal Law, and taking account of the provisions of the present Article.

The initial selling price of the object of pledge, the procedure and terms for conducting bidding, the procedure and terms for ensuring the preservation of the object of pledge shall be defined by the bankruptcy creditor whose claims are secured by the pledge of the property being sold. Said information is subject to inclusion by the qualified receiver at the expense of the debtor in the Unified Federal Register of Information on Bankruptcy at least 15 days before the date of commencement of the sale of the object of pledge at a public sale.

If disagreements occur between the bankruptcy creditor under the obligation secured by the pledge of the debtor's property and the bankruptcy receiver or the persons participating in the bankruptcy case concerning the issues of initial selling price, the procedure and terms for conducting the public sale for the sale of the object of pledge or the procedure and terms for ensuring the preservation of the object of pledge, then each of them has the right to file an application within 10 days after the date of inclusion of information in the Unified Federal Register of Information on Bankruptcy for resolution of such disagreements with the arbitration court that is considering the bankruptcy case according to the results of consideration of which the arbitration court shall issue a ruling on setting the initial selling price, endorsing a procedure and terms for conducting the public sale for the sale of the object of pledge, a procedure and terms for securing the preservation of the object of pledge, which ruling is subject to appeal. If the sale of the object of pledge takes place jointly with the sale of another

property of the debtor the procedure and terms of such sale shall not be established without the consent in writing of the bankruptcy creditor whose claims are secured by the pledge of the property being sold.

If divergences of opinion arise between the winding-up creditor on a liability provided for by a pledge of the debtor's property, and the winding-up receiver, as well as the bankruptcy creditors in respect of the obligations secured by pledge of the same debtor's property, in the issues on the procedure and terms for holding a bidding on the realisation of the object of pledge, each of them has the right to file an application for the resolution of such divergences of opinion to the arbitration court, considering the case on bankruptcy, in accordance with the results of the consideration of which the arbitration court shall pass a ruling on the approval of the procedure and terms for holding a bidding on the realisation of the object of pledge, which may be appealed against.

**4.1.** If the repeated bidding is recognised as not having taken place, on the liabilities provided for by a pledge of the debtor's property, the competition creditor has the right to leave the object of pledge for himself with its estimate in a sum ten per cent less than the starting selling price at the repeated bidding.

If the winding-up creditor on the liabilities provided for by a pledge of the debtor's property leaves the object of pledge for himself, he is obliged to transfer monetary funds in an amount, defined in accordance with Items 1 and 2 of the present Article, onto the special bank account in conformity with the procedure, established in Item 3 of the present Article, within ten days from the date of directing to the winding-up receiver an application for leaving the object of pledge by himself.

If the creditor has not made use of the right to leave the object of pledge for himself on the liabilities provided for by a pledge of the debtor's property, within 30 days from the day of recognising the repeated bidding as not having taken place, it shall be sold in a public offer in accordance with the procedure established in Item 4 of Article 139 of the present Federal Law.

**4.2.** The bankruptcy creditor under the obligations secured with the pledge of the debtor's property has the right to retain the object of pledge in the course of bidding for the sale of the debtor's property by means of public offer at any stage of reducing the price of such property, provided there are no applications for participation in bidding at the price set for that stage of reduction of the price of the property.

If he retains the object of pledge in the course of the public sale for the sale of property by means of public offer the bankruptcy creditor under the obligations secured by the pledge of the debtor's property shall remit the amount of money defined in keeping with Items 1 and 2 of the present article to a special bank account in the procedure established Item 3 of the present article simultaneously with the sending of an application for retaining the object of pledge to the bankruptcy receiver.

From the date on which the funds come to the special bank account and the application for retaining the object of pledge is received by the qualified receiver the public sale for the sale of the object of pledge shall be subject to termination.

**5.** Pledge holders' claims under contracts of pledge made with the debtor to secure the discharge of obligations of other persons shall be likewise satisfied in the procedure provided for by this article. The said pledge holders shall enjoy the rights of bankruptcy creditors whose claims are secured by pledge of the debtor's property, in all procedures applied in a bankruptcy case.

**6.** Expenses towards the preservation of the object of pledge and the sale thereof at the public sale shall be covered with the proceeds from the sale of the object of pledge before these funds are spent in accordance with Items 1 and 2 of the present article.

**Article 139.** Selling the Debtor's Property

**1.** Within ten working days from the date of the inclusion of data on the results of an inventory check of the debtor's property into the Comprehensive Federal Register of Data on Bankruptcy the bankruptcy creditor or an authorised body are entitled, if the rate of claim of the bankruptcy creditor or the rate of claim of the authorised body exceeds two per cent of the total amount of the claims of bankruptcy creditors and authorised bodies included into the register of creditors' claims, to send to the bankruptcy receiver a demand to recruit an appraiser citing the property to be appraised.

Within two months as from the date of receiving such claim the bankruptcy receiver is bound to ensure the appraisal of the cited property on account of the debtor's property.

A report on the appraisal of the debtor's property is subject to inclusion by the bankruptcy receiver to the Comprehensive Federal Register of Data on Bankruptcy within two working days as from the date of receiving a copy of this report in the electronic form.

A repeated appraisal of the property of the debtor in respect of which a claim has been earlier raised for making an appraisal in compliance with this item shall be made, if bankruptcy creditors or authorized bodies defray the cost of making such appraisal.

**1.1.** Within a month as from the end date of an inventory check of the debtor's enterprise or of an appraisal of the debtor's property (hereinafter referred to in this article as the debtor's property), if such appraisal has been conducted on demand of the bankruptcy creditor or of the authorised body in compliance with this Federal Law, the bankruptcy receiver is bound to present to a meeting of creditors or to a creditors' committee for endorsement an offer to sell the debtor's property including data on the composition of this property, on the time for its sale, on the form of sales (auction or tender), on the terms of a tender (if the enterprise is to be sold by way of holding a tender in compliance with the legislation of the Russian Federation), on the form of bidding as regards the price of this property, on the initial selling price thereof, on the mass media and Internet sites where it is planned accordingly to publish and insert an announcement of this property's sale, on the time of publishing and inserting the cited announcement.

If within two months as from the date of presenting by the bankruptcy receiver to a meeting of creditors or to a creditors' committee an offer to sell the debtor's property a meeting of creditors or a creditors' committee does not endorse such offer comprising data on the composition of this property, on the time for its sale, on the form of sales (auction or tender), on the terms of a tender (if the enterprise is to be sold by way of holding a tender in compliance with the legislation of the Russian Federation), on the form of bidding as regards the price of this property, on the initial selling price thereof, on the mass media and Internet sites where it is planned accordingly to publish and insert an announcement of this property's sale, on the time of publishing and inserting the cited announcement, the bankruptcy receiver is entitled to file with an arbitration court a petition for endorsement of the procedure for, time and terms of selling this property.

A ruling of an arbitration court on endorsement of the procedure for, time and terms of selling the debtor's enterprise may be appealed against.

**2.** If in the course of the winding up circumstances occur due to which there is a need for changing the procedure, term and/or conditions of the sale of the debtor's property the winding-up receiver shall present proposals for such changes to a meeting of creditors or the creditors' committee for confirmation.

**3.** After the completion of the stock-taking and appraisal of the debtor's property the winding-up receiver shall start selling it. The sale of the debtor's property shall be carried out in the procedure established by Items 3-19 of Article 110 and by Item 3 of Article 111 of the present Federal Law, with account being taken of the details established by the present article. The appraisal of the debtor's property shall be carried out in the procedure established by Article 130 of the present Federal Law. Proceeds from the sale of the debtor's property shall be included in the composition of the debtor's property.

**4.** If a repeated sale of the debtor's property is deemed unaccomplished or if no contract of purchase/sale is concluded with the sole participant therein and also if no contract of purchase/sale is concluded according to the results of the repeated sale then the debtor's property sold at the sale is subject to sale by means of a public offering.

When the debtor's property is being sold by means of a public offering the following shall be indicated in the announcement of the sale apart from the information envisaged by Article 110 of the present Federal Law: the amount of reduction in the initial selling price of the debtor's property and the term upon the expiry of which said initial price is gong to be successively reduced. As this is being done, the initial selling price of the debtor's property shall be set in the amount of the initial price specified in the announcement of the sale of the debtor's property at the repeated sale.

The organiser of the sale shall consider the participation application for the sale and take a decision on clearing an applicant for bidding in the procedure established by Article 110 of the present Federal Law.

If within the established term there no participation application is submitted for the sale as containing a bid offering a price for the debtor's property not below the established initial selling price of the debtor's property then the initial selling price of the debtor's property shall be reduced within the term indicated in the announcement of the sale of the debtor's property by means of a public offering.

The right to acquire the debtor's property shall be held by the participant in the sale of the debtor's property by means of a public offering which submitted a participation application for the sale within the established term containing a bid for the debtor's property not below the initial selling price of the debtor's property set for the specific period of the sale, in the absence of bids on the part of other participants in the sale of the debtor's property by means of a public offering.

If several participants in the sale of the debtor's property by means of a public offering submitted applications for participation in the sale of the debtor's property within the established term containing various bids for the debtor's property not below the initial selling price of the debtor's property fixed for a definite period of the sale, the right to acquire the debtor's property shall be held by the sale participant that has offered the maximum price for this property.

If several participants in the sale of the debtor's property by means of a public offering submitted applications within the established term containing equal bids for the debtor's property not below the initial selling price of the debtor's property fixed for a definite period of the sale, the right to acquire the debtor's property shall be held by the sale participant that was the first to file an application for participation in the sale of the debtor's property by means of a public offering within the established time period.

The acceptance of applications shall be stopped from the time when the winner in the sale of the debtor's property by means of a public offering is designated.

**5.** The debtor's property whose balance-sheet value as of the last accounting date before the date of commencement of the winding up is below 100,000 roubles shall be sold in the procedure established by a decision of a meeting of creditors or the creditors' committee.

**6.** The provisions of the present article do not extend to cases when a debtor's property being a product manufactured by the debtor in the course of the debtor's economic activities is being sold.

**Article 140.** Assignment of Debtor's Rights of Claim

**1.** On the consent of a creditors' meeting (creditors' committee) the winding-up receiver shall be entitled to commence assigning the debtor's rights of claim by means of selling them, if a different procedure is not established by this Federal Law.

**2.** The sale of the debtor's rights of claim shall be effected by the winding-up receiver in the manner and on the terms established by Article 139 of the present Federal Law, except as otherwise established by a federal law or ensue the essence of the claim. The terms of a contract of sale of debtor's rights of claim shall envisage the following:

the receipt of funds for the sold thing in action within 30 business days after the conclusion of the contract of purchase/sale;

the transfer of a right of claim only after payment for the right of claim has been made in full.

**3.** If disagreements exist between the winding-up receiver and the creditors' meeting (the creditors' committee) on an issue concerning agreement on the procedure for the sale of the debtors' rights of claim, these disagreements shall be resolved in accordance with the procedure set out in Item 2 of Article 139 of the present Federal Law.

**Article 141.** Substitution of Debtor's Assets in Winding-Up

**1.** Under a decision of a creditors' meeting within the winding-up period, the debtor's assets may be substituted so as to meet the creditors' claims to the most extent. The substitution of the debtor's assets in winding-up is subject to the provisions of Article 115 of the present Federal Law, except as otherwise envisaged by the present article and contravenes the essence of winding-up.

**2.** In winding-up the debtor's assets shall be replaced under a decision of a creditors' meeting, provided all the creditors whose obligations are secured with the pledge of the debtor's property have voted in favour of such decision.";

**Article 142.** Settlements with Creditors in Winding-Up

**1.** The winding-up receiver or the persons entitled under Articles 113 and 125 of the present Federal Law to discharge the debtor's obligations shall effect settlements with creditors in compliance with the register of creditors' claims.

The amount of creditors' claims shall be determined in the manner set out in Article 100 of the present Federal Law.

The register of creditors' claims shall be subject to closure upon the expiration of two months after the publication of information on the debtor's having been declared bankrupt and winding-up procedure having been commenced.

**2.** The claims of creditors of each priority ranking category shall be met after the meeting in full of the claims of creditors of the preceding priority ranking category, except for the cases specified in the present Federal Law for meeting the creditors' claims secured by the pledge/mortgage of the debtor's property.

If funds cannot be remitted into a creditor's account (deposit) money payable thereto shall be deposited by the winding-up receiver with a notary at the debtor's location, and notice shall be given to the creditor to this effect.

In the event the funds deposited with a notary are not claimed by the creditor within

three years after they are deposited with the notary, the said funds shall be remitted by the notary to the federal budget.

3. If the debtor's funds are insufficient to meet the claims of creditors of a specific priority ranking category the funds shall be distributed among the creditors of this category pro rata to the amounts of their claims included in the register of creditors' claims, except as otherwise envisaged by the present Federal Law.

4. The claims of bankruptcy creditors and/or authorised bodies declared after the closing of the register of creditors' claims shall be met at the expense of the debtor's property remaining after the creditors' claims included in the register of creditors' claims have been met.

Settlements with creditors relating to such claims shall be effected by the winding-up receiver in the manner established by the present article.

5. The claims of first priority ranking creditors declared before the completion of settlements with all the creditors (in particular, after the closure of the register of creditors' claims) but after the completion of settlement with the first priority ranking creditors which declared their claims within the established term shall be met before the meeting of claims of the creditors of lower categories. The meeting of creditors of lower categories shall be suspended until the time when the said claims of first priority ranking creditors have been met.

If such claims were declared before the completion of settlements with first priority ranking creditors, they shall be met after the completion of settlements with first priority ranking creditors which declared their claims within the established term, if there are sufficient funds for meeting them.

The claims of second priority ranking creditors declared before the completion of settlements with all the creditors (in particular, after the closure of the register of creditors' claims) shall be met in accordance with the procedure similar to the one established by Paragraphs 1 and 2 of the present item.

6. If as of the time of commencement of settlements with the creditors of a specific priority ranking category there are disagreements between the winding-up receiver and creditor in respect of a declared claim of the creditor which are scrutinised by the court of arbitration the winding-up receiver shall put aside funds in an amount sufficient for meeting the claims of the creditor on a pro rata basis.

The interest amounts as the fee of the winding-up receiver payable in accordance with Article 20.6 of the present Federal Law shall be reserved on the debtor's account and paid out simultaneously with the end of settlements of accounts with creditors.

7. The claims of third priority ranking creditors declared within the set term but established by the court of arbitration after the commencement of repayment of claims of third priority ranking creditors shall be met in the amount envisaged for repayment of third priority ranking creditors' claims.

8. "Settled creditors' claims" shall mean claims met and also claims in respect of which a release-money agreement has been reached or an announcement of termination of obligation by set-off has been made by the winding-up receiver if there exist other grounds for the discharge of the obligation.

Only the debtor's property free of an encumbrance in the form of a pledge/mortgage may be provided as release-money.

Termination of obligation by set-off and also settlement of a claim by the provision of release-money shall be allowed only if priority ranking is observed and if creditors' claims are met on a pro rata basis.

9. Settlement of creditors' claims by means of conclusion of a release-money

agreement shall be permitted if this agreement is agreed upon by a creditors' meeting (the creditors' committee).

Settlement of creditors' claims by means of concluding an obligation novation agreement is prohibited in winding-up procedure.

The claims of creditors not settled due to insufficiency of the debtor's property shall be deemed settled. Also settled shall be deemed the claims of creditors not recognised by the winding-up receiver if the creditor has not applied to a court of arbitration or if such claims have been declared by the court of arbitration as lacking grounds.

10. The winding-up receiver shall enter information on the settlement of creditors' claims in the register of creditors' claims.

11. The creditors whose claims have not been met in full during winding-up shall be entitled to demand recovery of the debt by collection of the debtor's property that has been illegally obtained by third persons, in the amount of the claims that remained outstanding in the bankruptcy case. If there is no such property or if at the application of the third person the court is entitled to meet the claims of these creditors by means of collecting the amount without a need for collecting the debtor's property. The said claim may be presented within the term set by a federal law.

12. Abrogated.

13. In respect of the claims resulting from financial agreements under which the amount of obligations is estimated in the procedure provided for by Article 4.1 of this Federal Law the provisions of this article shall only apply to the creditors' claims concerning net obligations.


Article 143. Monitoring the Activity of a Winding-up Receiver

1. The winding-up receiver shall present a report to a creditors' meeting (creditors' committee) on his/her activity, information on the debtor's financial state and on the debtor's property as of the time of commencement of the winding-up proceedings and within the winding-up period, and also other information at least once three months, unless otherwise established by a creditors' meeting.

2. The winding-up receiver's report shall contain information on:

the debtor's estate that has been formed, in particular, on the progress and results of stock-taking of the debtor's property, on the progress and results of appraisal of the debtor's property in the event of recruiting an appraiser for assessment of such property;

the amounts of money received in the debtor's principal account, and on the sources of these receipts;

the progress of sale of the debtor's property, complete with an indication of receipts from the sale of property;

the quantity and the sum total of claims for debt collection presented by the winding-up receiver to third persons;

the measures taken for preserving the debtor's property and for revealing and demanding the debtor's property from third persons' possession;

the measures taken for declaring the debtors' transactions as invalid and also for declaring a refusal to perform the debtor's contracts;

keeping the register of creditors' claims complete, with an indication of the sum total of the creditors' claims included in the register, with such data for each priority ranking category being indicated separately;

the number of the debtor's employees who continue their work within the winding-up period, and also on the number of the debtor's employees dismissed (laid off) within the

winding-up period;

the work performed by the winding-up receiver in terms of closing down the debtor's accounts and on the results of such work;

the sum of the debtor's current liabilities with an indication of the proceeding applicable in a debtor's bankruptcy case in the course of which they came into being, their purpose, grounds for their occurrence, the amount of the liability and of the outstanding balance;

holding as subsidiarily liable the third persons which are subsidiarily liable under Russian law for the debtor's obligations in connection with the debtor's being made bankrupt;

other information in the course of winding-up proceedings of which the nature shall be determined by the winding-up receiver and also by the demands of a creditors' meeting (the creditors' committee) or the court of arbitration.

3. If the court of arbitration so demands, the winding-up receiver shall provide it with all the information concerning the winding-up procedure, in particular, a report on his/her activity.

**Article 144.** Dismissal of a Winding-up Receiver

1. The winding-up receier may be dismissed by the arbitration court from executing the duties vested therein in the bankruptcy case:

on his/her application;

on a petition to the self-regulating organisation of qualified receivers in which he/she is member sent under a decision of a collective managerial body of a self-regulating organisation of qualified receivers, under the petition of the self-regulating organisation of qualified receivers a member of which he is, in the case of the withdrawal of the qualified receiver from the self-regulating organisation or the petition of the self-regulating organisation of the qualified receiver taken by such an organisation according to Item 2 of Article 20.5 of this Federal Law;

in the other cases envisaged by the present Federal Law.

2. When the winding-up receiver is dismissed from his/her duties, the court of arbitration shall approve another winding-up receiver in the manner established by Item 1 of Article 127 of the present Federal Law.

3. The ruling of a court of arbitration on dismissal of a winding-up receiver from his/her duties as a winding-up receiver shall take effect immediately and it shall be subject to appeal.

**Article 145.** Removal of a Winding-up Receiver

1. The winding-up receiver may be removed by the court of arbitration:

at the petition of a creditors' meeting (creditors' committee) in the event of his/her defaulting on or improperly performing the duties vested therein;

in connection with satisfaction by the court of arbitration of a complaint of a person deemed a party to the bankruptcy case against the winding-up receiver's default on or improper performance of the duties vested therein, if such a default on or improper performance has violated the rights or legal interests of the person which filed the complaint and has also caused or could cause losses to the debtor or the debtor's creditors;

if circumstances have been discovered which prevented the approval of the person as a winding-up receiver and also in case when such circumstances have occurred after the person was approved as a winding-up receiver;

on the grounds of the petition of the self-regulating organisation of arbitration managers in the case of expulsion of the arbitration manager from the self-regulating organisation in connection with infringement by the arbitration manager of membership conditions of the self-regulating organisation, infringements by the arbitration manager of requirements of this

Federal Law, other federal laws, other normative legal acts of the Russian Federation, federal standards, standards and rules of professional work;

on the grounds of a petition of the self-regulating organisation of arbitration managers in the case of application to the arbitration manager of administrative punishment in the form of disqualification for the commission of an administrative offence.

Simultaneously with the removal of the winding-up receiver the court of arbitration shall approve another winding-up receiver in the manner established by Item 1 of Article 127 of the present Federal Law.

**2.** The ruling of a court of arbitration on the removal of a winding-up receiver shall take effect immediately.

**3.** The ruling of a court of arbitration on the removal of a winding-up receiver shall be subject to appeal.

**Article 146.** Possibility of Transition to External Administration

**1.** If financial rehabilitation and/or external administration proceedings have not been instituted in respect of the debtor and if within the winding-up period the winding-up receiver began to have sufficient grounds, in particular grounds backed up by financial analysis data, to believe that the debtor's solvency can be restored, the winding-up receiver shall convene a creditors' meeting within one month after the discovery of these circumstances to examine the issue of filing a petition with the court of arbitration for terminating the winding-up procedure and switching to external administration proceedings.

**2.** The decision of a creditors' committee to file a petition with the court of arbitration for terminating winding-up procedure and switching to external administration shall be adopted by a majority vote of the total number of the creditors whose claims are included in the register of creditors' claims and have not been repaid as of the date of the creditors' meeting which is considering the issue of making such a decision.

The decision of a creditors' meeting to file a petition with the court of arbitration for terminating winding-up procedure and switching to external administration shall contain a proposed external administration term and the desirable qualifications of the receiver.

On the petition of the creditors' meeting for terminating winding-up procedure and switching to external administration, the court of arbitration may issue a ruling on terminating the winding-up procedure and switching to external administration.

The said ruling may only be issued if the debtor has the property required to pursue economic activity on its own.

**3.** If the court of arbitration issues a ruling on terminating winding-up procedure and switching to external administration:

the limitations imposed on the debtor's managerial bodies in compliance with the present chapter shall be terminated;

a register of creditors' claims shall be opened;

the creditors' claims relating to monetary obligations and mandatory payments that have emerged within the winding-up period shall be deemed current from the date of the ruling on switching to external administration;

the creditors' claims relating to the obligations which under the terms of the obligation were not due as of the time of winding-up commencement shall also be deemed current from the date of the ruling on switching to external administration;

the claims met within the winding-up period shall be deemed settled and shall not be restorable.

Interest shall be accrued at the rate and in the manner established by Item 2 of Article 95 of the present Federal Law on the claims of creditors, authorised bodies relating to the debtor's monetary obligations and mandatory payments that occurred prior to the decision

whereby the debtor was declared bankrupt and winding-up procedure was commenced.

4. If, as of the date of issuance by the court of arbitration of a ruling on a switch to external administration less than three months have passed since the date of the winding-up proceedings commencement, the passage of the term established by Item 1 of Article 102 of the present Federal Law shall be suspended until the time when the receiver is approved.

**Article 147.** The Winding-up Receiver's Report on the Results of Winding-Up

1. Upon the completion of settlements with creditors and also in the event of termination of proceedings in the bankruptcy case in the instances envisaged by Article 57 of the present Federal Law the winding-up receiver shall lodge a report with the court of arbitration on the results of the winding-up procedure.

2. The following shall be attached to the winding-up receiver's report:

documents confirming the sale of the debtor's property;

the register of creditors' claims complete with an indication of the amount of settled creditors' claims;

documents confirming the fact that creditors' claims have been settled;

a document confirming the submission to the territorial body of the Pension Fund of the Russian Federation of information in accordance with Subitems 1 - 8 of Item 2 of Article 6 and Item 2 of Article 11 of Federal Law No. 27-FZ of April 1, 1996 on Individual (Personified) Registration in the System of Obligatory Pension Insurance.

3. The winding-up creditors and empowered bodies shall be notified by the winding-up receiver of the fact that the report on the results of the winding up has been sent.

**Article 148.** The Debtor's Property Remaining after the Completion of Settlements with Creditors

1. When creditors refuse to accept in the settlement of their claims property that was put up for sale but has not been sold within the winding-up period, and if there are no applications filed by the owner of property of the debtor being a unitary enterprise, the debtor's promoters (stockholders) concerning rights to the said property, the winding-up receiver shall send the deed of transfer of said debtor's property signed by him/her to local self-government bodies at the place where the debtor's property is located or to the relevant federal executive governmental body.

The property which by operation of law cannot belong to creditors or local self-government bodies shall be transferred into federal ownership.

2. Within 30 days after the date of receipt of the relevant deed of transfer of the debtor's property the local self-government bodies or in the cases envisaged by Item 1 of the present article the federal executive governmental body shall accept the property specified in Item 1 of the present article and shall bear all expenses towards the maintenance thereof.

3. If the local self-government body or in the cases envisaged by Item 1 of the present article the federal executive body refuses to accept the property specified in Item 1 of the present article the winding-up receiver shall file an application with the arbitration court in charge of proceedings in the bankruptcy case asking for the relevant local self-government body or the federal executive governmental body to be urged to accept said property.

4. If disagreements exist between a winding-up receiver and a local government body or in the cases envisaged by Item 1 of the present Article the federal executive governmental body in connection with the transfer of the property specified in Item 1 of the present article the local government body or in the cases envisaged by Item 1 of the present Article the federal executive governmental body shall send a protocol of disagreements to the winding-up

receiver within 14 days after the receipt of a notice from the winding-up receiver.

If the protocol is dismissed the winding-up receiver shall file an application with the court of arbitration responsible for implementing proceedings in the bankruptcy case for considering the disagreements that occurred.

5. While considering the application specified in Item 4 of the present article the court of arbitration shall determine the property transfer terms which were the subject matter of the disagreements for the local government body or the Russian Federation.

6. According to the results of consideration of the applications specified in Items 3 and 4 of the present article the court of arbitration shall issue a ruling.

From the date of issuance of the arbitration court ruling on the results of consideration of the said applications filed by the winding-up receiver expenses towards the maintenance of the said property shall be effected at the expense of the relevant budgets.

7. The ruling of a court of arbitration issued according to the results of consideration of applications filed by a winding-up receiver shall take effect immediately.

Non-execution or late performance of the said ruling of the court of arbitration shall not be deemed a ground for the arbitration court's refusal to issue a ruling on terminating the winding-up procedure.

8. The ruling of a court of arbitration issued on the results of consideration of applications filed by a winding-up receiver shall be subject to appeal.

**Article 149.** Terminating a Winding-Up Procedure

1. After the court of arbitration has considered the report of a winding-up receiver on the results of winding-up procedure the court of arbitration shall issue a ruling on completing the winding-up procedure, and in the case of settlement of creditors' claims in compliance with Article 125 of the present Federal Law, a ruling on terminating proceedings in the bankruptcy case.

The ruling on completing a winding-up procedure shall take effect immediately.

The ruling on terminating proceedings in a bankruptcy case shall take effect immediately.

If the event of issuance of a ruling on terminating proceedings in a bankruptcy case the arbitration court decision to declare the debtor bankrupt and commence winding-up procedure shall not be subject to further performance.

2. An arbitration court after the expiry of 30 but within 60 days after issuance of a ruling by an arbitration court on completing a winding-up procedure shall send the cited ruling to the body in charge of the state registration of legal persons by registered mail with confirmation of delivery.

3. The ruling of a court of arbitration on completing a winding-up procedure shall be deemed a ground for making an entry on liquidation of the debtor in the comprehensive state register of legal persons.

A relevant entry shall be made in this register within five days after the filing of the said arbitration court's ruling with the body in charge of state registration of legal persons.

The ruling of a court of arbitration on completing winding-up procedure may be appealed before the date when an entry on liquidation of the debtor is made in the state register of legal persons.

An appeal of the arbitration court's ruling on completion of the winding up shall cause suspension of the performance of the ruling.

If an arbitration court has taken on an appeal against the arbitration court's ruling on completing a winding-up procedure, the arbitration court shall send the ruling on taking on the appeal to the body engaged in the state registration of legal entities by registered mail with confirmation of delivery, as well as in electronic form via public information telecommunication

networks, in particular the Internet, within the working day following the date when such ruling is issued. The judicial act adopted on the basis of the results of considering an appeal against the ruling of an arbitration court on completing a winding-up procedure shall be sent to the body engaged in the state registration of legal entities by registered mail with confirmation of delivery, as well as in electronic form via public information telecommunication networks, in particular the Internet, within the working day, following the date when such judicial act is issued.

4. As of the date when the entry of liquidation of the debtor is made in the comprehensive state register of legal persons, the winding-up procedure shall be deemed completed.

## Chapter VIII. The Amicable Agreement

**Article 150.** General Provisions Concerning the Conclusion of an Amicable Agreement

1. At any stage of consideration of a bankruptcy case by a court of arbitration, the debtor, the debtor's bankruptcy creditors and authorised bodies shall be entitled to conclude an amicable agreement.

2. The decision to conclude an amicable agreement on the part of bankruptcy creditors and authorised bodies shall be adopted by a creditors' meeting. The decision of the creditors' meeting to conclude an amicable agreement shall be made by a majority vote of the total number of votes of the bankruptcy creditors and authorised bodies in compliance with the register of creditors' claims and it shall be deemed passed if voted for by all the creditors relating to the obligations secured by a pledge/mortgage of the debtor's property.

The powers of a representative of a bankruptcy creditor and a representative of an authorised body for voting on the issue of conclusion of an amicable agreement shall be expressly stated in his/her power of attorney, or in another document where it is provided for by an international treaty made by the Russian Federation or federal law.

A decision on conclusion of an amicable agreement from the part of an individual shall be taken by the individual and from the part of the debtor that is a legal entity - by the head of the debtor, acting head of the debtor, external manager or bankruptcy manager.

3. The following third persons may take part in an amicable agreement:
those assuming the rights and duties envisaged by the amicable agreement.

4. The amicable agreement shall be approved by a court of arbitration.

While approving an amicable agreement the court of arbitration shall issue a ruling on approval of the amicable agreement which comprises an indication of termination of proceedings in the bankruptcy case. If the amicable agreement is concluded within the winding-up period the ruling on approval of the amicable agreement shall comprise an indication that the decision whereby the debtor has been declared bankrupt and winding-up was commenced shall not be performed.

5. For the debtor, bankruptcy creditors and authorised bodies, as well as third persons deemed party to the amicable agreement, the amicable agreement shall enter into force from the date when it is approved by the court of arbitration, and it shall be binding on the debtor, bankruptcy creditors, authorised bodies and third persons deemed party to the amicable agreement.

6. A unilateral refusal to perform an amicable agreement that has become final is prohibited.

**Article 151.** The Features of Conclusion of an Amicable Agreement During

Receivership

**1.** The decision to conclude an amicable agreement on the part of the debtor shall be adopted by the debtor being a citizen, by the head of the debtor being a legal person or by the acting head thereof.

**2.** If for the debtor an amicable agreement is a transaction which under federal laws and/or the debtor's constitutive documents is concluded under a decision of the debtor's managerial bodies or is subject to agreement upon (approval) with/by the debtor's managerial bodies the decision to conclude the amicable agreement may be adopted after the adoption of a relevant decision by the debtor's managerial bodies or after a relevant agreement (approval) has been secured.

**3.** The amicable agreement shall not be subject to approval by the interim receiver.

**4.** When an amicable agreement is concluded with the participation of third persons that are interested persons in relation to the debtor, interim receiver or bankruptcy creditor, the creditors' meeting shall be informed on the presence and the nature of the interest in conclusion of the transaction, and the amicable agreement shall contain information to the effect that the amicable agreement is a transaction in the completion whereof there is an interest, and it shall expressly state the nature of the interest.

**5.** The provisions of Item 2 of the present article shall not prevent the creditors' meeting from adopting in the name of bankruptcy creditors and authorised bodies a decision to conclude an amicable agreement.

**6.** Where an amicable agreement is concluded during receivership it shall extend to the claims of bankruptcy creditors' authorised bodies included in the register of creditors' claims as of the date when the creditors' meeting was held that adopted the decision to conclude the amicable agreement.

**Article 152.** The Features of Conclusion of an Amicable Agreement During Financial Rehabilitation

**1.** The decision to conclude an amicable agreement on the part of the debtor shall be adopted by the head of the debtor being a legal person or by the acting head thereof.

**2.** If, for the debtor, the amicable agreement is a transaction which, under federal laws and/or the debtor's constitutive documents, is concluded under a decision of the debtor's managerial bodies, or is subject to agreement upon with the managerial bodies of the debtor, the decision to conclude the amicable agreement in the name of the debtor may be adopted after the adoption of a relevant decision by the debtor's managerial bodies or after a relevant agreement is secured.

**3.** The amicable agreement shall not be subject to the approval of the administrative receiver.

**4.** When an amicable agreement is concluded with the participation of third persons which are interested persons in relation to the debtor, administrative receiver or bankruptcy creditor the creditors' meeting shall be informed of the availability and the nature of the interest in conclusion of the transaction and the amicable agreement shall comprise information to the effect that the amicable agreement is a transaction in the conclusion whereof there is an interest and it shall expressly state the nature of the interest.

**5.** The provisions of Item 2 of the present article shall not prevent the creditors' meeting from adopting a decision to conclude an amicable agreement in the name of the bankruptcy creditors and authorised bodies.

**6.** Where an amicable agreement is concluded during financial rehabilitation the amicable agreement shall extend to the claims of bankruptcy creditors and authorised bodies included in the register of creditors' claims as of the date of the creditors' meeting that adopted the decision to conclude the amicable agreement.

**Article 153.** The Features of Conclusion of an Amicable Agreement During External Administration

**1.** The decision to conclude an amicable agreement on the part of the debtor shall be adopted by the receiver.

**2.** If, for the debtor, an amicable agreement is a transaction which under federal laws and/or the debtor's constitutive documents is concluded under a decision of the debtor's managerial bodies or is subject to agreement upon (approval) with/by the debtor's managerial bodies, the decision to conclude the amicable agreement in the name of the debtor may be adopted after the adoption of a relevant decision by the debtor's managerial bodies or after a relevant agreement (approval) has been secured.

**3.** When an amicable agreement is concluded with the participation of third persons that are interested persons in relation to the debtor, receiver or bankruptcy creditor, the creditors' meeting shall be informed of the presence and the nature of the interest in conclusion of the transaction and the amicable agreement shall comprise information to the effect that the amicable agreement is a transaction in the conclusion whereof there is an interest, and it shall expressly state the nature of the interest.

**4.** Where an amicable agreement is concluded during external administration, the amicable agreement shall extend to the claims of bankruptcy creditors and authorised bodies included in the register of creditors' claims as of the date when the creditors' meeting was held that adopted the decision to conclude the amicable agreement.

**5.** The provisions of Item 2 of the present article shall not prevent the creditors' meeting adopting, in the name of the bankruptcy creditors and authorised bodies, a decision to conclude an amicable agreement.

**Article 154.** The Features of Conclusion of an Amicable Agreement During Winding-Up Proceedings

**1.** The decision to conclude an amicable agreement on the part of the debtor shall be adopted by the winding-up receiver.

**2.** If for the debtor an amicable agreement is a transaction which under federal laws and/or the debtor's constitutive documents is concluded under a decision of the debtor's managerial bodies or is subject to agreement upon (approval) with/by the debtor's managerial bodies the decision to conclude the amicable agreement in the name of the debtor may be adopted after the adoption of a relevant decision by the debtor's managerial bodies or after a relevant agreement (approval) has been secured.

**3.** When an amicable agreement is concluded with the participation of third persons which are interested persons in relation to the debtor, a winding-up receiver or winding-up creditor, the amicable agreement shall comprise information to the effect that the amicable agreement is a transaction in the conclusion whereof there is an interest and it shall expressly state the nature of the interest.

**4.** Where an amicable agreement is concluded within winding-up proceedings, the amicable agreement shall extend to all the claims of winding-up creditors and authorised bodies included in the register of creditors' claims as of the date when the creditors' meeting was held that adopted the decision to conclude the amicable agreement.

**Article 155.** The Form of an Amicable Agreement

**1.** The amicable agreement shall be concluded in writing.

**2.** For the debtor, the amicable agreement shall be signed by the person which under the present Federal Law adopted the decision to conclude it. In the name of the bankruptcy creditors and authorised bodies the amicable agreement shall be signed by a representative

of a creditors' meeting or by a person authorised to do so by a creditors' meeting.

3. If third persons are party to the amicable agreement it shall be signed for their part by themselves or by their authorised representatives.

### Article 156. The Content of an Amicable Agreement

1. An amicable agreement shall contain information on the procedure and term for discharging the debtor's obligations in monetary form.

On the consent of a specific bankruptcy creditor and/or authorised body the amicable agreement may contain provisions for terminating the debtor's obligations by means of release-money, exchange of claims for participatory shares in the debtor's authorised capital, shares, bonds convertible into shares or other securities, obligation novation, forgiveness of debt or by other means envisaged by a federal law, unless such means of terminating obligations violates the rights of the other creditors whose claims are included in the register of creditors' claims.

The amicable agreement may contain provisions concerning changes in the due dates of and procedure for making the mandatory payments included in the register of creditors' claims.

The terms of an amicable agreement concerning the repayment of a debt owing as a mandatory payment levied under the legislation on taxes and fees shall not be inconsistent with the provisions of the legislation on taxes and fees.

Meeting bankruptcy creditors' claims in non-monetary form shall not create an advantage for such creditors over the creditors whose claims are satisfied in monetary form.

2. Interest shall be accrued on the sum of creditors' claims for the money obligations subject to repayment in terms of money under an amicable agreement, and also of the claims addressed to the debtor for compulsory payments, at the re-financing rate established by the Central Bank of the Russian Federation as of the date of confirmation of the amicable agreement by the arbitration court on the basis of the outstanding sum of the claims in accordance with the creditors' claim repayment schedule under the amicable agreement.

On the creditors' consent the amicable agreement may establish a lower interest rate, a shorter interest accrual term or relief from the duty to pay interest.

3. The terms of an amicable agreement for the bankruptcy creditors and authorised bodies which have voted against the conclusion of the amicable agreement or which have not taken part in the voting shall not be worse than those for the bankruptcy creditors and authorised bodies which have voted for it.

Except as otherwise envisaged by the amicable agreement, the pledge/mortgage on the debtor's property securing the debtor's performance of the debtor's obligations shall remain effective.

4. A bankruptcy creditor and/or authorised body which has voted for the conclusion of an amicable agreement, the debtor's promoters (stockholders), or the owner of property of the debtor being a unitary enterprise, shall be entitled to perform in full and in monetary form the debtor's obligations to the bankruptcy creditors or to provide funds to the debtor that are required for meeting the claims of the authorised bodies that have voted against the conclusion of the amicable agreement or which have not participated in the voting, in particular, for the purpose of paying the interest accrued under the present Federal Law as well as the amounts of forfeit money (fines, penalties). In this case the bankruptcy creditor shall accept the performance offered in lieu of the debtor, the debtor shall repay the claims of authorised bodies at the expense of the funds provided thereto, and the rights of the bankruptcy creditor shall be transferred to the person which has discharged the debtor's obligations. The funds provided to the debtor for the purpose of meeting the claims of

authorised bodies shall be deemed granted on interest-free loan contract terms with its due date deemed the date of calling.

**Article 157.** Third Persons' Participation in an Amicable Agreement

**1.** Third persons may take part in an amicable agreement if their participation does not infringe on the rights and legal interests of the creditors whose claims are included in the register of creditors' claims and also of the creditors whose claims have emerged after the date of acceptance of the application for declaring the debtor bankrupt and whose claims' due date preceded the date of conclusion of the amicable agreement.

**2.** Third persons taking part in an amicable agreement shall be entitled to provide a suretyship or a guarantee for the debtor's performing obligations under the amicable agreement or otherwise secure the appropriate performance thereof.

**Article 158.** Terms for Approval of an Amicable Agreement by the Arbitration Court

**1.** An amicable agreement can only be approved by the arbitration court after repayment of debt upon the demand of the creditors of the first and second priority.

**2.** Not earlier than after five days and not later than after 10 days from the date of conclusion of an amicable agreement the debtor, the external manager, the bankruptcy manager or financial manager shall file an application for approval of the amicable agreement to the arbitration court.

**3.** The following shall be attached to the application for approval of the amicable agreement:

text of the amicable agreement;

minutes of the meeting of creditors that took a decision on conclusion of the amicable agreement;

the list of all known bankruptcy creditors and authorised bodies not having stated their claims to the debtor, specifying their addresses and amounts of the debt;

register of creditors' claims;

documents confirming repayment of debt upon demand of creditors of first and second priorities;

decision of the managing bodies of the debtor that is a legal entity, if the necessity of such decision is envisaged by this Federal Law;

written objections of bankruptcy creditors and the authorised bodies that voted against conclusion of the amicable agreement or did not participate in the voting on conclusion of the amicable agreement, if any;

other documents obligatory for provision in accordance with this Federal Law.

**4.** The arbitration court shall notify the persons participating in the bankruptcy case of the date of consideration of the application for approval of the amicable agreement. Failure to appear duly of the notified persons shall not impede consideration of the application for approval of the amicable agreement.

**5.** Approval of the amicable agreement can be refused insofar as a representative of the creditor went beyond the authority granted to him by this Federal Law, a power of attorney or authorising documents of the creditor in the course of approval of the amicable agreement, if it has been proven that the person acting from the part of the debtor was aware and could not fail to be aware of limitation of such authority.

**6.** The arbitration court shall have the right to approve the amicable agreement even if the person acting on the part of the debtor was aware or could not fail to be aware of the limitation of authority of a representative of the creditor, but the vote of such representative had no influence on taking of the decision to conclude the amicable agreement.

**Article 159.** The Consequences of Approval of an Amicable Agreement by a Court of Arbitration

**1.** The approval of an amicable agreement by a court of arbitration during proceedings applicable in a bankruptcy case shall be deemed a ground for terminating proceedings in the bankruptcy case.

**2.** If an amicable agreement is approved by a court of arbitration during financial rehabilitation the performance of the debt repayment schedule shall be terminated.

If an amicable agreement is approved during external administration the moratorium on meeting creditors' claims shall be terminated.

**3.** If an amicable agreement is approved by a court of arbitration during winding-up procedure the arbitration court decision whereby the debtor is declared bankrupt and winding-up proceedings are commenced shall no longer be subject to performance from the date of approval of the amicable agreement.

**4.** From the date of approval of an amicable agreement by a court of arbitration the powers of the following persons shall be terminated: interim receiver, administrative receiver, receiver and winding-up receiver.

The person who has been acting as the receiver or winding-up receiver of a debtor being a legal person shall exercise the duties of head of the debtor until the date when the head of the debtor is appointed (elected).

From the date of appointment (election) of the head of the debtor the debtor shall be deemed the procedural successor in respect of actions brought earlier by the qualified receiver.

**5.** From the date of approval of an amicable agreement the debtor or third person shall commence to repay the debts owing the creditors.

**Article 160.** Refusal by the Court of Arbitration to Approve an Amicable Agreement

**1.** The court of arbitration shall refuse to approve an amicable agreement in the event of a default on repayment of indebtedness relating to first and second priority ranking creditors' claims.

**2.** Below are the grounds for the court of arbitration to refuse approving an amicable agreement:

a breach of the procedure for conclusion of an amicable agreement established by the present Federal Law;

the non-observance of the form of an amicable agreement;

a violation of third persons' rights;

a conflict between the terms of the amicable agreement and the present Federal Law, other federal laws and other regulatory legal acts;

the availability of other grounds for deeming transactions null and void according to the civil legislation.

**3.** A ruling shall be issued by the court of arbitration on the refusal to approve an amicable agreement, such a ruling being subject to appeal.

**Article 161.** The Consequences of Refusal to Approve an Amicable Agreement

**1.** If a court of arbitration has issued a ruling on refusal to approve an amicable agreement the amicable agreement shall be deemed unconcluded.

**2.** The issuance of a ruling by a court of arbitration on refusal to approve an amicable agreement shall not prevent the conclusion of a new amicable agreement.

**Article 162.** Appeal and Review of the Ruling on Approval of an Amicable Agreement

**1.** Upon a complaint of persons deemed party to a bankruptcy case, third persons deemed party to an amicable agreement as well as the other persons whose rights and legal interests have been violated or can be violated by an amicable agreement, the ruling on approval of the amicable agreement may be appealed in accordance with the procedure established by the Arbitration Procedural Code of the Russian Federation.

**2.** The ruling on approval of an amicable agreement may be reviewed if new circumstances have been discovered if:

the circumstances preventing the conclusion of the amicable agreement were not and could not be known to the applicant at the time when the amicable agreement was approved;

the applicant did not take part in the conclusion of the amicable agreement, and however, his/her/its rights and legal interests have been violated by the amicable agreement.

The applicant shall be entitled to file an application for reviewing the ruling on approval of the amicable agreement on the grounds established by the present article within one month after the discovery of the circumstances deemed a ground for reviewing this ruling.

**Article 163.** The Consequences of Revocation of a Ruling on Approval of an Amicable Agreement

**1.** The revocation of a ruling on approval of an amicable agreement shall be deemed a ground for resuming proceedings in the bankruptcy case. The court of arbitration shall issue a ruling on resumption of proceedings in the bankruptcy case, which shall take immediate effect and shall be subject to appeal.

In the event of resumption of proceedings in a bankruptcy case, the proceeding in which the amicable agreement was concluded shall be instituted in respect of the debtor. Qualified receiver nominees shall be presented to the court of arbitration in the manner envisaged by Article 45 of the present Federal Law by the self-regulating organisation which presented such a nominee during the said proceeding applicable in a bankruptcy case.

Within one month after the approval of the qualified receiver he/she shall hold a creditors' meeting, which is empowered to adopt the decisions specified in Item 1 of Article 73 of the present Federal Law.

If the ruling whereby an amicable agreement was approved is revoked, and proceedings applicable in a bankruptcy case were instituted in respect of the debtor in a new bankruptcy case, the bankruptcy creditors and authorised bodies that participated in the conclusion of the amicable agreement shall be entitled to declare their claims to the debtor in the new bankruptcy case in the composition and amount envisaged by the present article.

**2.** In the event of revocation of the ruling on approval of an amicable agreement the creditors' claims in respect of which a grace period and/or an installment repayment schedule or a debt rebate has been implemented shall be restored in as much as their outstanding portion is concerned.

**3.** The revocation of the ruling on approval of an amicable agreement shall not entail an obligation on part of first and second priority ranking creditors to refund to the debtor whatever has been received by them as debt repayment.

**4.** In the event of revocation of the ruling on approval of an amicable agreement the court of arbitration that has decided to resume the proceedings' shall be responsible for publishing an announcement of resumption of proceedings in the debtor's bankruptcy case in the manner established by Article 28 of the present Federal Law.

**5.** The claims of the creditors with which settlements have been effected on an amicable agreement terms which are consistent with the present Federal Law shall be deemed settled. The creditors whose claims have been met in compliance with the amicable agreement terms, whereby the said creditors were entitled to an advantage or whereby the rights and legal interests of other creditors were infringed upon, shall refund whatever they received as performance under the amicable agreement, with the claims of the said creditors being restored in the register of creditors' claims.

The compositions and amounts of creditors' claims and authorised bodies shall be assessed as of the date of resumption of proceedings in the bankruptcy case.

**6.** In as much as it concerns matters not regulated by the present article, the consequences of invalidity of transactions envisaged by the civil legislation shall apply.

**Article 164.** Rescission of an Amicable Agreement

**1.** Rescission of an amicable agreement approved by a court of arbitration by agreement between separate creditors and the debtor is prohibited.

**2.** An amicable agreement may be rescinded by a court of arbitration in respect of all the bankruptcy creditors and authorised bodies on an application of the bankruptcy creditor or bankruptcy creditors and/or authorised bodies which had as of the time of approval of the amicable agreement at least one quarter of the claims of bankruptcy creditors and authorised bodies to the debtor.

Winding-up creditors or authorised bodies shall be entitled to file an application for rescission of an amicable agreement in respect of all the bankruptcy creditors and authorised bodies in the event of the debtor's defaulting on or significantly violating the terms of the amicable agreement as it concerns the claims of such bankruptcy creditors and authorised bodies having in their entirety at least one quarter of the claims of bankruptcy creditors and authorised bodies to the debtor as of the date of approval of the amicable agreement.

**Article 165.** Procedure for Considering an Application for Rescission of an Amicable Agreement

**1.** Disputes concerning rescission of an amicable agreement shall be considered by the court of arbitration that heard the bankruptcy case.

**2.** An application for rescission of an amicable agreement shall be signed by the bankruptcy creditor or the bankruptcy creditors or authorised bodies whose claims have not been settled by the debtor on the terms of the amicable agreement and/or in respect of whose claims the debtor has significantly violated the terms of the amicable agreement.

**3.** If the court of arbitration receives an application for rescission of an amicable agreement, the court of arbitration shall issue a ruling on arranging a hearing for the purpose of considering the application for rescission of the amicable agreement.

The following shall be notified of the date and time of the court hearing for the purpose of considering the application for rescission of the amicable agreement in respect of a specific creditor: the debtor, the bankruptcy creditor or bankruptcy creditors or the authorised bodies that filed the application for rescission of the amicable agreement, and also the third persons deemed party to the amicable agreement.

A notice of the date and time of the court hearing for the purpose of considering the application for rescission of the amicable agreement in respect of all bankruptcy creditors and authorised bodies shall be served to the persons deemed party to the bankruptcy case as of the date of approval of the amicable agreement and also third persons which participated in the amicable agreement.

4. According to the results of consideration of an application for rescission of an amicable agreement approved by a court of arbitration the court shall issue a ruling which shall take effect immediately and shall be subject to appeal in the manner envisaged by the Arbitration Procedural Code of the Russian Federation.

5. In the event of refusal to satisfy an application for rescission of an amicable agreement, the court of arbitration shall issue a ruling on refusing to rescind the amicable agreement.

### Article 166. The Consequences of Rescission of an Amicable Agreement in Respect of All Bankruptcy Creditors and Authorised Bodies

1. The rescission of an amicable agreement in respect of all bankruptcy creditors and empowered bodies shall be deemed ground for resumption of proceedings in the bankruptcy case, except for cases when the debtor is subjected to the proceedings applicable in a new bankruptcy case.

When proceedings are resumed in the bankruptcy case in respect of the debtor the proceeding which is applied in the bankruptcy case and in the course of which the amicable agreement was concluded shall be instituted. Qualified receiver nominees shall be presented to the arbitration court in the procedure established by Article 45 of the present Federal Law by the self-regulating organisation which presented such nominees in the course of said proceeding applicable in the bankruptcy case.

If the amicable agreement is rescinded when the debtor is subjected to the proceedings applicable in a new bankruptcy case then the bankruptcy creditors and authorised bodies whose claims have been settled by means of the amicable agreement are entitled to present their claims to the debtor in the new bankruptcy case in the composition and amount which are envisaged by that amicable agreement.

2. In the event of resumption of a bankruptcy case the amount of such creditors' claims shall be determined on the basis of the register of creditors' claims as of the date of approval of the amicable agreement. In this case the claims of bankruptcy creditors and authorised bodies settled during the performance of the amicable agreement in keeping with the present Federal Law shall not be taken into account in the register of creditors' claims, except for the cases specified by the present article.

3. The rescission of an amicable agreement in respect of all bankruptcy creditors and authorised bodies shall not entail the duty of the bankruptcy creditors and authorised bodies whose claims have been settled during the performance of the amicable agreement to refund to the debtor everything they received during the performance of the amicable agreement.

The bankruptcy creditors and authorised bodies shall refund everything they received during the performance of the amicable agreement if they knew or should have known that their claims were met in breach of the rights and legal interests of the other bankruptcy creditors and authorised bodies, with the said claims being restored to the register of creditors' claims.

4. In the event of rescission of an amicable agreement the terms thereof that envisage an instalment repayment schedule, a grace period on the settlement of bankruptcy creditors' and authorised bodies' claims, and also a debt rebate shall be terminated in respect of the portion of creditors' claims that was outstanding as of the date of rescission of the amicable agreement.

5. The rescission of an amicable agreement shall not entail the duty of first and second priority ranking creditors to refund to the debtor whatever they received as offsetting the debt owing them.

6. The composition and amount of the claims of creditors and authorised bodies shall

be determined as of the date of resumption of bankruptcy case proceedings.

**Article 167.** The Consequences of Default on the Performance of an Amicable Agreement

**1.** If the debtor has defaulted on the performance of an amicable agreement the creditors have the right -- without rescinding the amicable agreement -- to the arbitration court that has considered the bankruptcy case so as to receive a writ of execution for collection of the claims which have remained unsatisfied.

**2.** If a proceeding is commenced in a new bankruptcy case in respect of a debtor the amount of the creditors' claims covered by the amicable agreement shall be determined by the terms contained in the amicable agreement.

## Chapter IX. The Features of Bankruptcy of Specific Categories of Debtors Being Legal Entities

### §1. General Provisions

**Article 168.** General Provisions Concerning the Bankruptcy of Specific Categories of Debtors Being Legal Entities

The relationships relating to the bankruptcy of a city's backbone enterprise, agricultural and financial organisations, strategic enterprises and organisations, natural monopoly entities and also the relations relating to the bankruptcy of developers are subject to the provisions of the present Federal Law regulating the bankruptcy of debtors being legal entities, except as otherwise envisaged by the present chapter.

### §2. The Bankruptcy of City-Forming Organisations

**Article 169.** The Status of a City-Forming Organisation

**1.** For the purposes of the present Federal Law "city-forming organisations" are legal persons whose employees make up at least 25 per cent of the number of the employed population of the relevant inhabited locality.

**2.** The provisions of the present paragraph shall also be applicable to other organisations having more than 5,000 employeers persons.

**Article 170.** Considering the Case of Bankruptcy of a City-Forming Organisation

**1.** When a case of the bankruptcy of a city-forming organisation is being considered, the relevant local government body shall be deemed party to the bankruptcy case.

**2.** Also, the following may be deemed party to the bankruptcy case and involved in the case: federal executive governmental bodies and the executive governmental bodies of a relevant Russian region.

**3.** When grounds for creditors' claims are being examined evidence shall be provided to the court of arbitration of the fact that the city-forming organisation complies with the provisions of Article 169 of the present Federal Law.

**Article 171.** Instituting External Administration for a City-Forming Organisation under

Suretyship

**1.** If a creditors' meeting has not decided to institute external administration for a city-forming organisation, the court of arbitration shall institute external administration on the grounds specified in the present Federal Law and also at the petition of the local government body or the relevant federal executive governmental body involved in the bankruptcy case or the executive governmental body of the Russian region on the condition that a suretyship is provided for the debtor's obligations.

Suretyship for the debtor's obligations may be provided by the Russian Federation, a Russian region or a municipal entity as represented by their authorised bodies.

**2.** The local government body or the relevant federal executive governmental body involved in the case of bankruptcy of a city-forming organisation or the executive governmental body of a Russian region that has provided a suretyship for obligations of a debtor shall determine the qualifications to be complied with by the receiver nominee and send them to self-regulated organisations of qualified receivers.

**3.** In cases when external administration of a city-forming organisation has been instituted in the manner envisaged by the present article, the surety shall be subsidiarily liable for the debtor's obligations to the debtor's creditors.

**Article 172.** Prolongation of Financial Rehabilitation or External Administration in Respect of a City-Forming Organisation at the Petition of a Local Government Body

Financial rehabilitation or external administration in respect of a city-forming organisation may be prolonged by a court of arbitration by up to one year if there is a petition filed by a local government body or a relevant federal executive governmental body involved in the bankruptcy case or the executive governmental body of a Russian region on the condition that a suretyship is provided for the debtor's obligations.

**Article 173.** Suretyship

**1.** For the purposes of the present Federal Law "suretyship" is a unilateral duty of the person that has provided a suretyship for a debtor to be liable for the latter's discharging all monetary obligations thereof with respect to bankruptcy creditors, the duty to pay severance benefits, the duty to pay wages to the person who is working or have been working under a labor contract and also the duty to make mandatory payments to the budgets and non-budget funds.

A suretyship for obligations of a debtor may be provided by the Russian Federation, a Russian region or a municipal entity as represented by their authorised bodies in the manner and on the terms envisaged by a federal law.

**2.** A surety for obligations of a debtor shall be presented to the court of arbitration in writing. The following shall be indicated in the suretyship:

the sum of the debtor's obligations owing the creditors and of the duty to make mandatory payments;

a debt repayment schedule.

Attached to the suretyship shall be documents to confirm that the obligations relating to the suretyship have been included in the relevant budget as of the date when the suretyship is granted.

**3.** The debtor and its surety shall commence settlements with the creditors under the debt repayment schedule set out in the suretyship.

**4.** In the event of a default on settling creditors' and authorised bodies' claims in the manner and within the terms envisaged by the debt repayment schedule, the creditors and authorised bodies shall be entitled to present claims to the debtor for collection of outstanding

amounts of money in accordance with the general procedure envisaged by law.

**5.** The surety's breach of its obligations in respect of the creditors and authorised bodies holding one third of all the claims to the debtor may serve as a ground for terminating financial rehabilitation or external administration before due date, for declaring the debtor bankrupt and commencing winding-up proceedings.

**Article 174.** Settlement of Creditors' Claims During Financial Rehabilitation or External Administration in Respect of a City-Forming Organisation

**1.** At any time before the termination of financial rehabilitation of a city-forming organisation or external administration of a city forming organisation, the Russian Federation, the Russian region or the municipal entity shall be entitled to effect settlement with all the creditors or to repay the creditors' claims relating to monetary obligations, for payment of severance benefits and/or payment of labour wages to the persons who are working or have been working under a labour contract and mandatory payments by another method envisaged by the present Federal Law.

**2.** Settlements with creditors shall be effected according to the priority ranking established by Articles 134-138 of the present Federal Law.

**3.** If the creditors' claims relating to monetary obligations, for payment of severance benefits and/or payment of labour wages to the persons who are working or have been working under a labour contract and mandatory payments are settled in the manner specified in Items 1 and 2 of the present article the bankruptcy case proceeding shall be subject to termination.

**Article 175.** Sale of an Enterprise of the City-Forming Organisation

**1.** During the external administration or winding-up period, an enterprise of the city-forming organisation may be sold.

**2.** If there is a petition filed by the local government body or the federal executive governmental body involved in the bankruptcy case or the executive governmental body of the Russian region, a significant term of the contract of sale/purchase of the enterprise of the city-forming organisation may be preservation of jobs for at least 50 per cent of the employees of such an enterprise as of the date of its sale over a specific term not exceeding three years after the entry of the contract into force.

Other conditions may be established at the proposal of the local government body or the federal executive governmental body involved in the bankruptcy case or the executive governmental body of the Russian region exclusively with the consent of a creditors' meeting in the manner envisaged by Article 15 of the present Federal Law.

**3.** If the buyer of the enterprise of the city-forming organisation defaults on observing the terms set out in Item 2 of the present article, the contract of sale/purchase shall be subject to rescission by a court of arbitration on the application of the local government body, the federal executive governmental body or the governmental executive body of the Russian region on whose petition the tender was held. In the event of rescission of the contract of sale/purchase, the buyer of the enterprise shall be reimbursed at the expense of a relevant budget for funds spent to buy the enterprise and to make investments during the effective term of the contract, and the enterprise shall be subject to transfer to the municipal entity.

**4.** If the petition specified in Item 2 of the present article has not been filed or if the enterprise of the city-forming organisation has not been sold on the said terms and conditions the enterprise shall be subject to sale in the manner and on the terms established by Articles 110, 111 and 139 of the present Federal Law.

**Article 176.** Sale of the Property of a City-Forming Organisation Declared Bankrupt

**1.** In the event of sale of the property of a city-forming organisation that has been declared bankrupt, the qualified receiver shall put up the debtor's enterprise for sale on the terms set out in Article 175 of the present Federal Law.

**2.** If the debtor's enterprise has not been sold in the manner specified in Item 1 of the present article the sale of property of the city-forming organisation shall be effected according to the rules established by Article 111 of the present Federal Law.

## §3. The Bankruptcy of Agricultural Organisations

**Article 177.** General Provisions on the Bankruptcy of Agricultural Organisations

**1.** For the purposes of the present Federal Law "agricultural organisations" means legal persons whose basic types of activity are the production or the production and processing of agricultural products, with receipts from the sale of the products making up at least 50 per cent of the sum total of receipts.

**2.** The features of bankruptcy of agricultural organisations set out in the present Federal Law shall also be applicable to fishing artels (collective farms) whose receipts from the sale of produced or produced and processed agricultural products and catches of aquatic biological resources makes up at least 70 per cent of the total sum of receipts.

**3.** Abrogated.

**4.** If an agricultural organisation has been declared bankrupt land plots may be alienated or transferred to another person, to the Russian Federation, the Russian region or the municipal entity to the extent their alienability is allowed under the land legislation.

In the event of declaring bankrupt the fishing artel (collective farm) cited in Item 2 of this article, the right to the extraction (catching) of aquatic biological resources may be alienated or transferred to other persons insofar as the turnover of aquatic biological resources is allowed by the legislation on fishing and conservation of aquatic biological resources.

**5.** For initiation of proceedings in respect of a case on bankruptcy of an agricultural organisation shall be taken into consideration the claims amounting in the aggregate to at least five hundred thousand roubles.

**6.** An application for declaring an agricultural organisation bankrupt shall be accepted by an arbitration court, if the claims for the agricultural organisation constitute in the aggregate the sum cited in Item 5 of this article and such claims have not been met within three months as from the date when they had to be met.

**Article 178.** The Receivership or Financial Rehabilitation of an Agricultural Organisation, and the External Administration of an Agricultural Organisation

**1.** During receivership, when the financial state of an agricultural organisation is being analysed account shall be taken of the seasonal nature of agricultural production and its dependence on the natural and climatic conditions and also of the possibility of meeting creditors' claims at the expense of incomes that can be received by the agricultural organisation upon the expiry of a specific period of agricultural work.

**2.** The financial rehabilitation of an agricultural organisation shall be instituted for a term ending at the end of a specific period of agricultural work with due regard to the time required to sell the agricultural products produced or produced and processed.

If during financial rehabilitation the financial state of the agricultural organisation has

suffered a recession and deterioration due to a natural disaster, epizootic or other circumstances of an extraordinary nature the term of financial rehabilitation may be extended by one year on the condition that amendments are made to the debt repayment schedule in the manner set out in Article 85 of the present Federal Law.

**3.** External administration for an agricultural organisation shall be instituted before the end of a relevant agricultural work period with due regard to the time required for selling the agricultural products produced or produced and processed. The effective term of external administration shall not exceed the duration set in Item 2 of Article 92 of the present Federal Law by more than three months.

If during external administration the financial state of the agricultural organisation has suffered a recession and deterioration due to a natural disaster, epizootic or other circumstances of an extraordinary nature, as well as if the grounds have originated for rendering state support to agricultural commodity producers established by Article 8 of Federal Law No. 260-FZ of July 25, 2011 on the State Support in the Sphere of Agricultural Insurance and on Amending the Federal Law on Agriculture Development, the external administration term may be prolonged by one year.

**Article 179.** The Features of Sale of Property Rights in Rem of an Agricultural Organisation

**1.** When selling the property of the debtor being an agricultural organisation, the qualified receiver must put up for sale the enterprise of the debtor being the agricultural organisation by way of holding an auction.

If the enterprise of the debtor being an agricultural organisation has not been sold through an auction, the qualified receiver is bound to put up for sale as a single lot the property of the debtor being the agricultural organisation which is used for making agricultural products, their storage, processing and sale (hereinafter referred to as the industrial-engineering complex of the debtor being an agricultural organisation).

Where it is cited by Paragraphs One and Two of this item, the enterprise of the debtor being an agricultural organisation and put up for sale as a single lot of the industrial-engineering complex of the debtor being the agricultural organisation shall be sold in the procedure established by Items 4 - 19 of Article 110 of this Federal Law. The property of the debtor being an agricultural organisation shall be evaluated in the procedure established by Article 130 of this Federal Law.

If the industrial-engineering complex of the debtor being an agricultural organisation put up for sale as a single lot has not been sold through an auction, the property of the debtor being the agricultural organisation shall be sold in compliance with Article 111 and Item 4 of Article 139 of this Federal Law.

**2.** The priority right to acquire the debtor's property being sold in the procedure established by Paragraph Four of Item 1 of this article shall belong to the persons engaged in the production or production and processing of agricultural products and owning the land plots directly adjacent to the debtor's land plot. If there are no such persons, the priority right to acquire the debtor's property which is used for the purposes of agricultural production and belongs to the agricultural organisation declared bankrupt, given other equal conditions, shall belong to the agricultural organisations and peasant farms situated in the same locality as the cited agricultural organisation, as well as to the appropriate constituent entity of the Russian Federation or the appropriate municipal entity.

For the purpose of ensuring the implementation of the priority right to acquire the

debtor's property the qualified receiver shall send a notice of sale of the debtor's enterprise and of the debtor's property to the persons which pursue production or productions and processing of agricultural products and possess a land plot immediately adjacent to the land plot of the debtor, and shall also publish information on the sale of the debtor's enterprise and the debtor's property in a printed edition at the place where the debtor is located with an indication of the initial selling price of the debtor's enterprise and the debtor's property put up for sale.

**3.** The qualified receiver shall sell the debtor's enterprise or the debtor's property to a person having the right of priority acquisition thereof at the price determined by means of a sale. If several persons have declared their intent to use the priority right of acquisition then the debtor's property shall be sold at the price determined by means of a sale to the person whose application was the first to be received by the qualified receiver.

If within one month the said persons have not declared their will to acquire the property and rights in rem the qualified receiver shall effect realisation of the property and rights in rem in the manner envisaged by the present Federal Law.

## §4. The Bankruptcy of Financial Organisations

**Article 180.** General Provisions on Insolvency (Bankruptcy) of Financial Organisations

**1.** This paragraph defines the specifics of insolvency (bankruptcy) of financial organisations.

**2.** For the purposes of this Federal Law, financial organisations mean the following:

1) credit organisations;

2) insurance organisations;

3) professional securities market participants;

4) non-governmental pension funds;

5) management companies of investment funds, unit investment funds and non-governmental pension funds.

6) clearing organisations;

7) market makers;

8) credit consumer co-operative societies (hereinafter - credit co-operatives);

9) microfinance organisations.

**3.** The provisions of this paragraph shall not apply to the relations connected with insolvency (bankruptcy) of credit organisations.

The relations connected with insolvency (bankruptcy) of credit organisations shall be regulated by Paragraph 4.1 of this Federal Law.

**4.** Control functions envisaged by this paragraph, as related to financial institutions, shall be executed by the Bank of Russia (hereinafter - the supervisory body).

**5.** In cases and through the procedure provided for by federal law, the state corporation Deposit Insurance Agency shall exercise powers of a liquidator of financial institutions and a bankruptcy manager in case of insolvency (bankruptcy) of financial institutions.

**Article 181.** Abrogated.

**Article 182.** Abrogated.

**Article 183.** Abrogated.

**Article 183.1** Measures Aimed at Preventing the Bankruptcy of a Financial Organisation

**1.** As measures aimed at preventing bankruptcy of a financial organisation shall be deemed the following:

1) the rendering of financial aid to the financial organisation by its founders (participants) and other persons;

2) changing the structure of assets and the structure of liabilities of the financial organisation;

3) increasing the amount of the financial organisation's authorized capital and the amount of its assets (capital);

4) the financial organisation's re-organisation;

5) other measures which are not prohibited by the legislation of the Russian Federation.

**2.** Where there are grounds for taking measures aimed at preventing the bankruptcy of a financial organisation, it is obliged to endorse and to send to the control body a plan for restoration of its solvency in the procedure established by Article 183.2 of this Federal Law.

**3.** A plan for restoration of the solvency of a financial organisation shall contain an analysis of the financial organisation's financial status, as well as a list of measures aimed at preventing its bankruptcy and the time period for their application which may not exceed six months as from the date when the grounds for taking such measures arise. To a plan for restoration of the solvency of a credit organisation shall be attached the documents proving the feasibility of taking measures aimed at preventing the credit organisation's bankruptcy which are provided for by the plan of restoration of the financial organisation's solvency.

**4.** Control over execution of the plan of reestablishing solvency of a financial institution shall be performed by a supervisory body using the procedure established by it.

**Article 183.2.** Grounds for Taking Measures Aimed at Preventing a Financial Organisation's Bankruptcy

**1.** As grounds for taking measures aimed at preventing a financial organisation's bankruptcy shall be deemed the following:

1) repeated refusal within a month to meet creditors' claims under pecuniary obligations. Here, such refusal means failure to meet creditors' claims under pecuniary obligations or their improper meeting within ten working days of the date when the duty of meeting such claims arises, if not otherwise provided for by this Federal Law;

2) failure to discharge the duty of making obligatory payments within a time period exceeding ten working days from the date when they should have been discharged;

3) insufficiency of monetary funds for discharging pecuniary obligations in due time and/or the duty to make obligatory payments, if the time for discharging such obligations and/or the duty has come.

**2.** Where there are the grounds cited in Item 1 of this Article, a financial organisation within 15 days from the date when they arise is bound to send to the control body a notice of it with a plan of restoration of its solvency attached thereto, if there are no signs of the financial organisation's bankruptcy.

**3.** The control body within 30 working days as from the date of receiving a plan of restoration of a financial organisation's solvency shall adopt on the basis of the results of its

analysis the decision on appointing the provisional administration of the financial organisation or on the inexpediency of such appointment.

**4.** Following the results of analysis of the plan for reestablishing solvency of a financial institution the supervisory body shall take a decision to carry out on-site inspection of the activities of the financial institution using the procedure established by it and in cases established by it. The on-site inspection of activities of the financial institution shall be carried out within the term specified in Item 3 of this Article.

**5.** In the event of detecting the signs of a financial organisation's bankruptcy on the basis of the results of analyzing the financial organisation's plan of restoration of its solvency or on the basis of the results of a visiting inspection of the financial organisation's activities (if it has been held), the control body shall file an application for declaring the financial organisation bankrupt in the procedure established by this Federal Law.

**Article 183.3.** Alteration of the Structure of a Financial Organisation's Assets and Liabilities

**1.** The alteration of a financial organisation's structure of assets may provide for the following:

1) bringing the structure of the financial organisation's assets into accord with the obligations' periods to maturity to ensure their discharge;

2) reducing the financial organisation's outlays, in particular on servicing the debt thereof and outlays on the financial organisation's management;

3) sale or transfer of the financial organisation's non-profitable and other assets, if their sale or transfer do not impede satisfaction of the licence requirements and the requirements for the financial organisation's solvency;

4) other measures aimed at changing the financial organisation's structure of assets.

**2.** The alteration of the structure of a financial organisation's liabilities may provide for the following:

1) increasing the amount of the financial organisation's own assets (capital);

2) reducing the amount and/or share of current and short-term liabilities in the total structure of the financial organisation's liabilities;

3) increasing the share of medium-term and long-term obligations in the total structure of the financial organisation's liabilities;

4) other measures aimed at changing the structure of the financial organisation's liabilities.

**Article 183.4.** Changing the Organisational Structure of a Financial Organisation

The organisational structure of a financial organization may be changed:

1) by changing the composition and number of the financial organisation's employees;

2) by changing the structure (in particular by way of terminating the activities of structural subdivisions, as well as of a branch, representative office or other separate structural unit of the financial organisation) or in other ways ensuring the elimination of the reasons for the need to take measures aimed at restoration of the financial organisation's solvency.

**Article 183.5.** Appointing the Provisional Administration of a Financial Organisation

**1.** The control body shall appoint a provisional administration of a financial organisation, if:

1) the control body has detected the grounds cited in Subitems 1 and 2 of Item 1 of Article 183.2 of this Federal Law, if the financial organisation has not notified the control body

of the existence of appropriate circumstances;

2) the control body in the course of a visiting inspection in the procedure established by Item 4 of Article 183.2 of this Federal Law or on the basis of the results of analyzing a plan of restoration of the financial organisation's solvency in compliance with Item 3 of Article 183.2 of this Federal Law has adopted the decision to appoint the financial organisation's provisional administration for implementation of the plan of restoration of its solvency or the exercise of control over the plan's implementation;

3) the financial organisation does not implement or does not implement properly a plan of restoration of its solvency.

**2.** The provisional administration of a financial organisation shall be appointed for the reasons provided for by Item 1 of this Article without fail, if not otherwise established by this Federal Law.

**3.** The decision of the control body to appoint a provisional administration of a financial organisation shall be subject to publication in the procedure established by Article 28 of this Federal Law, as well as to insertion in the official Internet site of the control body and shall contain the following:

1) financial organisation's denomination, its address and data identifying the financial organisation (the state registration number of the entry on the state registration of a legal entity, taxpayer's identification number);

2) denomination of the control body that has adopted the decision on appointing the financial organisation's provisional administration, date of adoption of such decision and time period for which this provisional administration is appointed;

3) grounds for appointing the financial organisation's provisional administration;

4) data on limitation or suspension of the authority of the financial organisation's executive bodies;

5) full name of the head of the financial organisation's provisional administration, as well as denomination of the self-regulated organisation of which the head of the provisional administration is a member and the address thereof;

6) other information where it is provided for by this Federal Law.

**4.** The control body's decision on appointing the provisional administration of a financial organisation, in particular the decision on limitation or suspension of the authority of the financial organisation's executive bodies, may be appealed against with a court of law or an arbitration court by the financial organisation.

**Article 183.6.** Provisional Administration of a Financial Organisation

**1.** The provisional administration of a financial organisation means a special temporary managerial body of the financial organisation appointed by the control body (hereinafter referred to as the provisional administration).

**2.** As the purposes of appointing the provisional administration shall be deemed restoration of a financial organisation's solvency and/or ensuring the safekeeping of the financial organisation's property.

**3.** The tasks set for the provisional administration shall be as follows:

1) taking measures aimed at preventing bankruptcy of a financial organisation and/or exercise of control over taking of such measures;

2) removal of the grounds for suspension or limitation of the operation of the financial organisation's licence.

**4.** The composition of the provisional administration, procedure and grounds for changing the composition thereof shall be endorsed by the control body according to the procedure established by it.

**5.** The provisional administration shall include the head of the provisional administration and members thereof.

**6.** As the head of the provisional administration shall be appointed the qualified receiver satisfying the requirements established by Article 183.25 of this Federal Law. The candidacies of the head of the provisional administration and of its members shall be selected by the control body according to the procedure established by it.

The head of the provisional administration shall distribute duties to members of the provisional administration. The head of the provisional administration shall be obliged within three working days as from the date of appointment thereof to make a contract of his/her liability insurance under the terms and conditions provided for by Article 24.1 of this Federal Law.

Representatives of the self-regulated organisation or of the self-regulated organisations of which a financial organisation is a member are entitled to be included in the composition of the provisional administration on the proposal of an appropriate self-regulated organisation.

**7.** As a member of the provisional administration may not be appointed the person:

1) who has an previous conviction for a willful crime which is not quashed or cancelled;

2) who was exercising the functions of the one-man executive body or was within the collective executive body of the financial organisation at the time when the violations were made by this organisation for which the licence thereof for the exercise of appropriate kinds of activities was withdrawn or cancelled, if from the date of such withdrawal or cancellation less than three years have passed;

3) in respect of whom the disqualification term has not yet expired;

4) who is a person concerned with respect to the financial organisation;

5) that is an employee of a controlling body, except when a provisional administration is appointed to a non-state pension fund or insurance organisation.

**8.** The outlays of the provisional administration connected with the activities thereof, in particular payment of remunerations to the head and members of the provisional administration, shall be reimbursed on account of the financial organisation. A list and the limit level of such outlays, in particular a procedure for fixing the rate of and procedure for paying remunerations to the head and members of the provisional administration, shall be defined by the regulation body.

**9.** In the event of initiation of bankruptcy proceedings in respect of a financial organisation, claims for paying remunerations to the provisional administration's members, as well as for reimbursement of the provisional administration's outlays, shall be satisfied within the composition of third-turn creditors' claims for current payments in the procedure established by Article 134 of this Federal Law.

**10.** The head of the provisional administration shall be held liable with respect to the financial organisation and its creditors for causing losses to the financial organisation and its creditors as a result of failure to discharge or improper discharge by the provisional administration of the duties it is charged with.

**11.** The control body is entitled to send its representatives to a financial organisation for exercising control over the activities of the financial organisation and provisional administration.

Representatives of the supervisory body shall be appointed by a decision of the said body out of its officers.

The control body's representatives are entitled to participate in general meetings of a financial organisation's founders (participants) and in meetings of other managerial bodies of

the financial organisation without vote, to get familiar with records and other materials of a general meeting of the financial organisation's founders (participants) and meetings of other managerial bodies of the financial organisation, to receive information about the provisional administration's activities and to get familiar with any documents of the financial organisation.

**12.** The procedure for interaction of temporary administration, the supervisory body and its representatives in the course of exercising their powers, forms of control over the temporary administration performed by the supervisory body and its representatives shall be established by the supervisory body.

**Article 183.7.** The Provisional Administration's Functions
**1.** The provisional administration is entitled:
1) to give orders to be follows without fail to the financial organisation's employees for the purpose of accomplishing the tasks set for the provisional administration in compliance with this Federal Law;
2) to apply to court on behalf of the financial organisation for declaring invalid the transactions made by the financial organisation or on account of the financial organisation, as well as for applying the effects of invalidity of null and void transactions for the grounds provided for by the Civil Code of the Russian Federation;
3) to take part in general meetings of the financial organisation's founders (participants) and in meetings of other managerial bodies of the financial organisation without vote, to get familiar with records and other materials of a general meeting of the financial organisation's founders (participants) and of meetings of other managerial bodies of the financial organisation, to get familiar with any documents thereof, in particular to receive from the financial organisation's managerial bodies and employees, as well as from third persons, information and documents concerning the financial organisation's activities.
**2.** The provisional administration is obliged:
1) to take measures aimed at preventing the financial organisation's solvency (bankruptcy), should the authority of the financial organisation's managerial bodies be suspended;
2) to control implementation by the financial organisation of a plan of restoration of its solvency, if the authority of the financial organisation's managerial bodies is suspended;
3) to ensure the safekeeping of the financial organisation's property;
4) to apply in the instances and in the procedure which are established by this Federal Law to an arbitration court on behalf of the financial organisation for declaring the financial organisation bankrupt;
5) to file the petition with the control body for withdrawal, cancellation or suspension of the financial organisation's licence where there are grounds for withdrawal, cancellation or suspension of such licence;
6) to discharge other duties provided for by this Federal Law.
**3.** The provisional administration's actions may be appealed against by the financial organisation with the control body or arbitration court.

**Article 183.8.** Effects of Appointing the Provisional Administration
**1.** For the period of the provisional administration's activities the authority of executive bodies of the financial organisation shall be limited or suspended by decision of the control body in the procedure and under the conditions which are established by this Federal Law.
**2.** As from the date of appointment of the provisional administration accompanied by suspension of the authority of the executive bodies of a financial organisation the validity of the powers of attorney issued by the financial organisation before the date of appointment of

the provisional administration, including irrevocable ones, shall be terminated.

**Article 183.9.** Restricting and Suspending the Authority of a Financial Organisation's Executive Bodies

**1.** For the period of the activities to be exercised by the provisional administration the authority of the financial organisation's executive bodies shall be limited, if not otherwise established by this Federal Law.

**2.** The authority of a financial organisation's managerial bodies shall be suspended in the following instances:

1) when the provisional administration is appointed in connection with detecting by the control body the grounds cited in Subitems 1 and 2 of Item 1 of Article 183.2 of this Federal Law, if there are no appropriate notifications of the control body on the part of the financial organisation;

2) when the financial organisation fails to implement or improperly implements a plan of its solvency's restoration;

3) in other instances established by this Federal Law.

**3.** In the event of restriction of the authority of a financial organisation's executive bodies, they are entitled solely by the provisional administration's authorization to make transactions:

1) which are connected with letting of the financial organisation's immovable property on lease, its putting in pledge, contributing to the authorised capital of third persons, as well as with the disposal of such property in some other way;

2) with are connected with the disposal of the financial organisation's other property whose balance sheet value exceeds one per cent of the balance sheet value of the financial organisation's assets;

3) which are connected with obtainment and issuance of loans (credits), assignment of the right of claim and transfer of debt, debt forgiveness, novation and compensation for release from obligation;

4) which are of interest.

**4.** In the event of suspending the authority of a financial organisation's executive bodies for the period while the provisional administration is exercising its activities:

1) the authority of the financial organisation's executive bodies shall be exercised by the provisional administration and the financial organisation's executive bodies are not entitled to adopt decisions on the matters which are referred to their scope of authority by federal laws and the financial organisation's constituent documents;

2) decisions of other managerial bodies of the financial organisation in respect of dividends' payment, redemption or acquisition of placed stocks or payment of the real value of a stock (share), approval of major deals and other decisions which can entail an increase of the financial organisation's creditor indebtedness shall enter into effect after their coordination with the provisional administration.

3) as from the fate of appointment of the provisional administration and up to the date of an arbitration court rendering the decision on declaring a financial organisation insolvent (bankrupt) or of entry into legal force of the decision of an arbitration court on its liquidation or termination of the activity of the provisional administration the following shall be suspended the state registration of transactions, transfer or restriction (encumbrance) of the right to the immovable property held by the financial organisation on the basis of the right of ownership thereto, other real right or held by it in pledge.

**5.** The head of a financial organisation, in case of adoption of the decision to suspend the authority of the financial organisation's managerial bodies for the period while the

provisional administration exercises its activities, is bound to transfer at the latest on the day following the date of the provisional administration's appointment to the head of the provisional administration seals and stamps, as well as at the time, coordinated with the provisional administration, accounting and other documentation of the financial organisation and the material and other valuables he/she is in charge of.

At the latest in fifteen days as from the date of the provisional administration's appointment the financial organisation's head is bound to present to the provisional administration a list of the debtor's property, including property rights, as well as the accounting and other documents showing the financial organisation's economic activities with the last three years before the appointment of the provisional administration.

**6.** Impeding by a financial organisation's head, deputy head or other employees thereof, as well as by other persons, the exercise of the provisional administration's functions (in particular, impeding access to the financial organisation's premises, to its documentation and other information media, refusal to transfer seals, stamps, documents and in other cases) shall entail liability under the legislation of the Russian Federation.

**7.** In the event of suspension of the authority of a financial organisation's executive body for the period while the provisional administration is exercising its activities, the financial organisation's one-man executive body that was entitled before the provisional administration's appointment to act on behalf of the financial organisation without a power of attorney is empowered to represent its interests in an arbitration court in case of complaining against the provisional administration's appointment or actions (omission to act) of the provisional administration.

**Article 183.10.** The Provisional Administration's Functions in the Event of Limitation of the Authority of a Financial Organisation's Executive Bodies

**1.** In the event of imitation of the authority of a financial organisation's executive bodies, the provisional administration, along with the exercise of the functions cited in Article 183.7 of this Federal Law, shall participate in the development of measures aimed at restoration of the financial organisation's solvency and shall exercise control over their taking.

**2.** When exercising the functions cited in Item 1 of this Article, the provisional administration shall:

1) give its consent to making by the financial organisation's managerial bodies the transactions cited in Item 3 of Article 183.9 of this Federal Law;

2) file with the control body the petition for suspending the authority of the financial organisation's managerial bodies, if the financial organisation's head, deputy head or other employees thereof impede the exercise by the provisional administration of its functions or if there is a need for taking measures aimed at preventing the financial organisation's bankruptcy.

**3.** Basing on the application of the temporary administration for suspension of authority of the managing bodies of a financial institution the supervisory body shall take a decision to suspend the authority of managing bodies of the financial institution using the procedure established by it.

**4.** In case of taking a decision to liquidate the financial institution during the period of operation of the temporary administration, the temporary administration shall control the activities of the liquidation commission (liquidator) according to the procedure established by the supervisory body.

**5.** In the event of endorsement of the interim receiver, the provisional administration shall exercise the functions imposed upon it, except for the functions pertaining to the interim

receiver's scope of authority.

**Article 183.11.** The Functions of the Provisional Administration in the Event of Suspending the Authority of a Financial Organisation's Executive Bodies

**1.** In the event of suspension of the authority of a financial organisation's executive bodies, the provisional administration shall exercise the following functions:

1) exercise the authority of the financial organisation's executive bodies;

2) devise measures aimed at restoration of solvency of the financial organisation, arrange and control their taking;

3) detect the financial organisation's creditors and the amount of their claims under pecuniary obligations;

4) take measures aimed at recovering debts with respect to the financial organisation;

5) other functions in compliance with this Federal Law.

**2.** When exercising the functions cited in Item 1 of this Article, the provisional administration is entitled:

1) to make claims on behalf of the financial organisation with courts of law, arbitration courts and tribunals of arbitrators;

2) to take members of the financial organisation's executive bodies off their jobs and/or dismiss them;

3) to apply to law enforcement bodies and courts for calling to account the one-man executive body of the financial organisation and/or members of the collective executive body of the financial organisation;

4) to have free access to all premises of the financial organisation;

5) to place under seals the financial organisation's premises.

**3.** In the event of adoption of the decision on liquidation of a financial organisation within the period of the provisional administration's activities or in the event of appointing the provisional administration of the financial organisation to be liquidated, the provisional administration shall discharge the duties of the liquidation commission (liquidator).

**Article 183.12.** The Time Period of the Provisional Administration's Activities

**1.** The provisional administration shall be appointed for a time period from three to six months. On application of the provisional administration the time period of the provisional administration's activities may be prolonged by decision of the control body by at most three months, provided that the total time period of the provisional administration's activities does not exceed nine months.

**2.** If within the period of the provisional administration's activities bankruptcy proceedings are initiated in respect of the financial organisation, the provisional administration shall exercise the functions imposed upon it pending the date of endorsement of the winding-up receiver by an arbitration court.

**3.** If the provisional administration discharges the duties of the liquidation commission (liquidator) or exercises control over the activities of the liquidation commission (liquidator), the provisional administration shall discharge its duties pending the complete liquidation of the financial organisation or the date when the winding-up receiver is endorsed by an arbitration court.

**Article 183. 13.** Analysis of the Financial Status of a Financial Organisation

**1.** The provisional administration shall analyse the financial organisation's financial status and shall submit to the control body an opinion about the financial organisation's financial status at the latest in 45 days from the date of its appointment.

**2.** An opinion about the financial status of a financial organisation shall contain a

reference to the reasons for appearance of the grounds for taking measures aimed at preventing bankruptcy of the financial organisation, conclusions as to whether it is possible or not to restore its solvency, as well as planned measures to be taken by the financial organisation for prevention of its bankruptcy.

**3.** The provisional administration within at most twelve working days since the date when it submits an opinion about the financial status of the financial organisation, if the cited opinion contains the conclusion that it is possible to restore the solvency thereof, shall file with the control body a plan of restoration of the financial organisation's solvency. If the term of such plan's implementation exceeds the time period for which the provisional administration is appointed, the control body shall extend the term of the provisional administration's activities in compliance with Item 1 of Article 183.12 of this Federal Law.

**4.** If on the basis of the results of analyzing the financial status of a financial organisation the provisional administration comes to the conclusion that it is impossible to restore the financial organisation's solvency, it shall be stated in the opinion about the financial organisation's financial status that it is expedient to file an application for declaring the financial organisation bankrupt.

**5.** Within ten working days from the date of receiving an opinion about the financial status of a financial organisation the control body shall take one of the following decisions:

1) on the provisional administration's applying to an arbitration court for declaring the financial organisation bankrupt;

2) on checking by the provisional administration how the discharge of the financial organisation's obligations is ensured and on subsequent preparation of measures aimed at preventing bankruptcy thereof upon receiving by the control body the documents which concern ensuring by the financial organisation's participants or by other persons the discharge of the financial organisation's obligations.

**6.** The provisional administration shall make possible for the financial organisation's head to get familiar with an opinion about the financial status of the financial organisation.

The provisional administration is obliged to send to the financial organisation's head a notice that it is possible to get familiar with an opinion about the financial status of the financial organisation at the latest on the day following the date when an opinion about the financial organisation's financial status is sent to the control body in such a way which enables to deliver the cited opinion at the latest in five days as of the date when it is sent to the control body.

**Article 183.14.** Termination of the Provisional Administration's Activities

**1.** The provisional administration's activities may be terminated for the following reasons:

1) expiry of the provisional administration's term of authority, in particular attainment of the goals of its appointment and accomplishment of the tasks set for it;

2) preschedule termination of its activities in compliance with Article 183.15 of this Federal Law.

**2.** At the latest in ten working days as from the date of expiry of the term of the provisional administration's authority, as well as upon attainment of the goals of its appointment and accomplishment of the tasks set for it, the provisional administration shall send to the control body a report on the provisional administration's activities.

**3.** A report on the provisional administration's activities shall contain data on taking measures aimed at preventing the financial organisation's bankruptcy and on the results of the cited measures' taking.

A report on the provisional administration's activities shall contain an opinion on the restoration or on the impossibility to restore the financial organisation's solvency.

The control body within ten days as from the date of submitting a report on the provisional administration's activities, if the financial organisation's solvency is restored on the basis of the results of the cited report's consideration, shall render the decision on termination of the provisional administration's activities.

Within ten working days as from the date of submitting a report on the provisional administration's activities, if it is impossible to restore the financial organisation's solvency within the period of the provisional administration's activities on the basis of the results of the cited report's consideration, the control body shall render the decision on the provisional administration's applying to an arbitration court for declaring the financial organisation bankrupt and at the latest on the working day following the date when such decision is rendered shall send it to the provisional administration. The provisional administration shall send to an arbitration court an application for declaring the financial organisation bankrupt with the cited report attached hereto at the latest in ten working days as from the date when the appropriate decision of the control body is received.

**4.** If an application for declaring a financial organisation bankrupt is filed with an arbitration court, the provisional administration's activities shall be terminated from the date when the winding-up receiver is endorsed by the arbitration court.

Within the term of at most ten working days from the date of endorsement of the winding-up receiver, the provisional administration shall transfer to the winding-up receiver the seals and stamps of the financial organisation available to it, as well as within at most ten days the accounting and other documentation (including data on the amount of claims of the financial organisation's creditors), material and other valuables of the financial organisation accepted from the financial organisation's executive bodies.

**5.** A report on termination of the provisional administration's activities shall be subject to publication by the control body in the procedure established by Article 28 of this Federal Law, as well as to insertion in official Internet site of the control body, and shall contain the following:

1) the financial organisation's denomination, its address and data identifying the financial organisation (the state registration number of the entry on the state registration of a legal entity, taxpayer's identification number);

2) denomination of the control body that has taken the decision on the provisional administration's appointment, date when such decision is adopted and time period for which the provisional administration is appointed;

3) full name of the provisional administration's head and address for sending mail thereto, as well as denomination of the self-regulating organisation of which the provisional administration's head is a member, as well as the address thereof;

4) grounds for termination of the provisional administration's activities;

5) other information as provided for by this Federal Law.

**Article 183.15.** Preschedule Termination of the Provisional Administration's Activities

**1.** The provisional administration shall terminate its activities ahead of time in case of the following:

1) relieving the provisional administration's head of the duties he/she is charged with;

2) suspension of the discharge by the provisional administration's head, in respect of whom an administrative sanction in the form of disqualification is applied, of the duties imposed upon him/her.

**2.** The control body shall render the decision to relieve the provisional administration's head of discharging the duties he/she is charged with on the basis of an application of the

provisional administration's head or in the event of separation of the qualified receiver heading the provisional administration from a self-regulated organisation of qualified receivers.

In the event of separation of the qualified receiver heading the provisional administration from a self-regulated organisation of qualified receivers, this organisation is obliged to send to the control body a petition for relieving the provisional administration's head of discharging his/her duties within seven working days from the date when the standing collective managerial body of the self-regulated organisation of qualified receiver adopts the decision on termination of membership of the qualified receiver heading the provisional administration in the given self-regulated organisation in connection with separation thereof from this organisation. The control body on the basis of a petition of the self-regulated organisation of qualified receivers at the time and in the procedure which are established by the supervisory body shall relieve the provisional administration's head of discharging the duties he/she is charged with. If the petition of the self-regulated organisation of qualified receivers has not been received by the control body within fourteen working days from the date of adoption by the standing collective executive body of the self-regulated organisation of the decision to terminate membership of the qualified receiver heading the provisional administration in the given self-regulated organisation, the head of the financial organisation, the control body's representative, self-regulated organisation of which the financial organisation is a member and other persons concerned are entitled to send a petition for relieving the provisional administration's head of discharging the duties he/she is charged with, and the control body on the basis of such petition shall adopt in the procedure established by the federal executive power body engaged in normative legal regulation in the area of the financial organisation's activities a decision on relieving the provisional administration's head of discharging the duties he/she is charged with.

3. The control body shall render the decision on relieving the provisional administration's head of discharging the duties he/she is charged with in the event of failure to discharge or improper discharge of the duties the provisional administration's head is charged with in compliance with this Federal Law on the basis of a petition of the financial organisation's head, a representative the control body or the self-regulated organisation of which the financial organisation is a member and of other persons concerned.

4. The control body, concurrently with rendering the decision on preschedule termination of the provisional administration's activities, shall adopt a decision on appointing the new provisional administration in the procedure established by this Federal Law.

**Article 183.16.** Bankruptcy Signs and Trying of the Case on a Financial Organisation's Bankruptcy

1. A financial organisation shall be deemed unable to satisfy the creditors claims under pecuniary obligations, the claims for payment of severance benefits and/or payment of labour wages to the persons who are working or have been working under a labour contract which are proved by effective judicial acts and/or to discharge the duty of making obligatory payments, if at least on the following bankruptcy signs is present:

1) the amount of creditors' claims concerning pecuniary obligations, the claims for payment of severance benefits and/or payment of labour wages to the persons who are working or have been working under a labour contract which are proved by effective judicial acts and/or obligatory payments against the financial organisation totals to at least one hundred thousand roubles and these claims are not satisfied within fourteen days as from the date when they have to be discharged;

2) a failure to execute within fourteen days as from the date of its entry into legal force of the decision of a court of law, arbitration court or tribunal of arbitrators on recovering monetary funds from the financial organisation, regardless of the amount of creditors' claims;

3) the value of the property (assets) of the financial organisation is insufficient for discharging the financial organisation's pecuniary obligations towards creditors thereof and the duty to make obligatory payments;

4) the financial organisation's solvency was not restored within the period of the provisional administration's activities.

**2.** The case on a financial organisation's bankruptcy shall be tried by an arbitration court according to the rules provided for by the Arbitration Procedural Code of the Russian Federation and this Federal Law subject to the specifics established by this paragraph.

**3.** An application for declaring a financial organisation bankrupt shall be accepted by an arbitration court, if at least one of the signs of a financial organisation's bankruptcy cited in Item 1 of this Article are present.

**Article 183.17.** Procedures Applicable in Trying the Case on a Financial Organisation's Bankruptcy

**1.** When trying a case on a financial organisation's bankruptcy, the financial improvement and external management provided for by this Federal Law shall not apply.

**2.** In the event of initiating bankruptcy proceedings in respect of a financial organisation on the basis of an application of the provisional administration in connection with impossibility of restoration of the financial organisation's solvency established by the provisional administration, the supervision provided for by this Federal Law shall not apply.

**Article 183.18.** Persons Participating in Arbitration Court Proceedings in Respect of the Case on a Financial Organisation's Bankruptcy

**1.** When trying a case on a financial organisation's bankruptcy, the control body shall be recognized as a person participating in arbitration court proceedings in respect of the bankruptcy case, along with the other persons cited in Item 1 of Article 35 of this Federal Law.

**2.** When trying a case on bankruptcy of a financial organisation, the self-regulated organisation of financial organisations of which the financial organisation is a member shall recognized, along with the other persons cited in Item 2 of Article 35 of this Federal Law, as a person participating in the arbitration court proceedings in respect of the bankruptcy case within the scope of authority established for it by this Federal Law.

**3.** In the event of introducing supervision in respect of a financial organisation or declaring a financial organisation bankrupt and initiating bankruptcy proceedings in respect of it in the procedure established by this Federal Law, the qualified receiver is obliged to notify within ten working days from the date of introduction of an appropriate procedure applicable in the bankruptcy case the persons cited in Items 1 and 2 of this Article of introducing in respect of the financial organisation the appropriate procedure applicable in the bankruptcy case.

**Article 183.19.** An Application for Declaring a Financial Organisation Bankrupt

**1.** Where it is established by this Federal Law, the right to apply to an arbitration court for declaring a financial organisation bankrupt shall be enjoyed, along with the persons cited in Article 7 of this Federal Law, by the provisional administration and control body.

**2.** The right of the bankruptcy creditor to apply to an arbitration court for declaring a financial organisation bankrupt shall arise in respect of pecuniary obligations upon the expiry of fourteen days as from the date when such pecuniary obligations become mature.

The right of an authorised body to apply to an arbitration court for declaring a financial organisation bankrupt shall arise upon the expiry of fourteen days as from the date of adoption of the decision on recovering debts on account of monetary assets or on account of other debtor's property, or from the date of entry into legal force of the decision of a court of law or an arbitration court on recovering from the financial organisation debts on obligatory

payments.

The right of the provisional administration to apply to an arbitration court for declaring a financial organisation bankrupt shall arise from the date of adoption by the control body of the decision on filing by the provisional administration with an arbitration court of an application for declaring the financial organisation bankrupt.

The right of the control body to apply to an arbitration court for declaring a financial organisation bankrupt shall arise from the date of detecting by the control body of the signs of the financial organisation's bankruptcy, if the provisional administration is not appointed.

The right to file with an arbitration court an application for declaring a financial organisation bankrupt shall originate for the debtor's employee or former employee if there is a debt on payment of severance benefits and labour wages in the amount and in the procedure established in compliance with the labour legislation which is proved by an effective judicial act and not discharged within more than three months.

**3.** When applying to an arbitration court for declaring a financial organisation bankrupt, the requirements provided for by Item 3 of Article 6 and Item 2 of Article 7 of this Federal Law shall not apply.

**4.** An application of the bankruptcy creditor, the debtor's employee or former employee and of the authorised body for declaring a financial organisation bankrupt shall satisfy the requirements provided for by this Federal Law for an application of the bankruptcy creditor and authorised body respectively, subject to the specifics established by this Article.

**5.** When filing an application for declaring a financial organisation bankrupt, the candidacy of the qualified receiver, denomination and address of the self-regulated organisation one whose member is to be appointed as the qualified receiver shall not be cited therein.

When accepting an application for declaring a financial organisation bankrupt, an arbitration court shall apply to the control body which shall introduce to the arbitration court the candidacy of the qualified receiver or the self-regulated organisation one of whose members is to be endorsed in the capacity of the qualified receiver within seven working days from the date when the arbitration court's address is received.

A procedure for selection by the control body of the candidacy of the qualified receiver or the self-regulated organisation one of whose members is to be endorsed in the capacity of qualified receiver shall be established by the regulation body.

**6.** A copy of an application for declaring a financial organisation bankrupt and copies of the documents to be attached to it shall be sent by the applicant to be debtor and to the control body.

A copy of an application of a financial organisation and/or of the provisional administration for declaring the financial organisation bankrupt and copies of the documents to be attached thereto shall be sent by the applicant to the persons cited in Item 4 of Article 37 of this Federal Law and to the self-regulated organisation of financial organisations of which the financial organisation is a member.

In an application of the bankruptcy creditor for declaring a financial organisation bankrupt an effective decision of the court of law, arbitration court or tribunal of arbitrators which have considered the claims of the bankruptcy creditor against the debtor may not be cited and may not be attached to this application, where it is established by this Federal Law.

**Article 183.20.** An Application of the Control Body for Declaring a Financial
Organisation Bankrupt

**1.** An application of the control body for declaring a financial organisation bankrupt shall be filed with an arbitration court in writing. The cited application shall be signed by the head of the control body or by the person authorized by the control body's head to file an

application for declaring the financial organisation bankrupt.

**2.** The following shall be cited in an application of the control body for declaring a financial organisation bankrupt:

1) denomination of the arbitration court with which the cited application is to be filed;

2) denomination of the financial organisation, its address and data identifying the financial organisation (the state registration number of the entry on the state registration of a legal entity, taxpayer's identification number);

3) denomination of the control body and its address;

4) amount of creditors' claims under pecuniary obligations, amount of debts on obligatory payments, value of the financial organisation's property (assets) or other data related to trying the bankruptcy case;

5) candidacy of the interim receiver (full name of the qualified receiver, denomination and address of the self-regulated organisation of which he/she is a member) or denomination of the self-regulated organisation one of whose members is to be endorsed as the interim receiver and its address;

6) list of attached documents.

**3.** The petitions available to the control body may be attached to an application of the control body for declaring a financial organisation bankrupt.

**4.** A copy of an application for declaring a financial organisation bankrupt shall be sent by the control body to the financial organisation and to the self-regulated organisation of financial organisations of which the financial organisation is a member.

**5.** A procedure for selection by the control body of the candidacy of the qualified receiver or of the self-regulated organisation one of whose members is to be endorsed as the qualified receiver shall be established by the regulation body.

**Article 183.21.** The Application of the Provisional Administration for Declaring a Financial Organisation Bankrupt

**1.** An application of the provisional administration for declaring a financial organisation bankrupt shall be filed with an arbitration court in writing. The cited application shall be signed by the head of the provisional administration.

**2.** The following shall be cited in an application of the provisional administration for declaring a financial organisation bankrupt:

1) denomination of the arbitration court which the cited application is to be filed with;

2) denomination of the financial organisation, its address and data identifying the financial organisation (the state registration number of the entry on the state registration of a legal entity, taxpayer identification number);

3) full name of the head of the provisional administration and address for sending mail thereto, document proving the endorsement thereof in the capacity of the provisional administration's head, denomination of the self-regulated organisation of which the provisional administration's head is a member and its address;

4) amount of creditors' claims under pecuniary obligations, amount of debts on obligatory payments, value of the property (assets) of the financial organisation or other data related to trying the bankruptcy case;

5) candidacy of the winding-up receiver (full name of the qualified receiver, denomination and address of the self-regulated organisation of which he/she is a member) or denomination of the self-regulated organisation one of whose members is to be endorsed in the capacity of the winding-up receiver and its address;

6) list of attached documents.

**3.** To an application of the provisional administration for declaring a financial organisation bankrupt may be attached a copy of the control body's decision on filing by the

provisional administration with an arbitration court an application for declaring the financial organisation bankrupt, as well as may be attached the petitions available to the provisional administration.

**4.** A copy of an application for declaring a financial organisation bankrupt shall be sent by the provisional administration to the control body, financial organisation and self-regulated organisation of financial organisations of which the financial organisation is a member.

**5.** The candidacy of the qualified receiver or the self-regulated organisation one whose members is to be endorsed in the capacity of the qualified receiver shall be selected by the control body in compliance with Item 5 of Article 183.20 of this Federal Law.

**Article 183.22.** Documents to Be Attached to Applications of the Provisional Administration and the Control Body for Declaring a Financial Organisation Bankrupt

**1.** Along with the documents provided for by the Arbitration Procedural Code of the Russian Federation, the following documents shall be attached to the provisional administration's application for declaring a financial organisation bankrupt:

1) the financial organisation's constituent documents, certificate of the state registration of a legal entity;

2) the accounting balance sheet of the financial organisation as of the last reporting date or documents used in place of it;

3) the decision of the control body on filing by the provisional administration an application with an arbitration court for declaring the financial organisation bankrupt;

4) a report on the value of the financial organisation's property drawn up by an appraiser (if such report is available);

5) an opinion about the financial status of the financial organisation, if an application for declaring the financial organisation bankrupt is filed in compliance with Article 183.13 of this Federal Law, or a report on the provisional administration's activities, if an application for declaring the financial organisation bankrupt is filed in compliance with Article 183.14 of this Federal Law;

6) other documents where it is provided for by this Federal Law.

**2.** Along with the documents provided for by the Arbitration Procedural Code of the Russian Federation to the control body's application for declaring a financial organisation bankrupt shall be attached a copy of the control body's decision on applying to an arbitration court for declaring the financial organisation's bankrupt and the copies of the financial organisation's constituent documents available to it, of the certificate of the state registration of a legal entity, the financial organisation's accounting balance sheet as of the last reporting date or copies of the documents used instead of it.

**Article 183.23.** Acceptance of an Application for Declaring a Financial Organisation Bankrupt and Initiation of Bankruptcy Proceedings in Respect of a Financial Organisation

**1.** Copies of an arbitration court's ruling on acceptance of an application for declaring a financial organisation bankrupt shall be sent at the latest on the working day following the date when it is issued to the applicant, the financial organisation and the control body.

**2.** The control body at the latest on the working day following the date when a copy of an arbitration court's ruling on acceptance of an application for declaring a financial organisation bankrupt is received is bound to send a copy of the cited ruling to the self-regulated organisation of financial organisations, of which the financial organisation is a member.

**Article 183.24.** Specifics of Court Proceedings in Respect of a Case on Bankruptcy of a Financial Organisation

In case of initiating bankruptcy proceedings in respect of a financial organisation on the basis of the provisional administration's application for declaring the financial organisation bankrupt the case on bankruptcy of the financial organisation shall be tried by an arbitration court within the time period of at most four months as from the date of acceptance by the arbitration court of the application for declaring the financial organisation bankrupt, including the time period for preparing the case for trying and adoption of a decision on this case.

**Article 183.25.** Requirements for the Qualified Receiver in a Case on Bankruptcy of a Financial Organisation

**1.** Along with the requirements established by Articles 20 and 20.2 of this Federal Law, the qualified receiver in a case on bankruptcy of a financial organisation is obliged to pass an additional examination according to the programme of training qualified receivers in cases on bankruptcy of appropriate financial organisations endorsed by the Bank of Russia, namely:

1) the qualified receiver in a case on bankruptcy of an insurance organisation is obliged to pass an examination according to the programme of training qualified receivers in cases on bankruptcy of insurance organisations;

2) the qualified receiver in a case on bankruptcy of a non-governmental pension fund is obliged to pass an examination according to the programme of training qualified receivers in cases on bankruptcy of non-governmental pension funds;

3) the qualified receiver in a case on bankruptcy of a professional securities market participant or the a management company of investment funds, unit investment funds and non-governmental pension funds is obliged to pass an examination according to the programme of training qualified receivers in cases on bankruptcy of professional securities market participants and management companies of investment funds, unit investment funds and non-governmental pension funds.

4) the qualified receiver in the bankruptcy case of a credit co-operative shall pass examination according to the program of the preparation of arbitration managers in bankruptcy cases of the credit co-operatives;

5) a bankruptcy manager involved in the bankruptcy case of a clearing institution must pass an examination under the training program for bankruptcy managers in cases of clearing institutions bankruptcy;

6) a bankruptcy manager involved in the bankruptcy case of a market maker must pass an examination under the training program for bankruptcy managers in cases of market makers bankruptcy;

7) a bankruptcy manager involved in the bankruptcy case of a microfinance organisation must pass an examination under the training program of bankruptcy managers in cases of microfinance organisations bankruptcy.

**2.** An arbitration court may not endorse as the interim receiver or winding-up receiver in a case on bankruptcy of a financial organisation the qualified receiver:

1) who was taken off discharging the duties he/she had been charged with within the last two years in connection with failure to discharge them or with their improper discharge;

2) who acted within the last three years as the head or deputy head of a financial organisation whose licence for exercising an appropriate kind of activities was withdrawn or cancelled, except when discharging the duties of the provisional administration members;

3) who was exercising the functions of the one-man executive body or was a member of the collective executive body of a financial organisation when this financial organisation made the violations for which its licence for exercising an appropriate kind of activities was withdrawn or cancelled, if less that three years have passed since the date of such withdrawal

or cancellation.

4) not meeting the requirements envisaged by Item 1 of the present article.

**3.** A person included in the provisional administration may not be endorsed in the capacity of the qualified receiver.

**4.** The requirements for the head of an appropriate financial organisation established by the legislation of the Russian Federation regulating the activities of an appropriate financial organisation shall not apply to the qualified receiver in a case on bankruptcy of the financial organisation.

**Article 183.26.** Specifics of Establishing Creditors' Claims in a Case on Bankruptcy of a Financial Organisation

**1.** For the purpose of participating in a case on bankruptcy of a financial organisation creditors are entitled to raise their claims against the financial organisation:

1) in the course of supervision within thirty calendar days as from the date of publishing information about the introduction of supervision;

2) in course of bankruptcy proceedings within two months as from the date of publishing data on declaring the financial organisation bankrupt.

**2.** The creditors' claims cited in Item 1 of this Article shall be sent to an arbitration court, financial organisation and qualified receiver with the documents proving the reasonableness of these claims attached thereto.

**3.** The qualified receiver shall include the received claims into the register of creditors' claims which shall be kept in the procedure established by Article 16 of this Federal Law subject to the specifics established by this Article. The qualified receiver is not entitled to deny the inclusion of received claims in the register of creditors' claims. A register of creditors claims shall be subject to closure upon the expiry of the time periods fixed by Item 1 of this Article.

The qualified receiver is obliged to make possible for a financial organisation, a representative of the founders (participants) of the financial organisation, of the self-regulated organisation of financial organisations of which the financial organisation is a member, creditors that have raised claims against the debtor, as well as for other persons participating in bankruptcy proceedings, to get familiar with the register of creditors' claims and with grounds for inclusion of claims in the register of claims of the financial organisation's creditors (in particular with the claims and with the documents attached to them).

**4.** When drawing up a register of creditors' claims, the following shall be included in it:

1) in the course of supervision - the claims raised within the time periods fixed in Subitem 1 of Item 1 of this Article;

2) in the course of supervision - the claims raised in the course of supervision upon the expiry of the time periods fixed in Subitem 1 of Item 1 of this Article, as well as the claims raised in the course of bankruptcy proceedings before the expiry of the time periods fixed by Subitem 2 of Item 1 of this Article.

**5.** Objections as to the creditors' claims included in the register of creditors' claims may be presented to an arbitration court by the financial organisation, interim receiver or winding-up receiver, by a representative of the financial organisation's founders (participants), the self-regulated organisation of financial organisations of which the financial organisation is a member, as well as by the creditors that have raised claims against the financial organisation. Such objections shall be presented within 30 days as from the date of closing a register of creditors' claims.

**6.** Where there are objections as to the claims of the creditors cited in Item 1 of this Article, an arbitration court shall check if the cited claims are reasonable and if there are grounds for inclusion of the cited claims in a register of creditors' claims.

The creditors' claims in respect of which there are objections shall be considered by a judge of an arbitration court in the arbitration court's session within a month as of the end date of the time period for making objections against creditors' claims which is fixed by Item 5 of this Article.

On the basis of the results of the cited claims' consideration a ruling shall be issued as to the inclusion of the cited claims in the register of creditors' claims or on the refusal to do it. An arbitration court's ruling on the inclusion of creditors' claims in a register of creditors' claims shall specify the extent of the cited claims and an order of their satisfaction.

A ruling on the inclusion of creditors' claims in a register of creditors' claims or on the refusal to do it shall enter into effect immediately and may be appealed against. A ruling on the inclusion of creditors' claims in a register of creditors' claims or on the refusal to do it shall be sent by the arbitration court to the financial organisation, the qualified receiver, the creditor that has raised the cited claims and to the holder of the register.

**7.** The creditors' claims which are cited in Item 1 of this Article and in respect of which there are no objections received in the procedure and at the time which are established by this Federal Law shall be recognized as established in the composition, extent and order which are declared by creditors in compliance with the requirements of this Federal Law and shall be subject to inclusion by the qualified receiver in the register of creditors' claims after closing the register of creditors' claims.

For the purpose of determining the number of votes held by bankruptcy creditors and authorised bodies at a creditors' meeting shall be taken into account the claims included into the register of creditors' claims.

In the event of inclusion by an qualified receiver in a register of creditors' claims in defiance of the rules established by Paragraph One of this item a claim in respect of which there is an objection, the person that has made such objection is entitled to file within ten days from the date when this person learnt or could learn about such inclusion with an arbitration court a complaint against the given actions of the qualified receiver which shall be considered by the arbitration court according to the rules established by Item 6 of this Article.

**8.** The composition, extent and order of allowing other creditors' claims, in particular the claims raised after closing the register of creditors' claims, shall be established in the procedure set by this Federal Law without regard to the provisions provided for by this Article.

**Article 184.** Abrogated.

**Article 184.1.** Additional Grounds for Taking Measures Aimed at Preventing Bankruptcy of an Insurance Organisation

**1.** The refusal to allow creditors' claims under the pecuniary obligations provided for by Subitem 1 of Item 1 of Article 183.2 of this Federal Law means the following for insurance organisations:

1) failure to discharge or improper discharge at the time fixed by a federal law and an insurance contract the duty of making an insurance payment or payment of an insured amount, or failure to discharge or improper discharge of the cited duty established by an effective judicial act;

2) failure to discharge or improper discharge of any other claim of creditors under pecuniary obligations.

**2.** The duty provided for by Subitem 1 of Item 1 of this Article to allow creditors' claims under the pecuniary obligations whose composition and extent are established by an effective judicial act shall arise starting from the date when the writ of execution issued on the basis of

the effective judicial act is surrendered for execution.

**3.** As additional grounds for taking measures aimed at preventing bankruptcy of an insurance organisation shall be deemed the following:

1) multiple failures within twelve months as from the date of detecting the first violation to observe the standard balance of the insurance organisation's own assets and the assumed obligations fixed by the supervisory body;

2) multiple failures within twelve months as from the date of detecting the first violation to satisfy the requirements for the composition and structure of the assets accepted to cover the insurance organisation's insurance reserves and its own reserves which are established by the supervisory body;

3) withdrawal of the licence for exercising insurance activities;

4) suspension of the licence for exercising insurance activities;

5) restriction of operation of the licence for exercising insurance activities with respect to obligatory kinds of insurance.

**4.** Where an insurance organisation is engaged in the kind of insurance connected with the activities of a professional association of insurers or other organisation which is charged under federal law with the duty of making compensation payments under this kind of insurance, in particular, as a result of following the procedures applicable in a case on bankruptcy of an insurance organisation or withdrawal of the licence for exercising insurance activities (hereinafter referred to as a professional association), the head of the insurance organisation shall be also obliged to send a notice to such professional association within seven working days as from the date when the grounds for taking measures aimed at preventing the insurance organisation's bankruptcy arise.

When taking measures aimed at preventing bankruptcy of an insurance organisation, following procedures applicable in a case on bankruptcy of an insurance organisation, professional associations shall enjoy the rights and discharge the duties provided for by Articles 183.1-183.26 of this Federal Law for self-regulated organisations of financial organisations.

**5.** In case of suspension or restriction of a licence for insurance activities on compulsory types of insurance, the supervisory body shall, on grounds envisaged in Article 183.2 of this Federal Law and in cases established by it, assign a temporary administration of an insurance company.

**6.** The appointment of the provisional administration of an insurance organisation shall be mandatory in case of withdrawal of the licence for exercising insurance activities and suspension of the licence for exercising insurance activities for the following reasons:

1) exercising by an insurance organisation activities which are prohibited by the legislation of the Russian Federation and activities in defiance of the conditions established for issuance of the licence for exercising insurance activities;

2) an insurance organisation's failure to observe the legislation of the Russian Federation regulating insurance activities, as regards forming and placement of insurance reserves, placement of own assets, assets of the funds which secure making insurance payments;

3) an insurance organisation's failure to satisfy the requirements for ensuring the standard balance of the insurance organisation's own assets and the assumed obligations, other requirements for ensuring the financial organisation's financial stability and solvency;

4) insufficiency of monetary assets for timely discharge of pecuniary obligations and/or the duty of making obligatory payments.

**7.** When appointing the provisional administration of an insurance organisation in connection with the withdrawal of the licence for exercising insurance activities or its suspension for the reasons provided for by Item 6 of this Article, the authority of the insurance organisation's executive bodies shall be suspended by decision of the control body.

**8.** The control body's decision on appointing the provisional administration of an insurance organisation shall be adopted on the basis of the results of an inspection of the insurance organisation's activities held by the control body at most six months before the date of adoption of the decision on appointing the insurance organisation's provisional administration, except when the appointment of the provisional administration of an insurance organisation is obligatory as provided for by Item 1 of this Article and Article 183.5 of this Federal Law.

The control body's decision on appointing the provisional administration of an insurance organisation may be adopted upon the completion of an inspection of the insurance organisation's activities, if in the course of this inspection the grounds have been detected for obligatory appointment of the insurance organisation's provisional administration.

A regulatory act of the supervisory body may provide for other grounds on the basis of which the control body in the course of inspecting the insurance organisation's activities is entitled to appoint the provisional administration of the insurance organisation prior to completing such inspection or upon its completion.

A procedure for adoption by the control body of the decision on appointing the provisional administration of an insurance organisation shall be approved by the monitoring body.

**9.** The provisional administration of an insurance organisation may comprise employees of a controlling body, as well as, by approbation of the Agency for Deposits' Insurance, employees thereof. The candidacies of employees of the controlling body and/or employees of the Agency for Deposits' Insurance shall be included into the composition of the provisional administration by an order of the controlling body when approving the composition of the provisional administration. In so doing, the controlling body is entitled, prior to endorsement of the composition of the provisional administration, to send information on candidacies of employees of the controlling body to the self-regulating organisation of qualified receivers that has proposed the candidacy of the head of the provisional administration.

**10.** The remuneration provided for by Article 183.6 of this Federal Law for the members of the provisional administration of an insurance organisation who are employees of the controlling body or the Agency's employees shall not be paid.

**Article 184.2.** Specifics of Defining Bankruptcy Signs in Respect of an Insurance Organisation

When defining the signs of bankruptcy of an insurance organisation provided for by Subitem 1 of Item 1 of Article 183.16 of this Federal Law in respect of the insurance organisation's duty connected with making an insurance payment, shall be taken into account the duty of making the insurance payment, as well as of paying a part on the insurance premium in connection with preschedule termination of an insurance contract, established by a federal law, or a contract of insurance, or an effective judicial act.

**Article 184.3.** Specifics of Exercising the Functions of the Provisional Administration of an Insurance Organisation in Case of Suspension of the Authority of Executive

Bodies of the Insurance Organisation

In the event of suspending the authority of executive bodies of an insurance organisation as to the exercise of insurance activities, the provisional administration of the insurance organisation shall seize registered high -security forms in respect of all kinds of insurance held by the insurance organisation, insurance agents of the insurance organisation and other persons, which the cited forms have been transferred to, and shall pas them over for custody to a professional association or other organisation which can ensure their safekeeping.

**Article 184.4.** Specifics of an Application for Declaring an Insurance Organisation Bankrupt

**1.** The right to apply to a court for declaring an insurance organisation bankrupt shall be enjoyed, along with the persons cited in Articles 7 and 183.19 of this Federal Law, by a professional association.

**2.** An application of a professional association for declaring an insurance organisation bankrupt shall satisfy the requirements provided for by Article 183.19 of this Federal Law.

**Article 184.5.** The Right of Claim of Insurants and Other Persons in Case of Declaring an Insurance Organisation Bankrupt and Initiating Bankruptcy Proceedings

**1.** In the event of adoption by an arbitration court of the decision on declaring an insurance organisation bankrupt and on initiating bankruptcy proceedings, insurants are entitled to unilaterally renounce an insurance contract within a month from the date of receiving a notice of the winding-up receiver of declaring the insurance organisation bankrupt.

**2.** When terminating an insurance contract for the grounds cited in Item 1 of this Article, the insurant is entitled to a part of the insurance premium paid by the insurance organisation which is proportionate to the difference between the term for which the insurance contract has been made and the time period within which it was in effect (an unexpired validity term of the insurance contract) or to payment of a redemption amount.

**3.** When receiving by an insurant or other person for whose benefit an insurance contract has been made (an insured person or beneficiary) a compensation payment under the insurance contract which provides under federal law for the right of receiving it on account of the assets of professional associations, the given persons shall enjoy the right of claim against the debtor in the amount exceeding the amount of the received compensation payment.

When receiving by an insurant, insured person or beneficiary a compensation payment according to the claim (a part of the claim) included into a register of creditors' claims, the amount of such claim shall be reduced by the winding-up receiver by the sum of the compensation payment on the basis of an application of the person that has received the compensation payment or of the person that has made the compensation payment.

**4.** The claims of an insurant, insured person or beneficiary under insurance contracts (in particular, as provided for by Item 2 of this Article) shall be included in a register of creditors' claims in the order provided for by Article 184.10 of this Federal Law, regardless of the date when an obligation arises.

**Article 184.6.** The Rights of Claim of a Professional Association

**1.** A professional association, for the purpose of participation in the procedures applied in a bankruptcy case shall be deemed enjoying the right of claim against the insurance organisation being the debtor within the limits of the sums of admission fees, membership dues, target contributions and other payments made to the professional association by members thereof in compliance with the rules of the professional association, as well as of the

compensation payments made and other outlays connected with compensation payments, in compliance with the legislation of the Russian Federation regulating insurance activities.

**2.** The professional association's claims resulting from compensation payments made and other outlays connected with compensation payments shall be subject under the legislation of the Russian Federation regulating insurance activities to the inclusion in a register of third-turn creditors' claims, regardless of the date when they arise and the time when they are presented.

### Article 184.7. The Sale of an Insurance Organisation's Property Complex

**1.** The property complex of an insurance organisation may be sold in the course of bankruptcy proceedings according to the rules provided for by Article 139 of this Federal Law, subject to the requirements of the legislation of the Russian Federation regulating insurance activities.

An insurance organisation's property complex shall comprise all kinds of the insurance organisation's property, including the insurance portfolio of the insurance organisation being the debtor. For the purposes of this Article, the insurance portfolio of an insurance organisation shall include the insurance contracts whose validity term has not yet expired and under which an insured incident has not yet occurred on the date of declaring the insurance organisation bankrupt, as well as the assets accepted for covering the insurance reserves formed by the insurer in the procedure established by the legislation of the Russian Federation regulating insurance activities.

In case of detecting after determining the composition of the insurance portfolio insurance contracts, the obligations under which have not been transferred within the composition of the insurance portfolio, the obligations under such contract shall not be subject to inclusion in the composition of the insurance portfolio.

The cited obligations shall be discharged on account of the bankruptcy estate in the order established by Article 184.10 of this Federal Law.

**2.** As the purchaser of the property complex of an insurance organisation may only act an insurance organisation holding the licence of the control body for exercising an appropriate kind of insurance activities and possessing assets which are sufficient for discharging the obligations assumed under insurance contracts.

### Article 184.8. The Sale of an Insurance Organisation's Insurance Portfolio

When taking measures aimed at preventing bankruptcy of insurance organisation, as well as in the course of the procedures applied in a bankruptcy case, may be sold the insurance organisation's insurance portfolio for an individual kind of insurance or for several kinds of insurance to another insurance organisation by approbation of the control body according to the procedure established by it.

### Article 184.9. The Transfer of the Insurance Portfolio of an Insurance Organisation

**1.** When taking measures aimed at preventing bankruptcy of an insurance organisation, as well as in the course of the procedures applied in a bankruptcy case, the insurance portfolio of the insurance organisation in respect of an individual kind of insurance or several kinds of insurance, in particular in respect of the kinds of insurance under which making of compensation payment is provided for as a result of applying to the insurer the procedure applicable in a bankruptcy case or withdrawal of the insurer's licence for exercising insurance activities, may be transferred by the insurance organisation (if the authority of executive bodies of the insurance organisation is suspended - by the insurance organisation's provisional administration) or by the winding-up receiver to another insurance organisation or insurance organisations (hereinafter referred to as the managing insurance organisation) by

approbation of the control body.

**2.** The following shall be included in an insurance organisation's insurance portfolio when transferring it:

1) liabilities under insurance contracts (in respect of an individual kind of insurance or several kinds of insurance) which are not discharged as of the date of adoption of the decision on the transfer of the insurance organisation's insurance portfolio (insurance reserves) in compliance with the legislation of the Russian Federation regulating insurance activities;

2) assets accepted for covering the insurance reserves formed by the insurer in the procedure established by the legislation of the Russian Federation regulating insurance activities.

**3.** A procedure for transfer of the insurance portfolio, including a procedure for discharging obligations under insurance contracts detected after transfer of the insurance organisation's insurance portfolio and not transferred within the composition thereof, a procedure for discharging obligations by the managing insurance organisation shall be established by the supervisory body.

The specifics of the insurance portfolio's transfer, including a procedure for discharging obligations under insurance contracts detected after transfer of the insurance organisation's insurance portfolio and not transferred within the composition thereof, a procedure for discharging obligations by the managing insurance organisation and a procedure for selection of the managing insurance company for the kinds of insurance under, which making of compensation payments is provided for, shall be established by the supervisory body.

**4.** In the event of insufficiency or unavailability of an insurance organisation's assets for discharging by the managing insurance organisation obligations under insurance contracts pertaining to the kinds of insurance, under which making of compensation payments is provided for, the lacking part of the assets may be compensated for by a professional association out of the funds intended for financing compensation payments in the procedure and under the terms which are established by the monitoring body.

**5.** Insurants and beneficiaries shall be subject to notification by an insurance organisation (in case of suspending the authority of managerial bodies of an insurance organisation - by the provisional administration of the insurance organisation) or by the winding-up receiver of the forthcoming transfer of the insurance portfolio of the insurance organisation by the managing insurance organisation by way of publishing a notice of the transfer of the insurance portfolio of the insurance organisation in the procedure established by Article 28 of this Federal Law. The cited notice shall be subject to publication at least one month before the supposed date of transfer of the insurance organisation's insurance portfolio. A notice of transfer of an insurance organisation's insurance portfolio shall contain the following:

1) denomination of the insurance organisation transferring the insurance portfolio, its address and data identifying the insurance organisation (the state registration number of the entry on the state registration of a legal entity, taxpayer's identification number);

2) grounds for transfer of the insurance portfolio;

3) data on limitation or suspension of authority of executive bodies of the insurance organisation transferring the insurance portfolio;

4) denomination of the managing insurance organisation, its address and identification data (the state registration number of the entry on the state registration of a legal entity, taxpayer's identification number).

**6.** Within a month since the date of publishing a notice of transfer of the insurance

portfolio of an insurance organisation insurants and beneficiaries are entitled to send to the insurance organisation a claim in writing for dissolution of the insurance contract under which the rights and obligations are subject to transfer. In the event of dissolution of an insurance contract, such insurance contract and the proportionate share of the insurance reserves to be transferred shall be excluded from the insurance portfolio of the insurance organisation from the time when the insurance organisation (should the authority of managerial bodies of the insurance organisation be suspended - the provisional administration of the insurance organisation) or the winding-up receiver receives the cited claim of the insurant and/or beneficiary.

Insurants or beneficiaries under insurance contracts that have presented in writing a claim for dissolution of an insurance contract are entitled to demand of the insurance company repayment thereto of a part of the insurance premium paid by them in proportion to the difference between the term for which the insurance contract has been made and the time period within which it was in effect, or payment of redemption amounts, if not otherwise provided for by federal law.

The cited claims shall be subject to inclusion in a register of creditors' claims in the order established by Article 184.10 of this Federal Law.

**7.** The remainder of the insurance reserves transferred to the managing insurance organisation and not used by this managing insurance organisation for discharging obligations under transferred insurance contracts shall be returned by the managing insurance organisation to the bankruptcy estate in the procedure and at the time which are established by the monitoring body.

**8.** The remainder of the assets intended for financing the compensation payments transferred to the managing insurance organisation and not used by this managing insurance organisation for discharging obligations under insurance contracts shall be returned by the managing insurance organisation to the professional association in the procedure and at the time which are established by the monitoring body.

**Article 184.10.** Specifics of Allowing Claims of an Insurance Organisation's Creditors
**1.** Within the composition of the first-turn creditors' claims shall be allowed the claims of insured persons in respect of whom an insurance organisation has become obliged to pay the amount of indemnity under life insurance contracts which provide for insured persons' attaining a certain age or time.
**2.** The third-turn creditors' claims shall be allowed in the following order:
1) in the first turn - claims of insurants, insured persons or beneficiaries under obligatory insurance contracts, as well as claims connected with reimbursement of compensation payments;
2) in the second turn - claims of insured persons or beneficiaries, as well as insurants under contracts of life insurance and other kinds of personal insurance;

3) in the third turn - claims of beneficiaries and insurants under contracts of civil liability insurance for causing harm to life and health, for payment of compensation in excess of the compensation for harm;
4) in the third turn - claims of insurants and beneficiaries under contracts of civil liability insurance for causing damage to third persons' property and under contracts of property insurance;
5) in the fifth turn - claims of other creditors, including those related to reimbursement of outlays in connection with making compensation payments under obligatory insurance

contracts.

**Article 184.11.** Specifics of Endorsing an Amicable Agreement

**1.** An amicable agreement may be only endorsed by an arbitration court after repayment of debts related to first-turn and second-turn creditors, debts related to claims of insured persons, beneficiaries and insurants under obligatory insurance contracts, as well as to claims connected with reimbursement of compensation payments and outlays in connection with making compensation payments under obligatory insurance contracts.

**2.** To an application for endorsing an amicable agreement, along with the documents provided for by Item 3 of Article 158 of this Federal Law, shall be attached the documents proving repayment of the debts cited in Item 1 of this Article.

**Article 185.** Abrogated.

**Article 185.1.** Specifics of Bankruptcy of Professional Securities Market Participants, of Management Companies of Investment Funds, Unit Investment Funds and Non-Governmental Pension Funds, Clearing Organisations

**1.** The specifics of bankruptcy of financial organisations established by Articles 183.1-183.26 of this Federal Law shall extend to professional securities market participants, management companies of investment funds, unit investment funds and non-governmental pension funds as well as clearing organisations subject to the provisions of Articles 185.2 - 185.7 of this Federal Law, if not otherwise provided for by Paragraph 8 of this chapter.

**2.** For the purposes of this paragraph, a client of a professional securities market participant, the management company of an investment fund, unit investment fund and non-governmental pension fund (hereinafter referred to as the management company), a clearing organisation means a natural person or legal entity whose property is used by the cited professional securities market participant and management company in transactions on the basis of federal law or a contract made, in particular the owner of investment shares of a unit investment fund and the person that has contributed property in payment for investment shares of a unit investment fund (hereinafter also referred to as a client).

**Article 185.2.** Specifics of Effects of Appointing the Provisional Administration of a Professional Securities Market Participant, Management Company and Clearing Organisation

**1.** The provisional administration of a professional securities market participant, management company and clearing organisation while exercising its activities, shall be bound to do the following:

1) to ensure safekeeping of the monetary funds, securities and other property possessed by a client;

2) to ascertain that the monetary funds, securities and other property possessed by clients and kept on a special broker's account, depo account, separate bank account of a professional securities market participant, management company or clearing organisation, on the trading account or clearing account are sufficient for satisfying in full clients' claims for repayment of monetary funds, return of securities and other property.

**2.** Within the period while the provisional administration of a professional securities market participant, of a management company and of a clearing organisation exercises its activities, the provisional administration is entitled to send requests for providing information which is necessary for discharging its duties to a trade promoter, a currency exchange and commodity exchange, to a clearing organisation, custodian, registrar, the credit organisation

with which the professional securities market participant, management company and or a clearing organisation have made appropriate contracts or for which personal accounts have been opened in the system of keeping a register of securities' owners.

**Article 185.3.** A Register of Clients of a Professional Securities Market Participant, Management Company and Clearing Organisation

**1.** In the course of supervision or bankruptcy proceedings the qualified receiver or the register's holder, for the purpose of satisfying the claims of creditors of a professional securities market participant and management company, shall keep a register of clients of the professional securities market participant, management company and a clearing organisation (hereinafter referred to as a clients' register).

If the number of clients of a professional securities market participant and management company is over 100, it shall be obligatory to attract a register's holder for keeping a client's register.

Into a clients' register shall not be included the management company's clients possessing investment shares of the unit investment fund which is in trust management of this management company and the persons who have not been paid monetary compensation in connection with redemption of the cited fund's investment shares.

**2.** A contract with the register's holder may be only made if he has made a contract of liability insurance in case of causing losses to clients of a professional securities market participant, management company, clearing organisation and persons participating in bankruptcy proceedings.

Information about the register's holder, in particular its denomination, address, state registration number of the entry on the state registration of a legal entity shall be presented by the qualified receiver to an arbitration court at the latest in five working days as from the date when a contract of keeping a clients' register is made.

The services of the register's holder shall be paid for on account of a debtor.

**3.** The register's holder shall be bound to cover the losses caused by his failure to discharge or improper discharge of the duties thereof provided for by this Federal Law.

If the register's holder is entrusted with keeping a clients' register, the qualified receiver shall not be held liable for the losses caused in connection with failure to discharge or improper discharge of the duties involved in keeping the clients' register.

**4.** A clients' register shall contain the following:

1) data on a client;

2) data on the client's property kept by a professional securities market participant, management company or clearing organisation;

3) data on the obligations to be discharged on account and/or for the benefit of each client.

**5.** When changing the data cited in Item 4 of this Article, appropriate entries on it shall be made to the clients' register.

**Article 185.4.** Introducing Supervision in Respect of a Professional Securities Market Participant, Management Company and Clearing Organisation

**1.** While analyzing the financial status of a professional securities market participant, the management company or a clearing organisation, the interim receiver shall ascertain if there are enough monetary assets, securities and other property on a special broker's account, the DEPO account, trading account, clearing account, the separate bank account opened for making settlements in respect of operations connected with trust management of the professional securities market participant and management company, for the purpose of satisfying clients' claims and discharging obligations of the professional securities market

participant, management company and clearing organisation in the procedure established by Article 185.5 of this Federal Law.

**2.** In case of introducing supervision, a professional securities market participant, management company and clearing organisation are not entitled to do the following:

1) to make transactions on their own account or on a client's account, if at the time when they are to be made the property or monetary funds are insufficient for discharging obligations under these transactions and under those made before. This requirement shall not extend to the instances when a professional securities market participant and management company are entitled to demand the cited property under a transaction made with the central contractor in the quantity and at the time which would enable it (them) to discharge their obligations in a proper way;

2) to use in their own interests the monetary funds kept on a special broker's account;

3) to use own property as a security for discharging third persons' obligations;

4) to loan own property;

5) to make repo accounts without authorization of the interim receiver;

6) to transfer client's monetary funds and other property, as well as to make transactions in a client's securities and other property thereof on the client's instructions or demand, if the client has debts with respect to a professional securities market participant or clearing organisation, in particular as to payment of remuneration to the professional securities market participant or the clearing organisation.

**3.** Monetary assets and other property of a client shall be transferred and transactions in client's securities and other property on the client's instructions or demand shall be made in the procedure established by Article 185.5 of this Federal Law.

**Article 185.5.** Specifics of Allowing Claims of Clients of a Professional Securities Market Participant, Management Company and a Clearing Organisation

**1.** Claims of clients of a professional securities market participant, management company and clearing organisation shall be subject to satisfaction in the course of supervision or bankruptcy proceedings in the order established by this Article.

**2.** If the clients' property kept on accounts of a professional securities market participant, management company and clearing organisation is sufficient for allowing clients' claims, such claims shall be satisfied in full.

**3.** If the property of several clients is jointly kept on a single special broker's account, special depositary account, depo account of a nominal holder, depo account of a foreign nominal holder or personal account opened for a nominal holder in a register of securities' owners, and this property is not sufficient for satisfying in full their claims for transfer of all the property possessed by them, this property shall be transferred in the quantity which is proportionate to the amount of the cited claims.

Abrogated.

**4.** Unsatisfied clients' claims shall be subject to inclusion in a register of creditors' claims and to satisfaction within the composition of third-turn creditors' claims.

**5.** The provisions of this Article shall not extend to the clients' property which is in trust management of the professional securities market participant or management company.

**Article 185.6.** Specifics of Bankruptcy Proceedings in Respect of a Professional Securities Market Participant, Management Company and Clearing Organisation

**1.** In the bankruptcy estate of a professional securities market participant, management company and a clearing organisation shall not be included their clients' property kept on a special broker's account, trading account, clearing account, special depository account, transit

account, depo account, transit depo account and personal account in a register of securities owners, separate bank account opened for making settlements in respect of the transactions connected with trust management, as well as other property which is in trust management of the management company or is transferred as payment for investment shares.

2. Should an arbitration court render the decision on declaring a professional securities market participant, management company, or a clearing organisation bankrupt and on initiating bankruptcy proceedings in respect of them, the winding-up receiver shall terminate contracts made with clients in compliance with the requirements of federal laws and normative acts adopted in compliance with them. If not otherwise provided for by federal laws and normative legal acts adopted in compliance with them, the winding-up receiver when terminating the cited contracts shall do the following:

1) discharge obligations (assume execution) in respect of the transactions made at a client's expense before adoption by an arbitration court of the decision on declaring a professional securities market participant and management company bankrupt and on initiating bankruptcy proceedings in respect of them;

2) transfer the remaining clients' property to clients.

3. The winding-up (bankruptcy) receiver, if clients have debts with respect to a professional securities market participant, management company and a clearing organisation, shall deduct the remuneration and other payments which are due to the professional securities market participant, management company and to the clearing organisation or, if the clients' monetary funds are insufficient, is entitled to demand of the clients the repayment of debts. If clients fail to repay debts, the winding-up receiver upon the expiry of seven working days from raising the cited claim is entitled to levy execution against the clients' property kept by the professional securities market participant, management company and clearing organisation or, where such property is securities, is entitled to sell them according to the rules provided for by Article 185.7 of this Federal Law.

4. If the property of several clients is jointly kept on a single bank account, depo account of a nominal holder, depo account of a foreign nominal holder, or personal account opened for a nominal holder in a register of securities' owners and such property is insufficient for allowing in full their claims for transfer of all the property possessed by them, such property shall be transferred in the quantity which is proportionate to the extent of such claims.

5. If upon the expiry of six months from the date of adoption by an arbitration court of the decision on declaring a professional securities market participant, management company or a clearing organisation as a bankrupt and on initiating bankruptcy proceedings the clients' property has not been transferred to clients, the winding-up receiver shall transfer such property to a notary for depositing.

6. The provisions of Item 2 of this Article shall not apply to termination of unit investment funds, if under federal law a unit investment fund is terminated by a specialized custodian. If under federal law a unit investment fund may not be terminated by a specialized custodian, the winding-up receiver is entitled or, where it is provided for by federal law, is obliged to transfer the rights and duties under an agreement of trust management of this unit investment fund to another management company.

After finishing the procedure for termination of a unit investment fund the specialized custodian shall draw up a report on termination of the unit investment fund and present it to the winding-up receiver.

7. In the event of initiation of bankruptcy proceedings in respect of the professional securities market participant engaged in keeping a register of securities owners, the winding-up receiver is bound within three months since the date of opening bankruptcy proceedings to transfer the information and documents making possible to identify the

persons, that are registered in the system of keeping a register of securities owners and other registers (hereinafter referred to as a register of securities owners) and whose contracts that have been made serve as a basis for keeping a register of securities owners, to the professional securities market participant holding an appropriate licence.

A register of securities owners shall be transferred by the winding-up receiver in the order established by the control body.

### Article 185.7. Specifics of Selling the Property of a Professional Securities Market Participant, a Management Company and a Clearing Organisation

**1.** The securities possessed by a professional securities market participant, management company and a clearing organisation and circulating in the organised securities market shall be subject to sale at organised auctions.

**2.** Where the securities possessed by a professional securities market participant, a management company or a clearing organisation are not admitted at organised auctions, such securities shall be sold in the procedure established by Article 111 of this Federal Law.

**Article 186.** Abrogated.

Article 186.1. Specifics of Bankruptcy of Non-Governmental Pension Fund

**1.** The specifics of bankruptcy of financial organisations established by Articles 183.1-183.26 of this Federal Law shall extend to non-governmental pension funds subject to the provisions of Articles 186.2 - 186.11, 187.2 - 187.12 of this Federal Law.

**2.** The bankruptcy of non-state pension funds that are concurrently engaged in the activities of non-state pension provision and of mandatory pension insurance shall be effected in the procedure established by Articles 187.1 - 187.12 of this Federal Law. In so doing, the provisions of Articles 186.4 - 186.10 of this Federal Law shall apply to bankruptcy of the cited funds, if other rules are not established by Articles 187.2 - 187.12 of this Federal Law.

### Article 186.2. Additional Grounds for Taking Measures Aimed at Preventing Bankruptcy of a Non-Governmental Pension Fund

As additional grounds for taking measures aimed at preventing bankruptcy of a non-governmental pension fund shall be deemed the following:

1) reduction, according to the results of a quarter, of the normative rate of pension reserves for pension schemes with fixed payments below the level provided for by the control body;

2) detecting an increase of the actuarial deficit, according to the results of an annual actuarial assessment of the non-governmental pension fund's activities, as compared to the previous year.

### Article 186.3. Covering Outlays of the Provisional Administration of a Non-Governmental Pension Fund

The outlays of the provisional administration of a non-governmental pension fund connected with activities thereof, in particular remuneration to this provisional administration's members, shall be covered on account of the property intended for securing this fund's statutory activities (of own assets).

### Article 186.4. The Specifics of Establishing Creditors' Claims in a Case on Bankruptcy of a Non-State Pension Fund Exercising the Activities Involved in Non-State Pension Provision

**1.** For the purposes of this paragraph, the obligations involved in non-governmental pension provision shall provide for the following:

1) payment of redemption amounts or their transfer to another funds;

2) transfer of the duty to pay life non-governmental pensions to participants of a non-governmental pension fund (hereinafter referred to as life non-governmental pensions) and pension reserves to another non-governmental pension fund by approbation of the control body for discharging the cited duty.

**2.** Abrogated from January 1, 2014.

**3.** The interim receiver shall define and account separately in a register of declared creditors' claims the following:

1) obligations under contracts of non-governmental pension insurance (hereinafter referred to as a pension contract) (including obligations to pay granted non-governmental pensions);

2) composition of creditors whose claims are subject to satisfaction on account of pension reserves, as well as sum of creditor indebtedness.

**3.1.** The form of a register of creditors' claims of a non-state pension fund shall be established by a regulatory act of the controlling body by approbation of the Agency for Deposits' Insurance.

**4.** The interim receiver shall attract an appraiser for assessing the market value of pension reserves and pension savings, as well as of other assets which constitute a non-governmental pension fund's own property in the procedure established by Article 130 of this Federal Law.

**5.** Starting from the date of adoption by an arbitration court of the decision on declaring a non-governmental pension fund bankrupt and on initiating bankruptcy proceedings, contracts of non-governmental pension provision shall be terminated.

Effects of terminating the cited contracts shall be defined in compliance with this Federal Law.

**6.** Within three months from the date of adoption by an arbitration court of the decision on declaring a non-governmental pension fund bankrupt and on initiating bankruptcy proceedings the winding-up receiver shall do the following:

1) notify in writing depositors and participants of such fund about adoption by the arbitration court of the decision on declaring the non-state pension fund bankrupt and on initiating bankruptcy proceedings at the latest in 30 days as from the date of adoption by the arbitration court of the cited decision;

2) define obligations under pension contracts (in particular obligations involved in payment of granted non-state pensions) on the basis of the data available in the non-state pension fund;

3) define the composition of creditors whose claims are subject to satisfaction on account of pension reserves, as well as the sum of creditor indebtedness. For the purpose of estimation of the amount of obligations in respect of life non-state pensions, the winding-up receiver shall attract an actuary;

4) estimate the market value of the assets making up pension reserves which circulate in organised trade, engage an appraiser for assessing the market value of other assets making up pension reserves, as well as of other assets making up the cited fund's own property, in the procedure established by Article 130 of this Federal Law.

**7.** Within six months from the date of adoption by an arbitration court of the decision on declaring a non-governmental pension fund bankrupt and on initiating bankruptcy proceedings the winding-up receiver shall do the following:

1) ensure payment or remittance to other funds of payback amounts or their transfer on account of payment of insurance premiums under contract of pension's insurance made with insurance organisations;

2) ensure transfer of the duty of paying life non-state pensions and assets of pension reserves to another non-governmental pension fund in compliance with Article 186.9 of this Federal Law.

**Article 186.5.** Specifics of Using Pension Reserves

**1.** Abrogated from January 1, 2014.

**2.** Pension reserves shall not be included in the bankruptcy estate and shall be only used for the purposes which are provided for by Item 7 of Article 186.4 of this Federal Law, except as established by Item 3 of Article 186.7 of this Federal Law.

Redemption amounts shall be paid to depositors and participants of a non-governmental pension fund in compliance with the a pension contract.

Redemption amounts may be transferred as pension contributions to other non-governmental pension funds which are specified by depositors and participants of a non-governmental pension fund and with which they have made contracts of non-governmental pension provision.

Redemption amounts may be transferred on account of payment of insurance premiums under contracts of pension insurance of depositors and participants of a non-governmental pension fund made with insurance organisations at the choice of this fund's depositor or participant. Requirements for the cited insurance organisations shall be established by federal laws.

Procedure for payment of the redemption sum or for its transfer to the related non-state pension fund in compliance with this Article shall be established by the supervisory body.

**3.** Redemption amounts shall not be paid under mature obligations of a non-governmental pension fund to pay a life non-governmental pension. The cited obligations shall be subject to an actuarial assessment in total for all contracts of pension insurance of such fund's participants in respect of whom such fund's obligation to pay a life non-governmental pension is mature. A fund shall be formed to the amount of the cited obligations made up of the assets constituting pension reserves of a non-governmental pension fund and, should an actuarial deficit be found on the basis of the results of an actuarial assessment, it shall be covered on account of the assets provided for by Item 4 of this Article (hereinafter referred to as a payment fund).

**4.** For the purposes cited in Items 2 and 3 of this Article may be likewise used the assets of the united guarantee funds of which a non-governmental pension fund is a member, payments under insurance contracts providing additional guarantees of discharge of such fund's obligations towards depositors and participants of the non-governmental pension fund and/or payments made by mutual insurance societies of which such fund is a member.

**5.** Where pension reserves and other property provided for by this Article are insufficient for discharging the duties cited in this Article with respect to creditors of a non-governmental pension fund, unsatisfied claims of these creditors shall be satisfied in the procedure established by Article 186.8 of this Federal Law.

**Article 186.6.** Accounts of a Non-Governmental Pension Fund in the Course of Bankruptcy Proceedings

**1.** The winding-up receiver shall be obliged to use the debtor's special bank accounts for entering thereupon pension reserves and the assets constituting the bankruptcy estate of a non-governmental pension fund.

**2.** Redemption amounts shall be paid or remitted from the special bank account of a non-governmental pension fund being the debtor where pension reserves are kept in compliance with Article 186.5 of this Federal Law.

**3.** Abrogated from January 1, 2014.

**4.** Payments to creditors shall be made in the order established by Article 186.8 of this Federal Law from the master account of a non-governmental pension fund being the debtor where the assets constituting the bankruptcy estate of the non-governmental pension fund are kept.

**Article 186.7.** A Procedure for Satisfying Creditors' Claims on Account of Pension Reserves

**1.** Obligations with respect to depositors and participants of a non-governmental pension fund shall be discharged on account of pension reserves in the following order:

1) in the first turn - claims of participants of the non-governmental pension fund in respect of which the duty of such fund to pay a life non-governmental pension is mature by way of defining such fund's obligations as to payment of life non-governmental pensions and allocation of assets out of pension reserves for forming a payment fund which is sufficient for discharging the cited obligations;

2) in the second turn - claims to pay out the redemption amounts of participants of the non-governmental pension fund in respect of which such fund's duty to pay a non-governmental pension within the time period specified by a pension contract is mature;

3) in the third turn - claims of depositors and participants of the non-governmental pension fund being natural persons;

4) in the forth turn - claims of depositors of the non-governmental pension fund being legal entities;

5) in the fifth turn - claims of other creditors which are subject to satisfaction on account of pension reserves in compliance with Federal Law No. 75-FZ of May 7, 1998 on Non-Governmental Pension Funds (hereinafter referred to as the Federal Law on Non-Governmental Pension Funds).

**2.** Abrogated from January 1, 2014.

**3.** If the sum of pension reserves exceeds the amount of creditors' claims which are subject to satisfaction under this Article on account of pension reserves, the pension reserves left after allowing the claims provided for by this Article shall be subject to inclusion in the bankruptcy estate.

**Article 186.8.** Specifics of Allowing Claims of Creditors of a Non-Governmental Pension Fund

**1.** Within the composition of claims of first-turn creditors shall be subject to satisfaction:

1) claims of participants of a non-governmental pension fund in respect of which the cited fund's duty to pay a life non-governmental pension is mature and which have not been satisfied on account of pension reserves in the procedure established by Subitem 1 of Item 1 of Article 186.7 of this Federal Law;

2) abrogated from January 1, 2014;

3) claims as to payment of the redemption amount of participants of a non-governmental pension fund in respect of which the cited fund's obligation to pay a non-governmental pension within the time period fixed by a pension contract is mature and which have not been satisfied on account of pension reserves.

**2.** Claims of third-turn creditors shall be subject to satisfaction in the following order:

1) in the first turn - claims of depositors and participants of a non-governmental pension fund being natural persons as to payment of the redemption amount which are not satisfied on account of pension reserves;

2) in the second turn - claims as to payment of the redemption amount of depositors of a non-governmental pension fund being legal entities which are not satisfied on account of pension reserves;

3) in the third turn - claims of other creditors.

**3.** In the course of bankruptcy proceedings in respect of a non--state pension fund the satisfaction of creditors' claims by way of paying compensation for release from obligation is only allowed with respect to the property of the non-state pension fund that has not been sold or transferred to another non-state pension fund.

The creditors' claims on whose account creditors have been paid the compensation for release from obligation in compliance with the agreement made by the bankruptcy receiver and a creditor (creditors) (hereinafter referred to as an agreement on compensation for release from obligation) shall be satisfied by decision of a meeting of creditors or a creditor's committee.

A meeting of creditors or a creditor's committee shall endorse the proposal of the bankruptcy receiver in respect of a procedure for paying the compensation for release from obligation that shall contain data on the composition of the property, its cost, a procedure for and time of notifying creditors on the proposal to satisfy their claims by way of paying the compensation for release from obligation and the time of sending by creditors applications about their consent to have their claims satisfied by way of paying compensation for release from obligation.

The cost of the property to be proposed for transfer to creditors as compensation for release from obligation shall be determined by a meeting of creditors or a creditors' committee.

**4.** For the purpose of transfer to creditors of a non-state pension fund as compensation for release from obligation the property of the non-state pension fund the bankruptcy receiver shall send to the appropriate creditor or creditors the proposal to satisfy their claims by way of providing thereto compensation for release from obligation endorsed by a meeting of creditors or a creditor's committee.

If the number of creditors whose claims are not satisfied exceeds fifty, as a proper notification of creditors about the proposal to satisfy their claims by way of providing compensation for release from obligation shall be deemed the inclusion of the appropriate proposal into the Comprehensive Federal Register of Data on Bankruptcy within five working days as from the date of endorsement by a meeting of creditors or by a creditor's committee of the proposal of the bankruptcy receiver in respect of a procedure for providing a compensation for release from obligation to creditors of a non-state pension fund.

Within the cited time period the bankruptcy receiver is bound to include the text of the proposal to satisfy the claims of creditors of a non-state pension fund by way of providing compensation for release from obligation into the Comprehensive Federal Register of Data on Bankruptcy.

**5.** The proposal cited in Item Four of this article shall contain the following:

1) denomination and location of a non-state pension fund, as well as other requisite elements thereof;

2) denomination and cost of the property proposed for transfer to creditors as compensation for release from obligation estimated in compliance with this article, as well as other data on such property;

3) procedure for creditors' familiarization with such property;

4) data on the bankruptcy receiver comprising the bankruptcy receiver's family name, first name, patronymic and address to be used for sending correspondence thereto;

5) time period for sending by creditors of a non-state pension fund applications about their consent to have their claims satisfied by way of providing compensation for release from obligation which may not be less than thirty days as from the date of sending by the bankruptcy receiver the proposal to satisfy the claims of the non-state pension fund's creditors by way of providing compensation for release from obligation or as from the date of including the proposal to satisfy the claims of the non-state pension fund's creditors by way of providing compensation for release from obligation into the Comprehensive Federal Register of Data on Bankruptcy.

**6.** The property of a non-state pension fund shall be provided as compensation for release from obligation to the creditors that have sent their applications to the bankruptcy receiver within the time period fixed by the bankruptcy receiver's proposal.

The creditor's application about the consent to satisfaction of the claim thereof by way of providing compensation for release from obligation shall contain data on the property which the given creditor claims for.

The creditor that has not sent to the bankruptcy receiver an application about the consent to satisfaction of the claim thereof by way of providing compensation for release from obligation in due time and/or that has not cited the data on the property shall be deemed having refused to have the claim thereof satisfied by way of providing compensation for release from obligation.

**7.** The property of a non-state pension fund provided as compensation for release from obligation shall be distributed to the creditors that have sent to the bankruptcy receiver an application about the consent to have the claims thereof satisfied by way of providing compensation for release from obligation in the order established by this Federal Law in proportion to the extent of the given creditors' claims to be satisfied by way of providing compensation for release from obligation.

**Article 186.9.** Transfer of the Duty to Pay a Non-Governmental Pension

**1.** When taking measures aimed at preventing bankruptcy of a non-governmental pension fund, as well as in the course of the procedures applied in a bankruptcy case, the duty of paying life non-governmental pensions and pension reserves may be transferred to another non-governmental pension fund by approbation of the control body for discharge of the cited duty. In so doing, the cited obligation and pension reserves in respect of all participants of a non-governmental pension fund, which a non-governmental pension is granted to, must be transferred to a single non-governmental pension fund.

A procedure for and the terms of the cited obligation, as well as of the claims against the non-governmental pension fund, which the cited obligation and pension reserves may be transferred to, shall be established by the control body.

When transferring the obligation to pay life pensions and assets of pension reserves to

another non-state pension fund, the rules for receiving the consent of creditors of a non-state pension fund to the transfer of the rights of claim thereof on another person and for preliminary notification of creditors about the transfer of the cited obligation to another non-state pension fund shall not apply.

**2.** The decision provided for by Item 1 of this Article shall be adopted:

1) by the provisional administration of a non-governmental pension fund by approbation of the debtor's managerial body authorised in compliance the debtor's constituent documents - in the course of taking measures aimed at preventing bankruptcy of the non-governmental pension fund;

2) by the winding-up receiver by approbation of the control body - in the course of bankruptcy proceedings.

**3.** The decision to transfer the duty of paying a life non-governmental pension and pension reserves to another non-governmental pension fund for discharging the cited duty shall be subject to publication in the procedure established by Article 28 of this Federal Law.

Abrogated from January 1, 2014.

This notice shall define the terms of transfer to another non-state pension fund of the obligation to pay life non-state pensions and pension reserves for its discharge, data on leaving unchanged or on changing the terms of payment to participants of a non-state pension fund of the life non-state pension, as well as other terms of payment to the participants of the given fund the life non-state pension, should they be changed.

**4.** If the assets cited in Article 186.7 of this Federal Law, as well as the assets allocated for satisfying the claims established by Subitem 1 of Item 1 of Article 186.8 of this Federal Law, are sufficient for forming the payment fund enabling to discharge the obligation of the non-governmental pension fund to pay life non-governmental pensions in the amount fixed by contracts under which life non-governmental pensions are paid, the terms of paying a life non-governmental pension to a participant of the fund whose duties are to be transferred shall be preserved when transferring the obligation of paying life non-governmental pensions and pension reserves to another non-governmental pension fund for discharging the cited duty.

If the assets cited in Article 186.7 of this Federal Law, as well as the assets allocated for satisfying the claims established by Subitem 1 of Item 1 of Article 186.8 of this Federal Law, are insufficient for forming the payment fund enabling to discharge the obligation of a non-governmental pension fund as to payment of life non-governmental pensions in the amount established by the contracts under which a life non-governmental pension is paid, the obligations of the non-governmental pension fund, which obligations under these contracts are transferred to, shall be proportionally reduced.

**Article 186.10.** Specifics of Selling the Property of a Non-Governmental Pension Fund

**1.** All the operations involved in selling the property of a non-governmental pension fund in which pension reserves are placed shall be subject to registration by a specialized custodian.

A procedure for making registration operations by a specialized custodian shall be established by the control body.

**2.** The securities which are possessed by a non-governmental pension fund and which are admitted at organised auctions shall be subject to sale through the cited sales.

**3.** Abrogated from January 1, 2014;

**Article 186.11.** Restrictions as to the Sale of an Enterprise and Replacement of Assets of a Non-Governmental Pension Fund

The sale of an enterprise and replacement of assets of a non-governmental pension fund provided for by this Federal Law shall not be allowed.

**Article 187.** Abrogated.

**Article 187.1.** The Specifics of Bankruptcy of Non-State Pension Funds Exercising the Activity of Mandatory Pension Insurance

The specifics of bankruptcy of financial organisations which are established by Articles 183.1 - 183.26 of this Federals Law, as well as the specifics of bankruptcy of non-state pension funds established by Articles 186.2 - 186.11 of this Federal Law, shall extend to the non-state pension funds that have exercised or are exercising the activity of mandatory pension insurance, subject to the provisions of Articles 187.2 - 187.12 of this Federal Law.

**Article 187.2.** Additional Grounds for Taking Measures Aimed to Preventing Bankruptcy of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

**1.** As additional grounds for taking measures aimed at preventing bankruptcy of a non-state pension fund exercising the activity of mandatory pension insurance, along with the grounds provided for by Article 186.2 of this Federal Law, shall be deemed the following:

1) failure to discharge the duty of replenishment of the payback reserve and/or assets of pension savings of the insured persons for whom a time pension payment is established where it is provided for by the Federal Law on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Assets of Pension Savings, Establishing and Making Payments on Account of Pension Savings' Assets;

2) insufficiency of the reserve for mandatory pension insurance and of the property for ensuring the fund's statutory activities (of the fund's own assets) for replenishment of the shortage of assets on the insured person's account where it is provided for by the Federal Law on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Assets of Pension Savings, Establishing and Making Payments on Account of Pension Savings' Assets;

3) failure to discharge the duty of restoration of the amount of the reserve for mandatory pension insurance where it is provided for by the Federal Law on Non-State Pension Funds.

**2.** In the event of origination of the grounds for taking measures aimed at preventing bankruptcy which are provided for by this Federal Law, a non-state pension fund within fifteen calendar days as from the date of their origination is bound to send to the control body a notice of it, with a plan of restoration of its ability to pay to be attached thereto, if, with this, there no signs of bankruptcy of the non-state pension fund.

**3.** The activities involved in preventing bankruptcy of non-state pension funds may be financed in the procedure and under the terms which are provided for by federal laws, with the participation of the control body and the Agency for Deposits' Insurance (hereinafter also referred to as the Agency).

**Article 187.3.** The Specifics of Appointing and of the Activities of the Interim Administration of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

**1.** As additional grounds for appointing by the control body of the interim administration of a non-state pension fund exercising the activity of mandatory pension insurance shall be deemed the following:

1) the grounds cited in Item One of Article 187.2 of this Federal Law, where there is no

notice of the presence of the appropriate circumstances;

2) ban on making all or a part of operations of the non-state pension fund;

3) cancellation of the licence for exercising the activities of the non-state pension finds involved in pension provision and pension insurance (hereinafter also referred to as the licence), except for cancellation of the licence on the basis of the licencee's application about the rejection of the licence, in connection with declaring the licencee bankrupt and initiating bankruptcy proceedings or in connection with re-organisation or liquidation of a non-state pension fund;

4) taking over by an arbitration court an application of the debtor, bankruptcy creditor or authorized body in respect of declaring a non-state pension fund bankrupt.

**2.** In the event of failure of a non-state pension fund to discharge the duty of notifying the control body of the presence of the grounds for taking measures aimed at preventing bankruptcy cited in Item One of Article 187.2 of this Federal Law, in the event of cancellation of the licence thereof for exercising the activity of pension provision and pension insurance, except for cancellation of the licence on the basis of the licencee's application about the rejection of the licence, in connection with declaring the licencee bankrupt and initiation of bankruptcy proceedings or in connection with re-organisation or liquidation of a non-state pension fund, the appointment of the interim administration shall be obligatory.

**3.** Employees of the controlling body shall be appointed as the head and members of the provisional administration of a non-state pension fund. The head of the provisional administration, in the event of suspending the authority of executive bodies of a non-state pension fund, shall exercise the activity thereof on behalf of the non-state pension fund without a power of attorney.

The composition of the provisional administration shall be defined by an order of the controlling body to be included by the controlling body into the Unified Federal Register of Data on Bankruptcy at the latest on the following working day after the date of adoption of the cited act. The head of the provisional administration shall distribute the duties to the provisional administration's members and shall be held responsible for the activities thereof.

By approbation of the Agency the employees thereof may be included into the composition of the provisional administration.

The remuneration to the head and members of the provisional administration of a non-state pension fund provided for by Article 183.6 of this Federal Law shall not be paid.

**4.** In the event of appointment of the interim administration in connection with the circumstances cited in Item Two of this article, the authority of executive bodies of a non-state pension fund shall be suspended.

As from the date of appointing the interim administration the supreme managerial body of a non-state pension fund is not entitled to render the decision on liquidation or re-organisation of the non-state pension fund.

**5.** The interim administration of a non-state pension fund exercising the activity of mandatory pension insurance shall take measures aimed at covering the insufficiency of assets of pension savings and discharge of the cited fund's obligations with respect to insured persons.

**6.** Within a month since the date of its appointment the interim administration shall:

1) form a register of obligations of the non-state pension fund with respect to insured persons in compliance with the Federal Law on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Assets of Pension Savings, Establishing and Making Payments on Account of Pension Savings' Assets;

2) within a month since the date when it is appointed shall draw up an estimate of

current expenses of the non-state pension fund and shall present it to the control body for endorsement in compliance with Article 187.5 of this Federal Law.

**7.** The interim administration is entitled to file with an arbitration court applications for declaring invalid transactions of the non-state pension fund and management companies of the non-state pension fund, as well as about disputing their actions on the grounds provided for by Chapter III.1 of this Federal Law.

The time periods, within which the transactions that may be declared invalid were made or the obligations of a non-state pension fund cited in Articles 61.2, 61.3 and Item Four of Article 61.6 of this Federal Law originated, shall be estimated starting from the date when the interim administration is appointed.

In the case initiated on the basis of an application of the head of the interim administration of a non-state pension fund, should the interim administration stop exercising its activities, as the claimant shall be declared the non-state pension fund and, in the event of adoption by an arbitration court of the decision on declaring a non-state pension fund bankrupt and on initiation of bankruptcy proceedings, as the claimant shall be declared the bankruptcy receiver.

**8.** The interim administration is entitled to file with an arbitration court an application about failure to discharge or improper discharge by specialised depositories, actuaries, audit organisations, organisations engaged in keeping pension accounts of obligations under the contracts made with the non-state pension fund and about reimbursement of damages to the non--state pension fund.

**9.** The interim administration is entitled to declare about its refusal to execute the contracts made by the non-state pension fund, except for the contracts of mandatory pension insurance and pension contracts, in compliance with Article 102 of this Federal Law.

**10.** If on the basis of the results of analysis of the financial status of a non-state pension fund the interim administration has filed with the control body a plan of restoration of the ability to pay whose term of implementation exceeds the one for which the interim administration is appointed, the control body is entitled to extend the term of the interim administration's activity by the time period which is required for implementation of the cited plan.

**11.** The interim administration is entitled to request for and receive from employees of a non-state pension fund, management companies, specialized depositories, actuaries, audit organisations, organisations engaged in keeping pension accounts and actuaries engaged in actuarial assessment of the activities of the non-state pension fund any information concerning the non-state pension fund's activities including the data protected by federal law (including the data constituting an official or commercial secret).

The persons cited in this item are bound to supply information at the request of the interim administration at the latest in ten working days as from the date when a request is received.

**Article 187.4.** The Specifics of the Activities of the Interim Administration of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance Which Is Appointed in Case of Cancellation of Its Licence for Exercising the Activity of Pension Provision and Pension Insurance

**1.** The interim administration appointed by the control body after cancellation of a non-state pension fund's licence for exercising the activity of pension provision and pension insurance shall exercise the same functions and shall have the same authority which are provided to the interim administration in compliance with this Federal Law in case of suspension of the authority of executive bodies of the non-state pension fund, except for the functions involved in taking measures aimed at preventing insolvency (bankruptcy) of the

non-state pension fund, working out measures aimed at restoration of its ability to pay, organisation and exercise of control over their taking, as well as except for taking measures aimed at covering the insufficiency of assets of pension savings and for discharging obligations with respect to insured persons.

**2.** Paragraph 1 has lost force.

In the event of initiation of the proceedings involved in compulsory liquidation of a non-state pension fund, Item Three of Article 183.11 of this Federal Law shall not apply.

**3.** As from the date of appointing the interim administration of a non-state pension fund:

1) it is not allowed for an insured person to transfer to another non-state pension fund or the Pension Fund of the Russian Federation, to refuse to allocate the assets (a part of the assets) of the maternal (family) capital for forming the accumulative pension, as well as to register appropriate amendments in the comprehensive register of insured persons by the Pension Fund of the Russia n Federation;

2) shall be terminated consideration of applications of insured persons for granting the accumulative pension and/or a time pension payment on account of the assets of pension savings recorded on the pension account of the accumulative pension and received by the non-state pension fund.

**4.** As from the date of its appointing the interim administration shall exercise the functions provide for by Article 7.2 of the Federal Law on Non-State Pension Funds for a non-state pension fund whose licence has been cancelled.

**5.** Abrogated.

**6.** The interim administration, in case of insufficiency of monetary assets for making current payments of the non-state pension fund connected with safekeeping of its property and protection of the interests of creditors of the non-state pension fund is entitled to file with a court of law or an arbitration court an application for the withdrawal of previously imposed arrests of the monetary assets kept on bank accounts in the amount required to ensure the functioning of the non-state pension fund according to the estimate of expenses approved by the control body.

**7.** Creditors are entitled to raise their claims against a non-state pension fund at any time within the period while the interim administration is exercising its activities.

The creditors' claims made against a non-state pension fund within the period while the interim administration is exercising its activities in it shall be transferred according to a list thereof to the bankruptcy receiver or the liquidator of the non-state pension fund in the procedure established by Item Four of Article 183.14 of this Federal Law.

**Article 187.5.** The Current Payments in the Course of the Interim Administration's Activity and in the Course of Bankruptcy Proceedings in Respect of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

**1.** For the purposes of this article, the current payments of a non-state pension fund exercising the activity of mandatory pension insurance mean the following:

1) the duty of paying the debt built up before the date of appointing the interim administration which is appointed after cancellation of the licence or the date of initiating bankruptcy proceedings (depending on what date came first) for carrying out the works (rendering the services) connected with continuation of the non-state pension fund's functioning within the limits of the estimate of expenses approved in compliance with this article;

2) the monetary obligations the grounds for which originated within the period from the

date of appointing the interim administration which was appointed after the licence's cancellation or the date of initiation of bankruptcy proceedings (depending on what date came first) up to the date of completion of bankruptcy proceedings, in particular:

obligations to cover the expenses connected with continuation of functioning of the non-state pension fund, including labour wages of the persons working on the basis of labour contracts, payment of discharge allowances to these persons, should they be dismissed, subject to the specifics established by Item 2.1 of Article 134 of this Federal Law;

court costs of the non-state pension fund, outlays on the inclusion into the Comprehensive Federal Register of Data on Bankruptcy and publication of the reports provided for by this Federal Law, as well as other outlays resulting from this Federal Law, which are connected with the activity of the interim administration and bankruptcy proceedings;

3) the duties involved in making obligatory payments which originated within the period from the date of appointing the interim administration or the date of initiation of bankruptcy proceedings (depending on what date came first) up to the date of starting bankruptcy proceedings, as well as the duty of making obligatory payments which originated in the course of the interim administration's activities or in the course of bankruptcy proceedings when paying wages to the non-state pension fund's employees;

4) the duties involved in deducting monetary assets from wages of the non-state pension fund's employees paid in connection with the discharge of the duties cited in Item 1 of this item within the period from the date of appointing the interim administration or the date of initiation of bankruptcy proceedings (depending on what date came first) and up to the end date of bankruptcy proceedings, as well as the duties involved in remittance of the amounts of such deductions in compliance with the legislation of the Russian Federation (alimony, personal income tax, trade union dues and other payments imposed upon the employer in compliance with federal law).

2. The outlays on making current payments by a non-state pension fund shall be included into an estimate of current expenses of the non-state pension fund and shall be made by the interim administration and the bankruptcy receiver on the basis of such estimate.

3. If not otherwise established by this article, an estimate of current payments of a non-state pension fund shall be endorsed (changed) by the control body in the course of the interim administration, as well as by the bankruptcy receiver in the course of bankruptcy proceedings.

4. An estimate of current expenses of a non-state pension fund in the course of bankruptcy proceedings, as regards the outlays made before the first meeting of creditors, is subject to endorsement (changing) by the creditors' meeting or, if it has established the creditors' committee, by the creditor's committee on the proposal of the bankruptcy receiver.

An estimate of current expenses of a non-state pension fund shall be presented for endorsement to the first meeting of creditors or, if it has established a creditors' committee, to the creditors' committee at the latest in three working days as from the date of its establishment. In the event of non-endorsement (refusal to endorse) by a meeting of creditors or by a creditors' committee of an estimate of current expenses of a non-state pension fund, the meeting of creditors or the creditors' committee is entitled to file with an arbitration court an application for settling differences between the bankruptcy receiver and the meeting of creditors or the creditors' committee. On the basis of the results of consideration of the cited differences an arbitration court shall endorse the estimate of current expenses of the non-state pension fund made after rendering the appropriate judicial act on its endorsement.

5. In the course of bankruptcy proceedings an estimate of current expenses of a non-state pension fund endorsed by a meeting of creditors, a creditors' committee or an arbitration court in the procedure established by Item Four of this article may be changed by

the meeting of creditors or the creditors' committee on the proposal of the bankruptcy proceedings or, where there are differences between them in respect of the issue of making amendments in the cited estimate, by an arbitration court in the procedure provided for by Item Four of this article.

**6.** Before the endorsement (changing) of an estimate of current expenses by a meeting of creditors, a creditors' committee or an arbitration court in the procedure provided for by Items Four and Five of this article the estimate of current expenses of the non-state pension fund endorsed (changed) by the bankruptcy receiver shall be in effect.

**Article 187.6.** The Specifics of Trying the Case on Bankruptcy of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

**1.** When trying the case on bankruptcy of a non-state pension fund exercising the activity of mandatory pension insurance, the observation, financial improvement, external management and amicable agreement shall not apply.

**2.** In the event of initiation of proceedings in respect of the case on bankruptcy of a non-state pension fund exercising the activity of mandatory pension insurance, the control body is entitled to appoint the interim administration on the basis of an application of a debtor, bankruptcy creditor or authorized body.

**3.** If at the time of taking over by an arbitration court of an application of a debtor, bankruptcy receiver or authorized body for declaring a non-state pension fund bankrupt the interim administration is appointed by the control body or the interim administration was appointed by the control body in the course of trying the bankruptcy case, the arbitration court shall suspend proceedings in the bankruptcy case pending the termination of the activities of the interim administration on the grounds cited in Item One of Article 183.14 of this Federal Law.

**4.** As the person participating in arbitration court proceedings in respect of a case on bankruptcy of a non-state pension fund exercising the activity of mandatory pension insurance, pending the date of adoption by an arbitration court of the decision on declaring the debtor bankrupt and on starting bankruptcy proceedings or pending the date of termination of the bankruptcy case, shall be deemed, along with the persons cited in Article 183.18 of this Federal Law, the Agency for Deposits' Insurance.

**5.** A copy of the ruling of an arbitration court on acceptance of an application for declaring a non-state pension fund exercising the activity of mandatory pension insurance bankrupt shall be sent by the arbitration court to the applicant, to the non-state pension fund, control body and the Pension Fund of the Russian Federation, as well as to the Agency for Deposits' Insurance, at the latest on the working day following the date when it is issued.

**6.** In an application for declaring a non-state pension fund exercising the activity of mandatory pension insurance bankrupt the candidacy of the qualified receiver, denomination and address of a self-regulated organisation shall not be cited.

**Article 187.7.** The Specifics of Bankruptcy Proceedings in Respect of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

**1.** Bankruptcy proceedings shall be introduced for a term of three years. The time period of bankruptcy proceedings may be extended by six months at a petition of a person participating in a bankruptcy case.

**2.** From the date of adoption by an arbitration court of the decision on declaring a non-state pension fund exercising the activity of mandatory pension insurance bankrupt and on starting bankruptcy proceedings:

shall be terminated contracts of mandatory pension insurance. The effects of termination of the cited contracts shall be determined in compliance with this Federal Law;

shall not be allowed to transfer (to remit) to the Pension Fund of the Russian Federation or other non-state pension fund assets of pension savings of insured persons, except as established by Article 187.11 of this Federal Law;

shall not be allowed to an insured person to allocate the assets (a part of the assets) of the maternal (family) capital for forming the accumulative pension, as well as to register the appropriate amendments in the comprehensive register of insured persons by the Pension Fund of the Russian Federation;

shall be terminated consideration of applications of insured persons for granting the accumulative pension and/or a time pension payment on account of the assets of pension savings recorded on the pension account of the accumulative pension and received by the non-state pension fund.

Assets of pension savings and assets of pension reserves shall not be included into the bankruptcy estate of a non-state pension fund.

**3.** Within two months from the date of publishing data on declaring a non-state pension fund bankrupt an on starting bankruptcy proceedings the bankruptcy receiver shall:

draw up a register of declared creditors' claims by way of including thereto the claims raised in the course of the activities of the interim administration and of the creditors' claims raised in the course of bankruptcy proceedings;

if the non-state pension fund has concurrently exercised the activities of non-state pension provision and of non-state pension insurance, determine and separately record in the register of declared creditors' claims:

obligations under pension contracts (including the obligations involved in paying granted non-state pensions);

list of creditors whose claims are subject to satisfaction on account of assets of pension reserves.

The creditors' claims shall be established in the procedure provided for by Article 183.26 of this Federal Law. A register of declared creditors' claims and a register of creditors' claims of a non-state pension fund shall be kept by the bankruptcy receiver.

**4.** From the date of starting bankruptcy proceedings the bankruptcy receiver shall keep the register of obligations of a non-state pension fund with respect to insured persons provided for by the Federal Law on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Assets of Pension Savings, Establishing and Making Payments on Account of Pension Savings' Assets (hereinafter referred to as a register of obligations).

The amount of obligations with respect to insured persons is subject to reduction by the amount of the guarantee reimbursement made in case of occurrence of an insured event in respect of a non-state pension fund or by the amount of assets remitted by the Bank of Russia to the Pension Fund of the Russian Federation in compliance with Part 6 of Article 23 of Federal Law No. 422-FZ of December 28, 2013 on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing the Assets of Pension Savings, Establishing and Making Payments from the Assets of Pensions Savings.

In a bankruptcy case and in the course of bankruptcy proceedings in respect of a non-state pension fund exercising the activities involved in mandatory pension insurance the Pension Fund of the Russian Federation shall enjoy the rights of a bankruptcy creditor with respect to the claims of insured persons and legal successors of deceased insured persons included into a register of creditors' claims left after making the guarantee reimbursement in case of the occurrence of an insured event in respect of a non-state pension fund or after the remittance of assets by the Bank of Russia to the Pension Fund of the Russian Federation in the procedure provided for by this item, in particular by the right of vote at a meeting of

creditors.

Insured persons and legal successors of deceased insured persons shall not be bankruptcy creditors.

**5.** Within three months as from the date of selling the property making up the assets of pension savings the bankruptcy receiver shall make settlements concerning obligations with respect to insured persons (their legal successors) by way of transferring the assets (a part of the assets) derived from selling the cited property to the Pension Fund of the Russian Federation in the procedure established by this Federal Law.

**6.** The bankruptcy receiver is bound to use a debtor's separate special account for entering thereupon assets of pension savings, as well as the assets derived from selling the property making up pension savings.

The settlements in respect of the obligations towards insured persons (their legal successors) , as well as the creditors whose claims are subject to satisfaction on account of the assets of pension savings in compliance with Article 187.11 of this Federal Law, shall be made from the cited special account of the debtor being a non-state pension fund.

The debtor's accounts provided for by Article 186.6 of this Federal Law and by this item in the course of bankruptcy proceedings in respect of a non-state pension fund exercising the activity of mandatory pension insurance shall be opened with the Agency for Deposits' Insurance.

**7.** For entering to the bankruptcy estate (to the composition of the debtor's property) monetary assets in a foreign currency the bankruptcy receiver shall use the accounts of the non-state pension fund opened before the date of declaring it bankrupt and starting bankruptcy proceedings in respect of it with resident credit organisations and/or, where necessary, shall open with resident credit organisations other foreign currency accounts corresponding to the currencies of available claims of the non-state pension fund against third persons in the procedure established by the control body.

**8.** For the purposes of exercising the functions of the bankruptcy receiver provided for by this Federal Law the Central Bank of the Russian Federation shall open for the Agency for Deposits' Insurance accounts for monetary assets in the currency of the Russian Federation.

**9.** The claims of the Agency for Deposit Insurance acquired by it in connection with payment of the guarantee reimbursement in compliance with Federal Law No. 422-FZ of December 28, 2013 on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Pension Savings Assets, Establishing and Making Payments from Pension Savings Assets, as well as the claims of the Bank of Russia acquired as a result of remittance of assets by the Bank of Russia to the Pension Fund of the Russian Federation in compliance with Part 6 of Article 23 of the cited Federal Law, shall be included into a register of creditors' claims, regardless of the date of closing the register of creditors' claims.

**10.** From the date of starting bankruptcy proceedings in respect of a non-state pension fund shall not apply the provisions of Item One of Article 32 and Article 32.1 of the Federal law on Non-State Pension Funds.

A procedure for submitting by the bankruptcy receiver reports, as well as other information in the course of bankruptcy proceedings, and the requirements for their composition shall be established by the control body.

**11.** The bankruptcy receiver is entitled to request for and receive from management companies, specialized depositories, audit organisations engaged in keeping pension accounts and actuaries engaged in actuarial assessment of the activities of a non-state pension fund any information concerning the activities of the non-state pension fund, including the data protected by federal law (including the data constituting an official or commercial secret).

The persons cited in this item are bound to present information at the request of the bankruptcy receiver within at most ten working days as from the date receiving the request.

**12.** The bankruptcy receiver is entitled to file with an arbitration court an application for declaring invalid the transactions made by a non-state pension fund and by management companies of a non-state pension fund on the grounds provided for by Chapter III.1 of this Federal Law. In so doing, if prior to declaring a non-state pension fund bankrupt the interim administration had been appointed, the periods, within which were made the transactions that can be declared invalid or the obligations of the non-state pension fund cited in Articles 61.2, 61.3 and Item 4 of Article 61.6 of this Federal law originated, shall be estimated starting from the date of appointment of the interim administration.

The bankruptcy receiver is entitled to file with an arbitration court an application about failure to discharge or improper discharge by specialized depositories, actuaries, audit organisations and organisations engaged in keeping pension accounts of obligations under the contracts made with a non-state pension fund and about compensation for losses incurred by the non-state pension fund.

**13.** To ensure the discharge of the duties imposed upon the bankruptcy receiver in a bankruptcy case the bankruptcy receiver is bound to engage on a contractual basis accountants, auditors, specialized depositories, appraisers, actuaries, electronic sites' operators and other persons with their services to be paid for on account of the property of the non-state pension fund in the amount established by an estimate of current expenses of the non-state pension fund.

**14.** Where property of a non-state pension fund is insufficient for covering the losses connected with the inclusion into the Comprehensive State Register of Data on Bankruptcy and publication of the data cited in this Federal Law, if the case on bankruptcy of the non-state pension fund is initiated on the basis of an application of the interim administration or the control body, they shall be published in the official edition of the Central Bank of the Russian Federation - Vestnik Banka Rossii and they shall be included into the Comprehensive Federal Register of Data on Bankruptcy on a free-of-charge basis.

**Article 187.8.** The Bankruptcy Receiver in the Case on Bankruptcy of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

**1.** Seen as the bankruptcy receiver in the case on bankruptcy of a non-state pension fund exercising the activity of mandatory pension insurance shall be the Agency for Deposits' Insurance.

In the decision of an arbitration court on declaring bankrupt a non-state pension fund exercising the activity of mandatory pension insurance and on starting bankruptcy proceedings in respect of it shall be cited the denomination of the Agency for Deposits' Insurance and its address for sending correspondence thereto.

**2.** The Agency for Deposits' Insurance shall not be paid remuneration for exercising the authority of the bankruptcy receiver provided for by this Federal Law.

**3.** The Agency for Deposits' Insurance shall exercise the authority of the bankruptcy receiver through the representative (representatives) acting on the basis of a power of attorney appointed by the agency from among its employees.

**4.** A representative of the Agency for Deposits' Insurance while discharging the duties of a representative of the bankruptcy receiver may be taken off by an arbitration court from discharging the cited duties in connection with satisfaction by the arbitration court of a complaint of a person participating in the bankruptcy cases against the failure to discharge or improper discharge by the representative of the Agency for Deposits' Insurance of the duties of a representative of the bankruptcy receiver on condition that such failure to discharge or

improper discharge of the cited duties have violated the rights or legal interests of the applicant filing the complaint or have entailed losses incurred by the non-state pension fund or its creditors.

The ruling of an arbitration court on taking a representative of the Agency for Deposits' Insurance off discharging the duties of a representative of the bankruptcy receiver is subject to immediate execution and may be appealed.

5. The bankruptcy receiver is entitled to prepay the outlays connected with the exercise of the authority imposed upon it, including the outlays on payment for the services of the persons whose engagement for discharging the duties imposed thereupon in the bankruptcy case in compliance with this Federal Law is mandatory, out of own assets thereof with the subsequent reimbursement of these outlays on account of the bankruptcy estate within the composition of creditors' claims in respect of current payments in the order established for an appropriate kind of outlays classified as current payments.

**Article 187.9.** The Sale of the Property Making Up Assets of Pension Savings

1. In the course of bankruptcy proceedings of a non-state pension fund the bankruptcy receiver shall sell the property making up the assets of pension savings for ensuring settlements in respect of the obligations towards insured persons and their legal successors, as well as towards creditors of the non-state pension fund whose claims are subject to satisfaction in compliance with Article 187.11 of this Federal Law.

2. The property making up the assets of pension savings shall be sold in the procedure established by this Federal Law and subject to the provisions of this article.

When selling the property making up pension savings the provisions of Article 139 of this Federal Law shall not apply.

3. If within the composition of the property there are securities that do not circulate in the organised trade, their cost shall be estimated in compliance with Article 130 of this Federal Law with an appraiser to be engaged for it.

4. Abrogated.

**Article 187.10.** The Specifics of Transfer of the Duty of Paying Life Non-State Pensions and Assets of Pension Reserves

If a non-state pension fund has concurrently exercised the activities of non-state pension provision and mandatory pension insurance, the duty of the non-state pension fund as to payment of the non-state pension and assets of pension reserves of the non-state pension fund exercising the activity of mandatory pension insurance may be transferred subject to the following specifics:

1) the non-state pension fund, which the obligations involved in payment of the state pension and the property making up pension reserves are to be transferred to, shall be determined by the bankruptcy receiver by way of selection on a competitive basis whose procedure and terms shall be established by the Agency;

2) when conducting the selection of a competitive basis, the participants thereof shall provide data on the composition of the obligations as to payment of the non-state pension and assets of pension reserves to be transferred, on the composition and cost of the assets they are placed into;

3) as the condition of admittance of a non-state pension fund to participation in the selection on a competitive basis shall be deemed the financial status which is sufficient for discharge of the obligations to be assumed, as well as for meeting by it the normative requirements established by the control body;

4) information about the non-state pension funds participating in the selection on a competitive basis shall be sent to the control body. The control body is entitled to prohibit the

transfer of the obligations involved in payment of the non-state pension and of the property making up pension reserves in the event of non-compliance of a non-state pension fund participating in the selection on a competitive basis with the requirements established by Subitem 3 of this article;

5) the non-state pension fund, which the obligations as to payment of the non-state pension and the property making up pension reserves are to be transferred to, and the bankruptcy receiver shall make an agreement on the transfer of the cited obligations and property where the terms of the transfer shall be cited;

6) the agreement on the transfer of obligations and property may provide for changing the terms and rate of payment of non-state pensions, as well as for the effects of transfer to the non-state pension fund of property of improper quality;

7) after transfer of the property making up pension reserves to another non-state pension fund the latter is bound to discharge the obligations involved in payment of non-state pensions and/or payback amounts under the terms which are provided for by an agreement on transfer of the cited obligations and property;

8) assets of pension reserves shall be deemed transferred to another non-state pension fund as from the date of signing the transfer deed by both parties. From this time the risk of accidental destruction or accidental damage of the received property shall be transferred to another non-state pension fund.

**Article 187.11.** The Order of Satisfying the Claims of Insured Persons, Their Legal Successors, as Well as of Creditors, on Account of Assets of Pension Savings and on Account of the Bankruptcy Estate

**1.** For the purposes of this Federal Law, the claims of insured persons and of their legal successors mean the obligations of a non-state pension fund with respect to insured persons and their legal successors which are defined by the bankruptcy receiver in the amount of the obligations registered in a register of obligations with respect to insured persons. On account of the assets derived from selling the property making up pension savings shall be satisfied the claims of insured persons and their legal successors and the requirements of the Agency for Deposits' Insurance acquired as a result of the paid guaranty reimbursement, as well as the requirements of other creditors to be satisfied on account of assets of pension savings in compliance with the Federal Law on Non-State Pension Funds.

**2.** The requirements to be satisfied on account of assets of pension savings shall be satisfied in the following order:

1) in the first turn - the claims of the Agency for Deposits' Insurance acquired as a result of paying the guaranty reimbursement;

2) in the second turn - the claims of insured persons and their legal successors in the part thereof exceeding the amount of guaranteed assets by way of transferring to the Pension Fund of the Russian Federation assets of pension savings in the procedure established by this Federal Law;

3) in the third turn - the claims of creditors of a non-state pension fund to be satisfied on account of assets of pension savings in compliance with the Federal Law on Non-State Pension Funds.

**3.** If the assets of pension savings are insufficient for satisfying the claims cited in Item 2 of this article, such claims shall be satisfied on account of the bankruptcy estate in the following order:

1) within the composition of the first-turn creditors' claims provided for by this Federal Law shall be satisfied the claims of the Agency for Deposits' Insurance acquired as a result of payment of the guaranty reimbursement, the claims of insured persons in the part thereof exceeding the amount of guaranteed assets which are not satisfied on account of assets of

pension savings, as well as the claims of insured persons' legal successors;

2) within the composition of the claims of creditors of the third turn provided for by this Federal Law shall be satisfied the claims of creditors of a non-state pension fund which are subject to satisfaction on account of assets of pension savings in compliance with the Federal Law on Non-State Pension Funds and not satisfied on account of assets of pension savings.

**Article 187.11-1.** The Specifics of Satisfying Claims from Pension Savings in the Course of Bankruptcy Proceedings in Respect of a Non-State Pension Fund Which Is Not a Participant of the System of Guaranteeing the Rights of Insured Persons

**1.** In the course of bankruptcy proceedings in respect of a non-state pension fund which is not a participant of the system of guaranteeing the rights of insured persons the claims to be satisfied from the pension savings shall be satisfied in the following order:

1) in the first group:

the claims of the Bank of Russia acquired as a result of remittance of assets by the Bank of Russia to the Pension Fund of the Russian Federation, assets in respect of an insured person in compliance with Part 6 of Article 23 of Federal Law No. 422-FZ of December 28, 2013 on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Pension Savings, Establishing and Making Payments from Pension Savings Assets;

the claims of insured persons and of their legal successors, these meaning the obligations of a non-state pension fund with respect to insured persons and legal successors thereof which are determined by the bankruptcy receiver in the amount of the obligations determined by the interim administration (hereinafter referred to as the aggregate claims in respect of insured persons) in the part thereof exceeding the sum of assets remitted by the Bank of Russia to the Pension Fund of the Russian Federation in compliance with Part 6 of Article 23 of Federal Law No. 422-FZ of December 28, 2013 on Guaranteeing the Rights of Insured Persons in the System of Mandatory Pension Insurance of the Russian Federation When Forming and Investing Pension Savings Assets, Establishing and Making Payments from Pension Savings Assets (hereinafter referred to as the claim of an insured persons);

2) in the second group - the claims of creditors of a non-state pension fund which are subject to satisfaction from assets of pension savings in compliance with the Federal Law on Non-State Pension Funds.

**2.** To satisfy the claims of the first-group creditors, the assets of pension savings shall be forwarded for satisfaction of the aggregate claim in respect of an insured person in proportion to the shares of the given claim in aggregate claims in respect of all insured persons. The aggregate claim in respect of an insured person means the sum of claims of an insured person and the claims of the Bank of Russia in respect of the insured person. For this the claims of an insured person shall not be satisfied pending full satisfaction of the claims of the Bank of Russia in respect of this insured person.

**3.** To satisfy the claims of the second-group creditors assets shall be distributed to them in proportion to the amounts of their claims.

**4.** If the assets of pension savings are insufficient for satisfying the claims of the creditors cited in Item 1 of this article, such claims are subject to satisfaction from the fund's property making up the bankruptcy estate in the following order:

1) within the composition of the claims of the first-group creditors provided for by this Federal Law shall be satisfied claims of the Bank of Russia, as well as claims of insured persons;

2) within the composition of the claims of the third-group creditors provided for by this Federal Law shall be satisfied the claims of creditors of a non-state pension fund which are

subject to satisfaction from pension savings assets in compliance with the Federal Law on Non-State Pension Funds and have not been satisfied from the pension savings assets.

**Article 187.12.** The Specifics of Calling to Account Controlling Persons of a Non-State Pension Fund Exercising the Activity of Mandatory Pension Insurance

**1.** For the purposes of this paragraph, as controlling persons of a non-state pension fund exercising the activity of mandatory pension insurance shall be deemed the persons which have or had within less than two years before the date of appointing the interim administration or the date of acceptance by an arbitration court of an application about declaring the debtor bankrupt (depending on the date that came first) the right to give instructions to be followed by the debtor without fail or the possibility to determine in some other way the debtor's actions, in particular by way of coercing the head or members of the debtor's managerial bodies or by way of exerting a definite influence upon the head or members of the debtor's managerial bodies in some other way.

**2.** The persons controlling the debtor on the basis of an application of the interim administration may be brought by an arbitration court to liability in the form of reimbursement of the losses caused to a non-state pension fund by their delinquent actions (omission to act).

**3.** The monetary assets recovered from the persons brought to responsibility in compliance with this article on the basis of the interim administration's application shall be included into the composition of the property for ensuring the statutory activities (of own of assets) of a non-state pension fund.

4. Where there is not enough property of a non-state pension fund, if the accounting documents and/or reports/statements, as well as other documents showing the economic activity of the non-state pension fund in respect of which the duty to prepare, draw up or keep them is established by the legislation of the Russian Federation, the databases of the non-state pension fund on electronic media (reserve copies of the databases) containing information about the property and obligations of the non-state pension fund, as well as about their flow, and in respect of which the duty of keeping them is established by the Federal Law on Non-State Pension Funds, are not transferred in the established procedure to the interim administration or the bankruptcy receiver or are missing in full or in part, the persons obliged to ensure the safekeeping of the documentation and/or of the property of non-state pension fund shall be held subsidiary liable in respect of monetary obligations of the non-state pension fund and/or the obligations thereof to make obligatory payments.

**Article 188.** Abrogated.
**Article 189.** Abrogated.
**Article 189.1.** Particular Features of the Bankruptcy of the Credit Co-operatives

**1.** Particular features of the bankruptcy of financial organisations established by Articles 183.1 - 183.26 of the present Federal Law shall extend to credit co-operatives taking into account the provisions of the present article and Articles 189.2 - 189.6 of the present Federal Law.

**2.** In case the control over the activity of the credit co-operative is not carried out directly by the control body according to Article 5 of Federal Law No. 190-FZ of July 18, 2009 on Credit Cooperation, the right to recourse to the arbitration court with the application for the recognition of the credit co-operative bankrupt shall arise with the control body from the date of the detection by it of the signs of the bankruptcy of the credit co-operative or if the provisional administration of the credit co-operative has not been appointed from the date of the reception of the petition of the self-regulating organisation of the credit co-operatives to whose membership such a credit co-operative belongs about the necessity of filing the

aforementioned application.

The procedure of the filing by the control body of the application for the recognition of the credit co-operative bankrupt under the petition of the self-regulating organisation of the credit co-operatives to whose membership such a credit co-operative belongs shall be established by the control body.

**3.** Unless the present paragraph establishes otherwise, from the date of the acceptance by arbitration court of the application for the recognition of the credit co-operative bankrupt, satisfaction shall not be allowed of the claims of the members of the credit co-operative (unit holders) about the return of the accrued units (stock), i.e. the claims connected with the termination of membership in the credit co-operative.

**4.** During the conduct of the meeting of the creditors of the credit co-operative the members of the credit co-operative (unit holders) included in the register of claims of creditors as of the date of the conduct of the meeting of the creditors of the credit co-operative shall be empowered to take part in such a meeting or to send the completed bulletins for voting to the arbitration manager to the address indicated in the notice on the conduct of the meeting of the creditors of the credit co-operative by means of a postal service, electronic mail or other means of communication.

The publication by the arbitration manager of the message on conducting such a meeting according to the procedure established by article 28 of the present Federal law shall be recognized as the appropriate notice on the conduct of the meeting of the creditors of the credit co-operative.

Simultaneously with the inclusion in the Unified Federal Register of Information on Bankruptcy of the information on the publication of the communication on the conduct of the meeting of the creditors of the credit co-operative, the bulletins for voting shall be subject to inclusion in the aforementioned register without publication in an official release.

During the counting of the votes and the making by meeting of the creditors of the credit co-operative of decisions, the bulletins for the voting shall be taken into account that were completed by the members of the credit co-operative (unit holders), as well as those received by the arbitration manager not later than the date of conducting of such a meeting.

**Article 189.2.** Additional Bases for the Application of Measures for the Prevention of Bankruptcy of the Credit Co-operative

**1.** The additional bases for the application of measures for the prevention of bankruptcy of the credit co-operative shall be:

1) multiple breaches of the financial normatives established according to the legislation of the Russian Federation in the sphere of credit cooperation in the course of twelve months from the date of detection of the first of such breaches;

2) the passing by the control body of the order on the interdiction for the credit co-operative to carry out the borrowing of money resources, admission of new members and granting of loans.

**2.** In case of the occurrence of the bases for the application of measures for the prevention of bankruptcy of the credit co-operative, it shall direct the plan of the restoration of solvency to the control body if the oversight of the activity of such a credit co-operative according to Article 5 of Federal Law No. 190-FZ of July 18, 2009 on Credit Cooperation is carried out directly by the control body, or, in other cases, to the self-regulating organisation of the credit co-operatives to whose membership such a credit co-operative belongs.

**Article 189.3.** Particular Features of the Appointment of a Provisional Administration of the Credit Co-operative

**1.** Along with the bases for the appointment of the provisional administration envisaged

by Article 183.5 of the present Federal Law, the control body shall appoint a provisional administration of the credit co-operative if by the control body or in case of a failure according to Article 5 of the Federal Law No. 190-FZ of July 18, 2009 on Credit Cooperation of control over the activity of the credit co-operative directly by the control body, the self-regulating organisation of the credit co-operatives to whose membership such a credit co-operative belongs revealed at least one of the bases mentioned in Item 1 of Article 189.2 of the present Federal Law in the absence of the notification by such a credit co-operative of the control body or such a self-regulating organisation of the credit co-operatives accordingly about the existence of the particular circumstances.

The decision on the appointment of the provisional administration of the credit co-operative shall be substantiated.

2. In addition to the requirements envisaged by Article 183.6 of the present Federal law regarding the composition of the provisional administration, the structure of the provisional administration of the credit co-operative shall include representatives of the self-regulating organisation of the credit co-operatives to whose membership such a credit co-operative belongs.

3. From the date of the appointment of the provisional administration of the credit co-operative the disposal of the property of the credit co-operative, except for the settlement of the municipal payments, operational payments, other payments necessary for the conduct of the activity of the credit co-operative, money liabilities for the payment of the goods delivered, services rendered and works executed, obligatory payments, i.e. the performance of payments in connection with the termination of membership in the credit co-operative envisaged by Part 4 of article 14 of Federal Law No. 190-FZ of July 18, 2009 on Credit Cooperation shall be allowed only according to the decision of the provisional administration of the credit co-operative.

4. The decision on the appointment of the provisional administration of the credit co-operative, control over the activity of which according to Article 5 of Federal Law No. 190-FZ of July 18, 2009 on Credit Cooperation is carried out directly by the control body shall be made by the control body on the basis of the results of the check of the activity of the credit co-operative held by the control body no more than one month before the date of making the decision on the appointment of the provisional administration of the credit co-operative.

The decision of the control body on the appointment of the provisional administration of the credit co-operative may be made in accordance with the procedure established by the control body before the end of the check of the activity of the credit co-operative if during such a check the bases for the obligatory appointment of the provisional administration of the credit co-operative are detected.

5. In case the self-regulating organisation of the credit co-operatives detects the bases indicated in Item 1 of Article 183.2 and Item 1 of Article 189.2 of the present Federal Law, the self-regulating organisation of the credit co-operatives, within five working days from the date of detection of the aforementioned bases, shall be obliged to direct to the control body in accordance with the procedure established by the control body a petition for the appointment of the provisional administration of the credit co-operative.

In such a case the control body shall appoint the provisional administration of the credit co-operative in the course of thirty working days from the date of receipt of the petition for the appointment of the provisional administration of the credit co-operative directed to the control body by the self-regulating organisation of the credit co-operatives to the membership of which such a credit co-operative belongs. The appointment procedure by the control body of the provisional administration of the credit co-operative following the petition of the self-regulating organisation of the credit co-operatives shall be established by the control body.

**Article 189.4.** Particular Features of the Activity of the Provisional Administration of the Credit Co-operative

1. In case the powers of the executive bodies of the credit co-operative are limited, the executive bodies of the credit co-operative in addition to the right to perform the transactions mentioned in Item 3 of Article 183.9 of the present Federal Law shall be empowered to make decisions on the admission of new members to the credit co-operative and the decision on the borrowing of money resources of the members of the credit co-operative (unit holders) only with the consent of the provisional administration of the credit co-operative.

2. The reimbursement of the expenses of the provisional administration of the credit co-operative connected with its activity, i.e. payment of compensation to members of the provisional administration of the credit co-operative, shall be carried out at the expense of the means of the credit co-operative.

**Article 189.5.** Particular Features of the Satisfaction of the Claims of the Creditors of the Credit Co-operative and of the Members of the Credit Co-operative (Unit Holders)

1. The satisfaction of claims of the creditors of the credit co-operative shall be carried out in the order of precedence mentioned in article 134 of the present Federal law, taking into account the particular features envisaged by the present article.

2. In addition to the claims established by the second paragraph of Item 4 of article 134 of the present Federal Law in the first place shall be subject to satisfaction the claims of the members of the credit co-operative (unit holders) natural persons who are creditors of the credit co-operative on the basis of contracts concluded with them on the transfer of personal savings in the amount not exceeding seven hundred thousand roubles concerning each member of the credit co-operative (unit holder).

3. The claims of creditors of the third priority shall be subject to satisfaction in the following order:

1) In the first place the unsatisfied claims envisaged by Item 2 of the present article of the members of the credit co-operative (unit holders) natural persons who are creditors of the credit co-operative on the basis of contracts concluded with them on the transfer of personal savings;

2) In the second place the claims of the members of the credit co-operative (unit holders) legal bodies who are creditors of the credit co-operative on the basis of loan contracts concluded with them;

3) In the third place the claims of the persons who are not members of the credit co-operative (unit holders).

4. Claims of the members of the credit co-operative (unit holders) about the repayment of the share (unit) accumulations shall be subject to satisfaction after the settlements with the creditors of the credit co-operative for the satisfaction of the claims aforementioned in the fifth paragraph of Item 4 of Article 134 of the present Federal Law, in the following order:

1) In the first place the claims of the members of the credit co-operative (unit holders) (except for the persons aforementioned in subitem 2 of the present Item), including the claims connected with the termination of membership in the credit co-operative before the recognition of the credit co-operative bankrupt;

2) in the second place claims of the members of the credit co-operative (unit holders) who are or were the individual executive office of the credit co-operative or members of the

board of the credit co-operative, members of control and auditing body of the credit co-operative or their affiliated persons.

**Article 189.6.** Liability of the Credit Co-operative and Its Members

**1.** Along with the cases envisaged by Article 10 of the present Federal Law in the insufficiency of money resources of the credit co-operative for the repayment of debts to its creditors, the members of the credit co-operative (unit holders), as well as the persons whose membership in the credit co-operative ceased within six months before the date of the filing of the application with the arbitration court about the recognition of the credit co-operative bankrupt bear joint and several subsidiary liability within the limit of the non-contributed part envisaged by the Federal Law No. 190-FZ of July 18, 2009 on Credit Cooperation of the additional contribution of each of the members of the credit co-operative (unit holders).

**2.** Along with the cases envisaged by Item 1 of the present article the members of the credit co-operative (unit holders) who are members of the board of the credit co-operative, members of the control and auditing body of the credit co-operative, or member of the credit co-operative (unit holder) who is the individual executive office of the credit co-operative bear joint and several subsidiary liability within the limit of the accumulated units subject to repayment or repaid during termination of the membership in the credit co-operative if the signs of bankruptcy of the credit co-operative were a result of wrongful acts or lack of action of the aforementioned persons.

The aforementioned persons may be found guilty if their decisions or actions (i.e. excess of powers), followed by the occurrence of signs of bankruptcy did not correspond to the conscientiousness and rationality principles established by the civil legislation, the charter of the credit co-operative, and good business practices.

**3.** In case the self-regulating organisation of the credit co-operatives did not direct to the control body the petition for the appointment of the provisional administration of the credit co-operative, the petition for the necessity of the filing of the application for the recognition of the credit co-operative bankrupt the self-regulating organisation of the credit co-operatives may be brought to joint and several liability in accordance with the procedure established by Item 12 of Article 142 of the present Federal Law.

## § 4.1. Bankruptcy of Credit Organisations

**Article 189.7.** The Legal Regulation of Credit Organisations' Bankruptcy

**1.** This paragraph establishes a procedure for and terms of taking measures aimed at preventing the insolvency (bankruptcy) of credit organisations, as well as the specifics of the grounds and procedure for declaring credit organisation insolvent (bankrupt) and of their liquidation by way of bankruptcy proceedings.

**2.** The relations connected with taking measures aimed at preventing the insolvency (bankruptcy) of a credit organisation which are not regulated by this Federal Law shall be regulated by other federal laws and regulatory acts of the Bank of Russia adopted in compliance with them.

**3.** The relations connected with insolvency (bankruptcy) of credit organisations which are not regulated by this paragraph shall be regulated by Chapters I, III, III.1, VII and XI of this Federal Law or, where it is provided for by this Federal Law, by regulatory acts of the Bank of Russia.

**Article 189.8.** The Insolvency (Bankruptcy) of a Credit Organisation

**1.** A credit organisation shall be deemed unable to satisfy creditors' claims in respect of

pecuniary obligations, for paying severance benefits and/or labour wages to the persons who are working or have been working under a labour contract and/or to discharge the duty of making mandatory payments, if the appropriate duties are not discharged by it within 14 days after their maturity date and/or the cost of the credit organisation's property (assets) is insufficient for discharging the obligations thereof with respect to creditors and/or the duty of making mandatory payments.

**2.** For the purposes of this paragraph, the credit organisation's duty to make mandatory payments means the duty of the credit organisation as an independent taxpayer to make the mandatory payments to appropriate budgets which are defined in compliance with this Federal Law, as well as the duty of the credit organisation to follow the instructions (orders) to remit mandatory payments to appropriate budgets from its clients' accounts.

**Article 189.9.** The Measures Aimed at Preventing the Bankruptcy of Credit Organisations

**1.** In compliance with this paragraph, before the date of withdrawal of the licence for making banking operations the following measures aimed at preventing the bankruptcy of credit organisations shall be taken:

1) financial rehabilitation of a credit organisation. For the purposes of this paragraph, financial rehabilitation of a credit organisation means taking the measures provided for by Article 189.14 of this Federal Law in an extrajudicial procedure;

2) appointment of the provisional administration for managing a credit organisation, except when the provisional administration is appointed in connection with withdrawal of the licence for making banking operations;

3) reorganisation of a credit organisation;

4) measures aimed at preventing bankruptcy of a credit organisation holding a permit (licence) for borrowing monetary assets of natural persons for depositing and for opening and keeping natural persons' banking accounts to be issued by the Bank of Russia in the procedure established by the Federal Law on Banks and Banking Activity (hereinafter referred to as the bank) which shall be taken with the Agency's participation in compliance with this paragraph.

**2.** The measures aimed at preventing bankruptcy of credit organisations provided for by Subitems 1-3 of Item 1 of this article shall be taken when the grounds established by Article 189.10 of this Federal Law arise.

**3.** The measures aimed at preventing banks' bankruptcy provided for by Subitem 4 of Item 1 of this article shall be taken when the grounds established by Article 189.47 of this Federal Law arise.

**4.** A credit organisation, its founders (stockholders), members of the board of directors (supervisory council), the head of a credit organisation recognized as such in compliance with Article 11.1 of the Federal Law on Banks and Banking Activity (hereinafter referred to as the head of a credit organisation), if the grounds cited in Article 189.10 of this Federal Law arise, are bound to take necessary and timely measures aimed at financial rehabilitation and/or reorganisation of the credit organisation.

**5.** The Bank of Russia is entitled to demand a credit organisation take measures aimed at financial rehabilitation and reorganisation thereof, as well as to appoint a provisional administration for managing the credit organisation in the procedure established by regulatory acts of the Bank of Russia, should the grounds provided for by Article 189.10 of this Federal Law arise.

**6.** The demand to take measures aimed at financial rehabilitation of a credit organisation shall not be sent, if the Bank of Russia is obliged to withdraw the credit organisation's licence for making banking operations on one or several grounds provided for

by Part Two of Article 20 of the Federal Law on Banks and Banking Activity.

**Article 189.10**. Grounds for Taking Measures Aimed at Preventing Bankruptcy of a
Credit Organisation

If not otherwise provided for by this Federal Law, the measures aimed at preventing
bankruptcy of a credit organisation provided for by Subitems 1-3 of Item 1 of Article 189.9 of
this Federal Law shall be taken when a credit organisation:

1) does not satisfy the claims of creditors (creditor) in respect of pecuniary obligations
(obligation) and/or does not discharge the duty of making mandatory payments within up to
three days as from the date of their discharge in connection with the absence or insufficiency
of monetary assets on correspondent accounts of the credit organisation repeatedly during
the last six months;

2) does not satisfy the claims of creditors (creditor) in respect of pecuniary obligations
(obligation) and/or does not discharge the duty of making mandatory payments within the time
period exceeding three days as from their maturity date and/or the date of their discharge in
connection with the absence or insufficiency of monetary assets on correspondent accounts
of the credit organisation;

3) allows an absolute reduction of the amount of own assets (capital) as compared to
their maximum value attained for the last 12 months by more than 20 per cent with the
concurrent failure to observe the mandatory normatives established by the Bank of Russia;

4) breaks any of the normatives of sufficiency of a bank's own assets (capital)
established by the Bank of Russia;

5) breaks the normative of current liquidity of a credit organisation established by the
Bank of Russia within the last month by more than 10 per cent;

6) allows a reduction of the amount of own assets (capital) on the basis of the results of
the accounting month down to a level below the amount of the authorized capital fixed by the
constituent documents of the credit organisation registered in the procedure established by
federal laws and normative legal acts and by normative legal acts of the Bank of Russia
adopted in compliance with them. In the event of origination of the cited ground within the first
two days as from the date of issuance of the licence for making banking operations, measures
aimed at preventing bankruptcy shall not be taken in respect of a credit organisation.

**Article 189.11.** The Duties of a Credit Organisation When the Grounds for Taking
Measures Aimed at Preventing Bankruptcy Arise

**1.** As from the date of origination of the grounds provided for by Article 189.10 of this
Federal Law and up to the date of their removal a credit organisation is bound to notify the
Bank of Russia about the following:

1) holding general meetings of the credit organisation's founders (stockholders), as well
as sittings of the board of directors (supervisory council), in the procedure provided for
notification of the founders (stockholders) and members of the board of directors (supervisory
council) of the credit organisation;

2) making transactions (several interrelated transactions):

with related mpersons or with those which are affiliated in respect of the credit
organisation, these to be defined in compliance with federal law, or with the persons in
respect of which the credit organisation in compliance with federal law is a related person, or
with the persons whose activities are controlled or significantly influenced by the credit
organisation, or with the persons which exercise control or significantly influence the credit
organisation;

connected with the disposal of the property (assets) of the credit organisation whose
value exceeds one per cent of the balance sheet value of the credit organisation's property

evaluated on the basis of data of its accounting reports/statements as of the last accounting date or exceeds 15 million roubles, if one per cent of the balance sheet value of the property of the credit organisation exceeds 15 million roubles, in particular connected with the disposal of immovable property, receipt and issuance of credits and loans, bills' discounting, making operations with securities (including the issuance of own securities), granting guarantees and suretyships, assignment of rights (right of claim), debt assumption and forgiving, novation and release-money, well as with the establishment of trust management;

connected with acquisition of stocks (shares) in the authorised capital of companies or with participation in the creation (establishment) of other legal entities.

**2.** A notice of making the transactions cited in Paragraphs Two-Four of Subitem 2 of Item 1 of this article shall be sent by a credit organisation to the Bank of Russia within a five-day term as from the date of making a transaction.

**3.** A notice on holding a general meeting of founders (stockholders) of a credit organisation or of a sitting of its board of directors (supervisory board) shall be sent to the Bank of Russia at the latest five days before the date of holding such meeting or sitting, except if the grounds provided for by Article 189.10 of this Federal Law arise within the limits of the time period for notification fixed by this item. On such occasion, a credit organisation shall notify about holding a general meeting of its founders (stockholders) or sitting of its board of directors (supervisory council) at the latest on the date following the day of origination of the grounds provided for by Article 189.10 of this Federal Law.

**4.** A credit organisation that has the grounds provided for by Article 189.10 of this Federal Law and is taking measures aimed at financial rehabilitation without the Bank of Russia sending the demand provided for by Article 189.20 of this Federal Law shall stop notifying the Bank of Russia about the events cited in Item 1 of this article from the date of removal of the grounds provided for by Article 189.10 of this Federal Law.

**5.** The Bank of Russia is entitled to send an observer or observers for participation in a general meeting of founders (stockholders) of a credit organisation in a sitting of its board of directors (supervisory council).

**6.** An observer or observers shall be admitted to participate in a general meeting of the board of directors (supervisory council) of a credit organisation or a sitting of its board of directors (supervisory board) on the basis of a decision of the Bank of Russia.

**7.** An observer or observers shall take part in a general meeting of founders (stockholders) of a credit organisation or a sitting of its board of directors (supervisory council) without enjoying the right of vote, as well as shall have access to records and other materials of such meeting or sitting.

**Article 189.12.** The Duty of the Head, Members of Managerial Bodies and Founders (Stockholders) of a Credit Organisation When the Signs of Insolvency (Bankruptcy) of the Credit Organisation Arise

**1.** In the event of origination of the signs of insolvency (bankruptcy) of a credit organisation provided for by Article 189.8 of this Federal Law and/or of the grounds provided for by Part Two of Article 20 of the Federal Law on Banks and Banking Activity, the one-man executive body of the credit organisation within 10 days as from the date of their origination is bound:

1) to send the board of directors (supervisory council) of the credit organisation a reasoned demand for calling an extraordinary general meeting of founders (stockholders) of the credit organisation for considering the issue of liquidation of the credit organisation and of sending a petition the Bank of Russian for cancellation or withdrawal of the credit organisation's licence for making banking operations;

2) to notify the Bank of Russian about the origination of the cited signs of insolvency

(bankruptcy) of the credit organisation and/or of the cited grounds and about sending the board of directors (supervisory council) of the credit organisation the demand provided for by Paragraph Two of this item.

**2.** Within three days as from the date of receiving the demand of the one-man executive body of a credit organisation provided for by Subitem 1 of Item One of this article the board of directors (supervisory council) of the credit organisation is bound:

1) to render a decision on calling an extraordinary general meeting of founders (stockholders) of the credit organisation, as well as at the latest in 20 days as from the date of rendering the cited decision to inform the credit organisation's founders (stockholders) about holding such general meeting;

2) to notify the one-man executive body of the credit organisation and the Bank of Russia about the adopted decision.

**3.** If the one-man executive body of a credit organisation is not elected or appointed, the duty of taking the measures provided for by Item 1 of this article shall be imposed on members of the board of directors (supervisory council) of the credit organisation.

**4.** If the board of directors (supervisory council) of a credit organisation does not discharge the duties provided for by Items 2 and 5 of this article, they shall be discharged without fail by the one-man executive body of the credit organisation within three days as from the date of expiry of the time period provided for by Paragraph One of Item 2 and Item 5 of this article.

**5.** If the board of directors (supervisory council) of a credit organisation has not rendered the decision on calling an extraordinary general meeting of founders (stockholders) of the credit organisation in the procedure established by Subitem 1 of Item 2 of this article, members of the board of directors (supervisory council) of the credit organisation are bound to file a petition for cancellation or withdrawal of the credit organisation's licence for making banking operations with the Bank of Russia within three days as from the date of expiry of the time period provided for by Subitem 1 of Item 2 of this article.

**6.** If the decision on liquidation of a credit organisation and on filing a petition for cancellation or withdrawal of the credit organisation's licence for making banking operations with the Bank of Russia is not adopted by an extraordinary general meeting of founders (stockholders) of the credit organisation, members of the board of directors (supervisory council) of the credit organisation are obliged to file a petition for cancellation or withdrawal of the credit organisation's licence for making banking operations with the Bank of Russia within three days after the date of holding an extraordinary general meeting of the credit organisation's founders (stockholders).

**7.** The decision on liquidation of a credit organisation and on sending the Bank of Russia a petition for cancellation or withdrawal of the credit organisation's licence for making banking operations shall be adopted by a general meeting of founders (stockholders) of the credit organisation by a majority vote of the total number of votes of the credit organisation's founders (stockholders) that took part in voting.

**8.** The founders (participants) of a credit organisation which are entitled to give instructions to be followed without fail or are capable of determining its actions in some other way but which have not adopted in due time the decision on liquidation of the credit organisation and on sending the Bank of Russia a petition for cancellation or withdrawal of the credit organisation's licence for making banking operations and members of the board of directors (supervisory council) of the credit organisation that have not discharged the duties provided for by Items 2, 3 and 5 of this article, as well as the one-man executive body of the credit organisation that has not discharged the duties provided for by Items 1 and 4 of this article, if the credit organisation's property is insufficient for satisfying creditors' claims, shall bear joint and subsidiary liability in respect of the credit organisation's pecuniary obligations

and/or the discharge of its duty to make mandatory payments originating after the appearance of the signs of insolvency (bankruptcy) provided for by Article 189.8 of this Federal Law.

**9.** If the decision on liquidation of a credit organisation and on sending the Bank of Russia a petition for cancellation or withdrawal of a credit organisation's licence for making banking operations is not rendered by a general meeting of founders (stockholders) of the credit organisation called in compliance with Subitem 1 of Item 2 of this article, the following founders (stockholders) of the credit organisation do not bear subsidiary liability in compliance with Item 8 of this article:

1) those jointly with their affiliated persons holding less that 10 per cent of voting stocks of a joint stock company in the total number of votes of stockholders of the joint stock company or of shares in the authorised capital of a limited liability company in the amount of below 10 per cent;

2) those voting for adoption of the decision on liquidation of the credit organisation and on sending the Bank of Russia a petition for cancellation or withdrawal of the credit organisation's licence for making banking operations;

3) those that have not been notified in a proper way about the convocation of a general meeting of the credit organisation's founders (stockholders).

**Article 189.13.** Proceedings in a Bankruptcy Case of a Credit Organisation

**1.** When an arbitration court considers a bankruptcy case of a credit organisation, bankruptcy proceedings shall be applied.

**2.** In the event of bankruptcy of a credit organisation, the observation, financial rehabilitation, external management and amicable agreement provided for by Chapters IV, V, VI and VIII, respectively, shall not apply.

**Article 189.14.** The Measures Aimed at Financial Rehabilitation of a Credit Organisation

For the purpose of financial rehabilitation of a credit organisation the following measures shall be taken:

1) the rendering of financial assistance to the credit organisation by its founders (stockholders) and by other persons;

2) changing the structure of assets and the structure of liabilities of the credit organisation;

3) changing the organisational structure of the credit organisation;

4) bringing into accord the amount of the credit organisation's authorized capital and of the amount of its own assets (capital);

5) other measures taken in compliance with federal laws.

**Article 189.15.** The Rendering of Financial Assistance to a Credit Organisation by Its Founders (Stockholders) and by Other Persons

**1.** Financial assistance may be rendered to a credit organisation by its founders (stockholders) and by other persons in the following form:

1) depositing monetary assets with the credit organisation with a repayment time of at least six months and with accrual of interest at a rate that does not exceed the interest refinancing rate of the Bank of Russia;

2) granting suretyships (bank guarantees) in respect of credits for the credit organisation;

3) allowing a delay in payment and/or payment by installments;

4) transfer of the credit organisation's debt by approbation of its creditor;

5) refusing to distribute the credit organisation's profits in the form of dividends and

allocating them for taking measures aimed at financial rehabilitation of the credit organisation;

6) making an additional contribution to the authorised capital of the credit organisation;

7) forgiving the credit organisation's debt;

8) novations and other forms conducive to the removal of the reasons causing the need to take measures aimed at financial rehabilitation of the credit organisation.

**2.** The monetary assets kept on banking accounts and deposited at a credit organisation may be used by creditors thereof for increasing the credit organisation's authorized capital in the procedure established by the Bank of Russia.

**3.** A decision in respect of the forms and terms of rendering financial assistance to a credit organisation shall be rendered by the credit organisation proper and by the person rendering financial assistance thereto.

**4.** In the event of the Agency for Deposit Insurance rendering financial assistance to a bank or persons acquiring the bank's stocks (shares in the authorized capital) by way of taking measures aimed at preventing the bank's bankruptcy, the forms and terms of rendering financial assistance thereto shall be defined in a plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy endorsed in the procedure established by Article 189.49 of this Federal Law.

**Article 189.16.** Changing the Structure of Assets and Liabilities of a Credit Organisation

**1.** Changing the structure of assets of a credit organisation may provide for the following:

1) improvement of the quality of the credit portfolio of the credit organisation, including the replacement of non-liquid assets by liquid assets;

2) bringing the asset structure from the point of maturity into compliance with the maturity of obligations ensuring their discharge;

3) reduction of the credit organisation's outlays, in particular on servicing the debt of the credit organisation, and of outlays on its management;

4) sale of non-profitable assets, as well as of the assets whose sale will not obstruct making banking operations of the credit organisation;

5) other measures aimed at changing the structure of assets of the credit organisation.

**2.** Changing the structure of liabilities of a credit organisation may provide for the following:

1) increase of its own assets (capital);

2) reduction of the amount of and/or shares of current and short-term obligations in the total structure of liabilities;

3) increase of the share of medium-term and long-term liabilities in the total structure of liabilities;

4) other measures aimed at changing the structure of liabilities of the credit organisation.

**Article 189.17.** Bringing into Accord the Amount of the Authorised Capital of a Credit Organisation and the Amount of Own Assets (Capital) of a Credit Organisation

**1.** If the amount of own assets (capital) of a credit organisation on the basis of the results of the accounting month turns out to be less that the amount of the authorized capital thereof, the credit organisation is bound to bring into accord the amount of the authorised capital and the amount of own assets (capital) thereof.

**2.** A credit organisation is bound to render a decision on liquidation thereof, if the amount of own assets (capital) of the credit organisation upon the end of the second and each subsequent financial year becomes less than the minimum amount of the authorized capital

thereof established by Federal Law No. 208-FZ of December 26, 1995 on Joint Stock Companies (hereinafter referred to as the Federal Law on Joint Stock Companies) or Federal Law No. 14-FZ of February 8, 1998 on Limited Liability Companies (hereinafter referred to as the Federal Law on Limited Liability Companies.

3. In the event of failure of a credit organisation to render within three months as of the end date of a financial year the decision on its liquidation, the Bank of Russia is bound to file an application for liquidation of the given credit organisation with an arbitration court.

**Article 189.18**. Changing the Organisational Structure of a Credit Organisation

The organisational structure of a credit organisation may be changed by way of the following:

1) changing the composition and number of the credit organisation's employees;

2) changing the structure, reduction and liquidation of detached and other structural units of the credit organisation, as well as in other ways conducive to the removal of the reasons causing a need for taking measures aimed at financial rehabilitation of the credit organisation.

**Article 189.19.** A Petition of the Head of a Credit Organisation for Taking Measures Aimed at Preventing Bankruptcy of a Credit Organisation

1. The one-man executive body of a credit organisation, in the event of occurrence of the circumstances provided for by Article 189.10 of this Federal Law, within 10 days as from the time of their occurrence is bound to file a petition for taking measures aimed at financial rehabilitation of the credit organisation or a petition for reorganisation of the credit organisation with the board of directors (supervisory council) of the credit organisation if the reasons for occurrence of the cited circumstances cannot be removed by the credit organisation's executive bodies.

2. A petition of the head of a credit organisation for taking measures aimed at financial rehabilitation of the credit organisation or a petition for reorganisation of the credit organisation shall contain recommendations concerning the forms, nature and time of their realization.

3. The board of directors (supervisory council) of a credit organisation with which in compliance with Item 1 of this article a petition for taking measures aimed at financial rehabilitation of the credit organisation or a petition for reorganisation of the credit organisation is to be filed shall render a decision in respect of the petition filed therewith within 10 days as from the time of its sending and shall inform the Bank of Russia about the adopted decision.

4. The head of a credit organisation, within three days as from the date of expiry of the time period fixed by Item 3 of this article, is bound to file a petition with the Bank of Russia for taking measures aimed at preventing bankruptcy of the credit organisation, if the board of directors (supervisory council) of the credit organisation has not rendered a decision in respect of the petition for taking measures aimed at preventing bankruptcy at the time fixed by Item 3 of this article or has denied the adoption of the decision on taking measures aimed at preventing bankruptcy or has refused to call a general meeting of founders (stockholders) of the credit organisation when the need for holding such meeting results from the essence of measures aimed at preventing bankruptcy of the credit organisation or if the founders (stockholders) of the credit organisation have not adopted the decision on taking measures aimed at preventing bankruptcy when the need for such decision results from the essence of measures aimed at preventing bankruptcy of the credit organisation.

**Article 189.20.** Taking Measures Aimed at Financial Rehabilitation of a Credit

Organisation on Demand of the Bank of Russia

**1.** Where it is provided for by Article 189.10 of this Federal Law or by Article 74 of Federal Law No. 86-FZ of July 10, 2002 on the Central Bank of the Russian Federation (the Bank of Russia) (hereinafter referred to as the Federal Law on the Central Bank of the Russian Federation (the Bank of Russia), the Bank of Russia is entitled to send a credit organisation a demand for taking measures aimed at its financial rehabilitation. Such a demand shall contain an indication of the reasons serving as grounds for sending it, as well as recommendations in respect of the forms and time of taking measures aimed at financial rehabilitation of the credit organisation, subject to the requirements established by Item 7 of this article.

**2.** Within five days as from the date of receiving the demand of the Bank of Russia to take measures aimed at financial rehabilitation of a credit organisation the head of the credit organisation is bound to file a petition for taking measures aimed at financial rehabilitation of the credit organisation and/or a petition for its reorganisation with the board of directors (supervisory council) of the credit organisation.

**3.** If it is detected on the basis of data of reports/statements of a credit organisation and/or the results of an inspection held by the Bank of Russia, that the amount of own assets (capital) of the credit organisation has turned out to be less that the amount of the authorized capital thereof, the Bank of Russian is bound to send such credit organisation a demand on bringing into accord the amount of the authorised capital of the credit organisation and the amount of its own assets (capital).

**4.** If within the last 12 months preceding the time when in compliance with this article the Bank of Russia is bound to send a credit organisation a demand to bring into accord the amount of authorized capital of the credit organisation and the amount of its own assets (capital) the Bank of Russia changed the methods for estimation of the amount of own assets (capital) of the credit organisation, for the purposes of this article the methods in compliance with which the amount of own assets (capital) of the credit organisation amounts to the maximum value shall be applied.

**5.** Where it is impossible to increase the amount of own assets (capital) of a credit organisation to the amount of its authorised capital, the credit organisation, within 45 days as from the date of receiving the cited demand of the Bank of Russia, is bound to reduce the size of the authorised capital thereof down to an amount that does not exceed the amount of own assets (capital) thereof and to make appropriate amendments in the constituent documents thereof.

**6.** Creditors of a credit organisation are not entitled to demand termination or preschedule discharge of the credit organisation's obligations on the basis of the reduction of the size of the authorized capital thereof made in compliance with the requirements of this article. For this, the provisions of the legislation of the Russian Federation on creditors' mandatory notification about their right to demand termination or preschedule discharge of its obligations and compensation for the losses connected with it from the credit organisation shall not apply.

**7.** As from the date of receiving the demand of the Bank of Russia to take measures aimed at financial rehabilitation of a credit organisation containing the grounds for this and up to the date of receiving an appropriate permit of the Bank of Russia a credit organisation is not entitled to render a decision on distribution of profits to its founders (stockholders), on payment (declaring) of dividends, as well as to distribute profits to its founders (stockholders), to pay dividends thereto, to satisfy the claims of the credit organisation's founders (stockholders) as to the apportionment of the participatory shares (a part of the participatory sharer) thereto or for payment of its real value or for redemption of stocks of the credit organisation, if the given actions could lead to breaking the normative standards established

by the Bank of Russia.

**8.** The Bank of Russia, within a five-day term as from the date of receiving documentary proof of removing the grounds provided for by Article 189.10 of this Federal Law from a credit organisation taking measures aimed at financial rehabilitation thereof in compliance with a demand of the Bank of Russia is bound to send the credit organisation a report on cancellation of the demand for taking measures aimed at financial rehabilitation. As from the date of a credit organisation receiving such report, the restrictions provided for by Item 7 of this article shall not apply, and the duties of the credit organisation provided for by Article 189.11 of this Federal Law when there are grounds for taking measures aimed at preventing bankruptcy shall be terminated.

**9.** In the event of occurrence of the grounds provided for by Article 189.10 of this Federal Law, the Bank of Russia is entitled to demand that an appropriate managerial body of a credit organisation arranges that the credit organisation hold a meeting of the board of directors (supervisory council) of the credit organisation or an extraordinary general meeting of founders (stockholders) of the credit organisation for rendering the decision on taking measures aimed at financial rehabilitation of the credit organisation within a 10-day term.

**Article 189.21.** A Plan of Measures Aimed at Financial Rehabilitation of a Credit Organisation

**1.** In the event of establishing the grounds provided for by Article 189.10 of this Federal Law, the Bank of Russia is entitled to demand that a credit organisation develop and implement a plan of measures aimed at financial rehabilitation thereof.

**2.** A plan of measures aimed at financial rehabilitation of a credit organisation shall contain without fail the following:

1) assessment of the financial status of the credit organisation;

2) indication as to the form and extent of participation of the credit organisation's founders (stockholders) and of other person in its financial rehabilitation;

3) measures aimed at reducing the outlays on the credit organisation's maintenance;

4) measures aimed at receiving additional income;

5) measures aimed at repayment of outstanding debtor's indebtedness;

6) measures aimed at changing the organisational structure of the credit organisation;

7) time for restoration of the level of sufficiency of own assets (capital) and of the current liquidity of the credit organisation.

**3.** The form of a plan of measures aimed at financial rehabilitation of a credit organisation shall be established by a normative act of the Bank of Russia.

**4.** The procedure for and time of presenting a plan of measures aimed at financial rehabilitation of a credit organisation, as well as the procedure for and time of exercising control over its implementation, shall be established by normative acts of the Bank of Russia.

**Article 189.22.** A Plan of Measures Aimed at Financial Rehabilitation of a Credit Organisation Whose Endorsement Entails Non-Application of Measures in Respect of the Credit Organisation by Way of Supervision and Granting the Credit Organisation a Delay in Payment (Payment by Installments) of the Shortage of Assets for the Mandatory Reserves Deposited with the Bank of Russia

**1.** A plan of measures aimed at financial rehabilitation of a credit organisation may provide for the following conditions:

1) acquisition by the person that had not possessed or had not indirectly controlled either individually or in the composition of a group more than one per cent of stocks (shares) of a credit organisation of at least 75 per cent of ordinary stocks of a credit organisation

having the form of the joint stock company (shares in the authorized capital giving at least three fourth of the total number of votes of stockholders of a credit organisation having the form of a limited liability company);

2) removal within a year as from the date of endorsement of the plan of measures aimed at financial rehabilitation of the credit organisation of the grounds for taking measures by the Bank of Russia in respect of the credit organisation by way of supervision;

3) satisfaction within 14 calendar days as from the date of endorsement of a plan of measures aimed at financial rehabilitation of a credit organisation of creditors' claims in respect of pecuniary obligations and/or making mandatory payments.

**2.** In the event of endorsement by the Banking Supervision Committee of the Bank of Russia of a plan of measures containing all the conditions provided for by Item 1 of this article, the Bank of Russia shall render the following decisions:

1) not to take the measures provided for by Article 74 of the Federal Law on the Central Bank of the Russian Federation in respect of a credit organisation;

2) not to impose a ban on borrowing monetary assets of natural persons for depositing and on opening bank accounts for natural persons provided for by Article 48 of Federal Law No. 177-FZ of December 23, 2003 on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation (hereinafter referred to as the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation);

3) not to withdraw a credit organisation's licence for making banking operations where it is provided for by Part Two of Article 20 of the Federal law on Banks and Banking Activity;

4) to grant a credit organisation a delay in payment (payment by installments) of the shortage of assets for the mandatory reserves deposited with the Bank of Russia for the time period of implementing the plan provided for by Item 1 of this article. On such occasion, a credit organisation is bound to draw up on a monthly basis a computation of the mandatory reserves which are subject to depositing and to submit it to the Bank of Russia in the procedure established by the Bank of Russia.

**3.** The decisions provided for by Item 2 of this article shall be reversed by the Banking Supervision Committee of the Bank of Russia in the event of termination of the effective term of a plan of measures aimed at financial rehabilitation of a credit organisation but at the latest in a year as from the date of endorsement of the cited plan by the Banking Supervision Committee or in the event of the Banking Supervision Committee of the Bank of Russia recognizing that it is impossible to implement it.

**Article 189.23.** The Liability of the Persons Exercising Control over a Credit Organisation

**1.** If a credit organisation's bankruptcy has resulted from actions and/or failure to act of the persons exercising control over the credit organisation, such persons, if the credit organisation's property is insufficient, shall bear subsidiary liability in respect of the obligations thereof in the procedure established by Article 10 of this Federal Law, subject to the specifics established by this article.

**2.** When determining the debtor's (credit organisation's) controlling person, the provision of Paragraph 31 of Article 2 of this Federal Law on the time period (less than two years before the acceptance by an arbitration court of an application for declaring the debtor bankrupt) within which such person has the right or had the right to give instructions to be followed by the debtor without fail or could determine the debtor's actions in some other way) shall not apply.

**3.** Until proved otherwise, it shall be assumed that a credit organisation's bankruptcy has resulted from actions and/or omission of the persons exercising control over the credit organisation, where there is one of the circumstances cited in Paragraphs Three and Four of

Item 4 of Article 10 of this Federal Law. The provisions of Paragraph Four of Item 4 of Article 10 of this Federal Law shall apply in respect of the persons upon which is imposed the duty of compiling, keeping and storing the documents showing the economic activities of the credit organisation and of the credit organisation's databases on electronic media (of reserve copies of databases), as well as the duty of their transfer to the provisional administration engaged in its management or to the liquidator (bankruptcy receiver).

4. As the documents cited in Paragraphs Four and Five of Item 4 of Article 10 of this Federal Law shall also be deemed the documents showing economic activities of a credit organisation and the credit organisation's databases on electronic media (reserve copies of databases) the duty to form and keep which is established by the Federal Law on Banks and Banking Activity, which are subject in compliance with the requirements of this Federal Law to transfer to the provisional administration engaged in the credit organisation's management (to the bankruptcy receiver or liquidator).

5. A credit organisation or the Agency of behalf thereof are entitled to make a claim with an arbitration court for repair of the damage caused by faulty actions (omissions) of the person exercising control over the credit organisation in respect of which the measures aimed at preventing bankruptcy with the Agency's participation provided for by Article 189.49 of this Federal Law have been taken.

6. An application for holding the person exercising control over a credit organisation subsidiarily liable on the grounds provided for by this article may be filed at the latest in three years as from the date of declaring the credit organisation bankrupt. Should this time period be missed for a sound reason, it may be restored by a court.

7. An application for holding the person exercising control over a credit organisation subsidiarily liable in the form of repair of damage (except as provided for by Item 5 of this article) shall be filed by the bankruptcy receiver on the initiative thereof or by decision of a meeting of creditors or of the creditors' committee, as well as by an authorised body. Such application may be filed by the bankruptcy creditor in the course of bankruptcy proceedings, if the bankruptcy receiver fails to execute the decision of a meeting or committee of creditors on its filing.

8. Filing an application for holding the persons exercising control over a credit organisation subsidiarily liable by the bankruptcy creditor or authorized person shall not serve as an obstacle to the bankruptcy receiver filing an application in respect of the same subject-matter and on the same grounds with an arbitration court, if the bankruptcy receiver presents new evidence to an arbitration court.

9. In a case initiated on the basis of an application of a credit organisation or the Agency for holding the person exercising control over the credit organisation liable in the form of repair for damage for the benefit of the credit organisation, if an arbitration court renders a decision on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings (endorsement of the bankruptcy receiver) or a decision on appointing a bankruptcy receiver, the credit organisation in the person of the bankruptcy receiver or liquidator shall be deemed the claimant.

10. In the event of filing an application for holding the person exercising control liable, a court is entitled to take security measures on the basis of a petition of the bankruptcy receiver, in particular to arrest the property of the person exercising control. Such security measures shall be also in effect within the time period when the consideration of a petition for holding the person exercising control liable is suspended.

11. The persons held subsidiarily liable in compliance with this Federal Law, as well as liable in the form of recovery of damages for the benefit of a credit organisation, are not entitled to acquire stocks (shares in the authorized capital) of another credit organisation making up over five per cent of the authorised capital thereof or to establish direct or indirect

(through third persons) control in respect of stockholders (participants) of a credit organisation possessing over five per cent of the stocks (shares) of the credit organisation within five years as from the date of the cited persons discharging the duty established by the judicial act on such liability.

**12.** The persons held subsidiarily liable in compliance with this Federal Law, as well as liable in the form of recovery of damages for the benefit of a credit organisation, are not entitled to hold the positions of heads of credit organisations for five years from the date of the cited person discharging the duty established by a judicial act on such liability.

**Article 189.24.** The Effects of Failure to Satisfy the Requirements Provided for by Articles 189.17 and 189.19-189.21 of this Federal Law

Failure of a credit organisation to satisfy the requirements provided for by Articles 189.17 and 189.19-189.21 of this Federal Law shall serve as grounds for the Bank of Russia taking the measures of supervision established by federal laws.

**Article 189.25.** The Provisional Administration for Managing a Credit Organisation

**1.** The provisional administration for managing a credit organisation is a special managerial body of the credit organisation appointed by the Bank of Russia in the procedure established by this paragraph and regulatory acts of the Bank of Russia.

**2.** The provisional administration for managing a credit organisation shall act in compliance with this paragraph, other federal laws and regulatory acts of the Bank of Russia.

**3.** Within the period while the provisional administration for managing a credit organisation is exercising its activities the authority of executive bodies of the credit organisation may be restricted by the act of the Bank of Russia on appointing the provisional administration or suspended in the procedure and under the terms established by this Federal Law.

**4.** In the event of suspending the authority of executive bodies of a credit organisation, as from the date of appointing the provisional administration and up to the date of an arbitration court rendering the decision on declaring the credit organisation insolvent (bankrupt) or of entry into legal force of the arbitration court decision on its liquidation or termination of the activities of the provisional administration, the state registration of transactions, transfer, limitation (encumbrance) of the right to the immovable property held by the credit organisation on the basis of the right of ownership thereto or held by it in pledge shall be suspended.

**Article 189.26.** The Grounds for Appointing a Provisional Administration for Managing a Credit Organisation

**1.** The Bank of Russian is entitled to appoint a provisional administration for managing a credit organisation if:

1) the credit organisation does not satisfy creditors' (creditor's) claims in respect of pecuniary obligations (obligation) and/or does not discharge the duty of making mandatory payments within a time period exceeding seven days or more from the date when they have to be discharged and/or made in connection with an absence or insufficiency of monetary assets on the credit organisation's correspondent accounts;

2) the credit organisation allows the reduction of its own assets (capital) as compared to their maximum value attained within the last 12 months by more than 30 per cent, concurrently failing to observe one of the mandatory normatives established by the Bank of Russia;

3) the credit organisation violates the current liquidity normative established by the Bank of Russia by more than 20 per cent within the last month;

4) the credit organisation does not satisfy the demand of the Bank of Russia to replace the head of the credit organisation or to take measures aimed at financial rehabilitation or reorganisation of the credit organisation in due time;

5) in compliance with the Federal Law on Banks and Banking Activity there are grounds for withdrawal of the credit organisation's licence for conducting banking operations;

6) the Banking Supervision Committee has approved a plan for the Agency's participation in taking measures aimed at preventing a bank's bankruptcy.

**2.** The Bank of Russia is bound to appoint a provisional administration for managing a credit organisation at the latest on the day following the date of withdrawal of the credit organisation's licence for conducting banking operations.

**3.** The act of the Bank of Russia on appointing the provisional administration for managing a credit organisation shall be included by the Bank of Russia into the Comprehensive Federal Register of Data on Bankruptcy at the latest on the following working day as from the date of adoption of the cited act and shall be published by the Bank of Russia in the "Vestnik Banka Rossii" within 10 days as from the date of its adoption.

**Article 189.27.** The Duration of the Provisional Administration for Managing a Credit Organisation

**1.** The provisional administration for managing a credit organisation shall be appointed by the Bank of Russia for a term of at most six months.

**2.** If by the end of the duration of the provisional administration for managing a credit organisation fixed by this paragraph the grounds for its appointment provided for by this paragraph persist, the provisional administration for managing a credit organisation shall send to the Bank of Russia a petition for withdrawing the credit organisation's licence for conducting banking operations.

**3.** The provisional administration for managing a credit organisation appointed by the Bank of Russia after the withdrawal of the credit organisation's licence for conducting banking operations shall exercise its authority in the credit organisation provided for by this paragraph from date of its appointment and up to an arbitration court rendering the decision on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings (on appointing a bankruptcy receiver) or up to the date of entry into legal force of a decision of an arbitration court on appointing the credit organisation's liquidator.

**Article 189.28.** The Head of the Provisional Administration for Managing a Credit Organisation

**1.** As the head of the provisional administration for managing a credit organisation shall be appointed an employee of the Bank of Russia.

**2.** The composition of the provisional administration for managing a credit organisation shall be determined by an order of the Bank of Russia to be included by the Bank of Russia in the Comprehensive Federal Register of Data on Bankruptcy at the latest on the following working day after the date of adoption of the cited act. The head of the provisional administration for managing a credit organisation shall distribute duties to members thereof and shall be held responsible for its activities. The provisional administration for managing a credit organisation may have the Agency's employees within its composition with its approbation.

**3.** The head of the provisional administration for managing a credit organisation, if the authority of the credit organisation's executive bodies are suspended, shall exercise its activities in the name of the credit organisation without a power of attorney.

**Article 189.29.** The Liability of the Head of the Provisional Administration for Managing

a Credit Organisation for Failure to Discharge or Improper Discharge of the
Duties Thereof

In the event of failure to discharge or improper discharge by the head of the provisional administration for managing a credit organisation of the duties thereof, he/she shall be held liable in compliance with federal law.

**Article 189.30.** The Functions of the Provisional Administration for Managing a Credit Organisation in Case of Restriction of the Authority of a Credit Organisation's Executive Bodies

**1.** In case of restriction of the authority of the executive bodies of a credit organisation, the provisional administration for managing a credit organisation shall exercise the following functions:

1) conduct an examination of the credit organisation;

2) establish the presence of grounds for withdrawal of the licence for conducting banking operations provided for by Article 20 of the Federal Law on Banks and Banking Activity;

3) participate in developing measures aimed at financial rehabilitation of the credit organisation and exercise control over their taking;

4) exercise control over the disposal of the credit organisation's property within the limits established by this article;

5) exercise other functions in compliance with federal law.

**2.** When exercising the functions cited in Item 1 of this article, the provisional administration for managing a credit organisation shall:

1) receive from managerial bodies of the credit organisation the necessary information and documents concerning the activities of the credit organisation;

2) give its consent to the managerial bodies of the credit organisation conducting the transactions cited in Item 3 of this article;

3) file a petition with the Bank of Russia for suspending the authority of the credit organisation's managerial bodies if they obstruct the exercise by the provisional administration for managing the credit organisation of its functions or if it is necessary for taking measures aimed at preventing bankruptcy of the credit organisation. For the purposes of this paragraph, obstructing the exercise by the provisional administration for managing a credit organisation of its functions means officials of the credit organisation or the persons acting on their instructions taking wrongful actions, their failure to act (failure to discharge the duties imposed by federal law, including failure to present documents for coordinating transactions where it is provided for by federal law), as well as the creation of conditions under which the provisional administration for managing the credit organisation cannot exercise in full or in part its functions imposed on it by federal laws and regulatory legal acts of the Bank of Russia.

**3.** The managerial bodies of a credit organisation are entitled solely with approbation of the provisional administration for managing a credit organisation to conduct transactions:

1) connected with letting the credit organisation's property on lease, putting it in pledge, contributing it to the authorised capital of third persons, as well as with disposal of such property in some other way;

2) connected with the disposal of other property of the credit organisation whose balance sheet value makes up more than one per cent of the balance sheet value of assets of the credit organisation, in particular with receiving and issuing credits and loans, issuance of guarantees and suretyships, assignment of rights of claim, debt assumption and forgiving, novation and release-money, well as with the establishment of trust management;

3) with persons related or affiliated to the credit organisation which are determined in compliance with federal law or with the persons in respect of which the credit organisation in

compliance with federal law is a related person, or with the persons whose activities are controlled or significantly influenced by the credit organisation, or with the persons that exercise control or significantly influence the credit organisation.

**Article 189.31.** The Functions of the Provisional Administration for Managing a Credit Organisation in Case of Suspension of the Authority of Executive Bodies of the Credit Organisation

**1.** In case of suspension of the authority the executive bodies of a credit organisation, the provisional administration for managing the credit organisation shall exercise the following functions:

1) exercise the authority of executive bodies of the credit organisation;

2) conduct an examination of the credit organisation;

3) establish the presence of grounds for withdrawal of the licence for conducting banking operations provided for by Article 20 of the Federal Law on Banks and Banking Activity;

4) develop measures aimed at financial rehabilitation of the credit organisation, organise and exercise control over their taking;

5) take measures aimed at safekeeping of the credit organisation's property and documentation;

6) establish creditors of the credit organisation and the extent of their claims in compliance with pecuniary obligations;

7) take measures aimed at recovering debts with respect to the credit organisation;

8) file a petition with the Bank of Russia for imposing a moratorium on satisfaction of claims of the credit organisation's creditors;

9) exercise other functions in compliance with federal law.

**2.** While exercising the functions cited in Item 1 of this article, the provisional administration for managing a credit organisation:

1) shall receive the necessary information and documents concerning the activities of the credit organisation from the head of the credit organisation, its other employees and other persons;

2) shall raise claims on behalf of the credit organisation with courts of law, arbitration courts and tribunals of arbitrators;

3) shall appoint representatives of the provisional administration for managing the credit organisation to affiliates of the credit organisation, as well as to managerial bodies of its branch organisations;

4) shall coordinate decisions of the board of directors (supervisory council) of the credit organisation or of a general meeting of its founders (stockholders), except for decisions on conducting the transactions provided for by Item 3 of this article;

5) is entitled to remove members of executive bodies of the credit organisation from this job;

6) is entitled to call a meeting of founders (stockholders) of the credit organisation in the procedure established by federal laws;

7) is entitled to make a claim with an arbitration court on behalf of the credit organisation for calling to account the persons exercising control over the credit organisation, if their guilty actions (omissions) have caused damage to the credit organisation;

8) shall make a claim with a court or an arbitration court on behalf of the credit organisation for declaring invalid the transactions made by the credit organisation or by other persons at the expense of the credit organisation on the grounds and in the procedure provided for by Articles 61.1-61.9 of this Federal Law, subject to the specifics established by Article 189.40 of this Federal Law;

9) shall, in the procedure established by Item 4 of Article 136 of this Federal Law, file court applications for reducing the rate of claims of the head of the credit organisation, chief accountant of the credit organisation, his/her deputies, the head of a branch or representative office of the credit organisation, his/her deputies, the chief accountant of a branch or representative office of a credit organisation, his/her deputies and other employees of the credit organisation in respect of the labour remuneration thereof, if within six months before the date of appointing the provisional administration the rate of labour remuneration of such persons was increased compared to the rate of labour remuneration fixed before the start of the cited time period;

10) shall have free access to all the premises of the credit organisation;

11) is entitled to seal the credit organisation's premises, if necessary.

**3.** The provisional administration for managing a credit organisation is only entitled with approbation of the board of directors (supervisory council) of the credit organisation or a general meeting of its founders (stockholders), within the scope of their authority established by federal laws and the credit organisation's constituent documents, to make transactions connected with the following:

1) letting the credit organisation's immovable property on lease, putting it in pledge, contributing it to the authorized capital of third persons and disposal of such property in some other way;

2) disposal of other property of the credit organisation whose balance sheet value makes up over five per cent of the balance sheet value of the credit organisation's assets, in particular with receiving and issuing credits and loans, issuance of guarantees and suretyships, assignment of rights of claim, debt transfer and forgiving, novation and release-money, as well as with the establishment of trust management.

**4.** The board of directors (supervisory council) of a credit organisation or a general meeting of its founders (stockholders), within the scope of authority thereof established by federal law and constituent documents of the credit organisation, is entitled to expand the scope of authority of the provisional administration for managing the credit organisation as to the disposal of the credit organisation's property.

**Article 189.32.** The Functions of the Provisional Administration for Managing a Credit Organisation in Case of Its Appointment after the Withdrawal of the Credit Organisation's Licence for Conducting Banking Operations

**1.** The provisional administration for managing a credit organisation appointed by the Bank of Russia after the withdrawal of the credit organisation's licence for conducting banking operations shall exercise the same functions and have the same scope of authority which are granted to the provisional administration for managing the credit organisation in compliance with Article 189.31 of this Federal Law, except for the function of developing measures aimed at financial rehabilitation of the credit organisation, their organising and exercise of control over their taking.

**2.** The provisional administration for managing a credit organisation appointed by the Bank of Russia after the withdrawal of the credit organisation's licence for conducting banking operations is bound to make an examination of the credit organisation and to identify if it has the signs of insolvency (bankruptcy) provided for by Item 1 of Article 189.8 of this Federal Law. In the event of detecting the cited signs the provisional administration for managing a credit organisation appointed by the Bank of Russia after the withdrawal of the credit organisation's licence for conducting banking operations shall send the Bank of Russia a petition for the Bank of Russia to send an application to an arbitration court for declaring the credit organisation bankrupt.

**3.** The provisional administration for managing a credit organisation after the

withdrawal of the credit organisation's licence for conducting banking operations shall determine if there are signs of premeditated bankruptcy, and shall notify creditors about the acceptance by an arbitration court of an application for declaring the credit organisation bankrupt by way of publishing information in the "Vestnik Banka Rossii" and in a periodical print at the location of the credit organisation within 10 calendar days at the expense of the credit organisation.

4. The provisional administration for managing a credit organisation shall disclose information on the debtor's financial status within 10 calendar days after the acceptance by an arbitration court of an application for declaring the credit organisation bankrupt in the procedure established by the Bank of Russia.

5. The provisional administration for managing a credit organisation shall present a statement on the debtor's financial status, the creditors' composition and the presence of signs of premeditated bankruptcy when an arbitration court considers an application of the Bank of Russia for declaring the credit organisation bankrupt.

6. Within three working days as from the date of publishing the data cited in Items 3 and 4 of this article the provisional administration shall send these data to the Bank of Russia for them to be included into the Comprehensive Federal Register of Data on Bankruptcy.

7. The discharge by a credit organisation after the withdrawal of the licence for conducting banking operations and up to the date of initiation of bankruptcy proceedings of its current obligations (in particular making transactions on behalf thereof entailing the origination of the current obligations) which are provided for by this Federal Law shall be effected on the basis of an estimate of expenditures to be endorsed by the Bank of Russia.

8. The kinds of transactions made by a credit organisation since the date of withdrawal of the licence for conducting banking operations, including the transactions connected with spending monetary assets and other kind of alienation of the credit organisation's property and the procedure for conducting them shall be established by the Federal Law on Banks and Banking Activity and normative acts of the Bank of Russia adopted in compliance with them.

9. The provisional administration for managing a credit organisation, if there are not enough monetary assets for the discharge of the credit organisation's current obligations connected with ensuring the safekeeping of its property and protection of the credit organisation's interests, is entitled to file an application with a court of law or arbitration court for lifting the previously imposed arrests of the monetary assets kept on its banking accounts in the amount which is necessary for ensuring the credit organisation's functioning according to the estimate of expenditure endorsed by the Bank of Russia.

10. To establish creditors of a credit organisation and the extent of their claims against the credit organisation the provisional administration for managing the credit organisation is entitled to register creditors' claims in a register of creditors' claims whose form is established by a normative act of the Bank of Russia with the Agency's approbation in the procedure established by Items 11-17 of this article.

11. For the purpose of creditors of a credit organisation raising their claims against the credit organisation the provisional administration for managing the credit organisation shall send an announcement containing data on the credit organisation (denomination and other requisite elements), the credit organisation's address, data on the provisional administration for managing the credit organisation to an official publication in compliance with this Federal Law, to the "Vestnik Banka Rossii" for publication and to the Bank of Russia for inclusion of the data contained therein into the Comprehensive Federal Register of Data on Bankruptcy. The cited announcement shall be published by the provisional administration for managing a credit organisation at the expense of the property of the credit organisation.

12. Creditors of a credit organisation are entitled to raise their claims against the credit organisation at any time within the time period while the provisional administration for

managing the credit organisation is exercising its activities. When raising such claims, a creditor is bound to specify, along with the essence of the raised claims, data on himself, including the family name, first name, patronymic, date of birth, requisite elements of the document certifying the identity thereof, and the postal address for sending correspondence thereto (if a natural person) or the denomination and location (if a legal entity), as well as banking requisites (if any).

**13.** A person raising a claim against a credit organisation is bound to inform the provisional administration for managing the credit organisation in due time about changes in the data cited in Item 12 of this article. In the event of failure to present such data or to present them in due time, the provisional administration for managing the credit organisation and the credit organisation shall not be held liable for the damage caused in connection with this.

**14.** A claim against a credit organisation with an effective decision of a court or arbitration court, rulings on issuance of a writ of execution for compulsory execution of decisions of a tribunal of arbitrators and other judicial acts, as well as other original documents or properly attested copies thereof proving the reasonableness of this claim to be attached thereto, shall be raised by the provisional administration for managing the credit organisation.

**15.** The provisional administration for managing a credit organisation shall consider the raised claim and on the basis of the results of its consideration at the latest in 30 working days as from the date of receiving this claim shall enter it to a register of creditors' claims if the claim raised is substantiated. Within the same time period the provisional administration for managing a credit organisation shall notify the appropriate creditor about the inclusion of the claim thereof into the register of creditors' claim or about the denial of such inclusion into the cited register or about the incomplete inclusion of the claim into this register.

**16.** A claim under a bank deposit contract and/or a bank account contract raised by a creditor may be entered by the provisional administration for managing a credit organisation into the register of creditors' claims in the amount of the balance of monetary assets on the account which are due to the creditor on the basis of the data available to the credit organisation.

**17.** The claim of a creditor under a bank deposit contract and/or a bank account contract enjoying in compliance with the Federal Law on Insurance of Natural Persons' Deposits Made with Banks of the Russian Federation the right to receive insurance compensation shall be entered by the provisional administration for managing the credit organisation into the register of creditors' claims in the amount of the balance of monetary assets on the account exceeding the amount of insurance compensation which is due to the creditor.

**18.** In the event of entering a creditor's claim into the register of creditors' claims, data on the amount and composition of the claim thereof against the debtor, as well as about the order of its satisfaction shall be cited in the appropriate notice to be sent to the creditor.

**19.** On the basis of the received creditors' claims the provisional administration for managing a credit organisation shall compile a register of creditors' claims of the credit organisation, this citing data on the creditors that have raised their claims, on the extent of such claims, on the order of satisfying each such claim, as well as grounds for their origination.

**20.** In a register of creditors' claims creditors' claims shall be registered in the currency of the Russian Federation. The creditors' claims shown in foreign currency shall be registered in a register of creditors' claims in roubles at the exchange rate established by the Bank of Russia as of the date of withdrawal of the credit organisation's licence for conducting banking operations.

**21.** A register of creditors' claims of a credit organisation shall be transferred to the bankruptcy receiver or the liquidator of the credit organisation in the procedure established by Item 2 of Article 189.43 of this Federal Law.

**22.** The creditors' claims raised against a credit organisation within the period while the provisional administration for managing the credit organisation is exercising its activities and not considered by this provisional administration as of the date of expiry of the time period of its authority in the procedure established by Items 10-17 of this article shall be transferred according to a list thereof to the bankruptcy receiver or the liquidator of the credit organisation in the procedure established by Item 2 of Article 189.43 of this Federal Law.

**Article 189.33.** The Specifics of Functioning of the Provisional Administration for Managing a Credit Organisation Appointed after the Withdrawal of the Licence for Conducting Banking Operations of a Credit Organisation Exercising Professional Activities in the Securities Market

**1.** After the withdrawal of the licence for conducting banking operations of a credit organisation exercising professional activities in the securities market the provisional administration for managing the credit organisation shall return to such credit organisation's clients their securities and other property accepted and/or acquired by such credit organisation on their account under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts, this to be shown on appropriate accounts or depo accounts subject to the specifics provided for by Paragraph 8 of this chapter.

**2.** For the purpose of returning to clients of a credit organisation exercising professional activities in the securities market the securities and other property accepted and/or acquired by the credit organisation on their account under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts the provisional administration for managing the credit organisation shall conduct an inventory of the securities and other property kept (registered) on accounts of such credit organisation.

**3.** A report on the results of holding the inventory provided for by Item 2 of this article shall be drawn up at the latest in 14 calendar days from the date of appointment of the provisional administration for managing a credit organisation.

**4.** Within five working days as from the date of drawing up a report on the results of conducting the inventory provided for by Item 2 of this article the provisional administration for managing a credit organisation shall notify clients of the credit organisation exercising professional activities in the securities market about the possibility of filing applications for the return to clients of such credit organisation of their securities and other property accepted and/or acquired by such credit organisation on their account under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts by way of publishing an appropriate announcement in an official publication, as well as send the text of the cited announcement to the Bank of Russia for it to include the data contained in the cited announcement in the Unified Federal Register of Data on Bankruptcy.

**5.** Applications of clients of a credit organisation exercising professional activities in the securities market for return of their securities and other property accepted and/or acquired by such credit organisation on their account under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts shall be accepted within six months as from the date of withdrawal of such credit organisation's licence for conducting banking operations by the provisional administration for managing the credit organisation or, in case of declaring a credit organisation bankrupt and initiation of bankruptcy proceedings, by the bankruptcy receiver.

**6.** After conducting the inventory provided for Item 2 of this article the provisional administration for managing a credit organisation within at the latest two working days as from

the date of receiving applications of clients of the credit organisation exercising professional activities in the securities market for return of their securities and other property accepted and/or acquired by such credit organisation on their account under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts, shall return the cited property by way of its transfer onto the accounts opened by clients of such credit organisation with other professional participant of the securities market.

7. The return to clients of a credit organisation exercising professional activities in the securities market of the securities and other property accepted and/or acquired by the credit organisation under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts shall be effected in compliance with the requisite elements cited in an appropriate application of such credit organisation's client.

8. If for the purpose of returning the property cited in Item 7 of this article to clients of a credit organisation exercising professional activities in the securities market it is impossible to distribute to them the securities in the quantity thereof making up a whole number, non-distributed securities shall be sold in the procedure established by Article 185.7 of this Federal Law. The monetary assets derived from selling non-distributed securities shall be distributed to clients in proportion to the amount of claims of each of them.

If the property of several clients of a credit organisation exercising professional activities in the securities market is united on a single account and the cited property is insufficient for returning their property to the given clients in full, the cited property shall be transferred to the given clients in the quantity which is proportionate to the amount of claims of each of them.

9. The claims of the clients of a credit organisation exercising professional activities in the securities market which are not satisfied because of insufficiency of property on the accounts of such clients are subject to inclusion into a register of creditors' claims of the credit organisation and shall be satisfied in the order established by Article 189.92 of this Federal Law.

10. The securities accepted by a credit organisation exercising professional activities in the securities market for custody and/or entered into its records shall be returned to a depositor on the basis of the depositor's application in the procedure established by Items 1-9 of this article on the basis of the depository registration data by way of the following:

1) reregistration of registered securities in the name of the possessor thereof in a register of holders of registered securities with some other depository specified by the depositor;

2) return of certificates of certified securities to the depositor or their transfer to some other depository specified by the depositor.

11. If within the time period while the provisional administration for managing a credit organisation is exercising its activities or in the course of bankruptcy proceedings in the event of declaring a credit organisation exercising professional activities in the securities market bankrupt such credit organisation did not receive an application of its client for return of securities and other property thereof accepted and/or acquired by such credit organisation on account thereof under contracts of custody, contracts of trust management, contracts of deposit and brokerage contracts, the securities shall be entered onto the personal account of the cited client in the register of securities' owners or onto the depo account of the given client made with the depository engaged in mandatory centralized custody of securities. Other property is to be transferred to a notary for depositing.

12. The property which is under trust management of a credit organisation exercising professional activities in the securities market shall be returned to the trust management founders on the basis of applications of the trust management founders in the procedure established by Items 1-11 of this article.

**Article 189.34.** The Specifics of Functioning of the Provisional Administration for Managing a Bank in Case of the Agency's Participation in Taking Measures Aimed at Preventing the Bank's Bankruptcy

**1.** In the event of endorsement by the Banking Supervision Committee of the Bank of Russia of a plan for the Agency's participation in taking measures aimed at preventing the bank's management, the functions of the provisional administration for managing the bank may be imposed upon the Agency by an order of the Bank of Russia. The Agency shall exercise the functions and authority of the provisional administration for managing the bank through a representative appointed from among employees thereof and acting on the basis of a power of attorney.

**2.** The provisional administration for managing a bank whose functions are imposed on the Agency shall exercise the same functions and shall be vested with the same authority which are provided to the provisional administration for managing a credit organisation in compliance with Article 189.31 of this Federal Law, subject to the specifics established by this article.

**3.** Within the period while the provisional administration for managing a bank appointed in compliance with this article is exercising its activities the following shall be suspended:

1) the authority of the bank's managerial bodies connected with making decisions on the matters put within the scope of their authority by federal laws and the bank's constituent documents;

2) the rights of the bank's founders (stockholders) connected with participation in the authorized capital thereof, including the right to call a general meeting of the bank's stockholders (stockholders).

**4.** Apart from exercising the authority cited in Item 2 of this article, the provisional administration for managing a bank is entitled:

1) to take actions connected with reduction of the amount of the bank's authorised capital down to the amount of its own assets (capital) or to one rouble and to render decisions on amending the bank's statutes;

2) to take actions connected with an increase of the bank's authorized capital, in particular to render the decision on placing its stocks, to endorse the decision on stock issuance and a report on the results of this issuance and to render a decision on amending the bank's statutes;

3) to render a decision on the bank's reorganisation;

4) to sell the bank's property, in particular to the Agency, in compliance with a plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy;

5) to render decisions on opening and closing the bank's affiliates and on making appropriate amendments in the bank's statutes in connection with the given decisions;

6) to take other measures aimed at preventing bank's bankruptcy;

7) to render a decision on the bank's liquidation.

**Article 189.35.** The Effects of Suspending the Authority of Executive Bodies of a Credit Organisation for the Period While the Provisional Administration for Managing the Credit Organisation Is Exercising Its Activities

**1.** In the event of suspending the authority of executive bodies of a credit organisation for the period while the provisional administration for managing the credit organisation is exercising its activities:

1) the credit organisation's executive bodies are not entitled to render decisions on the matters put within their scope of authority by federal laws and constituent documents of the credit organisation;

2) decisions of other managerial bodies of the credit organisation shall enter into force after their coordination with the provisional administration for managing the credit organisation.

**2.** The executive bodies of a credit organisation in case of suspension of their authority for the period while the provisional administration for managing the credit organisation is exercising its activities at the latest on the day following the date of appointment of the provisional administration for managing the credit organisation are bound to pass over to it the credit organisation's seals and stamps and at the time coordinated with the provisional administration for managing the credit organisation on the accounting and other documentation, as well as databases of the credit organisation on electronic media (reserve copies of databases) the duty to keep which is established by the Federal Law on Banks and Banking Activity, material and other valuables of the credit organisation.

**3.** Obstruction on the part of the head of a credit organisation, other employees of the credit organisation and other persons to the exercise by the provisional administration for managing the credit organisation of the functions thereof (in particular obstruction to access to the credit organisation's premises, access to its documentation and other information media, refusal to transfer documents and seals) shall serve as grounds for the Bank of Russia taking by way of supervision the measures provided for by federal law, as well as entail liability in compliance with federal law.

**4.** In the event of suspension of the authority of executive bodies of a credit organisation for the period while the provisional administration is exercising its activities, the head of the credit organisation who was entitled before appointing the provisional administration for managing the credit organisation to act on behalf of the credit organisation without a power of attorney is entitled to represent its interests in an arbitration court when the decision of the Bank of Russia for appointing the provisional administration for managing the credit organisation is complained against or the order of the Bank of Russia to withdraw the licence for making banking operations is complained against.

**5.** As from the date of appointment of the provisional administration the validity of the powers of attorney issued by a credit organisation before the date of appointment of the provisional administration, including irrevocable ones, shall be terminated.

**Article 189.36.** A Petition of the Head of the Provisional Administration for Managing a Credit Organisation for Withdrawal of the Licence for Conducting Banking Operations

In the event of establishing grounds for withdrawal of a credit organisation's licence for conducting banking operations provided for by Article 20 of the Federal Law on Banks and Banking Activity, the head of the provisional administration for managing the credit organisation is bound to file a petition for withdrawal of the cited licence with the Bank of Russia.

**Article 189.37.** Disputes Concerning the Activities of the Provisional Administration for Managing a Credit Organisation

**1.** A credit organisation is entitled to complain against the decision of the Bank of Russia on appointing a provisional administration for managing the credit organisation with an arbitration court in the procedure established by federal laws.

Complaining against the decision of the Bank of Russia on appointing the provisional administration for managing a credit organisation, as well as taking measures aimed at securing risks in respect of a credit organisation, shall not suspend the activities of the provisional administration for managing the credit organisation.

**2.** The credit organisation's founders (stockholders) possessing in the aggregate at

least one per cent of the credit organisation's authorized capital are entitled to make a claim with an arbitration court against the Bank of Russia for compensation to the credit organisation for actual damage if it is caused as a result of unfounded appointment of a provisional administration for managing the credit organisation.

**Article 189.38.** A Moratorium on Satisfaction of Claims of a Credit Organisation's Creditors

**1.** In the event of suspension of the authority of executive bodies of a credit organisation and where there are grounds provided for by Subitem 1 of Item 1 of Article 189.26 of this Federal Law, the Bank of Russia is entitled to impose a moratorium on satisfaction of claims of the credit organisation's creditors for at most three months.

The operation of the cited moratorium shall extend to pecuniary obligations and the duty of making mandatory payments originating before the appointment of the provisional administration for managing the credit organisation.

**2.** Within the time period while the moratorium is in effect:

1) the forfeits (fines, penalties), interest, other financial sanctions provided for by law or a contract shall not be charged and other punitive sanctions for failure to discharge or improper discharge by a credit organisation of pecuniary obligations and/or the duty of making mandatory payments shall not be imposed;

2) recovery under execution and other documents in an uncontestable procedure (without acceptance) shall not be allowed;

3) the execution of executive documents, except as provided for by Item 4 of this article, shall be suspended;

4) it shall be prohibited to satisfy the claims of the founder (stockholder) of a credit organisation for apportioning thereto the participatory share (contribution) in the authorised capital of the credit organisation in connection with the withdrawal thereof from the composition of its founders (stockholders).

**3.** Interest shall be accrued on the amount of claims of a creditor in respect of pecuniary obligations and/or mandatory payments shown in the currency of the Russian Federation at the rate established as of the date of imposing a moratorium (less the accrued interest) in the amount of two thirds of the interest refinancing rate of the Bank of Russia. Interest shall be accrued on the amount of claims of a creditor in respect of pecuniary obligations and/or mandatory payments shown in foreign currency at the rate established as of the date of imposing a moratorium (less the accrued interest) on the basis of the average rate of bank interest on short-tern foreign currency credits granted at the creditor's location. The accrued interest is subject to payment after the end of the moratorium.

**4.** The moratorium's operation shall not extend:

1) to claims of citizens to whom a credit organisation is liable for inflicting harm on their life or health;

2) to the claims of citizens for making severance payments, labour remuneration to citizens working under a labour agreement (contract) and for paying remuneration to the authors of the results of intellectual activities;

3) to the claims for covering the administrative-and-economic outlays which are necessary for the activities of a credit organisation;

4) to the execution of executive documents issued before the date of the moratorium's imposition on the basis of decisions on collecting the credit organisation's debts under bank deposit agreements and bank account agreements made with natural persons.

**Article 189.39.** The Refusal to Execute Contracts and other Transactions of a Credit Organisation

The head of the provisional administration for managing a credit organisation, should the authority of executive bodies of the credit organisation be suspended, is entitled from the time of appointment of the provisional administration for managing the credit organisation to refuse to execute contracts and other transactions of the credit organisation on the grounds and in the procedure provided for by Article 102 of this Federal Law.

**Article 189.40.** The Specifics of Declaring Transactions of a Credit Organisation Invalid

**1.** A transaction made by a credit organisation (or by another persons at the expense of the credit organisation) before the date of appointment of the provisional administration for managing the credit organisation or after such date may be declared invalid on the basis of an application of the head of such administration in the procedure and on the grounds provided for by this Federal Law, as well as by the Civil Code of the Russian Federation and other federal laws, subject to the specifics established by this paragraph.

**2.** An application for declaring a transaction made by a credit organisation invalid may be filed with an arbitration court by the provisional administration for managing the credit organisation, as well as by the Agency on behalf of the credit organisation, if the Bank of Russia has endorsed a plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy.

**3.** The time periods within which the transactions that may be declared invalid or the credit organisation's circumstances cited in Articles 61.2, 61.3 and Item 4 of Article 61.6 of this Federal Law originated shall be counted as from the date of appointing by the Bank of Russia the provisional administration for managing the credit organisation or, if in respect of a credit organisation measures aimed at preventing bankruptcy with the Agency's participation are being taken, as from the date of endorsement by the Banking Supervision Committee of the Bank of Russia of a plan of the Agency's participation in taking measures aimed at preventing the bank's bankruptcy.

**4.** In the event of the head of the provisional administration for managing a credit organisation disputing the following transactions on the basis of Article 61.3 of this Federal Law: transactions that involve the credit organisation writing-off monetary assets from a client's account made with this credit organisation on account of repayment of the client's debt with respect to the credit organisation (both on the basis of the client's instructions and without such), remittance by a credit organisation of monetary assets from the client's account opened with this credit organisation onto the account of the same or another person with some other credit organisation (both on the basis of the client's instructions and without such) or issuance of monetary assets in cash from the client's account, the burden of proof that the appropriate transactions go beyond the limits of ordinary economic activities of the credit organisation shall be the responsibility of the head of the provisional administration for managing the credit organisation.

**5.** It is assumed (if not proved otherwise) that a transaction has gone beyond ordinary economic activities where there is at least one of the following circumstances:

1) the disputed payment has been made by a credit organisation through the correspondent account (subaccount) in defiance of the order established by the Civil Code of the Russian Federation where there are other clients' instructions nominated in the same currency and not executed in due time because of insufficiency of monetary assets on the cited correspondent account (subaccount) of this credit organisation or if it is proved that the client that has made the disputed payment or the payment's recipient knew about the presence of other such non-executed instructions in respect of another correspondent account (subaccount) of this credit organisation;

2) a client or payment recipient is a related person or controlling person in respect of the credit organisation;

3) the purpose or amount of the disputed payment significantly differ from the clients' payments made before subject to previous relations thereof with the credit organisation, and the client cannot present a reasonable convincing substantiation of this payment, and the amount of payment or an aggregate of the client's payments made within a single business day has exceeded one million roubles and in respect of the payments made in foreign currency have exceeded the sum which is equivalent to one million roubles at the exchange rate of the Central Bank of the Russian Federation fixed as of the date of payment. This subitem shall not apply to disputing payments aimed at the discharge of the credit organisation's pecuniary obligations in respect of credit contracts, bank account contracts or deposit contracts made with other credit organisations.

6. The rule of Item 2 of Article 61.4 of this Federal Law in respect of the possibility of declaring invalid the transactions made in the course of ordinary economic activities, if their price or extent exceed one per cent of the assets' value, shall not apply while disputing payments aimed at the discharge of monetary obligations of the credit organisation under the credit contracts, contracts of banking account or contracts of deposit made with other credit organisations. Such payments may be declared invalid on the basis of Item 1 of Article 61.2 or Article 61.3 of this Federal Law solely in compliance with Item 5 of this article.

7. When disputing transactions of a credit organisation in compliance with Items 5 and 6 of this article, Item 4 of Article 61.4 of this Federal Law shall not apply.

8. In a case initiated on the basis of an application of the head of the provisional administration for managing a credit organisation, if the activities of the provisional administration for managing the credit organisation are terminated, as the claimant shall be recognised the credit organisation in the name of its authorized managerial body or, in the event of adoption by an arbitration court of the decision on declaring the credit organisation bankrupt and on initiation of bankruptcy proceedings (endorsement of a bankruptcy receiver) or of the decision of an arbitration court on appointing the liquidator of the credit organisation, in the name of the bankruptcy receiver or liquidator of the credit organisation.

9. A transaction made by a credit organisation participating in a payment system, by the central payment clearing contractor, the payment system's settlement centre and in respect which the credit organisation is liable as a result of defining payment clearing positions on the net-basis within the framework of the payment system, provided that the cited transaction satisfies the requirements of Federal Law No. 161-FZ of June 27, 2011 on the National Payment System, may not be declared invalid on the grounds provided for by this article.

10. A transaction or transfer of monetary assets made by a credit organisation participating in a foreign payment system may not be declared invalid on the grounds provided for by this article, if made by an credit organisation participating in the foreign payment system or some other credit organisation (including by a foreign credit organisation or foreign bank) on its instructions and by a foreign central payment clearing contractor for which a bank account is opened with the Bank of Russia.

11. A transaction made by a bank or other person at the bank's expense in respect of which measures aimed at preventing bankruptcy with the Agency's participation have been taken (are being taken) which are provided for by this paragraph may be declared invalid at an application of the cited bank or Agency in the procedure and on the grounds provided for by this Federal Law, as well as by the Civil Code of the Russian Federation and other federal laws, subject to the specifics established by this paragraph. The rules provided for by Chapter III.1 of this Federal Law and Items 1-10 of this article shall apply when disputing such transactions, if not otherwise provided for by this item. The time periods within which are made the transactions that may be declared invalid in compliance with Article 61.2 or 61.3 of this Federal Law shall be counted starting from the date of endorsement by the Banking

Supervision Committee of the Bank of Russia of a plan for the Agency's participation in taking measures aimed at preventing the banks' bankruptcy.

**12.** In a case initiated on the basis of the Agency's application upon termination of the time period for implementation of a plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy (completing measures aimed at preventing bankruptcy) as the claimant shall be recognized a credit organisation in the name of its authorized managerial body or, in the event of adoption by an arbitration court of a decision on declaring a bank bankrupt and on initiating bankruptcy proceedings (endorsement of a bankruptcy receiver) or a decision of an arbitration court on appointing the liquidator of the credit organisation, in the name of the bankruptcy receiver or liquidator of the credit organisation.

**Article 189.41.** The Expenses of the Provisional Administration for Managing a Credit Organisation

**1.** The outlays of the provisional administration for managing a credit organisation connected with the activities thereof shall be made at the expense of the credit organisation.

**2.** An estimate of outlays of the provisional administration for managing a credit organisation shall be endorsed by the Bank of Russia.

**3.** The outlays of the provisional administration for managing a credit organisation within the limits of the estimate endorsed by the Bank of Russia are subject to priority payment.

**4.** If there are no monetary assets on the correspondent account of a credit organisation, on the order of the head of the provisional administration for managing the credit organisation the foreign currency kept on correspondent accounts of the credit organisation with other credit organisations may be sold within the limits of the amount of outlays endorsed in the estimate and the sum derived may be entered onto the correspondent account of the credit organisation with an institution of the Bank of Russia.

**Article 189.42.** A Report of the Provisional Administration for Managing a Credit Organisation

The provisional administration for managing a credit organisation shall be accountable to the Bank of Russia in the procedure established by regulatory acts of the Bank of Russia.

**Article 189.43.** The Termination of the Activities of the Provisional Administration for Managing a Credit Organisation

**1.** The Bank of Russia shall render a decision on termination of the activities of the provisional administration for managing a credit organisation:

1) in the event of removal of the reasons serving as a basis for its appointment;

2) after an arbitration court renders a decision on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings (on endorsing the bankruptcy receiver) or after entry into force of a decision of an arbitration court on appointing a liquidator of the credit organisation;

3) on other grounds provided for by this paragraph and regulatory acts of the Bank of Russia.

**2.** In the event of declaring a credit organisation bankrupt or adopting a decision on compulsory liquidation thereof, the provisional administration for managing the credit organisation, within at most 10 working days after an arbitration court renders a decision on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings (on endorsing the bankruptcy receiver) or after the date of entry into legal force of the decision of an arbitration court on appointing a liquidator of the credit organisation, is bound to pass over

thereto the credit organisation's stamps and seals, accounting and other documentation, including a register of creditors' claims of the credit organisation, material and other valuables of the credit organisation accepted from the executive bodies of the credit organisation in compliance with Item 2 of Article 189.35 of this Federal Law.

The procedure for termination of the activities of the provisional administration for managing a credit organisation shall be established by regulatory acts of the Bank of Russia.

**3.** The termination of the activities of the provisional administration for managing a credit organisation in case of removed of the reasons serving as grounds for its appointment shall entail the restoration of the authority of the credit organisation's executive bodies.

**4.** The authority of the head of a credit organisation removed from the office thereof for the time period while the provisional administration for managing the credit organisation is exercising its activities shall be restored after termination of the activities of the provisional administration for managing the credit organisation, if the head of the credit organisation is not dismissed in compliance with the labour legislation.

**5.** The act of the Bank of Russia on termination of the activities of the provisional administration for managing a credit organisation shall be published by the Bank of Russia in the "Vestnik Banka Rossii" and at the latest on the following working day after the date of adoption of the cited act shall be included by the Bank of Russia into the Unified Federal Register of Data on Bankruptcy.

**Article 189.44.** The Inclusion by the Bank of Russia of Data into the Unified Federal Register of Data on Bankruptcy

**1.** The data received from the provisional administration for managing a credit organisation, as well as the data and documents cited in Articles 189.25-189.43 of this Federal Law, shall be included by the Bank of Russia into the Unified Federal Register of Data on Bankruptcy within five working days as from the time of the Bank of Russia receiving the appropriate data and documents.

**2.** The data and documents cited in Articles 189.25-189.43 of this Federal law shall be included by the Bank of Russia into the Comprehensive Federal Register of Data on Bankruptcy without collecting payment from the Bank of Russia.

**Article 189.45.** The Demand of the Bank of Russia for Reorganising a Credit Organisation

**1.** The Bank of Russia is entitled to demand reorganisation of a credit organisation where it is established by Subitems 1-3 of Item 1 of Article 189.26 of this Federal Law. The procedure for sending the demand of the Bank of Russia for reorganisation of a credit organisation is established by Items 1 and 2 of Article 189.20 of this Federal Law.

**2.** A credit organisation shall be reorganised in the form of merger or affiliation in the procedure established by federal laws and regulatory legal acts adopted in compliance with them.

**Article 189.46.** The Credit Organisation's Actions in Case of Receiving a Demand of the Bank of Russia for Its Reorganisation

**1.** In the event of receiving a demand of the Bank of Russia for reorganisation of a credit organisation, the one-man executive body of the credit organisation is bound within five days of the date of receiving it to file a petition that there is a need for reorganisation of the credit organisation with the credit organisation's executive bodies cited in Item 1 of Article 189.19 of this Federal Law.

**2.** The credit organisation's managerial bodies cited in Article 189.19 of this Federal Law are bound at the latest in 10 days as from the date of receiving the demand of the Bank

of Russia for reorganisation to notify the Bank of Russia about the adopted decision.

3. The requirements for the stability of the credit organisations originating in the event of merger of credit organisations are defined by regulatory acts of the Bank of Russia.

**Article 189.47.** A Proposal of the Bank of Russia for the Agency's Participation in Taking Measures Aimed at Preventing Bankruptcy or Settlement of the Obligations of a Bank

1. The Bank of Russia is entitled to send a proposal on the Agency's participation in taking measures aimed at preventing a bank's bankruptcy where there are signs that the financial position thereof is unstable, this endangering the interests of its creditors (depositors) and/or the stability of the banking system.

2. The Bank of Russia is entitled to send a proposal on the Agency's participation in settling a bank's obligations where there are signs of the instability of its financial position endangering the interests of its creditors (depositors).

3. For the purposes of this paragraph, the signs of instability of a bank's financial position endangering the interests of its creditors (depositors) shall include, in particular, a bank showing in its reports/statements and/or the establishment by the Bank of Russia, Agency or other persons of the facts and (transactions) operations proved by documents whose truthful showing in the bank's reports/statements leads (will lead) to the bank breaking obligations and/or conditions of participation in the system of mandatory deposit insurance and/or to the origination of grounds for taking measures aimed at preventing the bank's insolvency (bankruptcy) and/or the availability of other proof of a threat to the interests of creditors/depositors supported by documents.

4. The Bank of Russia is entitled to render a decision on sending representatives of the Bank of Russia and the Agency's representatives to a bank for the purpose of analyzing the bank's financial position for resolving the issue as to whether it is expedient to send the Agency a proposal on the Agency's participation in taking measures aimed at preventing bankruptcy or a proposal on participation in settling the bank's obligations.

5. The time period for analysing the financial position of a bank may not exceed 45 calendar days. The cited time period may be extended by the Bank of Russia on the basis of the Agency's reasoned petition by at most 10 calendar days.

6. The procedure for analyzing the financial position of a bank and methods for effecting it shall be defined by a regulatory act of the Bank of Russia.

7. Representatives of the Bank of Russia and representatives of the Agency shall enjoy the right of access to all the bank's premises, to all the bank's documents and information systems, as well as the right to request and receive from the bank's employees any information (including data constituting official, commercial and banking secrets) and documents.

Representatives of the Bank of Russia and representatives of the Agency are entitled to participate without enjoying the right of vote in sittings of the bank's managerial bodies, its committees, commissions and other advisory bodies.

8. Obstruction on the part of a bank's top managers, other bank's employees and other persons of the exercise by representatives of the Bank of Russia and by representatives of the Agency of the functions thereof (including obstruction to access to the bank's premises, its documentation and information media or their concealment) shall entail liability in compliance with the legislation of the Russian Federation.

9. While analyzing a bank's financial position, the Agency is entitled to assess the sufficiency of the bank's property for settling the bank's obligations in compliance with Article 189.51 of this Federal Law.

Methods for assessing the sufficiency of a bank's property for settling the bank's

obligations shall be defined by a regulatory act of the Bank of Russia with the Agency's approbation.

To assess the market value of a bank's property, including the property rights possessed by it, the Agency is entitled to engage an appraiser at its own expense.

**10.** On the basis of the results of analysis of a bank's financial position representatives of the Bank of Russia and representatives of the Agency shall send to the Bank of Russia and the Agency a joint report on the results of their activities for adoption by the Bank of Russia of the decision on the expediency of the Agency sending a proposal as to the Agency's participation in taking measures aimed at preventing bankruptcy or in settling the bank's obligations.

**11.** The report of representatives of the Bank of Russia and representatives of the Agency provided for by Item 10 of this article shall contain conclusions as to the expediency of the Agency sending a proposal on the Agency's participation in taking measures aimed at preventing bankruptcy or in settling the bank's obligations.

**12.** The decision on the Agency sending a proposal on the Agency's participation in taking measures aimed at preventing bankruptcy or in settling the bank's obligations shall be taken by the Banking Supervision Committee of the Bank of Russia.

**13.** As from the date of the Bank of Russia sending the Agency a proposal on the Agency's participation in taking measurers aimed at preventing bankruptcy and up to the end date of the time period for taking measures aimed at preventing bankruptcy the Bank of Russia is entitled to render the following decisions:

1) not to take the measures provided for by Article 74 of the Federal Law on the Central Bank of the Russian Federation (the Bank of Russia) in respect of the bank;

2) not to impose a ban on attracting monetary assets of natural persons and opening bank accounts for natural persons provided for by Article 48 of the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation;

3) not to withdraw the bank's licence for conducting banking operations where it is provided for by Part Two of Article 20 of the Federal Law on Banks and Banking Activity;

4) to grant the bank a postponement in payment (payment by installments) of the shortage of assets to be paid to the mandatory reserves deposited with the Bank of Russia for the time period while a plan for the Agency's participation in preventing the bank's bankruptcy is being implemented. On such occasion, the bank is bound to draw up a monthly estimation of the mandatory reserves which are subject to depositing and to submit it to the Bank of Russia in the procedure established by the Bank of Russia.

**Article 189.48.** The Decision on the Agency's Participation in Taking Measures Aimed at Preventing Bankruptcy or in Settling a Bank's Obligations

**1.** While considering the proposal of the Bank of Russia on participation in taking measures aimed at preventing bankruptcy or in settling a banks obligations, the Agency is entitled to take the appropriate decision:

1) to request and receive from the Bank of Russia additional data and documents on the bank's financial position;

2) to present to the Bank of Russia and other persons a proposal to develop measures aimed at preventing bankruptcy;

3) to hold talks with the bank's managerial bodies, its founders (stockholders) and other persons having contractual relations with the bank about taking measures aimed at preventing bankruptcy or on settling the bank's obligations;

4) to take other actions for the purpose of adopting a decision on the expediency of its participation in taking measures aimed at preventing bankruptcy or in settling the bank's obligations.

**2.** The Agency's decision on the issue of expediency of its participation in taking measures aimed at preventing bankruptcy or in settling the bank's obligations shall be taken on the basis of the principles of fairness, reasonableness, sufficient awareness of the bank's financial position and minimization of the expenditure of assets of the fund for mandatory deposit insurance and of other Agency property.

**3.** The Agency, at the latest in 10 days as from the date of receiving a proposal of the Bank of Russia on the Agency's participation in taking measures aimed at preventing bankruptcy or in settling the bank's obligations, shall notify the Bank of Russia on adopting a decision on its participation in taking measurers aimed at preventing bankruptcy or in settling obligations of the bank or on the denial of such participation.

**4.** The Agency's decisions on the denial of participation in taking measures aimed at preventing bankruptcy or in settling obligations of a bank, as well as the decision on participation in settling obligations of the bank in respect of which the proposal of the Bank of Russia on the participation in taking measures aimed at preventing bankruptcy has been sent to the Agency's address, shall be substantiated.

**Article 189.49.** The Agency's Participation in Taking Measures Aimed at Preventing a Bank's Bankruptcy

**1.** Measures aimed at preventing bankruptcy may be taken by the Agency by way of the following:

1) rendering the financial assistance provided for by this article;

2) arranging sales of property securing the discharge of the bank's obligations, in particular with respect to the Bank of Russia;

3) exercising the functions of the provisional administration for managing a bank in compliance with Article 189.34 of this Federal Law;

4) in other ways provided for by this paragraph.

**2.** Measures aimed at preventing a bank's bankruptcy with the Agency's participation shall be taken on the basis of the plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy endorsed by the Banking Supervision Committee of the Bank of Russia which shall be sent by the Agency to the Bank of Russia at the latest in 20 days as from the date of the Agency sending a notice to the Bank of Russia about the adoption of the decision on its participation in preventing the bank's bankruptcy.

**3.** Within 10 days as from the date of receiving a plan for the Agency's participation in taking measures aimed preventing a bank's bankruptcy the Banking Supervision Committee of the Bank of Russia shall render a decision on its endorsement or on refusal to endorse it.

If a plan for the Agency's participation in taking measures aimed at preventing bankruptcy of a bank provides for using assets of the Bank of Russia, the plan endorsed by the Banking Supervision Committee of the Bank of Russia is also subject to endorsement by the Board of Directors of the Bank of Russia within the cited time period.

A procedure for endorsement of a plan for the Agency's participation in taking measures aimed at preventing a bank's bankruptcy and amendments to be made in the plan for the Agency's participation in taking measures aimed at preventing the banks' bankruptcy endorsed by the Bank of Russia shall be established by a regulatory act of the Bank of Russia.

The cited plan shall specify the forms and extent of the financial assistance to be rendered by the Agency.

Where necessary, the Agency shall make amendments in the cited plan in the procedure stipulated for adoption and endorsement of this plan.

**4.** The Banking Supervision Committee of the Bank of Russia shall render a decision on endorsement of the amendments or on refusal to make amendments in a plan for the

Agency's participation in taking measures aimed at preventing a bank's bankruptcy at the time fixed by Item 3 of this article as from the date of the Bank of Russia receiving the amendments made in the plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy.

5. Within the time period as from the date of endorsement of a plan for the Agency's participation in taking measures aimed at preventing a bank's bankruptcy and up to the last day of the time period for its implementation (completion of taking measures aimed at preventing the bank's bankruptcy) the Agency shall submit a report to the Bank of Russia on a monthly basis on taking the measures provided for by the cited plan. The composition of the report and the procedure for its submission shall be established by a regulatory act of the Bank of Russia.

6. In the event of adoption of a decision on the refusal to endorse a plan for the Agency's participation in taking measures aimed at preventing a bank's bankruptcy or if it is impossible to implement the cited plan, in particular as a result of failure to implement the cited plan by the bank, the Bank of Russia shall reverse the decisions adopted in compliance with Item 13 of Article 189.47 of this Federal Law.

7. The Bank of Russia and the Agency shall exchange information about the presence of the grounds proving the impossibility of implementing a plan for the Agency's participation in taking measures aimed at preventing a bank's bankruptcy.

8. While taking measures aimed at preventing a bank's bankruptcy, the Agency is entitled to render financial assistance to:

1) the persons (person) acquiring stocks of the bank in the quantity of at least 75 per cent of ordinary stocks of a bank in the form of a joint stock company (shares in the authorized capital representing at least three quaters of votes of the total number of votes of participants of a bank in the form of a limited liability company) (hereinafter referred to as investors) in compliance with the endorsed plan for the Agency's participation in taking measures aimed at preventing the bank's bankruptcy;

2) a bank on condition of the Agency and/or investors acquiring stocks of the bank in the quantity of at least 75 per cent of ordinary stocks of a bank in the form of a joint stock company (shares in the authorized capital granting the right of vote in the amount of at least three quaters of votes of the total number of votes of participants of a bank in the form of a limited liability company) in compliance with the endorsed plan of the Agency's participation in taking measures aimed at preventing a bank's bankruptcy.

9. The financial assistance shall be rendered by the Agency in compliance with Subitem 1 of Item 8 of this article on condition of satisfaction by an investor of the requirements established by the Bank of Russia.

10. An investor is bound to present the Bank of Russia information about satisfaction of the requirements cited in Item 9 of this article. When the Agency renders financial assistance to an investor, the Agency is entitled to request and receive from the Bank of Russia documents proving satisfaction by an investor of the requirements established by the Bank of Russia.

11. When rendering financial assistance to a bank, the Agency is entitled to acquire the bank's property, including the right of claim against natural persons, without the consent of the latter.

12. Financial assistance in the form of a contribution made in the authorized capital of a bank from the Agency's assets shall be rendered by the Agency, if the following conditions are concurrently observed:

1) reduction of the amount of the bank's authorised capital by decision of the Bank of Russia down to the amount of own assets (capital) or to one rouble (when the value of own assets (capital) is negative);

2) termination of the bank's obligations under contracts of subordinated credit (contracts of deposit, loan, bonded loan), including obligations in respect of interest and financial sanctions for failure to discharge obligations under subordinated credits (deposits, loan, bonded loans), or an exchange (conversion) of creditors' claims under subordinated credits (deposits, loans, bonded loans), including obligations in respect of interest and financial sanctions for failure to discharge obligations under subordinated credits (deposits, loan, bonded loans), on ordinary stocks (shares in the authorised capital) of a credit organisation;

3) acquisition by the Agency and/or by an investor (investors) of stocks (shares in the authorised capital) of a bank in the quantity of 75 per cent of ordinary stocks of a bank in the form of a joint stock company (shares in the authorised capital granting the right of vote to the extent of at least three quaters of votes of the total number of votes of participants of a bank in the form of a limited liability company).

**13.** The financial assistance provided for by Item 8 of this article shall be rendered by the Agency on the basis of agreements (contracts).

**14.** In compliance with a plan for the Agency's participation in taking measures aimed at preventing a bank's bankruptcy the Agency may act as the organiser of sales of the property securing the discharge of the bank's obligations, in particular with respect to the Bank of Russia.

**15.** The severance payments, compensation and other payments shall be made in case of termination of a labour contract made with the one-man executive body of the bank (in particular at him/her own will or as agreed by the parties) in respect of which the Agency is taking measures aimed at preventing bankruptcy, deputies thereof, members of the collective executive of a credit organisation, the chief accountant and deputies thereof, as well as with the head of an affiliate of a credit organisation and chief accountant of an affiliate of the credit organisation, shall be made in an amount not exceeding the minimum rate of payments established by Article 181 of the Labour Code of the Russian Federation.

**Article 189.50.** Changing the Amount of the Authorised Capital of a Bank and/or the Composition of Stockholders (Stockholders) of a Bank by Decision of the Bank of Russia

**1.** Within the period of the provisional administration for managing a credit organisation appointed in compliance with Subitem 6 of Item 1 of Article 189.26 of this Federal Law exercising activities the Bank of Russia is entitled to render a decision on reducing the amount of the authorized capital of a bank down to the amount of own assets (capital) thereof or, if the given value is negative, down to one rouble.

**2.** The value of own assets (capital) of a bank shall be estimated by the provisional administration in compliance with the procedure established by the Bank of Russia on the basis of the Federal Law on the Central Bank of the Russian Federation (the Bank of Russia).

**3.** The decision on reducing the amount of the authorized capital of a bank down to the value of own assets (capital) thereof or down to one rouble shall be adopted by the Banking Supervision Committee of the Bank of Russia in the procedure established by a regulatory act of the Bank of Russia and shall be legalized by an order of the Bank of Russia. A report on reduction of the amount of the authorized capital of a bank shall be published in the "Vestnik Banka Rossii" at the latest in 10 working days as from the date of adoption of the cited decision and shall be placed in the Unified Federal Register of Data on Bankruptcy.

**4.** The decision of the Bank of Russia on reducing the amount of the authorized capital of a bank shall enter into force as from the date of adoption of the appropriate order of the Bank of Russia and may be complained against within 30 days as from the date of the first publication or insertion of the report cited in Item 3 of this article. Complaining against such

decision of the Bank of Russia and/or taking measures aimed at securing claims in respect of a bank shall not suspend such decision of the Bank of Russia.

On the basis of the decision cited in this item the provisional administration for managing a credit organisation is bound to take actions aimed at bringing the bank's constituent documents into accord with the adopted decision. In respect of banks acting in the form of a joint stock company the provisional administration for managing a credit organisation shall also render the decision on placing stocks, shall prepare and endorse the decision on issuance of stocks and a report on the results of stocks' issuance in compliance with the requirements of regulatory acts of the Bank of Russia.

**5.** In the event of admitting serial securities of a bank to organised trade in the territory of the Russian Federation, the provisional administration for managing a credit organisation, before the adoption of the decision on placing stocks (bringing the bank's constituent documents into accord with the adopted decision), shall send an application to the trade-promoters in the securities market (exchanges) for termination of trade in stocks and options of the issuing bank.

**6.** In the event of adoption by the Bank of Russia of the decision on reduction of the amount of the authorized capital of a bank, the Bank of Russia within three working days as from the date of the provisional administration for managing a credit organisation filing all the properly-legalised documents provided for by Item 1 of Article 17 of Federal Law No. 129-FZ of August 8, 2001 on the State Registration of Legal Entities and Individual Businessmen (hereinafter referred to as the Federal Law on the State Registration of Legal Entities and Individual Businessmen) shall render the decision provided for by Part Three of Article 10 of the Federal Law on Banks and Banking Activity.

**7.** An authorized registration body, within a working day as from the date of receiving the required data and documents, shall enter data into the Unified State Register of Legal Entities on the reduction of the amount of a bank's authorised capital on the basis of the documents sent by the provisional administration for managing the credit organisation.

**8.** When reducing the amount of a bank's authorised capital by decision of the Bank of Russia, the following provisions of federal laws shall not apply:

1) on obligatory notification of creditors about their right to demand the termination or preschedule discharge of obligations by the bank and repair of the losses connected with it;

2) on the right of creditors to make claims against the bank for termination or preschedule discharge by it of obligations and repair of damage connected with it;

3) on the bank's liquidation, if the amount of its own assets (capital) goes below the minimum amount of the authorised capital established by federal law and a normative act of the Bank of Russia as of the date of the bank's state registration.

**9.** In the event of reduction of the amount of a bank's authorised capital by decision of the Bank of Russia, the provisions of Article 29 of the Federal Law on Joint Stock Companies and Article 20 of the Federal Law on Limited Liability Companies shall not apply.

**10.** If as of the time of rendering the decision on reducing the amount of the authorised capital a bank having the form of a joint stock company is at any stage of stock issuance, the Bank of Russia shall render a decision on declaring the issue thereof frustrated and on cancellation of the state registration thereof (except when the state registration of an issue (additional Issue) of stocks does not involve the state registration of a report on the results of their issue (additional issue) and at least one transaction involving placement of the stocks of the given issue (additional issue) has been made.

**11.** Where a procedure for issuance of a bank's stocks does not involve the state registration of a report on the results of their issue (additional issue) and at least one transaction involving the placement of the stocks belonging to the issue (additional issue) has been made, the provisional administration for managing the credit organisation, irrespective of

the time period for placing stocks fixed by the issuance terms, shall render a decision on completing the placement and on endorsing a notice of the results of the stocks' issue (additional issue).

**12.** Where it is specified by Item 11 of this article, the provisional administration for managing a credit organisation, within three working days as from the date of adoption of the decision on completing placement and on endorsing a notice of the results of an issue (additional issue) of stocks, is bound to render a decision on making amendments in the bank's statutes. The Bank of Russia, within a working day as from the date of the provisional administration for managing a credit organisation filing all the properly legalized documents, shall render the decision provided for by Part Three of Article 10 of the Federal Law on Banks and Banking Activity. Within a working day as from the date of receiving necessary data and documents the authorised registration body shall enter data to the Unified State Register of Legal Entities on an increase of a bank's authorized capital on the basis of the documents sent by the provisional administration for managing the credit organisation.

**13.** If as of the time of rendering the decision on reduction of the amount of the authorized capital a bank in the form of a limited liability company is at any stage of an increase of the amount of the authorized capital thereof, the Bank of Russia shall render a decision on reversal of the bank's decision on an increase of the authorised capital thereof.

**14.** If as of the time of the Bank of Russia declaring an issue of a bank's stocks frustrated (of rendering the decision on reversal of the decision on an increase of the authorized capital thereof) the bank has received monetary assets in payment for stocks (shares), such monetary assets by order of the provisional administration for managing the credit organisation shall be repaid in compliance with the legislation of the Russian Federation at the latest in three working days as from the date of adoption by the Bank of Russia of the decision on cancellation of the state registration of the issue (additional issue) of stocks (of adoption of the decision on reversal of the decision on an increase of the amount of the authorized capital) of the bank.

**15.** A bank's own stocks (shares) which are included into the balance sheet thereof as of the time of adoption by the Bank of Russia of the decision on reduction of the amount of this bank's authorised capital shall be paid off.

**16.** The provisional administration for managing a credit organisation may adopt the decision on placing an additional issue of stocks (on making an additional contribution to the authorised capital) of a bank. In the event of adoption of the cited decision, the preemptive right to acquisition of a bank's stocks (shares) shall not extend to the bank's stockholders (stockholders).

An additional issue of a bank's stocks may be acquired in full or in part by the Agency, if the conditions provided for by Article 189.49 of this Federal Law are met. The Agency is entitled to make a contribution to the bank's authorized capital.

**17.** The bank's stockholders (stockholders) that held more than one per cent of its stocks (shares) within the three months preceding the date of the Bank of Russia sending a proposal to the Agency on its participation in preventing the bank 's bankruptcy and before the date of adoption of the decision on placing an additional issue of stocks (making an additional contribution in the authorized capital) of the bank may not be deemed the participants in placing an additional issue of stocks (in making an additional contribution to the authorized capital) of a bank.

**18.** The shares of participation of the Agency and/or investor in the authorised capital of a bank on the basis of the results of its increase shall make up at least 75 per cent of ordinary stocks of a bank having the form of a joint stock company (shares in the authorised capital giving at least three quaters of votes in the total number of votes of participants of a bank in the form of a limited liability company).

**19.** The provisions of the federal laws regulating the following procedure shall not extend to the acquisition by the Agency or investor of stocks (shares) of a bank in compliance with the measures aimed at preventing the bank's bankruptcy:

1) obtaining a preliminary or subsequent consent of the Bank of Russia to acquisition of the bank's stocks (shares);

2) receiving a consent to making a transaction in the bank's stocks (shares) from the federal antimonopoly body (sending a notice to the federal antimonopoly body);

3) acquiring 30 or more per cent of ordinary stocks of a bank which is a joint stock company;

4) observing the minimum amount of the bank's authorised capital established by federal law and regulatory legal acts of the Bank of Russia as of the date of the bank's state registration;

5) observing the procedure for disclosing information in the form of reports on significant facts;

6) engaging an authorized federal executive power body for fixing the price of placing the bank's stocks;

7) exercising the right to the preemptive acquisition of the bank's stocks);

8) approving a related-party transaction.

**20.** An authorized registration body shall enter information on an increase of the authorised capital of a bank into the Unified State Register of Legal Entities on the basis of the documents sent by the provisional administration for managing the credit organisation.

**21.** If as a result of taking measures aimed at preventing bankruptcy which are provided for by this paragraph an investor or the Agency have become owners of over 95 per cent of ordinary and/or preferred stocks of a bank granting the right of vote in compliance with Item 5 of Article 32 of the Federal Law on Joint Stock Companies, an investor or the Agency are entitled to redeem the cited securities from the rest of the stockholders owning the bank's stocks, as well as from owners of the serial securities convertible into such stocks.

**22.** The provisions of the federal laws cited in Item 19 of this article, as well as the requirements of Article 84.8 of the Federal Law on Joint Stock Companies for preliminary sending a bank of the appropriate voluntary or mandatory proposal and for acquisition as a result of accepting such proposal of at least 10 per cent of the total number of ordinary and preferred stocks of the bank granting the right of vote, shall not extend to the investors or the Agency sending the bank a demand for redemption of securities in compliance with Item 21 of this article.

**23.** Investors or the Agency are entitled to send to a bank the demand for redemption of securities of a credit organisation in compliance with Item 21 of this article at any time within the validity term of a plan for the Agency's participation in preventing the bank's bankruptcy.

**24.** The bank's securities shall be redeemed at a price which is equal to their market value and shall be fixed by an independent appraiser at the latest six months before the date of sending a bank the demand for redemption of the bank's securities.

**25.** The securities to be redeemed shall be only paid for by monetary funds. If the aggregate value of the bank's securities possessed by a single person from which stocks are redeemed makes up less than one kopeck, the cited securities shall be redeemed at a price which is equal to one kopeck for all the securities possessed by the given person.

**26.** The specifics of issuance and registration of banks' securities when the Agency takes measures aimed at preventing bankruptcy shall be established by a regulatory act of the Bank of Russia.

**Article 189.51.** General Provisions on Settlement of a Bank's Obligations

**1.** When settling a bank's obligations, the transfer of the bank's property and obligations to another bank that will be the acquirer (hereinafter referred to as the acquirer) shall be used.

**2.** The transfer of a bank's property and obligations to the acquirer involves the onerous transfer to the acquirer of the bank's property (including property rights) and as a consideration the discharge by the acquirer instead of the bank of its obligations with respect to the bank's creditors by way of the debt's transfer.

**3.** The bank's property and obligations shall be transferred on the basis of the principles of fairness and reasonableness of actions of the provisional administration for managing the bank, protection of creditors' rights and legitimate interests, in particular minimization of their losses when they exercise their right to have their legal requirements in respect of the bank satisfied, equivalence of the extent of the obligations to be transferred to the value of the property to be transferred, order of priority and proportionality of satisfaction of creditors' claims.

**4.** Measures aimed at settling a banks' obligations shall be taken by the Agency after withdrawal of the licence for conducting banking operations on the basis of the plan for the Agency's participation in settling the bank's obligations coordinated with the Banking Supervision Committee of the Bank of Russia.

**5.** A plan for the Agency' participation in settling a bank's obligations providing for the transfer of the bank's property and obligations shall contain data on the composition of the property to be transferred and obligations. The price of the property to be transferred and the extent of the obligations to be transferred, methods of such property's assessment, as well as on the forms, extent of and procedure for probable financing by the Agency of the activities of participants in settling the bank's obligations shall be provided for by the plan.

**6.** A plan for the Agency's participation in settling a banks' obligations shall be sent by the Agency to the Bank of Russia at the latest in 20 days as from the date of acceptance by the Agency of the proposal of the Bank of Russia to participate in settling obligations of an appropriate bank or as from the date of the Agency sending the Bank of Russia the decision on participation in settling obligations of the bank in respect of which the Bank of Russia has sent the proposal to participate in taking measures aimed at preventing the bank's bankruptcy.

**7.** The Bank of Russia shall coordinate a plan for the Agency's participation in settling a bank's obligations in the procedure stipulated for endorsing the plan for the Agency's participation in taking measures aimed at preventing the banks' bankruptcy when rendering the decision on withdrawal of the bank's licence for making banking operations.

**8.** In the event of adoption by the Agency of the decision on participation in settling a bank's obligations, the functions of the provisional administration for managing the bank to be appointed in connection with withdrawal of the bank's licence for conducting banking operations shall be imposed on the Agency by an order of the Bank of Russia. The Agency shall exercise the functions and authority of the provisional administration for managing a bank through the representatives thereof appointed from among its employees that shall act on the basis of a power of attorney.

**Article 189.52.** The Transfer of a Bank's Property and Obligations to the Acquirer

**1.** The transfer of a bank's property and obligations to the acquirer shall be completed at the latest 14 days before the date of endorsement by the Bank of Russia of a plan for the Agency's participation in settling the bank's obligations.

**2.** All the bank's obligations or a part thereof may be transferred to the acquirer.

In the event of transferring to the acquirer a part of the bank's obligations, obligations of creditors of the subsequent priority shall be only transferred after the complete transfer of obligations of the previous priority. The cited order shall be established in compliance with

Article 189.92 of this Federal Law.

A part of a bank's obligations of one priority may not be transferred to the acquirer, if not otherwise established by this article.

**3.** Within the composition of a bank's obligations a part of obligations with respect to creditors of the first priority may be transferred in the amount of the insurance payments which are due to such creditors in compliance with the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation (hereinafter also referred to as insured obligations).

In the event of transfer to the acquirer of insured obligations with respect to creditors of the first priority, the insurance compensation, in particular in respect of the obligations that have not been transferred, in connection with the occurrence of an insured event in respect of the bank whose obligations are to be transferred to the acquirer, shall not be paid thereto.

**4.** The Agency shall pay the first-priority creditors that did not have their claims satisfied in full in the course of the bank's liquidation the amount compensating for the difference between the assets received by them and the assets that they would have received, if the bank's property and obligations had not been transferred to the acquirer from assets of the fund for mandatory deposit insurance.

**5.** Into the composition of a bank's property and obligations to be transferred to the acquirer may be included the property rights and obligations resulting from contracts of lease (sublease) of immovable property, electric energy supply, rendering municipal services, agreements on the right to use the appropriate results of intellectual activities and individualization means within the established limits (licence agreements) and other contracts made by the bank earlier.

**6.** The replacement of persons in the obligations resulting from the contracts cited in Item 5 of this article and in which a bank acts as the debtor shall entail the transfer to the acquirer of the bank's debt (obligations) originating as from the date of transfer of the bank's property and obligations. The transfer of a bank's debt (obligations) resulting from the cited contracts and originating before the date of transfer of the bank's debt and obligations is not allowed.

**7.** The sufficiency of a bank's property to be transferred to the acquirer for settling the bank's obligations in compliance with Article 189.51 of this Federal Law shall be estimated on the basis of the methods established by the Bank of Russia and coordinated with the Agency in compliance with Item 9 of Article 189.47 of this Federal Law.

The extent of a bank's obligations to be transferred to the acquirer shall be fixed by the provisional administration for managing the bank on the basis of the data available to the bank.

**8.** When transferring a bank's property and obligations to the acquirer, the rule on obtaining the consent of the bank's creditors to the debt's transfer to another person, the rule about preliminary notification of the bank's creditors about the transfer of the bank's debt to the acquirer, the rule on the bank's creditors raising claims for termination or preschedule discharge by the bank of its obligations with respect to them in connection with such transfer shall not apply.

**9.** In the event of transfer to the acquirer within the composition of the property to be transferred of rights of claim against persons that are simultaneously the bank's creditors, setting off in respect of the cited rights of claim is not allowed.

In the event of transfer within the composition of property of the leaseholder's right under contracts of lease (sublease) of immovable property, such contracts may not be dissolved earlier that in two months as from the date of the cited transfer.

**10.** The Agency is entitled to render financial assistance to the acquirer by way of the following:

1) discharge instead of the bank whose property and obligations are to be transferred to the given acquirer of the obligations involved in compensation for the property of improper quality to be returned by it in compliance with Item 1 of Article 189.55 of this Federal Law;

2) granting the loan provided for by Item 4 of Article 189.55 of this Federal Law.

**11.** In case of satisfying the conditions provided for by Item 4 of Article 189.56 of this Federal Law financial assistance shall be rendered to the acquirer from assets of the fund for obligatory deposit insurance in an amount not exceeding the maximum value of probable payments to depositors from the fund for mandatory deposit insurance in respect of the bank's insured obligations with respect to depositors in compliance with a plan for the Agency's participation in settling the bank's obligations.

**12.** Where it is impossible to satisfy the conditions provided for by Item 4 of Article 189.56 of this Federal Law, the Agency is entitled to render financial assistance to the acquirer from other Agency property intended for taking measures aimed at preventing the bank's bankruptcy or settlement of the bank's obligations.

**Article 189.53.** The Acquirer of a Bank's Property and Obligations

**1.** A bank's property and obligations may be transferred to a single or several acquirers.

**2.** The acquirer (acquirers) of a bank's property and obligations shall be determined on the basis of a closed tender to be held by the Agency from among banks holding a licence for borrowing monetary assets of natural persons for depositing. The procedure for and term of holding a closed tender for selection of the acquirer (acquirers) of the bank's property and obligations shall be established by a regulatory act of the Bank of Russia with the Agency's approbation.

**3.** A notice of a closed tender to be held in compliance with this article shall be sent by the Agency to the persons invited to participate in the tender at least three days before holding it.

**4.** As the condition of a bank's admittance to participate in a closed tender for selection of the acquirer (acquirers) of the bank's property and obligations shall be deemed the bank's financial status sufficient for discharging the obligations to be received, as well as for adhering to the mandatory normative standards and mandatory reserves established by the Bank of Russia.

**5.** Information on the banks that have filed applications for participation in a closed tender shall be sent to the Bank of Russia. The Bank of Russia is entitled to forbid participation of a bank in the closed tender if the bank does not satisfy the requirements established by Item 4 of this article. The banks which are approved by the Bank of Russia when holding a tender shall be provided with data on the composition of the property and obligations to be transferred, on their value and evaluation methods.

**6.** As the winner of a closed tender for selecting the acquirer (acquirers) of a bank's property and obligations shall be recognized the person (persons) that satisfy the terms of holding the closed tender and offering the lowest limit value of the cost of the property that may be returned to the bank by way of reverse transfer or, when the proposals of participants in the closed tender from the point of this criterion are equal, the person that has proposed the best conditions from the point of other criteria.

**7.** In the event of declaring a tender frustrated on the grounds provided for by Item 5 of Article 447 of the Civil Code of the Russian Federation, a bank in compliance with Article 189.54 of this Federal Law shall make an agreement on transfer of the property and obligations with the only participant of such tender whose bid for the limit value of the cost of property that may be transferred to the bank by way of reverse transfer amounts to at most 20 per cent.

**Article 189.54.** An Agreement on Transfer of Property and Obligations to a Bank

**1.** After the Bank of Russia issues orders to withdraw licences for conducting banking operations, and to appoint the provisional administration for managing a bank the acquirer of the bank's property and obligations and the provisional administration for managing the bank acting on behalf of the bank shall make an agreement (agreements) on transfer of the bank's property and obligations, this specifying the terms of such transfer. The cited agreement (agreements) may specify the results of transfer to the acquirer of property having improper quality, including its subsequent reverse transfer.

**2.** Property having improper quality means for the purposes of this paragraph the property in respect of which after transferring a bank's property and obligations circumstances are detected that influence the quality of the transferred assets that existed at the time of making a transfer agreement but were not known to the parties to the transfer agreement.

**3.** An agreement on transfer to the acquirer of a bank's property and obligations shall be made in writing and is not subject to state registration. Immovable property shall be transferred on the basis of separate agreements to be made in compliance with the agreement on property transfer to the acquirer. The state registration of the transfer of rights to immovable property items shall be effected on the basis of appropriate agreements, as well as in compliance with the legislation of the Russian Federation on the state registration of rights to immovable property.

**4.** A bank's property and obligations shall be deemed transferred to the acquirer as from the date of the signing of the transfer deed by both parties thereto.

Immovable property shall be deemed transferred as from the date of appropriate registration of the transfer of the right of ownership in compliance with the legislation of the Russian Federation on the state registration of rights to immovable property.

From that date the risk of accidental destruction or accidental damage of the property received by the acquirer shall pass thereto.

**5.** After the transfer of a bank's property and obligations to the acquirer the latter is bound to discharge the received obligations and/or the duties as to making mandatory payments under the terms that existed on the date of withdrawal of the bank's licence for conducting banking operations. for this, within the time period from the date of withdrawal of the bank's licence for conducting banking operations and up to the date of transfer of its obligations to the acquirer punitive sanctions for failure to discharge such obligations provided for by an agreement or law shall not be imposed.

**6.** Concurrently with signing the transfer deed provided for by Item 4 of this article, the provisional administration for managing a bank shall send for publication in the periodical publication determined in the procedure established by Item 1 of Article 189.74 of this Federal Law information on the transfer to the acquirer of the bank's obligations. The cited information shall contain the following:

1) denomination of the bank transferring property (assets) and obligations or a part thereof, its address, data identifying the cited bank (the state registration number of an entry on the state registration of a legal entity, taxpayer identification number);

2) denomination of the bank being the acquirer which the bank's property (assets) and obligations or a part thereof are to be transferred to, its address and data identifying the cited bank (the state registration number of an entry on the state registration of a legal entity, taxpayer identification number);

3) criteria for referring obligations as those to be transferred to the acquirer;

4) procedure for creditors to receive information on whether the bank's obligations with respect to them are to be transferred to the acquirer.

**7.** As from the date of publishing the data cited in Item 6 of this article, the provisional

administration for managing a bank, bankruptcy receiver or liquidator (in the event of adoption by an arbitration court of the decision of declaring the bank bankrupt and on initiation of bankruptcy proceedings (of endorsement of the bankruptcy receiver) or the decision on appointing a liquidator) are bound to provide information at the request of a bank's creditor on the composition of the bank's property to be transferred and obligations thereof, as well as on the price of the property's transfer.

**Article 189.55.** The Property's Reverse Transfer

**1.** An agreement on transfer of a bank's property and obligations may provide as an effect of the probable transfer to the acquirer of improper quality property the subsequent return by the bank of such property with compensation for its cost to be made to the acquirer (hereinafter referred to as reverse transfer).

The reverse transfer may be effected at the latest in a year from the date of signing an appropriate agreement on transfer of the bank's property and obligations. Such agreement shall fix the limit value of the cost of the property that may be returned by way of reverse transfer.

**2.** The Agency is entitled to discharge the obligation thereof as to compensation to the acquirer of the cost of the property to be returned by way of reverse transfer instead of a bank.

**3.** The Agency after discharging the obligation instead of the bank in respect of compensation to the acquirer of the cost of the property returned by way of reserve transfer shall acquire the right of claim against the bank within the limits of the amount paid to the acquirer. In the course of bankruptcy proceedings in respect of a bank (of a bank's liquidation) the cited claim shall be satisfied within the composition of first-priority creditors.

**4.** The Agency is entitled to grant the acquirer a loan for a term of at most five years. In so doing, the balance of the acquirer's debt in respect of the loan and the amount of compensation for the cost of the property returned by way of reverse transfer that can be paid by the Agency to the acquirer may not exceed on the aggregate the amount of all the bank's obligations transferred to the acquirer while the amount of such compensation may not exceed the sum of the loan.

As agreed by the Agency and the acquirer, the Agency's obligations as to the compensation to the acquirer for the cost of the property to be returned by way of reverse transfer shall be terminated by setting off the Agency's counterclaims (of a part thereof) against the acquirer under a loan agreement.

**Article 189.56.** Financing the Activities Involved in Preventing Bankruptcy and Settling Obligations of a Bank

**1.** In the instances and in the procedure provided for by this Federal Law the activities involved in preventing the bankruptcy of a bank and settling the bank's obligations provided for by this Federal Law shall be exercised at the expense of the assets of investors or the Bank of Russia, and they may be exercised at the expense of the federal budget funds allocated as a property contribution of the Russian Federation to the Agency's property.

**2.** For the purpose of exercising the functions involved in participation in prevention of a bank's bankruptcy and settling a bank's obligations the Agency shall open a correspondent account with the Bank of Russia,

**3.** For exercising the activities involved in preventing a bank's bankruptcy the Agency is entitled to file an application with the Bank of Russia for granting a credit. The decision on granting a credit to the Agency for exercising the activities involved in preventing a bank's bankruptcy shall be adopted by the Board of Directors of the Bank of Russia. A credit of the Bank of Russia may be granted to the Agency without security for a term up to five years. The

Bank of Russia may render a decision on extending the validity term of a credit agreement in compliance with which the Agency has been granted a credit without security by a term up to five years.

**4.** The Agency is entitled to finance the activities aimed at preventing bankruptcy of a bank or at settling obligations thereof from the fund of mandatory deposit insurance. The limit amount of assets required for the cited financing shall be endorsed in the procedure established by the Agency's board of directors. If not otherwise provided for by this Federal Law, the activities aimed at preventing a banks' bankruptcy or settling obligations thereof from assets of the fund for mandatory deposit insurance may be only financed if the following conditions are concurrently met:

1) if financing of the cited activities leads to reduction of outlays of the fund for mandatory deposit insurance in case of the bank's liquidation;

2) if financing of the cited activities does not affect the stability of the fund for mandatory deposits' insurance.

**5.** Methods for estimation of the Agency's assets, including assets of the fund for mandatory deposit insurance, that can be used for preventing a bank's bankruptcy, settling obligations thereof or for bankruptcy (liquidation) of such bank, for the purpose of adoption by the Agency of the decision on participation in preventing the bank's bankruptcy, shall be endorsed by the Agency's board of directors.

**6.** Federal budget assets shall be allocated for exercising the activities involved in preventing a banks' bankruptcy or settlement of its obligations with the Agency's participation by way of making a property contribution of the Russian Federation to the Agency's property, this not being the fund for mandatory deposit insurance, for forming the sources of outlays on exercising the activities provided for by federal laws. The procedure for making the cited property contribution shall be defined by the federal law on the federal budget for an appropriate financial year and planning period.

**7.** The assets allocated by the Agency for the purpose of preventing a bank's bankruptcy to the persons cited in Article 189.49 of this Federal Law or to the acquirer of property for the purpose of settling obligations shall be returned, and other obligations with respect to the Agency shall be discharged, at the time fixed by appropriate agreements, in particular within the time periods exceeding those for implementation of a plan of the Agency's participation in taking measures aimed preventing the bank's bankruptcy or a plan for the Agency's participation in settling the bank's obligations.

**8.** For the purpose of exercising the activities involved in preventing banks' bankruptcy and settlement of their obligations, the Agency is entitled to deposit with the Bank of Russia the assets on account of which the cited activities are financed in compliance with this Federal Law.

**9.** The measures aimed at maintaining and selling the property acquired while taking measures aimed at preventing a bank's bankruptcy shall be financed by the Agency in the procedure established by the Agency's board of directors from the federal budget funds allocated as a property contribution of the Russian Federation to the Agency's property in compliance with this Federal Law, as well as from assets of the fund for mandatory deposit insurance, on condition of observing the terms provided for by Item 4 of this article.

**Article 189.57.** The Procedure for the Agency Selling the Stocks (Shares in the Authorized Capital) Acquired in the Course of Preventing Banks' Bankruptcy

**1.** If the Agency has acquired stocks or has made a contribution to the authorised capital of a bank, it is bound in case of receiving an offer of a person which is interested in purchasing the stocks (shares) acquired by the Agency to put them up for sale through public sales.

**2.** The Agency and investors are entitled to provide in the agreement (contract) to be made by them the obligation of an investor (investors) to acquire in future all the stocks (shares) of an appropriate bank possessed by the Agency (hereinafter referred to as the obligation of acquisition). In so doing, the selling price of the cited stocks (shares) shall not be below that fixed by Item 8 of this article.

**3.** If within the time period fixed by an obligation of acquisition the Agency did no receive the offer provided for by Item 1 of this article, the Agency's administration shall render the decision on holding public sales in compliance with this article. In so doing, the selling price of stocks (shares) of an appropriate bank may not be below the price cited in the appropriate obligation of acquisition.

**4.** Where it is provided for by Item 3 of this article, an investor (investors) that has assumed the obligation of acquisition is bound to take part in public sales in the procedure established by the Agency for holding such sales.

**5.** Where there is the offer provided for by Item 1 of this article on the maturity date fixed by an obligation of acquisition, it may be accepted by the Agency in case of declaring public sales frustrated, except as provided for by Item 6 of this article or in the event of declaring the results of public sales held invalid.

**6.** In the event of declaring sales frustrated on the ground provided for by Item 5 of Article 447 of the Civil Code of the Russian Federation, the Agency shall make a contract of purchase and sale of a bank's stocks (shares) (or of a part thereof) with the only participant of such sales.

**7.** The bank's stockholders (participants) possessing more than one per cent of its stocks (shares) within three months preceding the date of sending by the Bank of Russia to the Agency the proposal as to its participation in taking measures aimed at preventing the bank's bankruptcy may not act as acquirers of a bank's stocks (shares).

**8.** The price of a bank's stocks (shares) sold by the Agency in compliance with this article shall not be less that one of the following values:

1) the value of the share of the bank's net wealth (of the assets which are not charged with obligations) as of the last accounting date before adoption by the Agency of the decision on holding public sales in proportion to the share of the Agency's participation in the bank's authorized capital;

2) the amount of assets allocated by the Agency to pay for the bank's stocks (shares).

**Article 189.58.** The Procedure for Trying a Case on Bankruptcy of a Credit
            Organisation

A case on bankruptcy of a credit organisation shall be tried by an arbitration court according to the rules provided for by the Arbitration Procedural Code of the Russian Federation and this Federal Law.

**Article 189.59.** The Persons Participating in a Case on Bankruptcy of a Credit
            Organisation

**1.** As the persons participating in a case on bankruptcy of a credit organisation, along with the other persons cited in Item 1 of Article 34 of this Federal Law, shall be deemed:

1) the bankruptcy receiver;

2) the Bank of Russia as the body of banking regulation and banking supervision;

3) other natural persons or legal entities engaged for participation in a case on bankruptcy when the matters provided for by Subitems 2 and 3 of Item 1 of Article 189.67 of this Federal Law are being considered.

**2.** Persons which are not cited in Item 1 of this article may not enjoy the rights of the persons participating in a bankruptcy case.

**Article 189.60.** Persons Participating in Arbitration Proceedings in Respect of a Bankruptcy Case

In arbitration proceedings in respect of bankruptcy case shall participate:

1) a representative of a credit organisation's employees;

2) a representative of a credit organisation's founders (stockholders);

3) a representative of a creditors' meeting or a representative of the committee of creditors of a credit organisation;

4) other persons where it is provided for by the Arbitration Procedural Code of the Russian Federation and by this Federal Law.

**Article 189.61.** Applying to an Arbitration Court

1. The right to file an application for declaring a credit organisation bankrupt with an arbitration court shall be enjoyed by:

1) the credit organisation;

2) bankruptcy creditors, including the natural persons enjoying the right of claim against the credit organisation under a bank deposit agreement and/or bank account agreement;

3) authorized bodies;

4) the Bank of Russia, including when it is not a creditor of the credit organisation.

5) the debtor's employees or former employees having claims for paying severance benefits and/or labour wages.

2. The right to file with an arbitration court an application for declaring a credit organisation bankrupt shall originate for the bankruptcy creditor, the debtor's employee or former employee or authorized body in respect of monetary obligations after the withdrawal of the credit organisation's licence for making bank operations, if their claims are proved by an effective decision or other act of a court of law, arbitration court, the ruling on issuance of a writ of execution for compulsory execution of a decision of an arbitrage regardless of forwarding (presenting for execution) of an execution document in the procedure established by the legislation of the Russian Federation on execution proceedings.

3. An authorized body for mandatory payments shall start enjoying the right to file an application for declaring a credit organisation bankrupt with an arbitration court after withdrawal of a credit organisation's licence for conducting banking operations, if a claim for making mandatory payments is proved by a decision of a tax authority or a decision of a customs authority on recovering a debt on account of the credit organisation's property, irrespective of the expiry of the time period provided for by Article 7 of this Federal Law.

4. If by the date of withdrawal of a credit organisation's licence for conducting banking operations it has the signs of insolvency (bankruptcy) provided for by Article 189.8 of this Federal Law, the Bank of Russia within five days as from the date of publishing the decision on withdrawal of the credit organisation's licence for conducting banking operations in the "Vestnik Banka Rossii" is bound to file an application for declaring the credit organisation bankrupt with an arbitration court.

5. In the event of the provisional administration for managing a credit organisation appointed after the withdrawal of the credit organisation's licence for conducting banking operations detecting signs of insolvency (bankruptcy) of the credit organisation, the Bank of Russia, within five working days as from the date of receiving a petition of the provisional administration for managing the credit organisation, shall send to an arbitration court an application for declaring the credit organisation bankrupt.

6. When the Bank of Russia files an application for declaring a credit organisation bankrupt with an arbitration court , the proof of presence of the signs of insolvency (bankruptcy) provided for by this Federal Law shall be taken into consideration. For this the

provisions stipulated by Item 3 of Article 6 and Item 2 of Article 7 of this Federal Law shall not apply.

**7.** The persons cited in Subitems 1 - 3, 5 of Item 1 of this article are entitled to send to the Bank of Russia an application for withdrawal of the credit organisation's licence for conducting banking operations in the event of occurrence of the conditions cited in Article 189.8 of this Federal Law, attaching thereto the documents proving that a credit organisation has pecuniary obligations, debts on payment of severance benefits and/or labour wages to the persons who are working or have been working under a labour contract, and/or debts on mandatory payments in the amount to be defined as of the date of filing the cited application in compliance with the requirements of Item 2 of Article 4 of this Federal Law.

**8.** When the Bank of Russia considers an application of the bankruptcy receiver, an application of the debtor's employee or former employee or an application of an authorised body for withdrawal of the credit organisation's licence for conducting banking operations, the claims proved by an effective decision or other act of a court of law, arbitration court or a ruling on issuance of a writ of execution for enforcement of a decision of a tribunal of arbitrators shall be taken into account.

**9.** When the Bank of Russia considers an application of an authorised body for withdrawal of a credit organisation's licence for conducting banking operations, the claims in respect of making mandatory payments shall be taken into account, if they are proved by a decision of a tax authority or a decision of a customs authority on recovering debts on account of the credit organisation's property.

**10.** The bankruptcy creditor, of the debtor's employee or former employee or authorized body shall start enjoying the right to file an appropriate application with the Bank of Russia in respect of pecuniary obligations upon the expiry of 14 days as from the date of sending (presenting for execution) an execution document in the procedure provided for by the legislation of the Russian Federation on execution proceedings.

**11.** An authorised body shall start enjoying the right to file an appropriate application with the Bank of Russia in respect of mandatory payments upon the expiry of 14 days as from the date of adoption of the decision cited in Item 9 of this article.

**12.** The persons cited in Subitems 1 - 3, 5 of Item 1 of this article and which have filed an application for withdrawal of a credit organisation's licence for conducting banking operations with the Bank of Russia, if an answer of the Bank of Russia is not received upon the expiry of two months as from the date of sending such application or from the date of receiving a refusal to withdraw the cited licence of the credit organisation, are entitled to file an application for declaring the credit organisation bankrupt with an arbitration court.

**Article 189.62.** An Application for Declaring a Credit Organisation Bankrupt

**1.** An application for declaring a credit organisation bankrupt shall satisfy the requirements provided for by this Federal Law for a debtor's application, subject to the specifics established by this paragraph.

**2.** An application of a bankruptcy creditor, of the debtor's employee or former employee or authorized body for declaring a credit organisation bankrupt shall satisfy the requirements provided for by Articles 39 and 41 of this Federal Law for an application of the bankruptcy creditor, of the debtor's employee or former employee, and authorised body, respectively, subject to the specifics established by this paragraph.

**3.** A copy of an application of a credit organisation for declaring it bankrupt and copies of the documents attached thereto shall be sent by an applicant to the Bank of Russia and, where it is provided for by Item 1 of Article 189.77 of this Federal Law, also to the Agency by registered mail with confirmation as delivery or by way of handing to the addressee directly at the location thereof.

**4.** A report on an arbitration court accepting a credit organisation's application for declaring it bankrupt is subject to publication by the credit organisation in a periodical publication at the location of the credit organisation and branches thereof.

**5.** A copy of an application of a bankruptcy creditor, a copy of an application of the debtor's employee or former employee, a copy of an application of an authorized body for declaring a credit organisation bankrupt and copies of the documents attached to such applications shall be sent by the cited persons to the Bank of Russia and the credit organisation and, where it is provided for by Item 1 of Article 189.77 of this Federal Law, also to the Agency by registered mail with confirmation as delivery or by way of handing in to the addressee directly at the location thereof.

**6.** The following shall be cited in an application of the Bank of Russia to be filed with an arbitration court for declaring a credit organisation bankrupt:

1) its denomination and location;

2) denomination of the arbitration court which the application is to be filed with;

3) denomination of the credit organisation and its location;

4) number and date of the order of the Bank of Russia on withdrawal of the credit organisation's licence for conducting banking operations;

5) circumstances proving that the credit organisation has the signs of insolvency (bankruptcy) established by this Federal Law, as well the evidence proving these circumstances;

6) list of the attached documents.

**7.** An application of the Bank of Russia for declaring a credit organisation bankrupt may cite other data, if they are necessary for correct and timely consideration of a bankruptcy case, and may contain petitions, including a petition calling for evidence.

**8.** The Bank of Russia is bound to send to a credit organisation and, where it is provided for by Item 1 of Article 189.77 of this Federal Law, also to the Agency a copy of an application for declaring a credit organisation bankrupt and copies of the documents attached thereto by registered mail with confirmation as delivery.

**Article 189.63.** The Documents to Be Attached to an Application for Declaring a Credit Organisation Bankrupt

**1.** An application of a credit organisation, of a bankruptcy creditor, of the debtor's employee or former employee or authorized body for declaring a credit organisation bankrupt shall have attached thereto the following, along with the documents provided for by the Arbitration Procedural Code of the Russian Federation and this Federal Law:

1) a notice of delivering to the Bank of Russia (to the Agency, if necessary) a copy of an application for declaring the credit organisation bankrupt and copies of the documents attached thereto;

2) a notice of delivering to the Bank of Russia in the procedure established by Items 7-11 of Article 189.61 of this Federal Law an application for withdrawal of the credit organisation's licence for conducting banking operations when the signs of insolvency (bankruptcy) arise and of the documents attached to it.

**2.** Except as provided for by Article 189.61 of this Federal Law, an application of a credit organisation for declaring it bankrupt, an application of a bankruptcy creditor, of the debtor's employee, former employee or and authorized body for declaring the credit organisation bankrupt shall have attached thereto, along with the documents provided for by Item 1 of this article, a copy of the order of the Bank of Russia to withdraw the credit organisation's licence for conducting banking operations published in the "Vestnik Banka Rossii" or a copy of the cited order attested by the Bank of Russia.

**3.** An application of the Bank of Russia for declaring a credit organisation bankrupt

shall have the following attached thereto:

1) a copy of the order of the Bank of Russia to withdraw the credit organisation's licence for conducting banking operations;

2) copies of the credit organisation's constituent documents;

3) copies of the financial and accounting reports/statements of credit organisation as of the last accounting date which are subject to submission to the Bank of Russia;

4) copies of the licences for conducting banking operations issued to the credit organisation;

5) a statement of the credit organisation's correspondent account opened with the Bank of Russia;

6) a statement of the credit organisation's mandatory reservation account opened with the Bank of Russia;

7) documents proving that the credit organisation has the signs of insolvency (bankruptcy), including the payment documents of the credit organisation's clients that have not been executed by it in the established procedure (if such payment documents are available);

8) a list of the payment documents of the credit organisation's clients that have not been executed by it in the established procedure;

9) a reference note about the correspondent accounts opened by the credit organisation;

10) a notice of delivering copies of an application for declaring the credit organisation bankrupt and copies of the documents attached thereto to the persons cited in Item 8 of Article 189.62 of this Federal Law;

11) a power of attorney or other documents proving the authority to sign an application for declaring the credit organisation bankrupt.

**Article 189.64.** The Acceptance of an Application for Declaring a Credit Organisation Bankrupt and Initiation of Bankruptcy Proceedings

**1.** An application for declaring a credit organisation bankrupt may be accepted by an arbitration court, while bankruptcy proceedings may be only initiated after withdrawal of the credit organisation's licence for conducting banking operations on the basis of applications of the persons cited in Item 1 of Article 189.61 of this Federal Law, if the amount of claims against the credit organisation in the aggregate amounts to at least a thousand fold the minimum labour wage established by federal law and if these claims are not satisfied within 14 days as from their maturity date or if after the withdrawal of the credit organisation's licence for conducting banking operations the cost of its property (assets) is insufficient for discharging the credit organisation's obligations with respect to its creditors and for making mandatory payments. The cost of the credit organisation's property (assets) and obligations is subject to estimation on the basis of the methods established by regulatory acts of the Bank of Russia.

**2.** An arbitration court shall issue the ruling on accepting an application for declaring a credit organisation bankrupt, this initiating bankruptcy proceedings.

**3.** The ruling of an arbitration court on accepting an application for declaring a credit organisation bankrupt shall specify the date of trying the bankruptcy case, and it may contain an indication as to the arbitration court's instructions to the Bank of Russia to send a statement about the presence of grounds for declaring the credit organisation bankrupt, and as to other persons participating in the bankruptcy case taking other actions aimed at ensuring the correct and timely consideration of the bankruptcy case and the time of taking these actions.

**4.** Copies of the ruling of an arbitration court on accepting an application for declaring a

credit organisation bankrupt at the latest on the following day after its rendering shall be sent to the applicant, the credit organisation, the Bank of Russia and, where it is provided for by Item 1 of Article 189.77 of this Federal Law, also to the Agency.

5. Where bankruptcy proceedings are initiated on the basis of an application of the persons cited in Subitems 1 - 3, 5 of Item 1 of Article 189.61 of this Federal Law, if an order of the Bank of Russia to withdraw the credit organisation's licence for conducting banking operations was issued on grounds which are not connected with the presence of the signs of the credit organisation's insolvency (bankruptcy), the Bank of Russia at the latest in 10 days as from the date of receiving a copy of the ruling of the arbitration court on acceptance of an application for declaring the credit organisation bankrupt and on initiating bankruptcy proceedings shall send to the arbitration court an opinion about the presence or absence of grounds for declaring the credit organisation bankrupt.

Article 189.65. Shelving an Application for Declaring a Credit Organisation Bankrupt

1. An arbitration court in case of establishing while considering the issue of acceptance of an application for declaring a credit organisation bankrupt that it is filed under the circumstances cited in Item 6 of Article 189.61 of this Federal Law shall issue a ruling on shelving the cited application.

2. In the ruling on shelving an application for declaring a credit organisation bankrupt an arbitration court shall oblige the Bank of Russia to present a statement of the Bank of Russia that it is inexpedient to withdraw the credit organisation's licence for conducting banking operations or a copy of the order of the Bank of Russia to withdraw the cited licence.

The Bank of Russia is bound to send the cited documents to an arbitration court within a month as from the date of receiving the ruling of an arbitration court on shelving the cited application.

3. A copy of the ruling on shelving an application for declaring a credit organisation bankrupt, at the latest on the following day after the date of its issuance, shall be sent to the applicant, the credit organisation and the Bank of Russia and, where it is provided for by Item 1 of Article 189.77 of this Federal Law, also to the Agency.

4. In the event of the Bank of Russia filing a copy of the order of the Bank of Russia to withdraw the credit organisation's licence for making banking operations with an arbitration court, an application for declaring the credit organisation bankrupt shall be deemed filed on the date when it first arrived at the arbitration court and shall be taken over by the arbitration court in the procedure provided for by Article 189.64 of this Federal Law.

Article 189.66. Returning an Application for Declaring a Credit Organisation Bankrupt

1. Along with the grounds for returning a statement of claim which are provided for by the Arbitration Procedural Code of the Russian Federation, as grounds for an arbitration court returning an application for declaring a credit organisation bankrupt shall be deemed the following:

1) establishing non-compliance of the signs of insolvency (bankruptcy) of the credit organisation cited in such application with the requirements defined by Item 1 of Article 189.64 of this Federal Law;

2) violation by an applicant of the procedure for filing an application for withdrawal of the credit organisation's licence for making banking operations provided for by Items 7-11 of Article 189.61 of this Federal Law under the circumstances cited in Item 6 of Article 169.61 of this Federal Law;

3) filing an application for declaring the credit organisation bankrupt in respect of which an arbitration court has initiated a bankruptcy case;

4) availability of an effective decision of an arbitration court on declaring invalid the

order of the Bank of Russia to withdraw the credit organisation's licence for conducting banking operations;

5) failure to satisfy the requirements established by Articles 189.62 and 189.63 of this Federal Law.

**2.** In the event of receiving the statement of the Bank of Russia as to the inexpediency of withdrawal of the credit organisation's licence for conducting banking operations, an application for declaring it bankrupt shall be returned to the applicant.

**3.** In the event of non-receipt of the statement of the Bank of Russia cited in Item 2 of this article within a month, an arbitration court shall return the application for declaring a credit organisation bankrupt to the applicant. On such occasion, the person that has sent the Bank of Russia an application for withdrawal of the credit organisation's licence for conducting banking operations is entitled to claim compensation for the Bank of Russia in an arbitration court for the losses caused by the failure of the Bank of Russia to render the decision on withdrawal of the cited credit organisation's licence or the decisions provided for by this Federal Law and referred to the scope of authority of the Bank of Russia on taking measures aimed at preventing bankruptcy of the credit organisation.

**4.** An arbitration court shall issue a ruling on returning an application for declaring a credit organisation bankrupt. This ruling shall be sent to the applicant, to the credit organisation, the Bank of Russia and, where it is provided for by Item 1 of Article 189.77 of this Federal Law, also to the Agency.

**5.** The ruling of an arbitration court on returning an application for declaring a credit organisation bankrupt may be appealed against.

In the event of reversal of the cited ruling, the application shall be deemed filed on the date of such reversal.

**Article 189.67.** The Specifics of Bankruptcy Court Proceedings

**1.** When trying cases on bankruptcy of a credit organisation, the following issues shall be resolved:

1) on declaring the credit organisation bankrupt;

2) on calling to account where it is provided for by this Federal Law the persons exercising control over the credit organisation;

3) on declaring invalid and/or applying the effects of invalidity of the transactions made by the credit organisation.

**2.** On the basis of the results of considering the issue cited in Subitem 1 of Item 1 of this article a court shall issue a decision and on the basis of the results of considering the issues cited in Subitems 2 and 3 of Item 1 of this article it shall issue a ruling.

**3.** An application for resolving the issues provided for by Subitems 2 and 3 of Item 1 of this article shall be paid for in state duty at the rate provided for by the legislation of the Russian Federation on taxes and fees for payment for applications for issuance of a writ of execution for enforcement of decisions of a tribunal of arbitrators.

**4.** Bankruptcy cases, insofar as the solution of the issue provided for by Subitem 1 of Item 1 of this article is concerned, shall be tried by an arbitration court within at most two months as from the date of acceptance by the arbitration court of an application for declaring a credit organisation bankrupt, including the time period for preparation of a case for court proceedings and adoption of a decision on the cited issue.

**5.** When resolving the issue provided for by Subitem 1 of Item 1 of this article, the preliminary court session stipulated by the Arbitration Procedural Code of the Russian Federation shall not be held. The reasonableness of claims of the person filing an application for declaring a credit organisation bankrupt shall be verified at the same session of an arbitration court where the issue of declaring the credit organisation bankrupt is being

considered.

**6.** The decision on declaring a credit organisation bankrupt shall contain an indication in respect of the following:

1) initiation of bankruptcy proceedings;

2) recognition of an applicant's claim as well-founded and inclusion of this claim into a register of creditors' claims;

3) endorsement of the bankruptcy receiver;

4) rate of the monthly remuneration to be paid to the bankruptcy receiver within the time period from the starting date of bankruptcy proceedings up to the date when the rate of remuneration for the bankruptcy receiver is fixed by a meeting of creditors or by the creditors' committee. The decision on declaring a credit organisation bankrupt shall not cite the rate of the bankruptcy receiver's remuneration, if the authority of the bankruptcy receiver is exercised by the Agency by virtue of law.

**7.** The decision on declaring a credit organisation bankrupt shall cite, where it is provided for by Item 1 of Article 189.77 of this Federal Law, that the Agency is the bankruptcy receiver.

**8.** Judicial disputing of the order of the Bank of Russia in respect of the withdrawal of a credit organisation's licence for conducting banking operations shall not be an obstacle for acceptance by an arbitration court of an application for declaring the credit organisation's bankrupt and shall not serve as grounds for suspending bankruptcy proceedings.

**9.** The decision of an arbitration court on declaring invalid the order of the Bank of Russia in respect of the withdrawal of a credit organisation's licence for conducting banking operations that has entered into legal force after the acceptance by an arbitration court of an application for declaring the credit organisation bankrupt shall not impede trying the bankruptcy case on its merits.

**10.** The decision of an arbitration court on declaring invalid the order of the Bank of Russia in respect of the withdrawal of a credit organisation's licence for conducting banking operations that has entered into legal force after initiation of bankruptcy proceedings shall not serve as grounds for reversal of the decision on declaring the credit organisation bankrupt and for review of the cited decision in view of newly-discovered facts.

**11.** The arbitration court that has adopted the decision on declaring a credit organisation bankrupt shall send this decision to the Bank of Russia, as well as to an authorised registration body, for it to make an entry in the unified state register of legal entities to the effect that the credit organisation is being liquidated.

**Article 189.68.** The Procedure for Approving the Bankruptcy Receiver

**1.** When filing an application for declaring a credit organisation bankrupt by the persons cited in Item 1 of Article 189.61 of this Federal Law, except for the Bank of Russia, such application shall not cite the candidacy of the qualified receiver, the denomination and address of the self-regulated organisation from among whose members the qualified receiver is endorsed.

When accepting an application for declaring a credit organisation bankrupt, an arbitration court shall apply to the Bank of Russia which shall present to the arbitration court the candidacy of the qualified receiver or the self-regulated organisation from among whose members a qualified receiver is to be endorsed within seven working days as from the date of receiving an application of the arbitration court.

An application for declaring a credit organisation bankrupt to be filed with an arbitration court by the Bank of Russia shall contain an indication of the candidacy of a qualified receiver, the denomination and address of the self-regulated organisation from among whose members a qualified receiver is to be endorsed.

**2.** If a credit organisation held a licence of the Bank of Russia for accepting monetary assets of natural persons for depositing, the Agency shall be the bankruptcy receiver.

**3.** In the event of failure to present a candidate for the bankruptcy receiver to an arbitration court in the procedure established by this Federal Law for approval, the Bank of Russia shall present to the arbitration court the Agency's candidate.

In the event of dismissal or removal of the bankruptcy receiver being a natural person from the office thereof, the authority of the bankruptcy receiver shall be imposed upon the Agency.

Where it is provided for by this item, an arbitration court shall issue the judicial act on approving the Agency as the bankruptcy receiver.

**4.** The bankruptcy receiver shall start exercising its functions from the date of an arbitration court rendering the decision on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings (approval of the bankruptcy receiver) and shall act up to the date of making an entry on the credit organisation's liquidation in the unified state register of legal entities.

**Article 189.69.** The Decision of an Arbitration Court on the Refusal to Declare a Credit Organisation Bankrupt

**1.** The decision of an arbitration court on the refusal to declare a credit organisation bankrupt shall be rendered in case of the following:

1) absence of the signs of insolvency (bankruptcy) provided for by Article 189.8 of this Federal Law;

2) establishing fictitious bankruptcy, if an application for declaring a credit organisation bankrupt is filed by the credit organisation being the debtor itself.

**2.** If an arbitration court has established the absence of the signs of insolvency (bankruptcy) or the fact of fictitious bankruptcy has been established, a credit organisation is subject to compulsory liquidation in compliance with the Federal Law on Banks and Banking Activity.

**Article 189.70.** Grounds for Termination of Bankruptcy Proceedings

**1.** An arbitration court shall terminate bankruptcy proceedings in the event of the following:

1) the declaring in the course of court proceedings that the applicant's claim serving as grounds for initiation of bankruptcy proceedings is ill-founded;

2) satisfying all claims of the creditors included into a register of creditors' claims in the procedure provided for by Item 14 of Article 189.93 of this Federal Law;

3) completion of bankruptcy proceedings.

**2.** Where it is provided for by Item 1 of this article, all the restrictions which are stipulated by this Federal Law and which are the effects of initiating bankruptcy proceedings, shall stop operating. The termination of bankruptcy proceedings shall not entail the termination of operation of the effects of withdrawal of the licence for conducting the banking operations provided for by the Federal Law on Banks and Banking Activity.

**3.** If not otherwise provided for by this paragraph, termination by an arbitration court of bankruptcy proceedings shall serve as grounds for the Bank of Russia filing an application for compulsory liquidation of a credit organisation in the procedure established by the Federal Law on Banks and Banking Activity.

**Article 189.71.** The Procedure for Appealing against Decisions and Rulings of an Arbitration Court

**1.** The decisions and rulings of an arbitration court issued in the course of trying a

bankruptcy case may be appealed against with an arbitration court in the procedure provided for by this Federal Law.

2. When superior judicial instances consider appeals against a ruling of an arbitration court, the arbitration court that has issued the ruling shall only send to the superior arbitration court those materials of the bankruptcy case which are directly related to the dispute of a credit organisation with the creditor or authorized body as to the establishment of the reasonableness, amount, composition and order of the claims' satisfaction.

**Article 189.72.** The Forwarding by an Arbitration Court of Judicial Acts Concerning a Bankruptcy Case

1. If not otherwise established by this Federal Law, judicial acts concerning a bankruptcy case shall be sent by an arbitration court to a credit organisation, the bankruptcy receiver, the Bank of Russia, the bodies authorised in compliance with this Federal Law, and to the person that has filed an application for declaring the credit organisation bankrupt with an arbitration court, as well as to the persons that participated in arbitration proceedings.

2. The ruling settling differences between the bankruptcy receiver and creditors or creditors complaints as to the violation of their rights and legitimate interests shall be sent by an arbitration court to a credit organisation, the bankruptcy commissioner, as well as to the persons that have filed a complaint or application for settling differences with an arbitration court or participated in consideration by an arbitration court of the cited complaints or applications.

3. If not otherwise established by this Federal Law, copies of judicial acts shall be sent by an arbitration court to the persons cited in this article within a five-day term as from the date when they are adopted.

4. The persons participating in a bankruptcy case, as well as the persons participating in arbitration proceedings in respect of a bankruptcy case, are entitled to demand that the bankruptcy receiver let them familiarise themselves with any judicial acts concerning the bankruptcy case or provide them with copies of such acts at the expense of the cited persons.

**Article 189.73.** General Provisions on Bankruptcy Proceedings

1. The adoption by an arbitration court of a decision on declaring a credit organisation bankrupt shall entail the initiation of bankruptcy proceedings.

2. Bankruptcy proceedings shall be introduced for one year. The term of bankruptcy proceedings may be extended on application of a person participating in bankruptcy proceedings by at most six months.

3. The ruling of an arbitration court on extending the term of bankruptcy proceedings is subject to immediate execution and may be appealed against in the procedure established by Item 3 of Article 61 of this Federal Law.

**Article 189.74.** Publication of Data on Declaring a Credit Organisation Bankrupt and on Making Preliminary Payments to First-Priority Creditors

1. The bankruptcy receiver within five working days as from the date filing documents with the Bank of Russia proving the right to make operations on the correspondent account of the credit organisation declared bankrupt (or, when the authority of the bankruptcy receiver is exercised by the Agency, from the date of opening the master account of a credit organisation in the course of bankruptcy proceedings) shall include data on bankruptcy into the Unified Federal Register of Data on Bankruptcy and shall forward an announcement for publication in the official publication specified by the Government of the Russian Federation, and the "Vestnik Banka Rossii" on the decision of an arbitration court on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings.

**2.** The following data on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings are subject to publication:

1) denomination and other requisite elements of the credit organisation declared bankrupt;

2) denomination of the arbitration court that has taken over the bankruptcy case and case-file number;

3) date of adoption by an arbitration court of the decision on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings;

4) date of closing the register of creditors' claims to be fixed in compliance with Item 2 of Article 189.85 of this Federal Law;

5) date of expiry of the time period for establishing claims of the first-priority creditors for the purpose of making preliminary payments to be fixed in compliance with Item 3 of Article 189.94 of this Federal Law;

6) credit organisation's address for creditors to make their claims against the credit organisation;

7) data on the bankruptcy receiver comprising the denomination and address of the bankruptcy receiver, for sending correspondence thereto.

**3.** The outlays connected with the inclusion into the Comprehensive Federal Register of Data on Bankruptcy and publication of the data on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings which are cited in this article shall be reimbursed from the credit organisation's assets.

**4.** If a credit organisation's property is insufficient for reimbursement of the outlays on the inclusion of data on bankruptcy into the Comprehensive Federal Register of Data on Bankruptcy and on their publication, these data shall be included into the cited register and published at the expense of the person that has filed an application for initiation of bankruptcy proceedings in respect of the credit organisation. If the Bank of Russia files an application for declaring a credit organisation bankrupt with an arbitration court and the credit organisation does not have enough property to reimburse the outlays on publication of the data provided for by Item 2 of this article, they shall be published in the "Vestnik Banka Rossii" and included into the Unified Federal Register of data on bankruptcy on a free-of-charge basis.

**Article 189.75.** Disclosure of Information in the Course of Bankruptcy Proceedings

**1.** For the purpose of ensuring creditors' equal access to information in the course of bankruptcy proceedings the bankruptcy receiver shall include the appropriate data into the Unified Federal Register of Data on Bankruptcy in the procedure established by this article.

**2.** At the latest in 30 days as from the date of declaring a credit organisation bankrupt the bankruptcy receiver shall include the following into the Comprehensive Federal Register of Data on Bankruptcy:

1) data on the financial status of the credit organisation and on its property as of the date of opening bankruptcy proceedings;

2) balance sheet of the credit organisation as of the last accounting date with the profit-and-loss account;

3) data on the availability of spare monetary assets that may be allocated for satisfying creditors' claims in respect of pecuniary obligations, including preliminary payments to first-priority creditors.

**3.** The bankruptcy receiver shall include data into the Unified Federal Register of Data on Bankruptcy on the estimate of a credit organisation's current expenditure provided for by Article 189.84 of this Federal Law at the latest in three days from the date of its endorsement.

**4.** At the latest five working days before the start of making settlements with creditors of each priority, including settlements by way of preliminary payment to first-priority creditors, the

bankruptcy receiver shall include information on the procedure for and time of making settlements with creditors into the Unified Federal Register of Data on Bankruptcy.

**5.** Concurrently with a report on the start of making settlements with first-priority creditors, the bankruptcy receiver shall include a report on the progress or on the results of an inventory of a credit organisation's property into the Unified Federal Register of Data on Bankruptcy citing the items whose cost exceeds one million roubles, as well as data on the structure and extent of the creditors' claims raised.

**6.** After the start of making settlements with first-priority creditors the bankruptcy receiver, at least once every three months, shall include the current information about the progress of bankruptcy proceedings into the Unified Federal Register of Data on Bankruptcy. The cited information shall include data on the following:

1) on newly detected property of the credit organisation;

2) on the work of the bankruptcy receiver involved in detecting the credit organisation's transactions having signs of invalidity in compliance with this Federal Law and in holding founders (stockholders), members of the board of directors (supervisory council) and top-managers of the credit organisation subsidiarily liable under obligations of the credit organisation in compliance with this Federal Law;

3) on the progress in the sale of the property of the credit organisation marking up information about the sale of items having a balance sheet value over one million roubles, citing the selling price of the property and purchasers thereof.

**7.** At least once every six months the bankruptcy receiver shall include the following information into the Unified Federal Register of Data on Bankruptcy:

1) on administration of the budget of current expenses of the credit organisation provided for by Article 189.84 of this Federal Law;

2) on the cost of unsold property of the credit organisation.

**8.** The data cited in Items 2-7 of this article, concurrently with their inclusion into the Comprehensive Federal Register of Data on Bankruptcy or at the time fixed for their inclusion, shall be sent by the bankruptcy receiver to the Bank of Russia.

**Article 189.76.** The Effects of Initiating Bankruptcy Proceedings

**1.** As from the date of adoption by an arbitration court of the decisions on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings:

1) the effects of withdrawal of the credit organisation's licence for conducting banking operations provided for by Article 20 of the Federal Law on Banks and Banking Activity shall continue to be effective, in particular in the event of entry into legal force after initiation of bankruptcy proceedings of the decision of an arbitration court on declaring invalid the order of the Bank of Russia on the withdrawal of such credit organisation's licence;

2) data on the financial status of the credit organisation shall not pertain to those recognized as confidential or constituting a commercial secret;

3) conducting the transactions, execution of judicial acts, acts of other bodies and officials which are issued in compliance with the civil legislation, criminal legislation, procedural legislation and the legislation of the Russian Federation on taxes and fees, are connected with alienation of the credit organisation's property or entail the transfer of its property to third persons for ownership or use shall be only allowed in the procedure established by Articles 189.73-189.101 of this Federal Law.

4) all the creditors' claims in respect of pecuniary obligations, making mandatory payments and other property claims against the credit organisation, except for a claim declaring the right of ownership, for obtaining on demand property unlawfully possessed by someone else, as well as the claims under current obligations provided for by Article 189.84 of this Federal Law, may only be raised in a bankruptcy case in the procedure established by

Articles 189.73-189.101 of this Federal Law;

5) the execution of executive documents on levying execution against the credit organisation's property shall be terminated, except for execution of executive documents on recovery of debts under current obligations of the credit organisation. The documents under which execution has been terminated in compliance with this paragraph are subject to transfer by court bailiffs, as well as by the bodies and organisations executing judicial acts, acts of other bodies and officials, to the bankruptcy receiver in the procedure established by federal law;

6) the encumbrances previously imposed on the property of the credit organisation and other restrictions on the disposal of the credit organisation's property shall be removed. As grounds for detachment of the credit organisation's property shall be deemed a decision of an arbitration court on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings. New encumbrances of the property of the credit organisation and imposition of other restrictions as to the disposal of its property are not allowed;

7) the credit organisation's obligations, in particular in respect of execution of judicial acts, acts of other bodies and officials that have been issued in compliance with the civil legislation, criminal legislation, procedural legislation and the legislation of the Russian Federation on taxes and fees shall be discharged in the instances and in the procedure established by Articles 189.73-189.101 of this Federal Law;

8) judicial acts, acts of other bodies and officials about levying execution against the monetary assets which are kept on bank accounts, in clients' deposits made with the credit organisation, on arresting and/or imposing other restrictions as to the disposal of the cited assets shall be executed in the procedure established by Article 189.96 of this Federal Law.

**2.** As from the date of adoption by an arbitration court of the decision on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings, the authority of the head of the credit organisation and other managerial bodies thereof shall be terminated, except for the authority of managerial bodies thereof in respect of adoption of the decision on making agreements on the terms of allocation of monetary assets by third persons for discharging the credit organisation's obligations.

**Article 189.77.** The Bankruptcy Receiver

**1.** As the bankruptcy receiver in case of bankruptcy of credit organisations holding a licence of the Bank of Russia for accepting monetary assets of natural persons for depositing shall be the Agency by virtue of law.

**2.** As the bankruptcy receiver in case of bankruptcy of credit organisations that do not hold a licence of the Bank of Russia for accepting monetary assets of natural persons for depositing shall be approved qualified receivers satisfying the requirements established by this Federal Law and accredited with the Bank of Russia as bankruptcy receivers in cases of bankruptcy of credit organisations (hereinafter referred to as the bankruptcy receiver accredited with the Bank of Russia).

**3.** Where it is provided for by Item 3 of Article 189.68 of this Federal Law, as well as by Item 2 of Article 189.105 of this Federal Law, the functions of the bankruptcy receiver in case of bankruptcy of credit organisations that do not hold a licence of the Bank of Russia for accepting citizens' monetary assets for depositing shall be exercised by the Agency.

No remuneration for exercising the authority of the bankruptcy receiver shall be paid to the Agency.

**4.** As the mandatory conditions of accreditation with the Bank of Russia of qualified receivers as bankruptcy receivers in case of bankruptcy of credit organisations shall be deemed the following:

1) compliance with the requirements for qualified receivers established by this Federal

Law;

2) absence within the three years preceding accreditation of any violations of the legislation of the Russian Federation on insolvency (bankruptcy) that have led to major impairment of creditors' rights, unfounded spending of the bankruptcy estate of a credit organisation and disproportionate satisfaction of creditors' claims, as well as absence of instances of removal from office of the bankruptcy receiver connected with failure to discharge or improper discharge of such duties;

3) passing training under the programme endorsed by the Bank of Russia.

**5.** The qualified receiver shall be accredited as a bankruptcy receiver for bankruptcy of credit organisations with the Bank of Russia on the basis of an application of the qualified receiver within 30 days as from the date of arrival. The cited application shall have attached thereto the documents proving satisfaction by the applicant of the requirements for accreditation established by this paragraph.

**6.** An application for accreditation of the qualified receiver as the bankruptcy receiver for bankruptcy of credit organisations may be filed with the Bank of Russia by a self-regulating organisation of qualified receivers.

The procedure for consideration of applications for accrediting qualified receivers as bankruptcy receivers for bankruptcy of credit organisations, for accreditation, cancellation of accreditation and the refusal to prolong accreditation shall be defined by regulatory acts of the Bank of Russia.

**7.** The Bank of Russia, with approbation of the federal executive power body authorized by the Government of the Russian Federation, may establish additional requirements for the terms of accreditation of qualified receivers as bankruptcy receivers in case of bankruptcy of credit organisations.

**8.** The validity term of accreditation of a qualified receiver as a bankruptcy receiver for bankruptcy of credit organisations shall be a year. The validity term of accreditation shall be prolonged by the Bank of Russia on the basis of applications of qualified receivers filed with the Bank of Russia 30 days before the expiry of the accreditation's term of validity. The Bank of Russia shall issue a qualified receiver accredited as the bankruptcy receiver for bankruptcy of credit organisations with an accreditation certificate.

**9.** The losses caused by the bankruptcy receiver accredited with the Bank of Russia as a result of failure to discharge or improper discharge of the duties thereof to the persons participating in a bankruptcy case shall be reimbursed by the bankruptcy receiver accredited with the Bank of Russia and from insurance of the liability thereof, should such losses be caused.

**10.** The bankruptcy receiver accredited with the Bank of Russia within 10 days as from the date of approval thereof as the bankruptcy receiver in a case on bankruptcy of a credit organisation, shall insure the liability thereof in the event of causing losses to the persons participating in the bankruptcy case in an amount depending on the assessed value of the credit organisation's assets as of the last accounting date estimated by the provisional administration for managing the credit organisation on the basis of the methods established by regulatory acts of the Bank of Russia, namely:

1) three per cent of the value of assets exceeding 100 million roubles when the value of assets is from 100 million roubles to 300 million roubles;

2) six million roubles plus two per cent of the assets exceeding 300 million roubles when the value of assets is from 300 million roubles to one billion roubles;

3) 20 million roubles plus one per cent of the value of assets exceeding one billion roubles when the value of assets exceeds one billion roubles.

**11.** A report on proper insurance of the liability of the bankruptcy receiver accredited with the Bank of Russia shall be sent by the receiver within the cited time period to an

arbitration court and the Bank of Russia.

**12.** In the event of approving the Agency as the bankruptcy receiver in the procedure provided for by this paragraph, the requirements for insuring liability in the event of causing losses to the persons participating in a bankruptcy case shall not extend to the Agency.

**13.** The Agency shall exercise the authority of the bankruptcy receiver through a representative thereof acting on the basis of a power of attorney which is appointed by it from among employees thereof.

**14.** The Agency is bound to send a report to an arbitration court and to the Bank of Russia on appointing a representative in a bankruptcy case within five days as from the date of an arbitration court rendering the decision on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings or of issuance of the judicial act approving the Agency as the bankruptcy receiver, where it is provided for by Item 3 of Article 189.68 and Item 2 of Article 189.105 of this Federal Law.

**15.** In the event of occurrence of the circumstances entailing the impossibility of the Agency's representative exercising its authority, in particular as a result of relieving him of the duties of a representative of the bankruptcy receiver in the procedure established by Item 4 of Article 189.81 of this Federal Law, the Agency is bound within five working days as from the date of occurrence of the cited circumstances to send to an arbitration court and the Bank of Russia a report on appointing a new representative of the bankruptcy receiver.

**16.** The Bank of Russia is entitled to cancel accreditation or to deny extension of the accreditation period of a bankruptcy receiver accredited with the Bank of Russia where there is one of the following grounds:

1) taking the bankruptcy receiver by an arbitration court off the duties of the bankruptcy receiver;

2) failure to satisfy the accreditation terms;

3) violation by the bankruptcy receiver of the legislation of the Russian Federation on insolvency (bankruptcy) that has led to the major impairment of creditors' rights, unfounded spending of the bankruptcy estate of the credit organisation and disproportionate satisfaction of creditors' claims.

**17.** In the event of cancellation by the Bank of Russia of accreditation of the bankruptcy receiver accredited with the Bank of Russia, he shall be relieved by an arbitration court of his duties on the basis of an application of the Bank of Russia.

**18.** The decision of the Bank of Russia to deny accreditation, to cancel accreditation or to deny prolongation of the accreditation term may be appealed against with an arbitration court.

**Article 189.78.** The Authority of the Bankruptcy Receiver

**1.** The bankruptcy receiver shall exercise the authority of the head of a credit organisation and of other managerial bodies of a credit organisation within the limits, in the procedure and under the terms which are established by this paragraph.

**2.** The bankruptcy receiver is bound to act fairly and reasonably subject to the rights and legitimate interests of creditors, a credit organisation, society and the state.

**3.** The bankruptcy receiver is bound:

1) to accept under control thereof the credit organisation's property and to hold an inventory thereof;

2) to notify the credit organisation's employees of forthcoming dismissal at the latest in a month from the date of starting bankruptcy proceedings;

3) to take measures aimed at ensuring the safekeeping of the credit organisation's property;

4) to raise against third persons that have debts with respect to the credit organisation

claims for their recovery in the procedure established by this paragraph;

5) to establish creditors' claims in the procedure provided for by Articles 189.85 and 189.86 of this Federal Law;

6) to keep a register of creditors' claims;

7) to take measures aimed at searching for, detection and return of the credit organisation's property held by third persons;

8) to transfer the documents made in the course of the credit organisation's activities for custody in the procedure established by federal laws and other regulatory legal acts in compliance with a list of documents made in the course of the credit organisation's activities to be endorsed by the federal executive power body authorized by the Government of the Russian Federation and the Bank of Russia, citing the time period for keeping the cited documents;

9) to discover the signs of intended and fictitious bankruptcy, as well as the circumstances punishable under Article 189.23 of this Federal Law;

10) to return clients' securities and other property accepted and/or acquired by a credit organisation exercising professional activities in the securities market on accounts of clients under custody contracts, trust management contracts, depository contracts and brokerage contracts in the procedure established by Article 189.33 of this Federal Law;

11) to discharge other duties established by federal law.

**4.** The bankruptcy receiver is entitled:

1) to dispose of the credit organisation's property in the procedure and under the terms established by this Federal Law;

2) to dismiss the credit organisation's employees, in particular the head of the credit organisation, to change the terms of labour contracts, to move employees to another job in the procedure and under the terms established by federal law.

3) to file an application in the procedure established by Item 4 of Article 136 of this Federal Law with a court for reducing the amount of claims of the head of the credit organisation, the chief accountant of the credit organisation, deputies thereof, the head of an affiliate or representative office of the credit organisation, deputies thereof and other credit organisation employees for labour remuneration, if within six months before the date of the provisional administration's appointment the labour remuneration of such persons was increased as compared to the rate of labour remuneration fixed before the start of the cited time period;

4) to declare the refusal thereof to execute contracts and other deals on the grounds established by Article 189.90 of this Federal Law and in the procedure established by Article 102 of this Federal Law;

5) to send applications for declaring invalid or for applying the effects of invalidity of void transactions made by the credit organisation, in particular in the procedure and on the grounds which are provided for by this Federal Law, for obtaining on demand the credit organisation's property held by third persons, for dissolution of contracts made by the credit organisation and for taking other actions aimed at the protection of the credit organisation's rights and legitimate interests and of those of its creditors provided for by federal law and other regulatory legal acts of the Russian Federation;

6) to engage accountants, auditors, appraisers and other specialists for accomplishing the tasks arising in connection with bankruptcy proceedings with their services to be paid for at the expense of the credit organisation's property;

7) to exercise other rights established by federal law which are connected with the exercise of the duties imposed thereupon.

**5.** Where there are the grounds established by federal law, the bankruptcy receiver shall raise claims against the third persons which under federal law bear subsidiary liability

under the credit organisation's liabilities.

**6.** The bankruptcy receiver is entitled to pay an advance to cover the outlays connected with the discharge of the duties imposed upon him out of its own assets with the subsequent reimbursement of these outlays from the credit organisation's property in the procedure established for the discharge of the credit organisation's current obligations in the course of bankruptcy proceedings.

**Article 189.79.** Control over the Activities of the Bankruptcy Receiver

**1.** The bankruptcy receiver is bound to present all the data concerning bankruptcy proceedings to an arbitration court on demand of the arbitration court, in particular a report on the activities thereof.

**2.** The bankruptcy receiver shall present a report on the activities thereof, information about the financial status of the credit organisation and about the property thereof as of the starting date of bankruptcy proceedings and in the course of bankruptcy proceedings to a meeting of creditors or, if the creditors' committee has been formed, to the creditors' committee, as well as other information at the latest once a month on condition that a meeting of creditors or the creditors' committee have not fixed a longer period or time for submitting the report.

A report of the bankruptcy receiver after its submission and consideration by a meeting of creditors or the creditors' committee shall be sent to the Bank of Russia.

**3.** A report of the bankruptcy receiver to be submitted to a meeting of creditors or the creditors' committee shall contain the following data:

1) on the formed bankruptcy estate, in particular on the progress and/or results of an inventory of the credit organisation's property, on the progress and/or results of evaluation of the credit organisation's property, if the appraiser has been engaged for evaluating its property;

2) on the amount of monetary assets that have come onto the credit organisation's key account and on the sources of these receipts;

3) on the progress in selling the credit organisation's property citing the data on the selling procedure, balance sheet value, its purchasers, as well as on the amounts received from the property's sale;

4) on the number and total amount of claims for collecting debts raised by the bankruptcy receiver against third persons;

5) on the measures adopted for the purpose of ensuring the safekeeping of the credit organisation's property, as well as of detecting and obtaining on demand the credit organisation's property held by third persons;

6) on the measures taken for the purpose of declaring the credit organisation's transactions invalid, as well as of declaring the refusal to execute the credit organisation's contracts;

7) on keeping a register of claims of creditors citing the total amount of claims of the creditors included into this register and the amounts of claims of creditors of each priority;

8) on the number of the credit organisation's employees continuing their activities in the course of bankruptcy proceedings, as well as on the number of the credit organisation's employees dismissed in the course of bankruptcy proceedings;

9) on the work involved in closing the credit organisation's accounts that has been carried out by the bankruptcy receiver and on the results thereof;

10) on the amount of outlays on carrying out bankruptcy proceedings citing their purpose;

11) on holding subsidiarily liable the third persons who in compliance with federal law are so liable under the credit organisation's obligations in connection with making it bankrupt;

12) other data on the progress in bankruptcy proceedings whose composition is to be defined by the bankruptcy receiver, as well as by the demands of a meeting of creditors, or the creditors' committee, or by an arbitration court.

**4.** The bankruptcy receiver shall submit accounting and statistical reports/statements of the credit organisation to the Bank of Russia on a monthly basis, as well as other information about the progress in bankruptcy proceedings at the request of the Bank of Russia in compliance with the list and in the procedure established by the Bank of Russia.

**5.** A report on making preliminary payments to first-priority creditors made in compliance with Article 189.94 of this Federal Law shall be submitted by the bankruptcy receiver to an arbitration court and the Bank of Russia.

**6.** The Bank of Russia is entitled to inspect the activities of the bankruptcy receiver in the instances and in the procedure which are established by regulatory acts of the Bank of Russia.

**7.** The Bank of Russia is entitled to send the bankruptcy receiver an order to remove violations of the normative legal acts regulating the relations connected with insolvency (bankruptcy) of credit organisations which are detected on the basis of data of the reports/statements presented by the bankruptcy receiver or in the course of inspecting the activities thereof.

**8.** A failure to execute an order of the Bank of Russia to remove the detected violations shall serve as grounds for cancellation of accreditation of the bankruptcy receiver accredited with the Bank of Russia. The decision of the Bank of Russia may be appealed against with an arbitration court within 10 days as from the date when it is adopted.

**9.** In the event of the Bank of Russia detecting violations when the authority of the bankruptcy receiver is exercised by the Agency, the latter is bound within 10 days as from the date of receiving an appropriate order of the Bank of Russia to take measures aimed at their removal and to notify the Bank of Russia about it.

**10.** The Agency's failure to execute an order of the Bank of Russia to remove violations shall serve as grounds for the Bank to Russia to file a complaint against the Agency's actions with the arbitration court trying a bankruptcy case.

**11.** On the basis of the results of considering the complaint cited in Item 10 of this article an arbitration court shall render one of the following decisions:

1) on satisfying the complaint for declaring the actions of the bankruptcy receiver unlawful and on instructing the bankruptcy receiver to remove the violation;

2) on relieving the Agency's representative off the office thereof;

3) on the complaint's rejection.

**12.** In the event of the Bank of Russia receiving a complaint of the creditors' committee against the bankruptcy receiver's actions or a petition for cancellation of the accreditation thereof, the Bank of Russia is bound within a 30-day term to consider the cited complaint or petition and to render a decision on the following:

1) to send the bankruptcy receiver an order to remove violations of the normative legal acts regulating the relations connected with insolvency (bankruptcy) of credit organisations;

2) to inspect the activities of the bankruptcy commissioner;

3) to cancel the accreditation thereof;

4) to declare the complaint as ill-founded.

**Article 189.80.** Dismissing the Bankruptcy Receiver Accredited with the Bank of
Russia from Discharging the Duties of the Bankruptcy Receiver

**1.** The bankruptcy receiver accredited with the Bank of Russia, in the event of him filing an application to be dismissed him from discharging the duties of the bankruptcy receiver and in other instances provided for by federal law may be dismissed by an arbitration court from

discharging the duties of the bankruptcy receiver.

**2.** In the event of dismissal of the bankruptcy receiver accredited with the Bank of Russia from discharging the duties of the bankruptcy receiver, an arbitration court shall concurrently appoint the Agency as the bankruptcy receiver in the procedure established by Item 3 of Article 189.68 of this Federal Law.

**3.** A ruling of an arbitration court on dismissing the bankruptcy receiver accredited with the Bank of Russia from discharging the duties of the bankruptcy receiver is subject to immediate execution and may be appealed against.

**Article 189.81.** Removing the Bankruptcy Receiver Accredited with the Bank of Russia or the Agency's Representative from Discharging the Duties of the Bankruptcy Receiver

**1.** The bankruptcy receiver accredited with the Bank of Russia may be removed by an arbitration court from discharging the duties of the bankruptcy receiver:

1) on the basis of a petition of a meeting of creditors or the creditors' committee in the event of failure to discharge or improper discharge of the bankruptcy receiver's duties;

2) in connection with an arbitration court allowing the complaint of a person participating in a bankruptcy case in connection with the bankruptcy receiver's failure to discharge or improper discharge of the duties thereof on condition that such failure to discharge or improper discharge has violated the rights and legitimate interests of the applicant that has filed the complaint or has entailed losses for the credit organisation or creditors thereof;

3) on the basis of a petition of a person participating in the bankruptcy case in the event of detecting circumstances impeding the endorsement of the bankruptcy receiver accredited with the Bank of Russia as such, as well as if such circumstances originated after endorsement of the bankruptcy receiver accredited with the Bank of Russia;

4) in the event of cancellation by the Bank of Russia of accreditation of the bankruptcy receiver accredited with the Bank of Russia.

**2.** Concurrently with removing the bankruptcy receiver accredited with the Bank of Russia from discharging the duties of the bankruptcy receiver, an arbitration court shall endorse the Agency as the bankruptcy receiver in the procedure established by Item 3 of Article 189.68 of this Federal Law.

**3.** The ruling of an arbitration court on removing the bankruptcy receiver from discharging the duties of the bankruptcy receiver is subject to immediate execution and may be appealed against.

**4.** The Agency's representative, while discharging the duties of a representative of the bankruptcy receiver, may be removed by an arbitration court from discharging the cited duties in connection with an arbitration court allowing the complaint of a person participating in a bankruptcy case against the failure of the Agency's representative to discharge or against improper discharge of the duties of a representative of the bankruptcy receiver on condition that such failure to discharge or improper discharge of the cited duties has violated the rights or legitimate interests of the applicant that filed the complaint or has entailed losses for the credit organisation or creditors thereof.

**5.** The ruling of an arbitration court on removing the Agency's representative from discharging the duties of a representative of the bankruptcy receiver is subject to immediate execution and may be appealed against.

**Article 189.82.** The Rights of Creditors in the Event of Bankruptcy of a Credit Organisation

**1.** Creditors of a credit organisation shall enjoy the rights provided for by this Federal

law subject to the specific established by this paragraph.

**2.** While conducting the bankruptcy proceedings, the legitimate interests of bankruptcy creditors and authorized bodies shall be represented by a meeting of creditors and/or the creditor's committee that shall act in compliance with this Federal Law, subject to the specifics established by this paragraph.

**3.** During decision making by a meeting of creditors, the votes of the bankruptcy creditors and authorised bodies whose claims are included into a register of creditors' claims as of the date of holding the meeting shall be taken into account.

**4.** The bankruptcy receiver, except when the credit organisation in respect of which the procedure for compulsory liquidation thereof has been conducted has been declared bankrupt, is entitled to call the first meeting of creditors after establishing, in compliance with Subitem 1 of Item 3, Items 4, 6 and 10-12 of Article 189.85 of this Federal Law, the claims made in compliance with Item 2 of Article 189.86 of this Federal Law but at the latest within 90 days from the date of publishing data on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings.

**5.** A meeting of creditors and/or the creditors' committee is entitled to file a complaint with the Bank of Russia against actions (failure to act) of the bankruptcy receiver and a petition for canceling accreditation of the bankruptcy receiver accredited with the Bank of Russia.

**6.** A creditor is entitled by sending a reasoned request to demand that the bankruptcy receiver present copies of the documents concerning the transactions provided for by Article 189.40 of this Federal Law and those made of an amount over one million roubles. Copies of the cited documents shall be made at the expense of the creditor.

**Article 189.83.** The Extent of Pecuniary Obligations and of the Duties for Making Mandatory Payments

**1.** For the purposes of this Federal Law, the extent of pecuniary obligations and of the duties to make mandatory payments of a credit organisation, except for the current obligations provided for by Article 189.84 of this Federal Law, shall be estimated as of the date of withdrawal of the credit organisation's licence for conducting banking operations, if not otherwise provided for by this Federal Law.

**2.** The extent of pecuniary obligations and of the duties to make mandatory payments shown in foreign currency shall be estimated in roubles at the exchange rate fixed by the Bank of Russia as of the date of withdrawal of the credit organisation's licence for conducting banking operations, except for the current obligations of the credit organisation.

**Article 189.84.** The Current Obligations of a Credit Organisation in the Course of Bankruptcy Proceedings

**1.** The current obligations of a credit organisation mean the following:

1) the duties of paying the debts formed before the date of withdrawal of the credit organisation's licence for conducting banking operations, of paying for the works carried out (the services rendered) which are connected with continuation of the credit organisation's functioning within the limits of the expenditure estimate endorsed in compliance with the Federal Law on Banks and Banking Activity.

2) the pecuniary obligations whose grounds originated within the time period from the date of withdrawal of the credit organisation's licence for conducting banking operations and up to the end date of bankruptcy proceedings, including the following:

obligations to cover the outlays connected with continuation of the credit organisation's functioning, including the labour remuneration of the persons working under a labour contract, making severance payments, paying compensation and making other payments to these

persons in the event of their dismissal, subject to the specifics established by this Federal Law;

obligations as to payment of remuneration to the bankruptcy receiver accredited with the Bank of Russia;

court costs of the credit organisation, outlays on entering data into the Unified Federal Register of Data on Bankruptcy and publication of these data provided for by this Federal Law, as well as other expenses connected with the conduct of bankruptcy proceedings that result from this Federal Law;

3) the duties of making mandatory payments originating as from the date of withdrawal of the credit organisation's licence for conducting banking operations and up to the starting date of bankruptcy proceedings, as well as the duties of making mandatory payments originating in the course of bankruptcy proceedings when paying labour remuneration to the credit organisation's employees;

4) the duties of deducting monetary assets from wages of the credit organisation's employees paid thereto in connection with discharging the duties cited in Subitem 1 of this item from the date of withdrawal of the credit organisation's licence for conducting banking operations and up to the end date of bankruptcy proceedings, as well as the duties of remittance of the amounts of such deductions in compliance with the legislation of the Russian Federation (alimony, personal income tax, trade-union dues and other payments imposed upon the employer in compliance with federal law).

2. The claims of employees of a credit organisation for severance pay, paying compensation and making other payments whose amount is fixed in compliance with a labour contract, in case of its termination in the part thereof exceeding the minimum rate of appropriate payments fixed by the labour legislation, shall not pertain to current obligations and shall be satisfied after allowing claims of the third-priority creditors provided for by Item 4 of Article 134 of this Federal Law.

3. For the purposes of this Federal Law, the duty of making mandatory payments shall originate as from the date of expiry of the time period (tax period) fixed for estimation of the amount of a mandatory payment to be paid in compliance with the legislation of the Russian Federation on taxes and fees.

4. The outlays of a credit organisation on the discharge of current obligations shall be included into the estimate of the credit organisation's current expenses and shall be made by the bankruptcy receiver on the basis of such estimate.

5. If not otherwise established by this article, the estimate of a credit organisation's current expenses shall be endorsed (amended) by the bankruptcy receiver.

6. The estimate of a credit organisation's current expenses as regards the outlays made after holding the first creditors' meeting is subject to endorsement (amending) by a meeting of creditors or, if a creditors' committee has been established, by the creditors' committee on the proposal of the bankruptcy receiver.

The estimate of current expenses of a credit organisation shall be presented for endorsement to the first meeting of creditors, or, if it has established a creditors' committee, to the creditors' committee at the latest within three days as from the date of its establishment. Should the meeting of creditors or the creditors' committee fail to endorse (refuse to endorse) the estimate of current expenses of a credit organisation, the meeting of creditors or the creditors' committee are entitled to file an application with an arbitration court for settling the differences between the bankruptcy receiver and the meeting of creditors or the creditors' committee. On the basis of the results of considering the cited differences, the arbitration court shall approve the estimate of current expenses of the credit organisation made after issuance of an appropriate judicial act.

7. The estimate of current expenses of a credit organisation endorsed by a meeting of

creditors or by a creditors' committee, or by an arbitration court in the procedure established by Item 6 of this article may be changed by a meeting of creditors or the creditors' committee at the proposal of the bankruptcy receiver or, if there are differences between them in respect of making amendments in the cited estimate, by an arbitration court in the procedure established by Item 6 of this article.

**8.** Pending the approval (amending) of the estimate of current expenses by a meeting of creditors or the creditors' committee or by an arbitration court in the procedure established by Items 6 and 7 of this article, the estimate of the credit organisation's current expenses endorsed (amended) by the bankruptcy receiver shall be in effect.

**9.** Claims under current obligations of a credit organisation are not subject to inclusion into a register of creditors' claims. The persons participating in a bankruptcy case shall not be recognized as creditors in respect of the current obligations of a credit organisation in the course of bankruptcy proceedings.

**10.** The creditors' claims under the current obligations of a credit organisation in the course of bankruptcy proceedings shall be satisfied in the procedure established by this paragraph.

**Article 189.85.** Fixing the Amount of Creditors' Claims

**1.** Creditors are entitled to raise their claims against a credit organisation at any stage of bankruptcy proceedings, as well as in the procedure established by Article 189.32 of this Federal Law, within the period while the provisional administration for managing the credit organisation is exercising its activities.

When raising claims, a creditor is bound to cite, along with the essence of the claims raised, data on himself, including the family name, first name and patronymic, date of birth, requisite elements of the document certifying the identity thereof and postal address for sending correspondence (if a natural person), or denomination, location (if a legal entity), as well as banking details (if any).

The cited claims shall be raised against the bankruptcy receiver attaching thereto effective decisions of a court of law or arbitration court, rulings on issuance of a writ of execution for compulsory execution of decisions of a tribunal of arbitrators or other judicial acts, as well as original documents or properly attested copies thereof proving the reasonableness of these claims.

**2.** For the purposes of bankruptcy proceedings, the bankruptcy receiver shall fix the time period for raising creditors' claims upon whose expiry a register of creditors' claims shall be deemed closed.

The time period for raising creditors' claims may not be less than 60 days from the date of publishing a report on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings.

To refer the claims received by the bankruptcy receiver to those which are raised in due time a notice of delivery or other documents proving the time of receipt of the cited claims by the bankruptcy receiver shall be taken into account.

**3.** Creditors' claims shall be deemed established if they:

1) are proved by an effective decision of a court of law, arbitration court, ruling on issuance of a writ of execution for enforcement of decisions of a tribunal of arbitrators or by some other judicial act in the absence of data on subsequent partial or full satisfaction or termination of such claims;

2) are defined by an arbitration court in the procedure established by Item 7 of this article;

3) are defined by the bankruptcy receiver in the procedure established by Items 4 and 6 of this article, as well as by Item 3 of Article 189.87 of this Federal Law;

4) are defined in the procedure established by Item 10 of this article.

**4.** The bankruptcy receiver shall consider a creditor's claim raised in the course of bankruptcy proceedings and on the basis of the results of its consideration, at the latest within 30 working days as from the date of receiving such claim, shall enter it to a register of creditors' claims, if the claim is well-founded. Within the same time period the bankruptcy receiver shall inform an appropriate creditor about the inclusion of the claim into the register of creditors' claims, or about the refusal to make such inclusion into the cited register, or about not including the claim into this register in full. In the event of including a creditor's claim into a register of creditors' claims, the appropriate notice to a creditor shall be cited data on the extent and composition of the claim against the credit organisation, as well as on the order of its satisfaction.

**5.** Objections as to the results of the bankruptcy receiver considering a creditor's claim made be declared with an arbitration court by a creditor at the latest within 15 calendar days from the date of the creditor receiving a notice of the bankruptcy receiver about the results of considering this claim. The cited objections may have attached thereto a notice of delivering copies of such objections or other documents to the bankruptcy receiver that prove the forwarding the bankruptcy receiver of copies of the objections and of the documents attached thereto.

**6.** Creditors' claims in respect of which objections are not declared at the time provided for by Item 5 of this article shall be deemed established in the amount, composition and order of satisfaction which are determined by the bankruptcy receiver.

**7.** The creditors' claims in respect of which objections are declared shall be considered by an arbitration court in the procedure established by Article 60 of this Federal Law.

On the basis of the results of such consideration an arbitration court shall issue a ruling on the inclusion or on the refusal to include the cited claims into a register of creditors' claims. The ruling of an arbitration court on the inclusion of such claims into a register of creditors' claims shall cite the extent and order of satisfaction of such claims.

A copy of a ruling on the inclusion or on the refusal to include the cited claims into a register of creditors' claims shall be sent to the person that has declared objections and to the bankruptcy receiver at the latest on the day following the date of issuance of an arbitration court's ruling.

A ruling of an arbitration court on the inclusion or on the refusal to include creditors' claims into a register of creditors' claims is subject to immediate execution and may be appealed against.

**8.** The creditor's claim established by an appropriate ruling of an arbitration court shall be included by the bankruptcy receiver into a register of creditors' claims at the latest on the day following the date of the bankruptcy receiver receiving a copy of the cited ruling; the creditor to be notified of this by the bankruptcy receiver within three days as from the date of making an appropriate entry in the register of creditors' claims.

**9.** The differences in respect of the claims of creditors or authorized bodies proved by an effective decision or other act of a court of law or an arbitration court as regards their composition and amount, are not subject to consideration by an arbitration court, while applications about such differences are subject to return, except for the differences connected with execution of judicial acts or with their review.

**10.** A creditor's claim raised by a credit organisation within the time period when the provisional administration for managing the credit organisation was exercising its activities and entered into the register of creditors' claims in the procedure established by Article 189.32 of this Federal Law shall be deemed established in the amount, composition and order of satisfaction which are determined by the provisional administration for managing the credit organisation, if within 60 working days as from the date of publishing a report on declaring the

credit organisation bankrupt and on initiating bankruptcy proceedings the bankruptcy receiver, subject to the provisions of Subitem 1 of Item 3 of this article, does not send the creditor a notice of the full or partial exclusion of the cited claim from the register of creditors' claims.

11. Objections to the content of the notice cited in Item 10 of this article may be declared by creditors and may be considered by an arbitration court in the procedure established by this article. The creditors' claims in respect of which the cited objections are not declared at the time provided for by Item 5 of this article shall be deemed established in the amount, composition and order of satisfaction which are determined by the bankruptcy receiver.

12. The creditors' claims raised against a credit organisation within the period when the provisional administration for managing the credit organisation was exercising its activities which are not considered by the provisional administration for managing the credit organisation as of the date of expiry of its authority in the procedure established by Items 11-17 of Article 189.32 of this Federal Law shall be deemed made on the date of publishing data on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings, and shall be considered (established) in the procedure set by this article. For this the bankruptcy receiver shall take the actions cited in Item 4 of this article within 60 days as from the date of publishing data on declaring the credit organisation bankrupt and on initiating bankruptcy proceedings.

13. The amount of pecuniary obligations resulting from financial agreements satisfying the requirements defined by Item 1 of Article 4.1 of this Federal Law shall be estimated in the procedure specified in the cited article.

**Article 189.85-1.** The Specifics of Holding a Meeting of Employees or Former Employees of a Credit Organisation and Electing a Representative of Employees

1. A meeting of employees or former employees of a credit organisation shall be held by the bankruptcy receiver in the procedure established by Article 12.1 of this Federal Law subject to the specifics provided for by this article.

2. A meeting of employees or former employees of a credit organisation shall be organised and held if the claims of the second-turn creditors are not satisfied.

3. The employees or former employees of a credit organisation whose claims for payment of severance benefits and/or labour wages to the persons who are working or have been working under a labour contract included into a register of creditors' claims are entitled to take part with the right of vote in a meeting of employees or former employees of the credit organisation.

4. A failure to hold a meeting of employees or former employees of a credit organisation shall not impede holding a meeting of creditors, if a meeting of employees or former employees has not been held for the reasons which are beyond control of the bankruptcy receiver, on condition that the bankruptcy receiver observes the procedure for its organisation and holding established by this Federal Law, subject to the specifics established by this article. The absence of a representative of employees of a credit organisation at a meeting of creditors shall not be a ground for declaring a meeting of creditors invalid.

5. Each employee or each former employee of a credit organisation shall have one vote at a meeting of creditors or former creditors of the credit organisation.

6. As a representative of employees of a credit organisation may be elected the person who is a person concerned with respect to the credit organisation.

7. A meeting of employees of a credit organisation is entitled to render the decision on payment for the services of a representative of the credit organisation's employees. The services of a representative of employees of a credit organisation may not be paid on account

of the debtor's property (bankruptcy estate).

8. The authority of a representative of a credit organisation's employees shall be terminated when the claims of the second-turn creditors are satisfied.

**Article 189.86.** Establishing the Extent of Creditors' Claims for the Purpose of Determining the Participants of a Meeting of Creditors

1. The extent of creditors' claims for the purpose of determining the participants of a meeting of creditors shall be established in the procedure established by Article 189.85 of this Federal Law.

2. For the purpose of participation in the first meeting of creditors, creditors are entitled to raise their claims against a credit organisation within 30 calendar days from the date of data being published on declaring the credit organisation bankrupt and on the initiation of bankruptcy proceedings, as well as in the procedure established by Article 189.32 of this Federal Law within the period of exercising activities by the provisional administration for managing the credit organisation. Upon the expiry of the cited time period a register of creditors' claims for the purpose of determining participants of the first meeting of creditors shall be deemed closed.

3. A creditor (a creditor's representative) whose claims are included into the register of creditors' claims on the basis of copies of the documents cited in Item 1 of Article 189.85 of this Federal Law shall be only admitted to participation in a meeting of creditors upon when producing the original documents proving the substantiation of these claims.

**Article 189.37.** A Register of Creditors' Claims

1. A register of creditors' claims shall be kept by the bankruptcy receiver. Subject to the specifics established by Item 10 of Article 189.85 of this Federal Law, the register shall comprise data from the register of creditors' claims drawn up by the provisional administration for managing the credit organisation in compliance with Article 189.32 of this Federal Law to be transferred to the bankruptcy receiver in the procedure established by Article 189.43 of this Federal Law.

2. If not otherwise established by this article, a creditor's claims shall be included by the bankruptcy receiver into a register of creditors' claims on the creditor's application in writing on the basis of an effective decision of a court of law, arbitration court or the ruling on issuance of a writ of execution for enforcement of decisions of a tribunal of arbitrators or other judicial act, as well as on the basis of other documents proving the reasonableness of these claims.

3. The creditors' claims under a bank deposit contract and/or bank account contract may be included by the bankruptcy receiver at the creditor's application in writing into a register of creditors' claims in the amount of the balance of monetary assets on the account which are due to the creditor on the basis of the data which are available to the credit organisation.

In compliance with the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation the claim of a creditor under a bank deposit contract and/or a bank account contract enjoying the right to receive an insurance compensation shall be included by the bankruptcy receiver into the register of creditors' claims in the amount of the balance of monetary assets on the account exceeding the amount of the insurance compensation due to the creditor.

The claims of the creditors with respect to which a credit organisation is liable for inflicting harm on their life and health, as well as the creditors' claims for severance pay and paying labour remuneration to the persons who are working or were working under a labour contract, may be included by the bankruptcy receiver into a register of creditors' claims without a creditor's application in writing on the basis of the data available to the credit

organisation.

In the event of inclusion into a register of creditors' claims of creditors' claims without an application in writing on the basis of the data available to a credit organisation, the bankruptcy receiver shall, within at most five working days as from the date of making an appropriate entry in the register of creditors' claims in the procedure established by Item 4 of Article 189.85 of this Federal Law, send a notice to the cited creditor.

Objections to the content of the cited notice may be declared by a creditor, as well as considered by an arbitration court in the procedure established by Article 189.85 of this Federal Law. The creditor's claims in respect of which objections are not declared at the time provided for by Item 5 of Article 189.85 of this Federal Law shall be deemed established in the amount, composition and order of satisfaction which are determined by the bankruptcy receiver.

4. A creditor's claim shall be excluded by the bankruptcy receiver from the register of creditors' claim on the basis of a ruling of an arbitration court, except as provided for by Items 10-12 of Article 189.85 of this Federal Law or if a creditor has presented consent in writing to having its claim excluded from the register of creditors' claims.

5. In a register of creditors' claims shall be cited data on each creditor, the extent of the claims thereof against the credit organisation, order of satisfaction of the claim of each creditor, as well as grounds for origination of a creditor's claim.

The bankruptcy receiver may also include other data which are significant for establishing the extent of creditors' claims, proportionate satisfaction of creditors' claims, as well as for exercising by creditors other rights provided for by this Federal Law into the register of creditor's claims.

6. A creditor whose claims are included into a register of creditors' claims is bound to notify the bankruptcy receiver in due time on changing the data cited in Item 1 of Article 189.85 of this Federal Law.

In the event of failure to present or untimely presentation of the cited data, the bankruptcy receiver and credit organisation shall not be held liable for losses in connection with this.

7. The bankruptcy receiver is bound to send a creditor (to a representative thereof) an extract from a register of creditors' claims about the extent, composition and order of satisfaction of these claims at the request of such creditor (of a representative of a creditor) within five working days as from the date of receiving such claim.

The outlays on sending such extract in the amount not exceeding the cost of the services of a postal communication office shall be covered by a creditor.

8. Labour disputes between a credit organisation and an employee of the credit organisation shall be considered in the procedure established by the labour legislation and the civil procedural legislation.

**Article 189.88.** Accounts of a Credit Organisation in the Course of Bankruptcy Proceedings

1. In the course of bankruptcy proceedings the bankruptcy receiver is bound to use solely one correspondent account of a credit organisation declared bankrupt for monetary assets in the currency of the Russian Federation, that is, the master account of the credit organisation to be opened with the Bank of Russia, as well as, depending on the number of kinds of foreign currency possessed by the credit organisation, the required number of accounts for monetary assets in foreign currency to be opened with other credit organisations in the procedure established by the Bank of Russia.

2. When the authority of the bankruptcy receiver is exercised by the Agency, the credit organisation's accounts in the course of bankruptcy proceedings shall be opened with the

Agency.

For the purpose of exercising the functions of the bankruptcy receiver, the Bank of Russia shall open for monetary assets in the currency of the Russian Federation for the Agency accounts.

3. The credit organisation's accounts opened with other credit organisations (including those detected in the course of bankruptcy proceedings), except for the accounts opened in connection with the exercise by a credit organisation of its professional activities in the securities market, and pledged accounts, are subject to closure as they are detected. The balance of a credit organisation's monetary assets shall be remitted from the cited accounts onto the credit organisation's accounts opened in the course of bankruptcy proceedings.

4. After the adoption by an arbitration court of the decision on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings the Bank of Russia, within 10 days as from the date of receiving an appropriate claim from the bankruptcy receiver, shall remit to the credit organisation's accounts opened in the course of bankruptcy proceedings the assets of mandatory reserves deposited by the credit organisation with the Bank of Russia, as well as the other monetary assets of the credit organisation placed with the Bank of Russia.

5. The monetary assets of a credit organisation received by it in the course of bankruptcy proceedings shall be entered onto the credit organisation's accounts opened in the course of bankruptcy proceedings.

6. Payments to creditors, current community charges and operational payments of a credit organisation, as well as other outlays connected with carrying out bankruptcy proceedings, shall be covered from the credit organisation's master account opened in the course of bankruptcy proceedings.

7. Information on spending by a credit organisation's monetary assets kept on the accounts thereof opened in the course of bankruptcy proceedings shall be supplied by the bankruptcy receiver to an arbitration court, the creditors' committee and the Bank of Russia at the request thereof but at most once a month.

**Article 189.89.** The Disposal of a Credit Organisation's Property in the Course of Bankruptcy Proceedings

1. After holding an inventory of a credit organisation's property the bankruptcy receiver shall start selling the credit organisation's property through public sales in the procedure and under the terms which are defined by this Federal Law, if a different procedure for disposal of the credit organisation's property is not established by this article.

2. The bankruptcy receiver whose functions are exercised by the Agency shall transfer the credit organisation's property (assets) and liabilities or a part thereof to the acquirer (acquirers) in the procedure established by this article with approbation of the Banking Supervision Committee of the Bank of Russia.

3. For the purpose of coordination of the transfer of a credit organisation's property (assets) and liabilities or of a part thereof to the acquirer (acquirers) the bankruptcy receiver shall send to the Bank of Russia a proposal that shall contain information about the composition of the credit organisation's property (assets) and liabilities, the results of appraising the property (assets) effected in compliance with the requirements of this article, as well as the substantiation of the expediency of transferring the property (assets) and liabilities.

4. Where it is proposed to transfer a credit organisation's property (assets) and liabilities in parts, the bankruptcy receiver's proposal cited in Item 3 of this article shall contain data on the composition of the credit organisation's property (assets) and liabilities in respect of each part to be transferred.

5. The extent of a credit organisation's liabilities to be transferred to the acquirer

(acquirers) shall be determined by the bankruptcy receiver on the basis of the data available to the credit organisation. The cost of the credit organisation's property (assets) and liabilities to be transferred to the acquirer (acquirers) shall be determined in compliance with a report of the appraiser engaged by the bankruptcy receiver and acting on a contractual basis.

**6.** The Banking Supervision Committee of the Bank of Russia shall render a decision on agreement with the bankruptcy receiver's proposal on transferring a credit organisation's property (assets) and liabilities or on the refusal to agree it at the latest in 10 working days from the date of receiving such proposal of the bankruptcy receiver and shall notify the bankruptcy receiver of the adopted decision at the latest in two working days from the date of adoption of an appropriate decision.

**7.** The Banking Supervision Committee of the Bank of Russia is entitled to deny agreement of the proposal of the bankruptcy receiver as to the transfer of a credit organisation's property (assets) and liabilities on the grounds established by a regulatory act of the Bank of Russia.

**8.** Within three working days as from the date of receiving a notice about the decision of the Banking Supervision Committee of the Bank of Russia in respect of agreement of the bankruptcy receiver's proposal to transfer a credit organisation's property (assets) and liabilities the bankruptcy receiver shall include data into the Unified Federal Register of Data on Bankruptcy on the selection of the acquirer (acquirers) of the credit organisation's property (assets) and liabilities, these containing a procedure for supplying data on the composition of the credit organisation's property (assets) and liabilities, on their value and methods of assessment.

**9.** Credit organisations holding a licence for accepting assets of natural persons for depositing are entitled to send the bankruptcy receiver an application for participation in the selection of the acquirer (acquirers) of a credit organisation's property (assets) and liabilities within 10 working days as from the date of inclusion of the data cited in Item 4 of this article into the Unified Federal Register of Data on Bankruptcy.

**10.** An application for participation in the selection of the acquirer (acquirers) of a credit organisation's property (assets) and liabilities shall contain a proposal to postpone the discharge of liabilities with respect to the Agency as to a creditor in respect of the liabilities that have passed over to the Agency as a result of the Agency paying out insurance compensation to the credit organisation's depositors. The cited delay may not exceed a year since the date of making an agreement on transfer to the acquirer of a credit organisation's property (assets) and liabilities.

**11.** The bankruptcy receiver shall send the received applications for participation in selection of the acquirer (acquirers) of a credit organisation's property (assets) and liabilities to the Banking Supervision Committee of the Bank of Russia.

**12.** The Banking Supervision Committee of the Bank of Russia has the right to deny approval of the acquirer (acquirers) of a credit organisation's property (assets) and liabilities on the grounds established by a regulatory act of the Bank of Russia.

**13.** In the event of transfer to the acquirer (acquirers) of a part of a credit organisation's liabilities, the liabilities of the creditors of the subsequent priority shall only be transferred after the complete transfer of liabilities of creditors of the previous priorities. Such order shall be determined in compliance with Article 189.92 of this Federal Law. A part of a credit organisation's liabilities of a single priority may not be transferred to the acquirer, if not otherwise established by this article.

**14.** A credit organisation's property (assets) and liabilities or a part thereof shall be transferred on the basis of the principles of fairness and reasonableness of the bankruptcy receiver's actions, the equivalence of the extent of the liabilities to be transferred to the value of the property (assets) to be transferred, protection of creditors' rights and legitimate

interests, including the minimization of their losses when they exercise the rights to have their legal claims against the credit organisation satisfied, priority order and proportionality of satisfying creditors' claims and equality of creditors of the same priority.

15. Creditors of a credit organisation shall be notified by the bankruptcy receiver of the forthcoming transfer to the acquirer of the credit organisation's property (assets) and liabilities or of a part thereof by way of sending a notice of transfer of the cited property (assets) and liabilities an official publication for publishing as well as by way of its inclusion into the Unified Federal Register of Data on Bankruptcy. Such notice is subject to publication at least a month before the intended date of transfer to the acquirer of the credit organisation's property (assets) and liabilities or of a part thereof. A notice of transfer to the acquirer of a credit organisation's property (assets) and liabilities or of a part thereof shall contain the following:

1) denomination of the credit organisation transferring the property (assets) and liabilities or a part thereof, its address and data identifying the credit organisation (the state registration number of an entry on the state registration of a legal entity, taxpayer identification number);

2) denomination of the credit organisation being the acquirer which the credit organisation's property (assets) and liabilities or a part thereof are to be transferred, its address and data identifying the credit organisation (the state registration number of an entry on the state registration of a legal entity, taxpayer identification number);

3) criteria for referring liabilities to the liabilities to be transferred to the acquirer;

4) procedure for the credit organisation's creditors receiving information on referring the liabilities relating to them to the liabilities to the transferred to the acquirer.

16. Within a month of the date of publication of a notice about transfer to the acquirer of a credit organisation's property (assets) and liabilities or of a part thereof the credit organisation's creditor is entitled to send to the credit organisation an application in writing about disagreeing with the transfer of the rights and liabilities under the agreement made by him with the credit organisation. As from the date of the bankruptcy receiver receiving the cited application the proportionate share of the property to be transferred shall be excluded by the bankruptcy receiver from the credit organisation's property to be transferred to the acquirer.

17. The claims of the credit organisation's creditor that has sent an application in writing about disagreeing with the transfer of the rights and liabilities under the agreement made by it with the credit organisation shall be satisfied in the order established by Article 189.92 of this Federal Law.

18. After the transfer of a credit organisation's property (assets) and liabilities or of a part thereof to the acquirer the latter is bound to discharge the received liabilities and/or the duties of making mandatory payments under the terms that existed on the date of withdrawal of the credit organisation's licence for conducting banking operations.

19. A credit organisation's property (assets) and liabilities or a part thereof shall be deemed transferred to the acquirer from the date of the signing of a transfer deed by the both parties. From that time the acquirer shall be held liable for the risk of accidental destruction or accidental damage of the property received by it. Concurrently with signing the transfer deed, the bankruptcy receiver shall send information on the transfer to the acquirer of the credit organisation's property and liabilities to an official publication for publishing and shall include the appropriate information into the Comprehensive Federal Register of Data on Bankruptcy. Such information shall contain the data cited in Item 15 of this article.

20. The property (assets) and liabilities of a credit organisation or the part thereof transferred to the acquirer (acquires) shall be excluded from the bankruptcy estate and from the register of creditors' claims of the credit organisation.

21. When selling the property of a credit organisation, the rights of claim under

contracts of loan, credit and factoring may be put out for tender as a single lot (sale of the credit portfolio of a credit organisation).

The property transferred by a credit organisation under leasing contracts may be also put out for tender as a single lot with simultaneous assignment of the right of claim under such contracts.

**22.** For the purpose of reduction of the time period for making settlements with creditors, the bankruptcy receiver is entitled to acquire the credit organisation's property that was not sold through repeated sales at the initial price fixed for repeated sales. The cited transaction shall be made in writing.

**23.** The securities possessed by a credit organisation that have been admitted for circulation in the organised securities market may be sold by way of organised trade or on the basis of a contract of purchase and sale made without holding tenders.

**24.** In the course of bankruptcy proceedings the replacement of a credit organisation's assets provided for by this Federal Law may not be effected.

**Article 189.90.** Declaring the Transactions Made by a Credit Organisation or by Other Person at Its Expense as Invalid and the Refusal of a Credit Organisation to Execute Agreements

**1.** A transaction made by a credit organisation or by some other person at its expense may be declared invalid by an arbitration court at the application of the bankruptcy receiver in the procedure and on the grounds provided for by this Federal Law, the Civil Code of the Russian Federation and other federal laws, subject to the specifics established by this paragraph. The rules provided for by Items 1-10 of Article 189.40 of this Federal Law shall apply to disputing such transactions.

**2.** The bankruptcy receiver of a credit organisation is entitled to deny execution of contracts and other transactions concluded by the credit organisation and not executed by it in full or in part in the procedure established by Article 102 of this Federal Law, if execution by the credit organisation of the cited transactions entails the infliction of losses on credit organisation, as compared to similar transactions made under comparable circumstances. In so doing, the refusal to execute the financial agreements satisfying the requirements of Item 1 of Article 4.1 of this Federal Law may be only declared in the procedure established by Item 6 of Article 102 of this Federal Law.

**3.** Where it is provided for by Item 2 of this article, an agreement made by a credit organisation shall be deemed dissolved as from the date of each party to the cited agreement receiving an application of the bankruptcy receiver about the refusal to execute the cited agreement.

A party to an agreement that has been made by a credit organisation and in respect of which the refusal to execute it has been declared is entitled to demand compensation from the credit organisation for the damage caused by the refusal to execute the cited agreement.

**Article 189.91.** The Bankruptcy Estate of a Credit Organisation

**1.** All the property of a credit organisation available as of the starting date of bankruptcy proceedings and detected in the course of bankruptcy proceedings shall make up the bankruptcy estate.

**2.** From the property of a credit organisation making up the bankruptcy estate shall be excluded the property constituting mortgage coverage in compliance with Item 4 of this article, securities and other property of the credit organisation's clients accepted and/or acquired by the credit organisation on their account under contracts of custody, contracts of trust management, deposit contracts, brokerage contracts and contracts of notary's deposit accounts, as well as other property to be excluded from the bankruptcy estate in compliance

with the legislation of the Russian Federation.

The property which is the subject of pledge shall be separately accounted for within the composition of a credit organisation's property and is subject to mandatory evaluation.

The pledge of rights under a bank account contract is not subject to mandatory evaluation.

3. If within the composition of a credit organisation's property there is property that pertains to socially important facilities in compliance with this Federal Law and housing stock intended for social use which are not includable into the bankruptcy estate in compliance with this Federal Law, the cited property shall be transferred (sold) by the bankruptcy receiver in the procedure and under the terms which are established by this Federal Law.

4. The property of a credit organisation issuing in compliance with the Federal Law on Mortgage Securities mortgage-covered bonds that makes up mortgage coverage shall be excluded from the bankruptcy estate, while creditors' claims under mortgage-covered bonds shall be satisfied in the procedure established by the cited Federal Law.

**Article 189.82.** The Order of Satisfying Creditors' Claims in the Course of Bankruptcy Proceedings

1. The obligations with respect to creditors of a credit organisation shall be discharged in the course of bankruptcy proceedings in the order established by this Federal Law, subject to the specifics set by this paragraph.

2. The current obligations of a credit organisation provided for by Article 189.84 of this Federal Law shall be discharged out of turn from the bankruptcy estate. The order of discharging the current obligations of a credit organisation shall be determined in compliance with Article 855 of the Civil Code of the Russian Federation.

3. The following claims shall be satisfied in the first priority:

1) claims of the natural persons in respect of whom a credit organisation is liable for inflicting harm on their life and health by way of capitalisation of appropriate periodical time payments;

2) claims of the natural persons who are creditors of a credit organisation under bank deposit contracts or bank account contracts made with them (except for persons engaged in business activities without forming a legal entity, if such accounts (deposits) are opened for exercising the business activities provided for by federal law, as well as of lawyers, notaries and other persons, if such accounts (deposits) are opened for exercising professional activities provided for by federal law, and for the persons cited in Item 6 of this article);

3) the Agency's claims under bank deposit contracts and bank account contracts that have passed over thereto in compliance with the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation and as a result of compensation instead of a bank to the acquirer of the cost of the property to be returned by way of reverse transfer in compliance with Article 189.55 of this Federal Law;

4) claims of the Bank of Russia that have passed over to the Bank of Russia in compliance with this Federal Law as a result of making payments of the Bank of Russia on deposits of natural persons made with banks declared bankrupt and not participating in the system of mandatory insurance of natural persons' deposits made with banks of the Russian Federation.

4. Creditors' claims under the obligations secured by pledge of a credit organisation's property shall be satisfied on account of the cost of the subject of pledge in preference to other creditors, except for the obligations with respect to first-priority and second-priority creditors.

The claims of a creditor secured by pledge of rights under a bank account contract

shall be satisfied by the bankruptcy receiver writing off monetary assets from the debtor's pledged account and their issuance to the creditor under the obligation secured by pledge of rights under the bank account contract or their entering onto the account cited by this creditor, less the monetary assets allocated for satisfying the claims of the first-priority and second-priority creditors.

5. After satisfying the claims of the first-priority and second-priority creditors, as well as the creditor's claims under the obligation secured by the pledge of rights under a bank account contract, the pledged account is subject to closure in compliance with the requirements of Item 3 of Article 189.88 of this Federal Law.

6. The claims of natural persons that are creditors of a credit organisation under bank deposit contracts and/or bank account contracts made with them, as to compensation of losses in the form of lost earnings and also payment of the amounts of financial sanctions, shall be included into the composition of the creditors' claims to be satisfied in the third priority.

7. The claims of a credit organisation's employees for severance pay, compensation and other payments whose amount is fixed by an appropriate labour contract, should it be terminated, in the part thereof exceeding the minimum rate of appropriate payments fixed by the labour legislation, shall not pertain to the claims of the second-priority creditors and shall be satisfied after satisfying the claims of third-priority creditors.

**Article 189.93.** The Discharge of a Credit Organisation's Obligations on Account of the Assets Provided by Its Founders (Participants) or a Third Person (Third Persons) in Bankruptcy Proceedings

1. The founders (participants) of a credit organisation or a third person (third persons) at any time starting from the date of declaring the credit organisation bankrupt and up to the completion of bankruptcy proceedings are entitled to provide the monetary assets which are sufficient for discharging the credit organisation's obligations in the procedure and under the terms which are provided for by this article.

2. The person intending to provide monetary assets to a credit organisation for discharging the obligations thereof (hereinafter referred to as an applicant) must file an application in writing about such intention (hereinafter referred to as an application about the intention) with the bankruptcy receiver, with an arbitration court and the Bank of Russia attaching thereto the proofs of remittance to the depository account of the arbitration court monetary assets in the amount of 10 million roubles. In an application about the intention shall be cited the applicant's postal address in the Russian Federation for forwarding correspondence thereto and the banking requisite elements of the applicant's account in roubles opened with a resident credit organisation in the Russian Federation.

Should an arbitration court receive several applications about the intention, such application shall be considered in the order of their coming to the arbitration court.

3. Within three working days as from the date of receiving an application about the intention the bankruptcy receiver shall include a report on receiving it into the Unified Federal Register of Data on Bankruptcy. As from the date of inclusion of the cited report into the Unified Federal Register of Data on Bankruptcy:

1) the discharge of the credit organisation's obligations with respect to the creditors whose claims are included into a register of creditors claims shall not be accepted from other persons

2) the bankruptcy receiver shall not make new settlements with the creditors whose claims are included into a register of creditors' claims on account of the bankruptcy estate;

3) the sale of the credit organisation's property shall be suspended;

4) the consideration of claims for declaring transactions invalid and for applying the

effects of their invalidity raised in the case on the credit organisation's bankruptcy shall be suspended;

5) the consideration of the claims provided for by Article 10 of this Federal Law and raised in the credit organisation's bankruptcy case shall be suspended.

**4.** The suspension of consideration of the claims provided for by Subitems 4 and 5 of Item 3 of this article shall not impede consideration by court of petitions for taking interim relief measures and raising such new claims whose consideration in case of their acceptance by court shall be also suspended.

In the event of raising a creditor's claim after the inclusion of the report provided for by Item 3 of this article into the Unified Federal Register of Data on Bankruptcy the consideration by the bankruptcy receiver or by an arbitration court of the cited claim shall be suspended, if as of the date of such inclusion a register of creditors' claims is closed or, if it is not closed, after the date of closing a register of creditors' claims. On application of a third-turn creditor or applicant an arbitration court is entitled to consider within the period of such suspension the issue of soundness of the reasons for the creditors' failure to make the claim thereof before the inclusion of the cited report into the Unified Federal Register of Data on Bankruptcy or before the closure of a register of creditors' claims, if it took place after the inclusion of the cited report into the Unified Federal Register of Data on Bankruptcy.

**5.** At the latest in 15 working days from the time of inclusion of the report provided for by Item 3 of this article into the Unified Federal Register of Data on Bankruptcy the bankruptcy receiver is bound to forward to an applicant and to an arbitration court a reference note about the amount as of the date of such inclusion of credit organisation's obligations:

1) which are current;

2) which are included into a register of creditors' claims;

3) in respect of which claims are raised by creditors but are not considered by the bankruptcy receiver or an arbitration court (hereinafter referred to a reference note about the amount of obligations).

**6.** In the event of inclusion into the Unified Federal Register of Data on Bankruptcy of the report provided for by Item 3 of this article, before the date of closure of a register of creditors' claims the bankruptcy receiver shall forward to an applicant and to an arbitration court a reference note about the amount of obligations within 15 working days as from the time of consideration of all the creditors' claims raised before the date of closure of a register of creditors' claims but at the latest two months from the date of closure of this register. The amount of obligations in the reference note on the amount of obligations shall be cited as of the date of its drawing up by the bankruptcy receiver.

**7.** To satisfy creditors' claims the bankruptcy receiver shall open with a credit organisation being a resident of the Russian Federation a separate special account of the credit organisation which is solely intended for satisfying the claims of the credit organisation's creditors in the procedure established by this article (hereinafter referred to as the credit organisation's special account). When the authority of the bankruptcy receiver is exercised by the Agency, the credit organisation's special account shall be opened with the Agency.

A procedure for opening the credit organisation's special account for making operations on it shall be established by the Bank of Russia,

The requisite elements of the credit organisation's special account shall be cited in a reference note about the amount of obligations.

Monetary assets shall only be written off the credit organisation's special account by order of the bankruptcy receiver or arbitration court in compliance with this article.

**8.** An applicant is bound to remit onto the credit organsiation's special account monetary assets in the amount of the claims cited in a reference note about the amount of obligations and provided for by Subitems 1 and 2 of Item 5 of this article.

An applicant is entitled to additionally remit monetary assets in the amount of the claims cited in a reference note about the amount of obligations and provided for by Subitem 3 of Item 5 of this article.

**9.** If within seven working days as from the date of receiving by an applicant a reference note about the amount of obligations five per cent of the amount provided for by Paragraph One of Item 8 of this article were not remitted onto the credit organisation's special account or within three months as from the date of receiving by an applicant a reference note about the amount of obligations the total amount provided for by Paragraph One of Item 8 of this article have not been remitted onto the credit organisation's special account, the discharge of the credit organisation's obligations by the applicant shall be deemed frustrated.

On such occasion, the bankruptcy receiver within five working days as from the date of expiry of the appropriate term provided for by Paragraph One of this item shall include into the Unified Federal Register of Data on Bankruptcy a report on declaring the discharge by the applicant of the credit organisation's obligations as frustrated, as well as shall forward a report on it to the applicant, arbitration court and the Bank of Russia. As from the date of such inclusion the effects provided for by Items 3 and 4 of this article shall be terminated.

Within five working days as from the date of such inclusion the bankruptcy receiver is bound to remit all the assets kept on the credit organisation's special account to the applicant onto the account specified in the application on the intention.

In the event of declaring the discharge by an applicant of the obligations of a credit organsiation as frustrated, the applicant is bound to compensate to the credit organisation and creditors for the losses connected with the suspension of bankruptcy proceedings, as well as to additionally pay to the credit organisation a fine in the amount of 10 million roubles. On account of payment of this fine an arbitration court, on an application of the bankruptcy receiver shall issue the ruling on remittance of the assets entered by the applicant from the arbitration court's depository account onto the credit organisation's credit account. The bankruptcy receiver is entitled to file with the arbitration court trying the case on the credit organisation's bankruptcy an application for recovery from the applicant of the losses connected with suspension of bankruptcy proceedings. The losses established by an arbitration court may be deducted from the assets entered by the applicant onto the arbitration court's depository account,

**10.** Within 14 working days as from the date of entering onto the credit organisation's special account the total amount provided for by Paragraph One of Item 8 of this article the bankruptcy receiver is bound to discharge on account of the monetary assets entered onto the credit organisation's special account the obligations provided for by Subitems 1 and 2 of Item 5 of this article subject to the order stipulated by Article 189.92 of this Federal Law.

If the assets for discharging the obligations provided for by Subitem 3 of Item 5 of this article were also entered onto the credit organisation's special account as of the date of entering thereupon the total amount provided for by Paragraph One of Item 8 of this article, the bankruptcy receiver at the cited time shall make settlements with creditors in respect of all these obligations.

When discharging obligations of a credit organisation on account of the assets kept on the credit organisation's special account, creditors are bound to accept the appropriate discharge of the obligations.

Where it is impossible to discharge obligations with respect to a creditor in connection with the creditor's failure to discharge the duties involved in presentation of the data on him which is necessary for making settlements with the creditor, as well as in the event of the creditor's evasion of accepting the discharge of the credit organisation's obligations, monetary assets shall be entered to the notary's deposit at the location of the credit organisation (of its branches).

Within 10 working days from the end date of discharge of obligations with respect to creditors in compliance with this item the bankruptcy receiver is bound to notify all creditors of the discharge of obligations with respect to them. The given notification may be effected by way of publishing a report in a periodical print at the location of a credit organisation (of its branches) and of inclusion of a report on it into the Unified Federal Register of Data on Bankruptcy.

**11.** At the latest in fourteen days from the end date of discharge of obligations in compliance with Item 10 of this article the bankruptcy receiver is bound to forward to an applicant, to an arbitration court and the Bank of Russia a report on the discharge of the credit organisation's obligations that has been effected.

**12.** The Bank of Russia on an applicant's petition within a month from the date of receiving a report on the discharge of the credit organisation's obligations that has been effected may render the decision on issuance to the credit organisation of the licence for making banking operations. With this, the right of the Bank of Russia for issuance to the cited credit organisation of the licence for making banking operations shall originate, if the following conditions are concurrently observed:

1) if the discharge of the credit organisation's obligations provided for by this article has been effected at the latest in six months from the date of withdrawal of the lilcence for making banking operations;

2) if an arbitration court has proved the discharge of all obligations of the credit organisation that originated as of the date of withdrawal of the licence for making banking operations;

3) if there are no creditors' claims raised after the inclusion into the Unified Federal Register of Data on Bankruptcy of a report on receiving an application about the intention;

4) if there is a reference note of an authorised body about the absence of of the credit organisation's debts on making mandatory payments;

5) if as of the time of consideration of the petition cited in Paragraph One of this item all the requirements for issuance of the licence for making banking operations made by the Bank of Russia in compliance with the Federal law on Banks and Banking Activity are satisfied.

**13.** The Bank of Russia shall notify an applicant, the bankruptcy receiver and arbitration court about the decision to issue to a credit organisation the licence for making banking operations adopted by the Bank of Russia within five working days as from the date of adoption of such decision.

**14.** In the event of adoption by the Bank of Russia of the decision to issue to a credit organisation the licence for making banking operations, a court shall issue the ruling on termination of proceedings in respect of the case on the credit organisation's bankruptcy on the basis of a petition of the Bank of Russia. On such occasion, the monetary assets remitted by an applicant onto the credit organisation's special account shall be deemed provided to the credit organisation under the conditions of an interest-free loan agreement whose term is determined by the time of demand but at the earliest on the date of termination of proceedings in respect of the case on the credit organisation's bankruptcy. The monetary assets remitted by an applicant onto the depository account of an arbitration court shall be remitted on an applicant's petition on the basis of a ruling of the arbitration court onto the account cited in the application on the intention.

**15.** Where it is impossible to issue to a credit organisation the licence for making banking operations or if the Bank of Russia does not take within a month the decision on issuance of the licence for making banking operations or refuses to issue the cited licence, the credit organisation is subject to immediate liquidation in the procedure established by this article. The bankruptcy receiver shall notify of it an applicant and arbitration court within three working days as from the date when the appropriate circumstances became known to him.

**16.** If applicants are not the founders (participants) of a credit organisation, the bankruptcy receiver concurrently with making the notification cited in Item 15 of this article shall notify the founders (participants) of the credit organisation that they enjoy the preemptive right to buy out the credit organisation's property. Such notification may be made by way of including a report into the Unified Federal Register of Data on Bankruptcy.

Within 30 working days from the date of forwarding the notice cited in Paragraph One of this item or of including a report into the Unified Federal Register of Data on Bankruptcy the credit organisation's founders (participants) are entitled to buy out the credit organisation's property having remitted to an applicant onto the account cited in the application about the intention the total amount of the applicant's monetary assets spent on discharging the credit organisation's obligations. The credit organisation's founders (participants) and the applicant are bound to notify the bankruptcy receiver about such remittance within a working day as from the date when the assets come onto the applicant's account.

If within the term cited in Paragraph Two of this item the required sum in total does not come onto the applicant's account, as well as if an applicant is a founder (participant) of a credit organisation, a court on the basis of an application of the bankruptcy receiver shall issue the ruling on completion of bankruptcy proceedings in respect of the credit organisation.

**17.** Where it is provided for by Paragraph Three of Item 16 of this article, as from the date of adoption of the ruling on completion of bankruptcy proceedings:

1) all the rights that the credit organisation had as of the cited date (in particular the right of ownership to movable and immovable property, as well as the right of claim), except for the rights which by virtue of law may not be transferred to other persons, shall be transferred to the applicant;

2) the credit organisation's current obligations which are not discharged as of the cited date shall transfer to the applicant;

3) the credit organisation's obligations which are not current and which are not discharged as of the cited date shall be terminated, except for the obligations provided for by Subitems 4 - 6 of this item;

4) the credit organisation's obligations which are not current, which are not discharged as of the cited date and which are made by the first-turn and second-turn creditors up to the date of adoption of the ruling on completion of bankruptcy proceedings shall transfer to the applicant;

5) the credit organisation's obligations which are not current, which are not discharged as of the cited date and which are made by third-turn creditors before the date of inclusion into the Unified Federal Register of Data on Bankruptcy of a report on receiving an application about the intention (if the register of creditors' claims was closed after the cited date, before the date of this register's closure) shall transfer to the applicant;

6) the credit organisation's obligations which are not current, which are not discharged as of the cited date and which are made by third-turn creditors after the inclusion into the Unified Federal Register of Data on Bankruptcy of a report on receiving an application about the intention (if the register of creditors' claims was closed after the cited date, after the date of this register's closure) and before the adoption of the ruling on completion of bankruptcy proceedings, if the reason for failure to make them before an appropriate date has been recognized by an arbitration court before the completion of bankruptcy proceedings as sound, shall transfer to the applicant.

**18.** In respect of the obligations, which are cited in Subitems 4 - 6 of Item 17 of this article and which are being considered by an arbitration court, the arbitration court shall point out in the ruling on completion of bankruptcy proceedings that each claim resulting from the cited obligations shall be considered within the framework of separate action proceedings of the same arbitration court with concurrent replacement of the defendant by an applicant. As

regards such separation, the ruling on completion of bankruptcy proceedings is subject to execution as from the date of inclusion into the comprehensive state register of legal entities of data on the state registration of the credit organisation in connection with its liquidation.

An applicant shall be liable with respect to the obligations that have passed over to him within the limits of the cost of the credit organisation's property that has passed over to it.

The monetary assets remitted by an applicant to the depository account of an arbitration court shall be remitted on application thereof on the basis of a ruling of the arbitration court onto the account cited in an application about the intention.

If not otherwise provided for by the agreement made by applicants, all the rights that have passed to them shall be possessed by them in the shares which are equal to the shares of the assets remitted by each of them in the total amount of the remitted assets. They shall become joint debtors in respect of all the obligations that have passed over to applicants.

Within 30 working days from the date of adoption of the ruling on completion of bankruptcy proceedings the bankruptcy receiver shall pass over to an applicant on the basis of a transfer deed all the credit organisation's property available to him.

If the transfer of individual rights to the property of a credit organisation is subject to state registration by virtue of law, such transfer shall be registered on the basis of an application filed by an applicant, the ruling of an arbitration court on completion of bankruptcy proceedings and the deed of transfer of the credit organisation's property signed by the bankruptcy receiver. An application of the credit organisation for the cited registration is not required.

**19.** If within the time period cited in Paragraph Two of Item 16 of this article the total amount which is required comes onto the applicant's account, an arbitration court on the basis of an application of the bankruptcy receiver shall issue the ruling on completion of bankruptcy proceedings in respect of the credit organisation.

On such occasion, the rules of Items 17 and 18 of this article shall apply; with this the applicant's rights and duties provided for by them shall be possessed by the credit organisation's founders (participants) that have remitted monetary assets onto the applicants' account and shall transfer to them.

The monetary assets remitted by an applicant onto the depository account of an arbitration court shall be remitted on application thereof on the basis of a ruling of an arbitration court onto the account cited in an application about the intention.

**20.** If the bankruptcy receiver of a credit organisation is the Agency, the reports provided for by this article shall be also inserted on the Agency's official Internet site.

**21.** Disputes between an applicant, bankruptcy receiver, creditors and founders (participants) of a credit organisation in connection with the discharge of obligations in the procedure established by this article are subject to consideration by the arbitration court trying the case on the credit organisation's bankruptcy.


**Article 189.94.** The Specifics of Satisfying the Claims of First-Priority Creditors

**1.** The claims of first-priority creditors shall be satisfied in two stages: by way of making preliminary payments and by way of making final payments. In so doing, by way of making preliminary payments the claims of first-priority creditors of the credit organisation which as of the date of withdrawal by the Bank of Russia of its licence for conducting banking operations were not participants of the system of mandatory deposits' insurance in compliance with the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation shall be satisfied.

**2.** By way of making final payments shall be satisfied the claims of the first-priority creditors that were not satisfied by way of making preliminary payments.

When making settlements with creditors of a credit organisation which as of the date of

withdrawal by the Bank of Russia of its licence for conducting banking operations was a participant of the system of mandatory deposit insurance in compliance with the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation, the claims of the creditors cited in Subitem 1 of Item 3 of Article 189.92 of this Federal Law, as well as the claims of the creditors cited in Subitem 2 of Item 3 of Article 189.92 of this Federal Law in the part thereof exceeding by at most 300 thousand roubles the amount of the insurance compensation provided for by the Federal Law on Insuring Deposits of Natural Persons Made with Banks of the Russian Federation, shall be satisfied prior to satisfying other claims of first-priority creditors.

3. The claims of first-priority creditors which are made in compliance with this Federal Law within a time period up to two months from the date of the first publication of a report on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings shall be satisfied by preliminary payments.

Preliminary payments to first-priority creditors shall start at the latest in 30 days from the date of expiry of the cited time period for making creditors' claims for the purpose of preliminary payments and at the earliest in 10 days from the date of publication of an announcement on the procedure for and terms of making preliminary payments to first-priority creditors and shall be made within three months from the starting date of making such payments.

4. 70 per cent of the monetary assets kept on a credit organisation's account as of the date of expiry of the time period for raising claims by first-priority creditors for the purpose of making preliminary payments shall be allocated for making preliminary payments to first-priority creditors.

Where there are not enough monetary assets for satisfying in full the claims of first-priority creditors, these monetary assets shall be distributed in proportion to the amounts of the claims to be satisfied.

5. A report on making preliminary payments to first-priority creditors shall be submitted by the bankruptcy receiver to an arbitration court and the Bank of Russia in the procedure established by the Bank of Russia at the latest in 10 days as from the date of expiry of the time period for making preliminary payments.

6. The sum of claims of first-priority creditors is subject to reduction by the amount paid to them by making preliminary payments and payments of the Bank of Russia made on deposits of natural persons opened with the banks declared bankrupt that do not participate in the system of mandatory insurance of natural persons' deposits made with banks of the Russian Federation and shall be shown in a register of creditors' claims of a credit organisation declared bankrupt.

7. The claims of first-priority creditors in the amount exceeding the amount of preliminary payments made, as well as the claims raised after the end of the time period for raising claims of first-priority creditors for the purpose of making preliminary payments, shall be satisfied by way of final payments subject to the rules provided for by Article 189.96 of this Federal Law.

8. The amount of claims of the citizens in respect of whom a credit organisation is held liable for inflicting harm on their life or health shall be determined by way of capitalization of appropriate time-based payments which are established as of the date of withdrawal of the credit organisation's licence for making banking operations and which are subject to making to these citizens before they attain the age of 70 years old but for at least 10 years. The procedure for and terms of capitalization of appropriate time-based payments shall be determined by the Government of the Russian Federation.

If the citizen's age exceeds 70 years old, the capitalisation period for appropriate time-based payments shall be 10 years.

**9.** After making capitalized time-based payments whose rate shall be fixed in the procedure established by Item 7 of this article the appropriate obligation of a credit organisation shall be terminated.

**10.** With a citizen's approbation the right of claim thereof against a credit organisation in the amount of capitalized time-based payments shall pass to the Russian Federation.

The cited claim in case of its transfer to the Russian Federation shall be also satisfied in the first priority.

On such occasion, the obligations of a credit organisation with respect to a citizen as to making capitalized time-based payments shall pass to the Russian Federation and shall be discharged by the Russian Federation in compliance with federal law in the procedure established by the Government of the Russian Federation.

**11.** Abrogated.

**Article 189.95.** The Specifics of Satisfying Creditors' Claims under Subordinated Credits

Creditors' claims concerning subordinated credits (deposits, loans, bonded loans), as well as financial sanctions for failure to discharge obligations under subordinated credits (deposits, loans, bonded loans), shall be satisfied after satisfying the claims of other creditors.

**Article 189.96.** Settlements Made with Creditors in the Course of Bankruptcy Proceedings

**1.** The bankruptcy receiver shall make settlements with creditors in compliance with a register of creditors' claims.

**2.** The settlements with creditors involved in satisfying the claims included into a register of creditors' claims on the basis of copies of the documents cited in Item 1 of Article 189.85 of this Federal Law shall be only made upon producing the original documents proving the reasonableness of these claims.

**3.** The persons enjoying in compliance with Article 189.93 of this Federal Law the right to discharge the obligations of a credit organisation shall make settlements with creditors in compliance with a register of creditors' claims.

**4.** The claims of creditors of each subsequent priority shall be satisfied after satisfying in full the claims of creditors of the previous priority.

**5.** Judicial acts, acts of other bodies and officials about levying execution against the monetary assets kept on accounts of a credit organisation's clients, as well as in respect of imposing arrest and other restrictions on the disposal of the cited property, shall be executed by the bankruptcy receiver in the amount of the monetary assets which are due to creditors of an appropriate priority in the procedure established by this paragraph.

The appropriate monetary assets shall be sent by the bankruptcy receiver for their remittance according to the requisite elements provided by the body or official engaged in levying execution or imposing restrictions as to the disposal of the monetary assets kept on accounts of a credit organisation's clients.

**6.** The bankruptcy receiver is bound to notify an appropriate creditor of a credit organisation about satisfaction of the claim of the body or official levying execution or imposing restrictions as to the disposal of the monetary assets kept on the clients' accounts of the credit organisation by forwarding a report thereto by registered mail with confirmation of delivery within five working days as from the date of the monetary assets' remittance.

**7.** If by the time of sending the Bank of Russia the liquidation balance sheet of a credit organisation by the body or official levying execution or imposing restrictions as to the disposal of the monetary assets kept on clients' accounts of the credit organisation the bankruptcy receiver has not been notified of the requisite elements for remittance of the monetary assets cited in this item, the bankruptcy receiver shall enter the monetary assets

due to the creditor on a notary's deposit account and shall notify the credit organisation's creditor and the cited person of this by way of registered mail with confirmation of delivery within five working days from the date of remittance of the monetary assets to the notary's deposit account.

8. In the event of a creditor's avoidance of accepting monetary assets, these monetary assets shall be entered by the bankruptcy receiver onto a notary's deposit account at the location of a credit organisation (of its affiliates), the creditor being notified of this.

9. Where there are not enough monetary assets of a credit organisation for satisfying the claims of creditors pertaining to a single priority, the monetary assets shall be distributed to the creditors of the appropriate priority in proportion to the amounts of their claims included into a register of creditors' claims.

10. Where there are not enough monetary assets of a credit organisation for satisfying the claims (a part of the claims) cited in paragraph 2 of Item 2 of Article 189.94 of this Federal Law, the monetary assets shall be distributed to creditors in proportion to the amounts of the appropriate claims (a part of the claims).

11. The creditors' claims raised after closing a register of creditors' claims shall be satisfied from the credit organisation's property left after satisfying the creditors' claims made in due time and included into the register of creditors' claims.

The settlements with creditors in respect of the cited claims shall be made by the bankruptcy receiver in the procedure established by this article.

12. The claims of first-priority creditors made after closing the register of creditors' claims but before completing settlements with all the creditors, after completing settlements with the first-priority creditors that have raised their claims in due time are subject to satisfaction before satisfying the claims of creditors of the subsequent priority. Pending the complete satisfaction of the cited claims of first-priority creditors, the satisfaction of claims of the creditors of the subsequent priority shall be suspended.

If the cited claims were raised before completing settlements with first-priority creditors, they are subject to satisfaction after completing settlements with the first-priority creditors that raised their claims in due time, if monetary assets for their satisfaction are available.

13. The claims of the first-priority creditors raised before closing a register of creditors' claims but established in the procedure provided for by Subitems 2-4 of Item 3 of Article 189.85 of this Federal Law accordingly are subject to satisfaction in the procedure established by Item 12 of this article:

1) before completing settlements with all the creditors but after completing settlements with the first-priority creditors whose claims were established before starting to make settlements with them;

2) before completing settlements with the first-priority creditors whose claims were established before starting settlements with them.

14. The claims of second-priority creditors made before completing settlements with all the creditors, in particular after closing a register of creditors' claims, are subject to satisfaction in a procedure which is similar to the procedure established by Item 12 of this article.

15. Where there are disputes between the bankruptcy receiver and creditors being considered by an arbitration court as of the starting date of making settlements with creditors of an appropriate priority, on demands of a creditor made before closing the register of creditors' claims the bankruptcy receiver is bound to reserve monetary assets in an amount which is sufficient for proportionate satisfaction of the claims of the relevant creditor.

16. If by the time of starting settlements with the Agency in respect of its claims the Agency and the acquirer of a bank's property and obligations have made an agreement under

which in compliance with Item 3 of Article 189.54 of this Federal Law the Agency is entitled instead of the bank to discharge the obligation thereof to compensate the acquirer the cost of the property returned by way of reverse transfer, the bankruptcy receiver is bound to reserve monetary assets in an amount sufficient for proportionate satisfaction of the Agency's claims, subject to the limit value of the cost of the property that may be returned by way of reverse transfer.

17. Satisfied creditors' claims and claims for the cancellation of which compensation has been provided to creditors in compliance with the agreement on release money made between the bankruptcy receiver and creditor (creditors) shall be deemed as cancelled.

18. The cancellation of creditors' claims by providing compensation shall only be allowed in respect of the credit organisation's property that has not been sold or transferred in the procedure established by Article 189.89 of this Federal Law.

19. Only the debtor's property which is not encumbered may be provided as compensation.

20. The cancellation of creditors' claims by providing compensation shall only be allowed on condition of observing the order and proportionality of satisfaction of creditors' claims.

21. The cancellation of creditors' claims by providing compensation shall be allowed by decision of a meeting of creditors or the creditors' committee. A meeting of creditors or the creditors' committee shall endorse the proposal of the bankruptcy receiver as to the procedure for providing compensation that shall contain data on the property's composition, its value, procedure for and time of creditors forwarding applications confirming their consent to cancellation of claims by way of providing compensation, a procedure for distribution of property to creditors, if several creditors lay claims for the same property, a procedure for making agreements on compensation.

22. The cost of the property offered for transfer to creditors as compensation shall be determined by a meeting of creditors or the creditors' committee.

23. For the purpose of transfer of the credit organisation's property to creditors of a credit organisation as compensation the bankruptcy receiver shall send to an appropriate creditor or creditors the proposal to cancel debts by way of providing compensation endorsed by a meeting of creditors or the creditors' committee.

24. If the number of creditors whose claims are not satisfied exceeds 50, the proper notification of creditors about the proposal to cancel their claims by way of providing compensation shall be deemed the inclusion of an appropriate proposal into the Unified Federal Register of Data on Bankruptcy within five working days as from the date of endorsement by a meeting of creditors or by the creditors' committee of the proposal of the bankruptcy receiver on providing compensation to the credit organisation's creditors.

25. Within the time period fixed by Item 24 of this article the bankruptcy receiver is bound to include the text of the proposal on cancellation of claims of the credit organisation's creditors by way of providing compensation into the Unified Federal Register of Data on Bankruptcy.

26. The proposal cited in Item 21 of this article shall contain the following:

1) the denomination and location of the credit organisation being the debtor, as well as other requisite elements thereof;

2) the denomination, the cost of the property offered for transfer to creditors as compensation to be estimated in compliance with this article, as well as other data on such property;

3) a procedure for allowing creditors to familiarise themselves with such property;

4) data on the bankruptcy receiver comprising the name (family name, first name, patronymic) and address of the bankruptcy receiver for sending correspondence thereto;

5) the time period for the credit organisation's creditors sending applications about their consent to cancellation of their claims by way of providing compensation that may not be less that 30 days as from the date of the bankruptcy receiver sending the proposal for cancellation of claims of the credit organisation's creditors by way of providing compensation or from the date of including the proposal to cancel claims of the credit organisation's creditors by way of providing compensation into the Unified Federal Register of Data on Bankruptcy.

**27.** The credit organisation's property shall be transferred as compensation to the creditors that have filed their applications with the bankruptcy receiver at the time fixed in the bankruptcy receiver's proposal.

**28.** An application of a creditor about the consent to cancellation of the claim thereof by way of providing compensation shall contain data on the property the creditor claims.

**29.** The creditor that has not sent an application to the bankruptcy receiver about the consent to cancellation of the claim thereof by way of providing compensation in due time and/or that has not cited data on the property shall be deemed as refusing to have the claim thereof cancelled by way of providing compensation.

**30.** The credit organisation's property provided as compensation shall be distributed to the creditors that have sent the bankruptcy receiver an application about the consent to have the claims thereof cancelled by way of proving compensation in the order established by Article 189.92 of this Federal Law in proportion to the amount of these creditors' claims to be cancelled by way of providing compensation.

**31.** It is not permissible to cancel creditors' claims by way of making an agreement on an obligation's novation, as well as by way of setting off claims in the course of bankruptcy proceedings in case of bankruptcy of credit organisations.

**32.** Creditors' claims which are not satisfied because of insufficiency of the debtor's property shall be deemed cancelled. Creditors' claims which are not recognised by the bankruptcy receiver shall be also deemed as cancelled, if a creditor has not applied to an arbitration court or if such claims are recognized by an arbitration court as ill-founded.

**33.** The bankruptcy receiver shall enter data on cancellation of creditors' claims into a register of creditors' claims.

**34.** Data on cancellation of creditors' claims of each priority shall be sent to the Bank of Russia at the latest in five day from the end date of making settlements with creditors of an appropriate priority.

**35.** In respect of the claims resulting from financial contracts for which the amount of obligations is estimated in the procedure established by Article 4.1 of this Federal Law the provisions of this article shall only apply insofar as creditors' claims in respect of net obligations are concerned.

**Article 189.97.** The Liability of a Third Person for Unlawful Receipt of a Credit Organisation's Property

**1.** A creditor whose claims have not been satisfied in full because of the insufficiency of a credit organisation's property shall enjoy the right of claim against a third person, in particular against another creditor that has unlawfully obtained the credit organisation's property.

**2.** A creditor whose claims have not been satisfied in full because of the insufficiency of a credit organisation's property is entitled to make a claim with a court of law, arbitration court or tribunal of arbitrators for obtainment on demand of the unlawfully received property of the credit organisation and for levying execution against the cited property in the amount of the claims which are not yet cancelled in the course of bankruptcy proceedings.

**3.** The unlawfulness of a third person obtaining the property of a credit organisation shall be established by a court of law, arbitration court or tribunal of arbitrators by declaring

invalid the transaction in pursuance of which the credit organisation's property was transferred to a third person and on other grounds established by the legislation of the Russian Federation.

4. In the event of a court of law, arbitration court or tribunal of arbitrators satisfying the claims made, the creditor whose claims have not been satisfied in full because of insufficiency of the credit organisation's property shall become the beneficiary with respect to the cited property, regardless of the grounds on which the third person's obtaining of the credit organisation's property is declared unlawful. In the absence of the cited property or on the basis of an application of a third person a court of law, arbitration court or tribunal of arbitrators has the right to satisfy this creditor's claims by recovering the appropriate amount without levying execution against the credit organisation's property.

5. The realization (sale) of the property against which execution has been levied shall be effected by way of its public sale in the procedure established by the procedural legislation.

6. The claims provided for by Item 1 of this article may be raised within 10 years from the end date of bankruptcy proceedings, irrespective of the grounds on which the aquisition by a third person of a credit organisation's property is deemed unlawful.

**Article 189.98.** The Interim Liquidation Balance Sheet and the Liquidation Balance Sheet

1. After compiling and closing a register of creditors' claims the bankruptcy receiver, within at most six months from the opening date of bankruptcy proceedings, shall draw up the interim liquidation balance sheet containing data on the composition of property of the credit organisation to be liquidated, a list of creditors' claims raised, as well as data on the preliminary payments made to first-priority creditors. The time period for compiling a register of creditors' claims and the time period for drawing up the interim liquidation balance sheet may be extended by an arbitration court on the basis of an application of the bankruptcy receiver.

2. The interim liquidation balance sheet and the liquidation balance sheet shall be drawn up in compliance with regulatory acts of the Bank of Russia and shall be presented to the Bank of Russia for approval. The time period for approval by the Bank of Russia of the interim liquidation balance sheet and the liquidation balance sheet may not exceed 30 days from the date of the Bank of Russia receiving the documents established by regulatory acts of the Bank of Russia.

**Article 189.99.** A Report of the Bankruptcy Receiver on the Results of Bankruptcy Proceedings

1. After completing settlements with creditors, approval of the liquidation balance sheet, as well as after terminating proceedings in respect of a bankruptcy case where it is provided for by Subitem 2 of Item 1 of Article 189.70 of this Federal Law, the bankruptcy receiver is bound to submit a report on the results of bankruptcy proceedings to an arbitration court.

2. The following shall be attached to a report of the bankruptcy receiver on the results of bankruptcy proceedings:

1) the liquidation balance sheet;

2) the documents proving the sale of the credit organisation's property and grounds for writing the property off;

3) a register of creditors' claims citing the amount of cancelled creditors' claims.

**Article 189.100.** Completing Bankruptcy Proceedings

1. After consideration by an arbitration court of a report of the bankruptcy receiver on

the results of bankruptcy proceedings an arbitration court shall issue a ruling on completion of the bankruptcy proceedings or, in the event of canceling creditors' claims in compliance with Item 14 of Article 189.93 of this Federal Law, a ruling on termination of proceedings in respect of a bankruptcy case to be send to the bankruptcy receiver and to the Bank of Russia.

2. The ruling on completion of bankruptcy proceedings and the ruling on termination of proceedings in respect of a bankruptcy case are subject to immediate execution.

3. In the event of issuance of the ruling on termination of proceedings in respect of a bankruptcy case, the decision of an arbitration court on declaring a credit organisation bankrupt and on initiating bankruptcy proceedings is not subject to execution.

4. The bankruptcy receiver, within a 30-day term from the date of issuance of the ruling on completion of bankruptcy proceedings, must present to the Bank of Russia the ruling of the arbitration court and other documents in compliance with the Federal Law on the State Registration of Legal Entities and Individual Businessmen and the Federal Law on Banks and Banking Activity.

5. Data on the state registration of a credit organisation in connection with its liquidation shall be entered into the unified state register of legal entities in the procedure established by the Federal Law on the State Registration of Legal Entities and Individual Businessmen, subject to the specifics of the cited registration established by the Federal Law on Banks and Banking Activity.

**Article 189.101.** The Transfer to the Founders (Stockholders) of a Credit Organisation of the Property Left after Completing Settlements with Creditors Thereof and Its Distribution to Them

1. The founder (stockholder) of a credit organisation declared bankrupt is entitled to receive the cost or a part of the credit organisation's property left after completing settlements with its creditors (hereinafter referred to as the remaining property) in the procedure established by this Federal Law.

The remaining property shall be transferred and distributed to the founders (stockholders) of a credit organisation in the order and in the procedure established by federal law, subject to the specifics provided for by this paragraph.

2. If a credit organisation has remaining property, the bankruptcy receiver, prior to forwarding the credit organisation's liquidation balancesheet to the Bank of Russia, shall send to the credit organisation's founders (stockholders) a notice about the right thereof to receive the remaining property or shall include into the Comprehensive Federal Register of Data on Bankruptcy an announcement about the availability of the remaining property to the credit organisation and about the right of its founders (stockholders) to receive the cited property.

3. An application of a founder (stockholder) of a credit organisation about the intent thereof to receive the remaining property shall be sent to the bankruptcy receiver within a month as from the date of sending thereto a notice about their right to receive the remaining property or of inclusion of the announcement in compliance with Item 2 of this article into the Unified Federal Register of Data on Bankruptcy.

4. An application of the founder (stockholder) of a credit organisation about the intent thereof to receive the remaining property shall be sent in writing and shall comprise the following:

1) data on the founder (stockholder) of the credit organisation;

2) family name, first name, patronymic, date of birth, requisite elements of the document certifying the identity thereof, postal address for sending correspondence, requisite elements of the bank account (if any) for remittance of monetary assets (if a natural person);

3) denomination, location, requisite elements of the banking account for remittance of monetary assets (if a legal entity);

4) indication that an applicant is the founder (stockholder) of the credit organisation and declaration of intent to receive the remaining property.

**5.** An application of the founder (stockholder) of a credit organisation about the intent thereof to receive the remaining property shall have attached thereto copies of documents which are properly attested and proving the right thereof to receive the remaining property.

**6.** The bankruptcy receiver shall consider an application of the founder (stockholder) of a credit organisation about the intent thereof to receive the remaining property within 10 working days from the date of receiving this application. On the basis of the results of considering the cited application the bankruptcy receiver shall send thereto a notice about the size of the share in the remaining property to be paid to the founder (stockholder) of the credit organisation. If as of the date of consideration of this application such person is not a founder (stockholder) of the credit organisation, the bankruptcy receiver shall send to such person a notice of the refusal to transfer the remaining property.

The remaining property may be transferred to the founders (stockholders) that have sent an application in compliance with Item 3 of this article for inclusion into the common shared property.

**7.** Objections of the founder (stockholder) of a credit organisation in respect of the refusal to transfer the remaining property thereto may be declared with an arbitration court within five working days from the date of the founder (stockholder) of the credit organisation receiving a notice of the bankruptcy receiver about the refusal to transfer the remaining property.

Objections of the founder (stockholder) of a credit organisation shall be considered by an arbitration court in the procedure established by Article 60 of this Federal Law.

**8.** Where it is impossible to transfer the remaining property in compliance with this article, the bankruptcy receiver shall dispose of it (except for rights of claim) in the procedure established by Article 148 of this Federal Law, subject to the specifics set by this article.

**9.** Where it is impossible to transfer the rights of claim in compliance with this article, the remaining rights of claim shall be written by the bankruptcy receiver off the balance sheet of the credit organisation.

**10.** If the claims of creditors of a credit organisation have not been satisfied in full and creditors have declared their refusal to accept the remaining property for cancellation of their claims that has been offered for sale but has not been sold in the course of bankruptcy proceedings and if there are no applications of the founders (stockholders) of the credit organisation about their intent to receive the remaining property, the bankruptcy receiver shall dispose of the remaining property in the procedure established by Article 148 of this Federal Law, subject to the specifics established by this article.

**Article 189.102.** Declaring Bankrupt a Credit Organisation Being Liquidated

**1.** If the cost of the property of a credit organisation in respect of which the decision on its liquidation has been adopted is insufficient for satisfying claims of the credit organisation's creditors, such credit organisation shall be liquidated in the procedure provided for by this paragraph.

**2.** In the event of detecting the circumstance provided for by Item 1 of this article, the right to file an application for declaring bankrupt a credit organisation being liquidated shall be enjoyed by the credit organisation's creditors and the Bank of Russia.

**3.** In the event of detecting the circumstance provided for by Item 1 of this article, the liquidation committee (liquidator) of the organisation being liquidated is bound within a 10-day term to file an application for declaring bankrupt the credit organisation being liquidated with an arbitration court.

**4.** An arbitration court shall start trying the case on declaring bankrupt a credit

organisation being liquidated on the basis of an application of the persons cited in Items 2 and 3 of this article at the latest in a month after issuance by the arbitration court of the ruling on acceptance of the cited application.

**Article 189.103.** The Specifics of Bankruptcy Proceedings at a Credit Organisation in Respect of Which Compulsory Liquidation Has Been Effected

**1.** After an arbitration court renders the decision on declaring bankrupt a credit organisation being liquidated and on initiating bankruptcy proceedings, proceedings in respect of the case on compulsory liquidation of the credit organisation are subject to termination and materials of the case on compulsory liquidation of the credit organisation are subject to attachment to the bankruptcy case-file of this credit organisation.

**2.** The bankruptcy receiver shall publish the data cited in Subitems 1-3, 6 and 7 of Item 2 of Article 189.74 of this Federal Law.

**3.** The bankruptcy receiver is entitled not to discharge the duties established by Article 189.78 of this Federal Law, if they were discharged in the course of the credit organisation's compulsory liquidation.

**4.** The meeting of creditors or the creditors' committee established in the course of compulsory liquidation of a credit organisation shall continue exercising their authority.

**Article 189.104.** The Specifics of Establishing the Extent of and of Satisfying Creditors' Claims after Declaring Bankrupt the Credit Organisation That Has Been Compulsorily Liquidated

**1.** Creditors' claims raised against a credit organisation in the course of its compulsory liquidation and included by the liquidator into the register of creditors' claims of the credit organisation shall be deemed established in the amount, composition and order of satisfaction which are determined by the liquidator in compliance with this Federal Law and shall be included into the register of creditors claims.

**2.** Within a month as from the date of publication of an announcement about declaring bankrupt a credit organisation being liquidated creditors are entitled to raise their claims against the credit organisation being liquidated in compliance with Article 189.85 of this Federal Law.

**3.** In the course of bankruptcy proceedings in respect of the case on bankruptcy of a credit organisation that has been compulsorily liquidated the claims of first-priority creditors shall be satisfied in the procedure established by Article 189.94 of this Federal Law, if not otherwise established by this article. Preliminary payments to first-priority creditors shall only be made if settlements with the cited creditors have not been made in the course of the credit organisation's liquidation. In so doing, the amount of payments of the Bank of Russia shall be fixed in compliance with the requirements of Federal Law No. 96-FZ of July 29, 2004 on Payments of the Bank of Russia on Deposits of Natural Persons Made with Banks Declared Bankrupt That Do Not Participate in the System of Mandatory Insurance of Deposits of Natural Persons Made with Banks of the Russian Federation, less the amounts of the payments made in the course of the credit organisation's compulsory liquidation.

**4.** Preliminary payments shall be made starting at the latest in 30 calendar day as from the date of the first publication of the announcement about declaring a credit organisation bankrupt and on initiating bankruptcy proceedings and at the earliest in 10 calendar days as from the date of publication of an announcement about a procedure for and terms of making preliminary payments to first-priority creditors and they shall be paid within three months as from the cited date.

**Article 189.105.** The Bankruptcy of a Missing Credit Organisation

**1.** If a credit organisation which is in debt has actually terminated its activities, is missing or if it is impossible to find its location or the location of its top-managers, an application for declaring such credit organisation bankrupt may be filed by the bankruptcy receiver, an authorised body, as well as by the Bank of Russia, regardless of the size of credit indebtedness thereof.

**2.** An arbitration court within a 30-day term as from the date of taking over an application for declaring a missing credit organisation bankrupt shall render the decision on declaring bankrupt the missing credit organisation being in debt and on initiation of bankruptcy proceedings. The Agency shall be endorsed as the bankruptcy receiver of a missing credit organisation being in debt.

No remuneration shall be granted to the Agency for exercising the authority of the bankruptcy receiver of a missing credit organisation being in debt.

**3.** The bankruptcy receiver shall notify in writing all the creditors of this credit organisation known to him about the bankruptcy of the missing credit organisation which within a 30-day term from the date of receiving the cited notice may raise their claims with the bankruptcy receiver.

**4.** On application of the bankruptcy receiver in case of it detects the property of a missing credit organisation being in debt an arbitration court may issue the ruling on termination of simplified bankruptcy proceedings and on transfer to the bankruptcy proceedings provided for by this paragraph.

**5.** The claims of creditors of a missing credit organisation being in debt shall be satisfied in the order provided for by Article 189.92 of this Federal Law. In so doing, court costs shall be covered the highest peiority.

**6.** The decision of an arbitration court on declaring bankrupt a missing credit organisation shall be sent to the Bank of Russia, as well as to the federal executive power body engaged in the state registration of legal entities for it to make an entry into the comprehensive state register of legal entities to the effect that the credit organisation is being liquidated.

### §5. The Bankruptcy of Strategic Enterprises and Organisations

**Article 190.** General Provisions on the Bankruptcy of Strategic Enterprises and Organisations

**1.** For the purposes of the present Federal Law "strategic enterprises and organisations" means the following:

the federal state unitary enterprises and public joint stock companies whose shares are in federal ownership and which pursue the production of products (works, services) of strategic significance for ensuring national defence and security and protecting the morals, health, rights and legal interests of citizens of the Russian Federation, as well as other organisations in the cases provided for by federal laws;

the organisations of the defence-industrial complex, i.e. production, scientific-production, scientific research, design and engineering, testing and other organisations carrying out the work of ensuring the completion of the state defence order.

**2.** A list of strategic enterprises and organisations, in particular, the organisations of the defence-industrial complex subject to the rules set out in this paragraph shall be approved by the Government of the Russian Federation and be subject to mandatory publication.

**3.** A strategic enterprise or organisation shall be deemed incapable of meeting creditors' claims related to monetary obligations, to payment of severance benefits and/or labour wages to the persons who are working or have been working under a labour contract, and/or perform the duty of making mandatory payments if these obligations and/or duties

have not been performed within six months after their due date.

**4.** For the purpose of initiating proceedings in the bankruptcy case in respect of a strategic enterprise or organisation, claims making up in their entirety at least 1,000,000 roubles shall be taken into account.

**Article 191.** Measures for Preventing the Bankruptcy of Strategic Enterprises and Organisations

For the purpose of preventing the bankruptcy of strategic enterprises and organisation, the Government of the Russian Federation shall do the following in accordance with the procedure established by a federal law and other regulatory legal acts of the Russian Federation:

organise the keeping of records and performing analysis of the financial state of strategic enterprises and organisations and the solvency thereof;

conduct the re-organisation of strategic enterprises and organisations;

settle the debts of the federal budget resulting from late payments for state defence orders owing strategic enterprises and organisations acting as contractors under state defence orders;

ensure the implementation of restructuring (principal debt and interest, penalties and fines) of the debts of strategic enterprises and organisations acting as contractors under state defence orders as owing the federal budget and state non-budget funds;

promote the achievement of an arrangement of strategic enterprises and organisations with creditors on restructuring their accounts payable, in particular, by means of providing state guarantees;

perform prejudicial rehabilitation of strategic enterprises and organisations in the manner established by the present Federal Law;

take other measures for preventing the bankruptcy of strategic enterprises and organisations.

**Article 192.** The Persons Deemed Party to the Case of Bankruptcy of a Strategic Enterprise or Organisation

The federal executive governmental body responsible for implementation of a comprehensive state policy in the sector of the economy where a specific strategic enterprise or organisation is pursuing its activity shall be deemed a party to the bankruptcy case of the strategic enterprise or organisation among the persons specified by Article 34 of the present Federal Law.

**Article 193.** The Qualified Receiver in the Case of Bankruptcy of a Strategic Enterprise or Organisation

Apart from the qualification standards for the qualified receiver nominee established by Articles 20 and 20.2 of the present Federal Law, the Government of the Russian Federation is entitled to establish a list of additional requirements which shall be binding in the case of approval by a court of arbitration of a qualified receiver nominee in the case of bankruptcy of a strategic enterprise or organisation.

**Article 194.** The Financial Rehabilitation of Strategic Enterprises and Organisations

**1.** If the first creditors' meeting has not adopted a decision to institute the proceedings applicable in a bankruptcy case in respect of the strategic enterprise or organisation and has not designated a self-regulating organisation to present qualified receiver nominees who

comply with the qualifications set by the creditors' meeting, the court of arbitration shall postpone the hearing of the case of bankruptcy of the strategic enterprise or organisation within the term established by Article 51 of the present Federal Law and it shall obligate the creditors to have adopted these decisions by the date set by the court of arbitration.

If the hearing of the case cannot be postponed within the term established by Article 51 of the present Federal Law the court of arbitration shall:

issue a ruling on instituting financial rehabilitation in respect of the strategic enterprise or organisation if a petition has been filed by the debtor's promoters (stockholders), the owner of property of the debtor (a unitary enterprise) an authorised state body, the federal executive governmental body responsible for the implementation of a comprehensive state policy in the sector of economy in which the strategic enterprise or organisation pursues its activity or a third person or third persons on the condition that the said persons provide security for the performance of the debtor's obligations, in particular, by means of providing state guarantees in compliance with a debt repayment schedule. The amount of the security so provided shall not be below the amount of the debtor's obligations recorded on the balance sheet as of the last accounting date preceding the first creditors' meeting. In this case the debt repayment schedule shall include a provision for commencement of debt repayment within one month after the arbitration court's ruling on the institution of financial rehabilitation and settlement of creditors' claims on a monthly basis in equal installments over the year from the date of commencement of repayment of creditors' claims;

issue a ruling on instituting external administration in respect of the strategic enterprise or organisation if no grounds exist for the institution of financial rehabilitation as envisaged by the present article in case when the court of arbitration has received a statement on the possibility of the debtor's solvency restoration during the external administration period from the federal executive governmental body responsible for the implementation of a comprehensive state policy in the sector of the economy in which the strategic enterprise or organisation pursues its activity;

if no grounds exist for instituting financial rehabilitation and external administration as envisaged by the present article the court of arbitration shall adopt a decision to declare the debtor bankrupt and commence winding-up proceedings.

**2.** If the first creditors' meeting adopted a decision to file a petition with the court of arbitration for instituting external administration or for declaring as bankrupt the debtor being a strategic enterprise or organisation and commencing winding-up proceedings the arbitration court may issue a ruling on the institution of financial rehabilitation on the condition that the debtor's promoters (stockholders), the owner of property of the debtor (unitary enterprise), an authorised state body, the federal executive governmental body responsible for the implementation of a comprehensive state policy in the sector of the economy in which the strategic enterprise or organisation pursues its activity, or a third person or third persons file a petition and provide security for the performance of the debtor's obligations, in particular, by means of providing state guarantees, under a debt repayment schedule. The amount of the security so provided shall not be below the amount of the debtor's obligations recorded on the balance sheet as of the last accounting date preceding the date of the first creditors' meeting. In this case the debt repayment schedule approved by the court of arbitration shall have a provision for the commencement of debt repayment within one month after the date of the arbitration court's ruling on the institution of financial rehabilitation and for repayment of creditors' claims on a monthly basis in equal instalments over the year after the date of the commencement of the settlement of creditors' claims.

Paragraph 2 is abrogated.

**Article 195.** The External Administration of a Strategic Enterprise or Organisation

**1.** The receiver shall send an external administration plan she/he has elaborated to the

federal executive governmental body responsible for the implementation of a comprehensive state policy in the sector of economy in which the strategic enterprise or organisation is pursuing its activity at least 15 days prior to the date when it is to be considered by a creditors' meeting.

2. The federal executive governmental body specified in Item 1 of the present article shall send to the creditors' meeting and to the court of arbitration a statement on the external administration plan that comprises an analysis of the measures set out in this plan as aimed at restoring the debtor's solvency during the external administration period.

3. The federal executive governmental body responsible for the implementation of a comprehensive state policy in the sector of economy in which the strategic enterprise or organisation is pursuing its activity shall be entitled to file a petition with the court of arbitration before the date of approval of the external administration plan for the strategic enterprise or organisation by the creditors' meeting for switching to financial rehabilitation if the debtor has not been subjected to financial rehabilitation before. The petition shall be accompanied with a debt repayment schedule and also with information on the security existing for the performance of the debtor's obligations, in particular, in the form of state guarantees under the debt repayment schedule. The amount of the security so provided shall not be below the amount of the debtors' obligations reflected on the balance sheet as of the last accounting date before the holding of the first creditors' meeting. In this case the debt repayment schedule approved by the court of arbitration shall include a provision for the commencement of debt repayment within one month after the date of the arbitration court's ruling on the institution of financial rehabilitation and for repayment of creditors' claims on a monthly basis in equal instalments over the year from the date of the commencement of creditors' claims settlement.

In this case the court of arbitration may issue a ruling on switching to financial rehabilitation.

4. The external administration plan for a strategic enterprise or organisation may have a provision for transactions not deemed the debtor's economic transactions as relating to:

the sale of the enterprise;

the alienation of or encumbrance on immovable property;

the disposal of other property of the debtor of which the balance sheet value makes up over five per cent of the balance sheet value of the debtor's assets determined on the basis of financial statement data as of the last accounting period;

the receipt and extension of loans (credits), the issuance of suretyships and guarantees, the assignment of rights of claim, debt assignment and also the institution of a trust administration in respect of the debtor's property;

the alienation and acquisition of shares and interest in economic partnerships and companies;

the conclusion of simple partnership agreements.

5. The receiver shall not refuse to perform the debtor's contracts relating to the performance of state defence order works and catering for federal state needs in the field of maintaining the national defence and security capabilities of the Russian Federation.

6. The receiver shall not be entitled to alienate the specific types of property, rights in rem and other rights included in the composition of the property complex of the debtor being a strategic enterprise or organisation intended for the pursuance of an activity connected to the performance of state defence order works, and catering for federal state needs in the field of maintaining national defence and security capabilities of the Russian Federation.

7. The sale of a debtor's enterprise intended for the pursuance of an activity relating to the performance of state defence order works, catering for federal state needs in the field of maintaining the national defence and security capabilities of the Russian Federation shall be

effected at a public sale in the form of a tender, except as otherwise established by the present article.

If the composition of the debtor's enterprise intended for the pursuance of an activity relating to the performance of state defence order works, catering for federal state needs in the field of maintaining the national defence and security capabilities of the Russian Federation, incorporates property deemed limited-alienability property, the sale of the enterprise shall only be effected at a closed sale in the form of a tender.

In the case of a sale at a closed sale of an enterprise or debtor's property deemed limited-alienability property, only the persons entitled to own or otherwise possess the said property in compliance with a federal law may take part in the sale.

The following obligations of the buyer shall be deemed the conditions sine qua non of the tender:

to ensure compliance with the intended purpose of the said debtor's property complex and mobilisation-purpose property;

to perform the debtor's contracts relating to the performance of state defence order works and catering for federal state needs in the field of maintaining the national defence and security capabilities of the Russian Federation.

**8.** In the case of sale of a debtor's enterprise being a strategic enterprise or organisation intended for the purpose of pursuing activity relating to the performance of state defence order works or catering for federal state needs in the field of maintaining the Russian Federation's national defence and security capabilities, the Russian Federation shall have a priority right to acquire this enterprise.

In the case of sale at a sale of an enterprise of the debtor being a strategic organisation not being a federal state unitary enterprise intended for the purpose of pursuing an activity relating to the performance of state defence order works or catering for federal state needs in the field of maintaining the Russian Federation's national defence and security capabilities, the Russian Federation shall be entitled, within one month after the date of signing the minutes on the results of the sale, to conclude a sale/purchase contract for the acquisition of this enterprise at the price set according to the results of the sale and recorded in the minutes on the results of the sale on the terms of the tender.

If within the said term the Russian Federation did not conclude a contract of sale/purchase, this contract shall be concluded with the winner in the sale determined in the minutes on the results of the sale.

The winner in the sale shall pay the selling price of the enterprise determined by the sale, within the term specified in the announcement of the sale, and it shall not exceed one month from the date of conclusion of the contract of purchase/sale.

Bankruptcy creditors and the affiliated persons thereof shall not be cleared for taking part in the sale.

**9.** In the case of sale at a sale of a debtor's enterprise being a strategic enterprise or a federal state unitary enterprise intended for the pursuance of activity relating to the performance of state defence order works, or catering for federal state needs in the field of maintaining the Russian Federation's national defence and security capabilities, the Russian Federation shall be entitled to provide funds to the debtor within one month after the signing of the minutes on the results of the sale, in an amount equal to the selling price of this enterprise set according to the results of the tender and specified in the minutes on the results of the sale. The said funds shall be used by the debtor to settle creditors' claims in compliance with the register of creditors' claims.

If within the said term the Russian Federation did not provide funds to the debtor in compliance with the present article, a contract of purchase/sale shall be concluded with the winner in the sale determined by the minutes on the results of the sale.

The winner in the sale shall pay the selling price of the enterprise set at the sale within the term specified in the announcement of the sale, such term not exceeding one month after the conclusion of the contract of purchase/sale.

In the case of sale at a sale in the form of a tender of a debtor's enterprise being a strategic enterprise or organisation intended for the purpose of pursuing activity relating to the performance of state defence order works or catering for federal state needs in the field of maintaining the Russian Federation's national defence and security capabilities the federal executive governmental body responsible for implementing a comprehensive state policy in the sector of the economy in which the strategic enterprise or organisation pursues its activity shall conclude an agreement on compliance with the terms of the tender with the buyer of this enterprise. If the debtor is in breach of or default on performance of the agreement on compliance with the terms of the tender this agreement and the contract for the purchase/sale of this debtor's enterprise shall be subject to rescission by a court of arbitration on the complaint of the said federal body. In the event of rescission by the court of arbitration of the said agreement and the contract of purchase/sale such a debtor's enterprise shall be subject to transfer into federal ownership in the manner established by a federal law.

### Article 196. Strategic Enterprises and Organisations Winding-Up Proceedings

**1.** The sale of a debtor's enterprise being a strategic enterprise or organisation shall be effected in the manner envisaged by Items 7-9 of Article 195 of the present Federal Law.

The sale of the property, rights in rem and other rights not incorporated in the debtor's property complex intended for the purpose of pursuing an activity relating to the performance of state defence order works or catering for federal state needs in the field of maintaining the Russian Federation's national defence and security capabilities may be effected in the manner set out in Article 111 of the present Federal Law.

**2.** If the debtor's property incorporates a property exempt from alienation, the winding-up receiver shall notify the owner of the property exempt from alienation.

The owner of the property exempt from alienation shall accept this property from the winding-up receiver or shall attach it to other persons within six months after the receipt of the notice.

### §6. The Bankruptcy of Natural Monopoly Entities

### Article 197. General Provisions on the Bankruptcy of Natural Monopoly Entities

**1.** For the purposes of the present Federal Law "natural monopoly entity" means an organisation pursuing production and/or sale of goods (works, services) in a natural monopoly environment.

**2.** The natural monopoly entity shall be deemed incapable of meeting creditors' claims relating to monetary obligations, to payment of severance benefits and/or labour wages to the persons who are working or have been working under a labour contract, and/or execute its duty to make mandatory payments if these obligations and/or duties have not been performed by it within six months after their due date.

**3.** A bankruptcy case may be initiated by a court of arbitration if the creditors' claims relating to monetary obligations, to payment of severance benefits and/or labour wages to the persons who are working or have been working under a labour contract, and mandatory payments in respect of a debtor being a natural monopoly make up in their entirety at least 1,000,000 roubles. The said claims shall be confirmed by a writ of execution and shall not have been fully settled by means of levying execution on the property of the debtor indicated in Items 1 - 3 of the First Part of Article 94 of the Federal Law on Execution Proceeding.

**Article 198.** A Person Deemed Party to a Case of Bankruptcy of a Natural Monopoly
Entity

Like the persons specified by the present Federal Law, the federal executive body authorised by the Government of the Russian Federation to pursue state policy in respect of a specific natural monopoly entity shall be deemed party to the case of bankruptcy of a debtor being a natural monopoly entity.

**Article 199.** Considering the Case of Bankruptcy of a Natural Monopoly Entity

**1.** If prior to the acceptance of an application for declaring a debtor bankrupt, a debtor being a natural monopoly entity filed a complaint with a court claiming declaration as invalid governmental bodies' acts on approval of prices (tariffs) for the goods (works, services) produced and/or sold in a natural monopoly environment, the implementing a proceeding in the bankruptcy case of such a debtor shall be suspended until the entry into force of a decision on the case of declaration as invalid these acts of governmental bodies.

**2.** The court of arbitration may decide to refuse to declare the debtor being a natural monopoly bankrupt if the relevant acts of the governmental bodies have been declared invalid in as much as they concerned the approval of prices (tariffs) for the goods (works, services) produced and/or sold in a natural monopoly environment.

**Article 200.** External Administration of a Natural Monopoly Entity

**1.** A receiver is not entitled to refuse to perform the debtor's contracts for the benefit of consumers in respect of which termination of obligations of relevant natural monopoly entities is prohibited by federal laws and other regulatory legal acts.

**2.** The receiver is not entitled to alienate the debtor's property being a single technological complex of a natural monopoly entity. This property includes movable and immovable and other property directly used for the production and/or sale of goods (works, services) in a natural monopoly environment as well as the stocks of expendable raw materials and materials used for performing the contracts related to the debtor's activity as a natural monopoly entity.

**Article 201.** Sale of the Property of a Debtor Being a Natural Monopoly Entity

**1.** When the proceedings applicable in a bankruptcy case are implemented the conditions specified in Item 2 of the present article shall be established as a condition sine qua non for the contract of purchase/sale of the property of the debtor being a natural monopoly entity which is directly used for the production and/or sale of goods (works, services) under natural monopoly conditions.

The debtor's property directly used for the production and/or sale of goods (works, services) under natural monopoly conditions shall be put up for sale as a single lot.

**2.** Below are the conditions sine qua non for the purchase/sale of property of a debtor being a natural monopoly entity:

the buyer's consent to assume the debtor's obligations under contracts of delivery of goods being the subject matter of regulation by the legislation on natural monopolies;

the assumption by the buyer of the obligation to ensure access to goods (works, services) produced and/or sold for consumers;

the presence of a licence of the pursuance of a relevant type of activity, if the debtor's activity is subject to licensing.

When the debtor's property directly used for the production and/or sale of goods

(works, services) under natural monopoly conditions is offered for sale by tender the federal executive governmental body authorised by the Government of the Russian Federation to pursue state policy in respect of natural monopoly entities shall conclude an agreement on compliance with the terms of the tender with the buyer of the said debtors' property.

**3.** If the buyer of the debtor's property directly used for the production and/or sale of goods (works, services) under natural monopoly conditions is in breach of the terms set out in Item 2 of the present article the contract shall be subject to rescission by a court of arbitration on an application of the relevant federal executive governmental body.

When a contract is rescinded, the buyer of the property shall be reimbursed for the funds spent to buy property and effect investment in past investment periods. In the case of rescission of a contract, the property shall be transferred into federal ownership.

**4.** In the event of sale of a property directly used for the production and/or sale of goods (works, services) under natural monopoly conditions, the Russian Federation, the Russian regions and municipal entities as represented by relevant authorised bodies shall have a priority right to acquire the property offered for sale in the manner specified in Items 8 and 9 of Article 195 of the present Federal Law.

**5.** The Russian Federation, the Russian regions and municipal entities as represented by the relevant authorised bodies shall be entitled to suspend the sale of property directly used for the production and/or sale of goods (works, services) under natural monopoly conditions during external administration for a term not exceeding three months for the purpose of elaboration of proposals for restoring the solvency of the natural monopoly entity.

**6.** Changing the specialisation of or closing down a production facility (production facilities) pursuing the production (sale) of goods (works, services) under natural monopoly conditions shall be permitted in the manner established by federal law.

## § 7. The Bankruptcy of Developers

**Article 201.1.** General Provisions

**1.** The following notions are used for the purposes of the present paragraph:

1) **"person raising funds and/or property of participants in construction (hereinafter referred to as "developer")"** meaning a legal entity, irrespective of the organisational legal form thereof, for instance a housing construction cooperative or an individual entrepreneur, in respect of which there are claims for the transfer of dwelling premises or monetary claims;

2) **"participant in construction"** meaning a natural person, a legal entity, the Russian Federation, a subject of the Russian Federation or a municipal formation that has a claim for dwelling premises or a monetary claim addressed to a developer;

3) **"claim for transfer of dwelling premises"** meaning a claim of a participant in construction for the transfer into his ownership of dwelling premises (an apartment or a room) thereto under an onerous contract in a block of flats which had not been commissioned as of the time when the funds and/or other property of the participant in construction were raised (hereinafter referred to as "contract for transfer of dwelling premises");

4) **"monetary claim"** meaning a claim of a participant in construction for:

refund of the amount of money paid before the rescission of a contract for transfer of dwelling premises and/or funds in the amount of value of the property that had been transferred to the developer before the rescission of such contract;

compensation for losses in the form of a real damage caused by a breach of the developer's obligation to transfer the dwelling premises under a contract envisaging the transfer of the dwelling premises;

refund of the amounts of money paid under a contract which is deemed invalid by a

court or an arbitration court and envisages the transfer of dwelling premises and/or funds in the amount of the value of the property that has been transferred to the developer under such contract;

refund of the funds paid under a contract which is deemed non-concluded by a court or an arbitration court and envisaged the transfer of residential premises and/or funds in the amount of the value of the property that has been transferred to the developer under such contract;

5) **"construction project"** meaning a block of flats in respect of which a participant in construction has a claim for transfer of dwelling premises or had had that claim before the rescission of a contract envisaging the transfer of the dwelling premises, for instance a block of flats under construction (hereinafter referred to as "construction-in-process project");

6) **"land plot"** meaning a land plot which is already developed or is to be developed and on which a construction project site is located or is going to be built;

7) **"register of claims for the transfer of dwelling premises"** meaning a register containing claims -- deemed by an arbitration court as substantiated -- for transfer of dwelling premises.

**2.** The rules established by the present paragraph are applicable irrespective of the developer's having a land plot by the right of ownership, lease or sublease, and also irrespective of the developer's having the right of ownership or another property right in respect of the constructed facility.

**3.** The debtor shall provide information that it is a developer or if the bankruptcy creditor or the empowered body know it they shall also provide such information in their application for deeming the debtor bankrupt.

In this case the arbitration court in its ruling on accepting the application for deeming the debtor bankrupt shall refer to the applicability of the present paragraph in the debtor's bankruptcy. Information on the acceptance of the application for deeming the debtor bankrupt shall be published in the procedure established by Article 28 of the present Federal Law.

If the arbitration court learns about the debtor's being a developer after the commencement of the bankruptcy case the arbitration court shall issue the following on a petition of a person taking part in the bankruptcy case or on its own initiative: a ruling on the applicability of the rules of the present paragraph in the bankruptcy of the debtor. The information contained in said ruling shall be published in the procedure established by Article 28 of the present Federal Law. The ruling can be appealed against.

**4.** On a petition of a person taking part in the bankruptcy case the arbitration court is entitled to refer the case of the developer's bankruptcy to the arbitration court at the location of the construction project site or the land plot or at the place of residence or the whereabouts of the majority of the participants in the construction project for being heard by it, if the arbitration court has established that such referral is conducive to a more effective protection of the rights of participants in the construction project.

Information about the referral of the case of the developer's bankruptcy to another arbitration court for its being heard by it in accordance with Paragraph 1 of the present item shall be published in the procedure established by Article 28 of the present Federal Law.

**5.** While considering the existence of a good reason for the claims of participants in the construction project the arbitration court shall establish if there exist claims for the transfer of dwelling premises or monetary claims, for instance by means of recognising as fictitious the transactions concluded by participants in the construction project with the developer and/or the third persons acting in its interests.

If third persons are involved in such transactions they shall be made to take part in the arbitration litigation in case of the developer's bankruptcy when the issues specified in

Paragraph 1 of the present item are being considered.

**6.** The arbitration court is entitled to recognise that a participant in the construction project has a claim for transfer of dwelling premises or a monetary claim, inter alia, in the following cases:

1) a contract of participation in shared construction project has been concluded;

2) a contract of purchase/sale of the dwelling premises in the constructed facility has been concluded;

3) a preliminary contract of participation in the shared construction project or a preliminary contract of purchase/sale of the dwelling premises in the constructed facility has been concluded;

4) a contract of loan has been concluded under which obligations concerning the refund of the sum of the loan are terminated by the transfer into ownership of the dwelling premises in the block of flats after the completion of its construction;

5) an amount of money and/or another property has been delivered as a contribution in the contributed capital of a limited partnership (partnership in commendam) as involving the subsequent transfer of the dwelling premises in the block of flats into ownership after its construction was completed;

6) a contract of ordinary partnership has been concluded for the purpose of building the block of flats as involving the subsequent transfer of the dwelling premises in such block of flats into ownership;

7) a promissory note has been issued for the purpose of being later on used to make payment for the dwelling premises in the block of flats;

8) an amount of money has been delivered to a housing construction cooperative for the purposes of participation in the construction of the block of flats;

9) other transactions have been concluded as involving the transfer of amounts of money and/or other property for the purposes of constructing the block of flats and the subsequent transfer of the dwelling premises in such block of flats into ownership.

**7.** Starting from the date on which receivership is instituted in respect of the developer, the debtor may conclude contracts -- exclusively with the consent of the interim receiver expressed in writing -- that envisage the transfer of dwelling premises, and agreements on amending or rescinding such contracts and also may conclude other transactions in respect of immovable property, for instance land plots.

**8.** A ruling on instituting of receivership in respect of the developer shall be sent by the arbitration court to the bodies responsible for the state registration of rights in respect of immovable property and of transactions in such property at the location of the developer's land plots.

**9.** A decision of a meeting of creditors on conclusion of an amicable agreement in the case of the developer's bankruptcy shall be adopted by the majority of the total number of votes of the bankruptcy creditors and empowered bodies in accordance with the register of creditors' claims, and it shall be deemed adopted if all the creditors relating to the obligations secured with the mortgage of the debtor's property have voted for it and also at least three quarters of the votes of participants in the construction project did so.

**Article 201.2.** The Persons Taking Part in the Case of the Developer's Bankruptcy

**1.** Apart from the persons envisaged by Article 34 of the present Federal Law the following are deemed persons taking part in the case of the developer's bankruptcy: the participants in the construction project having claims for transfer of dwelling premises and also the empowered executive governmental body of a subject of the Russian Federation exercising control and supervision in the area of shared construction of blocks of flats and/or other pieces of immovable property on the site.

**2.** The rulings envisaged by Paragraphs 2 and 3 of Item 3 of Article 201.1 of the present Federal Law shall be sent by the arbitration court to the governmental body specified in Item 1 of the present article.

**Article 201.3.** The Details of Taking Measures for Securing the Creditors' Claims and the Debtor's Interests

**1.** On a petition of an applicant or another person taking part in the case of the debtor's bankruptcy the arbitration court is entitled to take the following measures for securing the creditors' claims and the debtor's interests (security measures) apart from the measures envisaged by the Arbitration Procedural Code of the Russian Federation and the present Federal Law: a ban on the lessor's concluding a contract of lease of a land plot with a person other than the developer and a ban on the state registration of such contract of lease and also a ban on the lessor's otherwise disposing the given land plot.

The arbitration court shall notify the body responsible for the state registration of rights to immovable property and or transactions in such property at the location of the land plot of the security measures taken as a ban on the state registration of a contract of lease in respect of said land plot.

**2.** Notification of the fact that the petition mentioned in Item 1 of the present article has been considered by the court shall be given to the lessor under the contract of lease of the land plot who is entitled to take part in the arbitration litigation in the bankruptcy case when the issue described in Item 1 of the present article is considered.

**3.** The security measures mentioned in Item 1 of the present article may be taken by the arbitration court only if the person who filed the relevant petition has provided evidence of the existence of the constructed facility on the land plot or of the commencement of construction of the given project.

**4.** The security measures mentioned in Item 1 of the present article shall be effective until the date of termination of a winding-up proceeding in respect of the debtor, except as otherwise envisaged by the present Federal Law.

**Article 201.4.** The Details of the Filing of Claims by Participants in the Construction Project in the Event of the Developer's Bankruptcy and the Consideration Thereof by the Arbitration Court

**1.** Starting from the date of the arbitration court's ruling on instituting receivership in respect of the developer, in the course of receivership and all the subsequent procedures used in the case of the developer's bankruptcy the claims for transfer of dwelling premises and/or the monetary claims of participants in the construction project, except for claims concerning current payments may be presented to the developer only within the framework of the case of the developer's bankruptcy in the observance of the procedure established by the present paragraph for presentation of claims to a developer.

**2.** Starting from the date on which receivership is instituted in respect of the developer, in the course of receivership and all the subsequent procedures used in case of the developer's bankruptcy the performance under execution documents on the claims of participants in the construction project envisaged by Item 1 of this Article shall be suspended. From the date of commencement of a winding-up proceeding the performance of said execution documents shall be terminated.

Within five days after being endorsed the interim receiver or the winding-up receiver shall notify all the participants in the construction project they know of the institution of receivership or of the commencement of the winding-up proceeding and on the opportunity for participants in the construction project to file claims for transfer of dwelling premises and/or monetary claims and also the opportunity for a participant's unilaterally refusing to perform the

contract envisaging the transfer of dwelling premises.

3. The costs incurred by the qualified receiver while notifying the creditors of filing claims for the transfer of dwelling premises and/or monetary claims shall be met by him at the expense of the debtor.

**Article 201.5.** The Details of Filing Monetary Claims and of Their Being Considered by the Arbitration Court

1. The commencement of a winding-up proceeding in respect of the developer shall be deemed a ground for the unilateral refusal by a construction project participant to perform the contract envisaging the transfer of dwelling premises. Such refusal may be declared within the framework of the case of the developer's bankruptcy in the course of establishing the amount of the monetary claim of the construction project participant.

2. When establishing the amount of the monetary claim of a construction participant, shall be taken into account the extent of losses in the form of the real damage caused by the builder's failure to discharge the duty to transfer residential premises, in the form of difference between the cost of residential premises (estimated as of the date of introduction of the procedure applied in a bankruptcy case in respect of the builder within whose framework the claim of a construction participant is made) to be transferred to the construction participant and the amount of monetary assets paid under the contract providing for the transfer of residential premises and/or the cost of the property transferred to the builder (fixed by the contract providing for the transfer of residential premises).

An excess of the amount of monetary assets paid under the contract providing for the transfer of residential premises and/or the cost of the property transferred to the builder over the cost of residential premises (estimated as of the date of introduction of the procedure applied in a bankruptcy case in respect of the builder within whose framework the claim of a construction participant is made) which are to be transferred to the construction participant may not serve as a ground for reduction of the amount of monetary claims of the construction participant or entail other negative effects for such construction participant.

The value of the property delivered to the developer and the value of the dwelling premises which had to be transferred to the participant in the construction project shall be assessed by an appraiser invited by the qualified receiver at the expense of the developer. The relevant report on the assessment shall be sent by the qualified receiver to the construction project participant and the arbitration court.

3. Also information about the dwelling premises (for instance the area thereof) being the subject matter of a contract envisaging the transfer of dwelling premises shall be included in the register of creditors' claims in respect of a monetary claim.

4. At the request and at the expense of the insurer that has insured the builder's civil liability for failure to discharge or improper discharge of the obligations involved in transfer of residential premises under an agreement on participation in share construction in compliance with Federal Law No. 214-FZ of December 30, 2004 on the Participation in Share Construction of Apartment Buildings and Other Immovable Property Units and on Amending Certain Legislative Acts of the Russian Federation or of the bank that has issued a guarantee in respect of proper discharge by the builder of the obligations involved in transfer of residential premises under an agreement on participation in share construction, the qualified receiver or the registrar shall send an extract from the register of creditors' claims as to the amount, composition and order of satisfaction of the construction participants' claims.

**Article 201.6.** The Details of Filing Claims for Transfer of Dwelling Premises and of

Their Being Considered by the Arbitration Court

**1.** Claims for transfer of dwelling premises shall be filed and considered in the procedure established by Articles 71 and 100 of the present Federal Law.

**2.** While the arbitration court is considering the existence of a good reason for claims for transfer of dwelling premises it shall be provided with evidence of that fact that the construction project participant has fully or partially made his payment to perform his duties in respect of the developer under the contract envisaging the transfer of the dwelling premises.

**3.** A claim for transfer of dwelling premises that has been recognised as well-grounded by the arbitration court shall be included by the qualified receiver in the register of claims for transfer of dwelling premises.

**4.** A ruling on inclusion of a claim for transfer of dwelling premises in the register of claims for transfer of dwelling premises or a ruling on refusal to include said claim in that register is subject to appeal.

**5.** In as much as it concerns claims for transfer of dwelling premises participants in the construction project are entitled to attend meetings of creditors and have the number of votes determined according to the sum paid by a participant in the construction project to the developer under a contract envisaging the transfer of dwelling premises and/or the value of the property delivered to the developer, and the amount of loss in the form of actual damage defined in compliance with Item 2 of Article 201.5 of this Federal Law.

**6.** Participants in the construction project are entitled to present their objections in respect of the claims of other creditors in the procedure established by Articles 71 and 100 of the present Federal Law.

**Article 201.7.** The Register of Claims for Transfer of Dwelling Premises

**1.** The following information shall be included in the register of claims for transfer of dwelling premises:

1) the sum paid by a participant in the construction project to the developer under a contract envisaging the transfer of dwelling premises and/or the value in roubles of the property delivered to the developer;

2) the amount of the construction project participant's outstanding obligations owing the developer under the contract envisaging the transfer of dwelling premises, in roubles (for instance the value of non-delivered property specified in such contract);

3) information on the dwelling premises (for instance the area thereof) deemed the subject matter of the contract envisaging the transfer of dwelling premises and also the information whereby the constructed facility is identified according to such contract.

**2.** The rules for keeping the register of claims for transfer of dwelling premises, for instance the composition of the information that is to be included in the register and the procedure for provision of information out of the register of claims for transfer of dwelling premises shall be endorsed by a federal standard in the procedure established by the present Federal Law.

A register of claims for transfer of residential premises shall be kept in respect of each construction object.

**Article 201.8.** Considering Claims in Respect of Immovable Property in the Case of the Debtor's Bankruptcy

**1.** Starting from the date on which the arbitration court issues its ruling instituting receivership in respect of the developer, in the course of receivership and of all the subsequent procedures used in the case of the developer's bankruptcy, the following claims of other persons addressed to the developer or of the developer addressed to other persons

shall be presented and considered only within the framework of the case of the developer's bankruptcy in keeping with the procedure established by the present article:

1) for recognition of the existence or lack of the right of ownership or another right or encumbrance in respect of a piece of immovable property, for instance construction-in-process;

2) for reclamation of immovable property, for instance construction-in-process facilities, form another's unlawful possession;

3) for demolition of a structure built without authorisation;

4) for deeming a transaction in respect of a piece of immovable property invalid or non-concluded and for the application of the consequences of an invalid transaction to immovable property;

5) for transfer of immovable property for the purpose of setting off an obligation to transfer it into ownership, economic jurisdiction, operative management or use;

6) for state registration of the assignment of the right of ownership in immovable property.

**2.** A court session of the arbitration court dedicated to the hearing of the claims envisaged by Item 1 of the present article shall be conducted by a judge of the arbitration court in the procedure established by the Arbitration Procedural Code of the Russian Federation with the details envisaged by the present Federal Law. No preliminary court-room meeting shall be conducted to consider said claims.

**3.** The claims envisaged by Item 1 of the present article shall be considered by the arbitration court within three months after their being received by the court.

**4.** The form and contents of the claims envisaged by Item 1 of the present article and the procedure for filing them with the arbitration court shall meet the requirements applicable to a complaint according to the Arbitration Procedural Code of the Russian Federation. The person presenting a claim (applicant) shall send copies of claims and the documents attached thereto by a registered letter with return receipt requested to the developer or the other persons to which the claims are addressed.

**5.** The applicant and the persons to which the claims are addressed are persons taking part in the consideration of these claims by the arbitration court.

Said persons in respect of the merits of the declared claims are entitled to get acquainted with the case materials, make excerpts from them as well as copies of them; declare demurral; present evidence and get acquainted with the evidence provided by the other persons taking part in the consideration of claims by the arbitration court before the beginning of judicial proceedings; take part in the examination of evidence; put questions to the other persons taking part in the consideration of claims by the arbitration court, make statements, provide explanations to the arbitration court, provide their arguments concerning all the issues occurring in the course of the case hearing; get acquainted with the petitions declared by the other personell taking part in the consideration of claims by the arbitration court, object to the petitions and arguments of the other persons taking part in the consideration of claims by the arbitration court; know about the complaints filed by the other persons taking part in the consideration of claims by the arbitration court, know about the judgements issued in this case and receive copies of the judgements issued as a separate document; take appeal from the rulings issued according to the results of consideration of claims.

**6.** The judge of the arbitration court shall notify the following of the time and place of the would-be court session that will consider claims: the applicant and also the persons to which claims are addressed, the qualified receiver, a representative of the meeting of creditors or a representative of the committee of creditors (if any) and a representative of the owner of property or of the founders of the developer.

**7.** According to the results of consideration of the claim the arbitration court shall issue one of the following rulings:

1) on upholding the claim;

2) on refusal to uphold the claim.

**8.** Appeal from the ruling may be taken in accordance with Part 3 of Article 223 of the Arbitration Procedural Code of the Russian Federation.

A writ of execution may be issued on the basis of the arbitration court's ruling.

**Article 201.8-1.** The Specifics of Declaring the Builder's Transactions Invalid

**1.** The rule of Item 2 of Article 61.4 of this Federal Law shall apply in respect of the builder's transactions made for the purpose of financing the construction of an incomplete construction object and aimed at discharging the builder's obligations in respect of the cited transaction, in particular in respect of the transactions aimed at termination of the parties' mutual obligations, regardless of the price of the property to be transferred within the framework of a single or several interrelated transactions or of the extent of the obligations or duties assumed in respect of the cited transactions.

**2.** The transactions cited in Item 1 of this article may be declared invalidated on the grounds of Item 1 of Article 61.2 or Article 61.3 of this Federal Law in the following instances:

1) the use by the builder of the monetary assets paid by the share construction participants under a contract for the purpose of financing the construction of an incomplete construction object in defiance of the requirements of Article 18 of Federal Law No. 214-FZ of December 30, 2004 on the Participation in Share Construction of Apartment Buildings and Other Immovable Property Units and on Amending Certain Legislative Acts of the Russian Federation;

2) if the price of a transaction and/or other terms thereof as of the time of making it were essentially worse for the builder than the price and/or other terms according to which under comparable circumstances similar transactions are made and the qualified receiver's consent to making it has not been obtained;

3) if the monetary assets derived from a transaction for financing the construction of an incomplete construction object were not used through a special bank account cited in Article 201.8-2 of this Federal Law.

**Article 201.8-2.** The Special Bank Account for Financing the Construction of Incomplete Construction Object

**1.** For the purpose of financing the construction of an incomplete construction object, the builder or, should the authority of its head be terminated, the qualified receiver on behalf of the builder shall open a special builder's bank account.

**2.** Under the contract of the bank account cited in Item 1 of this article monetary assets shall be written off the builder's special account by approbation of the qualified receiver (in the course of observation or financial improvement) or by order of the qualified receiver (in the event of termination of the authority of the builder's head in the course of any procedure applicable in a bankruptcy case) solely for the purpose of making settlements in respect of the builder's obligations in compliance with the goals provided for by Article 18 of Federal Law No. 214-FZ of December 30, 2004 on the Participation in Share Construction of Apartment Buildings and Other Immovable Property Units and on Amending Certain Legislative Acts of the Russian Federation and may not be written off for discharging other builder's obligations or obligations of the qualified receiver or of the persons satisfying the creditors' claims.

**3.** Execution may not be levied against the assets kept on the builder's special bank account in compliance with this article in respect of other builder's obligations or obligations of the qualified receiver or of the persons satisfying the creditors' claims.

**4.** The transactions involved in the disposal of the assets kept on the builder's special bank account which are made in defiance of the requirements of this article may be declared invalidated on demand of the persons participating in a bankruptcy case in the procedure provided for by Article 61.8 of this Federal Law.

**Article 201.9.** The Priority Ranking of Meeting the Claims of Creditors in the Case of the Developer's Bankruptcy

**1.** During a winding-up proceeding used in the case of the developer's bankruptcy creditors' claims, except for creditors' claims for current payments, shall be met according to the following priority ranking:

1) as Priority Category 1: accounts shall be settled for claims of the citizens to whom the debtor is liable for causing harm to life or health, by means of capitalising relevant time-based payments, compensation in excess of the compensation for harm;

2) as Priority Category 2: accounts shall be settled for the disbursement of the severance benefits and remuneration for the labour of persons who are working or have been working under labour contracts and for the disbursement of royalties to the authors of the results of intellectual activities;

3) as Priority Category 3: accounts shall be settled for monetary claims of the citizens being participants in the construction project;

4) as Priority Category 4: accounts with other creditors shall be settled.

**1.1.** In the course of bankruptcy proceedings in the third turn, after satisfying the monetary claims of the citizens who are construction participants are subject to satisfaction the claims of the person securing in compliance with Federal Law No. 214-FZ of December 30, 2004 on Participation in Shared Construction of Apartment Houses and Other Immovable Property Items, as Well as on Amending Certain Legislative Acts of the Russian Federation, the discharge by the builder of the obligations involved in the transfer of residential premises under a shared construction participation agreement that have passed over thereto as a result of discharge of secured obligations towards the citizens who are construction participants.

The claims of the person securing in compliance with Federal Law No. 214-FZ of December 30, 2004 on Participation in Shared Construction of Apartment Houses and Other Immovable Property Items, as Well as on Amending Certain Legislative Acts of the Russian Federation the discharge by the builder of the obligations involved in the transfer of residential premises under a shared construction participation agreement that have passed over thereto as a result of discharge of secured obligations towards the construction participants which are legal entities are subject to satisfaction in the fourth turn.

**1.2.** In the event of receiving by a construction participant on the basis of a claim (part of a claim) included in a register of creditors' claims the insurance payment made by the insurer that has insured the builder's civil liability for failure to discharge or improper discharge of the obligations involved in the transfer of residential premises under an agreement on participation in share construction in compliance with Federal Law No. 214-FZ of December 30, 2004 on the Participation in Share Construction of Apartment Buildings and Other Immovable Property Units and on Amending Certain Legislative Acts of the Russian Federation or the payment made by the bank that has issued a guarantee in respect of proper discharge by the builder of the obligations involved in transfer of residential premises under an agreement on participation in share construction, the rate of such claim shall be reduced by the bankruptcy receiver by the amount of the payment made on application of the construction participant that has received such payment or of the person that has made such payment.

**2.** When accounts have been settled with Priority Category 4 creditors, accounts shall

be settled with creditors for the purpose of meeting claims in respect of a transaction deemed invalid according to Item 2 of Article 61.2 and Item 3 of Article 61.3 of the present Federal Law.

**3.** Creditors' claims for obligations secured with the mortgage of the debtor's property shall be met with the value of the mortgaged item in the procedure established by Article 201.14 of the present Federal Law.

**4.** Abrogated.

**Article 201.10.** Settling the Claims of Participants in the Construction Project by Means of Transferring a Construction-in-Process Facility

**1.** In the course of the financial rehabilitation, external administration and winding-up proceeding if the developer has a construction-in-process facility the qualified receiver shall bring the following to the agenda of a meeting of participants in the construction project not earlier than after two months and not later than after six months its confirming: the issue of filing a petition with the arbitration court for settlement of the claims of the participants in the construction project by means of assigning the developer's rights to the construction-in-process facility and the land plot to a housing construction cooperative formed by the participants in the construction project or to another specialised consumer cooperative (hereinafter referred to as "transfer of a construction-in-process facility").

Before the meeting of construction project participants that is going to consider the issue of filing a petition with the arbitration court for settlement of the claims of construction project participants by means of transferring the construction-in-process facility is held the qualified receiver shall inform the participants in the construction project about the procedure for the formation, operation, transformation and liquidation of the housing construction cooperative or another specialised consumer cooperative, for instance about the rights and duties of members of such cooperative, and shall make sure the construction project participants get acquainted with said information against signature or by registered post with return receipt requested.

**2.** The set of materials which will be considered by the meeting of participants in the construction project shall include a statement of the qualified receiver on the possibility or impossibility of transfer of the construction-in-process facility, a report on the assessment of the developer's rights to the construction-in-process facility and the land plot and a draft decision on the formation of the housing construction cooperative or the other specialised consumer cooperative. The statement of the qualified receiver shall comprise the following:

1) a feasibility study concerning the possibility or impossibility (for instance technical and financial and also with due regard to the requirements set out in the present article) of transfer of the construction-in-process facility;

2) information on the degree of completion of the construction-in-process facility;

3) information on the amounts of financing and the term required for completing the construction of the construction-in-process facility;

4) information on the sum of money that is to be provided by the participants in the construction project and/or third persons to meet creditors' claims for current payments, the claims of Priority Category 1 and 2 creditors, and the claims of the creditors who are not participants in the construction project and for obligations secured with the mortgage of the developer's rights in the construction-in-process facility and the land plot, in the procedure established by Items 4-6 of the present article.

**3.** The construction-in-process facility may be transferred to the participants in the construction project if the following conditions are simultaneously observed:

1) the value of the developer's rights in the construction-in-process facility and the land plot does not exceed by over five per cent the aggregate amount of the claims of the construction project participants included in the register of creditors' claims and the register of claims for transfer of dwelling premises or a decision is taken by the three quarters of votes of Priority Category 4 creditors, except for the legal entities being participants in the construction project, on the consent to the transfer of the construction-in-process facility or amounts of money are delivered into the deposit account of the arbitration court in accordance with Item 4 of the present article. When estimating the amount of claims of construction participants included into a register of claims for transfer of residential premises shall be also taken into account the extent of losses in the form of real damage estimated in compliance with Item 2 of Article 201.5 of this Federal Law;

2) the property the debtor still has after the transfer of the construction-in-process facility is sufficient for making current payments connected with court costs in a bankruptcy case, payment of remuneration to the qualified receiver, payment for the activities of the persons whose engagement by the qualified receiver for the discharge of the duties imposed on him/her in a bankruptcy case in compliance with this Federal Law is obligatory and settling the claims of Priority Category 1 and 2 creditors or amounts of money are delivered to the special-purpose bank account of the debtor in accordance with Item 5 of the present article;

3) the register of creditors' claims does not contain claims of creditors not being participants in the construction project for obligations secured with the mortgage of the developer's rights in respect of the construction-in-process and the land plot or said creditors have agreed to the transfer of the construction-in-process facility or amounts of money have been delivered into the deposit account of the arbitration court in accordance with Item 6 of the present article;

4) after the completion of the construction of a specific construction-in-process facility that facility contains dwelling premises sufficient to meet the claims of all participants in the construction project in respect of the specific constructed facility included in the register of creditors' claims and the register of claims for transfer of dwelling premises according to the terms of the contracts envisaging transfer of dwelling premises (for instance, there are no claims of several participants in the construction project for transfer of same dwelling premises in a block of flats, except for the cases envisaged by Item 7 of the present article). On the consent of a participant in the construction project it is possible that he gets dwelling premises different in terms of area, layout or location from the dwelling premises that comply with the terms of the contract envisaging the transfer of dwelling premises;

5) the construction-in-process facility belongs to the developer by the right of ownership;

6) the land plot on which the construction-in-process facility is located belongs to the developer by the right of ownership or another property right;

7) a decision has been taken by participants in the construction project on the formation of a housing construction cooperative or another specialised consumer cooperative that meets the requirements set out in Item 8 of the present article.

**4.** If the value of the developer's rights in the construction-in-process facility and the land plot exceeds by over five per cent the aggregate amount of the claims of participants in the construction project included in the register of creditors' claims and the register of claims for transfer of dwelling premises then participants in the construction project and/or third persons are entitled to deliver funds in the amount of such surplus less five per cent into the deposit account of the arbitration court before consideration by the arbitration court of a petition for transfer of the construction-in-process facility. The funds shall be delivered by the participants in the construction project pro rata to their claims, except as otherwise established by a decision of a meeting of participants in the construction project.

**5.** If the property of the debtor remaining after transfer of construction in progress is insufficient for making the current payments connected with court costs in a bankruptcy case, payment of remuneration to the qualified receiver, payment for the activities of the persons whose engagement by the qualified receiver for the discharge of the duties imposed on him/her in a bankruptcy case in compliance with this Federal Law is obligatory due and claims of creditors of the first and second priority, participants of the construction and/or third parties shall, according to Article 201.15 of this Federal Law, have the right to place funds in the special-purpose bank account of the debtor in the amount exceeding the total of cited current payments and claims of creditors of the first and second priority over the value of the developer's property that remains after the transfer of the construction in progress, but not more than 10 per cent of the value of the developer's title to the construction in progress and the land plot, before consideration of the application for transfer of the construction in progress by an arbitration court. The funds shall be placed by participants of the construction proportionally to the amount of their claims, if not otherwise established by the meeting of participants of the construction.

**6.** If the claims of the creditors which are not participants in the construction project and have been included in the register of creditors' claims are secured with the mortgage of the developer's rights in the construction-in-process and the land plot, then participants in the construction project and/or third persons are entitled to do the following before the arbitration court considers the petition for transfer of the construction-in-process facility: transfer funds into the deposit account of the arbitration court in the amount sufficient to meet the claims of said creditors and established by Subitem 1 of Item 1 of Article 201.14 of the present Federal Law.

**7.** If the block of flats upon the completion of construction thereof does not contain sufficient dwelling premises to meet the claims of all participants in the construction project included in the register of creditors' claims and the register of claims for transfer of dwelling premises according to the terms of the contracts envisaging transfer of dwelling premises in said block of flats, for instance when there are claims of several participants in the construction project for transfer of dwelling premises in respect of same dwelling premises in said block of flats, the transfer of the construction-in-process facility is possible on the condition that as the result of refusal of specific participants in the construction project to receive dwelling premises in said constructed facility they will be sufficient to meet the claims of the remaining participants in the construction project. Applications expressing said refusals shall be sent to the qualified receiver and the arbitration court.

In this case, the claims of the citizens that are participants in the construction project or the legal entities being participants in the construction project -- which have refused to receive dwelling premises -- shall be transformed into monetary claims in the procedure established by the present Federal Law and shall be settled within the claims of Priority Category 3 and 4 creditors respectively.

**8.** The housing construction cooperative or the other specialised consumer cooperative shall meet the following requirements:

1) the main objectives of the operation of the housing construction cooperative or the other specialised consumer cooperative are as follows: the completion of construction of the block of flats and the provision of dwelling premises in the block of flats whose construction has been completed to the members of said cooperative according to the terms of the contracts envisaging the transfer of dwelling premises;

2) all the construction project participants whose claims have been included in the register of creditors' claims and the register of claims for transfer of dwelling premises (except for the participants in the construction project which have waived the transfer of a construction-in-process facility) are members of the housing construction cooperative or the

other specialised consumer cooperative;

3) as share contributions the members of the housing construction cooperative or the other specialised consumer cooperative contribute -- when it is formed -- the developer's rights in the construction-in-process facility and the land plot which have been assigned to them and also amounts of money for the purpose of completing the construction, within the term established by the charter of such cooperative.

**9.** The following may take part in the formation of the housing construction cooperative or the other specialised consumer cooperative apart from the participants in the construction project: other persons if after the completion of construction of the construction-in-process facility it contains more dwelling premises than required for meeting the claims of all construction project participants included in the register of creditors' claims and the register of claims for transfer of dwelling premises.

**10.** No consent is required from the lessor of the land plot to the assignment of the developer's rights in that land plot to participants in the construction project.

**11.** Notification shall be provided concerning the arbitration court's hearing the issue envisaged by Item 1 of the present article to all creditors, for instance all participants in the construction project, according to the register of creditors' claims and the register of claims for transfer of dwelling premises. According to the results of consideration of the petition of the meeting of construction project participants for transfer of the construction-in-process facility the arbitration court shall turn out a ruling:

1) on upholding the petition and transferring the construction-in-process facility if the conditions for such transfer envisaged by the present article are observed;

2) on refusing to uphold the petition if the conditions for such transfer envisaged by the present article are not observed.

**12.** Appeal from the rulings mentioned in Item 11 may be taken in the procedure established by the Arbitration Procedural Code of the Russian Federation.

**13.** If the arbitration court turns out a ruling on transferring the construction-in-process facility the claims of the construction project participants who voted against such transfer and refused to take part in it shall be transformed into monetary claims in the procedure established by the present Federal Law and shall be settled within the claims of Priority Category 3 and 4 creditors respectively.

If the arbitration court turns out a ruling on transferring the construction-in-process the amounts of money that have been delivered by participants in the construction project and/or third persons into the deposit account of the arbitration court, or into the special-purpose bank account of the debtor, shall be used to settle the relevant claims of creditors.

If the arbitration court turns out a ruling on refusing to uphold the petition then the decision on the formation of the housing construction cooperative or the other specialised consumer cooperative shall be deemed terminated, and the amounts of money delivered by construction project participants and/or third persons to the deposit account of the arbitration court or to the special-purpose bank account of the debtor, shall be refunded to the construction project participants and/or third persons.

**14.** The developer's rights in the construction-in-process and the land plot shall be assigned to the housing construction cooperative or the other specialised consumer cooperative as smart money in respect of claims for transfer of dwelling premises and monetary claims.

The claim of a construction project participant may be settled with smart money. The amount of portion of the claim above shall be equal to the ratio of the value of the developer's rights in the construction-in-process facility and the land plot and the aggregate amount of the claims of construction project participants included in the register of creditors' claims and the

register of claims for the transfer of dwelling premises.

Starting from the date of the arbitration court's ruling on transferring the construction-in-process the claims of construction project participants in the relevant portion shall be deemed settled, with claims for the transfer of dwelling premises in as much as the outstanding portion is concerned shall be transformed into monetary claims.

According to the arbitration court's ruling on transferring construction-in-process the claims of construction project participants settled in the respective portion shall be removed by the qualified receiver from the register of creditors' claims and the register of claims for transfer of dwelling premises, and the portion of claims for the transfer of dwelling premises that remains outstanding shall be removed from the register of claims for transfer of dwelling premises and included in the register of creditors' claims.

The claims of construction project participants in as much as it concerns the portion not settled as the result of the transfer of the construction-in-process facility shall be met within the claims of Priority Category 3 and 4 creditors respectively.

**15.** As the performance of the developer's obligation his rights in the construction-in-process and the land plot shall be assigned by the qualified receiver to the housing construction cooperative or another specialised consumer cooperative under the arbitration court's ruling on transfer of the construction-in-process facility.

The assignment of the developer's rights in the construction-in-process facility and the land plot to the housing construction cooperative or another specialised consumer cooperative shall undergo after the state registration of such cooperative under an application of the developer as represented by the qualified receiver and the ruling of the arbitration court on the transfer of the construction-in-process facility. As of the time of registration of the transfer of the rights to such cooperative the right of ownership in the construction-in-process facility and the right of ownership or the rights and duties of a lessee in respect of the land plot are transferred.

**16.** If the developer has several construction-in-process facilities a housing construction cooperative or another specialised consumer cooperative shall be formed in respect of each of the facilities, and in this case a decision of a meeting of construction project participants shall be adopted and a ruling by the arbitration court shall be turned out in respect of all these facilities simultaneously.

**Article 201.11.** Settling the Claims of Participants in the Construction Project by Means of Handing over Dwelling Premises Thereto

**1.** If the developer has a block of flats whose construction has been completed, the arbitration insolvency practitioner shall do the following not earlier than after 2 months and not later than after 6 months from the date of its approval (if the construction is completed in the course of the bankruptcy proceedings - not later than 6 months after the day of its completion): put on the agenda of a meeting of construction project participants the issue of filing a petition with the arbitration court for settlement of the claims of construction project participants by means of transferring dwelling premises in that block of flats into their ownership (hereinafter referred to as "transfer of dwelling premises to participants in the construction project").

**2.** The set of the materials to be considered by the meeting of construction project participants shall include a statement of the qualified receiver on the possibility or impossibility of transferring dwelling premises to participants in the construction project and the report on their value.

The statement of the qualified receiver shall comprise a feasibility study on the

possibility or impossibility with due regard to the provisions of the present article concerning the transfer of dwelling premises to participants in the construction project.

**3.** Dwelling premises may be handed over to participants in the construction project if the following conditions are simultaneously observed:

1) there is a commissioning permit in respect of the block of flats whose construction has been completed, such permit having been obtained in the procedure established by the legislation on town-planning activities;

2) the developer and the participants in the construction project have not signed acceptance certificates or other documents concerning the transfer of dwelling premises to participants in the construction project;

3) the value of the dwelling premises being transferred does not exceed by over five per cent the aggregate amount of the claims of construction project participants included in the register of creditors' claims and the register of claims for transfer of dwelling premises or three quarters of votes of Priority Category 4 creditors, except for legal entities being participants in the construction project, have taken a decision on consent to the transfer of dwelling premises to participants in the construction project or amounts of money have been delivered into the deposit account of the arbitration court in accordance with Item 4 of Article 201.10 of the present Federal Law. When estimating the amount of claims of construction participants included into a register of claims for transfer of residential premises shall be also taken into account the extent of losses in the form of real damage estimated in compliance with Item 2 of Article 201.5 of this Federal Law;

4) the property the developer still has after the transfer of dwelling premises to participants in the construction project is sufficient for making current payments cited in Subitem 2 of Item 3 of Article 201.10 of this Federal Law and settling the claims of Priority Category 1 and 2 creditors or amounts of money have been delivered into the special-purpose bank account of the debtor in accordance with Item 5 of Article 201.10 of the present Federal Law;

5) the register of creditors' claims does not contain claims of the creditors not being participants in the construction project in respect of obligations secured with the mortgage of the developer's rights in the block of flats whose construction has been completed, the land plot, the transferred dwelling premises or said creditors have agreed to the transfer of dwelling premises to participants in the construction project or amounts of money have been delivered into the deposit account of the arbitration court in accordance with Item 6 of Article 201.10 of the present Federal Law;

6) dwelling premises are transferred to all participants in the construction project according to the terms of the contracts envisaging the transfer of dwelling premises, and the dwelling premises being transferred are sufficient to meet the claims of all construction project participants included in the register of creditors' claims and the register of claims for transfer of dwelling premises (for instance there are no claims of several construction project participants for same dwelling premises in the block of flats, except for the cases envisaged by Item 7 of Article 201.10 of the present Federal Law). On the consent of a participant in the construction project it is possible that he gets dwelling premises different in terms of area, layout or location from the dwelling premises that comply with the terms of the contract envisaging the transfer of dwelling premises.

**4.** Notification concerning the arbitration court's consideration of the issue envisaged by Item 1 of the present article shall be provided to all creditors, including all participants in the construction project, according to the register of creditors' claims and the register of claims for the transfer of dwelling premises. According to the results of consideration of the petition of the meeting of construction project participants for transfer of dwelling premises to participants

in the construction project the arbitration court shall issue a ruling:

1) on upholding the petition and on transfer of dwelling premises to participants in the construction project if the conditions for such transfer envisaged by the present article are observed;

2) on refusing to uphold the petition if the conditions envisaged by the present article for such transfer are not observed.

**5.** Appeal may be taken from the rulings mentioned in Item 4 of the present article in the procedure established by the Arbitration Procedural Code of the Russian Federation.

**6.** The ruling on the transfer of dwelling premises to participants in the construction project shall indicate which dwelling premises are transferred to each participant in the construction project.

If the arbitration court turns out a ruling on the transfer of dwelling premises to participants in the construction project the amounts of money that have been delivered by construction project participants and/or third persons into the deposit account of the arbitration court, or into the deposit account of the arbitration court shall be used to settle relevant creditors' claims.

If the arbitration court issued a ruling on refusing to uphold the petition, the amounts of money delivered by construction project participants and/or third persons into the deposit account of the arbitration court, or to the deposit account of the arbitration court, shall be refunded to the participants in the construction project and/or third persons.

**7.** The dwelling premises item shall be transferred as smart money to a participant in the construction project who has a monetary claim, and in this case such claim shall be settled in the amount of value of the dwelling premises transferred.

Under the arbitration court's ruling on transfer of dwelling premises to participants in the construction project the qualified receiver shall fully settle claims for transfer of dwelling premises in the register of claims for transfer of dwelling premises and also settle in the respective portion monetary claims in the register of creditors' claims.

The claims of participants in the construction project in the portion not settled as the result of transfer of dwelling premises to participants in the construction project shall be met within the claims of Priority Category 3 and 4 creditors respectively.

**8.** If in the procedure established by a federal law the developer has obtained a commissioning permit in respect of the block of flats and the developer and a participant in the construction project have signed before the date of acceptance of the application for deeming the developer bankrupt an acceptance certificate or another document on the delivery of dwelling premises the arbitration court shall adopt a judgement concerning an application of the construction project participant on recognition of the right of ownership of the construction project participant in the dwelling premises.

**Article 201.12.** The Meeting of Participants in the Construction Project

**1.** A meeting of participants in the construction project shall be held according to the rules of Articles 12-15 of the present Federal Law with the details envisaged by the present article.

**2.** The construction project participants whose claims have been included in the register of creditors' claims and the register of claims for transfer of dwelling premises as of the date of the meeting of participants in the construction project shall be deemed participants therein with the right of vote, and also the meeting may be attended without the right of vote apart from the persons specified in Item 1 of Article 12 of the present Federal Law the bankruptcy creditors and the empowered bodies whose claims have been included in the

register of creditors' claims as of the date of the meeting of participants in the construction project.

3. Construction project participants at the meeting of construction project participants shall have the number of votes pro rata to the amount of their monetary claims and/or claims for transfer of dwelling premises (with due regard to the Item 5 of Article 201.6 of the present Federal Law) in relation to the total sum of the monetary claims and the claims for transfer of dwelling premises included in the register of creditors' claims and the register of claims for transfer of dwelling premises as of the date of the meeting of construction project participants in accordance with the present Federal Law.

4. Decisions of the meeting of construction project participants on the issues which fall within its cognisance according to the present Federal Law shall be adopted by three quarters of the votes of the participants in the construction project having the right of vote at that meeting.

**Article 201.13.** Including Claims of Construction Project Participants when the Construction-in-Process Facility or Dwelling Premises Cannot Be Transferred

1. If within two months after the expiry of the periods envisaged by Item 1 of Article 201.10 and Item 1 of Article 201.11 of the present Federal Law a meeting of construction project participants has not taken a decision on filing a petition with an arbitration court for transfer of the construction-in-process facility or dwelling premises in a block of flats whose construction has been completed the winding-up receiver shall notify the arbitration court accordingly and send a notice of the following in the procedure established by Article 13 of the present Federal Law to the construction project participants whose claims have been included in the register of claims for transfer of dwelling premises:

1) the opportunity for filing a monetary claim with the arbitration court that is considering the bankruptcy case, within one month within one month after such notice is received, given the simultaneous refusal of the construction project participant to perform the contract envisaging the transfer of dwelling premises, in accordance with Article 201.5 of the present Federal Law;

2) the consequences of non-filing of said claims within the term established by Subitem 1 of the present item.

2. Within five days after the date on which the arbitration court received the notice mentioned in Item 1 of the present article the arbitration court shall set the date of a court session for hearing the claims of construction project participants included in the register of claims for transfer of dwelling premises. That court session shall be held at least two months after the date on which the relevant notice was sent to participants in the construction project.

3. The claims of construction project participants envisaged by Item 1 of the present article shall be considered by the arbitration court in the court session, and a ruling shall be issued on the results thereof on inclusion of said claims in the register of creditors' claims, in the procedure established by Article 201.5 of the present Federal Law.

4. The winding-up receiver is not entitled to settle accounts with Priority Category 3 and 4 creditors according to the register of creditors' claims before all claims of the citizens being participants in the construction project and/or all claims of the legal entities being participants in the construction project filed in accordance with the present article have been considered and the arbitration court has issued relevant rulings.

**Article 201.14.** The Settlement of Claims of Citizens Being Participants in the Construction Project in Respect of Monetary Obligations and the Details of Settlements of Accounts with Creditors when the Subject of Mortgage Is Sold in the Case of the Developer's Bankruptcy

**1.** In the event of sale of the subject of mortgage being a constructed facility belonging to the developer by the right of ownership and a land plot belonging to the developer by the right of ownership or another right (for instance lease or sublease) proceeds from the sale of said items and/or the rights in them shall be remitted by the buyer to a special bank account of the debtor. Out of the amounts of money credited to that account:

1) 60 per cent shall be used to settle creditors' claims in respect of the obligation secured with the mortgage of said items and/or the debtors' rights in them, but not exceeding the principal debt amount for the mortgage-secured obligation, and payable interest, including claims for an obligation secured with mortgage under a contract of participation in shared construction according to the legislation on participation in the shared construction of blocks of flats and/or other pieces of immovable property;

2) 25 per cent shall be used tot settle the monetary claims of citizens being participants in the construction project, irrespective of these citizens' being mortgagees in respect of the sold construction-in-process facilities and the land plot (for instance in as much as it concerns real damage, except for interest and other sanctions).

If there are no claims of creditors in respect of the obligation secured with the mortgage of said items and/or the debtor's rights in them 85 per cent of proceeds from the sale of said items and/or rights in them shall be used to settle the monetary claims of participants in the construction project (for instance in as much as it concerns real damage, except for interest and other sanctions);

3) ten per cent shall be used to settle the claims of Priority Category 1 and 2 creditors if the other property of the developer is not sufficient for settling these claims;

4) the remaining funds shall be used to meet court costs, expenses towards the remuneration of the qualified receiver and payment for the services of the persons recruited by the qualified receiver for the purpose of supporting his executing his duties.

**2.** The monetary means which were intended for settling the claims of Priority Category 1 and 2 creditors and have remained in the special bank account of the developer after such claims were settled in full shall be used to settle the portion of claims secured with the mortgage of the relevant property of the developer that has not been settled at the expense of the value of said property due to the withholding of a portion of the value for the purpose of settling the claims of Priority Category 1 and 2 creditors in accordance with Item 1 of the present article.

The monetary means remaining after the payment in full of court costs, the expenses towards the remuneration of the qualified receiver and payment for the services of the persons recruited by the qualified receiver for the purposes of supporting the execution of his duties shall be used to settle the portion of the monetary claims of the citizens being participants in the construction project and the creditors' claims secured with the mortgage of the relevant property of the developer that has not been settled at the expense of the value of said property due to the withholding of a portion of the value for the purpose of meeting said expenses in accordance with Item 1 of the present article.

The monetary means remaining after the settlement in full of the monetary claims of the citizens being participants in the construction project, the creditors' claims secured with the mortgage of sold property of the developer shall be included in the bankrupt's estate.

**3.** The monetary claims of the citizens being participants in the construction project and the claims for the obligations secured with the mortgage of property of the developer which have not been met at the expense of the value of the sold property of the debtor shall be met within the claims of Priority Category 3 and 4 creditors respectively.

**Article 201.15.** Making Current Payments and Satisfying Claims of Creditors of First

and Second Priority Against the Developer in Order to Make It Possible to Transfer Construction in Progress or Residential Premises

**1.** To make it possible to transfer construction in progress or residential premises in a block of apartments whose construction is completed, according to Articles 201.10, 201.11 and 201.15-1 of this Federal Law, the claims related to current payments and those of creditors of first and second priority included in the register of creditors' claims, can be satisfied by participants of the construction and/or third parties according to the procedure established in this Article.

**2.** Participants of the construction and/or third parties that have an intent to satisfy claims of the creditors envisaged in Item 1 of this Article (hereinafter - the intent) shall send a declaration of intent to the arbitration court that considers the bankruptcy case and to the bankruptcy manager.

Within 10 days from the date of receipt of the declaration of intent, the bankruptcy manager shall present to the arbitratio ncourt, participants of the construction and/or third parties that have sent the declaration of intent (hereinafter - the applicant), a calculation of the amount that is necessary for repayment of the debt on current payments and satisfaction of claims of creditors of the first and second priorities defined in compliance with Item 5 of Article 201.10 of this Federal Law as of the date of sending the application to the arbitration court (including information on the total amount of debt, on the value of title of the developer to the construction in progress and the land plot or value of property of the developer that will remain after the transfer of the construction in progress or residential premises).

**3.** A declaration of intent shall be considered by an arbitration court within 14 days of its receipt.

If several declarations of intent are received by the arbitration court they shall be considered on a first-come, first-served basis.

**4.** Following the results of consideration of the declaration of intent, the arbitration court shall pass a ruling on its satisfaction or of its decline if there are no current payments or claims of creditors of first and second priority that are, according to this Federal Law, subjected to inclusion in the register of creditors' claims, or if the applicant has cancelled its intention to satisfy claims of creditors mentioned in Item 1 of this Article, until the application is considered.

**5.** The arbitration court ruling on satisfaction of the declaration of intent shall contain the following:

1) name (for legal entities) or surname, name and patronymic (for individuals) of the applicant;

2) amount of creditors' claims envisaged in Item 1 of this Article, principal receivable and forfeits (penalties or late payment fees) charged;

3) term for transfer of funds to the special-purpose bank account of the debtor by the applicant;

4) other information necessary for transfer of funds to the special-purpose bank account of the debtor by the applicant.

**6.** If there is a dispute regarding the amount or the composition of claims, consideration of the declaration of intent can be postponed until the date of entry into force of a judicial act on establishing the amount and composition of creditors' claims mentioned in Item 1 of this Article.

**7.** To satisfy the creditors' claims envisaged in Item 1 of this Article, such creditors shall provide a notice to the bankruptcy manager containing the date of its provision and information on recipients of funds, necessary according to the rules for filling out payment documents confirming transfer of funds for satisfaction of creditors' claims envisaged in Item 1 of this Article.

**8.** To satisfy the creditors' claims envisaged in Item 1 of this Article by transferring funds to the special-purpose bank account of the debtor, the bankruptcy manager shall, on the basis of an arbitration court ruling on satisfaction of the declaration of intent, open a separate account of the debtor in the credit institution that is intended for satisfaction of the creditors' claims envisaged in Item 1 of this Article only (special-purpose bank account of the debtor).

Funds shall be written down from the special-purpose bank account of the debtor under the order of the bankruptcy manager only for satisfaction of creditors' claims envisaged in Item 1 of this Article, and cannot be written down for repayment of other obligations of the debtor, those of the bankruptcy manager or persons that satisfy the creditors' claims.

No foreclosure is possible on funds kept on the special-purpose bank account of the debtor for other obligations of the debtor, those of the bankruptcy manager or persons that satisfy the creditors' claims.

**9.** Within the term set in the arbitration court ruling on satisfaction of the declaration of intent, the applicant shall transfer funds in the amount specified in such ruling, to the special-purpose bank account of the debtor.

**10.** Creditors' claims envisaged in Item 1 of this Article shall be satisfied within 10 business days from the date of the entry into force of the arbitration court ruling on transfer of construction in progress or residential premises to the participants of the construction.

The creditors' claims envisaged in Item 1 of this Article shall be satisfied on a first come, first served basis, according to Article 134 of this Federal Law.

**11.** Ten business days after the entry into force of the arbitration court ruling on transfer of construction in progress or residential premises to the participants of the construction, the applicant shall file an application with the arbitration court for acknowledging the creditors' claims envisaged in Item 1 of this Article satisfied and on inclusion of the applicant's claims in the creditors' claims register and transfer of the corresponding right to claim on the current payments (hereinafter - the application for acknowledging the claims satisfied).

Attached to the application for acknowledging the claims satisfied shall be payment documents that confirm transfer of funds in the amount specified in the arbitration court ruling on satisfaction of the declaration of intent.

**12.** Following the results of consideration of the application for acknowledging the claims satisfied on condition that such satisfaction corresponds to the arbitration court ruling on satisfaction of the declaration of intent, the arbitration court shall pass a ruling on acknowledging the creditors' claims envisaged in Item 1 of this Article satisfied and on inclusion of the applicant's claims in the register of creditors' claims and transfer of the corresponding right to claim on the current payments (hereinafter - the ruling on acknowledging the claims satisfied).

If the satisfaction performed does not comply with the arbitration court ruling on acknowledging the declaration of intent satisfied, the arbitration court shall have the right to postpone consideration of the issue of acknowledging the creditors' claims envisaged in Item 1 of this Article satisfied and on inclusion of the corresponding claims of the applicant in the register of creditors' claims and transfer of the corresponding right to claim on the current payments, for not more than 30 days.

Claims of the applicant that has satisfied creditors' claims in compliance with this Article shall be entered in the register of creditors' claims in such amount and such priority as corresponds to the amount and priority of claims of creditors of the first and second priorities satisfied by the applicant. for satisfied claims on current payments, its claims shall be satisfied in the same order and priority as the satisfied claims of creditors on current payments.

**13.** The funds transferred in excess of those envisaged in the ruling on satisfaction of the declaration of intent shall be returned to the applicant within 10 business days from the

date of the entry into force of the arbitration court ruling on acknowledging the claims satisfied.

**14.** Persons whose claims are subjected to satisfaction or are acknowledged assatisfied in compliance with this Article shall have the right to appeal against actions or omission of the bankruptcy manager in the arbitration court that considers the bankruptcy case, if such actions or omission violate their rights and legitimate interests.

**Article 201.15-1.** The Specifics of Settling the Builder's Obligations with Respect to Construction Participants

**1.** When settling the builder's obligations, the gratuitous transfer of the property (including property rights) and obligations thereof to another builder which will be the acquirer (hereinafter referred to for the purposes of this paragraph as the acquirer) shall be applied. As a counter presentation, the acquirer shall discharge instead of the builder the obligations with respect to the construction participants concerning the transfer of residential premises that have been received from him by way of the debt's transfer.

The builder's property that may be transferred to the acquirer in compliance with this article shall comprise incomplete construction objects and land plots (the rights to land plots) intended for placing incomplete construction objects (hereinafter referred to as property, incomplete construction object or land plot, respectively).

The builder's obligations which may be transferred to the acquirer in compliance with this article shall comprise the obligations with respect to the construction participants involved in transfer of residential premises (hereinafter referred to as the builder's obligations).

Where the builder has several incomplete construction objects and obligations with respect to the construction participants which have claims against the builder for the transfer of residential premises in such objects, such builder's objects and obligations may be separately transferred to one or several acquirers.

As the acquirer may only act the legal entity satisfying the requirements for the builder in compliance with Federal Law No. 214-FZ of December 30, 2004 on the Participation in Share Construction of Apartment Buildings and Other Immovable Property Units and on Amending Certain Legislative Acts of the Russian Federation.

**2.** The builder's incomplete construction objects and obligations in compliance with this article shall be transferred in compliance with this article subject to the terms provided for by Subitems 2 - 6 of Item 3 and to the requirements provided for by Items 5 - 7 and 10 of Article 201.10 of this Federal Law.

**3.** If the cost of the builder's rights to an incomplete construction object and land plot which are subject to transfer to the acquirer exceeds the aggregate extent of claims of the construction participants included into a register of creditors' claims and a register of claims for the transfer of residential premises, the acquirer is bound to remit to the builder monetary assets in the amount of such excess.

**4.** If the cost of the builder's rights and the land plot which are subject to transfer to the acquirer is below the aggregate extent of claims of the construction participants included into a register of creditors' claims and a register of claims for the transfer of residential premises, the acquirer shall obtain the right of claim against the builder in the amount of the difference that has originated. The cited acquirer's right of claim is subject to inclusion into the register of creditors' claims within the composition of the third and/or fourth turn of creditors in compliance with the rules established by Article 201.9 of this Federal Law.

**5.** In the event of concurrent transfer to the acquirer of several incomplete construction objects and a land plot or several land plots, the obligations and the requirements cited in Items 3 and 4 of this article shall be set off.

**6.** In the course of financial improvement, external management and bankruptcy proceedings the person intending to become the acquirer of an incomplete construction

project and a land plot (the right to a land plot) and to discharge the builder's obligations with respect to the construction participants having claims for transfer of residential premises (hereinafter referred to as the person intending to become the acquirer) shall forward an application about such intent (hereinafter referred to in this article as an application about intent) to the arbitration court trying the bankruptcy case, to the qualified receiver and to the federal executive power body engaged in the state regulation in the sphere of share construction of apartment houses and/or other immovable property items which is authorised by the Government of the Russian Federation (hereinafter referred to as the executive body authorized by the Government of the Russian Federation).

An application about intent shall be forwarded and considered in the procedure provided for by Article 201.15 of this Federal Law, subject to the specifics established by this article.

**7.** An application about intent shall have attached thereto the documents proving the following:

1) satisfaction by the acquirer of the requirements established by Federal Law No. 214-FZ of December 30, 2004 on the Participation in Share Construction of Apartment Buildings and Other Immovable Property Units and on Amending Certain Legislative Acts of the Russian Federation;

2) the possibility of financing the completion of construction of an incomplete construction object (data on own assets and data on the extent of financing which is required for completing the construction of an incomplete construction object).

**8.** Within 10 days from the date when an application about intent comes to the qualified receiver, along with the data provided for by Paragraph 2 of Item 2 of Article 201.15 of this Federal Law, the qualified receiver shall present to an arbitration court and to the person which intends to become the acquirer and has forwarded the application about intent the following data:

1) an estimation of the amount required for repayment of debts on the current payments and satisfaction of claims of the first-turn and second-turn creditors and determined in compliance with Item 5 of Article 201.10 of this Federal Law as of the date of forwarding an application about intent to an arbitration court (in particular data on the total amount of appropriate debts, data on the cost of the builder's rights to an incomplete construction object and land plot, as well as data on the cost of the builder's property left after the transfer of an incomplete construction object);

2) correlation of the cost of the builder's rights to an incomplete construction object and land plot and of the aggregate extent of the claims of the construction participants included into a register of creditors' claims and a register of claims for transfer of residential premises.

**9.** In the event of concurrent transfer to the acquirer of several incomplete construction objects and a land plot or land plots, the qualified receiver shall also present data on correlation of the aggregate cost of the builder's rights to such objects and land plot or land plots and the aggregate amount of the claims of construction participants included into a register of creditors' claims and a register of claims for transfer of residential premises.

**10.** The executive body authorised by the Government of the Russian Federation shall present to an arbitration court an opinion as to the possibility or impossibility of transfer of the builder's property and obligations to the person intending to become the acquirer within 10 days from the date when an application about intent comes in. When preparing the opinion, the possibility of transfer of incomplete construction objects and land plot or land plots and the builder's obligations to several acquirers shall be assessed. A procedure and grounds for adoption by the executive body authorized by the Government of the Russian Federation of an appropriate opinion shall be defined by the Government of the Russian Federation.

**11.** On the basis of the results of considering an application about intent an arbitration

court shall issue the ruling on the following:

1) allowing the application about intent in the event of satisfaction of the terms provided for by Items 2 - 5 of this article, as well as in the absence of the petition provided for by Article 201.10 of this Federal Law for satisfaction of claims of construction participants by way of transfer of the builder's rights to an incomplete construction object and land plot to the housing construction cooperative or other specialized consumer cooperative established by construction participants or in the event of the refusal to allow such petition and in the presence of an opinion of the executive body authorized by the Government of the Russian Federation about the possibility of transferring the builder's property and obligations to the person intending to become the acquirer;

2) on the refusal to allow an application about intent where the terms provided for by Items 2 - 5 of this article are not observed and/or there is the opinion of the executive body authorized by the Government of the Russian Federation about the impossibility of transfer of the builder's property and obligations to the person intending to become the acquirer.

12. The following shall be cited in the ruling of an arbitration court on satisfaction of an application about intent:

1) acquirer's denomination, basic state registration number and taxpayer's identification number;

2) extent of the creditors' claims cited in Item 1 of Article 201.15 of this Federal Law and time period for remittance by the acquirer of monetary assets in such amount onto the builder's special account in the procedure provided for by Article 201.15 of this Federal Law;

3) correlation of the cost of the builder's rights to an incomplete construction object and land plot and of the aggregate amount of the claims of construction participants included into a register of creditors' claims and a register of claims for transfer of residential premises, the amount of monetary assets and time of their remittance by the acquirer onto the builder's key account, if such acquirer's duty originates in compliance with Item 3 of this article or the extent of the acquirer's claims which are subject to inclusion into a register of creditors' claims in compliance with Item 4 of this article;

4) data identifying an incomplete construction object and land plot;

5) other information required for remittance by the acquirer of monetary assets onto the appropriate builder's account.

13. Within the time period fixed in the ruling of an arbitration court on allowing an application about intent the acquirer shall remit monetary assets in the amount specified in this ruling.

**Article 201.15-2**. Property Transfer and Builder's Obligations

1. The qualified receiver shall file with an arbitration court the petition for transfer of the builder's property and obligations to the acquirer within 10 days from the date when monetary assets come from the acquirer in compliance with the ruling of allowing an application about intent. The cited petition shall have attached thereto the documents that prove coming in of monetary assets in the amount which is specified in the ruling of an arbitration court on allowing the application about intent.

2. Within three days from the date of receiving the petition of the qualified receiver for transfer of the builder's property and obligations to the acquirer an arbitration court shall issue the ruling on transfer to the acquirer the builder's property and obligations.

3. The following shall be cited in the ruling of an arbitration court on the transfer to the acquirer of the builder's property and obligations:

1) acquirer's denomination, basic state registration number and taxpayer's identification number thereof;

2) data identifying the incomplete construction object and land plot to be transferred to

the acquirer;

3) data on the amount of the monetary assets remitted by the acquirer onto the builder's special bank account for satisfaction of the creditors' claims provided for by Item 1 of Article 201.15 and Item 3 of Article 201.15-1 of this Federal Law;

4) data on satisfaction of the terms provided for by Items 2 - 5 of Article 201.15-1 of this Federal Law;

5) data on the transfer to the acquirer of the rights of claim as to the connection (technological connection) of an object to utility systems under the contracts made with the builder in respect of the incomplete construction object and land plot to be transferred;

6) other information required for the state registration of transfer to the acquirer of the right of ownership to an incomplete construction object and land plot.

4. When transferring to the acquirer the builder's property and obligations, the rules for the following shall not apply:

1) obtainment of creditors' consent by the builder to the transfer of debts to another person;

2) creditors' preliminary notification by the builder about the debt's transfer by the builder to the acquirer;

3) making by creditors claims against the builder for termination or preschedule discharge by the builder of obligations with respect to them in connection with such transfer.

5. Other claims, except for the claims for the transfer of residential premises, may be made by construction participants against the acquirer of the builder's property and obligations.

6. On the basis of the ruling of an arbitration court on transfer to the acquirer of the builder's property and obligations the claims of construction participants in respect of which the discharge of obligations towards them is transferred to the acquirer shall be excluded by the qualified receiver from a register of creditors' claims and a register of claims for the transfer of residential premises.

7. The claims of construction participants which are not satisfied as a result of transfer to the acquirer of property and obligations shall be satisfied within the composition of claims of the third-turn and fourth-turn creditors, respectively.

8. On the basis of the ruling of an arbitration court on transfer to the acquirer of the builder's incomplete construction object and land plot the builder shall make with the acquirer a contract (contracts) of transfer of the incomplete construction object, land plot and obligations to the builder under the terms which are not at variance with this Federal Law.

9. The replacement of persons in the obligations which result from the contracts made by the builder with construction participants and in which the builder is the debtor shall entail the transfer to the acquirer of the builder's obligations involved in transfer of residential premises from the date of transfer to the acquirer of the builder's incomplete construction object, land plot and obligations on the basis of a transfer deed.

10. The contract of transfer to the acquirer of the builder's incomplete construction object, land plot and obligations shall be made in writing. The builder's incomplete construction object, land plot and obligations shall be transferred to the acquirer on the basis of a transfer deed.

11. The state registration of transfer of the rights to an incomplete construction object and land plot shall be effected on the basis of the ruling of an arbitration court on the transfer to the acquirer of the builder's property and obligations in compliance with the legislation of the Russian Federation on the state registration of rights to immovable property.

12. At the latest in three days from the date of the state registration of transfer to the acquirer of the right of ownership to an incomplete construction object and of the rights to a land plot the qualified receiver shall publish the following data by way of their including into the

Unified State Register of Data on Bankruptcy:

1) full name of the builder transferring the property and obligations, address thereof and data identifying the cited builder (basic state registration number and taxpayer's identification number);

2) full name of the acquirer which the builder's property and obligations are to be transferred to, address thereof and data identifying the cited acquirer (the state registration number of an entry on the state registration of a legal entity, taxpayer's identification number);

3) data identifying the incomplete construction object and the land plot.

**13.** The claims of the creditors provided for by Item 1 of Article 201.15 of this Federal Law shall be satisfied within 10 working days from the date of entry into legal force of the ruling of an arbitration court on the transfer to the acquirer of the builder's property and obligations. Such claims shall be satisfied in the order established in compliance with Article 134 of this Federal Law.

**14.** Upon the expiry of 10 working days from the date of entry into legal force of the ruling of an arbitration court on the transfer to the acquirer of the builder's property and obligations the acquirer shall forward to the arbitration court in the procedure established by Items 11 and 12 of Article 201.15 of this Federal Law an application for declaring the creditors' claims provided for by Item 1 of Article 201. 15 of this Federal Law as satisfied and for the inclusion of appropriate claims of the acquirer, as well as of the claims that have originated in compliance with Item 4 of Article 201.15-1, into a register of creditors' claims.

## "§ 8. The Specifics of Bankruptcy of a Clearing Participant and of a Client of a Clearing Participant

**Article 201.16.** The Bankruptcy of a Clearing Participant and of a Client of a Clearing Participant

**1.** The provisions of Articles 186.2-185.7 and of Paragraph 4.1 of this chapter shall extend to the bankruptcy of a clearing participant being a professional securities market-maker and of a clearing participant being a credit organisation, respectively (subject to the specifics provided for by this paragraph).

**2.** In the event of introducing observation, a clearing participant is not entitled:

1) to make transactions at the own expense thereof or at the client's expense if at the time of their making there is not enough property or monetary assets for discharging obligations in respect of these and previously made transactions. This requirement shall not extend to the instances when a clearing participant has the right to demand the cited property under the transaction made to the master contractor in the quantity and at the time that enable him to properly discharge obligations thereof;

2) to use the monetary assets kept on the special broker's account or on the special trading account of the clearing participant in its own interests;

3) to use its own property as security for third persons' obligations;

4) to lend its own property;

5) to make REPO agreements without the consent of the interim receiver.

**3.** The monetary assets, securities and/or other property of a clearing participant left after termination of a clearing participant's obligations under financial agreements in the procedure provided for by Article 4.1 of this Federal Law are subject to inclusion into the clearing participant's bankruptcy estate.

**4.** The monetary assets and/or other property transferred by a client of a clearing participant, this being both a professional securities market-maker and not being a professional securities market-maker, in particular of a clearing participant which is a credit

organisation, in compliance with the Federal Law on Clearing and Clearing Activity as a security and kept on a trading and/or commercial account, shall not be included into the bankruptcy estate of the clearing participant.

In the event of introduction of one of bankruptcy proceedings in respect of a clearing participant, the transfer of the debt and assignment of claims of the clearing participant in respect of the obligations resulting from the contracts made on a client's account, as well as the transfer of the client's property which is the subject of securing the discharge of such obligations, to another clearing participant shall be effected by a clearing organisation without the consent of a meeting of creditors (the creditor's committee) and the qualified receiver in the instances and in the procedure which are provided for by the Federal Law on Clearing and Clearing Activity.

Where it is impossible to transfer a debt and to assign claims of a clearing participant which are provided for by this Item, as well as to transfer a client's property to another clearing participant in compliance with the Federal Law on Clearing and Clearing Activity, the monetary assets, securities and/or other property left with a clearing organisation after the discharge of the net obligations resulting from the contracts made by the clearing participant on account of the client are subject to return to the client of the clearing participant in the procedure provided for by Article 201.17 of this Federal Law.

**5.** If the rights to securities are accounted for on the commercial depo account on the owner thereof opened for a clearing participant and/or to a client of a clearing participant and/or on the commercial depo account of the nominal holder and/or trust manager opened for a clearing participant, as from the date of adoption by an arbitration court of the decision on declaring the clearing participant bankrupt and on initiating bankruptcy proceedings or, in respect of a credit organisation, as from the date of withdrawal of its licence for conducting banking operations, depending on which of the cited dates comes first, such account shall be disposed of by the clearing organisation which is entitled to give orders in respect of such account in compliance with the Federal Law on Clearing and Clearing Activity.

**6.** In the event of a clearing participant keeping separate records in respect of the client's property provided as a security and of the obligations of the clearing participant that have resulted from the agreements made on this client's account in compliance with the Federal Law on Clearing and Clearing Activity, the qualified receiver is bound to provide data on such clients, data on such clients' property kept by the clearing participant, data on the obligations to be discharged on account and/or for the benefit of each such client or clearing organisation.

**7.** The qualified receiver, if there are clients' debts with respect to a clearing participant, shall recover such debt in the procedure provided for by the legislation of the Russian Federation.

**8.** In the event of introduction of one of bankruptcy proceedings in respect of a client of a clearing participant or in respect of a client being a credit organisation and also in the event of withdrawal of the licence for conducting banking operations, the monetary assets, securities and/or other property transferred by this client in compliance with the Federal Law on Clearing and Clearing Activity as a security and left after termination of the obligation of a clearing participant on account of such security are subject to inclusion into the bankruptcy estate. Obligations shall be terminated on the date fixed in compliance with the clearing rules or on the date following the date of adoption by an arbitration court of a decision on declaring a client of a clearing participant bankrupt and on initiating bankruptcy proceedings or, in respect of a credit organisation, on the date following the date of withdrawal of its licence for conducting banking operations, depending on which of the cited dates comes first.

**Article 201.17.** The Claims of Clients of a Clearing Participant

**1.** In the course of the proceedings applied in a bankruptcy case of a clearing participant, for the purpose of satisfying the claims of clients of a clearing participant, the qualified receiver or registrar shall keep a register of clients of the clearing participant in the procedure provided for by Article 185.3 of this Federal Law for keeping a register of clients of a professional securities market-maker, management company or clearing organisation.

**2.** If the monetary assets, securities and/or other property left with a clearing organisation after discharging the net obligations resulting from the contracts made by a clearing participant on account of a client (clients) are sufficient for satisfying clients' claims, such claims shall be satisfied in full.

**3.** If the monetary assets, securities and/or other property left with a clearing organisation after discharging the net obligations resulting from the contracts made by a clearing participant on account of a client (clients) are insufficient for satisfying clients' claims in full, such property shall be transferred in a quantity which is proportionate to the amount of clients' claims.

**4.** Unsatisfied clients' claims are subject to inclusion into the register of creditors' claims and shall be satisfied within the composition of claims of third-priority creditors.

**5.** If upon the expiry of six months as from the date of adoption by an arbitration court of the decision on declaring a clearing participant bankrupt and on initiating bankruptcy proceedings the clients' property has not been transferred, the bankruptcy receiver shall transfer such property to a notary for depositing.

## Chapter X. The Bankruptcy of a Citizen

### §1. General Provisions

Abrogated from October 1, 2015.

### § 1.1. Restructuring of the Individual's Debt and Sale of the Individual's Assets

**Article 213.1.** Regulation of Relations Connected with Bankruptcy of Individuals

**1.** Relations connected to bankruptcy of individuals and not regulated by this Chapter shall be regulated by Chapters I - III.1, VII, VIII, paragraph 7 of Chapter IX and paragraph 2 of Chapter XI of this Federal Law.

**2.** Provisions envisaged by this paragraph shall not be applied to relations connected with insolvency (bankruptcy) of peasant holdings (farms).

**3.** Provisions envisaged by this paragraph shall be applied to relations connected to insolvency (bankruptcy) of individual entrepreneurs, considering the specifics envisaged by Items 4 and 5 of this Article and this Federal Law.

**4.** Assets intended for entrepreneurship activities of individual entrepreneurs that are debtors or individuals that terminated their activities as individual entrepreneurs, but their monetary liabilities and/or the obligation of making obligatory payments created as a result of their entrepreneurship activities, shall be sold according to the procedure set by this Federal Law for sale of assets of legal entities.

**5.** Court notifications and copies of court acts on the bankruptcy case of an individual shall be directed by the arbitration court to:

the individual;

the financial manager;

the representative of the meeting of creditors (if the arbitration court has information on his election);

each creditor whose claims are included in the register of creditors' claims, if the number of such creditors does not exceed 10;

each creditor, whose total amount of claims included in the register of claims is more than 300 thousand roubles and, if the number of such creditors exceeds 10 - to each creditor, whose total amount of claims included in the register exceeds 10 percent of total amount of claims included in the register;

the individual, if the issues considered by the court meeting or the court act directly concern his rights and obligations.

The rules shall also be applied in case of direction of copies of complaints and applications for review of court acts on individuals' bankruptcy cases.

**Article 213.2.** Procedures Applicable in Bankruptcy Cases of Individuals

In the course of consideration of a bankruptcy case of an individual restructuring of the individual's debts, sale of the individual's assets or amicable agreement shall be applied.

**Article 213.3.** Initiation of Proceedings on the Case of Bankruptcy of an Individual

**1.** The right to file an application to the arbitration court for acknowledgement of an individual bankrupt shall have the individual, a bankruptcy creditor and the authorised authority.

**2.** Application for acknowledgement of an individual bankrupt shall be accepted by the arbitration court on condition that claims to the individual account for not less than 500 thousand roubles and the claims are not satisfied within three months from the date when they had to be satisfied, unless otherwise envisaged by this Federal Law.

**Article 213.4.** Application of an Individual for Acknowledging him Bankrupt

**1.** An individual shall be obliged to file an application for acknowledging him bankrupt to the arbitration court, if satisfaction of claims of one creditor or several creditors leads to the impossibility of fulfillment of monetary obligations and/or the obligation of making obligatory payments to other creditors by the individual in full, and the amount of such obligations and the obligation in total is not less than 500 thousand roubles, not later than 30 business days from the day when he learned or should have learned of that.

**2.** An individual shall have the right to file an application to the arbitration court on acknowledging him bankrupt in case of anticipation of bankruptcy, if there are circumstances apparently proving that he is unable to fulfill monetary obligations and/or the obligation to make obligatory payments within the set term, and the individual meets the criteria of insolvency and/or asset insufficiency.

**2.1.** The right to file with an arbitration court an application for declaring bankrupt a citizen who is an individual businessman shall originate with such person on condition of preliminary (at least 15 calendar days before the date of applying to the arbitration court) publication by him/her of a notice of the intent to file an application for declaring him/her bankrupt by way of inclusion of this notice into the Unified Federal Register of Data on the Facts of Legal Entities' Activities.

Copies of an application of a citizen being an individual businessman for declaring him/her bankrupt is not subject to forwarding to creditors in bankruptcy, to authorized bodies, as well as, where it is provided for by this Federal Law, to other persons.

**3.** Together with the documents envisaged by the procedural law, the following shall be attached to the application for acknowledging the individual bankrupt:

documents confirming the existence of debt, the ground for its creation and incapability of the individual to satisfy the creditors' claims in full;

documents confirming existence or absence of individual entrepreneur status of the

individual on the basis of a statement from the unified state register of individual entrepreneurs or another document confirming such information. The documents shall be received not earlier than five business days before the date of filing of the application for acknowledging him bankrupt to the arbitration court;

lists of creditors and debtors of the individual specifying their names or surname, first name and patronymic, the amounts of accounts payable and receivable, location or place of residence of the debtors and separating monetary obligations and/or the obligation of making obligatory payments created as a result of entrepreneurship activities of the individual. The form for such lists shall be approved by the regulating authority;

inventory of the individual's assets specifying their location or place of storage, including pledged assets, specifying the name or surname, first name and patronymic of the pledge holder. The form of the inventory shall be approved by the regulating authority;

copies of documents confirming the title of the individual to the assets and of the documents confirming the exclusive right to the results of the individual's intellectual activities (if any);

copies of documents on transactions with real estate, securities, interest in the authorised capital, transport vehicles and transactions for the amount of more than 300 thousand roubles (if any) carried out by the individual within three years before the date of filing of the application;

statement from the register of shareholders (participants) of the legal entity, whose shareholder (participant) the individual is (if any);

information on the income gained by the individual and on the amount of taxes withheld for a three-year period preceding the date of filing of the application for acknowledging the individual bankrupt;

information from the bank on existence of accounts, deposits in the bank and/or the balance of funds on accounts and deposits, statements on operations on accounts and deposits of individuals, including individual entrepreneurs, in the bank for a three-year period preceding the date of filing of the application for acknowledging the individual bankrupt, statements of balance of electronic money and transfers of electronic money for a three-year period preceding the date of filing the application for acknowledging the individual bankrupt (if any);

a copy of the insurance certificate of compulsory medical insurance;

information on the state of the individual personal account of the insured;

a copy of the decision on acknowledging the individual jobless issued by the state employment service, in case of taking of such decision;

a copy of the certificate of registration with a tax authority (if any);

a copy of the certificate of marriage (in case of existence of the marriage concluded and not dissolved as of the date of filing of the application);

a copy of the certificate of dissolution of marriage, if it was issued in the period of three years before the date of filing of the application (if any);

a copy of marriage contract (if any);

a copy of the agreement or a court act on division of common property of the spouses, concluded and adopted in the period of three years before the date of filing of the application, respectively (if any);

a copy of the certificate of birth, if the individual is a parent, an adoptive parent or a custodian of the child;

documents confirming other circumstances that are the basis for the individual's application.

**4.** The application for acknowledging an individual bankrupt shall contain the name and the address of the self-regulating organisation, one of whose members shall be approved

financial manager.

Funds for payment of remuneration to the financial manager in the amount equal to the fixed amount of remuneration of a financial manager for one procedure applicable in an individual's bankruptcy case shall be put on deposit of the arbitration court.

Upon the request of an individual the arbitration court shall have the right to give a deferral to the individual for depositing funds for payment of remuneration to the financial manager until the date of the court meeting dedicated to consideration of justification of the application for acknowledging the individual bankrupt.

**5.** An individual shall have the right to give his consent to involvement of persons securing fulfillment of obligations of the financial manager. In such case, the application for acknowledging the individual bankrupt shall specify the maximum amount of expenses of the financial manager for payment for the services of the persons involved at the account of the individual. The amount of the expenses shall be put by the individual to the deposit of the arbitration court. Upon request of the individual the arbitration court shall have the right to give a deferral for depositing of such amount to the individual.

**Article 213.5.** Application of a Bankruptcy Creditor or an Authorised Authority for Acknowledging an Individual Bankrupt

**1.** An application for acknowledging an individual bankrupt can be filed by a bankruptcy creditor or an authorised authority, if there is a court decision that has entered into force and confirms the creditors' claims on monetary obligations, except for the cases cited in Item 2 of this Article.

**2.** Application for acknowledging an individual bankrupt can be filed by a bankruptcy creditor or an authorised authority, if there is no court decision cited in Item 1 of this Article related to the following claims:

claims for making of obligatory payments;

claims based on a protest of a bill by a notary for non-payment, non-acceptance or failure to date acceptance;

claims confirmed by the executive endorsement of a notary;

claims based on documents provided by the creditor and stating monetary obligations acknowledged but not satisfied by the individual;

claims based on notarially certified transactions;

claims based on loan agreements with credit institutions;

claims for charging alimony for underage children, not related to establishment of paternity, contestation of paternity (maternity) or the necessity of involvement of other interested persons.

The right to file with an arbitration court an application for declaring a citizen being an individual businessman bankrupt shall originate with creditors in bankruptcy in respect of the claims cited in this item on condition of preliminary (at least 15 calendar days before the date of applying to the arbitration court) publication of a notice of the intent to file an application for declaring the citizen who is an individual businessman bankrupt by way of inclusion of this notice into the Unified Federal Register of Data on the Facts of Legal Entities' Activities.

**3.** Application of a bankruptcy creditor or an authorised authority for acknowledging an individual bankrupt shall contain the name and address of the self-regulating organisation, out of whose members the financial manager shall be approved.

Attached to the application of a bankruptcy creditor or an authorised authority for acknowledging an individual bankrupt shall be a statement from the unified state register of individual entrepreneurs on existence of the individual entrepreneur status of the individual or other document confirming such information. Such documents shall be received not earlier than five business days before the date of filing the application of the bankruptcy creditor or

the authorised authority for acknowledging an individual bankrupt to the arbitration court.

Attached to the application of a bankruptcy creditor or an authorised authority for acknowledging an individual bankrupt shall also be the documents envisaged by the procedural legislation.

**4.** Funds for payment of remuneration to the financial manager in the amount equal to the fixed amount of remuneration of a financial manager for one procedure applicable in an individual's bankruptcy case shall be put on deposit of the arbitration court. The funds can only be used for payment of remuneration to the financial manager in case of absence of funds for such purpose in the bankruptcy estate.

**5.** A bankruptcy creditor or an authorised authority shall have the right to give their consent to involvement of persons securing fulfillment of obligations of the financial manager. In such case, the application of the bankruptcy creditor or the authorised authority for acknowledging the individual bankrupt shall specify the maximum amount of expenses of the financial manager for payment for services rendered by such persons on the account of the bankruptcy creditor or the authorised authority. The amount of the expenses shall be put by the bankruptcy creditor or the authorised authority to the deposit of the arbitration court. Expenses of the bankruptcy creditor or the authorised authority cannot be borne by the individual.

**6.** An individual shall direct a recall of the application for acknowledging him bankrupt to the arbitration court using the procedure envisaged by Article 47 of this Federal Law.

Together with the documents envisaged by Item 2 of Article 47 of this Federal Law, the following shall be attached to the application for acknowledging an individual bankrupt:

inventory of the individual's assets, specifying its location or place of storage, including pledged assets, specifying the name or surname, first name and patronymic of the pledge holder. The form of the inventory shall be approved by the regulating authority;

information on income gained by the individual for a three-year period preceding the date of filing of the application for acknowledging him bankrupt;

information from the bank on existence of accounts, deposits in the bank and/or the balance of funds on accounts and deposits, statements on balance of electronic money and on transfers of electronic money, statements on operations through accounts and on deposits of individuals, including individual entrepreneurs, in the bank, received not earlier than 10 days prior to direction of the recall of the application for acknowledging the individual bankrupt.

**Article 213.6.** Specifics of Consideration of Justification of the Application for Acknowledging an Individual Bankrupt

**1.** Following the results of consideration of justification of the application for acknowledging the individual bankrupt the arbitration court shall deliver one of the following rulings:

on acknowledging the application justified and initiation of restructuring of the individual's debts;

on acknowledging the application for acknowledging the individual bankrupt unjustified and on leaving it unconsidered;

on acknowledging the application for acknowledging the individual bankrupt unjustified and on termination of proceedings on the individual's bankruptcy case.

**2.** A ruling on acknowledging the application of a bankruptcy creditor or an authorised authority for acknowledging the individual bankrupt justified and on initiation of restructuring of his debts shall be delivered in case, when the application meets the requirements envisaged by Item 2 of Article 213.3 and Article 213.5 of this Federal Law, the claims of the bankruptcy creditor or the authorised authority are acknowledged justified, are not satisfied by the

individual as of the date of meeting of the arbitration court and the insolvency of the individual is proved.

A ruling on acknowledging the application of an individual for acknowledging him bankrupt justified and on initiation of restructuring of his debts shall be delivered, if the application meets the requirements envisaged by Article 213.4 of this Federal Law, and the insolvency of the individual is proven.

In case of delivery by the arbitration court of a ruling on acknowledging the application of the debtor, the bankruptcy creditor or the authorised authority for acknowledging the individual bankrupt justified, and on initiation of restructuring of his debts, the arbitration court shall involve a custody and guardianship authority in consideration of the case of bankruptcy of an individual, if the rights of an underage child or of a person acknowledged legally incapable by the court are concerned within the case.

A ruling on acknowledging the application of a debtor, a bankruptcy creditor or the authorised authority for acknowledging an individual bankrupt unjustified and leaving the application unconsidered shall be delivered, if there is another application for acknowledging the individual bankrupt in case, when as of the date of meeting of the arbitration court dedicated to check of justification of the application for acknowledging the individual bankrupt the claims of the bankruptcy creditor or the authorised authority are satisfied, acknowledged unjustified, if absence of all conditions envisaged by Articles 213.3 - 213.5 of this Federal Law is established, or insolvency of the individual is not proven or as of the date of filing of the application for acknowledging the individual bankrupt the claims of the bankruptcy creditor or the authorised authority are not confirmed by a court act that has entered into force, and there is a dispute between the bankruptcy creditor or the authorised authority and the individual regarding the right that shall be settled through the action proceedings.

A ruling on acknowledging the application of a debtor, a bankruptcy creditor or the authorised authority for acknowledging an individual bankrupt unjustified and on cancellation of proceedings on the individual's bankruptcy case shall be delivered by the arbitration court, if there are no other applications for acknowledging the individual bankrupt in case, when as of the date of meeting of the arbitration court dedicated to check justification of the application for acknowledging the individual bankrupt the claims of the bankruptcy creditor or the authorised authority are satisfied, acknowledged unjustified, or absence of all conditions envisaged by Articles 213.3 - 213.5 of this Federal Law is established, or insolvency of the individual is not proven or as of the date of filing of the application for acknowledging the individual bankrupt the claims of the bankruptcy creditor or the authorised authority are not confirmed by a court act that has entered into force, and there is a dispute between the bankruptcy creditor or the authorised authority and the individual regarding the right that shall be settled through action proceedings.

**3.** For the purpose of this paragraph, insolvency of an individual shall be understood as his incapability to satisfy the claims of creditors on monetary obligations in full and/or to fulfill the obligation of making compulsory payments.

Unless otherwise proven, an individual shall be assumed insolvent, if at least one of the following facts is there:

the individual has stopped settlements with creditors, i.e., stopped fulfilling monetary obligations and/or the obligation of making compulsory payments that are due;

over 10 percent of the total amount of monetary obligations and/or obligation of making obligatory payments that the individual has and that are due, are not fulfilled by him within more than one month from the day when such obligations and/or obligation should have been fulfilled;

the amount of debt of the individual exceeds the value of his assets, including the right to claim;

existence of an order of completion of enforcement proceedings because of the fact that the individual has no property that can be foreclosed.

If there are sufficient grounds to consider that the individual will be able to fully fulfill his monetary obligations and/or the obligation of making compulsory payments that are due within a short time, taking into account the planned receipts of funds, including income from activities of the individual and repayment of debt to him, the individual shall not be acknowledged insolvent.

**4.** The ruling of the arbitration court on acknowledging the application for acknowledging an individual bankrupt justified and on initiation of restructuring of his debts shall contain the specification of:

date of the court meeting for consideration of the individual's bankruptcy case;

approval of a financial manager (surname, first name and patronymic of the insolvency practitioner, name and address of the self-regulating organisation, out of whose members the financial manager is approved).

If the application for acknowledging an individual bankrupt contains the maximum amount of expenses of the financial manager for payment for services of persons involved by the financial manager for ensuring fulfillment of his duties at the account of the person that filed the application, the ruling of the arbitration court on acknowledging of the application for acknowledging the individual bankrupt justified and on initiation of restructuring of his debts shall also contain specification of the amount of expenses.

**5.** The issue of acknowledging the application for acknowledging an individual bankrupt justified and on initiation of restructuring of his debts shall be considered at the meeting of the arbitration court not earlier than upon expiration of 15 days and not later than within 3 months from the date of acceptance of the application for acknowledging the individual bankrupt by the arbitration court.

**6.** The court acts envisaged by Item 1 of this Article and other court acts envisaged by this paragraph shall be subjected to immediate execution, unless otherwise established by this Federal Law.

**7.** Proceedings on an individual's bankruptcy case can be suspended upon the request of the person participating in such case, in case of contestation of rulings on leaving the application for acknowledging the individual bankrupt unconsidered and on termination of proceedings on the individual's bankruptcy case.

Contestation of the ruling on acknowledging the application for acknowledging the individual bankrupt justified and on initiation of restructuring of his debts shall not suspend execution of the ruling.

**8.** Following the results of consideration of justification of the application for acknowledging the individual bankrupt, if the individual does not meet the requirements for approval of a debt restructuring schedule set by Item 1 of Article 213.13 of this Federal Law, the arbitration court shall have the right to deliver a ruling on acknowledging him bankrupt and on initiation of the procedure of sale of the individual's assets on the basis of the request of the individual.

**Article 213.7.** Publishing of Information in the Course of Procedures Applicable in the Case of Bankruptcy of an Individual

**1.** Information subjected to publishing in accordance with this Chapter shall be published by way of its inclusion in the unified federal register of information on bankruptcy and shall not be published in official printed media, except for the information on acknowledging the application for acknowledging the individual bankrupt justified and on initiation of restructuring of his debts and on acknowledging the individual bankrupt and initiation of sale of the individual's assets.

**2.** In the course of the procedures applicable in the individual's bankruptcy cases, publishing of the following information shall be obligatory:

on acknowledging the application for acknowledging the individual bankrupt justified and on initiation of restructuring of his debts;

on acknowledging the individual bankrupt and on initiation of sale of the individual's assets;

on existence or absence of signs of an intended fraudulent bankruptcy;

on termination of proceedings on the individual's bankruptcy case;

on approval, suspension or release of the financial manager;

on approval of the individual's debt restructuring schedule;

on holding of the auction for sell of assets of the individual and on its results;

on cancellation or amending of information and/or court acts containing such information envisaged by paragraphs 2 - 7 of this Item;

on holding of a meeting of creditors;

on decisions of the meeting of creditors, if the meeting of creditors took a decision on publishing of its minutes;

on non-application of the rule of release from fulfillment of obligations to the individual;

on completion of restructuring of the individual's debts;

on completion of sale of the individual's assets;

other information envisaged by this paragraph.

**3.** Procedure for inclusion of information cited in Item 2 of this Article in the unified federal register of information on bankruptcy shall be established by the regulating authority. Creditors and third parties, including credit institutions where the bank account and/or bank deposit of the debtor individual is opened, shall be deemed notified of publishing of information cited in Item 2 of this Article upon the expiration of five business days from the day of inclusion of such information in the unified federal register of information on bankruptcy, unless the other is proven, in particular, if the notification envisaged by paragraph 8 of Item 8 of Article 213.9 of this Federal Law was not received earlier.

**4.** Information shall be published in the course of the procedures applicable in individual's bankruptcy case shall be published at the account of the individual.

Payment for inclusion of information subjected to publishing in accordance with this Chapter, into the unified federal register of information on bankruptcy shall not exceed half of the payment envisaged for inclusion of information subjected to publishing in accordance with this Federal Law in the course of the procedures applicable in cases of bankruptcy of a debtor that is a legal entity.

**5.** An individual shall be identified in the unified federal register of information on bankruptcy by the surname, first name and patronymic (if any) (in case of change of name - also by previous surname, first name and patronymic (if any)), by the date and place of birth, insurance number of individual personal account of the insured person in the system of compulsory pension insurance, taxpayer identification number (if any), place of residence according to documents on registration at the place of residence in the Russian Federation. If the individual has no registration at the place of residence in the Russian Federation, the factual residence of the individual shall be given (name of the Russian Federation constituent entity without specifying the address).

Identification information shall be obligatory for each publishing of information in the course of the procedures applicable in the individual's bankruptcy case. Personal data of the identification information shall be processed in accordance with Item 11 of Part 1 of Article 6 of Federal Law No. 152-FZ of July 27, 2006 On Personal Data.

Identification information shall be given by the individual, financial manager and the arbitration court in all documents and court acts related to bankruptcy of an individual,

including cases of publishing of text of court acts in the internet.

**Article 213.8.** Meeting of Creditors in Case of Bankruptcy of an Individual

**1.** A meeting of creditors shall be convened by a financial manager approved by the arbitration court in case of bankruptcy of an individual.

Together with the persons cited in Item 1 of Article 12 of this Federal Law, the meeting of creditors shall be attended by the individual and/or his representative without the right to vote.

An individual shall have the right to direct an application for holding of the meeting of creditors without his participation and/or participation of his representative to the financial manager.

Failure of the individual and/or his representative to appear at the meeting of creditors shall not impede its holding.

**2.** For the purpose of inclusion in the register of claims of creditors and participation in the first meeting of creditors, the bankruptcy creditors, including those whose claims are secured with pledge of assets of the individual and the authorised authority shall have the right to state their claims to the individual within 2 months from the date of publishing of a notice of acknowledging the application for acknowledging the individual bankrupt justified through the procedure set by Article 213.7 of this Federal Law. In case of default of the said term for a good reason it can be restored by the arbitration court.

Claims of the creditors shall be considered according to the procedure set by Article 71 of this Federal Law.

**3.** A notification of acknowledging the application for acknowledging the individual bankrupt justified by the arbitration court and of initiation of restructuring of his debts shall be directed by the financial manager by post to all creditors of the individual known to it not later than within 15 days from the day of delivery of a ruling on acknowledging the application for acknowledging the individual bankrupt justified by the arbitration court and on initiation of restructuring of his debts. In the said notification the creditors shall also be offered to state their claims in the case of bankruptcy of the individual and the procedure for such stating shall be explained.

**4.** The first meeting of creditors shall be held by the financial manager on business days from 8:00 to 20:00 at the place of consideration of the case of bankruptcy of the individual (in the related settlement) or in the form of an absent voting (without joint attendance). Further, the meeting of creditors can set other time and venue for meeting of creditors.

Upon the request of the persons participating in the case of bankruptcy of an individual, the arbitration court can set other venue for the meeting of creditors or other method of its holding.

**5.** Notification of holding of the meeting of creditors shall be included in the unified federal register of information on bankruptcy not later than 14 days prior to the date of holding of the meeting of creditors. A notification of holding of the meeting of creditors shall be directed by the financial manager to the bankruptcy creditor, the authorised authority and to other person having the right to participate in the meeting of creditors in compliance with this Federal Law, not later than 14 days prior to the date of holding of the meeting of creditors by a registered letter with a notice of delivery.

**6.** A person having the right to participate in the meeting of creditors and wishing to receive an additional notification of holding of the meeting of creditors shall inform the financial manager thereof, specifying the method of its sending (by post, telegraph, fax, electronic communication or other communication and delivery means) and the details necessary for that, and shall preliminarily remit an amount of funds on the bank account of the

financial manager for sending of the additional notification by the selected method. The financial manager shall provide details of his bank account and the amount of funds for sending of the additional notification to the person having the right to participate in the meeting of creditors upon his request. On condition of reimbursement of such funds, the additional notification of holding of the meeting of creditors shall be directed by the financial manager to the related creditor or to the authorised authority not later than 14 days prior to the date of holding of the meeting of creditors.

**7.** By the decision of the insolvency practitioner or the meeting of creditors it can be held without joint attendance of persons having the right to participate in the meeting of creditors for discussing the issues on the agenda and taking decisions on issues put on vote in the form of an absent voting.

If the meeting of creditors is held in the form of absent voting, the voting forms shall be attached to the notification of holding of the meeting of creditors included in the unified federal register of information on bankruptcy.

For holding of the meeting of creditors in the form of an absent voting, the financial manager shall direct notifications of holding of the meeting of creditors to all persons having the right to participate in the meeting of creditors using the procedure established by Article 13 of this Federal Law not later than 30 days prior to the date of holding of the meeting.

Attached to the notification of holding of the meeting of creditors directed to the bankruptcy creditor or to the authorised authority shall be voting forms specifying the name of the bankruptcy creditor or the authorised authority, the amount of claims of the bankruptcy creditor or the authorised authority included in the register of creditors' claims, the number of votes and the percentage of votes of bankruptcy creditors or the authorised authority whose claims are included in the register of creditors' claims as of the date of the meeting of creditors.

A notification of holding of meeting of creditors in the form of an absent voting shall contain:

information on the individual envisaged by Item 5 of Article 213.7 of this Federal Law;

agenda of the meeting of creditors;

date of holding of the meeting of creditors (date of the end of acceptance of the voting forms) that shall not be set earlier than 30 days from the date of direction of the notification of holding of the meeting of creditors in the form of an absent voting;

mail address of the financial manager where the filled out voting forms shall be directed (in such case, use of post office boxes for receipt of the filled out voting forms shall not be allowed);

voting forms;

procedure for sending of filled out voting forms;

procedure for familiarisation with information (materials) subjected to provision in the course of preparation to holding of the meeting of creditors and the address or addresses where the information can be familiarised with;

procedure for familiarisation with decisions of the meeting of creditors.

**8.** A meeting of creditors in the form of absent voting can be held in electronic form with the use of telecommunication channels via organisations providing exchange of public and confidential information through telecommunication channels within the electronic document workflow between the persons participating in the meeting of creditors (hereinafter - operator of electronic document workflow).

**9.** In case of use of electronic systems for holding of the meeting of creditors, the documents and the information that shall be directed in the course of holding of the meeting according to the legislation (including absent voting) shall bear a digital signature of the person that directed the documents and the information.

**10.** At the holding of the meeting of creditors, operator of electronic document workflow shall ensure:

protection and confidentiality of documents and information provided in electronic form;

transfer and delivery of documents and information provided in electronic form in automated mode;

recording of date and time of transfer of documents and information provided in electronic form and the date and time of receipt of such documents and information;

direction of electronic messages to the sender on the date and time of receipt of the documents and information by the recipient;

invariance and integrity of documents and information provided in electronic form;

storage of documents and information provided in electronic form and their details.

**11.** In case of holding of the meeting of creditors in the form of absent voting, the notification of holding of the meeting of creditors included in the unified federal register of information on bankruptcy shall, together with the information established by Article 13 of this Federal Law, contain a direct reference to the website where the information on holding of the meeting of creditors is published.

**12.** Exclusive competence of the meeting of creditors shall include:

taking decisions on approval or refusal to approve the individual's debt restructuring schedule;

taking decisions on approval or refusal to approve the amendments to the individual's debts restructuring schedule;

taking decisions on filing of an application to the arbitration court for cancellation of the individual's debts restructuring schedule, except for the cases envisaged by this Federal Law;

taking decisions on filing of an application to the arbitration court for acknowledging the individual bankrupt and initiation of the sale of the individual's assets, except for the cases envisaged by this Federal Law;

taking decisions on conclusion of an amicable agreement;

other issues referred to the exclusive competence of the meeting of creditors in accordance with this Federal Law.

**13.** In case of holding of a meeting of creditors in the form of absent voting, electronic copies of minutes of the meeting of creditors and the documents considered and/or approved by the meeting shall be attached to the information on the results of the meeting of creditors that shall be included in the unified federal register of information on bankruptcy.

**Article 213.9.** Financial Manager

**1.** Participation of a financial manager in a bankruptcy case shall be obligatory.

**2.** A financial manager approved by the arbitration court in a case of bankruptcy of an individual shall meet the requirements set by this Federal Law for insolvency practitioners for the purpose of his approval in the case of bankruptcy of an individual.

The arbitration court shall approve a financial manager through the procedure set by Article 45 of this Federal Law, taking into account the provisions of Article 213.4 of this Federal Law and this Article.

**3.** Remuneration of the financial manager shall be paid in the form of a fixed amount and the interest set by Article 20.6 of this Federal Law, taking into account the specifics established by this Article.

The fixed amount of remuneration shall be paid to the financial manager once at the completion of the procedure applicable in case of bankruptcy of individuals, independently from the term, for which each procedure was introduced.

**4.** The fixed amount of remuneration for the financial manager shall be paid for the account of funds of the individual, unless otherwise envisaged by this Federal Law.

The interest envisaged by Article 20.6 of this Federal Law shall be paid for the account of funds received as a result of execution of debt restructuring schedule of the individual or sale of his assets.

In case of any disagreements between the financial manager, the individual and the creditors regarding payment for services of persons involved by the financial manager for securing fulfillment of his duties, the disagreement shall be settled through the procedure established by Item 5 of Article 20.7 and Item 1 of Article 60 of this Federal Law.

**5.** The requirement of conclusion by the financial manager of a supplementary agreement of compulsory insurance of his liability related to indemnification of losses inflicted to persons participating in the case of bankruptcy of an individual and other persons in relation to non-fulfillment or undue fulfillment of obligations of the financial manager in the case of bankruptcy of the individual, shall not be applied.

**6.** A financial manager shall have the right to involve other persons on the debtor's account for the purpose of securing fulfillment of his duties only on the basis of a ruling of the arbitration court considering the individual's bankruptcy case.

The arbitration court shall deliver a ruling on involvement of other persons and on establishing of the amount of payment for their services upon the request of the financial manager on condition that the financial manager has justified their involvement and the amount of payment for their services, and in case of consent of the individual.

The request of the financial manager shall be considered by the arbitration court within 10 days from the date of its receipt.

The arbitration court shall inform the persons participating in the individual's bankruptcy case on date and venue of the court meeting using the procedure established by the procedural legislation. Failure of the persons duly informed to appear shall not impede consideration of the request of the financial manager.

If a bankruptcy creditor, bankruptcy creditors and/or authorized body give their consent to payment at the expense thereof for the services of the persons engaged by the financial manager, it is not necessary to consider the cited issue by an arbitration court. The financial manager is not entitled to give such consent in the own name thereof.

**7.** The financial manager shall have the right to:

file applications to the arbitration court in the name of the individual for acknowledging transactions invalid on grounds envisaged by Articles   and 61.3 of this Federal Law and the transactions concluded with violation of this Federal Law;

state objections regarding claims of the creditors;

participate in the procedure of restructuring of debts as a third party not stating independent claims regarding the subject of the dispute, from the part of the individual in all court cases on assets-related disputes (including those on charging of funds from the individual or for the benefit of the individual, on requesting or transfer of assets of the individual or for the benefit of the individual);

obtain information on the property of the individual and on accounts and deposits of the individual, including those on bank cards, on balances of electronic money and on transfer of electronic money from individuals and legal entities (including credit institutions), from state and local authorities;

demand information from the individual on his actions for execution of his debt restructuring schedule;

convene a meeting of creditors for resolving the issue of preliminary coordination of transactions and decisions of the individual in cases envisaged by this Federal Law;

file applications to the arbitration court for taking measures for ensuring the safety of assets of the individual and on cancellation of such measures;

state a refusal from execution of transactions of the individual using the procedure

established by this Federal Law;

receive information from credit bureaus and the Central Catalogue of Credit Histories according to the procedure established by a federal law;

involve other persons for ensuring exercise of his authority only on the ground of a ruling of the arbitration court considering the case of bankruptcy of the individual, on a contractual basis and according to the procedure set by this Chapter;

exercise other rights related to fulfillment of his duties established by this Federal Law.

8. A financial manager shall be obliged to:

take measures for revelation of assets of the individual and ensuring their security;

analyse thye financial standing of the individual;

reveal signs of intended and fraudulent bankruptcy;

keep the register of creditors' claims;

notify creditors on holding of the meeting of creditors in accordance with Item 5 of Article 213.8 of this Federal Law;

convene and/or hold meetings of creditors for consideration of issues related to the competence of the meeting of creditors by this Federal Law;

notify the creditors and the credit institutions where the debtor individual has a bank account and/or a bank deposit, including accounts linked to bank cards, and other debtors of the debtor of initiation of restructuring of the individual's debts or sale of the individual's assets not later than within five business days from the day when the financial manager learned of the existence of a creditor or a debtor;

consider reports on the progress of execution of the individual's debt restructuring schedule provided by the individual and provide conclusions on the progress of execution of such schedules to the meeting of creditors;

control execution of the individual's debt restructuring schedule;

control timely satisfaction by the individual of current claims of creditors, timely and full remittance of funds for satisfaction of claims of creditors;

direct a report of the financial manager to the creditors not less than every quarter, unless otherwise established by the meeting of creditors;

fulfill other duties envisaged by this Federal Law.

9. An individual shall be obliged to provide any information on composition of his assets, their location, composition of his duties, on creditors and other information concerning his bankruptcy case to the financial manager at his request within 15 days from the date of receipt of the request.

In case of non-fulfillment of the said duty by the individual, the financial manager shall file an application to the arbitration court for request of the proof, on the basis of which the arbitration court shall issue the requests to the financial manager with the right to receive the responses personally, according to the procedure established by the procedural legislation.

Concealment of property, property rights or property obligations, information on the amount of the property, its location or other information on property, property rights or property obligations, transfer of property for holding by other persons, alienation or destruction of property and illegal impediment of activities of the financial manager, including avoidance or refusal to provide information to the financial manager in cases envisaged by this Federal Law, transfer of documents necessary for execution of his duties to the financial manager, shall entail liability in accordance with the legislation of the Russian Federation.

10. Information constituting a personal, commercial, business, bank or other secret protected by the law shall be provided to the financial manager in accordance with the requirements of federal laws.

Information that is a personal, commercial, business, bank or other secret protected by the law and received by the financial manager in the course of exercise of his authority shall

not be disclosed, except for the cases established by federal laws.

The financial manager shall bear civil, administrative or criminal liability for disclosure of information that is a personal, commercial, business, bank or other secret protected by the law.

The financial manager shall be obliged to indemnify the damage inflicted through disclosure by him of information that is a personal, commercial, business, bank or other secret protected by the law.

**11.** A refusal from execution of agreements or other transactions of the individual can be stated by the financial manager on grounds envisaged by Article 102 of this Federal Law within three months from the date of initiation of restructuring of the individual's debts.

**12.** A financial manager can be released or suspended by the arbitration court from execution of his duties in case of bankruptcy of the individual in cases and according to the procedure envisaged by Article 83 of this Federal Law as related to the administrative manager.

In case of release or suspension of the financial manager, the arbitration court shall approve a new financial manager through the procedure established by this Article.

Data on issuance by an arbitration court of the judicial act on declaring the financial manager's actions unlawful, on recovering from the financial manager losses in connection with a failure to discharge or to discharge properly the duties thereof in a bankruptcy case of a citizen who is an individual businessman are subject to inclusion into the Unified Federal Register of Data on Bankruptcy within three working days from the date of entry of the judicial act into force.

The report which is subject to inclusion into the Unified State Register of Data on Bankruptcy in compliance with this item in connection with recovery from the financial manager of losses in a bankruptcy case of a citizen who is an individual businessman shall cite the amount of losses recovered from the financial manager in compliance with the judicial act.

The outlays connected with publication of data on dismissal of the financial manager or on the removal of the financial manager from the discharge of the duties imposed thereupon in a bankruptcy case of a citizen being an individual businessman, with declaring his/her actions (omission to act) as unlawful, recovery of losses from the financial manager and inclusion of these data into the Unified Federal Register of Data on Bankruptcy shall be reimbursed on account of such qualified receiver.

**13.** At the latest within 10 days from the date of completion of an appropriate procedure applied in a bankruptcy case of a citizen being an individual businessman the financial manager shall include into the Unified Federal Register of Data on Bankruptcy as data the information on the results of an appropriate procedure (report) in the order established by Article 28 of this Federal Law, subject to the specifics established by this paragraph.

On the basis of the results of implementation of a plan of restructuring debts of a citizen being an individual businessman an appropriate report, along with the data cited in Article 28 of this Federal Law, shall also contain the following data:

dates of rendering the judicial act on introduction of restructuring of debts of the citizen being an individual businessman and of the end of restructuring debts of the citizen being an individual businessman, as well as dates of rendering the judicial acts on changing the time of such procedure;

amount of creditors' claims in compliance with a register of creditors' claims as of the date of rendering the judicial act on termination of restructuring debts of the citizen

data on the date of holding a creditors' meeting on the basis of the results of implementation of a plan of restructuring the citizen's debts and on the decisions adopted by it, as well as data on the resolutive part of the judicial act based on the results of restructuring

the citizens' debts;

data on the number of the debtor's employees and former employees having claims included into a register of creditors' claims for making severance pays and/or for paying labour wages/salaries.

On the basis of the results of sale of the property of a citizen being an individual businessman the appropriate report, along with the data cited in Article 28 of this Federal Law, shall also contain the following data:

the date of rendering judicial acts on introduction of the sale of the property of the citizen and on completing the sale of the citizens' property, as well as the date of rendering the judicial acts on changing the time of such procedure;

the amount of creditors' claims in compliance with a register of creditors' claims as of the date of closing a register of creditors' claims ( in particular marking out the amount of claims for making severance pays and paying wages/salaries of the persons who are working or were working under a labour contract, the principal debt and forfeits (fines, penalties) charged and other financial sanctions) and the total amount of citizen's claims in respect of each line of claims satisfied in the course of restructuring the citizen's debts;

data on the cost of the assets which are not included into the bankruptcy estate, data on the results of evaluation of the debtor's property, if such evaluation has been held, specifying the property, dates of evaluation the property and of the property's costs in compliance with an evaluation report;

data on the date of holding a creditors' meeting on the basis of the results of sale of the citizen's property and on the decisions adopted by it, as well as data on the resolutive part of the judicial act based on the results of sale of the citizen's property;

data on the number of the debtor's employees and former employees that have the claims for making severance pays and/or for paying labour wages included into a register of creditors' claims.

From the date of rendering by an arbitration court the ruling on completion of restructuring a citizen's debts or of the sale of a citizen's property the authority of the financial manager shall be terminated.

**Article 213.10.** Specifics of Legal Status of Creditors whose Claims are Secured by Pledge of the Individual's Assets

**1.** In the period from the date of delivery by the arbitration court of a ruling on acknowledging the application for acknowledging an individual bankrupt justified and to the date of approval of the schedule of restructuring of his debts or to the date of taking by the arbitration court of a decision on acknowledging the individual bankrupt, no foreclosure of the pledged assets, including that in an extrajudicial order, shall be allowed.

For the assets pledged, the restrictions established by Item 4 of Article 18.1 of this Federal Law shall be applicable in the said period.

**2.** After approval by the arbitration court of the individual's debt restructuring schedule, the bankruptcy creditor on obligations secured by pledge of assets of the individual that did not vote for it, shall have the right to file an application to the arbitration court for foreclosure of the pledged assets of the individual that can be satisfied by the arbitration court, except for the case when it is proved that the foreclosure of the assets impedes execution of the individual's debt restructuring schedule.

**3.** The terms related to satisfaction of claims of bankruptcy creditors secured with pledge of assets of the individual shall be contained in the debt restructuring schedule of the individual. Such terms shall be approved by the pledge lender.

If the debt restructuring schedule of the individual does not contain the procedure for satisfaction of creditors' claims secured with pledge of assets of the individual, the order of

sale set by Item 5 of Article 18.1 of this Federal Law shall be applied to such pledged assets.

4. On obligations secured with pledge of assets of the individual the bankruptcy creditor shall have the right to vote at the meeting of creditors in the course of all procedures applicable in the individual's bankruptcy case.

**Article 213.11.** Implications of Initiation of Restructuring of Debts of an Individual

1. From the date of delivery by the arbitration court of a ruling on acknowledging of application for acknowledging an individual bankrupt justified and initiation of restructuring of his debts a moratorium for satisfaction of creditors' claims on monetary obligations and on making compulsory payments shall be introduced, except for the cases envisaged by this Article.

2. The following implications shall occur from the date of delivery by the arbitration court of a ruling on acknowledging of application for acknowledging an individual bankrupt justified and on initiation of restructuring of his debts:

the term for execution of the obligation of making compulsory payments for participation in the case of bankruptcy of the individual created before acceptance by the arbitration court of the application for acknowledging the individual bankrupt shall be deemed due;

claims of creditors on monetary obligations and on making compulsory payments, except for current payments, claims for acknowledging the property right, for requesting the property from unlawful possession by other persons, for acknowledging transactions invalid and on application of implications of invalidity of void transactions can only be stated through the procedure established by this Federal Law. Notices of claims stated not within the framework of the case of the individual's bankruptcy and not considered by the court before the date of initiation of restructuring of debts of the individual shall be left unconsidered by the court after such date;

charging of forfeits (penalties or late payment fees) and other financial sanctions, including interest on all obligations of the individual, except for current payments shall be stopped;

suspended shall be execution of enforcement documents on property penalties to be charged from the individual, excluding the enforcement documents on demands for indemnification of damage to life or health, on cases of requesting property from unlawful possession by other persons, for elimination of obstacles to possession of such property, on acknowledging the title to the property, on charging of alimony and on demands for foreclosure of the pledged residential premises, if, as of the date of introduction of such procedure the creditor that is the pledge holder gave its consent to retainment of the pledged residential premises within the enforcement proceedings in accordance with Item 5 of Article 61 of Federal Law No. 102-FZ of July 16, 1998 On Mortgage (Pledge of Real Estate). The ground for suspension of execution of enforcement documents shall be a ruling of the arbitration court considering the case of bankruptcy of the individual, on acknowledging the application for acknowledging the individual bankrupt justified and on initiation of restructuring of debts of the individual.

Agreements on refusal of the individual from preparation and presenting of his debt restructuring schedule shall be void.

3. Upon the request of the creditor or the financial manager the arbitration court shall have the right to take measures for securing claims of creditors and interests of the individual in accordance with arbitration procedural legislation, including setting a veto on disposal of a part of assets of the individual, including prohibition of holding auctions for sale of assets of the individual.

4. Initiation of restructuring of debts of an individual shall be the ground for unilateral

refusal by the creditor from execution of the agreement envisaging satisfaction by the individual of claim of such creditor in a non-monetary form. It can be declared on the unilateral refusal in the process of setting claims of the creditor to the individual in the case of his bankruptcy.

**5.** In the course of restructuring of debts of the individual he can conclude transactions or several related transactions upon the written preliminary consent of the financial manager:

for purchase, alienation or in relation with the possibility of direct or indirect alienation of property whose value is more than 50 thousand roubles, real estate, securities, interest in the authorised capital and transport vehicles;

for obtaining and issuance of borrowings (loans), issuance of sureties and guarantees, cession of rights to claim, transfer of debt and establishment of trust management of assets of the individual;

for pledge of assets of the individual.

In case of any disagreement related to conclusion of such transactions between the individual and the financial manager they shall have the right to refer to the arbitration court considering the individual's bankruptcy case for its settlement.

From the date of initiation of restructuring of debts of the individual he shall have no right to deposit his assets as a contribution or a share contribution in the authorised capital or unit fund of the legal entity, to acquire interest (shares or units) in the authorised (share) capitals or unit funds of legal entities or to conclude transactions without consideration for the individual.

In case of carrying out by credit institutions of operations on bank accounts and bank deposits of individuals, including accounts linked to bank cards with violation of the rules established by this Item, credit institutions can only be brought to liability, if, by the moment of the operation, the credit institution had known or should have known of initiation of restructuring of debts of the individual, taking into account Item 3 of Article 213.7 and paragraph 8 of Item 8 of Article 213.9 of this Federal Law.

**6.** From the date of introduction of restructuring of debts of the individual his debt to the creditor that is a credit institution shall be acknowledged bad debt.

**Article 213.12.** Procedure for Provision of Draft Schedule of Restructuring of Debts of an Individual

**1.** In the course of restructuring of debt of an individual, he, the creditor or the authorised authority shall have the right to direct a draft schedule for restructuring of his debts to the financial manager, bankruptcy creditors and the authorised authority not later than within 10 days from the day of expiration of the term envisaged by Item 2 of Article 213.8 of this Federal Law.

**2.** Draft schedule of restructuring of debts of an individual with attachment of the documents envisaged by this Federal Law shall be directed by the individual, the bankruptcy creditor or the authorised authority to the financial manager, the individual (if the draft schedule of restructuring of debts of the individual is provided by the bankruptcy creditor or the authorised authority), bankruptcy creditors or the authorised authority by a registered letter with a notice of delivery or shall be handed over personally.

Information on the procedure and the place for familiarisation with the draft schedule of restructuring of debts of the individual and the documents attached to it shall also be published through the procedure established by Article 213.7 of this Federal Law.

**3.** If the financial manager has received two or more draft schedules of restructuring of debts of the individual directed by the persons cited in Item 1 of this Article, the financial manager shall submit them to the meeting of creditors for consideration.

**4.** If the financial manager has not received any draft schedules of restructuring of

debts of the individual within the term established by this Article, the financial manager shall submit a proposal for acknowledging the individual bankrupt and initiation of sale of assets of the individual to the meeting of creditors for consideration.

5. Not earlier than 20 days from the date of directing the draft schedule of restructuring of debts of the individual to bankruptcy creditors and to the authorised authority, but not later than within 60 days from the day of expiration of the term cited in Item 2 of Article 213.8 of this Federal Law, the financial manager shall be obliged to hold the first meeting of creditors. The arbitration court shall have the right to postpone its holding until completion of consideration of creditors' claims.

The financial manager shall be obliged to present a report on its activities, information on financial standing of the individual, the draft schedule of restructuring of debts of the individual (if any), his objections concerning the presented draft schedule and/or a proposal for its improvement (if there are such objections and/or proposals) for consideration of the first meeting of creditors or in case envisaged by Item 4 of this Article, a proposal for acknowledging the individual bankrupt and introduction of sale of assets of the individual.

6. The draft schedule of restructuring of debts of the individual shall be considered by the meeting of creditors using the procedure established by this Federal Law.

7. Not later than 5 days before the date of meeting of the arbitration court dedicated to consideration of the case of bankruptcy of the individual the financial manager shall be obliged to submit a report on his activities, information on financial standing of the individual, minutes of meeting of creditors that considered the draft schedule of restructuring of debts of the individual, attaching the documents envisaged by Item 7 of Article 12 of this Federal Law, to the arbitration court.

**Article 213.13.** Requirements for the Individual Regarding whose Debt the Restructuring Schedule can be Presented

1. A schedule of restructuring of debts of the individual can be presented in respect of debt of the individual that meets the following requirements:

the individual has a source of income as of the date of provisions of the debt restructuring schedule;

the individual does not have any unexpunged or outstanding conviction for an intended crime in the sphere of economy and the term, within which the individual is deemed subjected to administrative punishment for a minor larceny, intended destruction or damaging of property or intended or fraudulent bankruptcy, has expired before the date of acceptance of the application for acknowledging the individual bankrupt;

the individual has not been acknowledged bankrupt within five years preceding provision of his debt restructuring schedule;

the schedule of restructuring of debts of the individual had not been approved within 8 years preceding provision of the schedule.

2. The individual shall be obliged to notify creditors of:

facts of bringing of the individual to administrative liability for a minor larceny, intended destruction or damaging of property, unlawful actions in the course of bankruptcy, fraudulent or intended bankruptcy;

criminal and administrative cases against the individual known to him and on existence of outstanding or unexpunged conviction;

on taken decisions on acknowledging the individual bankrupt or on executed schedules for restructuring of his debts within 8 years preceding the provision of the individual's debt restructuring schedule.

Information envisaged by this Item shall be given in the debt restructuring schedule of the individual.

**Article 213.14.** Contents of the Debt Restructuring Schedule of an Individual

**1.** A debt restructuring schedule of an individual shall contain provisions on the procedure and the terms of proportional repayment of claims and interest for the total amount of claims of all bankruptcy creditors and the authorised authority known to the individual as of the date of direction of his debt restructuring schedule to the bankruptcy creditors and to the authorised authority, in monetary form.

Procedure for notification of bankruptcy creditors and the authorised authority on an essential change of the property position of the individual and criteria of essential change of his property position shall be set in his debt restructuring schedule.

**2.** The term for execution of the debt restructuring schedule of an individual shall not exceed three years. If the debt restructuring schedule of an individual is approved by the arbitration court according to the procedure set by Item 4 of Article 213.17 of this Federal Law, the term for execution of such schedule shall not exceed 2 years.

**3.** The terms of debt restructuring schedule of an individual for bankruptcy creditors and the authorised authority that voted against its approval or did not participate in the voting shall not be worse than those for bankruptcy creditors and the authorised authority that voted for its approval.

For creditors on obligations secured with pledge of assets of the individual, the debt restructuring schedule of the individual shall envisage priority satisfaction of their claims at the account of proceeds from the sale of the pledged assets. The funds received from sale of the pledged assets in full, but not more than in the amount of principal receivable on the obligation secured with pledge and the interest due (payment for utilisation of funds) shall be directed to the bankruptcy creditor whose rights are secured with pledge of assets of the individual. Any exclusion of such priority satisfaction from the debt restructuring schedule shall only be possible with the consent of the creditor whose claim is secured with pledge of the respective assets of the individual.

Terms of the debt restructuring schedule of the individual for creditors on obligations secured with pledge of his assets that voted against its approval or did not participate in the voting, shall not be worse than those for creditors on obligations secured with pledge of assets of the individual that voted for its approval.

**4.** Claims of the creditors, to which the individual is liable for inflicting damage to life or health as well as demands to payment of alimony, retirement benefits, payment for work of persons hired under a labour agreement and payment of remuneration to authors of intellectual activities results shall not be included in the debt restructuring schedule of the individual.

**5.** The debt restructuring schedule of the individual shall envisage satisfaction of claims of bankruptcy creditors and the authorised authority proportionally to the sum of claims of creditors included in the debt restructuring schedule of the individual.

With the consent of an individual bankruptcy creditor and/or the authorised authority, the debt restructuring schedule of the individual can contain a provision on partial satisfaction of claims of the person that gave the consent.

**6.** In cases envisaged by this Federal Law, the debt restructuring schedule of the individual can contain provisions on the procedure and the terms for sale of the assets that are the subject of pledge (mortgage).

**Article 213.15.** Documents to be Attached to the Debt Restructuring Schedule of an Individual

**1.** The following shall be attached to the debt restructuring schedule of an individual:

list of property and property rights of the individual;

information on sources of income of the individual over 6 months preceding submittal of his debt restructuring schedule to the arbitration court;

information on accounts payable, including debt on current obligations;

the credit report received from a credit bureau or the document confirming absence of credit history of the individual, received from a credit bureau;

statement of the individual on reliability and completeness of documents attached, and on compliance of the individual with the requirements of Article 213.13 of this Federal Law;

application of the individual for approval of his debt restructuring schedule and on objection of the individual regarding such schedule, if the schedule is offered by the bankruptcy creditor or the authorised authority.

**2.** Attached to the list of property and property rights of the individual envisaged by Item 1 of this Article shall be copies of the documents confirming such property rights of the individual (if any).

**Article 213.16.** Approval of the Debt Restructuring Schedule of an Individual by the Meeting of Creditors

Decision of the meeting of creditors regarding approval of the debt restructuring schedule of an individual shall be taken by the majority of votes of the total number of votes of bankruptcy creditors and the authorised authorities whose claims are included in the register of creditors' claims.

**Article 213.17.** Consideration of the Debt Restructuring Schedule of an Individual by the Arbitration Court

**1.** The debt restructuring schedule of an individual approved by the meeting of creditors shall be approved by the arbitration court after the individual has satisfied claims on current obligations subjected to satisfaction in accordance with this Federal Law and repayment of debt to creditors of the first and the second priority, whose claims are included in the register of creditors' claims.

**2.** If the meeting of creditors has not approved the debt restructuring schedule of an individual, the arbitration court shall postpone consideration of approval of such schedule, if there is an application of the person participating in the case of bankruptcy of the individual for granting an additional term for improvement of the schedule.

An additional term for improvement of the debt restructuring schedule of an individual granted by the arbitration court in accordance with this Item shall not exceed two months.

**3.** Following the results of consideration of the debt restructuring schedule of an individual in accordance with this Article, the arbitration court shall deliver one of the following rulings:

on approval of the debt restructuring schedule of the individual;

on postponing of consideration of approval of the debt restructuring schedule of the individual;

on refusal to approve the debt restructuring schedule of the individual, on acknowledging the individual bankrupt and on initiation of sale of the individual's assets.

**4.** If the meeting of creditors has not approved the debt restructuring schedule of the individual, the arbitration court shall have the right to approve it on condition that its implementation makes it possible to fully satisfy claims of bankruptcy creditors on obligations secured by pledge of assets of the individual, other claims of bankruptcy creditors and claims of the authorised authority included in the register of creditors' claims, in the amount essentially higher that the bankruptcy creditors and/or the authorised authority could have obtained as a result of immediate sale of assets of the individual and distribution of his average monthly income for 6 months, and such amount is not less than 50 percent of the

amount of claims of such creditors and the authorised authority.

5. Court acts envisaged by this Article can be contested.

**Article 213.18.** Grounds for Refusal to Approve the Debt Restructuring Schedule of an
Individual by the Arbitration Court

The arbitration court shall deliver a ruling on refusal to approve the debt restructuring schedule of an individual in the cases of:

provision of the debt restructuring schedule of the individual as related to his debt that does not comply with the requirements of this Federal Law;

non-fulfillment by the individual of the obligation of notification of creditors of circumstances envisaged by Item 2 of Article 213.13 of this Federal Law, if there is a corresponding application of the bankruptcy creditor or the authorised authority;

violation of the procedure for taking a decision by the meeting of creditors on approval of the debt restructuring schedule of the individual, established by Article 213.16 of this Federal Law;

existence of unreliable information in the debt restructuring schedule of the individual and in the documents attached thereto;

contradiction of the debt restructuring schedule of the individual with this Federal Law, other federal laws and other regulatory legal acts of the Russian Federation.

**Article 213.19.** Implications of Approval of the Debt Restructuring Schedule of an
Individual

1. The following implications shall occur from the date of approval of the debt restructuring schedule of an individual by the arbitration court:

claims of creditors included in the schedule can only be stated to the individual according to the procedure and on conditions envisaged by the schedule;

claims of creditors not included in the schedule can be stated to the individual through the procedure established by this Federal Law, taking into account the specifics envisaged by this Chapter;

creditors shall have no right to state claims for reimbursement of losses incurred by them in relation to approval of the schedule;

termination of monetary obligations of the individual by way of setting off of a counter claim of the same kind shall not be allowed, except for the cases, when it is envisaged by the said schedule;

measures for securing of claims of creditors and interests of the individual taken by the arbitration court earlier shall be cancelled;

arrest of assets of the individual and other restrictions of disposal of the assets owned by the individual can only be set within the proceedings on the case of the individual's bankruptcy;

forfeits (penalties, late payment fees) and other sanctions for non-fulfillment or undue fulfillment of monetary obligations and making obligatory payments, the claims regarding which are included in the said schedule and the interest payable for such non-execution or undue execution shall not be charged, except for current payments;

the individual shall be obliged to notify the bankruptcy creditors and the authorised authority in writing on essential change of his property position within 15 days from the day of occurrence of such changes using the procedure established by the debt restructuring schedule of the individual. The criteria for an essential change of the property position of the individual shall be set in the debt restructuring schedule of the individual.

2. Interest shall be charged on the amount of claims of the bankruptcy creditor or the authorised authority included in the debt restructuring schedule of the individual approved by

the arbitration court, according to the procedure and in the amount envisaged by this Item.

Interest on the amount of claims of the bankruptcy creditor or the authorised authority expressed in the currency of the Russian Federation shall be charged in the amount of the refinancing rate set by the Central Bank of the Russian Federation as of the date of approval of the debt restructuring schedule of the individual.

Interest on the amount of claims of the bankruptcy creditor expressed in a foreign currency and defined in roubles at the rate set by the Central Bank of the Russian Federation as of the date of introduction of restructuring of the individual's debts shall be charged in the amount established by the agreement, but not more than in the amount of the refinancing rate set by the Central Bank of the Russian Federation as of the date of approval of the debt restructuring schedule.

An agreement between the financial manager and the bankruptcy creditor can envisage a less amount of interest payable or a shorter term for charging of the interest as against the amount or the term envisaged by this Item.

The interest envisaged by this Article shall be charged by the financial manager after full satisfaction of creditors' claims in accordance with the register of creditors' claims and on condition of sufficiency of funds of the individual for payment of the interest.

The period of interest charging shall start from the date of initiation of restructuring of debts of the individual and end on the date of delivery by the arbitration court of a ruling on termination of proceedings on the case of bankruptcy of the individual, the date of satisfaction of the said claims by the individual or a third party in the course of restructuring of debts of the individual or the date of delivery of a ruling on cancellation of the debt restructuring schedule of the individual and on acknowledging him bankrupt.

The interest envisaged by this Article shall not be taken into account in case of calculation of the number of votes of the bankruptcy creditor or the authorised authority at the meetings of creditors.

3. Within the term for execution of the debt restructuring schedule of an individual and five years after completion of its execution the individual, for whose debt the schedule is approved, shall have no right to conceal the fact of execution of such schedule when applying for a loan and also when purchasing goods (work or services) envisaging a payment deferral or payment by installments.

4. Bankruptcy creditors and the authorised authority whose claims are not included in the debt restructuring schedule of an individual shall have the right to state their claims within the term, for which such schedule is approved, using the procedure established by this Federal Law.

Such claims included in the register of creditors' claims shall be satisfied on standard conditions envisaged by the debt restructuring schedule of the individual.

**Article 213.20.** Amending the Debt Restructuring Schedule of an Individual upon the Initiative of the Individual and Extension of Term for Execution of the Schedule

1. An individual shall have the right to direct proposals on making amendments to his debt restructuring schedule to the financial manager.

Amendments to be made to the debt restructuring schedule of an individual shall be approved by the arbitration court.

2. Within 15 days from the day of receipt by the financial manager of the individual's proposal for making amendments to his debt restructuring schedule the financial manager shall be obliged to direct such schedule with the amendments thereto to bankruptcy creditors and to the authorised authority by a registered letter with a notice of delivery.

3. For consideration of approval of the amendments to be made to the debt restructuring schedule of an individual, the meeting of creditors shall be convened by the

financial manager within a month from the date of direction of the said schedule with the amendments to the bankruptcy creditors and to the authorised authority.

Following the results of consideration of the amendments to be made to the debt restructuring schedule of an individual, the meeting of creditors shall take a decision on approval of the amendments or refusal to approve the amendments.

4. The amendments to be made by the individual to his debt restructuring schedule shall be approved by the meeting of creditors by the majority of votes of the total number of votes of bankruptcy creditors and the authorised authority, whose claims are included in the register of creditors' claims.

5. Following the results of consideration of the amendments to the debt restructuring schedule of an individual, the arbitration court shall deliver one of the following rulings:

on approval of the amendments to the said schedule, in case of their approval by the meeting of creditors;

on postponing of consideration of approval of the amendments to the schedule, if the board of directors refuse their approval in case of existence of the request envisaged by Item 2 of Article 213.17 of this Federal Law;

on refusal to approve the amendments to the schedule.

The rulings cited in paragraphs 2 and 4 of this Item can be contested.

6. Upon the application of an individual the arbitration court can extend the term for execution of the debt restructuring schedule of the individual, but by not more than the maximum term for its execution, if the extension is approved by the meeting of creditors through the procedure established by this Article.

The arbitration court shall extend the term for execution of the debt restructuring schedule of an individual by up to three years without consent of the meeting of creditors, if the individual presents a proof that execution of the schedule within the term specified in it appeared to be impossible because of a contingency.

On extension of the term for execution of the debt restructuring schedule of an individual the arbitration court shall deliver a ruling that can be contested.

**Article 213.21.** Amending the Debt Restructuring Schedule of an Individual upon the Initiative of the Meeting of Creditors

1. A meeting of creditors shall have the right to file an application to the arbitration court for making amendments to the debt restructuring schedule of an individual in case of improvement of the property position of the latter.

The application shall contain:

evidence of the capability of satisfaction by the debtor of claims included in his debt restructuring schedule within a shorter term and/or satisfaction of more creditors' claims than the schedule contains;

evidence of improvement of property position of the individual as against his property position as of the date of approval of his debt restructuring schedule;

proposals on amending the debt restructuring schedule of the individual.

2. Decision of the meeting of creditors on filing of an application to the arbitration court for making amendments to the debt restructuring schedule of the individual shall be taken by the majority of votes of bankruptcy creditors and the authorised authority, whose claims are included in the register of creditors' claims.

3. Of the date of consideration of the application of the meeting of creditors for making amendments to the debt restructuring schedule of an individual the arbitration court shall inform the persons participating in the individual's bankruptcy case. Failure of the persons duly informed to appear shall not impede consideration of the application.

4. Following the results of consideration of the application of the meeting of creditors

for making amendments to the debt restructuring schedule of an individual the arbitration court shall deliver one of the following rulings:

on approval of the amendments to be made to the debt restructuring schedule of the individual;

on refusal to approve the amendments to the debt restructuring schedule of the individual.

The said rulings can be contested.

**Article 213.22.** Completion of Execution of the Debt Restructuring Schedule of an Individual

**1.** Not later than a month before expiration of the set term for execution of the debt restructuring schedule of an individual the financial manager shall be obliged to prepare a report on the results of execution by the individual of the debt restructuring schedule approved by the arbitration court.

The said report with the attached copies of documents confirming satisfaction of claims of creditors shall be directed to the bankruptcy creditors and to the authorised authority, whose claims are included in the debt restructuring schedule of the individual, and to the arbitration court.

**2.** Information on the place and procedure for familiarisation with the documents envisaged by Item 1 of this Article shall be published according to the procedure established by Article 213.7 of this Federal Law.

**3.** If claims of creditors included in the debt restructuring schedule of an individual are not satisfied as of the date of consideration of the report cited in Item 1 of this Article or it is not provided within the term set in Item 1 of this Article, the financial manager, the bankruptcy creditor or the authorised authority shall convene the meeting of creditors for consideration of referral to the arbitration court with an application for cancellation of the debt restructuring schedule of the individual and for acknowledging him bankrupt.

The meeting of creditors shall be held not later than 14 days prior to expiration of the term for execution of the debt restructuring schedule of the individual.

**4.** After receipt of the report cited in Item 1 of this Article or of the application of the meeting of creditors for cancellation of the debt restructuring schedule of an individual and for acknowledging him bankrupt or upon the expiration of the term for holding of the meeting of creditors envisaged by Item 3 of this Article, the arbitration court shall assign a date of meeting for consideration of the results of execution of the schedule and complaints of the creditors regarding actions of the individual and/or the financial manager. Of the date and the venue of the court meeting the arbitration court shall inform the persons participating in the bankruptcy case of the individual using the procedure set by this Federal Law.

**5.** Following the results of consideration of the results of execution of the debt restructuring schedule of an individual and complaints of creditors the arbitration court shall issue one of the following court rulings:

on completion of restructuring of debts of the individual, if the debt envisaged by such schedule is repaid and the claims of creditors are acknowledged unjustified;

on cancellation of the schedule and a decision on acknowledging the individual bankrupt, if there are grounds for cancellation of the schedule.

**Article 213.23.** Cancellation of the Debt Restructuring Schedule of an Individual

**1.** The arbitration court shall cancel the debt restructuring schedule of an individual in cases of:

unreliable information in the schedule and the documents attached thereto;

non-fulfillment by the individual of the obligation of notification of creditors of

circumstances envisaged by Item 2 of Article 213.13 of this Federal Law, if there is the respective request of the bankruptcy creditor or the authorised authority;

non-fulfillment by the individual of obligations to the bankruptcy creditor or the authorised authority in accordance with terms of the said plan, if there is a respective request of the bankruptcy creditor or the authorised authority, whose claims are included in the said schedule.

2. In case of non-fulfillment by the individual of obligations to the bankruptcy creditor or the authorised authority in accordance with the terms of the debt restructuring schedule of the individual, the bankruptcy creditor or the authorised authority, the obligations to which are not fulfilled and whose claims are included in the debt restructuring schedule of the individual, shall have the right to apply to the arbitration court for cancellation of the debt restructuring schedule of the individual.

The evidence of directing a copy of the application of the bankruptcy creditor or the authorised authority for cancellation of the debt restructuring schedule of the individual to such individual shall be attached to the application.

The application of the bankruptcy creditor or the authorised authority for cancellation of the debt restructuring schedule of the individual shall be considered by the arbitration court within 15 days from the date of its receipt.

If the individual failed to fulfill his obligations to the bankruptcy creditor or the authorised authority in accordance with the terms of the debt restructuring schedule of the individual as of the date of the court meeting for consideration of the application of the bankruptcy creditor or the authorised authority for cancellation of the debt restructuring schedule of the individual, the arbitration court shall cancel such schedule.

3. The debt restructuring schedule of an individual can be cancelled by the arbitration court only as related to bankruptcy creditors and the authorised authority, whose claims are included in the schedule. In such case, the arbitration court shall deliver a ruling on cancellation of the debt restructuring schedule of the individual and take a decision on acknowledging him bankrupt.

4. Claims of bankruptcy creditors and the authorised authority included in the debt restructuring schedule of an individual cancelled by the arbitration court shall be recorded in the register of claims of creditors to the extent, to which they shall have been satisfied as of the date of cancellation of the schedule and shall be satisfied within claims of creditors of the third priority.

5. Information on cancellation of the debt restructuring schedule of an individual and on acknowledging him bankrupt shall be published by the financial manager through the procedure established by Article 213.7 of this Federal Law within five days from the date of delivery by the arbitration court of a ruling on cancellation of the debt restructuring schedule of the individual and taking a decision by the arbitration court on acknowledging him bankrupt.

**Article 213.24.** Decision of the Arbitration Court on Acknowledging an Individual Bankrupt

1. Arbitration court shall take a decision on acknowledging an individual bankrupt in the cases when:

the individual, the bankruptcy creditors and/or the authorised authority has not provided a debt restructuring schedule of the individual within the term set by this Federal Law;

the meeting of creditors has not approved the debt restructuring schedule of the individual, except for the case envisaged by Item 4 of Article 213.17 of this Federal Law;

the arbitration court has cancelled the debt restructuring schedule of the individual;

proceedings on the case of bankruptcy of the individual are resumed in cases established by Item 3 of Article 213.29 or Item 7 of Article 213.31 of this Federal Law;

in other cases envisaged by this Federal Law.

**2.** If the arbitration court takes a decision on acknowledging an individual bankrupt, it shall take a decision to initiate sale of assets of the individual. Sale of the individual's assets shall be introduced for a term not exceeding six months. Such term can be extended by the arbitration court for an individual that is not an individual entrepreneur or an individual entrepreneur upon the request of the persons participating in the bankruptcy case.

When taking a decision on acknowledging an individual bankrupt, the arbitration court shall approve a person that executed duties of a financial manager and participated in the procedure of restructuring of the individual's debts, as a financial manager for participation in the procedure of sale of the individual's assets, unless other candidate is offered by the meeting of creditors by the moment of acknowledging the individual bankrupt.

**3.** In case of acknowledging an individual bankrupt, the arbitration court shall have the right to deliver a ruling on temporary restriction of the right of the individual to exit the Russian Federation.

Temporary restriction of the right of the individual to exit the Russian Federation shall be in force until the date of delivery of a ruling on termination of proceedings on the individual's bankruptcy case, including that as a result of approval of an amicable agreement by the arbitration court. If there is a justifiable reason, by which exit of the individual from the Russian Federation is required, the arbitration court shall have the right to cancel the temporary restriction of the right to exit early, upon the request of the individual and taking into account opinions of the creditors and the financial manager.

Copies of rulings on setting of a temporary restriction of the right of the individual to exit the Russian Federation and on cancellation of the set temporary restriction shall be directed to the individual, to a territorial body of the federal executive authority authorised to control and supervise in the sphere of migration and to the border authorities.

**4.** In the course of the procedure of sale of the assets of the individual, claims of bankruptcy creditors and the authorised authority shall be subjected to consideration according to the procedure envisaged by Article 100 of this Federal Law. The term for closing of the register not complied with through a justifiable reason can be recovered by the arbitration court.

**5.** A credit institution shall be obliged to notify the financial manager on deposits, accounts, other property in it and on an agreement of rent of a safety deposit box of the individual acknowledged bankrupt not later than within five business days from the day when it became known or should have become known of acknowledging the individual bankrupt.

**Article 213.25.** Assets of an Individual Subjected to Sale in Case of Acknowledging him Bankrupt and Initiation of Sale of his Assets

**1.** All assets of an individual that he has as of the date of taking a decision by the arbitration court on acknowledging him bankrupt and on introduction of sale of the individual's assets, and revealed or purchased after the date of taking of the said decision shall compose the bankruptcy estate, except for the assets determined by Item 3 of this Article.

**2.** Upon the motivated request of the individual and other persons participating in the case of bankruptcy of the individual, the arbitration court shall have the right to exclude the assets of the individual that can, in accordance with a federal law, be foreclosed under enforcement documents and the income from whose sale would not essentially influence satisfaction of claims of the creditors, from the bankruptcy estate. The total value of assets of the individual excluded from the bankruptcy estate in accordance with the provisions of this Item shall not exceed 10 thousand roubles.

The list of assets of the individual to be excluded from the bankruptcy estate in accordance with the provisions of this Item shall be approved by the arbitration court, on

which a ruling shall be delivered that can be appealed against.

**3.** Assets that cannot be foreclosed in accordance with the civil procedural legislation shall be excluded from the bankruptcy estate.

A ruling on exclusion of the assets of the individual from the bankruptcy estate or on refusal of such exclusion can be appealed against.

**4.** A bankruptcy estate can include assets of the individual that compose his share in shared assets that cannot be foreclosed in accordance with the civil legislation or family legislation. A creditor shall have the right to state a demand for separation of the share of the individual from the shared assets for its foreclosure.

**5.** From the date of acknowledging the individual bankrupt:

all rights related to the assets that compose the bankruptcy estate, including the right to dispose it, shall only be exercised by the financial manager in the name of the individual and shall not be exercised by the individual personally;

transactions concluded by the individual personally (without involvement of the financial manager) in respect of the property composing the bankruptcy estate shall be void. Claims of creditors on transactions of the individual concluded by him personally (without involvement of the financial manager) shall not be satisfied at the account of the bankruptcy estate.

**6.** In the course of sale of assets of the individual in the name of the individual, the financial manager shall:

dispose of funds of the individual on accounts and in deposits in credit institutions;

open and close accounts of the individual in credit institutions;

exercise rights of a participant of a legal entity held by the individual, including voting at the general meeting of participants;

run the court cases related to property rights of the individual, including those on requesting or transfer of assets of the individual or for the benefit of the individual and on charging of debt of third parties to the individual. The individual shall also have the right to participate in such cases personally.

**7.** From the date of acknowledging the individual bankrupt:

registration of transfer or encumbrance of title of the individual to the assets, including real estate and uncertified securities shall only be carried out on the basis of an application of the financial manager. Applications of the individual filed before such date shall not be executed;

fulfillment of their obligations to the individual related to transfer of assets to him by third parties, including obligations of payment of funds shall only be possible as related to the financial manager and shall be prohibited as related to the individual personally;

the debtor shall have no right to open bank accounts and deposits in credit institutions and obtain funds on them personally.

**8.** Credit institutions can be brought to a liability for carrying out of operations under an order of the individual, for whose property the assets sale procedure has been initiated, or under a power of attorney issued by him personally under a bank deposit and/or bank account agreement, including operations with the bank card, only in the case when they have been duly informed of initiation of the individual's assets sale procedure, taking into account Item 3 of Article 213.7 and paragraph 8 of Item 8 of Article 213.9 of this Federal Law.

**9.** Not later than within one business day following the day of acknowledging him bankrupt the individual shall be obliged to hand over all his bank cards to the financial manager. Not later than within one business day following the day of their receipt, the financial manager shall be obliged to take measures for blocking of operations with the bank cards received for remittance of funds on the primary account of the debtor with the use of bank cards.

**Article 213.26.** Specifics of Sale of Assets of an Individual

**1.** Within one month from the date of end of inventory and evaluation of assets of an individual the financial manager shall be obliged to submit a provision on the procedure, the terms and the period for sale of the individual's assets specifying the initial sales price, to the arbitration court. The provision shall be approved by the arbitration court and shall comply with the rules for sale of the individual's assets established by Articles 110, 111, 112, 139 of this Federal Law.

A ruling shall be delivered on approval of the provision on the procedure, the terms and the period for sale of the individual's assets and on setting of the initial sales price. The ruling can be appealed against.

For assets located outside the Russian Federation, an individual ruling shall be delivered that shall be executed by the rules of procedural legislation of the country where the assets are located, or in accordance with international agreements of the Russian Federation with the country where the assets are located.

**2.** Assets of the individual included in the bankruptcy estate in accordance with this Federal Law shall be evaluated by the financial manager independently, on which the financial manager shall take a decision in writing. The evaluation can be appealed against by the individual, the creditors or the authorised authority in the case of bankruptcy of the individual.

A meeting of creditors shall have the right to take a decision on evaluation of assets of the individual or a part of the assets included in the bankruptcy estate in accordance with this Federal Law, involving a valuer and compensating expenses for the evaluation at the account of the persons that voted for taking of the decision.

**3.** Assets of the individual or a part of the assets shall be subjected to sale on an auction through the procedure set by this Federal Law, unless otherwise envisaged by a decision of the meeting of creditors or a ruling of the arbitration court. Jewelry and other luxury items whose value exceeds 100 thousand roubles and the real estate independently from its value shall be sold on a public auction through the procedure set by this Federal Law.

**4.** A subject of pledge shall be sold using the procedure set by Items 4, 5, 8 - 19 of Article 110 and Item 3 of Article 111 of this Federal Law, considering provisions of Article 138 of this Federal Law with the specifics set by this Item.

Initial sales price of a subject of pledge, the procedure and the terms of the auction shall be determined by the bankruptcy creditor, whose claims are secured with pledge of the assets to be sold.

If there is a disagreement between the bankruptcy creditor regarding obligations secured with pledge of assets of the individual and the financial manager regarding the procedure and the terms of the auction for sale of the pledged assets, each of them shall have the right to refer to the arbitration court considering the case of the individual's bankruptcy for its settlement, and the arbitration court, having considered such application, shall deliver a ruling on approval of the procedure and the terms of the auction for sale of the pledged assets that can be appealed against.

**5.** If the financial manager is unable to sell the assets of the individual and/or the rights to claim to third parties of the individual, and the creditors refuse to accept the assets and/or the rights to claim as a satisfaction of their claims, the right to dispose of the assets and/or the rights to claim shall be restored after completion of sale of the individual's assets. With that, the assets constituting the bankruptcy estate and not sold by the financial manager shall be transferred to the individual under a statement of delivery and acceptance. In such case, Item 1 of Article 148 of this Federal Law shall not be applied.

**6.** The financial manager shall be obliged to inform the individual, the bankruptcy creditors and the authorised authority of carrying out of inventory, evaluation and sale of assets of the individual at their requests, and to report to the meeting of creditors. If any

violations are revealed, the individual, the bankruptcy creditor or the authorised authority shall have the right to contest the actions of the financial manager in the arbitration court.

**7.** Assets of the individual owned by him by the right of shared ownership with the spouse (former spouse) shall be subjected to sale in the case of the individual's bankruptcy by the general rules envisaged by this Article. In such cases, the spouse (former spouse) shall have the right to participate in the case of bankruptcy of the individual at resolving of issues related to the sale of the common assets. A part of proceeds from sale of the common assets of the spouses (former spouses) corresponding to the share of the individual in such assets shall be included in the bankruptcy estate, and the rest of the proceeds shall be paid out to the spouse (former spouse). If the spouses also have common obligations (including existence of joint obligations or provision of a surety or a collateral by one spouse for the other), a part of the proceeds due to the spouse (former spouse) shall be paid out after payments on such common obligations with funds of the spouse (former spouse).

**Article 213.27.** Procedure for Satisfaction of Claims of Creditors of an Individual

**1.** Out of priority and at the account of the bankruptcy estate claims of creditors on current payments shall be satisfied primarily to the creditors whose claims had formed before acceptance of the application for acknowledging the individual bankrupt.

**2.** Claims of creditors on current payments shall be satisfied by the following priority:

the first priority shall have claims on current payments related to payment of alimony, court fees on the case of bankruptcy of the individual, payment of remuneration to the financial manager and charging of debt on payment of remuneration to persons involved by the financial manager for securing of his duties in the case of bankruptcy of the individual;

the second priority shall have claims for payment of retirement benefits and salaries to persons that are working or worked under labour agreements;

the third priority shall have claims for payment for residential premises and utility services, including payment of a fee for overhaul of common assets in a block of apartments;

the fourth priority shall have claims on other current payments.

Claims of creditors on current payments of the same priority shall be satisfied by a calendar order.

**3.** Claims of creditors included in the respective register shall be satisfied by the following priorities:

the first priority shall have claims of individuals to which the individual bears liability for damage to life or health and claims for payment of alimony;

the second priority shall have settlements on payment of retirement benefits and salaries to persons that are working or worked under labour agreements;

the third priority shall have settlements with other creditors.

Settlements with creditors shall be carried out according to the procedure set by this Federal Law with the specifics envisaged by this Article.

**4.** When satisfying claims of individuals to which the individual bears liability for damage to life or health, no capitalisation of payments due over time is needed.

**5.** 80 percent of the amount received from sale of the pledged assets shall be allocated to satisfaction of claims of the creditor on obligations secured with pledge of assets of the debtor.

Funds remaining of the amount of proceeds from sale of the pledged assets shall be put on a special bank account of the individual opened in accordance with Article 138 of this Federal Law as follows:

10 percent of proceeds from sale of the pledged assets - for satisfaction of claims of creditors of the first and the second priorities in case of insufficiency of other assets of the individual for satisfaction of such claims;

the remaining funds - for reimbursement of court expenses, payment of remuneration to the financial manager, payment for services rendered by persons involved by the financial manager for securing fulfillment of his duties and expenses related to sale of the pledged assets.

Funds intended for satisfaction of claims of creditors of the first and the second priorities and remaining on the special bank account of the individual after full satisfaction of the said claims shall be included in the bankruptcy estate.

Funds remaining after full reimbursement of court expenses, expenses for payment of remuneration to the financial manager, payment for services of the persons involved by the financial manager for securing fulfillment of his duties and expenses related to sale of the pledged assets shall be allocated to repayment of a part of claims of bankruptcy creditors secured with pledge of assets of the individual not repaid out of the value of the pledged assets in accordance with this Item. Funds remaining after full reimbursement of expenses envisaged by this paragraph and claims of creditors secured with pledge of the sold assets shall be included in the bankruptcy estate.

Claims of creditors not satisfied at the account of value of the pledged assets on obligations secured with pledge of property of the individual shall be satisfied within claims of creditors of the third priority.

**6.** Claims of creditors not satisfied due to insufficiency of assets of the individual shall be deemed satisfied, except for the cases envisaged by this Federal Law.

**Article 213.28.** Completion of Settlements with Creditors and Release of the Individual from Obligations

**1.** After completion of settlements with creditors the financial manager shall be obliged to submit the report on the results of sale of the individual's assets to the arbitration court, attaching copies of documents confirming the sale of the assets and satisfaction of claims of creditors, and the register of creditors' claims specifying the amount of the satisfied claims.

**2.** Following the results of consideration of the report on the results of sale of assets of the individual, the arbitration court shall deliver a ruling on completion of sale of the individual's assets.

**3.** After completion of settlements with creditors the individual acknowledged bankrupt shall be released from further satisfaction of claims of creditors, including those not stated at initiation of restructuring of debts of the individual or sale of the individual's assets (hereinafter - release of the individual from obligations).

Release of the individual from obligations shall not be applicable to claims of creditors envisaged by Items 4 and 5 of this Article and to the claims, of whose existence the creditors did not know and should not have known by the moment of issuance of the ruling on completion of sale of assets of the individual.

**4.** Release of the individual from obligations shall not be allowed in the following cases:

a court act that has entered into force has brought the individual to criminal or administrative liability for unlawful actions in the course of the bankruptcy, intended or fraudulent bankruptcy on condition that such offenses are committed in the given case of bankruptcy of the individual;

the individual failed to provide the necessary information or provided unreliable information to the financial manager or the arbitration court considering the case of his bankruptcy, and such fact is established by the related court act adopted in the course of consideration of the case of bankruptcy of the individual;

it has been proved that at creation or fulfillment of the obligation that was the basis for stating a claim in the individual's bankruptcy case by the bankruptcy creditor or the authorised authority the individual acted unlawfully, committed fraud, willfully evaded payment of

accounts payable, evaded payment of taxes and/or duties chargeable from him, provided a misleading information at obtaining of a loan, concealed or deliberately destroyed assets.

In such cases, the arbitration court shall indicate the non-application of the rule of release from fulfillment of obligations to the individual in its ruling on completion of sale of assets of the individual, if such cases are revealed after completion of sale of assets of the individual.

**5.** Claims of creditors on current payment, for indemnification of damage to life or health, for payment of salaries and retirement benefits, indemnification of moral damage, charging of alimony and other claims inextricably connected to the identity of the creditor, including claims not stated at initiation of restructuring of debts of the individual or sale of assets of the individual, shall remain in force and can be stated after completion of proceedings on the case of bankruptcy of the individual in their unsatisfied part, according to the procedure established by the legislation of the Russian Federation.

After completion of sale of assets of the individual for unsatisfied claims of creditors envisaged by this Item and included in the register of creditors' claims, the arbitration court shall issue writs of execution in accordance with the legislation of the Russian Federation.

**6.** Rules of Item 5 of this Article shall also be applied to the claims for:

bringing of the individual to subsidiary liability as a controlling person (Article 10 of this Federal Law);

indemnification by the individual of losses inflicted by him to the legal entity whose participant or a member of collective bodies the individual was (Articles 53 and 53.1 of the Civil Code of the Russian Federation), intentionally or recklessly;

indemnification by the individual of losses inflicted deliberately or recklessly as a result of non-fulfillment or undue fulfillment of his duties in the bankruptcy case as a insolvency practitioner;

indemnification of damage to property inflicted by the individual intentionally or recklessly;

application for implications of invalidity of the transaction acknowledged invalid on the basis of Article 61.2 or 61.3 of this Federal Law.

**Article 213.29.** Review of a Ruling on Completion of Restructuring of Debts of the Individual or Sale of Assets of the Individual and Resumption of Proceedings on the Case of the Individual's Bankruptcy

**1.** In case of revelation of facts of concealment of assets by the individual or illegal transfer of assets by the individual to third parties, the bankruptcy creditors or the authorised authority, whose claims were not satisfied during the restructuring of debts of the individual or sale of his property shall have the right to apply to the arbitration court for review of the ruling on completion of restructuring of the individual's debts or sale of the individual's assets and to set a claim for foreclosure of the assets.

**2.** A ruling on completion of restructuring of debts of an individual or sale of assets of an individual can be reviewed upon the newly discovered evidence, if the circumstances envisaged by Item 1 of this Article were not and could not be known to the bankruptcy creditor or the authorised authority as of the date of delivery by the arbitration court of a ruling on completion of restructuring of debts of the individual or sale of property of the individual.

The bankruptcy creditor or the authorised authority shall have the right to file an application for review of the ruling on completion of restructuring of debts of the individual or sale of assets of the individual on the ground established by this Article within a month from the date of revelation of circumstances that are the ground for review of the ruling.

**3.** Cancellation of the ruling on completion of restructuring of debts of the individual or sale of assets of the individual shall be the ground for resumption of proceedings on the case

of bankruptcy of the individual. The arbitration court shall deliver a ruling on resumption of proceedings on the case of bankruptcy of the individual that can be executed immediately and can be appealed against.

**4.** Sale of assets of the individual shall be initiated in case of resumption of proceedings on the case of bankruptcy of the individual.

**5.** In case of cancellation of the ruling on completion of restructuring of debts of the individual or sale of assets of the individual, the notice of resumption of proceedings on the case of bankruptcy of the individual shall be published by the arbitration court that took a decision on resumption of proceedings on case of bankruptcy of the individual, according to the procedure set by this Chapter.

From the date of cancellation of the ruling on completion of restructuring of debts of the individual or sale of assets of the individual, claims of the bankruptcy creditors and the authorised authority participating in the case of bankruptcy of the individual before completion of restructuring of debts of the individual or sale of assets of the individual shall be recovered in the register of creditors' claims in the non-satisfied part. Other bankruptcy creditors or the authorised authority shall have the right to state their claims using the procedure set by this Federal Law.

**6.** The essence and the amounts of claims of creditors and the authorised authority shall be determined as of the date of resumption of proceedings on the case of bankruptcy of the individual.

**Article 213.30.** Implications of Acknowledging an Individual Bankrupt

**1.** Within five years from the date of completion of the procedure of sale of assets of the individual or termination of proceedings on the case of his bankruptcy in the course of such procedure, the individual shall have no right to take obligations under loan and/or borrowing agreements without indicating the fact of his bankruptcy.

**2.** Within five years from the date of completion of the procedure of sale of assets of the individual or termination of proceedings on the case of his bankruptcy in the course of such procedure, the case of his bankruptcy cannot be initiated upon the application of such individual.

In case of a repeated acknowledgement of the individual bankrupt within the said period upon the application of the bankruptcy creditor or the authorised authority in the course of the newly initiated case of bankruptcy of the individual, the rule of release of the individual from obligations envisaged by Item 3 of Article 213.28 of this Federal Law shall not be applied.

Unsatisfied claims of creditors that are due can be presented through the procedure established by the legislation of the Russian Federation.

After completion of sale of assets of the individual in the case cited in this Item, the arbitration court shall issue writs of execution for unsatisfied due claims of creditors.

**3.** Within three years from the date of completion of the procedure of sale of assets of the individual or termination of proceedings on the bankruptcy case in the course of such proceedings the individual shall have no right to hold positions in managing bodies of a legal entity or otherwise participate in managing of a legal entity.

**Article 213.31.** Specifics of Termination of Proceedings on Case of Bankruptcy of an Individual due to Conclusion of an Amicable Agreement

**1.** Conclusion of an amicable agreement shall be the ground for termination of proceedings on the case of the bankruptcy of an individual.

**2.** Decision on conclusion of an amicable agreement from the part of the debtor individual shall be taken by the individual.

**3.** The amicable agreement concluded in the course of proceedings on case of bankruptcy of an individual shall be applicable to claims of bankruptcy creditors and the authorised authority included in the register of creditors' claims as of the date of holding of the meeting of creditors that took the decision to conclude the amicable agreement.

**4.** Any disagreements between the financial manager, the individual and the creditors on the issue of coordination of the amicable agreement shall be considered by the arbitration court through the procedure set by this Federal Law.

An amicable agreement shall be approved by the arbitration court.

**5.** In case of conclusion of an amicable agreement, execution of the individual's debt restructuring schedule and validity of a moratorium for satisfaction of creditors' claims shall be terminated.

**6.** From the date of termination of proceedings on the case of bankruptcy of the individual due to the conclusion of an amicable agreement:

authority of the financial manager shall be terminated;

the individual or a third party participating in the amicable agreement shall begin repayment of debt to the creditors.

**7.** In case of resumption of proceedings on the case of bankruptcy of the individual due to the breach of terms of the amicable agreement, the individual shall be acknowledged bankrupt and sale of his assets shall be initiated.

**Article 213.32.** Specifics of Contesting of a Transaction of a Debtor Individual

**1.** An application for contesting of a transaction of a debtor individual on grounds envisaged by Article 61.2 or 61.3 of this Federal Law can be filed by the financial manager upon his initiative or upon a decision of the meeting of creditors, by the bankruptcy creditor or the authorised authority, if the amount of his accounts payable included in the register of creditors' claims exceeds 10 percent of total accounts payable included in the register of creditors' claims, disregarding the amount of claims of the creditor in respect of which the transaction is being contested, and his interested persons.

**2.** The right to file an application for contesting of a transaction of a debtor individual on grounds cited in Article 61.2 or 61.3 of this Federal Law shall be created from the date of initiation of restructuring of debts of the individual.

With that, the limitation of action shall start from the moment when the financial manager learned or should have learned of existence of the grounds cited in Article 61.2 or 61.3 of this Federal Law.

**3.** An application for contesting of a transaction of a debtor individual on grounds cited in Article 61.2 or 61.3 of this Federal Law shall be filed to the arbitration court considering the case of bankruptcy of the individual independently from what persons are participating in the transaction.

**4.** Transactions concluded by the spouse of the debtor individual in respect of assets of the spouses shall also be subjected to contesting within the bankruptcy case of the individual, on grounds envisaged by the family legislation.

**5.** A custody and guardianship authority shall be involved in consideration of the application for contesting the transaction of the debtor individual that concerns rights of an underage child or a person acknowledged legally incapacitated by the court in the case of bankruptcy of the debtor individual.

Following the results of consideration of the application for contesting of a transaction of a debtor individual the arbitration court shall deliver one of the following rulings cited in Item 6 of Article 61.8 of this Federal Law, if there is an opinion of the custody and guardianship authority on assessment of implications of acknowledging a transaction invalid, including that on possible deterioration of rights of an underage child or the rights of the person

acknowledged legally incapacitated by the court.

## §2. The Features of Bankruptcy of Individual Entrepreneurs

**Article 214.** Grounds for Declaring an Individual Entrepreneur Bankrupt
The ground for declaring an individual entrepreneur bankrupt is his/her incapability to meet creditors' claims relating to monetary obligations and/or to perform the duty of making mandatory payments.

**Article 214.1.** Regulating of Bankruptcy of Individual Entrepreneurs
The rules established by paragraphs 1.1 and 4 of Chapter X of this Federal Law shall be applied to the relations connected to bankruptcy of individual entrepreneurs, taking into account the specifics set by this paragraph.

**Article 215.** Abrogated from October 1, 2015.
**Article 216.** Implications of Acknowledging an Individual Entrepreneur Bankrupt
**1.** From the moment of taking by the arbitration court of a decision on acknowledging an individual entrepreneur bankrupt and on initiating of sale of assets of the individual, the state registration of the individual as an individual entrepreneur shall lose force and the licences for certain types of entrepreneurship activities issued to him shall be cancelled.
**2.** An individual entrepreneur acknowledged bankrupt cannot be registered as an individual entrepreneur within five years from the moment of completion of the procedure of sale of assets of the individual or termination of proceedings on the case of bankruptcy of the individual in the course of such procedure.
**3.** The arbitration court shall direct a copy of the decision on acknowledging an individual entrepreneur bankrupt and initiation of sale of assets of the individual to the authority that registered the individual as an individual entrepreneur.
**4.** Within five years from the date of completion of the procedure of sale of assets of the individual or termination of proceedings on the bankruptcy case in the course of such procedure the individual shall have no right to carry out entrepreneurship activities, hold positions in managing bodies of a legal entity or otherwise participate in management of a legal entity.

## §3. The Features of Bankruptcy of a Peasant (Individual) Farm

**Article 217.** Grounds for Declaring a Peasant (Individual) Farm Bankrupt
The ground for declaring a peasant (individual) farm bankrupt shall be its inability to meet creditors' claims relating to monetary obligations, to payment of severance benefits and/or labour wages to the persons who are working or have been working under a labour contract, and/or perform the duty to make mandatory payments.

**Article 218.** The Features of the Procedure for Declaring an Entrepreneur Being the Head of a Peasant (Individual) Farm Bankrupt
**1.** The application of an individual entrepreneur being the head of a peasant (individual) farm for being declared bankrupt (hereinafter referred to as "application") may be filed with a court of arbitration if the consent in writing of all the members of the peasant (individual) farm is present.
The application shall be signed by the individual entrepreneur being the head of a

peasant (individual) farm.

**2.** Apart from the documents specified in Article 38 of the present Federal Law the following documents shall be attached to the application:

on the composition and value of the property of the peasant (individual) farm;

on the composition and value of the property owned by the members of the peasant (individual) farm as well as on the sources at the expense of which the said property has been acquired;

the amount of income that can be received by the peasant (individual) farm upon the completion of a relevant period of agricultural work.

The said documents shall also be attached by an individual entrepreneur being the head of a peasant (individual) farm to a reply to the application of a creditor.

**Article 219.** Features of the Financial Rehabilitation of a Peasant (Individual) Farm and the External Administration of a Peasant (Individual) Farm

**1.** Within two months after the issuance of a ruling by a court of arbitration on the institution of receivership in respect of a peasant (individual) farm, the head of the peasant (individual) farm may file a financial rehabilitation plan and a debt repayment schedule with the court of arbitration.

**2.** If implementation of the measures specified in the financial rehabilitation plan is going to allow the peasant (individual) farm to use among other means the incomes that can be received by the peasant (individual) farm upon the completion of a relevant period of agricultural work to settle creditors' claims relating to monetary obligations and mandatory payments in compliance with the debt repayment schedule, the court of arbitration shall institute financial rehabilitation for the peasant (individual) farm.

A ruling shall be issued by the court of arbitration on the institution of financial rehabilitation for the peasant (individual) farm, such a ruling being subject to appeal.

**3.** The financial rehabilitation of a peasant (individual) farm shall be instituted until the completion of a relevant period of agricultural work with due regard to the time required for the sale of agricultural products produced or produced and processed.

If over the financial rehabilitation period there was a recession and deterioration in the financial state of the peasant (individual) farm due to a natural disaster, epizootic or other circumstances of an extraordinary nature, the financial rehabilitation term may be prolonged by one year on the condition that the debt repayment schedule is amended in the manner specified in Article 85 of the present Federal Law.

**4.** On the basis of a decision of a creditors' meeting, if there exists the possibility of restoration of solvency of the peasant (individual) farm, the court of arbitration shall institute external administration.

The external administration of a peasant (individual) farm shall be instituted until the expiry of a relevant period of agricultural work with due regard to the time required for the sale of agricultural products produced or produced and processed. The external administration term shall not exceed the duration established by Item 2 of Article 92 of the present Federal Law by more than three months.

If over the financial rehabilitation period there was a recession and a deterioration in the financial state of the peasant (individual) farm due to a natural disaster, epizootic or other circumstances of an extraordinary nature, the external administration term may be prolonged by one year.

**5.** The external administration of a peasant (individual) farm may be terminated by the court of arbitration before due time on an application of the administrator or any of the creditors in the case of:

default on completing the measures specified in the external administration plan;

the presence of other circumstances evidencing the impossibility of restoration of solvency of the peasant (individual) farm.

Termination before due time of the external administration of a peasant (individual) farm shall entail its being declared bankrupt and administration of the bankrupt's estate being commenced.

### Article 220. The Receiver

**1.** An administration shall be approved by the court of arbitration for the purpose of conducting external administration of a peasant (individual) farm.

**2.** A person who does not comply with the criteria set out by the present Federal Law for qualified receivers may be approved as a receiver.

**3.** On the consent of the administrator the powers of an administrator may be exercised by the head of the peasant (individual) farm.

### Article 221. The Bankrupt's Estate of a Peasant (Individual) Farm

**1.** If the court of arbitration has declared a peasant (individual) farm bankrupt and commenced administration of the bankrupt's estate the following shall be included in the bankrupt's estate of the peasant (individual) farm: the immovable property in common ownership of the members of the peasant (individual) farm, in particular, plants, utility and other buildings, amelioration and other facilities, pedigree, dairy and working cattle, poultry, agricultural and other machinery and equipment, means of transportation, implements and other property acquired for the peasant (individual) farm at the expense of common funds of its members, as well as the right of lease of the land plot possessed by the peasant (individual) farm and other rights in rem assessable in terms of money which are possessed by the peasant (individual) farm.

**2.** In the case of bankruptcy of a peasant (individual) farm the land plot possessed by the peasant (individual) farm may be alienated or transferred to another person, to the Russian Federation, the Russian region or the municipal entity to the extent in which its alienation is permitted by the land legislation.

**3.** The property owned by the head of the peasant (individual) farm and the members of the peasant (individual) farm as well as the other property in respect of which it is proven that it has been acquired for incomes not deemed common funds of the peasant (individual) farm shall not be included in the bankrupt's estate.

### Article 222. Procedure for the Sale of Property and Rights in Rem of a Peasant (Individual) Farm

**1.** When selling the property of the debtor being a peasant farm, the qualified receiver must put up for sale the enterprise of the debtor being the peasant farm by way of holding an auction.

If the enterprise of the debtor being a peasant farm has not been sold through an auction, the qualified receiver is bound to put up for sale as a single lot the property of the debtor being the peasant farm which is used for making agricultural products, their storage, processing and sale (hereinafter referred to as the industrial-engineering complex of the debtor being a peasant farm).

Where it is cited by Paragraphs One and Two of this item, the enterprise of the debtor being a peasant farm and put up for sale as a single lot of the industrial-engineering complex of the debtor being the peasant farm shall be sold in the procedure established by Items 4 - 19 of Article 110 of this Federal Law. The property of the debtor being a peasant farm shall be evaluated in the procedure established by Article 130 of this Federal Law.

If the industrial-engineering complex of the debtor being a peasant farm put up for sale as a single lot has not been sold through an auction, the property of the debtor being the peasant farm shall be sold in compliance with Article 111 and Item 4 of Article 139 of this Federal Law.

**2.** The priority right to acquire the property of the peasant (individual) farm being sold in the procedure established by Paragraph Four of Item 1 of this article shall belong to persons pursuing the production of agricultural products and possessing the land plots adjacent to the land plot belonging to the peasant (individual) farm.

For the purpose of realisation of the priority right to acquire the debtor's enterprise or another property of the debtor, the qualified receiver shall send a notice of the sale of property of the debtor to the persons which produce agricultural products and possess a land plot that is immediately adjacent to the land plot of the debtor and also publish information on the sale of the debtor's property in a printed edition at the place where the debtor is located including an indication of the initial selling price of the property of the debtor put up for sale.

**3.** Paragraph one is abrogated.

If within one month after the receipt of the offer for acquisition of the property and rights in rem the said persons have not declared their will to acquire the property and the rights in rem, the qualified receiver or the head of the peasant (individual) farm shall effect realisation of the property and the rights in rem in the manner set out in the present Federal Law.

**Article 223.** The Consequences of Declaration of a Peasant (Individual) Farm Bankrupt

**1.** As of the time of adoption of the decision whereby a peasant (individual) farm is declared bankrupt and administration of the bankrupt's estate is commenced, the state registration of the head of the peasant (individual) farm as an individual entrepreneur shall become invalid.

**2.** The court of arbitration shall send a copy of the decision whereby the peasant (individual) farm was declared bankrupt and administration of the bankrupt's estate was commenced to the body that registered the head of the peasant (individual) farm as an individual entrepreneur.

## § 4. Specifics of Consideration of Case of Bankruptcy of an Individual in Case of his Death

**Article 223.1.** The Terms of and Procedure for Citizen's Bankruptcy in Case of Death Thereof

**1.** Proceedings in respect of a citizen's bankruptcy case may be initiated after the death thereof or after declaring him/her dead on application of a bankruptcy creditor or authorized body, as well as of the persons cited in Paragraph One of Item 4 of this article.

Data to the effect that a citizen is dead or is declared dead are subject to mentioning in an application for declaring the citizen bankrupt, if the bankruptcy creditor or authorized body know about it. On such occasion, an arbitration court in the ruling on acceptance of the application for declaring a citizen bankrupt shall mention applying of the rules of this paragraph in case of the citizen's bankruptcy.

In the event of declaring such application as well-founded, an arbitration court shall render the decision on declaring the citizen bankrupt and on introducing a procedure for the sale of the citizen's property.

**2.** In the event of a citizen's death or declaring him/her dead, the rules of this chapter

shall apply when trying the citizen's bankruptcy case in the part thereof which is not regulated by this paragraph.

**3.** If the data to the effect that a citizen is dead or is declared dead have become known to an arbitration court after initiation of bankruptcy proceedings, an arbitration court shall issue on application of a person participating in the bankruptcy proceedings or on its own initiative the ruling on applying the rules of this paragraph in case of the citizen's bankruptcy.

**4.** The citizen's rights and duties in a bankruptcy case thereof in the event of the citizen's death or in the event of declaring him/her dead upon the expiry of the time period fixed by the legislation of the Russian Federation for acceptance of inheritance shall be exercised by the citizen's heirs who have accepted the inheritance. To declare the citizen's heirs as the persons participating in the citizen's bankruptcy case a notary shall present a copy of the probate case-file at the court's request.

Prior to the expiry of the time period fixed by the legislation of the Russian Federation for acceptance of inheritance, the notary at the place of inheritance opening shall be deemed a person participating in the proceedings in respect of the citizen's bankruptcy case and shall exercise the following powers:

shall make with the arbitration court trying the citizen's bankruptcy case the petition for applying in the citizen's bankruptcy case the rules of this paragraph and for transfer to the sale of the property (in respect of peasant farms ⌐ to bankruptcy proceedings) within five working days from the date of opening the probate case, if in the citizen's bankruptcy case restructuring of the citizen's debts is applied;

shall transfer to the financial manager the information on the inherited property that has become known thereto in connection with the discharge of his/her duties.

**5.** If after initiation of proceedings in respect of a citizen's bankruptcy case he/she died or was declared dead, the financial manager within five working days from the date when he/she learnt about the citizen's death or about declaring him/her dead shall inform on it the notary at the place of inheritance opening, as well as shall file with the arbitration court trying the citizen's bankruptcy case the petition for applying to the citizen's bankruptcy case the rules of this paragraph and for transfer to the sale of property (in respect of peasant farms - to bankruptcy proceedings), if restructuring of the citizen's debts is applied in the citizen's bankruptcy case.

**6.** Before the expiry of the time period for inheritance acceptance fixed by the legislation of the Russian Federation it is not allowed for the financial manager to engage persons at the citizen's expense for ensuring the discharge of the duties imposed thereupon in the citizen's bankruptcy case, except for the persons provided for by Item 2 of Article 20.7 of this Federal Law.

**7.** The property making up the citizen's inheritance shall be included into the bankruptcy estate.

The residential premises (a part thereof), if for a citizen being the debtor and family members thereof jointly residing with him/her at the premises owned by him/her they are the only premises which are fit for permanent residence, except for the property cited in this paragraph if it is the subject of mortgage and execution may be levied against it in compliance with the legislation on mortgage, as well as the land plots on which the cited objects are located, except if they are the subject of mortgage and execution may be levied against them in compliance with the legislation on mortgage, may be included into the bankruptcy estate by decision of the arbitration court trying the bankruptcy case.

The property cited in Paragraph Two of this item shall not be included into the bankruptcy estate:

before the expiry of the time period for inheritance acceptance fixed by the legislation of the Russian Federation, if the persons entitled to the hereditary portion in the citizen's

inheritance reside at the residential premises (parts thereof) and for them such residential premises (a part thereof) are the only ones which are fit for permanent residence;

before the expiry of the time period for inheritance acceptance fixed by the legislation of the Russian Federation, if such property is the only premises which are fit for the heir's permanent residence.

**8.** Along with the requirements provided for by Paragraph Two of Item 2 of Article 213.27 of this Federal Law (in respect of peasant farms - by Paragraph Two of Item 2 of Article 134 of this Federal Law) in the first turn shall be satisfied claims in respect of the current payments connected with the outlays on the dead person's burial, outlays on the inheritance guard and on making notarial actions by a notary.

**9.** In the event of termination of proceedings in respect of a citizen's bankruptcy case before the expiry of the time period for the inheritance acceptance fixed y the legislation of the Russian Federation, the financial manager shall transfer data on the property making up the bankruptcy estate that has not been sold by the financial manager to the notary processing the probate case.

**10.** After competing settlements with creditors a citizen declared bankrupt shall be relieved of further satisfaction of creditors' claims, including the creditors' claims that were not declared when restructuring of the citizen's debts was introduced or when the citizen's property was sold. The provisions of Items 3 - 6 of Article 213.28 of this Federal Law shall not apply. The ruling on completion of the sale of a citizen's property may not be revised.

**11.** It is not allowed to make an amicable agreement before the expiry of the time period for inheritance acceptance.


### Chapter XI. Simplified Proceedings Applicable in a Bankruptcy Case


### §1. The Features of Bankruptcy of a Debtor in Liquidation


**Article 224.** Bankruptcy of a Debtor in Liquidation

**1.** If the value of property of a debtor being a legal person in respect of which a liquidation decision has been adopted is insufficient for meeting creditors' claims, such legal person shall be liquidated in the manner established by the present Federal Law.

**2.** If the circumstances specified in Item 1 of the present article have been discovered the liquidation commission (liquidator) shall file a petition with the court of arbitration for declaring the debtor bankrupt.

**3.** If the circumstances specified in Item 1 of the present article are discovered after the adoption of the decision to liquidate the legal person and before the formation of the liquidation commission (appointment of a liquidator) an application for declaring the debtor bankrupt shall be filed with the court of arbitration by the owner of property of the debtor being a unitary enterprise, a promoter (stockholder) of the debtor or the head of the debtor.

**Article 225.** The Features of Consideration of a Case of Bankruptcy of a Debtor in Liquidation

**1.** The court of arbitration shall adopt a decision to declare a debtor in liquidation bankrupt and to commence winding-up procedure and shall approve a winding-up receiver.

In the event of bankruptcy of a debtor in liquidation receivership, financial rehabilitation or external administration shall not be instituted.

**2.** Abrogated.

**2.1.** A register of the claims of the creditors of a debtor in liquidation in a bankruptcy

case shall be drawn up in the procedure established by the present Federal Law. Voting at a meeting of creditors and defining the priority rating of creditors' claims when a proceeding applicable in a bankruptcy case to a debtor in liquidation is being commenced shall be carried out according to the amount of the claims included in the register of creditors' claims prepared in accordance with the present Federal Law.

3. If a proceeding has been commenced in a bankruptcy case on an application filed before the formation of a liquidation commission (appointment of a liquidator) by the owner of property of the debtor being a unitary enterprise, a promoter (stockholder) of the debtor or the head of the debtor, the bankruptcy case shall be considered with no account being taken of the features specified in the present paragraph.

**Article 226.** The Consequences of Refusal to Liquidate a Debtor by Way of Bankruptcy

1. A breach of the provisions of Item 2 of Article 224 of the present Federal Law shall be deemed a ground for refusing to make an entry on liquidation of the legal person in the comprehensive state register of legal persons.

2. If they commit a violation of the provisions of Items 2 and 3 of Article 224 of the present Federal Law, the owner of property of the debtor being a unitary enterprise, the debtor's promoters (stockholders), the debtor's head and the chairman of the liquidation commission (the liquidator) shall be subsidiarily liable for unsettled creditors' claims relating to the debtor's monetary obligations and mandatory payments.

## §2. The Bankruptcy of a Debtor in Absentia

**Article 227.** The Features of Filing an Application for Declaring a Debtor in Absentia Bankrupt

1. In cases when the debtor being a citizen or the head of the debtor being a legal person which has terminated its activity is absent or his/her whereabouts cannot be established, an application for declaring the debtor in absentia bankrupt may be filed by a bankruptcy creditor or an authorised body, no matter the amount of accounts payable.

2. A application for deeming an absent debtor bankrupt shall be filed by the empowered body only if there are funds required to finance the proceedings applicable in a bankruptcy case. The procedure and terms for financing the proceedings applicable in a bankruptcy case to an absent debtor, for instance, the rate of the fee payable to the winding-up receiver shall be established by the Government of the Russian Federation.

3. If absent debtor signs have been discovered when the receivership is performed, the interim receiver, or, in the course of the procedure of restructuring of debts of the individual, the financial manager, shall file an application with the arbitration court for shift to the simplified proceeding applicable in a bankruptcy case to an absent debtor. The arbitration court shall issue a relevant ruling.

**Article 228.** Hearing the Case of Bankruptcy of a Debtor in Absentia

1. The arbitration court shall take a decision on deeming the absent debtor bankrupt and on commencing a winding-up proceeding or on initiation of a procedure of sale of assets of the individual within one month after the date of acceptance for processing of the application for deeming the absent debtor bankrupt or after the date when the arbitration court received the interim receiver's application for shift to the simplified proceeding applicable in a bankruptcy case to an absent debtor.

In the case of bankruptcy of a debtor in absentia, receivership, financial rehabilitation, external administration and restructuring of debts of the individual shall not be applicable.

**2.** A notice in writing of the bankruptcy of the debtor in absentia shall be served by the winding-up receiver to all the creditors of the debtor in absentia which are known to him/her, and they may present their claims to the winding-up receiver within one month after the receipt of the notice in accordance with the procedure established in Article 71 of the present Federal Law.

No supplementary insurance shall be provided for the liability of the qualified receiver in respect of the absent debtor.

**3.** Having discovered property items of the absent debtor that allow to cover legal costs in connection with realisation of proceedings in the bankruptcy case, the winding-up receiver or financial manager shall send a petition to the arbitration court for termination of the simplified proceeding applicable in a bankruptcy case and for shift to the proceedings which are applicable in a bankruptcy case and are envisaged by the present Federal law.

On the petition of the winding-up receiver or financial manager -- if he/she has discovered property items of the absent debtor -- the arbitration court shall issue a ruling on termination of the simplified proceeding applicable in a bankruptcy case and on shift to the proceedings which are applicable in a bankruptcy case and are envisaged by the present Federal Law.

**4.** abrogated.

**Article 229.** Distribution of Receipts

Creditors' claims shall be met in accordance with the priority ranking set out in Article 134 of the present Federal Law.

**Article 230.** Application of Provisions on the Bankruptcy of a Debtor in Absentia

The provisions of the present paragraph shall be applicable also in case when the property of a debtor being a legal person is known to be insufficient for covering court expenses relating to the bankruptcy case or if no transactions have been accomplished on the debtor's bank accounts within the last 12 months preceding the date of filing of the application for declaring the debtor bankrupt, and also if there is other evidence of lack of entrepreneurial or other activity on the part of the debtor.

## § 3. Bankruptcy of Specialised Company and Mortgage Agent

**Article 230.1.** The Specifics of Filing an Application for Declaring a Specialised Company Bankrupt

**1.** An application for declaring a specialised company bankrupt shall be filed by the representative of owners of bonds of the specialised company (hereinafter referred to as the representative of bond owners) defined in compliance with the legislation of the Russian Federation on securities on the basis of a decision of a general meeting of bond owners.

In the event of issuance of bonds secured by the same pledge for two or more issues, an application for declaring a specialised company bankrupt shall be filed by a representative of the bond owners on the basis of a decision of a general meeting of owners of bonds of the issue in respect of which in compliance with the terms of the bond issue obligations shall be discharged in the first priority as compared to the bonds of other issues of such specialised company. With this, a decision of a general meeting of owners of bonds of other issues is not required.

An application of a representative of bond owners for declaring a specialised company bankrupt shall have attached thereto a record of a general meeting of bond owners and a properly attested copy of the decision on the bond issuance.

**2.** The bankruptcy creditor of a specialised company is not entitled to file with an

arbitration court an application for declaring the specialised company bankrupt if the exercise of the this right is limited in the agreement made by such creditor and specialised company by a particular date and/or by the occurrence of particular circumstances which have not occurred as of the time of filing the cited application.

3. The duty provided for by Item 1 of Article 9 of this Federal Law shall not originate in respect of the head of the debtor, this being a specialised company, if in compliance with the statutes of the specialised company filing of the application with an arbitration court for declaring it bankrupt is dependent on a particular date and/or particular circumstances which have not occurred as of the date of filing the application.

### Article 230.2. Considering the Case on Bankruptcy of Specialised Company

1. An arbitration court, where there are the signs of bankruptcy established by this Federal Law, shall render the decision on declaring a specialised company bankrupt and on initiating bankruptcy proceedings, and shall endorse the bankruptcy receiver within a month from the date of taking over an application for declaring the specialised company bankrupt.

In the event of bankruptcy of a specialised company, monitoring, financial improvement and external control shall not apply.

2. Data on declaring a specialised company bankrupt and on initiating bankruptcy proceedings are subject to inclusion into the Comprehensive Federal Register of Data on Bankruptcy in the procedure established by Article 28 of this Federal Law without publishing them in an official publication.

Creditors are entitled in compliance with Article 71 of this Federal Law to make their claims against a specialised company within a month from the date of inclusion of data on declaring the specialised company bankrupt and on initiating bankruptcy proceedings into the Comprehensive State Register of Data on Bankruptcy.

3. If in the case on the debtor's bankruptcy the interests of the creditors being owners of bonds are represented by a representative of the bond owners, such representative is subject to notification of receiving the creditors' claims.

4. Along with the persons provided for by Article 34 of this Federal Law, as the person participating in the case on bankruptcy of a specialised company shall be recognised a representative of the bond owners.

### Article 230.3. The Specifics of Satisfying Pledge-Secured Claims of Creditors

1. Pledge-secured claims of creditors shall be satisfied within the framework of claims of third-priority creditors with the specifics provided for by Article 138 of this Federal Law.

If in the case on the debtor's bankruptcy the interests of the creditors being owners of pledge-secured bonds are represented by a representative of the bond owners defined in compliance with the legislation of the Russian Federation on securities, the monetary assets received after selling the property making up the hypothecation security shall be entered in the procedure established by Article 138 of this Federal Law by the bankruptcy receiver onto the special account of a representative of the bonds owners for subsequent settlements with the creditors which are owners of pledge-secured bonds in compliance with the terms of the bond issue.

In the event of issuance by a specialised company of bonds with the same hypothecation security for two or more issues thereof, the claims of owners of bonds in respect of each issue shall be satisfied by way of entering by the bankruptcy receiver onto a special account of a representative of bond owners in respect of each issue monetary assets received after selling the property making up the hypothecation security in the procedure established by Article 138 of this Federal Law in the order established by the terms of such bond issuance for subsequent settlements to be made by a representative of bond owners

with owners of pledge-secured bonds within the framework on the same issue in the procedure established by the legislation of the Russian Federation on securities.

Where there is no representative of bond owners, the claims of creditors with pledged security shall be satisfied in the order established by the terms of such bond issue.

**2.** The property making up the hypothecation security shall be sold in the procedure established by Article 138 of this Federal Law, subject to the specifics established by this article.

A procedure for and terms of holding sales, as well as the initial selling price of the property making up the hypothecation security of bonds of a specialised company, shall be defined by a representative of owners of bonds with such hypothecation security on the basis of a decision of a general meeting of owners of the cited bonds or, in the absence of a representative of owners of the cited bonds or failure to adopt the relevant decision by a general meeting of owners of the cited bonds, by the bankruptcy receiver.

**Article 230.4.** The Transfer of the Property Making Up the Hypothecation Security of
Bonds of Specialised Company

**1.** The property making up the hypothecation security of bonds of a specialised company, including the monetary claims which will result in future from the existing or from futures obligations, may be transferred on the basis of a decision of the creditors' meeting and in the procedure established by this decision to another specialised company with this specialised company's assuming the rights and responsibilities of the issuer of such bonds.

**2.** The transfer of the property constituting the hypothecation security of bonds of a specialised company shall be allowed on condition that the market value of the cited property exceeds the aggregate amount of obligations in respect of such bonds by at most ten per cent. With this, the market value of the property which is transferred in compliance with this article shall be defined by the appraiser engaged by the bankruptcy receiver on account of the specialised company being the debtor.

The corresponding appraiser's report is subject to inclusion by the bankruptcy receiver into the Comprehensive Federal Register of Data on Bankruptcy in the procedure established by Article 28 of this Federal Law.

Appealing against the appraiser's report provided for by this item shall not serve as a ground for suspending the transfer of the subject of pledge.

**3.** If the property left with a specialised company after the transfer of the subject of pledge is insufficient for repayment of the expenses provided for by this item and for satisfaction of the claims of the first-priority and second-priority creditors, the specialised company, to which the subject of pledge is transferred in compliance with this article, is bound to remit monetary assets onto the debtor's special bank account in compliance with Item 3 of Article 138 of this Federal Law within the limits of the amount of debt on such claims in the following procedure:

at most twenty per cent of the market value of the subject of pledge cited in this article for satisfaction of claims of the first-priority and second-priority creditors;

at most ten per cent of the market value of the subject of pledge cited in this article for covering court costs, outlays on payment of remuneration to qualified receivers and on payment for the services of the person engaged by a qualified receiver for the purpose of securing the discharge of the duties imposed upon him.

**4.** Monetary assets shall be only written off the debtor's special bank account on the instructions of the qualified receiver for the purpose of covering the outlays and satisfaction of the creditors' claims provided for by Item 3 of this article and may not be written off due to the debtor's circumstances or obligations of the qualified receiver. Execution may not be levied against the monetary assets kept on the debtor's special bank account due to other debtors

obligations or obligations of the qualified receiver.

**5.** At the meeting of creditors where the issue of possible transfer of the property making up the hypothecation security of bonds of a specialised company is to be resolved the qualified receiver shall present a report on the appraisal of the cited property and an estimation of the amount required for covering the outlays and satisfying the claims of the creditors provided for by Item 3 of this article as of the date of holding the creditors' meeting where the decision on filing the petition with an arbitration court for transfer of the cited property is adopted.

**6.** For the transfer of the property making up the hypothecation security of bonds of a specialised company, a meeting of creditors shall render the decision on filing with an arbitration court the petition for transfer of the cited property. This petition shall have attached thereto a record of the creditors' meeting, the appraiser's report cited in Item 2 of this article and the document proving the remittance of monetary assets onto a special bank account, where it is provided for by Item 3 of this article.

**7.** On the basis of the results of considering the petition of a creditors' meeting for the transfer of the property making up the hypothecation security of bonds of a specialised company, an arbitration court shall issue the following ruling:

on satisfying this petition and on the transfer of the cited property in the event of observing the terms of such transfer provided for by this article;

on the refusal to allow this petition in the event of failure to observe the terms of such transfer provided for by this article.

**8.** In the event of rendering by an arbitration court the ruling on transfer of the property making up the hypothecation security of bonds of a specialised company, the monetary assets entered in the procedure established by Item 3 of this article onto the debtor's special bank account shall be allocated for repayment of the corresponding outlays and satisfaction of the creditors' claims.

The repayment of the outlays and satisfaction of the creditors' claims provided for by Item 3 of this article shall be effected within ten working days as from the date of entry into legal force of the ruling of an arbitration court on the transfer of the property making up the hypothecation security of a specialised company's bonds.

The creditors' claims secured by pledge whose subject has been transferred in compliance with this article shall be excluded by the bankruptcy receiver from the register of creditors' claims.

**9.** In the event of issuing by an arbitration court the ruling on the refusal to allow the petition of a creditors' meeting on transfer of the property making up the hypothecation security of bonds of a specialised company, the monetary assets entered in the procedure established by Item 3 of this article onto the debtor's special bank account are subject to repayment.

**Article 230.5.** The Specifics of the Bankruptcy of a Mortgage Agent

**1.** An application for declaring a mortgage agent bankrupt shall be filed according to the rules of Article 230.1 of this paragraph.

**2.** The case on bankruptcy of a mortgage agent shall be considered according to the rules of Article 230.2 of this paragraph.

## Chapter XII. Conclusive and Transitional Provisions

**Article 231.** Entry Into Force of the Present Federal Law

**1.** The present Federal Law shall enter into force upon the expiry of 30 days after is official publication, except for Item 3 of the present article of which the provisions shall enter into force as of the date of official publication of the present Federal Law and Paragraph 6 of Chapter IX of the present Federal Law of which the provisions shall enter into force as of July 1, 2009.

The provisions of Paragraph 11 of Item 4 of Article 29 of the present Federal Law shall enter into force upon the expiry of three months after the entry into force of the present Federal Law.

**2.** The provisions on bankruptcy of citizens not being individual entrepreneurs set out in the present Federal Law shall enter into force as of the date of entry into force of a federal law on the introduction of appropriate amendments to federal laws.

**3.** Within one year after the entry into force of the present Federal Law the control (supervision) body in respect of the qualified receiver who are not members of a self-regulating organisation of qualified receivers shall:

monitor their observing in their activity as qualified receivers the provisions of the legislation of the Russian Federation and the rules of professional activity of qualified receivers approved by the Government of the Russian Federation;

perform verification of the activity of qualified receivers;

file applications with a court of arbitration for dismissal of qualified receivers in cases when violations are discovered of provisions of the legislation of the Russian Federation and the rules of professional activity of qualified receivers approved by the Government of the Russian federation.

**4.** The court of arbitration may approve the persons who comply with the standards set by Article 20 of the present Federal Law as qualified receivers.

Within one year after the entry into force of the present Federal Law the following persons may be members of self-regulating organisations of qualified receivers and may be approved by a court of arbitration as qualified receivers in bankruptcy cases: the persons who comply with the standards set by Items 1 and 8 of Article 20 of the present Federal Law, except for the standards set by Paragraphs 5, 6 and 8 of Item 1 of Article 20, and the persons who held qualified receiver licences, except for cases when such licences have been revoked or annulled.

Within the term specified by Item 3 of the present article the following shall in particular be taken into account as the executive work record sufficient for a person to be appointed qualified receiver: the period when the person worked as acting qualified receiver of at least one year, except for the period of work as acting qualified receiver in respect of a debtor in absentia.

Within one year after the entry into force of the present Federal Law the documents specified in Paragraphs 7 and 9 of Item 5 of Article 21 of the present Federal Law need not be presented.

**5.** Within one year after the entry into force of the present Federal Law the creditor and the debtor shall not be entitled to indicate in the application for declaring the debtor bankrupt the self regulating organisation from among whose members the interim receiver is to be approved.

Within one year after the entry into force of the present Federal Law where no self-regulating organisation is indicated in the application, the court of arbitration shall send to the body for control (supervision) a request for the provision of interim receiver nominees. Within five days after the receipt of the request the body for control (supervision) shall present three nominees for the position of interim receiver. The creditor on whose application the

proceeding in a bankruptcy case has been initiated and also the debtor during the courtroom hearing shall be entitled to dismiss one nominee each. The court of arbitration shall approve the interim receiver nominee from among the nominees which have not been dismissed in the established manner.

Within the term specified in Paragraph 1 of the present item the approval of a qualified receiver nominee shall be effected in the manner established by Articles 15 and 45 of the present Federal Law, or a creditors' meeting may select and present to the court of arbitration three qualified receiver nominees (administrative receiver, receiver or winding-up receiver). Here the debtor shall be entitled to dismiss one of the qualified receiver nominees presented. The control (supervision) body shall be entitled to dismiss, with reasons being indicated, one or several qualified receiver nominee(s) if he/she/they fail to comply with the standards set by Item 4 of the present article.

The court of arbitration shall approve a nominee to the position of administrative receiver, receiver or winding-up receiver from among the nominees who have not been dismissed in the established manner.

**6.** Abrogated.

**7.** Within one year after the entry into force of the present Federal Law the receiver or winding-up receiver shall recruit the specialised state organisation authorised by the Government of the Russian Federation to organise, free of charge, a sale for the purpose of selling the debtor's property of which the balance sheet value as of the last accounting date makes up at least 200,000,000 roubles.

**8.** Until the time when appropriate amendments are made to the legislation on taxes and fees and/or the budget legislation the rule of pro rata settlements of the claims envisaged in Item 4 of Article 84 of the present Federal Law shall extend only to claims of bankruptcy creditors and authorised bodies which are related to monetary obligations.

**Article 232.** Regulation of Bankruptcy-Related Relations

**1.** The following shall be deemed no longer valid as of the date of entry into force of the present Federal Law:

Federal Law No. 6-FZ of January 8, 1998 on Insolvency (Bankruptcy) (Sobranie zakonodatelstva Rossiyskoy Federatsii, item 222, No. 2, 1998);

Item 30 of Article 2 of Federal Law No. 31-FZ of March 21, 2002 on Bringing Legislative Acts in Line with the Federal Law on the State Registration of Legal Persons (Sobranie zakonodatelstva Rossiyskoy Federatsii, item 1093, No. 12, 2002);

Item 3 of Article 1 of Federal Law No. 41-FZ of April 25, 2002 on Amending Legislative Acts of the Russian Federation in Connection with the Adoption of the Federal Law on the Mandatory Insurance of Civil Liability of the Owners of Vehicles (Sobranie Zakonodatelstva Rossiyskoy Federatsii, item 1721, No. 18, 2002).

**2.** Federal Law No. 122-FZ of June 24, 1999 on the Peculiarities of Insolvency (Bankruptcy) of the Natural Monopoly Entities of the Fuel and Power Complex shall be deemed no longer valid as of July 1, 2009 (Sobranie Zakonodatelstva Rossiyskoy Federatsii, item 3179, No. 26, 1999).

**3.** Until the time when the laws and other regulatory legal acts effective on the territory of the Russian Federation as regulating the relations relating to bankruptcy are brought in line with the present Federal Law these laws and other regulatory legal acts shall be applicable to the extent they are consistent with the present Federal Law.

**Article 233.** Application of the Present Federal Law by Courts of Arbitration

**1.** The present Federal Law shall be applied by the courts of arbitration when they hear

the bankruptcy cases in which proceedings are commenced after its entry into force.

**2.** As for the cases in which proceedings were commenced before the entry into force of the present Federal Law, and before the completion of a proceeding applicable in a bankruptcy case (external administration, winding up or amicable agreement) and instituted before the entry into force of the present Federal Law, they shall be subject to the norms of Federal Law No. 6-FZ of January 8, 1998 on Insolvency (Bankruptcy) (Sobranie zakonodatelstva Rossiyskoy Federatsii, item 222, No. 2, 1998; item 1093, No. 12; item 1721, No. 18, 2002;).

**3.** Starting from the end of a proceeding which is being used in a bankruptcy case and had been commenced before the entry into force of the present Federal Law the provisions of the present Federal Law are applicable to legal relationships that have come into being since the time when the proceeding was completed. The proceedings which are applicable in a bankruptcy case and are envisaged by the present Federal Law (financial rehabilitation, receivership or amicable agreement) shall be commenced by virtue of the present Federal Law irrespective of the date when said cases are accepted for processing. The further consideration of a bankruptcy case shall be carried out in accordance with the present Federal Law, except for cases when a winding-up proceeding is commenced after the completion of a proceeding which is used in the bankruptcy case and had been commenced before the entry into force of the present Federal Law. In this case, the winding-up proceeding is subject to the provisions of Federal Law No. 6-FZ of January 8, 1998 on Insolvency (Bankruptcy).

**4.** Where courts of arbitration hear bankruptcy cases under Federal Law No. 6-FZ of January 8, 1998 on Insolvency (Bankruptcy) (Sobranie zakonodatelstva Rossiyskoy Federatsii, item 222, No. 2, 1998; item 1093, No. 12; item 1721, No. 18, 2002;) and Law of the Russian Federation No. 3929-1 of November 19, 1992 on the Insolvency (Bankruptcy) of Enterprises (Vedomosti S'ezda Narodnykh Deputatov Rossiyskoy Federatsii i Verkhovnogo Soveta Rossiyskoy Federatsii, item 6, No. 1, 1993) the standards applicable to qualified receiver nominees shall comply with the provisions of Article 231 of the present Federal Law.

**5.** Where a court of arbitration hears a bankruptcy case under Federal Law No. 6-FZ of January 8, 1998 on Insolvency (Bankruptcy) (Sobranie Zakonodatelstva Rossiyskoy Federatsii, item 222, No. 2, 1998; item 1093, No. 12; item 1721, No. 18, 2002;), the control (supervision) body shall have the powers envisaged by Article 231 of the present Federal Law.

**6.** Until July 1, 2009 the persons being party to a bankruptcy case in which proceedings had been instituted before the entry into force of the present Federal Law are entitled to file a petition for shift to the proceedings which are applicable in a bankruptcy case and are envisaged by the present Federal Law. In this case starting from July 1, 2009 the hearing of the bankruptcy case in which proceedings had been instituted before the entry into force of the present Federal Law shall be carried out according to the rules set out in the present Federal Law.

Starting from July 1, 2009 the bankruptcy cases in which proceedings had been instituted before the entry into force of the present Federal Law and in respect of which the petitions envisaged by Paragraph 1 of the present item have not been received from the persons being party to the bankruptcy case shall be terminated, with a ruling to this effect being issued by the arbitration court.

The arbitration court's ruling on termination of proceedings in a bankruptcy case on the ground envisaged by the present item is subject to appeal in the procedure established by Item 3 of Article 61 of the present Federal Law.

Upon the expiry of the term for appeal or from the date of issuance of the appellate arbitration court's relevant judgement the arbitration court shall send the ruling on termination

of proceedings in the bankruptcy case to the body responsible for the state registration of legal entities.

**7.** The arbitration court's ruling on termination of proceedings in the bankruptcy case issued in accordance with Item 6 of the present article in the course of a winding-up proceeding shall be deemed ground for making an entry in the comprehensive state register of legal entities on the debtor's removal from the comprehensive state register of legal entities. The relevant entry shall be made in the register within five days after the date of dispatch of said arbitration court's ruling to the body responsible for the state registration of legal entities.

**8.** The qualified receivers which have been confirmed in bankruptcy cases but do not meet the requirements established by the present Federal Law shall be removed by the arbitration court on an application of the control (supervision) body before January 1, 2010. Until the date of their removal the control (supervision) body shall do the following:

1) while the qualified receivers are pursuing their activities it shall exercise control over their observance of federal laws and other normative legal acts of the Russian Federation;

2) it shall carry out inspections of the activities of the qualified receivers;

3) it shall file an application with an arbitration court for the qualified receivers being removed from the execution of the duties vested therein in bankruptcy cases if it is discovered that they are in breach of provisions of federal laws and of other normative legal acts of the Russian Federation.

President
 of the Russian Federation                                                                    V. Putin

Moscow, the Kremlin