**Hearing Date: October 12, 2017 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Due:  October 5, 2017 at 4:00 p.m. (Prevailing Eastern Time)**

**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
Rick Antonoff
Barry N. Seidel
Evan J. Zucker

**MARKS & SOKOLOV, LLC**
1835 Market Street, 17th Floor
Philadelphia, PA 19103
(215) 569-8901
Bruce S. Marks

*Attorneys for State Corporation "Deposit Insurance*
*Agency" in its Capacity as Trustee and Foreign*
*Representative for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re:

|  |  |
|---|---|
| **FOREIGN ECONOMIC INDUSTRIAL BANK LIMITED, "VNESHPROMBANK" LTD.**, | Chapter 15 |
|  | Case No. 16-13534 (MKV) |
| Debtor in a Foreign Proceeding. | |

---------------------------------------------------------------x

### MOTION OF FOREIGN REPRESENTATIVE FOR ISSUANCE OF SUBPOENA TO CONDUCT DISCOVERY PURSUANT TO 11 U.S.C. §§ 105(A) AND 1521(A)(4) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004

State Corporation "Deposit Insurance Agency" ("**Foreign Representative**"), the trustee

and foreign representative of the Foreign Economic Industrial Bank Limited, "Vneshprombank"

Ltd. (the "**Bank**" or "**Debtor**") in the Bank's pending insolvency proceeding (the "**Russian**

**Insolvency Proceeding**") under the Russian Federation Federal Law No 127-FZ "On Insolvency

(Bankruptcy)" (the "**Russian Bankruptcy Law**"), hereby moves  pursuant to 11 U.S.C. §§ 105(a)

1

and 1521(a)(4) and Federal Rule of Bankruptcy Procedure 2004, for entry of an order, substantially in the form attached hereto as Exhibit A, authorizing discovery from the Discovery Parties.[1]  In support of this Motion, the Foreign Representative respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      As set forth in the Verified Petition and accompanying declarations in this case, the Foreign Representative seeks to take discovery of all entities related to, affiliated with, owned, or controlled by Larissa Markus, including the NY LLCs (as defined in the Verified Petition).  *See* Verified Petition at ¶ 41 [Dkt 2]; Declaration of Khalizev Aleksandr Victorovich at ¶¶ 12 – 17 [Dkt. 6].  At the time this case was commenced, Ms. Markus had been arrested and charged with large-scale fraud in which she used her position as President of the Bank to cause the Bank to make more than 1,300 loans to fictitious entities with no assets and no ability or intention to repay, and further transferring proceeds of such loans for her personal benefit.  The Foreign Representative believes that Ms. Markus and accomplices used a portion of the money stolen from the Bank to purchase interests in real estate including several condominium or cooperative apartments in New York City.  Verified Petition at ¶¶ 18 – 22.

2.      On February 15, 2017, this Court entered its *Order Granting Recognition and Relief in Aid of a Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 105(a), 1517, 1520 and 1521* (the **"Recognition Order"**) [Dkt. 24].   In addition to other relief, the Recognition Order authorizes the Foreign Representative "to examine witnesses and take evidence concerning the Bank's assets,

---

[1] The "**Discovery Parties**" shall collectively mean LM Realty 31B, LLC; LM Realty 27D, LLC; LM Realty 24C, LLC; LM Realty 23H, LLC; LM Realty 20A, LLC; LM Realty 18 West, LLC; LM Realty 10C, LLC; LM Property Management LLC, Protax Services Inc.; Protax Consulting, Inc.; Ilya Bykov; First Integrated Construction, Inc.; Innovative Construction Group, Inc.; and Larisa Markus Revocable Trust.  This Motion also refers to the **"NY LLCs"** **as** defined in the Verified Petition.  While there is overlap, the terms are not interchangeable and, in any event, this Motion refers to them in different capacities.

affairs, rights, obligations or liabilities" subject to procedures set forth therein.  Specifically, the

Recognition Order further provides that,

> prior to the examination of a witness and the issuance of discovery requests
> upon a party, the Foreign Representative shall first meet and confer with
> such party; if the parties cannot agree upon the terms of the subpoena and
> proposed discovery requests, the Foreign Representative may apply to this
> Court, on notice to such other party and the U.S. Trustee, for authority to
> issue any subpoena and discovery requests and all of such other party's
> rights to object, move to quash a subpoena, or seek related relief under
> applicable law, including but not limited to section 1522(a) are preserved;

Recognition Order at 5-6.

3.      Since the date the Recognition Order was entered, the Foreign Representative has

met and conferred with several parties he believes have information relevant to his investigation,

has either confirmed that such parties have no objection to the requested discovery or reached

agreements on the scope of discovery and, in either such case, served subpoenas on such parties.[2]

Those parties have begun producing documents, copies of which are being provided to counsel to

the NY LLCs.

**Developments in Russian Criminal Proceedings against Larissa Markus**

4.      Significantly, also since the time the Court entered the Recognition Order, the

Russian court presiding in Ms. Markus's criminal trial found her guilty of the charges against her.

Ms. Markus acknowledged and pleaded guilty to the charges which the court stated are "fully

---

[2] While it is unclear whether any of the NY LLCs or any other entity besides the Foreign Representative in
a chapter 15 case is a "party" within the meaning of Fed. R. Civ. Pro 45(a)(4), made applicable to
Bankruptcy Code cases by Fed. R. Bankr. Pro. 9016, the Foreign Representative determined to treat the NY
LLCs as such in view of their active participation in the case and sent counsel copies of proposed subpoenas
in advance of or contemporaneously with serving them on non-objecting recipients.

supported by the evidence collected in the criminal case." *Judgment In the Name of the Russian*

*Federation, Case* No. 01-0086/2017 (the "**Russian Judgment**").[3]

5.      Among the findings in the Russian Judgment are the facts that Ms. Markus

> acted as an organizer and head of the organized group and a co-perpetrator of the crimes, her role being to design a criminal plan; to exercise overall guidance and control over all members of the organized criminal group; . . . to plan the obtaining and further distribution of criminal proceeds, *including outside of the Russian Federation*; . . . to dispose of the stolen monies at their will and to distribute the criminal proceeds between the members of the organized criminal group, and to act otherwise so as to support the organized group's activities and the theft of the Bank's money.

Russian Judgment at 3-4 (emphasis added).   To put it mildly, Ms Markus was the "ringleader" of

a criminal enterprise that stole money from the Bank and distributed at least a portion of the money

outside Russia.    The Russian Judgment also found that Ms. Markus's criminal activity "for the

purpose of stealing significant amount of funds from Vneshprombank LLC" began "not later than

14/05/2009.  Russian Judgment at 21.  In other words, it began prior to May 14, 2009.

6.      The Russian judgment also states that the Foreign Representative commenced civil

proceedings against Ms. Markus where it claims, and Ms. Markus admits, that she and her cohorts

stole approximately $2 billion from the Bank.  Russian Judgment at 130 (stated as 113,526,038,454

Russian Rubles and at today's exchange rate approximately $1.66 billion).

7.      Based on information obtained thus far by the Foreign Representative, there is little

doubt that Ms. Markus directly and indirectly, personally and through entities she owned and

controlled purchased several condominium and cooperative apartments in New York City as early

---

[3] The Foreign Representative has circulated a certified translation of the Russian Judgment to counsel to the Discovery Parties to determine if they have any disagreement with the translation to avoid any dispute concerning the translation.  Counsel to the Discovery Parties is currently reviewing the translation. Regardless of whether we resolve any disagreements with the Discovery Parties, we will file our certified translation in advance of the objection deadline for this Motion.

as June 2008 and as recently as December 2015, just before her arrest and all during the time she

was leading the criminal enterprise that stole billions of dollars from the Bank, as she has now

confessed to and been convicted of. It is also clear that she (or her agents) sold one or more

apartments. The Foreign Representative is well into the process of gathering evidence to link the

purchases of these apartments with money stolen from the Bank.

        8.       Each of the Discovery Parties are relevant to these efforts of the Foreign

Representative. LM Realty 31B, LLC; LM Realty 27D, LLC; LM Realty 24C, LLC; LM Realty

23H, LLC; LM Realty 20A, LLC; LM Realty 18 West, LLC; LM Realty 10C, LLC; LM Property

Management LLC, First Integrated Construction, Inc.; Innovative Construction Group, Inc. are

beneficially owned and controlled by Ms. Markus as evidenced by the opinion letter of law firm,

Shutts & Bowen LLP, regarding possible applicability of the federal Money Laundering Control

Act to transactions involving apartments in New York City owned by Ms. Markus (the "**Shutts

Letter**").[4] The Shutts Letter demonstrates that: (a) eight "New York City properties [are]

beneficially owned by Ms. Markus," and (b) Ilya Bykov is "Ms. Markus' accountant and appointed

manager of her business affairs in the United States." *See* Shutts Letter at 1. The Larisa Markus

Revocable Trust funded NY LLCs. Protax Services Inc. and Protax Consulting, Inc. are the US

companies owned and/or controlled by Mr. Bykov that provide services to his clients including

Ms. Markus.

---

[4] The Shutts Letter has been produced by 50 Riverside Blvd, LLC, seller of one of New York apartments, in discovery in these proceedings. The Discovery Parties and the Foreign Representative are negotiating the terms of a confidentiality agreement. Once finalized, and prior to the hearing on the Motion, the Foreign Representative will submit a sealed copy of the Shutts Letter to the Court.

**The Foreign Representative's Discovery Efforts**

9.      In connection with seeking discovery from the Discovery Parties and in accordance with the Recognition Order, the Foreign Representative commenced meet-and-confer discussions with counsel for the Discovery Parties.  Counsel to the Discovery Parties raised objections to the scope of discovery requests leading to further meet-and-confer discussions.  Although counsel for the Foreign Representative believed those discussions were not completed, counsel to the Discovery Parties has taken the position in email correspondence that there is "a fundamental disagreement regarding the scope of the discovery the Foreign Representative is entitled to" and thus "no further purpose to continuing our meet and confer."  The Foreign Representative therefore files this Motion seeking authority to serve subpoenas to the Discovery Parties.

10.      To find documents related to the more than 1,300 fraudulent transactions, the Foreign Representative requested from approximately 18 parties within the United States, information sufficient to (a) trace monies, (b) aid in the Foreign Representative's investigation into Ms. Markus' direct, indirect, beneficial, or controlling interests in different legal entities, and (c) determine those entities who assisted Ms. Markus in her embezzlement.  The parties included certain property holding companies, various banks, and title insurance companies.

11.      Additionally, the Foreign Representative sought documents from the Discovery Parties.  Particularly, the Foreign Representative sought certain bank records and information sufficient to understand how the entities were created, confirming their beneficial owners, and how the holding companies acquired the funds to purchase and/or manage real property within the United States.   A copy of the discovery requests are attached hereto as Exhibit B.

12.      The Discovery Parties objected to such requests as overbroad and beyond the scope of the recognition order.  However, the Foreign Representative is trying to determine: (a) if the

purchase of certain properties by entities Ms. Markus owns and/or controls and purchased during

or around the time she was stealing some $2 billion from the Bank, were purchased with Bank

assets and (b) if any of the stolen money was used to manage the properties, including the payment

of condominium fees, maintenance, insurance, taxes and other expenses. The properties include

the following:

| Address | Purchaser | Purchase Date |
|---|---|---|
| 10 West End Avenue 31B<br>New York, NY 10023 | Larisa Markus | June 26, 2008 |
| 10 West End Avenue 31C<br>New York, NY 10023 | Larisa Markus | October 30, 2008 |
| 10 West End Avenue 27D<br>New York, NY 10023 | Larisa Markus | May 27, 2009 |
| 40 BROAD STREET, UNIT 24C<br>New York, NY 10004 | LM Realty 24C, LLC | April 21, 2011 |
| 40 BROAD STREET, UNIT 23H<br>New York, NY 10004 | LM Realty 23H, LLC | April 21, 2011 |
| 40 BROAD STREET, UNIT 20A<br>New York, NY 10004 | LM Realty 20A, LLC | April 21, 2011 |
| 18 West 48th Street Unit 26A<br>New York, NY 10036 | LM Realty 18 West, LLC | November 29, 2012 |
| 50 RIVERSIDE BOULEVARD, UNIT 10C<br>New York, NY 10069 | LM Realty 10C, LLC | December 4, 2015 |

13.    In response to the Discovery Parties' objections, the Foreign Representative meet

and conferred with the Discovery Parties.  Through the meet and confer process, it became

apparent, that absent a subpoena or court order, the Discovery Parties intend to stymie the Foreign

Representative's investigation.  The Discovery Parties will not produce documents, beyond a mere

selection of bank statements, absent a finding that the Discovery Parties contributed to the

embezzlement or received funds from the embezzlement.  However, that is precisely why the

Foreign Representative needs discovery from the Discovery Parties – to link the Discovery Parties

to stolen money by forwards and backwards tracing.  Without the information sought from the

Discovery Parties, it will be exponentially more cumbersome, expensive and time consuming, if

not impossible, for the Foreign Representative to discover presently unidentified persons and

entities who contributed to or received money stolen from the Bank or property acquired with such

money.

14.    Accordingly, on September 18, 2017, the Discovery Parties terminated the meet

and confer process, and the Foreign Representative filed this motion.

### RELIEF REQUESTED

15.    The Foreign Representative requests the entry of an order, pursuant to sections

105(a) and 1521(a)(4) of the Bankruptcy Code and Bankruptcy Rule 2004, for the issuance of

subpoenas *duces tecum* and *ad testificandum*, substantially in the form attached hereto as Exhibit

B, directing the Discovery Parties to produce the documents requested therein and to appear for

an examination.

16.    Accordingly, the Foreign Representative seeks an order of this Court authorizing

the issuance of subpoenas commanding the Discovery Parties to produce documents relevant to

the Foreign Representative's investigation.

### JURISDICTION AND VENUE

17.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334,

sections 109 and 1501 of the Bankruptcy Code, the Standing Order of Referral of Cases to

Bankruptcy Judges of the United States District Court for the Southern District of New York

(Ward, Acting CJ.), dated July 10, 1984, and the Amended Standing Order of Reference M-431

dated January 31, 2012 (Preska, Acting CJ).  This is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(P).

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1410.

## ARGUMENT

19.    Section 1521 of the Bankruptcy Code provides that the court may grant a foreign representative "any appropriate relief" upon recognition which may include the "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities." 11 U.S.C. § 1521.

20.    Courts have held that section 1521(a)(4) provides for not only the examination of witnesses but the production of documents. *See In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 860 (Bankr. C.D. Cal. 2008) (relief under section 1521(a)(4) "includes the examination of witnesses pursuant to Rule 2004 and the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities[.]"); *In re SPhinX Ltd.*, 351 B.R. 103, 113 (Bankr. S.D.N.Y. 2006) (recognizing various forms of relief available to a foreign representative in chapter 15 proceedings, including "the examination of witnesses and the delivery of information"); *see also* 8 Collier on Bankruptcy ¶ 1521.02 (16th ed. rev. 2012) ("Subsection 1521(a)(4) enables discovery."). Thus, by its terms, the Bankruptcy Code permits a Foreign Representative to take broad discovery concerning the affairs of a debtor including potential causes of action the Foreign Representative may assert and contingent property interests. *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012).

21.    Bankruptcy Rule 2004 provides an additional ground for authorizing discovery in a chapter 15 proceeding. *In re Glitnir banki hf.,* No. 08-14757 (SMB), 2011 WL 3652764, at *6 (Bankr. S.D.N.Y. Aug. 19, 2011). Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). Discovery under Rule 2004 includes both document discovery and depositions. Fed. R. Bankr. P. 2004(c).

9

22.    Rule 2004 has been termed the "basic discovery device used [in] bankruptcy cases." *In re French*, 145 B.R. 991, 992 (Bankr. D. S.D. 1992). Rule 2004 is designed to permit a broad investigation into the financial affairs of the debtors to assure the proper administration of bankruptcy estates. *In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (citations omitted); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). The goal of the investigation is to discover assets and expose any fraudulent conduct. *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *In re Symington*, 209 B.R. at 683; *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (E D. Pa. 1990).

23.    Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Thus, a Rule 2004 examination is not limited to the debtor. *In re Ionosphere Clubs, Inc.*, 156 B.R. at 432. It may be made of <u>any</u> entity with knowledge of the debtor's acts, property, liabilities, and financial affairs relating to the debtor's bankruptcy proceedings. *In re Valley Forge Plaza Assocs.*, 109 B.R. at 674; *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Oh. 1989). Emphasizing the broad purpose of Bankruptcy Rule 2004, courts have been inclined to allow examination of any third party who can be shown to have a nexus with the debtor. *In re Ionosphere Clubs, Inc.*, 156 B.R. at 414; *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).

24.    There are two critical features of discovery under Bankruptcy Rule 2004. *First*, discovery, under Bankruptcy Rule 2004, is an investigatory tool in that it is undertaken pre-litigation, that is, before the filing of a lawsuit.[5] As such, a Bankruptcy Rule 2004 motion need

---

[5] *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("Starting with the 1978 Code there has been an expansive reading of the rule. . . . It can be legitimately compared to a fishing expedition. It can net the dolphins as well as the tuna; however, the net, in the discretion of the Court, can be carefully stitched to limit its catch.") (*citing In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983)); *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002); *In re Ecam Publ'ns, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991). To that end, courts permit Bankruptcy Rule 2004 discovery that is

not be tied to specific factual allegations at issue between parties to a complaint or contested matter. *In re Symington*, 209 B.R. at 683. *Second*, Bankruptcy Rule 2004 discovery is subject to fewer objections on grounds of relevance than discovery issued in connection with a contested matter or adversary proceeding under the Federal Rules of Civil Procedure. *Id.*

25.    In deciding whether a Bankruptcy Rule 2004 examination is permissible, courts must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination" as compared to the degree of intrusiveness on the parties. *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. at 712.

26.    Discovery, is particularly appropriate where, as here, there is sufficient information already available raising valid questions as to whether a portion of the approximately $2 billion Ms. Markus stole from the Bank in more than 1,300 fraudulent transactions beginning no later than May 2009 and ending in December 2015 was used to acquire interests in property located in the United States.  The discovery requested in this Motion will provide the Foreign Representative with information it needs from parties uniquely positioned to have such information.  The Foreign Representative must obtain such information to properly discharge its duties to the creditors of the Debtor.  The Foreign Representative requires the requested information to assess fully and investigate thoroughly potential claims against third parties and to discover the location of the Bank's assets or proceeds thereof. Absent such discovery, the Foreign Representative has no alternative source to obtain such documents and cannot complete its investigation.

27.    Moreover, the discovery sought is tailored to the circumstances surrounding the collapse of the Bank, which gave rise to the Russian Insolvency Proceeding.  Compliance with the

---

considerably broader than the scope of discovery permissible under Rule 26 of the Federal Rules of Civil Procedure.  *In re Corso*, 328 B.R. 375, 383 (E.D.N.Y. 2005); *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996); *In re Almatis B.V.*, No. 10-12308 (MG), 2010 WL 4877868, *4 (Bankr. S.D.N.Y. 2010).

annexed document requests by the Discovery Parties will not be burdensome and can be achieved without undue hardship in the time period requested.  Additionally, the Foreign Representative is willing to enter into a confidentiality agreement with the Discovery Parties prior to their production.

28.    Consequently, the documents and testimony sought by the Foreign Representative are squarely within the scope of a section 1521(a)(4) and Rule 2004 examination.

## NOTICE

29.    Notice of this Motion has been provided to (a) counsel to the Discovery Parties and (b) all parties who have requested to receive notice of pleadings in this case.

30.    The Foreign Representative submits that no further notice is necessary or required.

## CONCLUSION

For the reasons set forth above, the Foreign Representative respectfully request that the

Court grant this Motion in its entirety, and grant such other further relief as this Court deems just

and proper.

Dated: New York, New York
        September 26, 2017

**BLANK ROME LLP**

By:    */s/ Rick Antonoff*
       Rick Antonoff
       Barry N. Seidel
       Evan J. Zucker
       The Chrysler Building
       405 Lexington Avenue
       New York, New York 10174
       (212) 885-5000

       and

       Bruce S. Marks
       MARKS & SOKOLOV, LLC
       1835 Market Street, 17th Floor
       Philadelphia, PA 19103
       (215) 569-8901

       *Attorneys for State Corporation "Deposit Insurance
       Agency" in its Capacity as Trustee
       and Foreign Representative for the Debtor*