# EXHIBIT A

RICHARDS KIBBE & ORBE LLP
200 Liberty Street
New York, New York 10281
Tel: (212) 530-1924
gplotko@rkollp.com
Gregory G. Plotko

**Hearing Date and Time**:
October 12, 2017 at 10:00 a.m. (Eastern Time)

**Deadline to Respond**:
October 5, 2017 at 4:00 p.m. (Eastern Time)

KRUZHKOV RUSSO PLLC
350 Fifth Avenue, Suite 7230
New York, New York 10118
Tel: (212) 363-2000
marlen@kruzhkovrusso.com
irina@kruzhkovrusso.com
Marlen Kruzhkov
Irina Kobylevsky

*Attorneys for LM Realty 31B, LLC;*
*LM Realty 27D, LLC; LM Realty 24C, LLC;*
*LM Realty 23H, LLC; LM Realty 20A, LLC;*
*LM Realty 18 West, LLC; LM Realty 10C, LLC;*
*LM Property Management LLC; The Larisa Markus*
*Revocable Trust; The Larmar Foundation;*
*Protax Services Inc., Protax Services Consulting, Inc.;*
*Ilya Bykov; First Integrated Construction, Inc.; and*
*Innovative Construction Group, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re:

**FOREIGN ECONOMIC**
**INDUSTRIAL BANK LIMITED,**
**"VNESHPROMBANK" LTD.,**

Chapter 15

Case No. 16-13534 (MKV)

Debtor in a Foreign Proceeding.
-----------------------------------------------------------------x

***AMENDED*** **MOTION OF LM REALTY 31B, LLC; LM REALTY 27D, LLC;**
**LM REALTY 24C, LLC; LM REALTY 23H, LLC; LM REALTY 20A, LLC; LM**
**REALTY 18 WEST, LLC; LM REALTY 10C, LLC; LM PROPERTY MANAGEMENT**
**LLC; THE LARISA MARKUS REVOCABLE TRUST; PROTAX SERVICES INC.;**
**PROTAX SERVICES CONSULTING, INC.; ILYA BYKOV; FIRST INTEGRATED**
**CONSTRUCTION, INC.; AND INNOVATIVE CONSTRUCTION GROUP, INC. FOR**
**ENTRY OF AN ORDER PURSUANT TO RULE 9016 OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE QUASHING THE SUBPOENAS ISSUED BY THE**
**FOREIGN REPRESENTATIVE**

## TABLE OF CONTENTS

Page

Preliminary Statement.................................................................................................. 1

Jurisdiction and Venue................................................................................................. 2

Factual Background ...................................................................................................... 3

    A.    The Debtor Bank....................................................................................3

    B.    The Chapter 15 Case..............................................................................3

    C.    The Subpoenas.......................................................................................4

    D.    The Meet and Confer .............................................................................6

Relief Requested ........................................................................................................ 10

Argument .................................................................................................................... 11

    A.    The Subpoenas Directed At Third-Parties Pertaining To The Movants Are Beyond The Scope Of Section 1521(a)(4) and the Recognition Order. ................11

    B.    The Subpoenas Directed At The Movants Must Also Be Limited Under Civil Rule 45 Because They Are Beyond The Scope Of The Recognition Order..........15

No Prior Application................................................................................................... 16

Conclusion ................................................................................................................. 17

# TABLE OF AUTHORITIES

                                                                                      Page(s)

**CASES**

*Arias–Zeballos v. Tan,*
    No. 06 Civ. 1268(GEL), 2007 WL 210112 (S.D.N.Y. Jan.25, 2007) ......................................14

*Griffith v. United States,*
    No. Part I M8–85, 2007 WL 1222586 (S.D.N.Y. Apr.24, 2007) ............................................14

*In re Glitnir banki hf.,* No. 08-14757 SMB, 2011 WL 3652764, at \*7-11 (Bankr.
    S.D.N.Y. Aug. 19, 2011) ..........................................................................................11, 13, 14

*In re Petition of Board of Dirs. of Hopewell Int'l Ins. Ltd.,*
    258 B.R. 580 (Bankr. S.D.N.Y. 2001) ................................................................................12

*In re Petroforte Brasiliero de Petroleo Dtda.,*
    542 B.R. 899 (Bankr. S.D. Fla. 2015) ................................................................................13

*In re Sphinx, Ltd.,*
    No. 06-11760 (RDD) (Bankr. S.D.N.Y. May 14, 2007) (Exhibit 2 hereto) .........................12

*Kenney, Becker LLP v. Kenney,*
    No. 06 Civ. 2975(JSR), 2008 WL 681452 (S.D.N.Y. Mar.10, 2008) ...................................14

*Solow v. Conseco, Inc.,*
    No. 06 Civ. 5988(BSJ)(THK), 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008)..........................14

**STATUTES**

11 U.S.C. §§ 109 and 1501 ......................................................................................................2

11 U.S.C. §§ 1517.................................................................................................................3

11 U.S.C. § 1520.................................................................................................................4

11 U.S.C. § 1521(a)(4)...................................................................................1, 2, 4, 11, 12, 13, 15

28 U.S.C. §§ 157 and 1334 ...................................................................................................2

28 U.S.C. § 1410.................................................................................................................2

**RULES**

Fed. R. Civ. P. 45.............................................................................................................2, 15

Rule 2004 of the Federal Rules of Bankruptcy Procedure .................................................2, 11, 12

Rule 9016 of the Federal Rules of Bankruptcy Procedure ......................................................2, 11

LM Realty 31B, LLC, LM Realty 27D, LLC, LM Realty 24C, LLC, LM Realty 23H,

LLC, LM Realty 20A, LLC, LM Realty 18 West, LLC, LM Realty 10C, LLC, LM Property

Management LLC,[1] The Larisa Markus Revocable Trust, Protax Services Inc. a/k/a Protax

Services Corp., Protax Services Consulting, Inc.,[2] Ilya Bykov, First Integrated Construction, Inc.

("FIC") and Innovative Construction Group, Inc. ("ICG") (collectively, the "Movants"), by their

undersigned counsel, hereby move (the "Motion") to quash subpoenas to all third-parties (the

"Subpoenas") which have been propounded or have been proposed by the State Corporation

("Deposit Insurance Agency"), the trustee and foreign representative (the "Foreign

Representative") of the Foreign Economic Industrial Bank Limited "Vneshprombank" Ltd. (the

"Bank" or "Debtor") as of the date of the Motion.[3] In addition, the Movants respectfully request

the entry of the proposed order limiting the scope of discovery. In support of this Motion, the

Movants represent as follows:

### **Preliminary Statement**

1.       The Movants do not oppose the Foreign Representative conducting a thorough

tracing investigation to locate funds (or proceeds of such funds) that were stolen from the Bank.

The Movants do not dispute that the Recognition Order and Section 1521(a)(4) of the

Bankruptcy Code ("Section 1521(a)(4)") allow for this type of discovery. In fact, the Movants

---

[1] As utilized herein, the term "LM Entities" refers to the following New York LLC that own the Apartments: (i) LM
Property Management LLC, (ii) LM Realty 10C LLC, (iii) LM Realty 18 West LLC, (iv) LM Realty 20A LLC, (v)
LM Realty 23H LLC, (vi) LM Realty 24C LLC, (vii) LM Realty 27D LLC, and (viii) LM Realty 31 LLC. The
Subpoena's definition of the LM Entities includes an entity called L & M Consulting Group, Inc., which is not
related to the aforementioned LM Entities. The undersigned counsel does not represent L & M Consulting Group,
Inc. and therefore, such entity is excluded as part of the defined LM Entities. The undersigned counsel has notified
the Foreign Representative of this fact.

[2] Protax Services Inc. a/k/a Protax Services Corp. and Protax Services Consulting, Inc. are referred to herein as the
"Protax Entities."

[3] This Motion was originally filed on September 28, 2017. Counsel for Movants received new information in the
past two days, including documents received from Panama this morning, which have called into question certain
facts. As these facts do not change the substance of Movant's argument, they have been removed in this Amended
Motion while we continue to investigate.

have already agreed to provide information regarding the source of funds used to purchase the

apartments owned by the LM Entities (the "Apartments") to assist the Foreign Representative in

its investigation.   The Foreign Representative's Subpoenas, however, go significantly beyond

the scope of authorized discovery and seeks private financial information regarding the Movants'

from third-parties.  Such information requests are clearly out of bounds without a showing that

stolen Bank funds can be traced to the Movants.  The Foreign Representative has propounded

far-reaching discovery demands regarding the Movants' personal financial information,

mortgages, banking records and use of the Apartments, among others, which cover nearly twenty

years (or otherwise an undefined timeframe).  Such information cannot reasonably be viewed as

assisting the Foreign Representative in its tracing investigation and if the investigation reveals

that the funds utilized to purchase the Apartments did not flow from the Bank, the Foreign

Representative would have no right to seek such documents.  As such, the Subpoenas are outside

the scope of the Recognition Order and Section 1521(a)(4) and should be quashed.

2.      It is the Movant's position that the Foreign Representative is entitled to a limited

scope of discovery: (1) documents reflecting the source of funds utilized to purchase the

Apartments to attempt to trace such funds back to the embezzled funds; and (2) documents

concerning ownership (direct and indirect) of the LM Entities, ICG and FIC.

### Jurisdiction and Venue

3.      The Bankruptcy Court has jurisdiction to consider this Motion pursuant to 28

U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 109 and 1501.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this district pursuant to 28 U.S.C. §

1410. The statutory predicate for the relief requested herein are Sections 1521(a)(4) and 1522(c)

of the United States Bankruptcy Code, Rules 2004 and 9016 of the Federal Rules of Bankruptcy

Procedure and Rule 45 of the Federal Rules of Civil Procedure.

2

**Factual Background**

A.    **The Debtor Bank**

4.    The Bank was incorporated as a limited liability company under the federal laws of the Russian Federation in July 1995. *See* Petition ¶ 4 [Docket No. 2]. The Bank's headquarters were located in Moscow and it operated in seven federal districts of Russia until its banking license was revoked in January 2016. *See id.* at ¶ 4.

5.    Larisa Markus[4] served as the Bank's President and member of its Managing Board and Board of Directors. *See id.* at ¶ 7. On December 22, 2015, Ms. Markus was arrested on suspicion of fraud (*see id.* at ¶ 9) and subsequently confessed to embezzling funds from the Bank. *See* Certified Translation of Larisa Markus Sentencing Order (the "Sentencing Order"), [Docket No. 39].[5] The Sentencing Order made no mention of the Movants nor provided any indication that the misappropriated funds were transferred to the United States, used to purchase Apartments in New York City, or otherwise related to the Movants in any way. *See id.*

B.    **The Chapter 15 Case**

6.    On March 11, 2016, on application of the Central Bank of Russia, the Moscow Arbitration Court declared the Bank insolvent and commenced a bankruptcy proceeding under the Russian Bankruptcy Law (the "Russian Insolvency Proceeding"). On February 15, 2017, this Court entered an order recognizing the Bank's foreign proceeding and granted other related relief (the "Recognition Order"). [Docket No. 24]. The Recognition Order found that the Russian Insolvency Proceeding was entitled to recognition under sections 1517(a) and 1517(b)(1) of the

---

[4] The undersigned counsel does not represent Larisa Markus individually. To the extent that the requests in the subpoenas concern individuals and/or entities which we do not represent, the Movants do not take a position.

[5] In the interest of judicial economy, the Movants and the Foreign Representative have conferred and agreed upon a translation of the Sentencing Order, which the Foreign Representative has filed on the docket. Accordingly, Movants refer to Docket No. 39 instead of filing the translation as Exhibit 4, as stated in the original filing of the Motion. The exhibits hereto have been renumbered accordingly.

Bankruptcy Code, and recognized the Russian Insolvency Proceeding as a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code.

7.    The Recognition Order further unequivocally states that the Foreign Representative is allowed to take discovery pursuant to Section 1521(a)(4) "concerning the **Bank's** assets, affairs, rights, obligations or liabilities." *See id.* at p. 5 (emphasis added).    There is no finding in the Recognition Order that the Movant's assets are proceeds of the Bank's stolen funds.

8.    Upon information and belief, there has not been a finding or showing made in any court tracing the stolen Bank funds to the LM Entities or any of the Movants.

**C.    The Subpoenas**

9.    Between July 27, 2017 and the present, the Foreign Representative issued thirty-four (34) subpoenas to third-parties, including the Movants. *See* **Exhibit 1** attached hereto.[6] These subpoenas can be grouped into four categories, as follows:

a.    *Bank Subpoenas:* 9 of the 34 subpoenas are virtually identical and addressed to various banks (the "Bank Subpoenas").    The first request in the Bank Subpoenas requires the blanket production of all account documents – covering a period of nearly two decades – concerning most of the Movants.[7]    Such account documents include, *inter alia,* copies of all account opening statements, monthly statements, cancelled checks. *See* **Exhibit 1** ("Bank Subpoenas").

b.    *Lender Subpoenas:* 10 of the 34 subpoenas are also virtually identical and addressed to several lenders (the "Lender Subpoenas").    Without specifying a timeframe, the

---

[6] For the Court's ease of reference, **Exhibit 1** is a chart containing a list of the subpoenas issued by the Foreign Representative as of the date of the Motion.  The chart also sets forth the return dates and the specific request(s) to which the Movants object.

[7] The Protax Entities and Mr. Bykov appear to be absent from these subpoenas.

Lender Subpoenas require the wholesale production of "all documents, communications and information" (i) concerning almost all of the Movants[8]; (ii) concerning all transactions conducted by the various Movants including, *inter alia,* closing documents, closing binders, mortgages, mortgage modifications, insurance documents; (iii) concerning "the person, entity, or individual to whom mortgage/loan/sale proceeds related to the transactions with the Properties conducted by . . .the LM [Entities], by Bykov, and/or Protax acting on behalf of Markus and/or LM [Entities] were distributed. . ."; (iv) "regarding and sufficient to identify the bank accounts from/to which payments related to the Properties were made by/for or on behalf of [almost all of the Movants]; and (v) "regarding and sufficient to identify all assets of [almost all of the Movants] including but not limited to any bank accounts, deeds, investment account statements, accounts receivable, and cash holdings".[9]

      *c.*     *Subpoenas to Movants LM Entities, Innovative Construction Group and First Integrated Construction, Inc.:* 11 of the 34 subpoenas are nearly identical[10] and addressed to the Movants LM Entities, ICG and FIC (the "LM/ICG/FIC Subpoenas"). Again, without specifying a time frame, the LM/ICG/FIC Subpoenas seek an extensive production of "all documents, communications and information" concerning (i) corporate governance documents (e.g., bylaws, resolutions); (ii) "current and historical" members, managers and officers; (iii) purchase of any properties, any subsequent sale or assignment or disposition of the properties; (iv) current and historical bank accounts; (v) primary purpose or use of the properties or any individuals utilizing the properties; (vi) all assets.

---

[8] The Larisa Markus Revocable Trust appears to be absent from these subpoenas.

[9] An additional request (request no. 7) is contained solely in the subpoena to HSBC Bank USA N.A. which is duplicative of request no. 1 in the Bank Subpoenas.

[10] The only difference between the LM Subpoenas and the ICG/FIC Subpoenas is that Request 7 of the ICG/FIC Subpoenas contain additional types of documents requested.

    *d.*    *Subpoenas to Movants Protax Entities and Mr. Bykov:* 4 of the 34 subpoenas are nearly identical to the Lender Subpoenas but addressed to the Movants Protax Entities and Mr. Bykov (the "Protax Subpoenas").[11] *See supra,* (b) Lender Subpoenas.

**D.**    **The Meet and Confer**

10.    Upon receipt of the various subpoenas, Movants acted diligently to attempt to resolve the dispute concerning the scope of the subpoenas with the Foreign Representative, as they understood they were required to do.  When it became apparent that no resolution was forthcoming and that the process had been dragged out for too long, Movants determined it was necessary to file the instant Motion concerning the scope of the subpoenas.

11.    Counsel for the Movants first learned about any subpoenas in this matter on Friday, July 28, 2017 when Protax Services Consulting, Inc. forwarded to counsel the proposed subpoena it received from the Foreign Representative.

12.    While counsel was analyzing this subpoena, on Tuesday, August 1, 2017, Mr. Bykov and the other Protax Entities forwarded to counsel the proposed subpoenas they received from the Foreign Representative.

13.    On Wednesday, August 2, 2017, counsel for the Foreign Representative sent to Movants' counsel subpoenas it proposed to propound on the LM Entities, ICG and FIC.

14.    Movants' counsel analyzed the fifteen proposed subpoenas and began to work on a response to the Foreign Representative concerning the substance of the proposed subpoenas, specifically their objection to the scope of the subpoenas.  At the same time, Movants' counsel conducted an analysis to ascertain the identities and relationship of various proposed subpoena

---

[11] The only difference between the Protax Subpoenas and the Lender Subpoenas is that the Protax Subpoenas do not contain request number 2, which seeks "[a]ll documents, communications and information with regard to the Properties concerning [the Protax Entities]."

recipients, ran conflict checks, and prepared retainer agreements for all Movants which counsel
had not yet been retained to represent in this matter.

15.    On Friday, August 4, 2017, while counsel for the Movants was still conducting an
analysis concerning several proposed subpoena recipients, they contacted counsel for the Foreign
Representative via email to set up a meet and confer concerning the subpoenas proposed to be
served on Mr. Bykov and the Protax Entities, as the Foreign Representative requested a response
within 10 days.  Movants' counsel proposed Tuesday, August 8 or Wednesday August 9, 2017.

16.    Counsel for the Foreign Representative replied to this email on Tuesday August 8,
2017 stating they are available the following day from 9 AM to 12 PM and requesting that the
meet and confer encompass the rest of the subpoenas they proposed to serve on actual or
anticipated clients of Movants' counsel.

17.    Also on August 8, 2017, Movants' counsel responded that they would need
additional time to be able to meet and confer concerning the rest of the subpoenas and suggested
that a meet and confer be scheduled for Wednesday, August 16, 2017, which was the earliest
time that all counsel on the Movants' side was available.

18.    In addition, in their August 8, 2017 email, Movants' counsel noted that it had
come to their attention that the Foreign Representative had sent letters and proposed subpoenas
to various third parties seeking documents concerning the Movants and demanded that copies of
the same be furnished to Movants' counsel.

19.    On August 9, 2017, the Foreign Representative provided Movant's counsel with
copies of nine subpoenas served the prior day on various third parties.

20.    On August 10, 2017, counsel for the Foreign Representative responded to
Movants' counsel's August 8th email concerning scheduling a meet and confer and offered times

7

on August 14, 15 and 16. Movants' counsel replied that same day that they were unavailable at

the proposed times and offered additional alternatives on August 16 and 17.

21.    Also on August 10, 2017, Movants' counsel sent a letter to counsel for the

Foreign Representative detailing their objection to the scope of the subpoenas already served on

third parties and proposed to be served on the Movants. The Movants objected to the Foreign

Representative's wide-ranging probe of their personal financial information on the ground that,

*inter alia,* the subpoenas seek private information concerning third parties which exceed and are

contrary to the requirements or permissible scope of discovery under the Recognition Order

because there has been no showing that any information sought related to assets of the Debtor.

The Movants also objected to the Foreign Representative serving additional subpoenas until the

scope issue is resolved. [Docket No. 30-6].

22.    On August 11, 2017 counsel for the Foreign Representative sent an email

responding to both pieces of Movants' counsel's August 10th correspondence. In response to the

August 10th letter setting forth objections to scope, counsel for the Foreign Representative stated

"The appropriate process is to conduct a meet and confer to discuss this." [Docket No. 30-7, at

11]. With respect to scheduling a meet and confer, counsel for the Foreign Representative noted

they were not available at the proposed times but that they were generally available Monday

August 21 and Tuesday, August 22. *Id.*

23.    Counsel for the Movants reviewed this Court's rules and determined that the meet

and confer on the discovery issue concerning scope of subpoenas was the appropriate course.

Thus, also on August 11, 2017, counsel sent a responsive email agreeing the next step

concerning both the subpoenas served on third parties and proposed to be served on Movants

was to meet and confer concerning their scope. Movants' counsel noted they were also available

on Monday, August 21 and Tuesday, August 22 and sought to set a particular time.  [Docket No.
30-7, at 10].

24.    Also on August 11, 2017, the Foreign Representative provided Movant's counsel
with copies of five subpoenas served on various third parties.

25.    On August 15, 2017, having not heard back from counsel for the Foreign
Representative regarding scheduling, Movants' counsel followed up seeking to confirm a meet
and confer.  Counsel for the Foreign Representative replied that they needed another day or two
to determine availability.

26.    On August 17, 2017, counsel scheduled a meet and confer for August 22, 2017.
Counsel for the Foreign Representative also requested that Movants specify their objections to
the proposed subpoenas to Movants ahead of the meet and confer.

27.    On Monday August 21, 2017, Movants' counsel sent an email specifying the
objections to the proposed subpoenas based on scope and noting that itemized objections to each
request is premature in the absence of an agreement on scope of the subpoenas.

28.    The Movants and the Foreign Representative conducted a telephonic meet and
confer on August 22, 2017 in an attempt to resolve this matter.

29.    Despite the scope of all subpoenas being an overarching issue, counsel for the
Foreign Representative insisted that Movants' counsel provide itemized objections to each
request in the subpoenas.  Movants' counsel agreed that they would do so by the end of the week
and the parties agreed they would schedule a second meet and confer thereafter.

30.    On August 23, 2011, the Foreign Representative provided Movants' counsel with
a copy of another subpoena served on various third parties.  Movants' counsel lodged its
objection to that subpoena on the same day.

31.    On Friday, August 25, 2017, Movants' counsel sent a letter detailing their objections to every subpoena, served or proposed. [Docket No. 30-8].

32.    Instead of responding to the August 25th letter the following week, the Foreign Representative served three additional subpoenas.

33.    Having not received a response from counsel for the Foreign Representative to Movants' August 25th letter and having determined that the Foreign Representative was seemingly dragging out the meet and confer process to allow for subpoena recipients to produce documents, Movants' counsel contacted the Court to schedule a discovery conference.

34.    The parties participated in a telephonic conference with the Court on September 12, 2017, at which time the Court authorized this Motion.

35.    As it is clear that the issue of scope must be resolved by the Court, Movants' counsel has suspended the meet and confer concerning proposed subpoenas to the Movants.

### Relief Requested

36.    The Movants respectfully request the entry of an order (i) quashing the subpoenas at issue[12, 13]; in addition, entering an order substantially in the form annexed hereto in **Exhibit 3**; (ii) staying the time to respond to the subpoenas which have not yet been responded to until the Court rules on the Motion; and (iii) granting such other and further relief the Court deems just and proper.

---

[12] As of the date of the Motion, Movants have not technically been "served" with the subpoenas because the parties had been in the process of meeting and conferring as required by the Recognition Order. However, it is clear that the parties are unable to come to an agreement concerning the scope of the subpoenas and any further meet and confer on the details of specific requests (including burden, ambiguity, etc.) is futile in light of the impasse concerning scope. In the interest of judicial economy, Movants respectfully request that the order quashing the subpoenas or otherwise limiting discovery include those subpoenas the Foreign Representative proposed to propound on them because the issues are substantially the same with respect to the other third parties (i.e., the banks and lenders). The Movants also preserve all rights to oppose the Foreign Representative's Motion for Issuance of Subpoena to Conduct Discovery filed on September 26, 2017 [Docket No. 36].

[13] With respect to the documents which have already been produced by 10 Subpoena recipients, if the Court grants the Motion, the Movants respectfully request that these documents be destroyed and an affirmation be submitted by the Foreign Representative affirming compliance.

## Argument

### A.    The Subpoenas Directed At Third-Parties Pertaining To The Movants Are Beyond The Scope Of Section 1521(a)(4) and the Recognition Order.

37.    The Bank Subpoenas and Lender Subpoenas fail to comply with the requirements of Section 1521(a)(4) and the Recognition Order and should be quashed.

38.    Unlike routine litigation where the scope of permissible discovery is broad, in a Chapter 15 proceeding discovery is tailored to reach information concerning the Debtor's assets, rights, obligations or liabilities.  Where discovery is sought which relates to third parties such as the Movants, the Court must be satisfied that the information sought bears a connection to the Debtor's assets, liabilities, income, debts or financial affairs.  *See In re Glitnir banki hf.*, No. 08-14757 SMB, 2011 WL 3652764, at *7-11 (Bankr. S.D.N.Y. Aug. 19, 2011) (granting motion to quash various subpoenas seeking private information of third parties which were not shown to relate to the debtor's assets).

39.    As Judge Bernstein observed, "[s]ection 1521(a)(4) expressly governs the Foreign Representative's discovery rights.  Bankruptcy Rule 2004 complements those rights, and may provide a procedural mechanism to obtain a subpoena under Rule 9016 of the Federal Rules of Bankruptcy Procedure, but cannot expand those rights beyond what the statute and the order issued pursuant to the statute permit." *Id.* at *6.  In *Glitnir,* a foreign representative obtained an order for discovery in a Chapter 15 action and, pursuant to that order, issued subpoenas for private financial records. *Id.* at *2-3. The movants moved to quash the subpoenas on the ground that the subpoenas exceeded the scope of permissible discovery in Chapter 15 cases. *Id.* Granting, in part, their motion to quash, Judge Bernstein noted that "§1521(a)(4) may not authorize 'fishing expeditions' associated with Rule 2004." *Id.* at *6, n. 15.  Rather, a foreign representative must "ultimately demonstrate that its request meet the [section 1521] criteria." *Id.*

at *6, citing *In re Petition of Board of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 586

(Bankr. S.D.N.Y. 2001) (denying application for discovery under Rule 2004 in an ancillary case

that, although relevant to the administration of the foreign estate, did not relate to the

preservation or recovery of property in the United States).

40.     A correspondingly restrictive view was expressed by Judge Drain in *In re Sphinx,*

*Ltd.,* No. 06-11760 (RDD) (ECF Doc. 83 & 83-1) (Bankr. S.D.N.Y. May 14, 2007) (**Exhibit 2**

attached hereto).  In the context of deciding a discovery motion by a foreign representative,

Judge Drain denied the requested discovery, stating, "given the limitations that I see in Sections

1521(a)(4) and 1522(c), and the extremely vague nature of the claims that are sought to be

uncovered by this request, on this record I would deny the motion." *Id.* at 10.

41.     Here, the disputed discovery requests do not fall within the scope of section 1521

and the Recognition Order which provides that discovery is limited to evidence concerning the

Debtor's assets and affairs. *See* Recognition Order at p. 5.

42.     First, without any showing that stolen funds can be traced to any of the LM

Entities, the Subpoenas seek private, highly sensitive information regarding the Movants'

finances, including, *inter alia*, their banking records and communications which they had every

reason to expect would be held in confidence.

43.     For example, Request 1 in the Bank Subpoenas seek nearly <u>twenty years</u> of "all

wire transfers to; wire transfers from; and all documents and records including but not limited to

applications to open an account, account records, monthly statements, wire transfer records,

deposit or withdraw records and/or cancelled checks in the name of, or concerning [each and

every one of the LM Entities, FIC, ICG, and Larisa Markus Revocable Trust]." *See* **Exhibit 1**.

Without any showing of reason to believe the predicate – that the embezzled funds belonging to

the Russian Bank were used by these entities to purchase property in the United States – the

Foreign Representative hopes that copies of cancelled checks and monthly account statements

for two decades from eight banks may somehow provide the necessary evidence that these

entities were purchased with the Bank's assets.

44.    Second, as detailed in the Factual Background and **Exhibit 1**, these disputed

requests are overbroad and clearly beyond the scope of Section 1521(a)(4) because they seek

private information which is unrelated to the Bank's assets. By way of example, Request 1 of

the Lender Subpoenas demands the production of "[a]ll documents, communications and

information concerning [the LM Entities]" for an unspecified timeframe. *See* **Exhibit 1**. The

Foreign Representative is not seeking discovery that relates to the Bank's assets, liabilities or

obligations. Viewed in the best light, the subpoenas demand extensive documents concerning

the financial condition of the Movants that the Foreign Representative assumes may have a

possible nexus to the Debtor. To establish a nexus between the Movants' private financial

information and Bank's assets would require a showing that the Movants actually paid for the

properties in the United States from the Bank's embezzled funds. No showing remotely close

has been made here and pure conjecture and allegations "upon information and belief"[14] are

insufficient to expand the scope of discovery in any foreign proceeding. *See In re Glitnir banki*

*hf,* 2011 WL 3652764 at \*7; *In re Petroforte Brasiliero de Petroleo Dtda.,* 542 B.R. 899, 912-

913 (Bankr. S.D. Fla. 2015).

45.    The Foreign Representative should have traced the embezzled funds from Russia

where the Debtor is located and conducted business to the United States (and the LM Entities

---

[14] *See e.g.,* Petition at ¶¶ 10, 11, 18.

specifically) to establish its entitlement to seek the broad discovery encompassed by the third-party subpoenas. However, the Foreign Representative has not done so.

46.    At most, the Foreign Representative is entitled to documents reflecting the source of funds utilized to purchase the real properties at issue to attempt to trace such funds back to the embezzled funds. Should such tracing reveal that the funds utilized to purchase the real properties stemmed from the embezzled funds, additional discovery may be warranted. But if such tracing reveals that the source of funds was anything other than those embezzled funds, the Foreign Representative would not be entitled to any additional discovery sought by the subpoenas, as such discovery would not relate to the Bank's assets. The proposed protective order set forth in **Exhibit 3** accounts for the limited scope of discovery as it relates to the source of funds.[15]

47.    To the extent that the Foreign Representative argues that Movants lack standing to object to the subpoenas issued to these third-party banks and lenders concerning their personal financial information, the law is abundantly clear in New York that third parties "have a privacy interest in their financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." *See In re Glitnir bank hf,* 2011 WL 3652764 at *5 (finding the Movants had standing to oppose the third-party subpoenas), citing *Arias–Zeballos v. Tan,* No. 06 Civ. 1268(GEL), 2007 WL 210112, at *1 (S.D.N.Y. Jan.25, 2007)(Fox, M.J.) (collecting cases); *accord Kenney, Becker LLP v. Kenney,* No. 06 Civ. 2975(JSR), 2008 WL 681452, at *2 n. 1 (S.D.N.Y. Mar.10, 2008); *Solow v. Conseco, Inc.,* No. 06 Civ. 5988(BSJ)(THK), 2008 WL 190340, at *4 (S.D.N.Y. Jan. 18, 2008) (Katz, M.J.); *Griffith v. United States,* No. Part I M8–85,

---

[15] As part of the meet and confer process between the Movants and the Foreign Representative, the Movants agreed they would provide documents reflecting source of funds utilized to purchase the Apartments at issue to allow the Foreign Representative to attempt to trace them to the embezzled funds and documents concerning ownership (direct and indirect) of the LM Entities, ICG and FIC. [Docket No. 30-8]. The proposed protective order attached as **Exhibit 3** reflects this limited scope of discovery.

2007 WL 1222586, at *1 (S.D.N.Y. Apr.24, 2007); *see also,* Fed. R. Civ. P. 45 advisory

committee's note (1991) (the court may "quash, modify, or condition a subpoena to protect the

person subject to *or affected by the subpoena* from unnecessary or unduly harmful disclosures of

confidential information.") (emphasis added).

48.    Accordingly, the Motion should be granted and Bank Subpoenas and Lender

Subpoenas quashed.

**B.    The Subpoenas Directed At The Movants Must Also Be Limited Under Civil
Rule 45 Because They Are Beyond The Scope Of The Recognition Order.**

49.    For the same reasons set forth above (*see* Point A), the subpoenas directed to the

Movants (the LM/ICG/FIC Subpoenas and the Protax Subpoenas) should likewise be subject to

an order limiting the scope of discovery because they fail to comply with the requirements of

Section 1521 of the Bankruptcy Code and are in contravention of the Recognition Order.[16]

50.    For example, Request 1 in the LM/ICG/FIC Subpoenas directs the production of

"all documents, communications and information concerning governance and control of, the

Company, including, but not limited to bylaws, resolutions, certificates of membership and

communications with Markus." *See* **Exhibit 1**. The corporate governing documents of an entity

would not provide information connected to the Bank's assets. The Protax Subpoenas fair no

better in their attempt to take unfettered discovery. *See e.g.,* **Exhibit 1**, Request 2 (seeking "all

documents, communications and information concerning [the LM Entities]"). The subpoenas

directed to the Movants make it transparent that the Foreign Representative is boot-strapping its

requests on mere conjecture.

---

[16] Although the main basis of the Motion is the broad scope of the subpoenas, the Movants preserve their rights to object to the subpoenas proposed to be issued to them on other grounds should the scope of those subpoenas be upheld and to continue to meet and confer with the Foreign Representative concerning the same.

51.     In light of the obtrusive and far-reaching nature of all the subpoenas propounded by the Debtor, the Motion should be granted in full.  If the Court is inclined to (i) deny Movants' request to quash the third-party subpoenas to the banks and lenders; and/or (ii) reserve ruling with respect to the subpoenas directed at Movants because they have not technically been "served", the Movants respectfully request that the Court issue an order which limits the scope of discovery.  The Movants are submitting a proposed order for the Court's consideration, annexed hereto in **Exhibit 3**.

**No Prior Application**

52.     No prior application for the relief sought in this Motion has been made to this Court or to any other court.

## Conclusion

53.    For the foregoing reasons, the subpoenas to all third parties should be quashed

and an order limiting the scope of discovery be entered,[17] and the Court should grant Movants

such other and further relief as the Court deems just and proper, including reimbursement of

reasonable expenses and attorneys' fees.

Dated: October 4, 2017
      New York, New York

                                     Respectfully submitted,


                                     /s/ Gregory G. Plotko
                                     Gregory G. Plotko, Esq.
                                     RICHARDS KIBBE & ORBE LLP
                                     200 Liberty Street
                                     New York, New York 10281
                                     Tel: (212) 530-1924
                                     gplotko@rkollp.com

                                     -and-

                                     Marlen Kruzhkov, Esq.
                                     Irina Kobylevsky, Esq.
                                     KRUZHKOV RUSSO PLLC
                                     350 Fifth Avenue
                                     New York, New York 10118
                                     Tel: (212) 363-2000
                                     marlen@kruzhkovrusso.com
                                     irina@kruzhkovrusso.com

---

[17] Movants also respectfully request a stay of any further responses to all subpoenas and limiting the Foreign Representative's use of documents already produced until the Court rules on the Motion.